**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

ECOLAB Inc., and NALCO COMPANY,
LLC d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

      Plaintiffs,                No. 1:22-cv-00050-TRM-SKL

v.

ANTHONY RIDLEY, and CHEMTREAT,
INC.,

      Defendants.

## AMENDED COMPLAINT

Plaintiffs, Ecolab Inc. ("Ecolab") and Nalco Company LLC d/b/a Nalco Water, an Ecolab

Company and/or Nalco Water ("Nalco") (jointly referred to as "Nalco/Ecolab" or "Plaintiffs"), by

and through their counsel and pursuant to Rules 8(a) and 15(a)(2) of the Federal Rules of Civil

Procedure, the Stipulation of the Parties (D.E. 21), and the Court's Order dated April 15, 2022

(D.E.25), hereby file this Amended Complaint for Injunctive Relief and Damages against

Defendants, Anthony Ridley ("Ridley") and ChemTreat, Inc. ("ChemTreat") (collectively the

"Defendants") and allege as follows:

### NATURE OF ACTION

1. Ridley worked for Nalco/Ecolab until July 1, 2021, when he left to join ChemTreat.

Nalco/Ecolab and ChemTreat are direct competitors.

2. In the weeks and months leading to his resignation from Nalco/Ecolab, Ridley

secretly downloaded and misappropriated over 16,000 Nalco/Ecolab files containing

Nalco/Ecolab's confidential and trade secret information. Ridley secretly downloaded this

information even though it was not relevant to his last position at Nalco/Ecolab. However, the

information which Ridley misappropriated from Nalco/Ecolab is highly valuable to Defendants in Ridley's new job duties at ChemTreat, especially Defendants' efforts to compete directly against Nalco/Ecolab.

3.     Nalco/Ecolab brings this action against Ridley for violations of the Defend Trade Secrets Act, multiple breaches of his fiduciary duty of loyalty to Nalco/Ecolab, and breach of his Nalco/Ecolab employment agreement.

4.     Nalco/Ecolab also brings this action against Ridley's employer, ChemTreat, for aiding and abetting Ridley's violations of his duty of loyalty to Nalco/Ecolab and for tortiously interfering with the contractual relationship between Nalco/Ecolab and Ridley. Nalco/Ecolab also assert claims against both Ridley and ChemTreat for unjust enrichment and unfair competition.

5.     This action seeks, in part, preliminary and permanent injunctive relief requiring Defendants to return and not use any of Nalco/Ecolab's trade secrets and highly confidential and/or proprietary information.

## THE PARTIES

6.     Ecolab is a Delaware corporation with its principal place of business in the State of Minnesota. Ecolab is registered to do business and regularly conducts business in the State of Tennessee and maintains a registered agent in the State of Tennessee at 300 Montvue Road, Knoxville, TN 37919-5546.

7.     Nalco is a Delaware corporation with its principal place of business in the State of Illinois. Nalco is registered to do business and regularly conducts business in the State of Tennessee and maintains a registered agent in the State of Tennessee at 300 Montvue Road, Knoxville, TN 37919-5546.

FP 43803286.2

8.     Nalco does business under the trade names "Nalco Water, an Ecolab Company" and "Nalco Water."

9.     Ecolab and Nalco maintain a robust business in Tennessee, and throughout the United States.

10.     Defendant Anthony Ridley is an individual who, upon information and belief, resides in the State of Tennessee and was employed by Defendant ChemTreat as a Regional Sales Manager until he was terminated on March 18, 2022.  As explained below, Ridley is subject to the jurisdiction of this Court.

11.     Defendant ChemTreat is a Virginia corporation with its principal place of business in the Commonwealth of Virginia.  ChemTreat is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over the entire action pursuant to 28 U.S.C. § 1331 because Nalco/Ecolab are asserting claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

13.     The Court has supplemental jurisdiction over Nalco and Ecolab's additional causes of action under 28 U.S.C. § 1367, which states "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"

14.     This Court has personal jurisdiction over Ridley and ChemTreat under Federal Rule of Civil Procedure 4, since Ridley is a resident of Tennessee, since ChemTreat is authorized to conduct business in Tennessee, and since some or all of the complained of actions of Ridley and ChemTreat occurred and caused injury to Nalco/Ecolab in Tennessee.

3

15.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Ridley resides in the Eastern District of Tennessee, ChemTreat is registered to conduct business and conducts business in the State of Tennessee, and the events giving rise to Plaintiffs' claims against all Defendants occurred in Tennessee.

## FACTUAL ALLEGATIONS

16.     Nalco/Ecolab, among other things, are engaged in the highly competitive business of monitoring and controlling performance of industrial water treatment systems for clients in a wide range of industries including, but not limited to, food preparation, pulp and paper, agriculture, manufacturing, refining, mining, power production, healthcare, pharmaceutical, and high-tech businesses.

17.     Nalco/Ecolab provide a broad spectrum of products and services to businesses throughout the United States including the State of Tennessee.  Plaintiffs partner with customers across a wide range of industries and develop solutions for such customers' specific water needs and business goals throughout the United States including the State of Tennessee.

18.     In order to protect its confidential and trade secret information, Nalco/Ecolab, among other things, require appropriate employees to execute employment agreements containing restrictive covenants tailored to protect its valuable company assets, including but not limited to, (1) prohibiting employees from transferring or storing Company information onto any device or storage medium (physical or virtual) not provided or authorized in writing by Nalco/Ecolab; (2) prohibiting departing employees from wiping, deleting or transferring any Company data from any electronic devices before returning such devices to the Company; (3) requiring employees who separate from Nalco/Ecolab to return all Company property, data, business information, phones, computers, and electronic devices; (4) requiring employees to acknowledge and agree that

4

Nalco/Ecolab has the right to conduct forensic examination(s) of any computers and/or electronic devices in the employees' possession and control if Nalco/Ecolab reasonably believe such devices contain Nalco/Ecolab's confidential or trade secret information; and (5) prohibiting employees who separate from Nalco from soliciting or transacting business with a limited group of customers for a period of one (1) year after separation of employment.

19.     Nalco/Ecolab, in addition to using employment agreements containing the above-referenced covenants, also uses computer passwords, limits access to confidential information to employees that need the information in order to perform their duties for Nalco/Ecolab, maintains confidentiality policies in its employee handbook, maintains electronic communication and code of conduct policies regarding confidentiality, and stresses the importance of maintaining confidentiality in order to protect its confidential and trade secret information.

20.     Nalco/Ecolab uses a secure computer network to store and maintain its confidential, proprietary, and trade-secret information.

21.     Nalco/Ecolab limits access to portions of its secure computer systems to key employees who have a need to access the confidential and trade secret information to perform their job duties, including but not limited to Ridley during his employment with Nalco/Ecolab.

## RIDLEY'S EMPLOYMENT

22.     Ecolab, through its subsidiary Nalco, hired Ridley on November 1, 1999, as a Senior Account Manager.

23.     Ridley worked for Nalco/Ecolab in its Southeast region and was based in Chattanooga, Tennessee.

24.     As a Senior Account Manager for Nalco/Ecolab, Ridley managed industrial and institutional accounts in the Southeast Tennessee area.  Ridley's job duties included consulting

5

with, analyzing, and advising Nalco/Ecolab customers regarding their needs and requirements for comprehensive water treatment boilers, cooling water systems, and wastewater treatment applications. Ridley was responsible for maintaining Nalco/Ecolab's current accounts and soliciting new business accounts through resources provided by Nalco/Ecolab.

25.     In April 2015, Nalco/Ecolab promoted Ridley to District Manager in the Chattanooga, Tennessee area. In this position, he managed the sales team that offered water treatment equipment and chemicals to Nalco/Ecolab's customers in the food and beverage industry, automotive industry, and manufacturing facilities. Ridley was also responsible for managing and training sales engineers and service technicians for Nalco/Ecolab.

26.     In October 2020, Ridley accepted a position as a Corporate Account Manager for Nalco/Ecolab. As Nalco/Ecolab's Corporate Account Manager in Tennessee, Ridley was responsible for servicing, advising and consulting with Nalco/Ecolab's customers in the food and beverage industry, ensuring Nalco/Ecolab served as a strategic resource to its corporate accounts, driving customer satisfaction, accelerating business development and growth for longer term business relationships, and maintaining existing and developing new business relationships.

27.     As a trusted employee of Nalco/Ecolab, Ridley was privy to Nalco/Ecolab's highly sensitive, confidential and trade secret information regarding Nalco/Ecolab's customers and employees.

## THE RIDLEY AGREEMENT

28.     As part of Ridley's employment with Nalco/Ecolab and his promotion to Corporate Account Manager, he entered into an Employee Sales, Service, Marketing & Inventions Agreement (the "Ridley Agreement") (the Ridley Agreement is attached hereto as Exhibit A).

29.     The Ridley Agreement was between Ridley and Ecolab and "its parent companies, sister companies, and subsidiaries …." *See* Exhibit A, the Ridley Agreement.

30.     Nalco is a "subsidiary" under the Ridley Agreement.

31.     The Ridley Agreement contains, in part, the following provisions regarding trade secrets and confidential information:

> 2.     Employee acknowledges that as a result of Employee's employment with Ecolab, Employee will acquire knowledge of Company's Trade Secrets and its Confidential Information, which may include without limitation, information regarding present and future operations, customers and suppliers, pricing, business strategies, business methods, and employees (including the particular skills, talents and abilities of those employees).
>
> Employee hereby agrees that Employee will hold in a fiduciary capacity for the benefit of Company and shall not, directly or indirectly, use or disclose any Trade Secrets, as defined hereinafter, that Employee may have acquired during the term of Employee's employment with Company for so long as such information remains a Trade Secret.
>
> The term "Trade Secret" as used in this Agreement shall mean information pertaining to Company including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, financial data, financial plans, product plans, a list of actual or potential customers or suppliers, pricing information, information about customer contacts, requirements or purchasing patterns, or the identities of or contact information for actual or potential customers or suppliers of Company that both:
>
> (11)    derives economic value, actual or potential from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts by Company that are reasonable under the circumstances to maintain its secrecy.

*See* Exhibit A, Ridley Agreement ¶ 2.

32.     The Ridley Agreement also restricts Ridley's use of Nalco/Ecolab's Confidential

Information after separation:

> In addition to the foregoing and not in limitation thereof, Employee agrees that while employed with the Company and for a period of three (3) years after termination of Employee's employment with Company, Employee will hold in a fiduciary capacity for the benefit of Company and shall not, directly or indirectly, use or disclose any Confidential Information, as defined hereinafter, that Employee may have acquired (whether or not developed or compiled by Employee and whether or not Employee was authorized to have access to such Confidential Information) during the term of, in the course of, or as a result of Employee's employment by Company.

> The term "Confidential Information" shall mean Company's confidential data or information which is valuable to Company but substantially inaccessible to the public and to competitors of Company, including, without limitation, business information, financial data, product information, the identities and contact information of actual or potential customers or suppliers, pricing information, and other information of a proprietary nature regarding the Company's business operations, excluding Trade Secrets. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that Employee can establish by competent proof: (i) was generally known to or accessible by the public at the time Company disclosed the information to Employee; (ii) became generally known to or accessible by the public after disclosure by Company through no act or omission by Employee; or (iii) was disclosed to Employee, after the Employee's termination of employment with the Company, by a third party having a bona fide right both to possess the information and to disclose the information to Employee, provided such third party is not subject to an obligation of confidentiality with respect to such information.

*See* Exhibit A, Ridley Agreement ¶ 2.

33.     The Ridley Agreement also contains the following employment and post-

employment restrictions regarding competition and solicitation of Nalco/Ecolab's customers:

> 6. During employment with the Company and for a period of one (1) year immediately following the termination of his employment with the Company, the Employee will not:

> (a) solicit, encourage or induce any customer of the Company with whom Employee did business or whose account was supervised by

or assigned to the Employee at any time during the twelve (12) month period immediately preceding the termination of Employee's employment (regardless of reason) for the purpose of providing a Competing Product or Competing Service;

(b) transact business with any Customer of the Company with whom Employee did business or whose account was supervised by or assigned to the Employee at any time during the twelve (12) month period immediately preceding the termination of Employee's employment (regardless of reason) for the purpose of providing a Competing Product or Competing Service.

During said one (1) year following termination, the employee also will not assist any Competing Firm to engage in the aforementioned activities prohibited by Subsections 6(a) and 6(b). A Competing Firm means any person or organization (including one owned in whole or in part by the Employee) which is engaged in the development, production, use, marketing or sale of a Competing Product or Competing Service. A Competing Product or Competing Service means any product or service which is the same as, or similar to, and competes with, a product or service of the Company which was part of the product or service line handled by the Employee, or by persons supervised by the Employee, during Employee's last year of employment with the Company. If the Employee violates the covenants contained in this Section, the term of said covenant shall be extended for one (1) year from and after the later of (a) the date on which the Employee permanently ceases such violation; or (b) the date on which any court issues an order or judgment enforcing the covenant; provided, that in no event shall the term of the covenant be extended for a term beyond twenty-four (24) months following termination of the Employee's employment with the Company.

*See* Exhibit A, Ridley Agreement ¶ 6.

34.    The Ridley Agreement also contains the following employment and post-employment restrictions regarding solicitation of Nalco/Ecolab's employees:

7. During Employee's employment with Company and for a period of one (1) year immediately thereafter, Employee will not hire or induce, attempt to induce or in any way assist or act in concert with any other person or organization in hiring, inducing or attempting to induce any employee or agent of Company to terminate such employee's or agent's relationship with Company. This restriction is limited to those employees that Employee managed, or supervised, or had material contact with on the Company's behalf

during the last twelve (12) months of Employee's employment with Company.

*See* Exhibit A, Ridley Agreement ¶ 7.

35.     Additionally, the Ridley Agreement also contains the following provision mandating the return of Nalco/Ecolab's information:

> 11. Upon termination of Employee's employment and/or promptly upon request, the Employee will return in good order all Company property and information in the Employee's possession, custody or control. Upon termination, Employee shall return all Company data, business information, credit cards, keys, automobiles and any other Company property in his possession. Employee shall not erase or delete any Company data from Company phones or computer or other electronic devices except as may be necessary in the regular course of conducting business for the Company. For example, it would be a violation of this provision for Employee to accept a position with another entity and/or give notice of Employee's resignation and then delete and/or erase Company data from Employee's Company assigned phone and/or computer device.

*See* Exhibit A, Ridley Agreement ¶ 11.

## RIDLEY'S MISAPPROPRIATION OF NALCO/ECOLAB'S HIGHLY SENSITIVE, CONFIDENTIAL AND TRADE-SECRET INFORMATION

36.     Ridley resigned his employment with Nalco/Ecolab on July 1, 2021, and started working for ChemTreat later that same month.

37.     Before resigning from Nalco/Ecolab, Ridley secretly uploaded several key documents to a personal email account.  Ridley also downloaded over 16,000 Nalco/Ecolab documents constituting trade secrets and highly confidential and/or proprietary information to external USB devices.

38.     Ridley also copied an entire back-up of Nalco/Ecolab computer on a "personal" external hard drive, that he subsequently took with him to ChemTreat.

10

**On May 22, 2021, Ridley uploaded confidential files to a personal Live.com account.**

39.     On May 22, 2021, using his company laptop, Ridley uploaded three highly sensitive and confidential documents to his personal Microsoft Live.com account that is associated with the email address aridley75@hotmail.com.  These documents were named: "2021 partnership and market overview - simmons foods.pptx"; "2021 partnership and market overview.pptx"; and "fb na sales 2021 exprice review for customers.pptx" and were transferred to Ridley's personal Microsoft account on 5/22/2021 at 10:05 PM EST from Ridley's Nalco/Ecolab workstation.

40.     The files that Ridley misappropriated contain highly sensitive, confidential, proprietary, and trade secret information.

41.     These documents were used by Nalco/Ecolab employees for customer meetings to develop and strengthen the ongoing business relationship with each customer, and address pricing issues.

42.     These files are exactly the type that Ridley could use at ChemTreat to compete against Nalco/Ecolab.

43.     Ridley's uploading of documents to his personal Live.com account shows that Ridley was trying to hide his nefarious conduct.  Uploading company documents to a personal account is unusual conduct and strongly suggests that Ridley was taking specific, covert action to hide his improper conduct.

44.     Ridley did not have authorization to upload these documents to his personal Live.com account; there were no legitimate reasons for Ridley to upload these documents to his personal Live.com account; and he never told anyone at Nalco/Ecolab that he was doing it. Furthermore, by transferring or uploading Nalco/Ecolab's electronic documents and information to his personal Live.com account, Ridley violated his employment agreement.  Similarly, by

copying the contents of his Nalco/Ecolab computer to his personally owned external hard drive, Ridley further violated his employment agreement. By signing the Ridley Agreement, Ridley promised that he would "not transfer or store Company information on any device or other storage medium (physical or virtual) not provided or authorized by the Company unless authorized to do so in writing by the Company." Nalco/Ecolab did not authorize Ridley to transfer or upload documents or information to his personal Live.com account and also did not authorize him to copy the contents of his computer to his personal external drive.

**On May 24, 2021, Ridley secretly downloaded and copied numerous files onto an external hard drive and uploaded more files to his personal email account.**

45. On May 24, 2021, Ridley downloaded and copied approximately 4,891 files in a session that lasted over one hour.

46. Using his company laptop, Ridley downloaded and copied these files directly from Nalco/Ecolab's corporate OneDrive account to an 80GB external mobile drive (the "LaCie Drive").

47. These documents included voluminous amounts of information for numerous Nalco/Ecolab clients. Indeed, it appears that Ridley performed a mass download of complete client files from Nalco/Ecolab's OneDrive Account. These client files contain virtually everything a departing employee (such as Ridley) and a competing employer (such as ChemTreat) would want to know about Nalco/Ecolab's clients including: customer proposals (including their underlying data); proposal pricing worksheets; quotes; bid letters; pricing worksheets; engineering analyses; purchasing documents; contracts; product volumes (for each customer); detailed scope of work documents; future projects (for specific customers); profit-margin reports; profit analyses; detailed sales and volume reports; service reports and plans; customer-meeting summaries; service agreements; renewal documents; transition playbooks; inspection documents, service/product best

practices, treatment plans; testing documents; chemical analyses, chemical specifications; water analyses; and many, many more types of confidential and trade secret customer information.

48.     These customer files and documents contain highly valuable and proprietary information that Nalco/Ecolab has compiled at great expense and effort about its customers' needs, requirements, preferences, purchase history, service history, profit/margin, sales volume, treatment plans, chemical requirements, engineering analysis, and future plans.

49.     These files are Nalco/Ecolab's trade secret, highly confidential, and/or proprietary information.

50.     These files are exactly the type that Ridley could use at ChemTreat to compete against Nalco/Ecolab.

51.     Ridley downloaded these files directly from Nalco/Ecolab's corporate OneDrive account.  Ridley did not download these files as part of a general back-up of his work computer.

52.     Ridley did not download these files on May 24, 2021 for any legitimate purpose, and he did not inform anyone in Nalco/Ecolab's management that he had downloaded these files.

53.     Also, on May 24, 2021, Ridley uploaded more highly sensitive and confidential files from Nalco/Ecolab's OneDrive account to his personal Live.com account.  Specifically, he uploaded "notes for Maytag 2006 contract.doc"; "esisting inventory quote.doc"; and "e intensive cleaning procedure covid 19 goggles.docx."

54.     Like his improper uploading of other confidential documents on May 22, 2021, Ridley uploaded these documents to a personal Live.com account because he was trying to hide his nefarious conduct.

55.     Ridley did not have authorization to upload these documents to his personal Live.com account; there was no legitimate reasons for Ridley to upload these documents to his personal email account; and he never informed anyone at Nalco/Ecolab that he was doing it.

56.     Furthermore, by transferring or uploading Nalco/Ecolab's electronic documents and information to his personal Live.com account, Ridley violated his employment agreement. By signing the Ridley Agreement, Ridley promised that he would "not transfer or store Company information on any device or other storage medium (physical or virtual) not provided or authorized by the Company unless authorized to do so in writing by the Company." Nalco/Ecolab did not authorize Ridley to transfer or upload documents or information to his personal Live.com account.

**On May 25, 2021, Ridley downloads more confidential files to his external hard drive.**

57.     On May 25, 2021, Ridley downloaded and copied approximately 1800 additional files from Nalco/Ecolab's corporate OneDrive Account onto the LaCie Drive.

58.     These files are trade secrets and contain highly sensitive customer information regarding many of Nalco/Ecolab's customers. Specifically, Ridley downloaded numerous files on the corporate OneDrive account for Quint McCreary, a former Nalco/Ecolab employee. These files also included numerous, highly confidential files relating to Mr. McCreary's customers while he worked at Nalco.

59.     Like the files Ridley secretly downloaded on May 24, 2021, these are complete customer files for numerous Nalco/Ecolab clients. These files include extensive information regarding pricing, quotes, engineering analysis, product volumes, service issues, technical specifications, scope of work documents, future projects, profit margins, customer needs, customer preferences, customer agreements, treatment plans, chemical specifications, water analysis, and many more of the same type of documents that Ridley downloaded and copied on May 24, 2021.

14

60.     In addition, Ridley also downloaded and copied other types of highly confidential and trade secret information on May 25, 2021, including: price adjustment and commitment workbooks; 2020 value plan pricing worksheets; business plans; price plans; performance reviews; sales leader playbooks; target account planning documents; compensation plans; notes from employee coaching trips; and numerous other Nalco/Ecolab training and coaching materials.

61.     Ridley also downloaded and copied several highly sensitive and confidential and trade secret documents called "fact packs."  These documents have detailed information on a district-wide level about each and every Nalco customer in that territory, including, the sales volumes for each customer; identification of all new accounts; sales history on a rolling 12-month basis; profit margins for each customers; detailed information regarding every sales representative in that territory (including a breakdown of their specific territories); customer contact information; and numerous other types of deeply confidential information about Nalco/Ecolab's entire business for that territory.

62.     In fact, Ridley downloaded and copied several "fact packs," not only for his territory, but for other territories, as well.

63.     Ridley even downloaded and copied a "fact pack" covering an entire region, which consists of multiple districts.  Based on his downloading and copying of the district and regional fact packs, Ridley has an immense amount of highly sensitive and trade secret confidential information about countless Nalco/Ecolab customers, which he has used or will use for his own benefit and that of his employer, ChemTreat.

64.     All the documents that Ridley downloaded and copied on May 25, 2021, contain detailed, confidential, and trade secret materials about Nalco/Ecolab's customers and employees.

65.     Facts packs are quintessential trade secrets.  These files are essentially a playbook for how Nalco/Ecolab manages each customer account.  This is exactly the type of information a competitor, like ChemTreat, would need to target these customers and steal these accounts from Nalco/Ecolab.  Indeed, while working at a competitor like ChemTreat, Ridley could use these documents to target and take clients from Nalco/Ecolab.  He could also use this information to improperly assist ChemTreat to raid Nalco/Ecolab employees.

66.     All these files are Nalco/Ecolab's trade secrets and highly confidential and/or proprietary information.

67.     Ridley downloaded these files directly from Nalco/Ecolab's corporate OneDrive account.  Ridley did not download these files as part of a general back-up of his work computer.

68.     Ridley did not download these files on May 25, 2021, for any legitimate purpose.  Ridley did not have permission to download these files.

69.     Before he left Nalco/Ecolab, Ridley did not inform anyone in Nalco/Ecolab's management that he had downloaded these files.

**On May 26, 2021, Ridley downloaded more confidential files to the external drive.**

70.     On May 26, 2021, Ridley downloaded and copied 185 more highly sensitive, trade secret and confidential files from Nalco/Ecolab's OneDrive account using his company laptop and the LaCie Drive.  This indicates that Ridley was mass-copying these files onto the LaCie Drive.

71.     These files included extensive and detailed training information that is critical to servicing Nalco/Ecolab's customers.  These materials have detailed information relating to the treatment of customer issues focusing on the best practices for treating and addressing customer needs and problems regarding wastewater, cooling towers, and boilers.

16

72. Nalco/Ecolab, known as a leader in the industry for training employees for identifying and troubleshooting wastewater, cooling towers, and boiler issues, developed these materials at great expense and effort. These training materials are highly valuable.

73. Ridley took these documents, in part, to assist his and ChemTreat's efforts to compete against Nalco/Ecolab.

74. Combined with all the customer-based files that Ridley misappropriated, these documents together are essentially Nalco/Ecolab's playbook for servicing its clients. Ridley downloaded and copied these documents because he planned to use them to compete against Nalco/Ecolab on behalf of ChemTreat.

75. These files are Nalco/Ecolab's trade secrets and highly confidential, and/or proprietary information. Ridley did not download these files for any legitimate purpose.

76. Ridley did not have permission to download these files to take them to a competitor after leaving Nalco/Ecolab.

77. Before he left Nalco/Ecolab, Ridley did not inform anyone in Nalco/Ecolab's management that he had downloaded these files.

**On May 27, 2021, Ridley downloaded more confidential files to the external hard drive.**

78. On May 27, 2021, Ridley downloaded approximately 149 more Nalco/Ecolab files. Ridley downloaded these documents from Nalco/Ecolab's corporate OneDrive account and copied them to the LaCie Drive.

79. These files included numerous "Monthly Turndoc Incentive Reports." These files are highly sensitive, trade secret and confidential information about the monthly commission payouts for all the Nalco/Ecolab sales representatives in his district. There is no legitimate reason for Ridley to copy and take these files (especially to a competitor like ChemTreat). Upon

17

information and belief, Ridley and ChemTreat plan to use these documents to help ChemTreat target and poach key Nalco/Ecolab employees.

80.     Ridley downloaded these files directly from Nalco/Ecolab's corporate OneDrive account.  Ridley did not download these files as part of a general back-up of his work computer.

81.     These files are Nalco/Ecolab's trade secrets and highly confidential and/or proprietary information.

82.     Ridley did not download these files on May 27, 2021, for any legitimate purpose. Ridley did not have permission to download these files and take them to a competitor after leaving Nalco/Ecolab.

83.     Ridley did not download these 149 files for any legitimate purpose.

84.     Ridley did not have permission to download these files and take them to a competitor after leaving Nalco/Ecolab.

85.     Before he left Nalco/Ecolab, Ridley did not tell anyone in Nalco/Ecolab's management that he had downloaded these files.

**On June 1, 2021, Ridley downloaded even more confidential files to his external hard drive.**

86.     On June 1, 2021, Ridley downloaded over 9,700 more Nalco/Ecolab files.  Ridley downloaded these documents from Nalco/Ecolab's OneDrive account and copied them onto the LaCie Drive.

87.     These documents included numerous customer files from another Nalco/Ecolab employee and some of Ridley's own customer files.  Like the customer files he downloaded on May 24, 2021 and 25, 2021, these files contain extensive information about numerous Nalco/Ecolab clients, including information about bids; pricing; customer needs; customer preferences; minutes for client meetings; price plans; contract worksheets; price lists; chemical

analyses (for customer needs); annual business reviews for customers; inspection reports; projects lists (for customers); scope of work documents; contract calculation worksheets; action-plan scorecards; margin reports; and countless other highly sensitive and confidential documents.

88.     Like the other documents that he downloaded, these documents contain detailed and highly confidential and trade secret documents regarding all aspects of Nalco/Ecolab's relationship with these customers including purchasing history; customer preferences; treatments plans for specific customers; pricing and margin; sales volume; chemical requirements, engineering analyses; and future plans.  And, like the other files that Ridley downloaded and copied (and took to ChemTreat), they are essentially Nalco/Ecolab's playbook for servicing, securing, and retaining profitable business from its customers.

89.     These files are Nalco/Ecolab's trade secrets and highly confidential and/or proprietary information.

90.     Ridley downloaded these files directly from Nalco/Ecolab's corporate OneDrive account.  Ridley did not download these files as part of a general back-up of his work computer.

91.     Ridley did not download these documents for any legitimate purpose.  He did not have permission to download these files and take them to a competitor after leaving Nalco/Ecolab.

92.     Before he left Nalco/Ecolab, Ridley did not tell anyone in Nalco/Ecolab's management that he had downloaded over 9,700 files.

**On June 18, 2021, Ridley uploads more confidential files to his personal Live.com account.**

93.     On June 18, 2021, Ridley uploaded a highly sensitive and confidential document from Nalco/Ecolab's corporate OneDrive Account to his personal Live.com account.  This file is a "monthly tracking report" for a top Nalco/Ecolab client dated June 2021.  It contains highly

FP 43803286.2

sensitive information regarding Nalco/Ecolab's sales to this account, including product inventories, sales volumes, customer needs, and other sensitive information.

94.     Like his improper uploading of other confidential documents on May 22, 2021, May 24, 2021, and June 8, 2021, Ridley uploaded this document to a personal Live.com account because he was trying to hide his nefarious conduct.

95.     Ridley was not authorized to upload this document to his personal Live.com account; there was no legitimate reason for Ridley to upload this document to his personal Live.com account; he never told anyone at Nalco/Ecolab that he was doing it; and, Ridley did not return this file to Nalco/Ecolab.

96.     Further, by transferring or uploading Nalco/Ecolab's electronic documents and information to his personal Live.com account, Ridley violated his employment agreement.  By signing the Ridley Agreement, Ridley promised that he would "not transfer or store Company information on any device or other storage medium (physical or virtual) not provided or authorized by the Company unless authorized to do so in writing by the Company."  Nalco/Ecolab did not authorize Ridley to transfer or upload documents or information to his personal Live.com account.

**On June 21, 2021, Ridley downloaded his entire Contacts to a different thumb drive.**

97.     On June 21, 2021, Ridley used a different mobile drive (other than the LaCie Drive) to download and copy his entire Contacts from his Nalco/Ecolab account.

98.     Ridley did not download this Contacts file for any legitimate purpose.

99.     Ridley did not have permission to download this Contacts file and take it to a competitor after leaving Nalco/Ecolab.

100.    Before he left Nalco/Ecolab, Ridley did not inform anyone in Nalco/Ecolab's management that he had downloaded his Contacts.

FP 43803286.2

101.    Before he left Nalco/Ecolab and joined ChemTreat, Ridley did not return this file to Nalco/Ecolab.

**On June 29, 2021, Ridley uploads more confidential files to his personal Live.com account.**

102.    On June 29, 2021, Ridley uploaded a purchase agreement between Nalco/Ecolab and a key Nalco/Ecolab client.  Ridley uploaded this document from Nalco/Ecolab's corporate OneDrive account to his personal Live.com account.

103.    Like his improper uploading of other confidential documents on May 22, 2021, and May 24, 2021, Ridley uploaded this document to his personal Live.com account because he was trying to hide his nefarious conduct.

104.    Ridley did not have authorization to upload this document to his personal Live.com account; there was no legitimate reason for Ridley to upload this document to his personal Live.com account; he never told anyone at Nalco/Ecolab that he was doing it; and, Ridley did not return this file to Nalco/Ecolab.

105.    This document is highly confidential and a trade secret.  It has important information regarding Nalco/Ecolab's business with this key client.  Ridley could use this document to steal this client from Nalco/Ecolab.

106.    Further, by transferring or uploading Nalco/Ecolab's electronic documents and information to his personal Live.com account, Ridley violated his employment agreement.  By signing the Ridley Agreement, Ridley promised that he would "not transfer or store Company information on any device or other storage medium (physical or virtual) not provided or authorized by the Company unless authorized to do so in writing by the Company."  Nalco/Ecolab did not authorize Ridley to transfer or upload documents or information to his personal Live.com account.

21

## RIDLEY RESIGNS FROM NALCO/ECOLAB ON JULY 1, 2021

107.    On July 1, 2021, Ridley resigned from Nalco/Ecolab and joined ChemTreat. Upon information and belief, at ChemTreat, Ridley was responsible for the same general sales territory which he managed or serviced when he held a similar position at Nalco/Ecolab.

108.    Before he resigned from Nalco/Ecolab, Ridley was contacted via LinkedIn by two former Nalco/Ecolab employees who were working for ChemTreat.

109.    Ridley then started his uploading/downloading activity several days later.

110.    Upon information and belief, Ridley also uploaded /downloaded the files described in the allegations above while, or soon after, he started his interview process with ChemTreat.

111.    During Ridley's last position with Nalco/Ecolab, he did not need or consistently use the documents that he covertly downloaded between May 22, 2021, and June 21, 2021.

112.    The documents Ridley downloaded are exactly the type of information that would be valuable and useful to him and ChemTreat to secure business from Nalco/Ecolab's customers and to compete against Nalco/Ecolab.

113.    Upon information and belief, Ridley performed job duties for ChemTreat that are the same or similar to the duties that he performed for Nalco/Ecolab and in the same territory that he worked for Nalco/Ecolab.

114.    Upon information and belief, Ridley was positioned to lead ChemTreat in its competitive activities against Nalco/Ecolab, both, in terms of soliciting Nalco/Ecolab's customers away from Nalco/Ecolab to ChemTreat and planning future efforts directly competitive to Nalco/Ecolab.

FP 43803286.2

115. Nalco/Ecolab has suffered irreparable harm because of Defendants' actions as Defendants had access to the confidential/trade secret information of Nalco/Ecolab to unfairly compete against Nalco/Ecolab.

116. Ridley's actions create the strong likelihood that the confidential and trade secret information which Ridley stole from Nalco/Ecolab was used and could be used in the future to solicit and acquire Nalco/Ecolab's business with key customers and prospects, and Nalco/Ecolab's employees. As a result, Nalco/Ecolab seeks injunctive relief and recovery of money damages.

### CHEMTREAT'S ONGOING ILLEGAL POACHING OF NALCO/ECOLAB EMPLOYEES AND INTERFERENCE WITH THEIR POST-EMPLOYMENT OBLIGATIONS TO NALCO/ECOLAB

117. Upon information and belief, Defendants engaged in the foregoing activities to solicit and hire Nalco/Ecolab's employees and steal Nalco/Ecolab's customers and business.

118. Over the year, ChemTreat has poached many key employees from Nalco/Ecolab. Many of these employees are subject to post-employment restrictions related to their employment at Nalco/Ecolab.

119. ChemTreat hired these employees despite being fully aware of these post-employment restrictions and placed them into positions at ChemTreat where they would violate these post-employment restrictions.

120. ChemTreat's conduct in this regard is willful and malicious. This conduct is designed and intended to injure Nalco/Ecolab by inducing former Nalco/Ecolab employees to brazenly breach their post-employment obligations to Nalco/Ecolab.

121. Nalco/Ecolab has two other pending lawsuits against two former employees who resigned and went to work for ChemTreat for breach of contract and against ChemTreat for tortious interference with contract. See *Ecolab, Inc, and Nalco Company, LLC v. Douglas P. Glanz and*

*ChemTreat, Inc,* 1:22-cv-00197-TSB (S.D. Ohio filed April 11, 2022); *Ecolab, Inc, and Nalco Company, LLC, v. Tracey M. Guddendorf and ChemTreat, Inc.*, 2022-CH-000033 (Cir. Ct. Kane Cty, Ill filed April 4, 2022).

122.    There is substantial circumstantial evidence that ChemTreat had actual or constructive knowledge of Ridley's misconduct and benefitted from this misconduct.

123.     Ridley was a ChemTreat employee until March 18, 2022.

124.    As a ChemTreat employee, Ridley competed against Nalco/Ecolab.

125.    After he joined ChemTreat, Ridley had Nalco/Ecolab's trade secrets, confidential information, and /or proprietary information within his possession, custody, or control.  This included a backup copy of Ridley's Nalco/Ecolab computer that Ridley kept on his personal, external hard drive.  ChemTreat refused and/or failed to order and direct Ridley, while he was a ChemTreat's employee and agent, and subject to its control, to return Nalco/Ecolab's trade secret, confidential and proprietary information, which is located in Ridley's personal external drive (and, perhaps, many other sources) and remains in his possession.  ChemTreat's conduct and actions in this regard demonstrate that ChemTreat acted in concert with and aided and abetted Ridley's misappropriation of Nalco/Ecolab's trade secret, confidential, and proprietary information.

126.    As a ChemTreat employee, Ridley had access to Nalco/Ecolab's trade secrets, confidential information, and /or proprietary information during his employment at ChemTreat.

127.    As a ChemTreat employee, Ridley had possession, custody, or control of other memory devices (i.e., thumb drives) that had Nalco/Ecolab's trade secrets, confidential information, and /or proprietary information.

128.    The information improperly downloaded and uploaded to his personal email (as described above) and the information he kept on his personal hard drive (including the backup of

his Nalco/Ecolab computer) is the type of information that Ridley would want and need to help ChemTreat compete against Nalco/Ecolab.

129.    Before Ridley improperly uploaded and downloaded the aforementioned files, he had been contacted by at least two former Nalco/Ecolab employees who were then working at ChemTreat.

130.    After these communications, Ridley downloaded and uploaded 16,000+ files described in the allegations above.  Many of these files are Nalco/Ecolab's trade secrets.  All of these files are Nalco/Ecolab's confidential and/or proprietary information.

131.    Upon information and belief, Ridley was encouraged by former Nalco/Ecolab employees, who are now working at ChemTreat, to improperly take Nalco/Ecolab's trade secrets, confidential information, and/or proprietary information.

132.    Ridley improperly downloaded/uploaded documents from Nalco/Ecolab to help him at his new position at ChemTreat, thereby, providing a direct benefit to ChemTreat.

133.    Ridley took a copy of a back-up of his Nalco/Ecolab computer with him to his new position at ChemTreat.

134.    Ridley did this to help him compete against Nalco/Ecolab for his new employer, ChemTreat.

135.    Ridley's misconduct in taking a copy of his Nalco/Ecolab computer with him to ChemTreat directly benefitted ChemTreat in its efforts to compete against Nalco/Ecolab.

136.    Because Ridley was hired and worked as a ChemTreat employee until March 18, 2022, ChemTreat is vicariously liable for his misconduct, especially the misconduct that benefitted ChemTreat.

25

137.     Because Ridley downloaded/uploaded specific Nalco/Ecolab files that would help him compete against Nalco/Ecolab, because these files had little or nothing to do with his last position at Nalco/Ecolab, because Ridley then tried to lie about why he downloaded these documents (he falsely they were copied because he "backed-up" his computer), and because he kept a full back-up of his computer on a different external drive that he never returned to Nalco/Ecolab, it is highly likely that Ridley has been using Nalco/Ecolab's trade secrets, confidential information and/or proprietary information throughout his employment at ChemTreat. ChemTreat refused and/or failed to order and direct Ridley, while he was a ChemTreat's employee and agent, and subject to its control, to return Nalco/Ecolab's trade secret, confidential, and proprietary information, which is located in Ridley's personal external drive, and remains in his possession.  ChemTreat's conduct and actions in this regard demonstrate that ChemTreat has acted in concert with and aided and abetted Ridley's misappropriation of Nalco/Ecolab's trade secret, confidential, and proprietary information.

138.     Also, because many of the files that Ridley took from Nalco/Ecolab would help other former Nalco/Ecolab employees who are now working at ChemTreat, it is also likely that Ridley shared some or all of the files and/or information he improperly took from Nalco/Ecolab.

139.     As alleged above, ChemTreat has a history and pattern of hiring Nalco/Ecolab employees and inducing them to breach their contractual obligations to Nalco/Ecolab.  Based on ChemTreat's prior, utter disregard for Nalco/Ecolab's contractual obligations with its employees, it is likely that employees within ChemTreat (acting within the scope of their employment) were aware of Ridley's misconduct and benefitted from Nalco/Ecolab information that Ridley kept with him and had open access to throughout his employment with ChemTreat.

FP 43803286.2

140. This conduct is illegal and ongoing. It has caused (and is continuing to cause) substantial harm to Nalco/Ecolab.

141. Ridley's hiring and misappropriation of Nalco/Ecolab's confidential information and trade secrets are part of this illegal conduct by ChemTreat.

142. Defendants acted together with a common purpose to injure Nalco/Ecolab by performing unlawful acts and competing with Nalco/Ecolab through unlawful means.

143. Upon information and belief, Ridley not only took all of Nalco/Ecolab's trade secrets, confidential information, and proprietary information described in the allegations above, but used and exploited such stolen information in concert with ChemTreat.

### NALCO/ECOLAB'S DEMAND FOR RETURN OF PROPERTY

144. On February 9, 2022, Nalco/Ecolab sent Ridley a letter reminding him of his post-employment obligations to Nalco/Ecolab. *See* Exhibit B, February 9, 2022, Letter. The same letter was also sent to Ridley's employer, ChemTreat.

145. In the letter, Nalco/Ecolab notified Ridley and ChemTreat that it is aware that Ridley uploaded/downloaded and copied a massive amount of Nalco/Ecolab's proprietary, confidential, and trade secret information. Nalco/Ecolab requested that within three days of receipt of the letter that Ridley, in part, return all of Nalco/Ecolab's property and cease and desist using any of Nalco/Ecolab's property.

146. On February 22, 2022, ChemTreat, by its counsel, tried to justify Ridley's misconduct. Specifically, ChemTreat claimed that Ridley used a LaCie Drive to back-up his work computer. But this does not explain his ***download*** activity – copying files from a corporate OneDrive account to a different external hard drive. When Ridley downloaded and copied all the files described above, he downloaded them from Nalco/Ecolab's corporate OneDrive account. He

was not backing up his computer as he now claims. He specifically targeted files to download from Nalco/Ecolab's corporate OneDrive account and then placed them on a different external hard drive.

147. Further, Ridley did not do these downloads as part of his job responsibilities for his last position at Ecolab. All of the files that Ridley downloaded (as described above) related to his old position at Nalco. These were ***not*** documents that he was using for his last position at Ecolab. This is important because Ridley himself admitted that he was going to compete against Nalco, not Ecolab, after he joined ChemTreat. Thus, its apparent, that after Ridley either started interviewing with ChemTreat (or soon after he received a job offer from ChemTreat), he selectively downloaded files from his old position at Nalco that he wanted to use to compete against Nalco after he joined ChemTreat.

148. In the February 22, 2022, communication from ChemTreat's counsel, Ridley claimed that he returned the LaCie drive to Nalco/Ecolab when he returned his company computer. This may be true. Nalco/Ecolab has a record of a "mobile drive" being returned with Ridley's computer. But this record does not indicate which "mobile drive" was returned and, as discussed below, Ridley used many external hard drives and thumb drives during his employment at Nalco/Ecolab.

149. Moreover, ChemTreat's counsel acknowledged in her February 22, 2022, communication that Ridley also backed up his computer to his personal external drive, which is different from the LaCie drive, which he claims to have returned. ChemTreat's counsel has acknowledged that this separate personal drive remains in Ridley's possession. ChemTreat has refused and/or failed to order and direct Ridley, during the time he was a ChemTreat employee and agent and subject to its control, to return Nalco/Ecolab's trade secret, confidential and

FP 43803286.2

proprietary information, which is located in Ridley's personal external drive and remains in his possession.

150.    Moreover, Ridley did not expend the time and effort required to target and download 16000+ files mainly from Nalco/Ecolab's OneDrive account (soon after being contacted by ChemTreat) only to return those same 16000+ files upon his departure from Nalco/Ecolab, as counsel for ChemTreat now contends.  Indeed, it is highly likely that Ridley copied the files from the LaCie Drive to another source (e.g., a personal computer) before "returning" the drive (if he actually returned it).  No other explanation makes sense.

151.    This is especially true considering that Ridley is falsely claiming that he only backed-up files on the LaCie Drive.  Indeed, there was no reason for Ridley to back-up the 16,000+ files he downloaded from Nalco/Ecolab's corporate OneDrive account.  These files do not need to be backed-up.  They already reside on a web-based corporate server and are backed-up on the Cloud.  Further, Plaintiff's forensic investigation reveals that Ridley never backed-up his computer in the months leading to his separation from Nalco/Ecolab.

152.    Ridley's claim, however, that he returned the LaCie Drive raises more questions than answers.

153.    In the weeks leading to his sudden resignation, Ridley carefully planned his exit. He went onto Nalco/Ecolab's corporate OneDrive account, selecting over 16,000 confidential and highly sensitive files to download to an external hard drive.

154.    None of these files (or almost none) related to his then current job responsibilities. These files related to his former position at Nalco, for which he was going to compete against while at ChemTreat.

155.    As such, there was no business reason for Ridley to download these files.

156. As explained above, his proffered excuse that he was backing up his computer is false. Ridley selectively downloaded these files directly from a web-based corporate OneDrive account; they were **_not_** part of a "computer backup." And, besides, there was no, absolutely no legitimate reason for Ridley to back-up files relating to his old position at Nalco in the days before his sudden resignation from Nalco/Ecolab.

157. Further, some of Ridley's downloading sessions (as described above) lasted more than two hours. Why would he spend so much time downloading files that had nothing to do with his current job, return that drive, and then falsely claim that he was just backing up these files? The most likely answer is that Ridley copied the files to the LaCie Drive, used that same drive to transfer the files somewhere else; and then possibly returned the LaCie Drive to hide his misconduct.

158. Ridley and ChemTreat's counsel also claimed that Ridley downloaded the Nalco/Ecolab files to an external drive because Ridley was trying to "declutter" his OneDrive account.

159. This explanation does not make sense for several reasons. First, Ridley's OneDrive account at Nalco/Ecolab was not actually "cluttered." The drive was organized by a standard folder structure. If Ridley wanted to avoid his "old" Nalco files, he could simply choose not to click on that folder. His Nalco and Ecolab files, in this sense, were not intermingled or cluttered.

160. Second, Ridley was not running out of memory space on his OneDrive account. He had plenty of available memory.

161. Third, one of the purposes of an OneDrive account is to avoid backups on external hard drives. But Ridley downloaded this important company information onto an old external drive and then deleted the files form his OneDrive account. By doing so, Ridley deleted the

30

primary copy Nalco/Ecolab had of these files. Further, when Ridley allegedly "returned" the drive he never told anyone at Nalco/Ecolab that he was "returning" the old external drive and that it had the only copy of thousands critical files on it.

162. Fourth, Ridley did not start to "declutter" his OneDrive until after he was contacted by ChemTreat and started interviewing. If Ridley was truly, innocently "decluttering" his OneDrive account, why would he do this ***after*** being contacted by a competitor like ChemTreat and several months after he switched jobs from Nalco to Ecolab? If he was truly "decluttering" his account, Ridley would have done right that right after he switched jobs from Nalco to Ecolab. The fact that he waited to "declutter" his drive until ***after*** he was contacted by ChemTreat casts serious doubt on Ridley and ChemTreat's proffered excuse for Ridley's downloading activity. This doubt is compounded by the fact that Ridley deleted these files from Nalco/Ecolab's OneDrive account, thus making it easier for Ridley to improperly compete against Nalco/Ecolab after he joined ChemTreat.

163. In any event, ChemTreat's communication of February 22, 2022, does not address Ridley's uploading of confidential files to a personal Live.com account. Instead, this communication suggests that Ridley has some "old Nalco email" in an (unnamed) personal email account from 2009. But, again, Ridley is making a false excuse for his misconduct.

164. As described above, Ridley took active steps to upload confidential files (including trade secrets) from Nalco/Ecolab into a personal Live.com account. These files are not "old Nalco emails," as Ridley tries to miscast them. The documents that he uploaded are not "old," and they are not from 2009. One file is dated June 2021 and contains highly confidential information (and trade secrets) about a critical Nalco/Ecolab customer.

165.    Ridley did this "uploading" in a way that shows he has more technical savvy than the average person and that he was trying to hide his conduct.  This savviness further casts doubt on Ridley's attempts to proffer "innocent" explanations for his uploading of confidential files to personal email account.

166.    In addition, in the February 22, 2022, communication from ChemTreat's counsel, Ridley admitted that he had even more thumb drives and external hard drives in his possession with Nalco/Ecolab files on them and kept them after he had joined ChemTreat.

167.    Specifically, Ridley concedes that he had a "personal external hard drive" (that he purchased on his own) that he used to back-up his Nalco/Ecolab computer.  This is improper under his employment agreement with Nalco/Ecolab.  Ridley claims that he deleted all Nalco/Ecolab information from this drive at some point "after leaving" Ecolab, but Ridley does not say exactly when he did this.  Still, this makes it clear that Ridley has this drive in his possession, with a backup of his Ecolab computer on it, during his employment at ChemTreat.

168.    Based on information and belief, Ridley used and accessed this drive, including the backup of his Ecolab computer, during his employment at ChemTreat.

169.    Further, it is highly likely that Ridley used Nalco/Ecolab's information on this personal drive during his employment at ChemTreat and may have shared this information with his ChemTreat colleagues (including those who formerly worked at Nalco).

170.    Moreover, the only way to know -- from a forensic standpoint -- if Ridley's claims are accurate, is to conduct a forensic analysis of this drive and any computer(s) that he used to access the drive.  Even then, Plaintiffs may never know if Ridley copied the Nalco/Ecolab files located on this external hard drive to other devices.

FP 43803286.2

171.   Ridley also disclosed that he kept at least two Nalco thumb drives after he left Nalco/Ecolab.  He claims to have discovered these thumb drives around Christmas 2021 and to have deleted all Nalco/Ecolab information from these drives.

172.   Further, based on ChemTreat's admissions, Ridley had these Nalco drives with Nalco/Ecolab information on them during his employment at ChemTreat.  Again, this makes it highly likely that Ridley accessed Nalco/Ecolab information from these drives and potentially shared this information with his colleagues at ChemTreat.

173.    In a pre-lawsuit February 22, 2022, email to ChemTreat Counsel, counsel for Nalco/Ecolab requested, among other things, that "Mr. Ridley and ChemTreat preserve and stop using any computer(s) (whether personal or issued by ChemTreat) that were used to access any of the external hard drives and thumb drives mentioned in your email…[and]… [w]e also request that you take immediate steps to take a forensic image(s) of these computers."

174.   Over a month later, on March 25, 2022, counsel for Nalco/Ecolab was advised by Counsel for ChemTreat, among other things, that the data on Ridley's company issued laptop had been erased:

>  Upon being notified of your clients' allegations, ChemTreat recalled Mr. Ridley's laptop for imaging and supplied him with a replacement laptop. Unfortunately, due to an error by an administrative assistant, Mr. Ridley's original laptop was inadvertently placed with laptops designated for reformatting and redeployment, and the laptop was cleaned and redeployed before it could be imaged. An independent forensic examiner has since examined the laptop, but was unable to recover files from the period of Mr. Ridley's use of the device. While ChemTreat thus does not have an image of Mr. Ridley's original laptop, it does have CrowdStrike logs, which we understand provide much of the information that would have been recovered from a forensic image of Mr. Ridley's ChemTreat-issued laptop.

FP 43803286.2

175.    All of this strongly suggests that the full scope of Ridley's misconduct has yet to be fully revealed.  Based on Ridley's conduct that can be proved forensically and his demonstrably false explanations for this conduct, and all the inferences reasonably drawn from both these factors, Plaintiffs contend that Ridley is still in the possession, custody or control of their trade secret, confidential, and/or proprietary information.

176.    On February 9, 2022, counsel for Nalco/Ecolab sent (by email) a letter to Ridley demanding that he cease his illegal conduct and return all Nalco/Ecolab files.   After he received this letter, Ridley accessed three Nalco/Ecolab USB drives and started deleting some information from them.

177.    After the filing of Nalco/Ecolab's Complaint, Ridley returned these USB drives to Nalco/Ecolab.  A forensic analysis was then performed on these USB drives.  This analysis revealed that on February 9, 2022, Ridley created a folder on one of the drives named "Files from Ridley's personal computer" and copied a file from a Windows computer's desktop folder. The forensic analysis also showed that several files were deleted, including files belonging to Nalco/Ecolab on February 9, 2022, by Ridley.

178.    Further, after the filing of Nalco/Ecolab's Complaint, Ridley, by counsel, claimed that he did not own a personal computer.  Ridley's conduct on February 9, 2022 belies that assertion.  Indeed, on that day (after receiving a cease and desists letter from Nalco/Ecolab), Ridley created a folder on the Nalco/Ecolab USB drives called "Files from Ridley's personal computer." This strongly suggests that Ridley had a personal computer at one point, perhaps as recent as February 9, 2022.

FP 43803286.2

**CHEMTREAT FIRES RIDLEY FOR MISUSING NALCO/ECOLAB'S CONFIDENTIAL AND/OR PROPRIETARY INFORMATION**

179.    On June 16, 2021 (approximately two weeks before Ridley resigned from Ecolab), Ridley executed a document for ChemTreat called "Certification of Compliance of (sic) Obligations to Prior Employers" (the "Certification").

180.    In the Certification, Ridley indicated, *inter alia*, that he returned all confidential information to his prior employer(s).

181.     This Certification is important for at least two reasons.  First, the fact that Ridley signed this Certification on June 16, 2021 suggests that Ridley started interviewing with ChemTreat around the same time that he started to upload and download Nalco/Ecolab's proprietary and confidential files.  This supports that argument that Ridley was not "de-cluttering" his OneDrive as he now claims, but he was planning to take these documents with him to his new job. Second, on March 21, 2022, counsel for ChemTreat notified Counsel for Nalco/Ecolab that ChemTreat terminated Ridley on March 18, 2022, after ChemTreat discovered that Ridley sent a Nalco/Ecolab document from his personal email account to his ChemTreat email account. The document in question was emailed on September 29, 2021.  This contradicted Ridley and ChemTreat's prior claims that Ridley had not misused any of Nalco/Ecolab's files.

182.    Further, this document was one of the many documents that Ridley downloaded from Nalco/Ecolab's OneDrive account shortly before Ridley resigned from Ecolab.

183.    This supports Nalco/Ecolab's contention that Ridley copied the contents of the external drive to another source before he allegedly returned the external drive to Nalco/Ecolab.

184.    To date, neither Ridley nor ChemTreat have explained why Ridley had Nalco/Ecolab files in his personal email account or why he sent this document to his ChemTreat email account.

35

185.    Upon information and belief, Ridley emailed other documents from his personal accounts to his ChemTreat email account and/or ChemTreat computer.

186.    Nalco/Ecolab further believes that Ridley may have shared some of the thousands of Nalco/Ecolab files that he downloaded with his friends and former colleagues who previously worked at Nalco before joining ChemTreat.

187.    Upon information and belief, Ridley has used this information to Plaintiffs' detriment and, if not enjoined, will continue to cause actual and irreparable harm to Plaintiffs.

## COUNT I
### Violation of the Defend Trade Secrets Act
### (Against Ridley and ChemTreat)

188.    Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if set forth herein.

189.    Nalco/Ecolab has developed trade secret information including, but not limited to, technical data, formulas, patterns, compilations, ratios, programs, methods, techniques, processes, know-how, and plans that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

190.    The documents Ridley secretly downloaded and took with him to ChemTreat qualify as and/or contain trade secrets of Nalco/Ecolab subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

191.    The information contained in these documents is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use.  Nalco/Ecolab has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor, including ChemTreat.

FP 43803286.2

192.     Nalco/Ecolab takes, and at all time here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include restricting availability of confidential information to key employees, requiring key employees (like Ridley) to execute agreements with confidentiality provisions and restrictive covenants, physical security measures to protect against the disclosure of sensitive materials to third parties, and IT security efforts.

193.     By secretly downloading Nalco/Ecolab's trade secrets and taking them to a competitor (ChemTreat), Ridley has committed both, an actual and threatened misappropriation and misuse of Nalco/Ecolab's trade secret information in violation of the DTSA which benefitted Ridley and ChemTreat.

194.     Upon information and belief, and as Nalco/Ecolab expects to establish on further investigation and discovery, Ridley has improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) confidential business information and strategies and trade secrets contained in the Nalco/Ecolab documents and information he took from Nalco/Ecolab without authorization and in breach of the Ridley Agreement.

195.     Ridley engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Ridley owed and continues to owe Nalco/Ecolab as a former agent, employee, and representative of Nalco/Ecolab.

196.     As a direct and proximate result of Ridley's actual and threatened misappropriation of Nalco/Ecolab's trade secrets which benefitted Ridley and his subsequent employer ChemTreat, Nalco/Ecolab has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Ridley and ChemTreat are enjoined from engaging in any

FP 43803286.2

further acts of misappropriation and from continued possession in any form of trade secret information belonging to Nalco/Ecolab.

197.    To the extent that Ridley has already provided Nalco/Ecolab's trade secrets or other confidential information to ChemTreat or other third parties, those parties should also be ordered to return and/or destroy that information.

198.    As a direct and proximate result of Ridley's misappropriation, Nalco/Ecolab has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA.   Each of the acts of misappropriation was done willfully and maliciously by Ridley to unfairly compete against Nalco/Ecolab and benefit himself and ChemTreat, thereby, entitling Nalco/Ecolab to exemplary damages to be proved at trial.

199.    ChemTreat is vicariously liable for Ridley's misappropriation, since Ridley improperly used or disclosed Nalco/Ecolab's confidential information/trade secrets while working as an employee of ChemTreat and ChemTreat benefitted from his wrongful actions. Further, ChemTreat's "cleaning" and "redeployment" of Ridley's computer that he used at ChemTreat during the relevant time period is additional culpable conduct under the DTSA and estops ChemTreat from denying that Ridley misappropriated Nalco/Ecolab's confidential information and trade secrets while he was employed by ChemTreat.

## COUNT II
### Breach of Contract
### (Against Ridley)

200.    Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

38

201.    Ridley executed an employment agreement with Nalco/Ecolab (defined previously as the "Ridley Agreement") which imposed upon him contractual obligations regarding restrictions upon becoming employed with a competitor and related non-competition restrictions.

202.    The employment agreement between Nalco/Ecolab and Ridley is a valid and enforceable contract.

203.    Ridley is subject to and legally bound by the promises made in his employment agreement with Nalco/Ecolab.

204.    The restrictive covenants in the Ridley Agreement are reasonable as to time, geographic scope, and scope of restrained activity.  Ridley's employment agreement does not impose restraints on Ridley that are greater than necessary to protect Nalco/Ecolab's interests.

205.    By transferring or uploading Nalco/Ecolab's electronic documents and information to his personal email account, Ridley violated his employment agreement.  By signing the Ridley Agreement, Ridley promised that he would "not transfer or store Company information on any device or other storage medium (physical or virtual) not provided or authorized by the Company unless authorized to do so in writing by the Company."  Nalco/Ecolab did not authorize Ridley to transfer or upload documents or information to his personal email account.

206.    Ridley's employment agreement also contains legally-binding provisions obligating Ridley to return all Nalco/Ecolab's confidential and proprietary information to Nalco/Ecolab upon the separation of his employment from the Company.

207.    Ridley breached this provision of his employment agreement with Nalco/Ecolab by retaining and failing to return Nalco/Ecolab's property and information upon the end of his employment with the Company.

39

208.	Ridley's employment agreement with Nalco/Ecolab also imposed upon him contractual obligations regarding restrictions on the use and disclosure of Nalco/Ecolab's confidential and trade secret information.

209.	The limitations on the use and disclosure of Nalco/Ecolab's confidential information and trade secrets in Ridley's employment agreements are reasonable.

210.	Ridley breached his contractual obligations regarding the use and disclosure of Nalco/Ecolab's confidential information and trade secrets by covertly downloading and, also, taking this information to ChemTreat.

211.	Upon information and belief, Ridley also breached his contractual obligations by retaining, using, and disclosing Nalco/Ecolab's confidential and trade secrets following his separation of employment with Nalco/Ecolab.

212.	Upon information and belief, Ridley has also solicited or transacted business with, or assisted ChemTreat to solicit or transact business with, Nalco/Ecolab customers whom Ridley promised not to solicit or transact business with for a period of one (1) year after his separation from Nalco/Ecolab.

213.	As a direct and proximate result of all of Ridley's breach of his contractual obligations, Nalco/Ecolab has and is being subject to irreparable harm and damages entitling Nalco/Ecolab to an award of injunctive relief and monetary damages.

### COUNT III
**Breach of the Fiduciary Duty of Loyalty**
**(Against Ridley)**

214.	Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

215.	As an Nalco/Ecolab employee, Ridley owed a fiduciary duty of loyalty to Nalco/Ecolab.

FP 43803286.2

216.     Ridley breached his fiduciary duty of loyalty to Nalco/Ecolab by engaging in misconduct that served his own self-interest and the interests of others rather than the interests of Nalco/Ecolab and has acted in a manner inconsistent with the best interests of Nalco/Ecolab – to wit, (a) covertly downloading and then taking Nalco/Ecolab's trade secrets and highly confidential and proprietary information to a competitor, and (b) upon information and belief, disclosing and using that same information for his own personal benefit as well ChemTreat's, all in an effort to illegally compete against his former employer, Nalco/Ecolab.

217.     By secretly downloading Nalco/Ecolab's trade secret, highly confidential, and proprietary information, Ridley breached his duty of loyalty to Nalco/Ecolab.

218.     By taking these stolen files and information to ChemTreat, Ridley breached his duty of loyalty to Nalco/Ecolab.

219.     Ridley's actions, as described in this Count, were intentional, willful and malicious, and demonstrate a complete indifference to, or a conscious disregard for, the rights of Nalco/Ecolab, entitling Nalco/Ecolab to punitive damages.

## COUNT IV
### Inducement of Breach of Fiduciary Duty
### (Against ChemTreat)

220.     Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

221.     Ridley breached his fiduciary duty of loyalty to Nalco/Ecolab and caused Nalco/Ecolab substantial harm.

222.     Upon information and belief, ChemTreat knew of Ridley's conduct, including his disclosure and use of Nalco/Ecolab's stolen trade secrets, highly confidential, and proprietary information.

223.     Upon information and belief, ChemTreat assisted and/or encouraged Ridley in the conduct causing the breach of his fiduciary duty of loyalty.

224.     By aiding and abetting Ridley in his breach of the duty of loyalty, Defendants acted in concert and are jointly liable to Nalco/Ecolab for all damages caused by Defendants' improper conduct.

225.     Upon information and belief, at all times alleged herein, Defendant ChemTreat knowingly permitted, authorized, and ratified Ridley's conduct alleged above to accomplish the unlawful results alleged above.

226.     ChemTreat's conduct in aiding and abetting Ridley in committing the breaches of the duty of loyalty (described above) was a substantial factor in causing the harm suffered by Nalco/Ecolab.

227.     As a direct and proximate result of Defendant ChemTreat's aiding and abetting Ridley's breach of his fiduciary duty of loyalty, Nalco/Ecolab has suffered irreparable harm and damages entitling Nalco/Ecolab to an award of injunctive relief and monetary damages.

228.     ChemTreat's actions, as described in this Count, were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of Nalco/Ecolab, entitling Nalco/Ecolab to punitive damages.

## COUNT V
### Tortious Interference with Contractual Relationships
### Common-law
### (Against ChemTreat)

229.     Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

230.     As set forth herein, Ridley entered into a valid and enforceable employment agreement with Nalco/Ecolab which imposed certain restrictions and obligations upon Ridley

42

including but not limited to: (1) prohibiting employees from transferring or storing Company information onto any device or storage medium (physical or virtual) not provided or authorized in writing by Nalco/Ecolab; (2) prohibiting departing employees from wiping, deleting or transferring any Company data from any electronic devices before returning such devices to the Company; (3) requiring employees who separate from Nalco/Ecolab to return all Company property, data, business information, phones, computers and electronic devices; (4) requiring employees to acknowledge and agree that Nalco/Ecolab has the right to conduct forensic examination(s) of any computers and/or electronic devices in the employees' possession and control if Nalco/Ecolab reasonably believe such devices contain Nalco/Ecolab's confidential or trade secret information; and, (5) prohibiting employees who separate from Nalco from soliciting or transacting business with a limited group of customers for a period of one (1) year after separation of employment.

231.    Upon information and belief, ChemTreat was aware that Ridley was subject to the foregoing covenants and restrictions.

232.    ChemTreat intentionally and without justification interfered with Nalco/Ecolab's contractual relationship with Ridley by inducing, aiding and abetting, and encouraging him to violate his contractual covenants and restrictions with Nalco/Ecolab.  ChemTreat has also intentionally and without justification interfered with Nalco/Ecolab's contractual relationship with other employees who are subject to similar covenants and restrictions by hiring away such employees from Nalco/Ecolab and inducing, aiding and abetting them to violate their own employment agreements.

43

233.    ChemTreat's intentional interference with Nalco/Ecolab's contractual relationship with Ridley directly and proximately caused material breaches of the Ridley Agreement, causing Nalco/Ecolab to suffer irreparable harm and damages.

234.    ChemTreat has acted and is acting with an improper motive and through improper means to procure the breach of, and intentionally interfere with, Nalco/Ecolab's contractual relationships with the Ridley and other Nalco/Ecolab employees by supporting and encouraging them to disregard their contractual obligations and obtaining and benefitting economically from their actions to the detriment of Nalco/Ecolab.

235.    As a direct and proximate result of ChemTreat's conduct in this regard, Nalco/Ecolab has suffered and will continue to suffer irreparable harm and damages.

236.    ChemTreat's actions, as described in this Count, were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Nalco/Ecolab, entitling Nalco/Ecolab to punitive damages.

## <u>COUNT VI</u>
## Procurement of Breach of Contract
## (Against ChemTreat)
(Tenn. Code Ann. § 47-50-109)

237.    Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

238.    Ridley entered into a valid and enforceable employment agreement with Nalco/Ecolab which imposed certain restrictions and obligations upon Ridley including but not limited to: (1) prohibiting employees from transferring or storing Company information onto any device or storage medium (physical or virtual) not provided or authorized in writing by Nalco/Ecolab; (2) prohibiting departing employees from wiping, deleting or transferring any Company data from any electronic devices before returning such devices to the Company; (3)

requiring employees who separate from Nalco/Ecolab to return all Company property, data, business information, phones, computers and electronic devices; (4) requiring employees to acknowledge and agree that Nalco/Ecolab has the right to conduct forensic examination(s) of any computers and/or electronic devices in the employees' possession and control if Nalco/Ecolab reasonably believe such devices contain Nalco/Ecolab's confidential or trade secret information; and (5) prohibiting employees who separate from Nalco from soliciting or transacting business with a limited group of customers for a period of one (1) year after separation of employment.

239.    Upon information and belief, ChemTreat was aware that Ridley was subject to, but had violated or would violate, the foregoing covenants and restrictions.

240.    ChemTreat intentionally refused to order or direct its agent and employee, Ridley during his employment with ChemTreat, to return to Nalco/Ecolab the property, including but not limited to, confidential and trade secret information, which Ridley misappropriated and stole from Nalco/Ecolab, in violation of the Ridley Agreement.

241.    ChemTreat, by inducement, persuasion, or other means, procured Ridley's breach or violation of the Ridley Agreement and the contractual restrictions and covenants set forth therein.

242.    As a direct and proximate result of ChemTreat's conduct in this regard, Nalco/Ecolab has suffered irreparable harm and damages.

243.    ChemTreat is liable pursuant to Tenn. Code Ann. § 47-50-109 to Nalco/Ecolab for treble the amount of damages resulting from or incident to Ridley's breach of the Ridley Agreement, which breach was induced and procured by ChemTreat.

## COUNT VII
### *Respondeat Superior*/Vicarious Liability
### (Against ChemTreat)

244.    Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

245.    Ridley acted within the course and scope of his duties and authority as an agent and/or employee of ChemTreat when committing the actions alleged herein.

246.    Ridley acted with the purpose and intent to serve and benefit ChemTreat when committing the allegations alleged herein.

247.    Ridley benefitted ChemTreat when committing the actions alleged herein.

248.    ChemTreat was aware of Ridley's wrongful conduct and authorized, encouraged or permitted Ridley to commit the wrongful acts alleged herein during the time he was employed by ChemTreat.

249.    Nalco/Ecolab has suffered damages as a result of the wrongful conduct committed by Defendants, and ChemTreat is liable to Nalco/Ecolab under principles *respondeat superior* and vicarious liability for Ridley's conduct.

## COUNT VIII
### Unfair Competition
### (Against All Defendants)

250.    Nalco/Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

251.    Defendants' disclosure of Nalco/Ecolab's confidential information, utilization of such confidential information for Defendants' benefit, and Ridley's deliberate and intentional violations of his obligations to Nalco/Ecolab constitute acts of unfair competition.

46

252.    Upon information and belief, Defendants have wrongfully interfered with Nalco/Ecolab's contractual relationships and business expectancies by utilizing the confidential information that Ridley misappropriated from Nalco/Ecolab.

253.    ChemTreat has engaged in pattern of illegal hiring activity of Nalco/Ecolab employees where ChemTreat has induced and conspired with those individuals to misappropriate Nalco/Ecolab's confidential information and trade secrets and/or breach their employment agreements with Nalco/Ecolab.

254.    Because of Defendants' multiple acts of unfair competition, Nalco/Ecolab has and is being subject to irreparable harm and damages entitling Nalco/Ecolab to an award of injunctive and monetary damages.

255.    Nalco/Ecolab has suffered damages as a result of the wrongful conduct committed by Ridley and ChemTreat, and ChemTreat is liable to Nalco/Ecolab under principles *respondeat superior* and vicarious liability for Ridley's conduct.

## COUNT IX
### Civil Conspiracy
### (Against All Defendants)

256.    Ecolab re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

257.    Upon information and belief, Defendants, with the intent of disrupting, damaging, or taking over Ecolab's business, conspired and agreed that they would commit unlawful acts, including but not limited to violating and breaching Ridley's employment obligations with Ecolab and interfering with Ecolab's contractual relationships.

258.    Further, ChemTreat has engaged in a pattern and practice of hiring several former Nalco/Ecolab employees and inducing them to breach the fiduciary, statutory, and/or contractual obligations to Nalco/Ecolab.

259.    Upon information and belief, ChemTreat hired these employees, including Ridley, with the intent of disrupting, damaging, or taking over Ecolab's business, conspired and agreed that they would commit unlawful acts, including but not limited to violating and breaching their individual employment obligations with Ecolab, and interfering with Ecolab's contractual relationships.

260.    Upon information and belief, Defendants had a meeting of the minds with the object of accomplishing the conduct alleged in this Complaint.

261.    Defendants did perform one or more unlawful, overt acts in furtherance of accomplishing their objectives, as alleged in this Complaint.

262.    Defendants acted willfully and maliciously toward Ecolab's rights and business.

263.    As a direct and proximate result of Defendants' conspiratorial conduct, Ecolab has and is being subject to irreparable harm and damages entitling Ecolab to an award of injunctive relief and monetary damages.

## JURY DEMAND

Nalco/Ecolab respectfully demands a trial by jury on all counts.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts complained of, Plaintiffs Ecolab Inc. and Nalco Company LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water respectfully request that this Honorable Court enter one or more orders granting them the following relief:

A.     A preliminary injunction, and a permanent injunction requiring Defendants (and any persons acting in concert with them or on their behalf) to:

1.  return all Nalco/Ecolab property, including property in electronic form, in their possession and forbidding them from using, disclosing or acquiring said property (as well as any work product derived from Nalco/Ecolab property);

2.  permanently enjoining Defendants from using or disclosing any of Nalco/Ecolab's confidential, proprietary or trade secret information or records which Ridley misappropriated from Nalco/Ecolab and/or which Defendants have retained in their possession, custody or control; provide a full and complete accounting of all electronic devices, email accounts, cloud-storage accounts, and other devices/accounts that have access to any of the information that Ridley improperly downloaded and copied as stated in the Complaint;

3.  subject to the preservation obligations outlined in section (D) below, require Defendants to take all necessary efforts to ensure that all electronic devices, email accounts, and cloud storage accounts do not have access to any of Nalco/Ecolab's trade secrets, confidential information, and/or proprietary information;

4.  take all necessary steps to preserve all potentially relevant evidence regarding the allegations in the Complaint, including, but not limited to, all indicia and

potential evidence relating to Ridley's misappropriation of Nalco/Ecolab's trade secrets and confidential/proprietary information, and ChemTreat's potential access of that same information by (i) any ChemTreat employee and/or (ii) any and all electronic devices, email accounts, cloud-storage accounts, and the like within its possession, custody or control;

5. comply with the obligations in the Ridley employment agreement with Nalco/Ecolab, including but not limited to the noncompetition, confidentiality, and non-solicitation provisions; and

6. make available for inspection and imaging any computers, external storage devices, mobile devices, and all personal Cloud and email accounts used or accessed by Ridley to determine the full extent of Defendants' access, possession, retention, and use of Nalco/Ecolab's confidential information or trade secrets;

B.      An extension of the length of the restrictive covenants set forth in the employment agreements for Ridley for the same amount of time that they have been in violation of the same;

C.      Judgment in favor of Nalco/Ecolab and against Ridley and ChemTreat;

D.      An award to Nalco/Ecolab of actual damages (such as lost profits) and disgorgement of amounts by which Ridley and/or ChemTreat were unjustly enriched, or in the alternative, a reasonable royalty;

E.      Disgorgement and return of wages paid to Ridley by Nalco/Ecolab during Ridley's period of disloyalty;

F.      An award to Nalco/Ecolab of punitive and/or exemplary damages;

FP 43803286.2

G.      An award of treble damages to Nalco/Ecolab for ChemTreats' procurement of breach of contract in violation of Tenn. Code Ann. §47-50-109.

H.      An award to Nalco/Ecolab of pre-judgment and post-judgment interest;

I.      An award to Nalco/Ecolab of its reasonable attorneys' fees and its costs incurred in this action; and

J.      Such other and further relief as this Court deems just and proper.

Dated this 20th day of April 2022.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By Counsel

By:      /s/ J. Gregory Grisham
        J. Gregory Grisham (TN BPR#013810)
        FISHER & PHILLIPS LLP
        1715 Aaron Brenner Drive, Suite 312
        Memphis, Tennessee 38120
        Telephone: 901.526.0431
        Fax: 901.526.8183
        ggrisham@fisherphillips.com

        Pavneet Singh Uppal
        (*pro hac vice to be filed*)
        FISHER & PHILLIPS LLP
        3200 N. Central Avenue, Suite 1550
        Phoenix, Arizona 85012-2487
        Telephone: 602.281.3400
        Fax: 602.281.3401
        puppal@fisherphillips.com

51

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

*COUNSEL FOR PLAINTIFFS*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ J. Gregory Grisham*
J. Gregory Grisham