UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY and CHEMTREAT, INC.,<br><br>    Defendants. | No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CHEMTREAT, INC.'S MOTION TO COMPEL COMPLIANCE WITH THE COURT'S JANUARY 11, 2023 ORDER AND FOR SANCTIONS**

**I.    Introduction**

Defendant ChemTreat, Inc's ("ChemTreat") Motion to Compel Compliance with the Court's January 11, 2023 Order and for Sanctions is a solution in search of a problem. After ChemTreat filed its original Motion to Compel (D.E. 76), its attempt to get this Court to rule on every objection, no matter how warranted, to any of its discovery requests, was thwarted by Plaintiffs' efforts to compromise and move the case forward. Plaintiffs and ChemTreat agreed to the terms of a Joint Submission to resolve the substance of ChemTreat's many complaints, the timing of which was determined by this Court. (D.E. 111). But ChemTreat would not be deterred. It viewed the Order not as a resolution, but as the basis for a new fight. Every time Plaintiffs provided documents or information pursuant to the Order, ChemTreat was quick to invent some type of alleged deficiency. (*See, e.g.,* D.E. 123-2, 123-6). ChemTreat requested a call with this

Court in the midst of the compliance period, while Plaintiffs were producing documents and/or information on a nearly daily basis.

Plaintiffs have complied with the Order. But ChemTreat filed their Motion anyway, as a means to (1) harass Plaintiffs, (2) propound additional discovery, and (3) distract from the real issue of the case—that Defendant Anthony Ridley stole thousands of Plaintiffs trade secrets and brought them to ChemTreat.

For the reasons stated herein, the Court should deny ChemTreat's motion in its entirety.

## II. Plaintiffs Have Complied with the Court's Order Regarding Section I of the Joint Submission

Section I of the Joint Submission concerns the approximately 18 GB of trade secret data that Ridley downloaded from his Ecolab OneDrive account and took with him to ChemTreat. On December 19, 2022, Plaintiffs produced a Digital Guardian Data Loss Prevention ("DLP") report that provided extensive details on the files that Ridley took with him, including the file paths on the OneDrive account from which Mr. Ridley downloaded the thousands of documents as well as the file paths of the destination to which those documents were saved and/or downloaded (such as a LaCie drive). Of course, after downloading the files to external devices, including a LaCie drive and other thumb drives, Ridley then deleted those same files from his OneDrive account in order to deprive Plaintiffs of their possession. Accordingly, Plaintiffs cannot produce that which Ridley misappropriated, downloaded, and deleted. To compound matters, after this litigation commenced, Ridley's employer, ChemTreat forensically wiped and spoliated the computer which it issued to Ridley (onto which Ridley almost certainly transferred the stolen materials at issue). Nevertheless, given the foregoing constraints resulting from the Defendants misconduct, Plaintiffs agreed to, and did, provide considerable information regarding the files that Ridley stole.

2

FP 46336596.1
Case 1:22-cv-00050-TRM-SKL   Document 139   Filed 02/10/23   Page 2 of 15   PageID #: 1861

### A. Plaintiffs Identified Exemplar Documents

The Court's Order required Plaintiffs to identify categories of trade secrets and ten exemplars for each category. (D.E. 111 at 2). Plaintiffs identified categories of trade secrets misappropriated by Ridley. (D.E. 123-1 at 1-11). ChemTreat acknowledges as much.[1] (D.E. 123 at 2). Plaintiffs further identified ten exemplars for each trade secret category. (D.E. 123-1 at 1-11). ChemTreat takes issue, however, with the fact that for a single category of trade secrets—Customer Files & Documents—Plaintiffs identified ten exemplar files rather than ten exemplar documents. But as Plaintiffs repeatedly explained to ChemTreat, for this category, the trade secret is the file—the compilation of individual documents which on their own might not qualify as a trade secret, but which as a collection of documents carefully curated over time constitute a trade secret. Thus, Plaintiffs had no choice to identify entire files rather than individual documents. The fact that the ten exemplar files identified by Plaintiffs included nearly 4,000 individual documents does not suggest any deficiency on the part of Plaintiffs. Rather, it is representative of the scope of Ridley's misappropriation.

ChemTreat's complaint that none of the exemplar files and documents identified by Plaintiffs on January 18 could found on the forensic image of Ridley's OneDrive that Plaintiffs produced likewise rings hollow. (D.E. 123 at 3). Pursuant to the Order, on January 13, 2023,

---

[1] ChemTreat complains that after timely identifying six categories of trade secrets misappropriated by Ridley, Plaintiffs added a seventh category, Customer Contact Information, a week later. (D.E. 123 at 2 n.3). Plaintiffs, of course, reserved the right to supplement their original identification of categories. (D.E. 123-1 at 11). Plaintiffs were clear that the sole document falling under the Customer Contact Information category—Ridley's entire Outlook contact database, which he downloaded to a thumb drive on June 21, 2021, just over a week before his resignation (D.E. 46 at ¶ 98)—could also fall under the Customer Files & Documents category, but that its unique nature merited separate categorization. (D.E. 123-4 at 3-4). ChemTreat's complaint about what it characterizes as "a relatively minor violation of the Court's Order" is emblematic of ChemTreat's excessive, unnecessary motion practice.

3

Plaintiffs produce a forensic image of Ridley's recovered OneDrive as well as the two USB drives that Ridley returned to Plaintiffs' counsel. Plaintiffs recognize that the exemplar files and documents that they identified, all of which Ridley downloaded from his OneDrive account, cannot be found on the recovered OneDrive that they produced to ChemTreat. But this is a problem entirely of Ridley's making, as, beyond just misappropriating thousands of Plaintiffs' trade secret files and documents, Ridley took the added measure of deleting those files from his OneDrive, thus ensuring that Plaintiffs would not have access to them. (D.E. 46 at ¶ 164). Obviously, Plaintiffs cannot provide examples of the actual files that Ridley misappropriated because: (1) he deleted them prior to his departure and (2) ChemTreat wiped his computer subsequent to the initiation of this lawsuit. Plaintiffs violated neither the letter nor the spirit of the Court's Order. They cannot produce what they do not have. As this Court has recognized, given that Ridley deleted the information which he stole from the Plaintiffs and ChemTreat subsequently wiped Ridley's computer, "Plaintiffs … disclosed … electronic file paths [to exemplar client files] which necessarily required Plaintiffs to identify those ten clients." (D.E. 137 at 10).

### B. Plaintiffs Provided a Full Categorization of Trade Secrets

ChemTreat's primary concern with respect to Plaintiffs' categorization of the over sixteen thousand documents misappropriated by Ridley is not that it fails to provide a "[f]ull categorization of all alleged trade secrets" as required by the Order (D.E. 111 at 2), but that it fails to comport with some unnecessary, overly burdensome exercise that ChemTreat is trying to force upon Plaintiffs, one which, importantly, is not required by the Order. The Order does not contain any explicit requirements of how the categorization need be accomplished and, as such, ChemTreat cannot articulate how, precisely, Plaintiffs' categorization is allegedly deficient.

4

FP 46336596.1
Case 1:22-cv-00050-TRM-SKL   Document 139   Filed 02/10/23   Page 4 of 15   PageID #: 1863

On January 25, 2023,[2] Plaintiffs provided ChemTreat with a narrative description of the documents misappropriated by Ridley and the trade secret category in which each document fell. (D.E. 123-4 at 3-4). Using the DLP report as a reference point, Plaintiffs outlined Ridley's daily downloading activity during the weeks prior to his resignation and explained under which trade secret categories each of the files and documents that Ridley downloaded fell. To the extent that ChemTreat is looking for Plaintiffs to annotate each line of the DLP report to identify the category of trade secrets for each of the over 16,000 documents stolen by Ridley, that is not what Plaintiffs agreed to do in the Joint Submission, and, therefore, that is not required by the Order. Plaintiffs have, however, provide ChemTreat with sufficient information that it is able to do so if it so chooses.

Further, ChemTreat inaccurately asserts that Plaintiffs "did not even clarify the question of whether Plaintiffs contended that **all** the documents listed on the DLP report were trade secrets" (D.E. 123 at 7-8), Plaintiffs specifically recognized during a January 31, 2023 conference that a limited number of documents that Ridley copied from his OneDrive account were indeed personal. Plaintiffs' categorization as set forth in its January 25, 2023 correspondence did not assert that any of these personal documents, such as those related to Ridley's fraternity, were Plaintiffs' trade secrets.

---

[2] Plaintiffs admittedly provided this categorization on January 25, 2023. On January 19, 2023, Plaintiffs asked ChemTreat to consent to a brief extension of certain deadlines contemplated by the Order. (D.E. 113-1). Specifically, while Plaintiffs could, and did, provide supplement information responsive to two interrogatories by January 20 pursuant to the Order, they sought to extend the January 20 deadline to respond to certain RPDs to January 25. (*Id.*) Similarly, while Plaintiffs could, and did, provide amended responses to certain RFAs by the January 23 deadline, they sought a brief two-day extension with respect to certain RFP responses and the categorization of trade secrets that were due that day. (*Id.*). After ChemTreat place conditions on any potential extension, Plaintiffs timely requested that the Court briefly (2-3 business days) extend the compliance a limited number of compliance deadlines contained within the Order (D.E. 113), a request which is still pending before the Court.

5

FP 46336596.1
Case 1:22-cv-00050-TRM-SKL   Document 139   Filed 02/10/23   Page 5 of 15   PageID #: 1864

Plaintiffs categorized each of the trade secret files and documents that Ridley misappropriated, and they are therefore in compliance with this portion of the Court's Order.

C. **Plaintiffs Properly Supplemented Their Responses to Interrogatory Nos. 1 and 2**

The Order required Plaintiffs to amend their response to Interrogatory No. 1 to "focus on the substantive basis for the trade secret claim by addressing the requirements for trade secret status under the statutes, including efforts to maintain the secrecy of the information." (D.E. 111 at 4). Plaintiffs did exactly that. They provided the responsive interrogatory information in letter format on January 20, 2023 and then, on January 27, 2023, they served an amended response to Interrogatory No. 1. (D.E. 123-5 at 3-9).[3] In nearly seven single-spaced pages, Plaintiffs explained the basis for the trade secret status, including the independent economic value and efforts to maintain secrecy, of each of the categories of trade secrets, and specifically the exemplar files and documents, that they had previously identified. Plaintiffs discussed, *inter alia*, value to competitors, time and resources spent amassing information, and the use of employment agreements and confidentiality policies. ChemTreat now argues that Plaintiffs' response is deficient because it utilizes the same "substantive basis" to support the trade secret status for multiple exemplar in each category. Of course, ChemTreat does not point to any prohibition in the Order or otherwise articulate why this is not permissible. ChemTreat further alleges that Plaintiffs' supplemental response is deficient because it fails to answer numerous detailed questions that are not found in either Interrogatory No. 1 or the Joint Submission. For example, neither asks for a "quantification or explanation for the 'significant resources'" expended in developing Plaintiffs' trade secrets. Neither ask Plaintiffs to clarify whether "'computer passwords' [are] applied only at

---

[3] Plaintiffs' original interrogatory responses were timely verified, and Plaintiffs will correct the lack of verification for the amended responses.

the desktop level, or is there any password protection at the system, drive, folder, file or document level?" Neither asks Plaintiffs to identify which specific software is used to control employee access to documents. Neither asks Plaintiffs to identify which specific employees have a "need to know" about each specific exemplar document. ChemTreat is correct that Rule 26 permits a party to choose the form of its own discovery (D.E. 123 at 14), but it can point to no rule requiring Plaintiffs to provide responses to questions that have not been asked. Plaintiffs supplemented their Response to Interrogatory No. 1 with information required by the Order—they cannot be compelled to do more.

Plaintiffs likewise supplemented their response to Interrogatory No. 2 to comply with the Order, which required Plaintiffs to address which categories of trade secrets that they identified would be disclosed to customers, and to provide further information for the exemplars in any such categories. (D.E. 111 at 9). Plaintiffs' supplementation explained that Ridley stole entire client files, and while some individual documents within a file may have been shared with a client, the trade secret—the entire client file—was never shared with the client. (D.E. 123-5 at 10). Because the entire client file "would [not] typically be disclosed to customers," Plaintiffs were not obligated to provide any additional information in response to this Interrogatory. There is no deficiency, as Plaintiffs responded to Interrogatory No. 2 as ordered by the Court

### D. Plaintiffs Are Not Obligated to Produce Any Documents with Respect to RFP No. 46.

The Order requires Plaintiffs to produce "the contracts or other documents reflecting the recipient(s)'s agreement to maintain the secrecy of the information disclosed" for all trade secrets that were shared with a customer or third party. (D.E. 111 at 9). Plaintiffs explained during a January 24, 2023 telephone conference, which was followed up on January 25, 2023 with both correspondence and amended discovery responses, that none of the trade secrets that Ridley
7

misappropriated had been shared with customers or other third parties in their entirety. This issue was the subject of substantial discussion with, and questioning by, the Court during the hearing which it conducted on Plaintiffs' Motion to Compel on February 3, 2023. Indeed, as set forth in the Court's Order granting Plaintiffs' Motion to Compel in part, it is "Plaintiffs' position that the compilation of each one of their client files constitutes a trade secret that may have been misappropriated by Ridley." (D.E. 137 at 10.) Thus, there are no contracts "reflecting the recipient(s)'s agreement to maintain the secrecy" of these compilations because such compilations have never been disclosed to any recipients. As explained in Plaintiffs' supplemental response to RFP No. 46 (D.E. 123-4), and as discussed in Section C, *supra*, while certain documents within the trade secret customer files that Ridley stole may have been shared with or received from customers, Plaintiffs have not shared any customer file *in its entirety*. Because Plaintiffs' entire customer files are never shared with the customer in their entirety, there are no agreements between Plaintiffs and their customers requiring the customers to maintain the secrecy of such information. Once again, Plaintiffs cannot produce that which they do not possess.

### III. Plaintiffs Have Complied with the Court's Order Regarding Section II of the Joint Submission

Section II of the Joint Submission relates to ChemTreat's efforts to distract from its spoliation of evidence. ChemTreat, *after Plaintiffs had both raised concerns about Ridley misappropriation and then filed this lawsuit*, forensically wiped the computer that it had issued to Ridley—the very ChemTreat computer that Plaintiffs believe contained their stolen trade secrets. (D.E. 46 at ¶ 173). ChemTreat cannot dispute that it spoliated evidence, so it has focused much of its discovery efforts diverting attention by making its own spoliation claims against Plaintiffs. But, as the documents and information that Plaintiffs produced pursuant to the Order establish, ChemTreat's attempt fails.

## A. Plaintiffs Provided the Agreed-Upon Information About Their Investigation of Ridley

Pursuant to the Court's Order, Plaintiffs supplemented their response to Interrogatory No. 3 to provide background about its investigation of Ridley. (D.E. 123-5 at 11-12). Plaintiffs identified, *inter alia*, the person who requested the DLP report, the date it was requested, the reason it was requested, the date the report was generated, and the person who generated it. (*Id.*) Plaintiffs further described how the report revealed extensive downloading/uploading and other file transfer activity, as well as well as how Plaintiffs' forensic expert debunked the excuses offered up by Ridley for his conduct. Plaintiffs have "pinned down the relevant details regarding the origin of the investigation" as well as "the creation of the DLP report" as required by the Order. Plaintiffs have identified further questions that they have concerning the DLP report. (D.E. 123 at 17 n.16). But those are questions that Plaintiffs can ask in a deposition. The Order required Plaintiffs to provide certain basic information—it did not obligate them to respond to ChemTreat's continuous follow-up questions, and their refusal to do so cannot be misconstrued as non-compliance.

## B. Plaintiffs Provided Information About Ridley's Ecolab Devices

Following Ridley's resignation from ChemTreat, but before the DLP report revealed his misconduct, Ridley returned his laptop computer and an <u>unidentified</u> "mobile drive." Plaintiffs use an outside vendor—Insight—which collects the computers and devices of employees who separate from employment. With respect to the laptop, Plaintiffs confirmed months ago that it "was returned to a vendor, restored to factory setting, and returned to circulation for use by other employees." (D.E. 123-5 at 14). The Court's Order required Plaintiffs to provide "(1) the date on which Plaintiffs directed their IT personnel or vendor to wipe the contents of the laptop; (2) any efforts Plaintiffs took to preserve or image the information on the laptop before it was wiped; (3) the date on which Plaintiffs redeployed the laptop; (4) any efforts Plaintiffs made to recall the laptop from

9

FP 46336596.1
Case 1:22-cv-00050-TRM-SKL   Document 139   Filed 02/10/23   Page 9 of 15   PageID #: 1868

the employee to whom it was redeployed; (5) any efforts Plaintiffs made to recover the information wiped from the laptop (including the date(s) and result(s) of any such effort(s); and (6) the current location of the laptop." Plaintiffs served amended responses to Interrogatory No. 4 on January 27, 2023 pursuant to the Court's Order. (D.E. 123-5 at 13). That response did not include a "date on which Plaintiffs directed their IT personnel or vendor to wipe the contents of the laptop" because there was no such direction.[4] It did not describe "any efforts Plaintiffs took to preserve or image the information on the laptop before it was wiped" because there were no such efforts. It did not describe "any efforts Plaintiffs made to recall the laptop from the employee to whom it was redeployed" because there were no such efforts. As Plaintiffs have already advised, the computer was restored to factory settings before it was redeployed and, as such, no information would be recoverable. And Plaintiffs did not disclose "any efforts Plaintiffs made to recover the information wiped from the laptop" because, once again, no such efforts were made because the information would not be recoverable. Plaintiffs' counsel has very recently discovered information regarding the date that the laptop was redeployed as well as its currently location. Recognizing a continuing duty to supplement their discovery responses as new information is discovered Plaintiffs intend to promptly supplement their response to Interrogatory No. 4 once such information is confirmed.

As for the "mobile drive" that Ridley returned shortly after his resignation, Plaintiffs, pursuant to the Court's Order, supplemented their response to Interrogatory No. 5 on January 27, 2023 to confirmed that the last known whereabouts of the "mobile drive" returned by Mr. Ridley were with Plaintiffs' vendor, Insight, and that it may have been destroyed. But Plaintiffs are unable to say with absolute certainty that the "mobile drive" was destroyed, and as such, they are unable

---

[4] ChemTreat's interpretation of Plaintiffs' amended response to mean that Plaintiffs' vendor wiped all data from the laptop on the very day it was received is not accurate.

to provide any further details regarding such destruction. Once again, Plaintiffs can only provide the information that they have, and a lack of information cannot constitute a violation of the Court's Order.

IV. **Plaintiffs Have Complied with the Court's Order Regarding Section III of the Joint Submission**

Section III of the Joint Submission concerns documents and information related to one category of Plaintiffs' damages. ChemTreat once again attempts to characterize Plaintiffs' refusal to answer questions that it wished it had asked as non-compliance with the Order.

A. **Plaintiffs Responded to RFA Nos. 119, 120, and 121**

ChemTreat does not dispute that Plaintiffs provided amended responses to RFA Nos. 119, 120, and 121 on January 27, 2023 as required by the Court's Order. (D.E. 123 at 21). Rather, ChemTreat argues that Plaintiffs "dodged" these RFAs by responding to them as drafted by ChemTreat. (*Id.*). ChemTreat fully appreciates the precise use of language in discovery. After all, it was ChemTreat that Responded to certain of Plaintiffs' RFPs by redefining terms in the RFPs that had already been defined by Plaintiffs. (D.E. 97 at 16-18). Here, Plaintiffs did not engage in any sort of redefinition. Nor did they attempt to guess what information ChemTreat might be seeking. Rather, Plaintiffs responded to RFA Nos. 119, 120, and 122 exactly as written. ChemTreat does not and cannot explain how such responses are deficient.

B. **Plaintiffs Produced Documents Responsive to RFP Nos. 83 and 84**

RFP No. 83 seeks "[f]or the period January 1, 2016 to the present, all Documents that track, evaluate, or otherwise analyze Your client or Customer turnover." RFP No. 84 seeks, "[f]or the period January 1, 2016 to the present, all Documents that track or indicate the clients, Customers, or accounts Ecolab has lost." Pursuant to the Joint Submission, Plaintiffs agreed to produce response documents limited "to only those customers for which Plaintiffs allege they have suffered

a reduction or loss of business as a result of the conduct alleged in this litigation." (D.E. 111 at 13). Plaintiffs produced a Fact Pack, which contains detail account level information on, *inter alia,* customer revenue. ChemTreat describes this document as "a single heavily redacted spreadsheet." (D.E. 123 at 24). This "single" spreadsheet is indeed heavily redacted, as it contains sensitive financial information for many of Plaintiffs' customers, most of whom are not at issue in this case. And this "single" spreadsheet contains approximately fifteen tabs, some of which have hundreds of columns and thousands of rows. ChemTreat focuses on a single tab of the spreadsheet which it asserts does not contain information through the present. As Plaintiffs noted to ChemTreat during a July 31, 2023 meet and confer call, there is additional, unredacted information on another tab that reflects revenue (or lack of revenue) through the end of 2022 for the specific clients covered by the Order. ChemTreat did not follow up with any further questions, as its focus appears to be filing motions with the Court rather than attempting to resolve discovery disputes. While ChemTreat has expressed its unhappiness that Plaintiffs produced a "single" spreadsheet to address these RFPs rather than multiple documents (*id.*), it has not articulated exactly what information it contends is missing. Nor can it, because Plaintiffs have complied with the Order.

12

FP 46336596.1
Case 1:22-cv-00050-TRM-SKL   Document 139   Filed 02/10/23   Page 12 of 15   PageID #: 1871

V. **Plaintiffs Have Complied with the Court's Order Regarding Section IV of the Joint Submission**

ChemTreat's sole issue with respect to Section IV of the Joint Submission is that Plaintiffs produced documents responsive to RFP Nos. 15-17 and 65 on January 25, 2023, rather than January 23, 2023. Plaintiffs acknowledge the date of their production. However, Plaintiffs note that the Court has repeatedly instructed the Parties to work cooperatively, and Plaintiffs therefor reached out to ChemTreat on January 19, 2023, to request a brief (two day) extension of the compliance deadline with respect to these RFPs. (D.E. 113-1). Because ChemTreat would not agree, Plaintiffs were forced to go to this Court to seek an extension of the production deadline. (D.E. 113). Plaintiffs, as ChemTreat acknowledged, produced responsive documents on January 25, 2023. As such, ChemTreat has what it needs and has not suffered any prejudice.

VI. **Sanctions Are Not Appropriate**

As set forth above, Plaintiffs have complied with the Order and produced the required documents and information. Sanctions are therefore inappropriate here. ChemTreat's general contention is that Plaintiffs did not comply with its own self-serving interpretation of the Order. Plaintiffs obviously disagree with ChemTreat's interpretation of the Order, but even if the Court were to adopt ChemTreat's overly broad, unreasonably burdensome interpretation, Plaintiffs' good faith compliance with what they reasonably understood to be their obligations render sanctions inappropriate and unnecessary. Moreover, even under ChemTreat's reading of the Order, Plaintiffs substantially complied, having (1) sent lengthy correspondence providing multiple categories of information, (2) served supplement RFP, RFA, and Interrogatory Responses, and (3) produced responsive documents. Accordingly, assessing any sanctions against Plaintiffs would be unjust. *See, e.g., Gott v. Neuman & Esser USA, Inc.*, No. 1:19-cv-4-HSM-SKL, 2019 WL 6121118, at *3 (E.D. Tenn. Nov. 1, 2019) (recommending against sanction where there was no "clear and specific

13

FP 46336596.1    Case 1:22-cv-00050-TRM-SKL   Document 139   Filed 02/10/23   Page 13 of 15   PageID #: 1872

effort by Plaintiffs to ignore the Court's Order"); *Rhodes v. Motion Indus., Inc.*, No. 1:07-CV-251, 2008 WL 4646110, at *7 (Oct. 17, 2008) (finding that conduct did not warrant sanctions under Rule 37(b)(2) where Plaintiff responded to most deposition questions and disputed that additional responses were required by an order of the Court). Moreover, ChemTreat has filed its motion to harass and burden Plaintiffs, and it waste of the Court's, as well as Plaintiffs', time and resources should not be rewarded.

## VII. Conclusion

For the foregoing reasons, the Court should deny ChemTreat's Motion to Compel Compliance with the Court's January 11, 2023 Order and for Sanctions.

Dated this 11th day of February 2023.

        Respectfully submitted,

        ECOLAB INC. NALCO COMPANY, LLC
        d/b/a Nalco Water, an Ecolab Company
        and/or Nalco Water,

By:   /s/ Edward G. Winsman
        David J. Walton (*pro hac vice*)
        Edward G. Winsman (*pro hac vice*)
        FISHER & PHILLIPS LLP
        Two Logan Square, 12th Floor
        100 N. 18th Street
        Philadelphia, PA 19103
        Telephone: 610.230.6015/2142
        Fax: 610.230.2151
        dwalton@fisherphillips.com
        ewinsman@fisherphillips.com

        J. Gregory Grisham (TN BPR#013810)
        FISHER & PHILLIPS LLP
        1715 Aaron Brenner Drive, Suite 312
        Memphis, Tennessee 38120
        Telephone: 901.526.0431
        Fax: 901.526.8183
        ggrisham@fisherphillips.com

Pavneet Singh Uppal
(pro hac vice)
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: 602.281.3400
Fax: 602.281.3401
puppal@fisherphillips.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Edward G. Winsman
Edward G. Winsman