United States District Court
Eastern District of Tennessee
At Chattanooga

| | |
|---|---|
| Ecolab, Inc. and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water | No. 1:22-CV-00050 |
| Plaintiffs | TRM-SKL |
| v. | |
| Anthony Ridley and ChemTreat | |
| Defendants | |

## Brief in Support of Anthony Ridley's Motion to Compel

### I. Issues

To decide Ridley's motion, the Court must address the following issues:

1. Rule 33(b)(3) requires interrogatories to "be answered […] under oath." Nalco/Ecolab have only provided unsworn interrogatory responses. Can Nalco/Ecolab refuse to answer interrogatories under oath?

2. Through the meet and confer process, Nalco/Ecolab and Ridley came to an agreement that interrogatories 4, 5, 6, 7, 8, 11 and 17 (as written, as clarified, or as amended (as applicable)) were permissible discovery requests under Rules 26(b)(1) and 33 and that supplemental responses would be forthcoming. But Nalco/Ecolab have failed to provide the agreed supplemental responses. Can Nalco/Ecolab refuse to provide supplemental responses to interrogatories that they agreed should be supplemented and which are facially permissible discovery requests?

3. Rule 11(b)(3) provides that by filing a pleading, the "attorney […] certifies that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, […] [that] [1] ***the factual contentions have <u>evidentiary</u>***

1

*support __or__*, [2] *__if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery__*." Under Rules 33 and 34, does Nalco/Ecolab have to produce information within the scope of discovery, as defined by Rule 26(b)(1), to interrogatories and requests for production after they have certified that there are factual bases for their claims under Rule 11?

4. Nalco/Ecolab cannot withhold factual information, which is not privileged, in discovery. Given that the purported forensic evaluation of Ridley's computer activities includes nonprivileged factual information that Nalco/Ecolab relies upon for their claims and the disclosed circumstances of the investigation indicate no privilege could exist for any documents, can Nalco/Ecolab refuse to disclose this information on the basis of nonexistent privileges?

5. Even if some of the investigation is privileged, Nalco/Ecolab successfully argued that ChemTreat could not shield evidence related to its investigation of ChemTreat's computer systems from discovery when it relied on such investigation for their counterclaims and defenses.[1] Similarly, the ***vast*** majority of Nalco/Ecolab's allegations against Ridley were derived from an alleged forensic investigation of their computer systems, not Ridley's Nalco/Ecolab issued laptop or external hard drive that plaintiffs spoliated,[2] and this is the core information upon which they sued Ridley. Nalco/Ecolab has produced a DLP report, the summary of the apparent investigation, but refuses to produce any information about how it was compiled, who was involved, communications related to this investigation, etc., while intending to rely on this DLP report in this litigation So, in a diametrically opposed position to what they took with ChemTreat, Nalco/Ecolab claim that Ridley cannot get the detail, which would either substantiate their claims of a wholistic and flawless investigation or call into question the legitimacy of what was done (likely the latter), due to privileges. Can Nalco/Ecolab claim privileges and refuse to produce this information when virtually their entire lawsuit turns on evidence they claim was gleaned from such investigation?

6. Rule 37 requires that orders to compel responses to interrogatories and requests for production include appropriate sanctions,

---

[1] *See* [Doc. 95], [Doc. 97], [Doc. 112], and [Doc. 137].

[2] *See generally* Second Amended Complaint [Doc. 46].

particularly attorney's fees and expenses, unless an exception applies. Can Nalco/Ecolab establish an exception to the presumption that Ridley, at bare minimum, is entitled to recover his litigation expenses related to this motion under these facts and circumstances?

## II. Background

Nalco/Ecolab and ChemTreat are competitors in the industrial water treatment systems space.[3] Rather than legitimately compete in the marketplace, Nalco/Ecolab has opted to wage a war with ChemTreat in courtrooms across the United States.[4]

The scorched earth litigation strategy finds its fuel in plaintiffs' frustration that they cannot keep pace with ChemTreat and finds support only in their suspicions, rather than facts, that ChemTreat, somehow and someway, must be unfairly competing with Nalco/Ecolab. Their serial lawsuits then make conjectural and conspiratorial allegations that Nalco/Ecolab ultimately cannot support with evidence, irrespective of the purported evidence's quality, in response to its initial disclosure and discovery obligations – just as is playing out in this lawsuit.

The worst part of their litigation approach, a poor substitute for what should be legitimate marketplace competition, are the employees who unwittingly and unnecessarily get caught in the crossfire of titanic entities like Nalco/Ecolab and ChemTreat – like Ridley in this case and Glanz and Guddendorf in the other cases identified by Nalco/Ecolab.[5] Ridley, like Glanz and Guddendrof, means absolutely nothing to Nalco/Ecolab as ChemTreat alone is its

_____

[3] Second Amended Complaint [Doc. 46], PageID #: 388, ¶ 14.

[4] Second Amended Complaint [Doc. 46], PageID #: 409, ¶ 122.

[5] Second Amended Complaint [Doc. 46], PageID #: 409, ¶ 122.

true quarry. But Ridley constitutes the bridge for Nalco/Ecolab to try to get at ChemTreat and so Nalco/Ecolab will not give Ridley the peace he deserves. In short, Nalco/Ecolab care not a whit about the cataclysmic collateral damage for these individuals that are treated as simple cannon fodder even when they lack evidence to hold these former employees liable.

Despite Nalco/Ecolab's obvious frustration with ChemTreat, they, none-theless, were required to comply with their Rule 11 obligations prior to filing suit against Ridley and ChemTreat. If the Rule 11 due diligence has been per-formed, the plaintiffs should have readily available information and documents to support the allegations that should have been turned over through Rule 26 initial disclosures and in response to discovery requests, including Rule 33 in-terrogatories and 34 requests for production.

Much to Ridley's frustration, Nalco/Ecolab already admitted to failing to fulfill their Rule 11 due diligence obligations in this lawsuit in at least one in-stance – and that was even in their third filed complaint when usually the third time is the charm. They admitted that there was no construction of reality under which they could allege that Ridley supervised Tyler Bates while at Nalco-Ecolab,[6] an allegation that was made simply to try to fit Bates within a pur-ported non-solicitation provision. And so, plaintiffs withdrew the allegations – albeit unofficially via letter rather than by amendment[7] – after including the baseless allegation in their Second Amended Complaint.

Assuming Nalco/Ecolab conducted their Rule 11 due diligence obligations for their remaining allegations in their third complaint, one would presume they could produce information and documents in response to Rules 33 and 34

---

[6] [Doc. 155-1.]

[7] [Doc. 155-1.]

discovery requests. The weight of such evidence, of course, to be later determined, but there should, nevertheless, be evidence of some kind irrespective of its quality.

All of Nalco/Ecolab's allegations, in some form or fashion, emanate from 1) Ridley being employed by Nalco/Ecolab,[8] 2) Ridley allegedly having access to allegedly confidential information belonging to Nalco/Ecolab by reason of his employment,[9] 3) Ridley executing an employment agreement with Ecolab that dictated certain obligations,[10] 4) Ridley allegedly taking Nalco/Ecolab's confidential information/trade secrets through various uploading and downloading maneuvers allegedly in violation of various duties to benefit himself and ChemTreat,[11] and 5) Ridley allegedly intentionally tanking his performance while still employed by Nalco/Ecolab.[12] Ridley denies most of these allegations.[13]

Nalco/Ecolab were required by Rule 11 to either certify that they have reviewed evidence to support the allegations in the complaint or that they suspect such evidence exists based on its investigation of the evidence available to them at the time (often seen as the "upon information and belief" allegation). But here, most of the allegations are unqualified statements of alleged fact – meaning plaintiffs represented to the Court and the defendants that they have reviewed and have such evidence in-hand rather than suspecting that the evidence exists.

---

[8] Second Amended Complaint [Doc. 46], PageID #: 389-91, ¶¶ 20-28.

[9] Second Amended Complaint [Doc. 46], PageID #: 390, ¶ 25.

[10] Second Amended Complaint [Doc. 46], PageID #: 391-95, ¶¶ 29-36.

[11] Second Amended Complaint [Doc. 46], PageID #: 395-407, ¶¶ 37-107.

[12] Second Amended Complaint [Doc. 46], PageID #: 390-91, ¶¶ 26-28.

[13] *See generally* Doc. 79.

Ridley, presuming that Nalco/Ecolab conducted its required Rule 11 investigation, sent out written discovery on November 23, 2022. Ridley's original interrogatories and requests for production were drafted, primarily, to delve into two (2) categories of information.

The first category of allegations center on the alleged misappropriation of trade secrets by Ridley with his Nalco/Ecolab laptop and Nalco/Ecolab LaCie external hard drive,[14] including uploading documents using Live.com,[15] and that Ridley had access to these documents while employed by ChemTreat and likely used them for ChemTreat's benefit.[16] If Nalco/Ecolab complied with their Rule 11 obligations, they should have such evidence readily available, aside from the scant "upon information and belief" allegations related to what Ridley may have done with the allegedly misappropriated documents while at ChemTreat, and should be able to fully respond to Ridley's discovery requests.

Second, Ridley refused to assist a Nalco employee who took his former role, and this refusal to assist someone at another entity do their job was somehow akin to treason to Ecolab.[17] If Nalco/Ecolab complied with their Rule 11 obligations, they should have such evidence readily available and should be able to fully respond to Ridley's discovery requests.

On, or around, January 13, 2023, Nalco/Ecolab purported to respond to Ridley's interrogatories and requests for production. Upon reviewing Plaintiffs'

---

[14] Second Amended Complaint [Doc. 46], PageID #: 395, ¶¶ 37-39; PageID #: 397-99, ¶¶ 46-53; Page ID #: 399-405, ¶¶ 58-93; Page ID #: 407-08, ¶¶ 110-13.

[15] Second Amended Complaint [Doc. 46], PageID #: 395-97, ¶¶ 40-45; PageID #: 399, ¶¶ 55-57; PageID #: 405-06, ¶¶ 94-97; PageID #: 406-07, ¶¶ 103-07; Page ID #: 407-08, ¶¶ 110-13.

[16] Second Amended Complaint [Doc. 46], PageID #: 410-11, ¶¶ 127-131.

[17] Second Amended Complaint [Doc. 46], PageID #: 390-91, ¶¶ 26-28.

6

responses, it is self-evident that Nalco/Ecolab attempted to avoid providing material information of any kind to Ridley.

Ridley contends that a great many of Nalco/Ecolab's discovery responses are woefully inadequate. But rather than move for across the board relief, Ridley requests this Court to compel Nalco/Ecolab to 1) answer the interrogatories under oath as required by Rule 33(b)(3), 2) answer or supplement, as applicable, the responses to interrogatories 4, 5, 6, 7, 8, 11 and 17 as the parties agreed and as would be required by the Rules without such agreement, 3) supplement interrogatories 1 and 2 by identifying any unwritten communications or allegedly unavailable written communications relating to Ridley's alleged refusal to assist the employee, and 4) produce documents or supplement the production to requests for production 28, 45, 46, 55, and 56 that relate to the detail of the investigation underpinning the produced DLP report and that relate to the majority of the allegations in the Second Amended Complaint. He further requests this Court to award him all expenses, including reasonable attorney's fees, related to this motion and his attempts to have Nalco/Ecolab fulfill its discovery obligations pursuant to Rule 37 as is presumed to be appropriate.

### III. Discussion

#### A. Standard.

Under Rule 37, Ridley, as the movant, bears the initial burden to prove the requests are within the scope of discovery but were either unanswered or evasively/incompletely answered.[18] An "evasive or incomplete" answer to an

---

[18] *See e.g. Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D 298, 302 (S.D. Ohio 2010); *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008).

7

Case 1:22-cv-00050-TRM-SKL   Document 160   Filed 02/27/23   Page 7 of 22   PageID #: 2537

interrogatory or production "must be treated as a failure to disclose, answer, or respond."[19]

Rule 26(b)(1) provides the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

When interpreting this definition, federal courts have held that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."[20]

Rule 37 authorizes motions to compel and that sanctions, including litigation expenses, such as reasonable attorney's fees, are presumed to be awarded to the moving party if the motion is granted. Unless exceptions apply, "the court must, after giving an opportunity to be heard, require the party […] whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[21]

**B.  Despite multiple requests, Nalco/Ecolab have refused to serve under oath attestations as required by Rule 33.**

---

[19] Fed. R. Civ. P. 37(a)(4).

[20] *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).

[21] Fed. R. Civ. P. 37(a)(5)(A).

8

Rule 33(b)(3) requires interrogatories to "be answered […] under oath." Nalco/Ecolab's answers, however, are unsworn and Ridley has requested that plaintiffs comply with Rule 33(b)(3) to no avail.

Ridley requests that the Court compel Nalco/Ecolab to comply with Rule 33(b)(3) by answering the interrogatories under oath within five (5) days of the order granting the motion.

**C.  Interrogatories 4, 5, 6, 7, 8, 11 and 17 were agreed to be supplemented as set forth in the confirmation letter on February 1, 2023, but they have not yet been supplemented per the agreement.**

During the meet and confer process, Nalco/Ecolab agreed to supplement their responses to interrogatories 4, 5, 6, 7, 8, 11, and 17 (some as drafted, some with clarification by Ridley of what was sought, and some with voluntary amendments by Ridley). Interrogatory 4, as agreed to be amended, requests identifiers for the last two (2) computers and last two (2) external hard drives issued to Ridley by Nalco/Ecolab. Interrogatory 5 requests internal communications related to such electronic devices. Interrogatory 6 requests external communications related to such electronic devices. Interrogatory 7, as clarified, requests descriptive details of the mobile drive referenced in paragraph 151 of the Second Amended Complaint [Doc. 42]. Interrogatory 8 requests what was done to preserve the identified mobile drive and whether such mobile drive was preserved. Interrogatory 11, as clarified, requests the identities of those involved in investigating the alleged misappropriation of Nalco/Ecolab's documents and details regarding same, but excluding counsel and their work product.

9

Interrogatory 17 requests the identification of each employee or agent that Ridley manage, supervised, or had material contact with on behalf of Ecolab during the last twelve (12) months of Ridley's employment – the original response was such information was still being compiled and would be provided once compiled, but it still has not been provided to Ridley.

These interrogatories were agreed to be relevant and within the scope of discovery by Nalco/Ecolab. They, moreover, are facially relevant and proportionate to the disputes in this lawsuit as required by Rule 26(b)(1).

Accordingly, Ridley requests this Court to compel Nalco/Ecolab to fulfill their agreement by supplementing the above interrogatories, consistent with the agreement and the Rules with such answers being under oath, within five (5) days of the order granting the motion.

**D. Interrogatories 1 and 2 request evidence related to Ridley's alleged refusal to assist Irwin.**

Despite the meet and confer process, Nalco/Ecolab refused to supplement the responses to interrogatories 1 and 2. But those responses fail to fully answer the interrogatories as drafted and Nalco/Ecolab does not get to dictate how Ridley receives information in discovery when the requests fit within Rule 26(b)(1).

Interrogatory 1, in pertinent part, reads,

For your contention in Paragraph 27 of the Second Amended Complaint that "[Ben] Irwin repeatedly asked Ridley for information and documents concerning the scope of service and volume of chemicals which Nalco/Ecolab had previously supplied to the customers whom Ridley had services while he was District Manager," please identify, list, and describe in detail all such requests by Ben Irwin including the date, manner, and substance of the request and the identification of any documents memorializing such request. Provide a summary if any such communication was not memorialized or otherwise preserved.

10

Interrogatory 2, in pertinent part, reads,

For your contention in Paragraph 28 of the Second Amended Complaint that "Ridley refused to provide knowledge, data and documents in his possession sought by Irwin which impeded and impaired Nalco/Ecolab's business operations and its ability to efficiently service its customers which resulted in a loss of business opportunity for Nalco/Ecolab," please identify, list and describe in detail all such refusals by Ridley including the date, manner, and substance of the request and the identification of any documents memorializing such request. Provide a summary if any such communication was not memorialized or otherwise preserved.

These interrogatories seek information related to Nalco/Ecolab's allegation that Ridley breached his fiduciary duty of loyalty.[22]

In response to each interrogatory, Nalco/Ecolab opted to produce documents for any available written communications (some emails), which is permissible under Rule 33(d), but then refused to disclose any alleged written communications that were now unavailable or any unwritten communications, which is impermissible. Instead of disclosing any such communications, Nalco/Ecolab produced approximately seven (7) emails and then stated, "Defendant Ridley will also have an opportunity to seek this information during Mr. Irwin's deposition" in response to both interrogatories 1 and 2.

But Nalco/Ecolab do not get to dictate to Ridley the form of discovery and certainly do not get to require Ridley to go through the expense of deposing Irwin to obtain information requested in interrogatories. The facts that Nalco/Ecolab rely upon to support their contention that Ridley breached this fiduciary duty

_____

[22] Second Amended Complaint [Doc. 46], PageID #: 390-91, ¶¶ 26-28; PageID #: 432-33, ¶¶ 226-29.

are certainly relevant and within the scope of discovery and must be answered in response to the propounded interrogatories.

Accordingly, Ridley requests for this Court to compel Nalco/Ecolab to produce any additional written communications, identify any alleged written communications that are no longer available, and identify any oral or other unwritten communications that are within the subject of interrogatories 1 and 2 within five (5) days of the order granting the motion.

**E.  Nalco/Ecolab refused to produce responsive documents to requests for production 28, 45, 46, 55, and 56 and errantly cited privilege in an effort to shield such documents from discovery.**

The core issue for requests for production 28, 45, 46, 55, and 56 centers on whether Nalco/Ecolab can simultaneously cite the summary of an investigation that they rely upon for their claims but then withhold the facts, details, communications, etc., related to the underlying investigation under the claims of attorney-client privilege and work product doctrine. Nalco/Ecolab cannot do so because 1) Nalco/Ecolab cannot withhold the underlying facts for the DLP report and related investigation under any privilege or doctrine, 2) Nalco/Ecolab cannot demonstrate any privilege or doctrine based on their responses to interrogatories and requests for production as is their burden to demonstrate, and 3) any privilege or doctrine that may have applied at one time has been waived by Nalco/Ecolab since they chose to make the results of its purported investigation central to their claims in this lawsuit.

12

1. **The allegations against Ridley are almost entirely based upon a purported forensic investigation of Nalco/Ecolab's computer systems that are then summarized in the produced DLP report.**

The vast majority of the allegations against Ridley in Nalco/Ecolab's Second Amended Complaint are based upon an alleged analysis of Nalco/Ecolab's computer systems. Pointedly, paragraphs 2, 27-28, 38-107, 110-13, 116-17, 128-46, 148-76, 184-91, 196-200, 189/[202]-200/[213],[23] 202/[215]-212/[225], 214/[227]-225/[238], 230/[243]-236/[249], 237/[250]-243/[256], 249/[262]-255/[268], and A.-B, D., F.-G. all, either in whole or in part, recount the alleged details of an investigation into the computer systems that forms the basis of the lawsuit that was filed against Ridley. Multiple allegations include specific details about the number of documents allegedly downloaded or uploaded, the length of time Ridley allegedly spent on such activities, and paragraph 180 specifically references a "forensic analysis" of a USB drive returned to Nalco/Ecolab by Ridley. But Nalco/Ecolab refuses to provide the documentation underpinning the DLP report, which was produced and Nalco/Ecolab intended to rely upon in this report in this litigation.

Beyond the allegations in the pleadings before the Court, Plaintiffs, through counsel, have represented time and again that they are relying upon this investigation for their claims. ChemTreat recited that history (as well as

---

[23] The numbering in the Second Amended Complaint [Doc. 46] after 200 reset to 188 rather than continued numbering as 201 forward.

certain allegations in the pleadings) in detail on PageID # 2137-42 in Document 152 and Ridley incorporates that recitation here without restating it verbatim.

> ## 2. Nalco/Ecolab refuses to turn over information related to this alleged investigation, even after taking the opposite position with respect to ChemTreat's investigation.

Nalco/Ecolab, despite confirming time and again that there is an investigation that they are relying upon for their allegations, will not turn over such information. They do so despite their contrary position with ChemTreat's argument about the protected nature of its investigation.

In response to interrogatory 11, for example, Nalco/Ecolab stated,

> There is no question that Defendant Ridley downloaded or uploaded over 16,000 files in May and June 2021 as set forth in detail by Plaintiffs in paragraphs 40 through 107 of the Second Amended Complaint, details about Plaintiffs' investigation are simply not relevant nor justified by the needs of the case. For further objection, the investigative details requested in Interrogatory No. 11 seeks the mental impressions of counsel and information protected from disclosure by the attorney work product doctrine. Also, this information improperly seeks the disclosure of information protected by the attorney-client privilege. Without waiving objection, Plaintiffs initially generated a report of Ridley's activity using information collected by Plaintiff's Data Loss Prevention software, Digital Guardian. Plaintiffs' counsel then took over the investigation.

Nalco/Ecolab repeated this response, verbatim, or nearly so, in response to interrogatories 12-14 and requests for production 28, 45, 46, 55, and 56.

This response reveals a number of important things. First, there was a time in which counsel had no involvement in this purported investigation. Second, there is a significant amount of information that is available related to the investigation that led to the produced DLP report, but Nalco/Ecolab wants to utilize the report itself without providing any information into how it was

compiled, who was involved, communications related to this investigation, etc., in response to discovery requests. It appears to be Nalco/Ecolab's position that Ridley must simply take its conclusions as unassailable gospel and Ridley cannot get any information that could possibly corroborate, ***or more likely discredit***, the DLP report.

The irony of Nalco/Ecolab's position on the privileged nature of such evidence is its rank incompatibility with its position about ChemTreat's investigation. On the one hand, Nalco/Ecolab contends that they are entitled to receive documents related to ChemTreat's investigation given its centrality to ChemTreat's counterclaim and defenses – a position this Court found persuasive as reflected in the Order [Doc. 137]. On the other hand, Nalco/Ecolab contends that Ridley cannot receive documents related to the voluminous allegations about his alleged impermissible downloading and uploading of documents, etc., but nevertheless wants to rely on the alleged outcomes of this investigation in this lawsuit.

### 3. Nalco/Ecolab cannot meet its burden to prove privilege to exempt this information from discovery.

Nalco/Ecolab bears the burden to prove the application of any privilege.[24] Ridley contends that Nalco/Ecolab will be unable to prove either the attorney-client privilege or work product doctrine to exempt the withheld information from discovery.

―――――――――――――

[24] *See e.g. Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (citations omitted).

First, no privilege is available to Nalco/Ecolab to shield the underlying facts from disclosure.[25] Consistent with a long line of case, the Western District of Tennessee held, "***the work product doctrine, like the attorney-client privilege, does not protect underlying facts from disclosure***."[26] It further held, "***[a]lthough a party is protected from producing work product documents created by an attorney, the underlying facts contained in that work product can be discovered through the use of interrogatories, depositions, or other means of discovery***."[27] And so, Ridley's discovery requests into the underlying facts of the alleged forensic investigation could ***never*** be the subject to any sort of privilege – attorney-client nor work product – and must be produced by Nalco/Ecolab.

Not only can the underlying facts not be withheld by Nalco/Ecolab under any circumstances but Nalco/Ecolab's discovery responses indicates that the privileges do ***not*** apply to any of the documents. For example, Nalco/Ecolab discloses that the investigation was commenced *prior* to counsel becoming involved as counsel, at some unidentified point in time, took over the investigation after an initial report was made: "Plaintiffs initially generated a report of Ridley's

_____

[25] *See Askew v. City of Memphis*, 2015 U.S. Dist. LEXIS 180889, at *5-10 (W.D. Tenn. July 23, 2015) (citations omitted).

[26] *See Askew*, 2015 U.S. Dist. LEXIS 180889, at *8 (citations omitted) (emphasis added).

[27] *See Askew*, 2015 U.S. Dist. LEXIS 180889, at *8 (citations omitted) (emphasis added).

activity using information collected by Plaintiff's Data Loss Prevention software, Digital Guardian. ***Plaintiffs' counsel then took over the investigation***."[28] Pointedly, the response appears to suggest that counsel got involved only after the report had been compiled in its entirety.

Given this disclosure, Ridley does not believe that 1) the report was being generated for purposes of receiving legal advice, 2) the communications were related to that purpose, or 3) the communications were made in confidence or by a client as would be necessary for the attorney-client privilege to apply.[29] So, Ridley contends there never was a privilege when the attorney-client privilege is to be "narrowly construed and applied only where necessary to achieve its purpose of protecting client communications essential to obtain legal advice."[30] For similar reasons, Ridley does not believe that the report was being "prepared in anticipation of litigation by or for the attorney"[31] since there was no attorney involved until after the report was compiled. And so, neither the cited privilege nor the cited doctrine apply at all.

**4. Nalco/Ecolab waived any privileges or doctrines by using its investigation to support its claims.**

---

[28] (emphasis added)

[29] *Reed*, 134 F.3d 355-56.

[30] *Reed*, 134 F.3d 356. *See also Glazer v. Chase Home Fin. LLC*, No. 1:09-cv-1262, 2015 WL 12733394, at *4 (N.D. Ohio Aug. 5, 2015) (citations omitted) ("It is now generally accepted that communications between an attorney and client of primarily a business nature are outside the scope of the privilege.").

[31] *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 304 (6th Cir. 2002).

17

The waiver aspect of this dispute was addressed at length in the motion to compel filings and resulting order between Nalco/Ecolab and ChemTreat on a remarkably similar issue related to ChemTreat's investigation of its computer system.[32] This Court, consistent with Nalco/Ecolab's position, in Document 137 ruled that a party cannot cite and rely upon an investigation as a core part of its claims and defenses but then withhold the details in discovery on the basis of privilege or doctrine even if such information could theoretically be privileged.

So, whether Nalco/Ecolab can establish the attorney-client privilege and/or the work product doctrine for a certain subset of documents related to this purported investigation ultimately becomes a merely academic discussion as, even if one or both applied at some point in time, Nalco/Ecolab unquestionably waived any privilege that may have applied[33] because "'litigants cannot hide behind the privilege if they are relying on privileged communications to make their case' or, more simply, cannot use the privilege as 'a shield and a sword.'"[34] When a party waives a privilege, it waives the privilege for all documents and

_____

[32] Doc. 95, Doc. 97, Doc. 107, Doc. 112, and Doc. 137.

[33] *In re United Shore Fin. Servs.*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018 (quoting *In re Lott*, 424 F.3d 446, 452-53 (6th Cir. 2005)); *Barnard v. Powell Valley Elec. Coop.*, No. 3:18-CV-537-CEA-DCP, 2021 WL 6275267, at *3 (E.D. Tenn. Mar. 5, 2021) (quoting *In re Columbia/HCA*, 293 F.3d at 306) (whether the work product doctrine was waived is subject to the same analysis as waiver of the attorney-client privilege).

[34] *In re United Shore Fin. Servs.*, No. 17-2290, 2018 WL 2283893, at *2 (quoting *In re Lott*, 424 F.3d at 452-53.

"communications on the same subject matter."[35] And so, waiver occurs when a party affirmatively uses its investigation either to support its claims or its defenses.[36]

Ridley points to this Court's analysis of claims of privilege and waiver of the same in Document 137 on PageID #1830-41 for support of its position that Nalco/Ecolab has put its investigation front and center of this litigation and so must produce the requested documents irrespective of whether they were at one time exempted from discovery. Without the alleged forensic investigation, Nalco/Ecolab would have made no allegations against Ridley at all but the alleged refusal to assist another employee claims are all based on alleged misconduct by Ridley related to downloading and uploading electronic documents that Nalco/Ecolab claim Ridley should not have downloaded or uploaded. And so, Nalco/Ecolab has unquestionably affirmatively used its investigation in this litigation and cannot shield the investigation from discovery through the claim of any privilege or doctrine that may have applied at one time since all have been waived.

_____

[35] *Mooney ex rel. Mooney v. Wallace*, No. 04-1190, 2006 WL 843638, at *8 (W.D. Tenn. July 12, 2006) (quoting *United States v. Skeddle*, 989 F. Supp. 905, 908 (N.D. Ohio 1997)).

[36] *See e.g. In re United Shore Fin. Servs., LLC*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018); *Leibovic v. United Shore Financial Services, LLC*, No. 15-12639, 2017 WL 3704376, at *4 (E.D. Mich. Aug. 28, 2017); *Robinson v. Morgan Stanley*, No. 06 C 5158, 2010 WL 1050288, at *5 (N.D. Ill. Mar. 17, 2010).

19

Accordingly, because no privilege applies and any privilege that could have possibly applied has been waived, Nalco/Ecolab must be ordered to produce the requested documents within five (5) days of the order granting the motion.

**F.   Ridley, at bare minimum, is entitled to recover his reasonable attorney's fees and expenses in bringing this motion as no exception applies under Rule 37(a)(5)(A).**

Ridley is entitled to sanctions, which, at a bare minimum, must include his reasonably attorney's fees and expenses as no exception to the presumption under Rule 37(a)(5)(A) applies. First, answering interrogatories under oath is a fundamental requirement that Nalco/Ecolab disregarded and refused to cure despite repeated requests to do so. Second, Nalco/Ecolab agreed to supplement responses to interrogatories 4, 5, 6, 7, 8, 11 and 17, but failed to supplement as agreed and these interrogatories are clearly within the scope of discovery even without such agreement. Third, interrogatories 1 and 2 seek written communications that are available, the identification of any written communications that are no longer available, and any unwritten/oral communications that are related to Nalco/Ecolab's allegation that Ridley breached his fiduciary duty of loyalty, which are unquestionably within the scope of discovery. Fourth, Nalco/Ecolab's position that its investigation, communications related to the same, and the underlying facts, etc., are exempt from discovery clearly departs from governing law, cannot be credibly argued based upon the disclosure of facts to date, and Nalco/Ecolab's position that ChemTreat's investigative file in whole is

discoverable whereas its investigative file is not smacks of bad faith when Nalco/Ecolab's allegations against Ridley are, nearly in total, based upon this investigation.

### III. Conclusion

Ridley requests this Court to compel Nalco/Ecolab to 1) answer the interrogatories under oath as required by Rule 33(b)(3), 2) answer or supplement, as applicable, the responses to interrogatories 4, 5, 6, 7, 8, 11 and 17 as the parties agreed and as would otherwise be required by the Rules, 3) supplement interrogatories 1 and 2 by identifying any unwritten communications or destroyed written communications relating to Ridley's alleged refusal to assist the employee, and 4) produce documents or supplement the production to requests for production 28, 45, 46, 55, and 56 that relate to the detail of the investigation underpinning the DLP report and that relate to the majority of the allegations in the Second Amended Complaint within five (5) days of the order granting the motion. He further requests this Court award him all expenses, including reasonable attorney's fees, related to this motion and his attempts to have Nalco/Ecolab fulfill its discovery obligations pursuant to Rule 37.

Respectfully Submitted:

**Patrick, Beard, Schulman & Jacoway, P.C.**

By: /s/ *Lance W. Pope*
    Lance W. Pope, BPR No. 025054
    Jeremy M. Cothern, BPR No. 027166
    537 Market Street, Suite 300
    Chattanooga, TN 37402
    (423) 756-7117 – phone
    (423) 267-5032 – fax
    lpope@pbsjlaw.com
    jcothern@pbsjlaw.com

21

## Certificate of Service

I certify that on February 27, 2023, this document has been served upon all the parties via the Court's ECF system.

By: /s/ *Lance W. Pope* _____