UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ECOLAB, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-050-TRM-SKL |
| | ) |
| ANTHONY RIDLEY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is a motion to compel [Doc. 159], filed by Defendant Anthony Ridley ("Ridley").[1] The motion pertains to discovery requests Ridley served on Plaintiffs. The motion is accompanied by a supporting brief [Doc. 160] and a number of exhibits. Plaintiffs filed a response in opposition [Doc. 181], and Ridley filed a reply [Doc. 189]. This matter is now ripe. Neither party requested a hearing, and the Court finds a hearing is not necessary.

For the reasons stated below, Ridley's motion to compel [Doc. 159] will be **GRANTED IN PART AND DENIED IN PART**.

Moreover, given the parties continuing, multiple discovery disputes, and the alleged failure to even cooperatively address discovery that was to be provided by agreement or as ordered, all parties are on **NOTICE** that the Court will not consider discovery disputes concerning particular written discovery requests more than once and additional motions to compel with respect to discovery the Court has already addressed will be summarily dismissed except for motions related

---

[1] The defendants in this case are Ridley and ChemTreat Inc. ("ChemTreat," and collectively, "Defendants"). The plaintiffs are Ecolab, Inc., and Nalco Company, LLC ("Ecolab," "Nalco," and collectively, "Plaintiffs").

to a failure to abide by an agreement or order regarding discovery. While the Court will not consider previously unpresented or inadequately presented argument about another parties' discovery responses/production when the response/production has already been the subject of a motion addressed by the Court, the Court will consider sanctions against any party and/or counsel that the Court finds has failed to timely provide/supplement discovery as ordered or agreed. The parties are reminded of their continuing obligation to supplement discovery responses and to provide all responsive documents and information.

## I. BACKGROUND

The Court's prior Opinions and Orders set forth the factual background as alleged by Plaintiffs, the history of certain aspects of the discovery phase of this case, and applicable legal standards regarding discovery and attorney-client privilege/work product doctrine [Doc. 69, Doc. 137, Doc. 158, and Doc. 192]. The Court presumes familiarity with all such prior Opinions and Orders.

In the instant motion, Ridley requests the Court compel Plaintiffs to:

> 1) answer the interrogatories under oath as required by Rule 33(b)(3),
>
> 2) answer or supplement, as applicable, the responses to interrogatories 4, 5, 6, 7, 8, 11, and 17 as the parties agreed and as would otherwise be required by the Rules,
>
> 3) supplement interrogatories 1 and 2 by identifying any unwritten communications or destroyed written communications relating to Ridley's alleged refusal to assist the employee, and
>
> 4) produce documents or supplement the production to requests for production 28, 45, 46, 55, and 56 that relate to the details of the investigation underpinning the DLP report and that relate to the majority of the allegations in the Second Amended Complaint.

2

[Doc. 159 at Page ID # 2450-51]. Ridley also asks the Court to "award him all expenses, including reasonable attorney's fees, related to this motion and his attempts to have [Plaintiffs fulfill their] discovery obligations pursuant to Rule 37." [*Id.* at Page ID # 2452].

With regard to Ridley's first three issues, Plaintiffs contend they "have already produced much of the requested information or was [sic] in the process of producing the requested information when Ridley filed this motion." [Doc. 181 at Page ID # 2753]. With regard to the fourth point, Plaintiffs "stand on their objections . . . to the extent Ridley seeks irrelevant information or information that is protected by the attorney-client privilege or the work product doctrine." [*Id.*]. Regarding such "privileged information," Plaintiffs argue the motion should be denied because Ridley "has failed to specifically identify what information he is entitled to, its relevance, and any basis to find that Plaintiffs have waived their privilege objections." [*Id.*].

## II. ANALYSIS

### a. Verification of Interrogatories (Issue 1)

Federal Rule of Civil Procedure 33(b) requires that answers to interrogatories be made "under oath" and signed by the "person who makes the answers." Plaintiffs provided the answers on January 28, 2023, but did not produce the sworn signature of the individual who answered the interrogatories until March 13, which is the same day Plaintiffs filed their response to the instant motion to compel. In his reply, Ridley acknowledges receipt of the verification, but he argues the extremely tardy verification caused him prejudice. Specifically, the person who signed and verified the answers, Kerry Mackie, was deposed on March 1, 2023. Ridley represents that "[p]rior to receiving the verification" on March 13, he "did not know who was verifying the interrogatory responses" on behalf of Plaintiffs "and he was, thus, deprived of the opportunity to interrogate Ms.

Mackie on the interrogatory responses." [Doc. 189 at Page ID # 2855]. Ridley further states he raised this issue with Plaintiffs during pre-motion meet and confers.

Plaintiffs do not dispute that the verification page was not timely produced. They also do not dispute that failing to timely produce the verification page constitutes a violation of Rule 33. Accordingly, Ridley's motion to compel is **GRANTED** in this regard. *See Jones v. Am. River Transp. Co., LLC*, No. 19-cv-2558-SHM-tmp, 2020 WL 7865326, at *5 (W.D. Tenn. June 17, 2020) (granting motion to compel where plaintiff failed to timely provide sworn signature page with interrogatory answers (citing Fed. R. Civ. P. 33(b)).

      b.      **Interrogatory Nos. 1, 2, 4, 5, 6, 7, 8, 11, and 17 (Issues 2 and 3)**

Regarding issues 2 and 3, Plaintiffs state they have produced "email correspondence between Mr. Irwin and Ridley" and "documents identifying the last two computer devices Ridley possessed at Ecolab and additional information related to those computers." [Doc. 181 at Page ID # 2754]. They further state they "are finalizing their Supplemental Interrogatory Answers" for the above-listed interrogatories, and that they "anticipate" serving the supplemental answers by March 21, 2023." [*Id.*]. As such, they state Ridley's motion to compel should be denied as to these interrogatories.

      1.      **Supplementation**

March 21 has come and gone. Because the motion became ripe on March 20, the record does not reflect whether Plaintiffs provided the supplemental interrogatory answers. Regardless, Plaintiffs do not dispute they previously agreed to provide the supplemental interrogatory answers by February 1, 2023, nor do they provide any explanation for the nearly two month delay. Ridley's motion is therefore **GRANTED** in so far as it seeks to compel supplemental answers to interrogatory nos. 1, 2, 4, 5, 6, 7, 8, 11, and 17, as reflected in the February 1, 2023, letter from

4

Ridley to Plaintiff.[2] To the extent they have not done so already, Plaintiffs are **ORDERED** to provide the supplemental interrogatory answers, which shall include any documents Plaintiffs agreed to identify or produce in the February 1, 2023, letter [Doc. 159-3] within **THREE DAYS** of entry of this Order. The supplemental interrogatory answers **SHALL** be signed and sworn by the person answering the interrogatories, as required by Rule 33(b).

### 2. Interrogatory Nos. 1 and 2

Interrogatory nos. 1 and 2 and Plaintiffs' responses provide as follows:

> **INTERROGATORY NO. 1:** For your contention in Paragraph 27 of the Second Amended Complaint that **"[Ben] Irwin repeatedly asked Ridley for information and documents** concerning the scope of service and volume of chemicals which Nalco/Ecolab had previously supplied to the customers whom Ridley had services [*sic*] while he was District Manager," **please identify, list, and describe in detail all such requests by Ben Irwin** including the date, manner, and substance of the request and the identification of any documents memorializing such request. Provide a summary if any such communication was not memorialized or otherwise preserved.
>
> [paragraph 27 of the second amended complaint quoted]
>
> **ANSWER:** Objection, Interrogatory No. 1 is unduly burdensome since it requests that Plaintiffs "[p]rovide a summary [of] any communication [that] was not memorialized or otherwise preserved." Without waiving objection, to the extent these documents exist, Plaintiffs will produce under separate cover any emails or other documents that memorialize requests by Mr. Irwin to Defendant Ridley to provide information as referenced in Paragraph 27 of the Second Amended Complaint. Defendant Ridley will also have an opportunity to seek this information during Mr. Irwin's deposition.
>
> **INTERROGATORY NO. 2:** For your contention in Paragraph 28 of the Second Amended Complaint that "**Ridley refused to provide knowledge, data and documents in his possession sought by Irwin** which impeded and impaired Nalco/Ecolab's business

---

[2] The parties agreed Plaintiffs would produce documents in response to certain interrogatory requests [*see* Doc. 159-3], as permitted by Rule 33(d).

> operations and its ability to efficiently service its customers which resulted in a loss of business opportunity for Nalco/Ecolab," **please identify, list and describe in detail all such refusals by Ridley** including the date, manner, and substance of the request and the identification of any documents memorializing such request. Provide a summary if any such communication was not memorialized or otherwise preserved.
>
> [paragraph 28 of the second amended complaint quoted]
>
> **ANSWER:** Objection, Interrogatory No. 2 is unduly burdensome since it requests that Plaintiffs "[p]rovide a summary [of] any communication [that] was not memorialized or otherwise preserved." Without waiving objection, to the extent these documents exist, Plaintiffs will produce under separate cover any emails or other documents that reflect Defendant Ridley's refusal/failure to provide information as referenced in Paragraph 28 of the Second Amended Complaint. Defendant Ridley will also have an opportunity to seek this information during Mr. Irwin's deposition.

[Doc. 159-2 (emphasis added)].

Ridley acknowledges Plaintiffs have produced seven emails, but he objects that Plaintiffs have not identified any written communications that are no longer available or any oral communications. In addition, Irwin, who is referenced in interrogatory nos. 1 and 2, was deposed on March 7, 2023. According to Ridley, Irwin "confirmed at his deposition that Ridley shared, via OneDrive link, documents with Irwin from Ridley's OneDrive folder related to district WL121, which was the district Ridley managed for Nalco and which Irwin took over once Ridley moved to Ecolab," and further that Irwin "confirmed he downloaded the documents Ridley provided and should still have those documents in his current OneDrive account [Doc. 189 at Page ID # 2857 (citing to excerpt of Irwin's deposition testimony at Doc. 189-1)]. Ridley argues: "This email and the shared documents have not been produced, are directly responsive to Ridley's discovery requests, and undermine Nalco/Ecolab's position on the duty of loyalty claim." [*Id.*].

The Court has reviewed the transcript of the cited deposition testimony. It reflects that, at some point while Ridley was still employed by Plaintiffs, Irwin asked Ridley about files previously belonging to an individual named "Austin." Irwin agreed that he asked Ridley: "Since [Austin] left the company, where did those proposals and such end up?" The record does not reflect whether the question was posed via email, messaging app, or otherwise, but it appears Irwin was reading from a transcript of the exchange. In any event, Ridley responded: "Ben, all of Austin's files were transferred to Patrick Sweeney and Bob McClure. Those gentlemen transferred them to John Miller." [Doc. 189-1 at Page ID # 232]. This *could* be responsive to interrogatory no. 1 in that it at least reflects an instance of Irwin asking Ridley for information. However, Ridley does not complain about Plaintiffs' failure to disclose this particular exchange or even refer to it at all in his briefing on the motion to compel (other than by citing to the page number of the deposition transcript where the exchange appears). Instead, Ridley complains only about Plaintiffs' failure to disclose the following exchange:

> Q. Right. You also testified earlier that Anthony sent you a ShareFile link for his WL121 files; is that right?
>
> A. It was labeled "WL121 files." So there wasn't much substance to it.
>
> Q. Did you follow your practice and copy over that entire folder that Anthony sent you to your OneDrive?
>
> . . . .
>
> [A.] I believe so, yes.
>
> . . . .
>
> Q. Do you think you still have those files?
>
> A. I believe I do.

> Q. And are they saved in the same folder structure in your OneDrive as they were when Anthony granted you access?
>
> A. I haven't renamed anything, so, yes, it would have just copied over.
>
> Q. Okay. So when Anthony left the company and you received that e-mail terminating your access to the link, it didn't prevent you from accessing those files in any way; correct?
>
> A. The files that he shared with me, the download files that I saw, I never gained access to those files.
>
> Q. I'm talking about the files that he shared with you.
>
> A. So I have those files.
>
> Q. And so when you received the e-mail that you referenced earlier saying that your access to that OneDrive link was terminated and no longer valid, it did not prevent you from accessing the files that Anthony did share; is that right?
>
> A. That is right.

[Doc. 189-1 at Page ID # 2876-77].

The exchange does not describe a request by Irwin for information from Ridley, nor does it describe a refusal by Ridley to provide information to Irwin. Accordingly, it is not responsive to interrogatory no. 1 or 2. Ridley does not allege it is responsive to any other interrogatories. The motion to compel will therefore be **DENIED** to the extent it seeks to compel Plaintiffs to provide additional information or documents regarding this exchange, testified to by Irwin in his deposition, in response to interrogatory no. 1 or 2.

Plaintiffs' objection that interrogatory nos. 1 and 2 are unduly burdensome because they seek summaries of any responsive communications not memorialized or otherwise preserved, is overruled. Plaintiffs bear the burden "to demonstrate with specificity that a discovery request is unduly burdensome or that the discovery is not discoverable under the Federal Rules." *Brothers*

*Trading Co., Inc. v. Goodman Factors*, No. 1:14-cv-975, 2016 WL 9781140, at *1 (S.D. Ohio Mar. 2, 2016) (collecting cases); *see also Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.,* No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *2 (E.D. Tenn. Sept. 18, 2019) ("A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." (citation omitted)). Plaintiffs have not provided any evidence as to how providing the requested summaries would be burdensome. They do not address this aspect of their initial objection in their response brief at all.

Accordingly, Ridley's motion to compel is **GRANTED IN PART AND DENIED IN PART** as to interrogatory nos. 1 and 2. The motion is **DENIED** to the extent it seeks additional information or documents pertaining to Irwin's deposition testimony quoted above as responsive to interrogatory no. 1 or 2. The motion is **GRANTED** to the extent Plaintiffs have failed to provide summaries of any other responsive requests by Irwin or refusals by Ridley on the basis that doing so is unduly burdensome. Plaintiffs are **ORDERED** to provide such summaries within **THREE DAYS** of entry of this Order.

### 3. Interrogatory Nos. 4, 5, and 6

Interrogatory nos. 4, 5, and 6, and Plaintiffs' responses provide as follows:

> **INTERROGATORY NO. 4:** Identify, list, and describe with specificity **any and all electronic device(s)s that was/were issued to Ridley by Ecolab between April 1, 2015 and present** including the year, make and model of the electronic device(s), a description of its/their intended use, the date that the item(s) was/were purchased or otherwise acquired by Ecolab, the date that the electronic device(s) was/were issued to Ridley, the date that the electronic device(s) was/were returned to Ecolab, the current location(s) of the electronic device(s), whether it/they are available for inspection, and whether any DLP Report(s) was/were taken from the electronic device(s), and if so, by whom.
>
> **ANSWER:** Objections. Interrogatory No. 4 is overbroad in scope and unduly burdensome as it requests information dating back to

9

April 1, 2015, and for periods when there is no allegation of wrongdoing by Ridley. For further objection, information dating back to April 1, 2015, and for periods when there is no allegation of wrongdoing by Ridley is not relevant to a claim or defense of a party or proportional to the needs of the case and Defendant Ridley already knows what computer and electronic devices were issued to him by Plaintiffs during his employment. Subject to and without waiving these objections, Plaintiffs state that Ridley was issued various computers and other electronic devices during his tenure at Nalco Water and Ecolab. At some point, it is believed that Ridley was issued a LaCie external drive that is referenced in the Second Amended Complaint.

**INTERROGATORY NO. 5:** Identify, list, and describe any and all **internal Ecolab communication relating, in any way, to any electronic device(s) referenced in Interrogatory No. 4** and/or Your response thereto.

**ANSWER:** Objections. This is grossly overbroad. As stated, this Interrogatory seeks a list and description of every communication about all devices that Plaintiffs issued to Defendant Ridley during his employment. And Defendant Ridley wants this information as far back as April 1, 2015. There's no legitimate purpose for the stunning overbreadth of this Interrogatory. As such, Plaintiffs assert that Interrogatory No. 5 [and Interrogatory No. 4] is overbroad in scope and unduly burdensome as it requests information dating back to April 1, 2015, and for periods when there is no allegation of wrongdoing by Ridley. For further objection, information dating back to April 1, 2015, and for periods when there is no allegation of wrongdoing by Ridley is not relevant to a claim or defense of a party or proportional to the needs of the case. Further, this Interrogatory may seek the production of information protected by the attorney-client privilege and work-product doctrine. Subject to and without waiving its objections, Plaintiffs are willing to discuss the incredible overbreadth of this Interrogatory with Defendant Ridley to see if there's a way to come to an agreement to narrow this Interrogatory to a reasonable scope. Assuming the parties can agree to a narrowed scope, Plaintiffs anticipate that they will respond to this Interrogatory by producing documents per Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 6:** Identify, list, and describe any and all **communication between You and any third-party relating, in any way, to any electronic device(s) referenced in Interrogatory No. 4** and/or Your response thereto.

> **ANSWER**: Objections. Interrogatory No. 6 [and Interrogatory No. 4] is overbroad in scope and unduly burdensome as it requests information dating back to April 1, 2015, and for periods when there is no allegation of wrongdoing by Ridley. For further objection, information dating back to April 1, 2015, and for periods when there is no allegation of wrongdoing by Ridley is not relevant to a claim or defense of a party or proportional to the needs of the case. Subject to and without waiving its objections, Plaintiffs are willing to discuss the incredible overbreadth of this Interrogatory with Defendant Ridley to see if there's a way to come to an agreement to narrow this Interrogatory to a reasonable scope. Assuming the parties can agree to a narrowed scope, Plaintiffs anticipate that they will respond to this Interrogatory by producing documents per Fed. R. Civ. P. 33(d).

[Doc. 159-2 (emphasis added)].

The February 1 letter indicates the parties agreed to limit these interrogatories **"to the last two (2) computers"** and **"the last two (2) external hard drives" issued to Ridley by Plaintiffs** [Doc. 159-3 at Page ID # 2486 (emphasis added)]. The parties further agreed "the interrogatory answer will provide information for external hard drive devices such as the LaCie drive and not any USB/Flash type drives that [Plaintiffs] may have handed out at trade events." [*Id.*].

Plaintiffs state they "produced documents identifying the last two computer devices Ridley possessed at Ecolab and additional information related to those computers." [Doc. 181 at Page ID # 2754]. In connection with its arguments related to the disputed RFP, which are addressed below, Plaintiffs contend that the documents they have already produced "reflect the location of Ridley's two devices, serial numbers, and the asset portfolio details for the last two devices Ridley was issued at Ecolab from the time they were issued to Ridley." [Doc. 181 at Page ID # 2763]. Plaintiffs contend these documents "further reflect the return of the 'mobile drive' by Ridley to Insight, which is its last documented location." [*Id.*]. Plaintiffs also "refer to documents that Insight produced in response to a subpoena." [*Id.*].

11

Ridley argues the documents Plaintiffs produced "only partially show the return of Ridley's last two (2) computers to [Plaintiffs'] vendor and make a reference to a 'mobile drive' but do not provide a complete picture of the issuance and return of the laptops and critically the documents do not mention the LaCie drive, which is at the heart of this litigation." [Doc. 189 at Page ID # 2858-59]. Ridley asserts the documents partially address interrogatory no. 4, but none of the documents are responsive to interrogatory nos. 5 or 6. Ridley states that during a meet-and-confer phone call, "Plaintiffs indicated they would not produce any email communications or any other documents between Plaintiffs' counsel or Ecolab representatives and individuals at . . . Insight regarding Plaintiffs' or Plaintiffs' counsels' investigation or analysis of . . . the devices[.]" [Doc. 159 at Page ID # 2452]. That particular comment was addressed to the disputed RFP but there is overlap between interrogatory nos. 4, 5, and 6 and the disputed RFP.

Plaintiffs do not address why they have not provided information concerning the last **two** external hard drives issued to Ridley, as they clearly agreed they would. Further, Plaintiffs do not address why communications **not involving counsel**, if any, are shielded from discovery, nor does the record reflect whether they have they produced a privilege log for any such communications not involving counsel.[3] On the other hand, Ridley does not argue Plaintiffs waived any applicable protection by their failure to produce a privilege log.[4] Ridley also seems to have taken the position that he was only issued one external hard drive, yet he is asking the Court to compel an interrogatory response regarding two external hard drives [Doc. 189 at Page ID # 2858 ("Plaintiffs

---

[3] The Court is aware the parties agreed it was unnecessary to provide a privilege log for communications involving counsel on or after February 9, 2022 [Doc. 91].

[4] He only briefly mentions the absence of a privilege log for the first time in his reply, and only then to argue that requiring him to identify documents without a privilege log "would require the impossible." [Doc. 189 at Page ID # 2867]. Yet he asks the Court to order production of such documents.

12

have refused to admit that the LaCie drive referenced throughout their complaint(s) is one and the same as the 'mobile drive' which Plaintiffs admit Ridley returned to their IT vendor Insight")]. Ridley argues Plaintiffs "cannot take the position that the 'mobile drive' which Ridley returned and the LaCie drive are different devices without producing every document and identifying every fact which supports or discredits that assertion." [*Id.* at Page ID # 2859]. Plaintiffs appear to take the position they have done so, except as to "privileged" documents. And while Plaintiffs are certainly required to produce any non-privileged documents and information related to the LaCie Drive, the Court cannot compel Plaintiffs to produce such documents and information if Plaintiffs deny, under oath, that they exist.

The Court declines to order a privilege log for its own review, where the parties have not adequately raised the issue themselves before dragging the Court into yet another discovery dispute over ill-defined documents or information. Nor will the Court allow the parties to file additional motions to compel with respect to discovery responses the Court has already addressed as noted above. All parties are again reminded of the obligation to supplement and provide all responsive documents and information. On this record, Ridley's motion to compel is **DENIED** as to interrogatory nos. 4, 5, and 6. The privilege issues that were adequately raised are addressed in greater detail below.

    c.    **Request for Production ("RFP") Nos. 28, 45, 46, 55, and 56 (Issue 4)**

The disputed RFP and Plaintiffs' responses provide as follows:

> **REQUEST FOR PRODUCTION NO. 28:** Produce any and all documentation relating to Ecolab's use of Digital Guardian software related to any activity of Ridley.
>
> **RESPONSE:** Objection. Request No. 28 is overbroad since it asks Plaintiffs to "[p]roduce any and all documents relating to." "[D]ocument requests seeking 'any and all' documents 'relating to' are overly broad" *Donnelly v. Arringdon Dev., Inc.*, 2005 WL

13

8167556, at *1 (M.D.N.C. Nov. 8, 2005). For further Objection Request No. 28. includes documents protected from disclosure by the attorney client privilege and the attorney work-product doctrine. Without waiving objection, Plaintiffs have produced a copy of the Data Lost Prevention Report.

**REQUEST FOR PRODUCTION NO. 45:** Produce any and all documents and/or communications with any information technology company, including but not limited to Tyger Forensics or Insight Enterprises, Inc, regarding or relating to in anyway the analysis of any activity of Anthony Ridley and the receipt or analysis of any device, including a computer or external hard drive, possessed by Anthony Ridley at any time.

**RESPONSE:** Objection. Request No. 45 is overbroad since it asks Plaintiffs to "[p]roduce any and all documents relating to." "[D]ocument requests seeking 'any and all' documents 'relating to' are overly broad" *Donnelly v. Arringdon Dev., Inc.*, 2005 WL 8167556, at *1 (M.D.N.C. Nov. 8, 2005). For further Objection Request No. 45 includes documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and the privilege afforded communications with expert witnesses. Without waiving objection, Plaintiffs will make an expert disclosure by the deadline in the Scheduling Order and provide chain of custody and Plaintiffs have provided forensic images for the three usb drives received from Ridley's former counsel and the OneDrive.

**REQUEST FOR PRODUCTION NO. 46:** Produce any and all documents relating, in any way, to Insight Enterprises, Inc's possession of any of the electronic devices referenced in the Original Complaint and/or the Second Amended Complaint; including any and all reports, chain of custody forms, and correspondence.

**RESPONSE:** See response to Request No. 45.

**REQUEST FOR PRODUCTION NO. 55:** Produce any and all documents and communications referencing or discussing in any way the current location of the laptop, LaCie hard drive, or "mobile device" that Ridley returned to Insight after his resignation.

**RESPONSE:** Objection. Request No. 55 includes documents protected from disclosure by the attorney client privilege and the attorney work-product doctrine. Without waiving objection, non-

> privileged relevant documents responsive to this Request in Plaintiffs possession will be produced.
>
> **REQUEST FOR PRODUCTION NO. 56:** Produce any and all documents and communications that reference discuss or otherwise state the actions taken by Ecolab and/or Insight related to the laptop, LaCie hard drive, or "mobile device" that Ridley returned to Insight after his resignation.
>
> **RESPONSE:** Objection. Request No. 56 includes documents protected from disclosure by the attorney client privilege and the attorney work-product doctrine. Without waiving objection, non-privileged relevant documents responsive to this Request in Plaintiffs possession will be produced.

[Doc. 159-5].

To the extent any argument is not addressed below, the Court finds such argument is not sufficiently developed or properly supported to warrant the Court's discussion. *See McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."); *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles[.]" (citation omitted)).

A significant portion of Ridley's argument is based on his interpretation of the Court's February 10 Order [Doc. 137]. Because the factual circumstances are not the same, this argument is not persuasive. Moreover, portions of the February 10 Order pertaining to waiver of attorney-client privilege and work product protection issues have been reconsidered for the reasons set forth in the Order on reconsideration [Doc. 192]. Accordingly, to the extent Ridley relies on any findings or reasoning in the Court's February 10 Order, the motion to compel is **DENIED**.

Plaintiffs' argument that the motion should be denied because Ridley fails to "provide any arguments related to the relevance" of the documents sought by these RFP borders on frivolous and is not well-taken.

Ridley argues that his "discovery requests into the underlying facts of the alleged forensic investigation could *never* be the subject to [sic] any sort of privilege – attorney-client nor work product – and must be produced by Nalco/Ecolab." [Doc. 160 at Page ID # 2546]. Any underlying facts generally are not protected, as the Court recently explained [Doc. 192]. Plaintiffs do not appear to dispute this contention. The motion is **GRANTED** as to underlying facts responsive to the RFP. Although not properly addressed with supporting authority by the parties, the Court notes the DLP report appears to reflect such discoverable underlying facts. Underlying facts about why and how the DLP report was created and by whom would likewise appear to be discoverable. Plaintiffs have already been ordered to produce information related to Kristen Mahre's pre-DLP-report investigation [Doc. 158 at Page ID # 2436 (requiring production of details "regarding the origin of the investigation (such as the names and dates for the alleged solicitation of a Nalco/Ecolab employee by ChemTreat that spurred a broader investigation that included Ridley")], and Plaintiffs represent that the testimony of Jennifer Semmler speaks to how the DLP report was generated. As for further "forensic investigation" based on the facts in the DLP report, it appears to the Court this is addressed in Plaintiffs' expert(s') report(s) and testimony. Plaintiffs' expert(s') analysis and reports concerning their analysis of "Ridley's activities as reflected on the DLP report" [Doc. 181 at Page ID # 2758] are subject to the disclosure requirements of Rule 26(b) [*see* Doc. 192]. Ridley does not address this evidence in his briefing or explain what gaps are left.

Beyond those observations, the Court will not endeavor to address whether there are particular discoverable "underlying facts" related to the subject matter of the instant motion to compel, as the parties failed to address any particular "underlying facts" at issue in their filings on the motion. At this late juncture, the Court also will not entertain future motions to compel addressed to underlying facts, nor will the Court address such arguments made in connection with

16

the multiple motions to compel currently pending. Any such motions requesting that underlying facts be disclosed are subject to summary denial.

To the extent this Order does not adequately clarify the relevant issues in Ridley's motion to compel related to the meaning of the term "investigation," the parties are **ORDERED** to confer in person (via telephone or videoconference) in good faith regarding what each means by the term "investigation." The good faith conferral **SHALL** take place within **THREE DAYS** of entry of this Order. The Court trusts that after adequate conferral and consideration the parties will be able to clear up this seemingly basic language issue, exchange any relevant non-privileged documents, and move on.

The RFP are not overly broad or unduly burdensome because they seek "any and all documents relating to" the subject matter of the RFP. The 18-year-old case from the Middle District of North Carolina on which Plaintiffs base this argument is readily distinguishable. *Donnelly v. Arringdon Dev., Inc.*, No. 1:03CV889, 2005 WL 8167556, at *1 (M.D.N.C. Nov. 8, 2005) (finding overbroad requests for "all documents identified in or relied upon in response to any interrogatory"; "any photographs, motion pictures, maps, drawings, diagrams, measurement, surveys or other descriptions in any way concerning the events and happenings alleged in the complaint, or the injuries alleged as a result, made either before, after, or at the time of the incident complained of"; and "all documents relating to or evidencing communication between you or any person acting on your behalf and any resident of Colonial Grand at Arringdon that relates in any way to the subject matter of your complaint"). It also does not appear the parties conferred on this point.

Ridley does not point to any selective disclosures of privileged communications or protected work product. Further, the Court is not persuaded that Plaintiffs will be "forced to draw

17

up" any such protected information in order to prove their claims at trial to give rise to an at-issue waiver of the attorney-client privilege or work product protection. *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (citation omitted). It appears Plaintiff can rely on the factual DLP report, nonprivileged information about the DLP report, and their expert reports and testimony, and Ridley does not persuasively contend otherwise. Accordingly, Ridley is not entitled to privileged communications or protected work product [*see* Doc. 137 and Doc. 192].

As addressed above and in prior Orders, underlying facts responsive to discovery requests are generally not protected. Furthermore, Plaintiffs do not address why communications between themselves and their testifying experts are privileged or otherwise protected. Generally speaking, such communications are not protected. *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185 (11th Cir. 2013) (finding email communications between expert witness and non-attorneys not protected). The Court cannot rule on any particular document or piece of discovery as the parties have not provided any, and it is not clear whether the entities identified in the RFP will be the source of expert testimony.[5] Ridley is likewise not entitled to materials protected by the work product doctrine as defined in Federal Rule of Civil Procedure 26(b)(3), with the caveat that expert materials, as defined and discussed in the Court's prior Order [Doc. 192] are not protected by that particular provision of Rule 26.

Accordingly, the motion to compel is **GRANTED IN PART AND DENIED IN PART** as to RFP nos. 28, 45, 46, 55, and 56. The foregoing analysis should allow the parties to discern what their obligations are with regard to these RFP.

    d.    **Sanctions**

---

[5] Laurence Lieb is apparently the president of Tyger Forensics and Plaintiffs assert they have produced a report compiled by him as part of their expert disclosures [*see* Doc. 181-1 at Page ID # 2781; Doc. 181 at Page ID # 2756].

Truly, there is no excuse for Plaintiffs' failure to timely provide the verification page or the agreed-upon discovery. But Ridley failed to focus his motion to compel on issues the Court can actually address in a more meaningful way. Because the tardy disclosure of Kerry Mackie as the person signing the interrogatory responses may have prevented or hampered Ridley's ability to ask questions about the verified interrogatory responses, however, he will be given an opportunity to again depose Karry Mackie, limited to a time period of the greater of two hours or the time remaining in the seven-hour presumptive limit for depositions, at a mutually convenient time and place agreed to by the parties within the following two weeks. The scope of the deposition shall be limited to questions related to the interrogatory responses.

Consistent with the authority cited in the Court's prior discovery-related Orders, neither side is entitled to any other relief or sanctions based on the record before the Court. *See* Fed. R. Civ. P. 37(a)(5)(C); *see also Robinson v. Mathis*, No. 2:20-cv-02435-SHL-atc, 2021 WL 6804133, at *9 (W.D. Tenn. Sept. 14, 2021) (holding that courts have "greater discretion in deciding whether to award fees and costs under Rule 37(a)(5)(C)" if a motion is granted in part and denied in part than "under subsection (a)(5)(A)" if the motion is granted in its entirety; and, denying partially successful moving party's request for attorney fees where they did not show non-moving party "acted in bad faith").

The Court has repeatedly admonished the parties about their discovery practices and encouraged them to more cooperatively engage in discovery given the little time they left themselves for discovery in this case with the (apparently quixotic) hope the parties would move past such practices. As "hope springs eternal," the parties and counsel are again reminded to comply with all of the Federal Rule of Civil Procedure, including Rule 1.

19

### III. CONCLUSION

For the reasons stated above and to the extent set forth herein, Ridley's motion to compel [Doc. 159] is **GRANTED IN PART AND DENIED IN PART**. For the supplemental interrogatory responses and RFP responses/productions **ORDERED** herein, Plaintiffs are further **ORDERED** to full comply with Federal Rule of Civil Procedure 33, including providing the sworn signature of the individual answering the interrogatories, and Rule 34, including requirements related to objections.

As set forth herein, all parties are on **NOTICE** that the Court will not consider discovery disputes concerning particular written discovery requests more than once and additional motions to compel with respect to discovery the Court has already addressed will be summarily dismissed except for motions related to a failure to abide by an agreement or order regarding discovery. While the Court will not consider previously unpresented or inadequately presented argument about another parties' discovery responses/production when the response/production has already been the subject of a motion addressed by the Court, the Court will consider sanctions against any party and/or counsel that the Court finds has failed to timely provide/supplement discovery as ordered or agreed.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE
