UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, | |
| Plaintiffs, | No. 1:22-cv-00050-TRM-SKL |
| v. | Hon. Travis McDonough |
| ANTHONY RIDLEY and CHEMTREAT, INC., | Magistrate Judge Susan K. Lee |
| Defendants. | |

**PLAINTIFFS ECOLAB INC. AND NALCO COMPANY, LLC'S
MOTION TO EXTEND DISCOVERY DEADLINE**

Plaintiffs Ecolab, Inc. and Nalco Company, LLC ("Plaintiffs"), by and through counsel, hereby request the Court to extend the discovery deadline which is currently set for April 27, 2023, for sixty (60) days, up to and including June 26, 2023. For the reasons set forth below, Plaintiffs respectfully submit that good cause exists for the foregoing request and that an extension is necessary in order to adjudicate this case upon the merits.

I. **A SIXTY-DAY DISCOVERY EXTENSION IS NECESSARY BECAUSE DEFENDANTS CHEMTREAT AND RIDLEY HAVE WORKED IN CONCERT TO DENY PLAINTIFFS CRITICAL DISCOVERY TO WHICH PLAINTIFFS ARE CLEARLY ENTITLED.**

A. **ChemTreat Has Refused to Produce All Repositories of ESI Considered By Its Expert In Violation Of The Court's Order At Doc. 192.**

ChemTreat is attempting to run the clock and deny Plaintiffs critical discovery regarding whether it properly searched ChemTreat's computer and electronic storage systems and whether it possesses the voluminous materials which Defendant Ridley misappropriated from Plaintiffs and took with him to ChemTreat. After months of being recruited by ChemTreat, Defendant Ridley misappropriated and stole a very large volume of Plaintiffs' confidential and trade secret

1

FP 46911155.2
Case 1:22-cv-00050-TRM-SKL   Document 222   Filed 04/21/23   Page 1 of 10   PageID #: 3896

information. Prior to commencing employment with ChemTreat on July 2, 2021, Ridley either copied to an external hard drive or uploaded to his personal email account over 16,000 files containing Plaintiffs' confidential and trade secret information regarding customers, business plans, and other highly valuable information. (DE 46 at ¶¶ 40-107)

ChemTreat has produced a report by its testifying computer forensic expert, James Vaughn, which essentially contends that, irrespective of any trade secret or confidential information which Ridley, its former employee, may have misappropriated from Plaintiffs, "ChemTreat's Systems allegedly do not contain any of that stolen information." In arriving at this alleged expert opinion, Expert Vaughn allegedly searched various repositories of electronically stored information at ChemTreat before arriving at his conclusion that no stolen information made its way to ChemTreat and, essentially, that there was nothing to see. Yet, ChemTreat has refused to produce those same repositories of electronically stored information which its expert considered and which are foundational to his expert opinion.

Pending before the Court at Doc. 193 is Plaintiffs' Emergency Motion to Compel Production of Data Repositories Reviewed by ChemTreat's Computer Forensic Expert, which is incorporated herein by reference. Plaintiffs will not here regurgitate the aforesaid Motion, which is pending adjudication by the Court. However, it is important to note that, on March 28, 2023, this Court ruled that ChemTreat is required to produce "all materials, including privileged materials that Vaughan '*reviewed* or considered' regardless of whether he 'ultimately refers to those materials as a basis for his…opinions.'" (ECF Doc. 192 at 12) (emphasis added) (quoting *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, No. 19-cv-2754-JPM-tmp, 2021 WL 3276608, at *3 (W.D. Tenn. July 30, 2021)). As set forth in Plaintiffs' Emergency Motion at Doc. 193, notwithstanding the foregoing ruling, ChemTreat is refusing to disclose or produce the devices and other repositories of electronically stored information which Expert Vaughn allegedly

2

searched in order to arrive at his "expert" opinion that "ChemTreat systems" do not contain Plaintiffs' trade secret and confidential materials which were stolen by its former employee, Defendant Ridley. As addressed in Plaintiffs' Motion at Doc. 193, ChemTreat's refusal to produce the devices and repositories of electronically stored information which Mr. Vaughn allegedly reviewed and considered in order to arrive at his opinion is simply specious. Clearly, Plaintiffs must be allowed to conduct their own analysis and review of the ChemTreat devices and repositories of electronically stored information. Otherwise, a defendant such as ChemTreat would be free to hire an unscrupulous "expert" to opine that no stolen materials are present on Defendants' computer and electronic systems, but there would be no way for an opposing party to rebut that same expert conclusion – which ChemTreat will undoubtedly seek to present at trial in an attempt to shield itself from liability.

ChemTreat and its attorneys are clearly attempting to deprive Plaintiffs of the discovery and repositories of electronically stored information, which are the subject of Plaintiffs' Motion at Doc. 194, in a brazen attempt to run the clock on discovery. This type of litigation gamesmanship should not be permitted because it not only serves to deprive Plaintiffs of the discovery to which they are entitled, but would also make it impossible to try this case on the merits. Accordingly, Plaintiffs respectfully submit that a 60-day discovery extension is necessary and required.

    **B.    Defendant Ridley Has Refused To Produce A Western Digital Hard Drive Which He Now Admits Contains Full and Partial Backups Of His Nalco Computer.**

During his deposition testimony on April 17, 2023, Defendant Ridley testified that he has a Western Digital external hard drive ("WD Drive") with a 1 terabyte storage capacity (Ex. 1 - Ridley Deposition 72:6-76:12). Defendant Ridley admits that he used that WD Drive to repeatedly back up the contents of his Nalco computer. According to Ridley, he performed five to ten full back ups of his Nalco computer until approximately 2017-2018, and thereafter continued with

3

FP 46911155.2
Case 1:22-cv-00050-TRM-SKL   Document 222   Filed 04/21/23   Page 3 of 10   PageID #: 3898

"partial" back-ups of the contents of his Nalco computer until sometime in 2020 (Ex. 1, 78:4-92:11). In fact, Ridley continued backing up or saving Nalco documents to his WD Drive throughout 2020, even though, by his own admission, those same documents were available to him on Nalco's cloud-based OneDrive account. (Ex. 1, 87:5-89:12)

Having no plausible or innocent reason for why he saved documents available to him on Plaintiffs' OneDrive account to his personally-owned WD Drive through 2020, Ridley chose to tell a preposterous tale during his deposition about how those documents were accidentally saved to his WD Drive:

> Q. Sure. In 2020 the documents that you down -- that you copied to the WD drive, they were all available to you on the OneDrive, correct?
> A. Yes.
> Q. If those documents were available to you on the OneDrive, why did you also copy them to the WD drive?
> A. It is my opinion that those documents got copied to the WD drive in error. There was no reason for them to be on there.
> Q. What was the specific error?
> A. The method that I used to select on a file and drag and drop, if you hover over a file, it could -- or you hover over a device, you can accidentally drop one into a device mistakenly.
> Q. All right. So you're saying that those files, the files that you copied to the WD drive in 2020 from Nalco, were accidentally placed on there.
> MR. POPE: Objection to form. Misstates his testimony.
>
> ...
>
> Q. Is there a difference in your mind between error and accident?
> A. No. Error and accident, in my definition, would be the same.

4

(Ex. 1, 89:8-90:7; 90:18-21)

Ridley's contention that he somehow mistakenly or accidentally copied documents easily available to him on Plaintiffs' cloud-based OneDrive to his WD Drive is absurd because that WD Drive had to be connected to his computer via a USB cable and the power switch to the WD Drive would have to be turned on. (Ex. 1, 78:9-21)

On or about October 2021, Ridley transferred from Nalco to Ecolab. Second Amended Complaint, ¶ 24. During his employment with Plaintiffs, Ridley signed an Employee Sales, Service, Marketing & Inventions Agreement ("Agreement"). (Ex. 2, Agreement.) Pursuant to that Agreement, he agreed to permit Ecolab to take a forensic image of all devices he used to access Ecolab and Nalco information, which includes the WD My Book external hard drive:

> **12.** In the event the Employee violates, or the Company reasonably believes the Employee is about to violate, this Agreement, the Employee agrees that the Company is entitled to injunctive relief to prevent violation(s) and/or preserve the *status quo* and confidentiality of the Company's Confidential Information and Trade Secrets. The Employee agrees that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and the Company will have the right to conduct forensic examination(s) of any computers and/or electronic devices in the Employee's possession or control, if the Company reasonably believes such devices contain Company Confidential Information and/or Inventions. The Employee further agrees that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis.

(Ex. 2, ¶12 (highlight added)). Here, Ridley, has refused to comply with his above contractual promise and will not permit inspection of his WD Drive.

It is important to note that Ridley did not return the full and partial back-ups of his Nalco computer, or for that matter any Nalco documents which he saved to his WD Drive, to Plaintiffs when he departed on July 1, 2021 and joined ChemTreat. (Second Amended Complaint, ¶ 37; Ex. 1, 56:21-57:9). Instead, during his deposition testimony, Ridley disclosed, for the first time, that he used his ChemTreat computer to connect to his WD Drive. (Ex. 1, 61:6-17). Ridley further admitted under oath that he used his ChemTreat laptop after joining ChemTreat on July 2, 2021 to access Nalco documents located on his WD Drive on no less than four times on:

- Two occasions on August of 2021;
- September of 2021; and

- January of 2021. (Ex. 1, 56:21-58:7)

Of course, as the Court is already aware, ChemTreat wiped that same laptop which Ridley used to connect to his WD Drive and access the full or partial backups of his Nalco computer which are on that WD Drive.

Ridley's deposition testimony is in stark contrast to his incomplete, evasive and misleading discovery response to Plaintiffs' Interrogatory No. 2, which sought information on this same topic.

2. State whether You have had (or currently have) access to any Ecolab trade secrets, Confidential Information or proprietary information since the end of your employment with Ecolab. If so, please identify all Documents, Communications, and Storage Media comprising, containing, or concerning Ecolab trade secrets, Confidential Information or proprietary information that you had access to at any time since the end of your employment at Ecolab.

RESPONSE:

Objection: Ridley objects to the terms "trade secrets, Confidential Information, or proprietary information" as vague and ambiguous. Plaintiffs do not define the term "trade secrets" or "proprietary information" in their first set of interrogatories. Accordingly, Plaintiffs have not defined with particularity what information they are seeking. Subject to and without waiving this objection or any other general objection Ridley states he backed up files from his work laptop while employed with Nalco Water to an external hard drive before the company had a cloud based backup system. Ridley did this to ensure the files would not be lost or destroyed in the event his laptop failed or was damaged or stolen. Mr. Ridley believes he backed up the files sometime in 2015 or 2016. Ridley located those files after he left EcoLab in July 2021 and deleted the files. Ridley no longer has access to or a copy of those files. Ridley also located three (3) USB drives that he believes he received at industry events while employed with Nalco Water / EcoLab. Ridley located these USB drives in an old bag after EcoLab initiated this action. Ridley's counsel at the time returned the USB drives to EcoLab pursuant to counsel's instructions. Ridley no longer has access to any files

> that were on those USB drives. By providing this response Ridley does not consent or admit that he possessed or misappropriated in anyway any EcoLab trade secrets, confidential information, or proprietary information.

(Ex. 3, Anthony Ridley's Answers and Objections to Plaintiffs' First Interrogatories.)

To begin with, Ridley's interrogatory response is perjured because it states that "he backed up files from his work laptop while employed with Nalco Water to an external hard drive **before the company had a cloud-based back-up system**." Id. (emphasis added) In actuality, as discussed above, Ridley admitted during his deposition testimony on April 17, 2023, that he continued saving Nalco documents to his external WD Drive even after Plaintiffs had given him a cloud-based OneDrive account. (Ex. 1, 89:8-90:1) The interrogatory response is also perjured because Ridley now admits that he did, in fact, access Nalco documents which he saved and stored on his WD Drive while using a ChemTreat computer on at least four occasions – twice in August of 2021, in September of 2021, and January of 2021. Furthermore, Ridley's interrogatory response does not disclose that he continued saving documents to his external WD Drive through 2020, approximately a year before he joined Nalco's direct competitor ChemTreat. Finally, Ridley's assertion in his above interrogatory response that he no longer has "access" to that WD Drive is intentionally misleading and false. In actuality, Ridley gave his WD Drive to his attorney after he received a cease and desist letter from Plaintiffs. (Ex. 1, 136:1-19)

Nevertheless, despite his contractual obligation pursuant to Section 12 of his Restrictive Covenant Agreement to allow Plaintiffs to inspect that WD Drive, and notwithstanding an inspection request which Plaintiffs served for that WD Drive, Ridley has refused to produce it. Ridley's refusal to permit inspection of his WD Drive is the subject of a separate Motion to Compel which is being filed contemporaneously herewith.

There is simply no excuse for Ridley's refusal to produce his WD Drive which he has belatedly admitted that he used: (1) to perform complete and partial back-ups of his Nalco computer; (2) to save Nalco documents through at least 2020; and (3) which he connected to his ChemTreat laptop (which ChemTreat wiped) to access and review Nalco documents on no less than four occasions in August of 2021, September of 2021, and January of 2021. Although Ridley contends that he has now deleted all Nalco documents from his WD Drive, he also simultaneously contends that he is unsophisticated about IT-related issues. Moreover, Ridley's claim to have deleted all Nalco documents from the WD Drive cannot be taken at face value, given that he used his ChemTreat computer on at least four occasions after joining ChemTreat to access Nalco documents on the WD Drive. Needless to say, neither Ridley nor ChemTreat has allowed any expert to analyze the WD Drive to confirm whether all Nalco documents were deleted, when those deletions took place, whether the allegedly deleted documents are recoverable, and/or whether Ridley is being truthful that, after joining ChemTreat, he only accessed Nalco documents on four occasions.

## II.   CONCLUSION

For the above and foregoing reasons, Plaintiffs respectfully submit that the discovery deadline must be extended by 60 days up to and including June 26, 2023 to permit Plaintiffs to obtain critical discovery which Defendants have wrongfully withheld.

Dated this 21st day of April 2023.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By:   */s/ Pavneet Singh Uppal*
        J. Gregory Grisham (TN BPR#013810)
        FISHER & PHILLIPS LLP

8

1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 901.526.0431
Fax: 901.526.8183
ggrisham@fisherphillips.com

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

Edward G. Winsman
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.2142
Fax: 610.230.2151
ewinsman@fisherphillips.com

Pavneet Singh Uppal
(*pro hac vice)*
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
Telephone: 602.281.3410
Fax: 602.281.3401
puppal@fisherphillips.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*/s Pavneet Singh Uppal*
Pavneet Singh Uppal
