UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ECOLAB INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-050-TRM-SKL |
| | ) | |
| ANTHONY RIDLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiffs'[1] Emergency Motion to Compel Production of Data Repositories Reviewed by ChemTreat's Computer Forensic Expert [Doc. 193].[2] The motion is accompanied by a supporting brief [Doc. 194] and several exhibits. ChemTreat filed a response in opposition [Doc. 210], and Plaintiffs filed a reply [Doc. 216]. Neither side requested a hearing on the motion and the Court finds a hearing is not necessary. The motion is now ripe.

### I.   BACKGROUND

The Court's prior orders set forth the factual background as alleged by Plaintiffs, the history of certain aspects of the discovery phase of this case, and applicable legal standards regarding

---

[1] The plaintiffs in this case are Ecolab Inc. and Nalco Company, LLC ("Ecolab," "Nalco," and collectively, "Plaintiffs"). The defendants are ChemTreat, Inc., and Anthony Ridley ("ChemTreat," "Ridley," and collectively, "Defendants").

[2] Although the motion to compel is titled an "Emergency," it is only an "emergency" in the sense that the parties delayed the initiation of discovery and resolution of discovery disputes, did not accurately estimate the time needed when they obtained an extension of the scheduling order deadlines, and have time and again been unable to resolve discovery disputes causing a significant waste of resources on motion practice as outlined in several prior orders and hearings. Moreover, Plaintiffs did not request expedited briefing or even expedite their reply, which was filed after hours on April 19, 2023, the last possible date it could be filed under applicable rules. *See* E.D. Tenn. L.R. 7.1. Despite that, the Court has given the motion expedited consideration in issuing this Order.

discovery issues [Doc. 69, Doc. 137, Doc. 158, Doc. 192, Doc. 201, and Doc. 212]. The Court presumes familiarity with all such prior orders and will only discuss background information to the extent necessary to address the issues raised by the motion to compel.

The instant motion to compel relates to the parties' expert disclosures. ChemTreat served the expert report of James Vaughn on February 21, 2022 [Doc. 194-1]. The "Conclusions" section of Vaughn's report states:

> Based on the foregoing and relying upon my more than 20 years of experience and expertise as a certified digital forensics examiner, I conclude, based upon the analysis of all evidence available to me, that there is no evidence that Mr. Ridley stored Ecolab's confidential information on ChemTreat's Systems. I further conclude that there is no evidence that Mr. Ridley distributed Ecolab's confidential information to other ChemTreat employees using ChemTreat's Systems. Finally, I conclude that Mr. Ridley may have interacted with a very limited set of documents that bear file names indicating that they may have originated with Ecolab, although he did not upload those documents to ChemTreat's Systems or use ChemTreat's Systems to distribute them. However, because I do not have access to those documents, either from ChemTreat or from Ecolab, I cannot review them to determine whether they contain indicia suggesting they actually belong to Ecolab or contain Ecolab's confidential information.

[Doc. 194-1 at Page ID # 3063].

Vaughn explains that when he refers to "ChemTreat's Systems," he refers to "systems managed by ChemTreat that a user could utilize to distribute data, information, or documents, including cloud-based platforms such as OneDrive, network shared folders, and email." [Doc. 194-1 at Page ID # 3029 n.6]. The phrase does not include "stand-alone devices such as individual laptops." [*Id.*].

On March 5, 2023, just under two weeks after receiving Vaughn's report, Plaintiffs emailed ChemTreat and asked that their expert, Laurence Lieb, be permitted to "have access to all of the devices, accounts, and systems that Mr. Vaughn analyzed as part of his affirmative expert report."

[Doc. 194-2 at Page ID # 3066]. ChemTreat objected, and the parties then began communicating to attempt to resolve the issue. It appears that after a March 13 telephonic "meet and confer," the parties continued to attempt to resolve the issues raised in the instant motion in at least one other phone call and several emails. On March 17, Plaintiffs stated in an email that while they continued to "disagree as to the scope of that to which Plaintiffs are entitled, in partial resolution of that disagreement," they would accept: "(1) the forensic images of the laptops and USB drive referenced in [ChemTreat's prior email] and (2) the document 'hits' from the search terms discussed in Vaughn's report." [Doc. 194-3 at Page ID # 3072]. ChemTreat had previously agreed to provide these items to Plaintiffs.[3]

However, once Plaintiffs indicated they would agree to accept these items in "partial resolution" of the parties' disagreement, ChemTreat stated it would only provide the forensic images of the laptops and USB drive under certain conditions. Of particular interest, ChemTreat required Plaintiffs to agree that Lieb (Plaintiffs' expert) would "certify that he will destroy [the] forensic images within one business day of the close of discovery, and confirm such destruction once it is complete." [Doc. 194-3 at Page ID # 3071]. Plaintiffs refused to agree to that condition on the grounds that the Agreed Protective Order [Doc. 92] should be sufficient, and that "they certainly cannot make such an agreement without knowing what is contained with those materials, or whether any of it might be necessary for trial." [Doc. 194-3 at Page ID # 3070].

In response to Plaintiffs' counteroffer, ChemTreat proposed:

> [W]e are willing to consider modifying this condition for any specific items of evidence that Mr. Lieb demonstrates in his rebuttal report are pertinent to the issues in the case and are necessary for trial. We propose to meet and confer with you after Mr. Lieb has presented his rebuttal report to reach agreement on the specific items

---

[3] ChemTreat stated it would not agree to produce the "document 'hits' in discovery, as (per Vaughn's report) they are not relevant to the issues in the case." [Doc. 194-3 at Page ID # 3075].

3

> of evidence that he may maintain until trial, with any disputes to be resolved by the magistrate, if necessary. Until the parties come to agreement, or until any such disputes are resolved by the magistrate, Mr. Lieb will be permitted to retain the specific items of evidence on which he relies in his rebuttal report, but must certify that he will destroy all other forensic images within five business days of the close of discovery, and confirm such destruction once it is complete.

[Doc. 194-3 at Page ID # 3069]. In the record before the Court, Plaintiffs did not accept or otherwise respond to this last proposal, which ChemTreat sent on March 20.

The parties were also unable to agree on an extension to Lieb's deadline for submitting a rebuttal expert report. Plaintiffs requested a 30-day extension, while ChemTreat only agreed to a 7- or 14-day extension [*see* Doc. 210 at Page ID # 3568 (discussing ChemTreat's proposals for extensions)].

Instead of responding to ChemTreat's March 20 emailed proposal (quoted above), Plaintiffs served Lieb's rebuttal expert report later that same day, which was the deadline for rebuttal expert disclosures. Plaintiffs complain they were forced to do so without their expert "having access to most of the material and data repositories on which Mr. Vaughn relied." [Doc. 193 at Page ID # 3005].

Plaintiffs filed the instant motion to compel on March 29. They ask the Court to compel ChemTreat "to produce to Plaintiffs all documents, data repositories, and other materials that were provided to Mr. Vaughn" [Doc. 193 at Page ID # 3005]. They specifically request:

>   1. Emails contained in the ChemTreat Microsoft (O365) email system or Anthony Ridley for the period May 1, 2021 to March 16, 2022 (including emails that may have been deleted on or after February 9, 2022, when Ecolab alerted ChemTreat to Mr. Ridley's alleged misappropriation);
>
>   2. All OneDrive documents uploaded by or accessible to Mr. Ridley during his employment by ChemTreat (including OneDrive documents Mr. Ridley may have deleted on or after February 9, 2022);

4

      3.      The first laptop issued to Mr. Ridley by ChemTreat;

      4.      The second laptop issued to Mr. Ridley by ChemTreat;

      5.      A USB device returned to ChemTreat by Mr. Ridley upon his termination;

      6.      All emails for the period May 1, 2021, to March 16, 2022 that were contained in the O365 ChemTreat email system of the following custodians:

            a. Clay Cissell;
            b. Steven Leavell;
            c. David Ellis;
            d. John Alcorn;
            e. Albert DeNuncio;
            f. Larry Harmon;
            g. Matthew Hofer;
            h. Michael (Todd) Kraft;
            i. David Pearson;
            j. James (Jim) Shealy;
            k. George Sloan;
            l. John Spalding; and

      7.      All OneDrive documents accessible to or uploaded by:

            a. Clay Cissell;
            b. Steven Leavell;
            c. John Alcorn;
            d. Albert DeNuncio;
            e. Larry Harmon;
            f. Matthew Hofer;
            g. Michael (Todd) Kraft;
            h. David Pearson;
            i. James (Jim) Shealy;
            j. George Sloan;
            k. John Spalding.

      8.      Forensic images of the ChemTreat laptops for the custodians identified in Mr. Vaughn's report.

[Doc. 193 at Page ID # 3006-07]. Plaintiffs "further ask the Court to order ChemTreat to fully respond and supplement its responses to Plaintiffs' Requests for Production Nos. 35, 38, and 40,

consistent with the Court's March 28, 2023 Order" [*Id.* at Page ID # 3007]. These RFP and ChemTreat's responses are set forth below:

**REQUEST FOR PRODUCTION NO. 35:**
All Documents and Communications (including emails, text messages, in- app private messages and chats in software applications with chat functions such as Microsoft Teams, WhatsApp or LinkedIn, and voicemails) **concerning Your investigation, examination, analysis and/or inspection into whether Ridley accessed or used any Ecolab Documents during his employment at ChemTreat.**

**Objections and Responses to Request No. 35:**
ChemTreat incorporates by reference its objections to the defined terms "Documents" and "Communications" and construes those terms consistent with the objections set forth in full above. ChemTreat objects to this Request because the term "Ecolab Documents" is vague and not defined by Plaintiffs, such that ChemTreat does not know how to differentiate that term from Plaintiffs' overbroad definition of "Confidential Information." ChemTreat construes the term "Ecolab Documents" to mean "Confidential Information," and construes that term consistent with the objections set forth in full above. ChemTreat further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks text messages. ChemTreat further objects to this Request to the extent it seeks Documents that are not within ChemTreat's possession, custody, or control, such as LinkedIn and WhatsApp messages. ChemTreat further objects to this Request to the extent it seeks Documents protected by the attorney-client privilege, work product doctrine, or any other applicable privileges. ChemTreat further objects to this Request because it seeks premature expert discovery and Communications with experts that are protected by Federal Rule of Civil Procedure 26. ChemTreat will provide expert discovery in accordance with Rule 26 at the appropriate time.

**REQUEST FOR PRODUCTION NO. 38:**
All Documents and Communications (including emails, text messages, in- app private messages and chats in software applications with chat functions such as Microsoft Teams, WhatsApp or LinkedIn, and voicemails) **concerning the analysis of any ChemTreat Device used by Ridley.**

**Objections and Responses to Request No. 38:**

6

ChemTreat incorporates by reference its objections to the defined terms "Device," "Documents," and "Communications," and construes those terms consistent with the objections set forth in full above. ChemTreat further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks text messages. ChemTreat further objects to this Request to the extent it seeks Documents that are not within ChemTreat's possession, custody, or control, such as LinkedIn and WhatsApp messages. ChemTreat further objects to this Request to the extent it seeks Documents protected by the attorney-client privilege, work product doctrine, or any other applicable privileges. ChemTreat further objects to this Request because the term "analysis" is vague and not defined by Ecolab. ChemTreat further objects to this Request because it seeks premature expert discovery and Communications with experts that are protected by Federal Rule of Civil Procedure 26. ChemTreat will provide expert discovery in accordance with Rule 26 at the appropriate time.

**REQUEST FOR PRODUCTION NO. 40:**
All Documents and Communications (including emails, text messages, in-app private messages and chats in software applications with chat functions such as Microsoft Teams, WhatsApp or LinkedIn, and voicemails) **concerning the analysis of any ChemTreat email account, cloud-storage account, and/or server used or accessed by Ridley.**

**Objections and Responses to Request No. 40:**
ChemTreat incorporates by reference its objections to the defined terms "Documents" and "Communications" and construes those terms consistent with the objections set forth in full above. ChemTreat objects to this Request to the extent it seeks Documents protected by the attorney- client privilege, work product doctrine, or any other applicable privileges. ChemTreat further objects to this Request because the term "analysis" is vague and not defined by Ecolab. ChemTreat further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks text messages. ChemTreat further objects to this Request to the extent it seeks Documents that are not within ChemTreat's possession, custody, or control, such as LinkedIn and WhatsApp messages. ChemTreat further objects to this Request because it seeks premature expert discovery and Communications with experts that are protected by Federal Rule of Civil Procedure 26. ChemTreat will provide expert discovery in accordance with Rule 26 at the appropriate time.

[Doc. 194-4 at Page ID # 3123-28 (emphasis added)].

## II. ANALYSIS

Plaintiffs contend there are several deficiencies with Vaughn's expert report, which, they contend "suggests that ChemTreat put heavy constraints on his investigation." [Doc. 194 at Page ID # 3013]. They emphasize it was in Vaughn's expert report that they only recently learned of what they call a "stunning development;" that is, Ridley used two USB drives to access seven "Ecolab confidential files" while he was working for ChemTreat [*Id.* at Page ID # 3012]. They argue that due to the deficiencies in and constraints on Vaughn's work and report, their own expert "should have an opportunity to review all the sources searched by Mr. Vaughn, and then run whatever searches he believes are necessary to test Mr. Vaughn's opinion that Mr. Ridley did not distribute any Ecolab confidential information using 'ChemTreat's Systems.'" [*Id.* at Page ID # 3013]. They also contend the Court "should order that ChemTreat give Plaintiff's [sic] expert access to the laptops for all the custodians identified in Mr. Vaughn's report." [*Id.*]. They argue this is "the only way to fully test Mr. Vaughn's opinion." [*Id.* (footnote omitted)].

Plaintiffs argue they are entitled to access to these sources pursuant to Federal Rule of Civil Procedure 26(b)(2)(B)(ii), which provides that the report required for specially retained testifying experts must contain "the facts or data **considered** by the witness" in forming their opinions. (Emphasis added). They contend "ChemTreat's refusal to disclose all data that its expert relied on necessarily prejudices Plaintiffs['] right to rebut the expert opinion offered by ChemTreat's expert. . . . Because ChemTreat has refused to disclose 'all evidence available to [Mr. Vaughn],' it has impeded Plaintiffs' ability to rebut [Vaughn's] conclusion[s]." [Doc. 194 at Page ID # 3017]. In other words, Plaintiffs contend Vaughn "considered" all the information in the sources in which

8

he ran his searches, i.e., the OneDrive accounts, email systems, laptops, and other sources listed above.

ChemTreat contends Vaughn did not read or review most of the documents in the ESI sources Plaintiffs seek, and therefore he did not "consider" those materials as that term is used in Rule 26. Furthermore, ChemTreat argues, Vaughn certainly did not "consider" the contents of any laptops or other standalone device other than Ridley's, as his report makes clear that those sources were not included in his search.

Plaintiffs rely in part on *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006), in which the Sixth Circuit noted: "We agree with the district court and the majority view that Rule 26 now requires disclosure of all information provided to testifying experts." Plaintiffs' reliance, however, is misplaced. As argued by ChemTreat, in the *Louisville* case, the Sixth Circuit addressed the intersection of attorney-client privilege/work product doctrine and the expert disclosure requirements under the version of Rule 26 in effect at the time. *See id.* at 713 ("The Authority also challenges the district court's order requiring disclosure of certain documents the Authority gave to its testifying experts. The Authority had opposed disclosure on the ground that the documents were protected by the attorney opinion work product doctrine."); *see also id.* at 714 ("Since the [1993] amendments, two lines of cases have formed regarding protections of work-product associated with those experts. The first holds that attorney work product is not discoverable merely because it has been shared with a testifying expert. The second holds that Rule 26 creates a bright-line rule requiring disclosure of all information provided to testifying experts, including attorney opinion work product." (citing cases)). Whether ChemTreat is required to produce privileged or protected information relied on by Vaughn is not at issue in

9

the instant motion to amend. Rather, the issue is whether Vaughn "considered" the entire contents of the ESI sources in forming his opinions by virtue of running searches on the sources.

Plaintiffs also cite *Gammons v. Adroit Medical Systems*, No. 3:21-CV-173-TAV-DCP, 2022 WL 17640125 (E.D. Tenn. Dec. 13, 2022), and *Euclid Chemical Co. v. Vector Corrosion Technologies, Inc.*, No. 1:05 CV 80, 2007 WL 1560277 (N.D. Ohio May 29, 2007). The issue in *Gammons* was whether Rule 26 "requires the production of the materials the expert relies on **without a formal discovery request**." 2022 WL 17640125, at *2 (emphasis added). The expert specifically identified certain emails as "a source he used to prepare his analysis," and the court ordered the plaintiff to produce the emails. *Id.* at *3, *4. It does not appear there was any dispute the expert had read and considered the emails in connection with forming his opinion.

In *Euclid*, the court addressed disclosure requirements under the pre-2010 version of Rule 26 when an employee of a party or a consulting expert is redesignated as a testifying expert, finding the "primary concern" for such experts "is temporal." 2007 WL 1560277, at *6. The court found that "any data or information" the expert "received, reviewed, read, or authored, relating to the subject matter of the facts or opinions set out in his expert's report, on or after December 21, 2004, must be disclosed and produced." *Id.* Specifically at issue were "attorney opinions" the expert "received at some point regarding the validity of his patents." *Id.* The court found that if the expert "maintains that he unequivocally did not receive, read, or review those opinions in the relevant time period," then the materials "might" not be considered discoverable expert materials. *Id.*

Here, Plaintiffs seek access to the contents of ESI sources containing thousands of documents. Vaughn had access to the documents in these ESI sources and was permitted to upload them "to Nuix, a forensic industry standard database . . . use[d] for processing, searching, and

10

reviewing forensic data." [Doc. 194-1 at Page ID # 3040]. But such a collection of information and documents is a far cry from emails and attorney opinions directed to a testifying expert. It seems undisputed Vaughn did not read or review most of the documents stored on the ESI sources Plaintiffs now seek access to, nor was he provided access to the ESI sources for that purpose.[4] Further, ChemTreat asserts that it provided Plaintiffs with the documents that were "hit" during Vaughn's searches as well as the CrowdStrike log which identifies documents Ridley accessed from an outside drive using his ChemTreat computer. *Cf. Avanos Med. Sales, LLC*, 2021 WL 3276608, at *4 (noting that "[d]istrict courts analyzing what constitutes 'consideration' by an expert have often held that a testifying expert considers a document if he or she reads or reviews the privileged materials before or in connection with formulating his or her opinion," and citing cases (cleaned up)). And perhaps by being given access to the ESI sources, Vaughn "received" or was "provided" the documents stored therein in some vague sense, but not in the sense addressed in the cases cited by Plaintiffs, and not in the sense contemplated by Rule 26 as the Court interprets it. *See Thierot v. Jaspan Schlesinger Hoffman LLP*, No CV 07-5315 (TCP) (AKT), 2011 WL 4543308, at *1, *5 (E.D.N.Y. Sept. 29, 2011) (finding expert did not "consider" a letter where counsel emailed him the letter, but he did not read it because he "presumed it would have contained primarily opinions of counsel"). In addition, as ChemTreat argues, Vaughn certainly did not

---

[4] "The burden of showing that an expert did not consider certain documents in forming his opinion rests with the party resisting disclosure." *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, No. 19-cv-2754-JPM-tmp, 2021 WL 3276608, at *4 (W.D. Tenn. July 30, 2021) (citation omitted). "Although an expert's representation as to whether or not he considered a document is not controlling, his testimony that he did not receive, read, review or author a document will negate discovery absent persuasive evidence to the contrary. *Id.* (citation omitted). Ambiguities "are resolved in favor of discovery." *In re Davol, Inc./C.R. Bard Inc.*, No. 2:18-md-2846, 2021 WL 2280657, at *2 (S.D. Ohio June 4, 2021). Accordingly, if Plaintiffs do dispute whether Vaughn read or reviewed a document that ChemTreat has not produced, ChemTreat is required to either produce the document or provide proof Vaughn did not consider it. This is, of course, a different issue from Plaintiffs' interpretation of "considered."

11

"consider," within the meaning of Rule 26, the documents stored on the ESI sources that Vaughn did not search, such as the laptops and other standalone devices belonging to custodians other than Ridley.

In reply, Plaintiffs point out that Vaughn's opinion is not based strictly on the documents identified in Vaughn's searches; rather, Vaughn's opinion is based on his forensic analysis of ChemTreat's systems: "His opinion is based on the database itself, specifically that there is no Ecolab or Nalco information in that database. Thus, because he searched 'ChemTreat's Systems' and opined that 'ChemTreat's Systems' did not have any Nalco or Ecolab information, he most definitely 'considered' 'ChemTreat's Systems' as part of his opinion." [Doc. 216 at Page ID # 3775]. There is some appeal to Plaintiffs' argument, but they do not cite any analogous authority, wherein a court has ordered the type of access Plaintiffs seek under similar circumstances. Moreover, Plaintiffs have been given extensive information regarding the nature of Vaughn's searches. To the extent Plaintiffs challenge the adequacy of Vaughn's opinion, Plaintiffs will have the opportunity to cross examine Vaughn regarding why, for example, he did not search any standalone devices other than those belonging to Ridley.[5] And Plaintiffs can argue at the appropriate juncture that Vaughn's opinion is limited to "ChemTreat's Systems," as defined in his report.

The Court observes that "federal cases have allowed a requesting party's own expert to examine hard drives," *Source One Direct, Inc. v. Digitas, Inc.*, No. 1:11-CV-012620JEC-AJB,

---

[5] On a related note, the Court declines to consider Plaintiffs' alternative request that the Court "strike [Vaughn's] opinion altogether." As far as the Court can tell, Plaintiffs make this request for the first time in their reply. *See Walter v. Auto-Owners Mutual Ins. Co.*, No. 3:15-CV-535-TAV-DCP, 2018 WL 3848400, at *2 (E.D. Tenn. Aug. 13, 2018) (finding that "[c]ourts generally do not consider issues raised for the first time in a reply brief" and citing cases). Moreover, the Court does not find ChemTreat has committed a sanctionable discovery offense related to the instant motion.

12

2011 WL 13319641, at *7 (N.D. Ga. June 29, 2011) (citing cases), and "computer server[s]," *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000). However, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (citation omitted); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007) ("Plaintiff's few allegations of misconduct, which are adequately explained by defendant, simply do not justify Court-mandated access to defendant's information storage systems."). Courts consider the breadth of the electronic search requested as well as privacy and privilege concerns. *Delta T, LLC v. Williams*, 337 F.R.D. 395, 400-01 (S.D. Ohio 2021).

Plaintiffs do attempt to imply improper conduct on behalf of ChemTreat, contending that ChemTreat disclosed for the first time in Vaughn's report that Ridley accessed seven Ecolab documents by connecting USB drives to his ChemTreat laptop. ChemTreat responds that this information has always been available to Plaintiffs on the CrowdStrike log, which ChemTreat provided to Plaintiffs in December 2022 and which was relied on by Plaintiffs' own expert in his report [Doc. 210 at Page ID # 3581]. Plaintiffs do not address the CrowdStrike log in their reply. In any event, the Court, in its discretion, will require ChemTreat to provide the forensic images of Ridley's laptops and USB drive the parties previously discussed.

Plaintiffs also complain that Vaughn's search did not reveal a "business plan," which ChemTreat has produced in discovery. Again, this strikes the Court has fodder for cross-examination of Vaughn, not evidence of malfeasance by ChemTreat to justify intrusion into their IT systems by Plaintiffs at this very, very late stage of discovery.

13

Plaintiffs also contend they need access to the ESI sources so their expert can properly rebut Vaughn's opinion that there is no evidence Ridley stored or distributed any documents containing Plaintiffs' confidential information on "ChemTreat's Systems." To the extent this is not already addressed herein, the Court finds Plaintiffs can challenge Vaughn's opinion(s) in cross examination. Furthermore, Plaintiffs have attempted to raise this issue for the first time with less than a month left for discovery. The parties' ESI protocol [Doc. 91], filed months ago, provides: "A Producing Party shall neither be obligated to create and/or produce a copy of a database, nor provide another Party with access to a database except as required by Federal Rule of Civil Procedure 34." [*Id.* at Page ID # 1075]. Inexplicably, Plaintiffs do not address this provision of the ESI protocol, which they agreed to months prior.

To the extent Plaintiffs argue in the alternative that their discovery requests, specifically RFP nos. 35, 38, and 40, justify granting them access to ChemTreat's ESI sources, their argument is not well-taken. Their argument does not address Rule 34 and is not properly developed or supported with any relevant authority [*see* Doc. 194 at Page ID # 3018]. *See McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."); *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles[.]" (citation omitted)).

The foregoing notwithstanding, as noted above, the Court, in its discretion, will require ChemTreat to provide Plaintiffs with the forensic images of the three laptops and the USB device the parties previously discussed via email [Doc. 194-3] in the lead-up to the filing of the instant motion to compel. ChemTreat **SHALL** provide such forensic images to Plaintiffs within **THREE DAYS** of entry of this Order.

The parties do not address in their briefing, other than briefly by way of background, the issue of whether Plaintiff's expert Lieb should be required to destroy these materials shortly after the close of discovery. The parties and Lieb will be required to comply with the requirements of the Agreed Protective Order [Doc. 92], and the parties may not impose other conditions except by agreement.

To the extent there are other issues asserted by the parties not specifically addressed herein, the Court finds it is unnecessary to address such issues, for example ChemTreat's argument that any opinion from Lieb regarding ESI sources that Vaughn did not search is not a proper rebuttal; or such issues were not properly developed, for example Plaintiffs' argument mentioned above that Plaintiffs are required to produce the ESI sources/databases in response to RFPs no. 35, 38, and 40. The Court also notes Plaintiffs have already filed a motion to compel concerning RFP no. 35 and they did not raise the issues asserted in the instant motion at that time.

## IV. CONCLUSION

For the reasons stated above, and to the extent set forth herein, Plaintiffs' Emergency Motion to Compel Production of Data Repositories Reviewed by ChemTreat's Computer Forensic Expert [Doc. 193] is **GRANTED IN PART AND DENIED IN PART**.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE