# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

ECOLAB INC., and NALCO COMPANY,
LLC d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

     Plaintiffs,

v.

ANTHONY RIDLEY and CHEMTREAT,
INC.,

     Defendants.

No. 1:22-cv-00050-TRM-SKL

Hon. Travis McDonough

Magistrate Judge Susan K. Lee

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL RIDLEY'S COMPLIANCE WITH PLAINTIFFS' RULE 34 REQUEST TO INSPECT RIDLEY'S WD DRIVE AND OTHER DEVICES AND ACCOUNTS

Plaintiffs, Ecolab Inc. ("Ecolab") and Nalco Company LLC d/b/a Nalco Water ("Nalco", and collectively, "Plaintiffs") hereby move this Court to compel Defendant Anthony Ridley ("Ridley") to allow Plaintiffs to inspect certain devices including Ridley's external WD Drive, computers, USB drives, phones, Ridley's personal email accounts and cloud accounts, and the forensic images or copies of any devices that are already in the possession of Ridley or his attorneys. During his deposition on April 17, 2023, Ridley admitted and disclosed for the first time that he saved Nalco documents to an external WD Drive through 2020. Ridley also saved complete and partial backups of his Nalco computer to that same WD Drive. Ridley further admitted under oath that, after joining ChemTreat, he used his ChemTreat computer to access Nalco documents on his WD Drive on at least four occasions – twice in August of 2021, in September of 2021, and in January of 2022. However, Ridley refuses to allow inspection of that WD Drive or his various other devices and accounts.

Plaintiffs seek this information as it is imperative for Plaintiffs to fully understand and prove the extent of Ridley's theft of Plaintiffs' trade secrets and confidential information and to identify the location of the stolen trade secrets. Plaintiffs, yet again, have tried to be reasonable in limiting their requests and Ridley has plainly refused to engage in any meaningful compromise. Ridley's continued tactics to delay discovery are precluding Plaintiffs from obtaining evidence they are entitled to under the discovery rules.

## I. <u>INTRODUCTION</u>

Defendant Anthony Ridley, while employed by Plaintiffs, misappropriated some 16,000 files belonging to Plaintiffs which contained, individually or in compilations, Plaintiffs' confidential and trade secret information for his own and ChemTreat's use, after which he deleted that same information from Plaintiffs' corporate cloud-drive account. (Doc. 46 at ¶¶ 37-107). Many of these documents contained information Plaintiffs created or received as part of Plaintiffs' business operations. Because of Ridley's unique efforts not only to steal Plaintiffs' information but simultaneously delete it from Plaintiffs' possession, Plaintiffs are in the unfortunate position of having to obtain their stolen documents and information from ChemTreat and Ridley—at least that which Defendants have not already spoliated. Ridley's continued actions have caused great delay in Plaintiffs obtaining this relevant information.

Plaintiffs' diligent efforts and offers to resolve and compromise in the face of Ridley's refusal to produce all of the devices and accounts requested in Plaintiffs' Request to Inspect force Plaintiffs to seek relief from this Court. Thus, for the reasons stated herein, the Court should grant Plaintiffs' Motion in its entirety and order Ridley, within two (2) days, to produce: (1) forensic images of his WD Drive external USB hard drive; (2) forensic images of Ridley's personal OneDrive Account; (3) forensic image of Ridley's Wife's MacBook Computer; (4) forensic image of Ridley's Hotmail

FP 46941928.1

Account; (5) forensic image of Ridley's personal computer and iPad; (6) forensic image of Ridley's Gmail Account; (7) forensic image of Ridley's Google Drive Account; and (8) Ridley's iPhone and iCloud Account and follow the protocols outlined by Plaintiffs in Exhibit E.

## II.    **<u>BACKGROUND</u>**

Plaintiffs have asserted seven separate claims in this action— (1) violation of The Defend Trade Secrets Act (against Ridley and ChemTreat), (2) violation of the Tennessee Uniform Trade Secrets Act (against Ridley and ChemTreat), (3) breach of contract (against Ridley), (4) breach of fiduciary duty of loyalty (against Ridley), (5) tortious interference with contractual relationships (against ChemTreat), (6) procurement of breach of contract (against ChemTreat), and (7) civil conspiracy (against Ridley and ChemTreat). (ECF No. 46.) The Federal Rules of Civil Procedure permit Plaintiffs to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. Proc. 26(b)(1).

As an initial matter, Ridley signed an Employee Sales, Service, Marketing & Inventions Agreement ("Agreement") with Ecolab.  **(Ex. 2, Agreement.)**  He agreed to permit Ecolab to take a forensic image of all devices he used to access Ecolab and Nalco information, which includes the WD My Book external hard drive :

> **12.**  In the event the Employee violates, or the Company reasonably believes the Employee is about to violate, this Agreement, the Employee agrees that the Company is entitled to injunctive relief to prevent violation(s) and/or preserve the *status quo* and confidentiality of the Company's Confidential Information and Trade Secrets.  The Employee agrees that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and the Company will have the right to conduct forensic examination(s) of any computers and/or electronic devices in the Employee's possession or control, if the Company reasonably believes such devices contain Company Confidential Information and/or Inventions.  The Employee further agrees that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis.

(Agreement, ¶12 (highlight added)).

Under the Agreement, Ecolab has every right to ask for access to these devices.  In the nature of good faith, Ecolab sought the forensic images in discovery.  Under Federal Rule 34, a party may

"inspect, copy, test, or sample" any designated documents or electronically stored information. Fed. R. Civ. P. 34(a)(1)(A).

This dispute arises out of Ridley's refusal to comply with Plaintiffs' Rule 34(a)(1)(B) requests to inspect the following items:

(1) Ridley's personal cell phone and iCloud backup and Apple ID and password;

(2) WD My Book external hard drive;

(3) Amazon Basics USB drive, serial number 180129000600;

(4) Ridley's personal computer and any personal computer in his household, that was used by Ridley on one or more occasions from August 1, 2020, to present;

(5) Any other external storage device that was connected one or more times by Ridley during the period August 1, 2020, to present to: (a) a personal computer; (b) a computer used by Ridley during his employment with Plaintiffs; and/or (c) a computer used by Ridley during his employment with ChemTreat;

(6) Any personal computer, business computer or household computer that Ridley connected the three USB Drives to, that Ridley's former counsel provided to Plaintiff's counsel and Plaintiff's expert to review and search.

(7) Ridley's personal email account(s), including email address and password(s), which were used by Ridley one or more times from August 1, 2020, to present, including but not limited to Outlook.com, hotmail.com, msn.com, live.com accounts, and social media accounts, including LinkedIn;

(8) Any other personal devices Ridley has used since August 2020 to communicate with Plaintiffs' employees, ChemTreat's employees, or customers; and

(9)  Forensic images or copies in the possession of Ridley, his attorney, expert, or agent of any device or source of information identified in (1) through (8) above.

**(Ex. A, Request to Inspect dated February 13, 2023.)**

Ridley responded to Plaintiffs' requests with numerous meritless objections.  Ridley claims he is not required to provide this information because: 1) information sought after March 18, 2022 is irrelevant; 2) "Ridley has complied with his discovery obligations and any alleged deficiencies have been resolved by motion to compel practice and a resultant order;" 3)  Ecolab has "spoliated the central evidence in this dispute Ridley returned the Nalco/Ecolab issued laptop and LaCie drive to Nalco/Ecolab per its instructions, which deprived Ridley of exonerating evidence;" 4)  there are no specific allegations about the specific devices and items requested; and 5) Ecolab's expert has already confirmed Ridley misappropriated thousands of Ecolab files, so no further discovery is necessary. **(Ex. B, Objection to Request to Inspect, March 14, 2023.).** None of Ridley's objections permit Ridley to avoid his discovery obligations.

Following this letter, Plaintiffs continued to work toward compromise for over a month.

In Response to Ridley's objections to the Rule 34 request, Plaintiffs provided Ridley with an extensive forensic protocol, outlining search terms and the parameters of the inspection.  **(Ex. C, Letter from Greg Grisham dated March 18, 2023).** Ridley responded on March 22, 2023, to Plaintiffs' counsel's letter proposing a forensic protocol **(Ex. D, Letter from L. Pope dated March 22, 2023.)** The parties then held meet-and-confer conferences on March 27, 2023, and March 30, 2023.

On April 6, 2023, Plaintiffs sent an additional letter to Ridley outlining a protocol to attempt to remedy any of Ridley's concerns about his personal data and providing an even more tailored

protocol for the requested devices and sources of information. **(Ex. E, Letter from D. Walton to L. Pope dated April 6, 2023).**

On April 7, 2023, Plaintiffs also reminded Ridley that he had agreed to permit Ecolab to take a forensic image of all devices he used to access Ecolab and Nalco information in his Employee Sales, Service, Marketing & Inventions Agreement. **(Ex. F, Letter from D. Walton to L. Pope dated April 7, 2023.)** Ridley's continued failure to provide access to the images constitutes a breach of his agreement. Plaintiffs noted that even though the agreement provided them with unfettered access to the devices and information, they were continuing to work in good faith to develop an appropriate forensic protocol. Plaintiffs also followed up with Ridley concerning his access to a personal external hard drive. During meet and confer conferences, Ridley denied the existence of the external hard drive; however, recently Ridley confirmed the external hard drive did indeed exist. Despite acknowledging the existence of the hard drive, Ridley has not provided any certification or confirmation that the drive be preserved. **(Ex. G, Letter from D. Walton to L. Pope dated April 7, 2023.)**

Ridley then responded to Plaintiffs' April 6, 2023, correspondence on April 12, 2023. **(Ex. H, Letter from L. Pope to D. Walton dated April 12, 2023.).** In an about face, Ridley claimed he never agreed to produce the WD My Book external hard drive, an image of Ridley's personal OneDrive account, or an image of Ridley's Hotmail account for inspection. **(Ex. H).** Ridley then proposed an additional protocol for the search of the WD My Book external hard drive, the personal One Drive Account, and the Hotmail Account. Ridley further asserted that he would not provide access to the HP laptop computer, Ridley's personal Auas laptop, Ridley's Google Drive, Gmail account, personal iPhone and iCloud account, and Ridley's iPad. Plaintiffs responded to Ridley's

counsel's April 12 letter on April 17, 2023. **(Ex. I, Letter from D. Walton to L. Pope dated April 17, 2023.)**

## III.    RELEVANT FACTS

After months of being courted by ChemTreat, Ridley began stealing Plaintiffs' confidential and trade secret information on May 22, 2021. Over the next several weeks, he either copied to an external hard drive or uploaded to his personal Hotmail Email Account over 16,000 files containing information on Plaintiffs' customers, business plans, and other confidential or trade secret information (D.E. 46, at ¶¶40-107). Ridley left Ecolab's employment on July 1, 2021. Ridley immediately began working for ChemTreat on July 2, 2021. During his employment, Ridley accessed, used and manipulated Ecolab's documents for his benefit and the benefit of his new employer, ChemTreat. For example, Ridley admitted in his deposition taken on April 17, 2023, that he used his WD Drive to back up his Nalco computer 5-10 times, saved Nalco documents to that WD Drive through 2020, and used his ChemTreat computer to access Nalco documents on the WD Drive at least four times after he joined ChemTreat. *See infra*. Ridley did not return files and documents stored on his external hard drive when he left the employment of Plaintiffs on July 1, 2021. It was not until his April 17, 2023 deposition that Ridley admitted accessing documents belonging to Plaintiffs and stored on the external hard driver on at least four occasions (twice in August 2021, once in September 2021, and once in January 2022), all while he was employed by ChemTreat and using his ChemTreat laptop computer.

After uncovering some of Ridley's actions, Plaintiffs sent Ridley a cease-and-desist letter on February 9, 2022, at 11:58 a.m. Plaintiffs advised counsel for ChemTreat of the cease-and-desist letter that same day, and later provided a copy of the cease-and-desist letter directly to ChemTreat through its attorneys. **[Exhibit J, Ridley Cease-and-Desist Letter.]** In the cease-and-desist letter, Plaintiffs outlined for Ridley his obligations to preserve all documents related to Ecolab. Specifically, Plaintiffs

noted: "This letter serves as a notice to you of your obligation to preserve in an unaltered and forensically sound form any documents related to Ecolab, its business operations and its clients and employees."

On February 9, 2022, at approximately 3:34 p.m., Ridley created a folder on a USB001 drive called "Files from Ridley's personal computer." Forensic analysis revealed that Ridley copied a desktop folder from his Windows computer onto this USB drive. Forensic analysis also uncovered multiple deleted files on this USB001 drive. This forensic analysis also revealed Ridley's deletion of certain Ecolab files including "Pilgrim's JBS Boiler Operating Training Final 4kwk.ppt" and "Planning Guides." On February 9, 2022, Ridley also apparently deleted a file named "Ridley's Contacts.CSV." This same file name was exfiltrated from Ecolab on 6/21/2021. **(Ex. K, Expert Report of Lawrence Lieb, at 8-9.)[11]**

A forensic analysis revealed Ridley deleted the following files belonging to Plaintiffs on February 9, 2022:

| Activity Log.docx | USB001:\Sales Planning Tools\Sales Plans\ |
|---|---|
| Target Account Assessment.docx | USB001:\Sales Planning Tools\Sales Plans\ |
| _.H2W | USB001:\ |
| Sales Planning Tools | USB001-ANTHONY-RIDLEY.E01\Root\Sales Planning Tools\ |
| Planning Guides | USB001-ANTHONY-RIDLEY.E01\Root\Sales Planning Tools\Planning Guides\ |
| Sales Plans | USB001-ANTHONY-RIDLEY.E01\Root\Sales Planning Tools\Sales Plans\ |

**(Ex. K, Lieb Expert Report, at 8-9.)**

On March 18, 2022, ChemTreat terminated Ridley after discovering that Ridley sent a Nalco/Ecolab document from his personal email account to his ChemTreat email account on

---

[11] Mr. Lieb's Expert Report is being filed without the DLP Report attached, since it is voluminous and has an Attorney's Eyes-Only designation under the Protective Order.

FP 46941928.1

September 29, 2021. ChemTreat notified Plaintiffs of Ridley's termination on March 21, 2022.

**(Exhibit L, March 21, 2022 Letter from V. Mirmira, Esq. to D. Walton, Esq.)**

IV.   **ARGUMENT**

A.   **Plaintiffs' Request to Inspect Falls Squarely Within Fed. R. Civ. P. 34(a)(1)(b) and Courts Routinely Allow Such Discovery in Trade Secret Cases**

The evidence known to Plaintiffs confirms Ridley downloaded, uploaded and deleted Ecolab documents, emailed Ecolab documents to himself from his Hotmail email account to his ChemTreat account, and took thousands of Plaintiffs' files containing confidential information and trade secrets with him on his WD My Book external hard drive when he went to work for ChemTreat and admittedly accessed Plaintiffs' documents with this external hard drive on four occasions using his ChemTreat computer. Plaintiffs are entitled to forensic imaging and access to Ridley's devices because Plaintiffs cannot know what documents Ridley accessed, copied, or saved, or whether he manipulated or created new documents with Ecolab's proprietary information, without access to these devices and accounts. While Plaintiffs are aware that Ridley's theft of their confidential and proprietary materials is expansive, Plaintiffs simply cannot know what documents and how many documents Ridley stole, nor can Plaintiffs know what Ridley did with those documents without this access.

As a general matter, forensic imaging "is not uncommon in the course of civil discovery." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citing *Balboa Threadworks v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006)). In fact, federal courts "have assumed that the provisions of Rule 34(a) concerning inspection, copying, and testing of tangible objects are sufficient to authorize a court to order reproduction of an entire hard drive using the 'mirror image' method." *Diepenhorst v. City of BattleCreek*, No. 1:05-cv-734, 2006 WL 1851243, at *2 (W.D. Mich.

9

June 30, 2006) (citing *Simon Property Group*, *LP v. MySimon*, *Inc.*, 194 F.R.D. 639, 640-41 (S.D. Ind. 2000)).

In addition, the advisory committee's note to Fed. R. Civ. P. 26(f), which recognizes the intricacies of computer programing and discoverable information associated with such computer programming, and notes that this sort of "invisible" data is contemplated by the Federal Rules of Civil Procedure:

> Computer programs may retain draft language, editorial comments, and other deleted matter (sometimes referred to as "embedded data" or "embedded edits") in an electronic file but no make them apparent to the reader. Information describing the history, tracking, or management of an electronic file (sometimes called "metadata") is usually not apparent to the reader viewing a hard copy or a screen image.

Fed. R. Civ. P. 26(f) advisory committee's note.

Moreover, federal courts have found that Fed. R. Civ. P. 34(a) permits the request of a forensic copy for inspection in these types of circumstances.

> Other district courts have . . . ordered imaging hard drives in cases involving alleged misappropriation of confidential information because "[h]ow and whether defendants handled [such] documents and what defendants did with the documents" are at issue.

*Javeler Marine Serv. LLC v. Cross*, 175 F. Supp. 3d 756, 762-63 (S.D. Tex. 2016) (citing cases). "Courts have found that such access is justified in cases involving both trade secrets and electronic evidence and granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation." *Ameriwood Indus., Inc. v. Liberman,* No. 4:06-cv-524-DJS, 2006 WL 382591, at *5 (E.D. Mo. Dec. 27, 2006).

With the forensic images Plaintiffs seek, Plaintiffs' expert can attempt to determine whether the misappropriated information was accessed on Ridley's devices and accounts, when it was accessed, how frequently it was accessed, whether Ridley manipulated any of the files, whether any other actions were taken with respect to the data and files, and the location of the misappropriated information  This evidence is probative for Plaintiffs' claims against Ridley and ChemTreat–

10

specifically, Plaintiffs are entitled to learn the location of its trade secrets and confidential information and how Ridley used those files. Plaintiffs cannot know the full extent of this information without searching the devices themselves. Ridley's unlawful retention of Plaintiffs' documents and files and his improper use of Plaintiffs' proprietary business information gave rise to the claims against Ridley in this lawsuit.

### B.     *Plaintiffs Seek Access To Ridley's Devices and Account Because They Are Relevant To Their Claims, including Their DTSA and TUTSA Claims.*

Plaintiffs Request to Inspect is limited to devices and accounts that Plaintiffs either know Ridley utilized to download or otherwise access their confidential information or devices and accounts where Ridley is likely to have stored this information. These locations are based on more than mere speculation but are based on Ridley and ChemTreat's responses in discovery and Plaintiffs' good faith belief given all of the facts and circumstances in this case. Plaintiffs outlined a reasonable protocol to conduct this requested inspection in the April 6, 2023 letter to Ridley's counsel (Exh. E).

### (1) <u>WD Drive external USB drive</u>

During his deposition testimony on April 17, 2023, Defendant Ridley testified that he has a Western Digital external hard drive ("WD Drive") with a 1 terabyte storage capacity (Ex. 1- Ridley Deposition 72:6-76:12). Defendant Ridley admits that he used that WD Drive to repeatedly back up the contents of his Nalco computer. According to Ridley, he performed five to ten full back ups of his Nalco computer until approximately 2017-2018, and thereafter continued with "partial" back-ups of the contents of his Nalco computer until sometime in 2020 (Ex. 1, 78:4-92:11). In fact, Ridley continued backing up or saving Nalco documents to his WD Drive throughout 2020, even though, by his own admission, those same documents were available to him on Nalco's cloud-based OneDrive account. (Ex. 1, 87:5-89:12)

Having no plausible or innocent reason for why he saved documents available to him on Plaintiffs' OneDrive account to his personally-owned WD Drive through 2020, Ridley chose to tell a preposterous tale during his deposition about how those documents were accidentally saved to his WD Drive:

> Q.    Sure.  In 2020 the documents that you down -- that you copied to the WD drive, they were all available to you on the OneDrive, correct?
>
> A.    Yes.
>
> Q.    If those documents were available to you on the OneDrive, why did you also copy them to the WD drive?
>
> A.    It is my opinion that those documents got copied to the WD drive in error.  There was no reason for them to be on there.
>
> Q.    What was the specific error?
>
> A.    The method that I used to select on a file and drag and drop, if you hover over a file, it could -- or you hover over a device, you can accidentally drop one into a device mistakenly.
>
> Q.    All right.  So you're saying that those files, the files that you copied to the WD drive in 2020 from Nalco, were accidentally placed on there.
>
> MR. POPE:  Objection to form.  Misstates his testimony.
>
> …
>
> Q.    Is there a difference in your mind between error and accident?
>
> A.    No.  Error and accident, in my definition, would be the same.

(Ex. 1, 89:8-90:7; 90:18-21)

Ridley's contention that he somehow mistakenly or accidentally copied documents easily available to him on Plaintiffs' cloud-based OneDrive to his WD Drive is absurd because that WD Drive had to be

12

connected to his computer via a USB cable and the power switch to the WD Drive would have to be turned on. (Ex. 1, 78:9-21)

During his employment with Plaintiffs, Ridley signed an Employee Sales, Service, Marketing & Inventions Agreement ("Agreement"). (Ex. 2, Agreement.)  Pursuant to that Agreement, he agreed to permit Ecolab to take a forensic image of all devices he used to access Ecolab and Nalco information, which includes the WD My Book external hard drive:

> **12.**  In the event the Employee violates, or the Company reasonably believes the Employee is about to violate, this Agreement, the Employee agrees that the Company is entitled to injunctive relief to prevent violation(s) and/or preserve the *status quo* and confidentiality of the Company's Confidential Information and Trade Secrets.  The Employee agrees that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and the Company will have the right to conduct forensic examination(s) of any computers and/or electronic devices in the Employee's possession or control, if the Company reasonably believes such devices contain Company Confidential Information and/or Inventions.  The Employee further agrees that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis.

(Ex. 1, ¶12 (highlight added)). Nevertheless, Ridley has refused to comply with his above contractual promise and will not allow inspection of his WD Drive.

Ridley did not return the full and partial back-ups of his Nalco computer, or for that matter any Nalco documents which he saved to his WD Drive, when he departed Ecolab on July 1, 2021 and joined ChemTreat. (Second Amended Complaint, ¶ 37; Ex. 1, 56:21-57:9). Instead, during his deposition testimony, Ridley disclosed, for the first time, that he used his <u>ChemTreat computer</u> to connect to his WD Drive. (Ex. 1, 61:6-17). Ridley further admitted under oath that he used his ChemTreat laptop after joining ChemTreat on July 2, 2021 to access Nalco documents located on his WD Drive on no less than four times on:

- Two occasions on August of 2021;
- September of 2021; and
- January of 2022.

(Ex. 1, 56:21-58:7)

Of course, as the Court is already aware, ChemTreat wiped that same laptop which Ridley used to connect to his WD Drive and access the full or partial backups of his Nalco computer which are on that WD Drive.

Ridley's deposition testimony is in stark contrast to his incomplete, evasive and misleading discovery response to Plaintiffs' Interrogatory No. 2, which sought information on this same topic.

2. State whether You have had (or currently have) access to any Ecolab trade secrets, Confidential Information or proprietary information since the end of your employment with Ecolab. If so, please identify all Documents, Communications, and Storage Media comprising, containing, or concerning Ecolab trade secrets, Confidential Information or proprietary information that you had access to at any time since the end of your employment at Ecolab.

RESPONSE:

Objection: Ridley objects to the terms "trade secrets, Confidential Information, or proprietary information" as vague and ambiguous. Plaintiffs do not define the term "trade secrets" or "proprietary information" in their first set of interrogatories. Accordingly, Plaintiffs have not defined with particularity what information they are seeking. Subject to and without waiving this objection or any other general objection Ridley states he backed up files from his work laptop while employed with Nalco Water to an external hard drive before the company had a cloud based backup system. Ridley did this to ensure the files would not be lost or destroyed in the event his laptop failed or was damaged or stolen. Mr. Ridley believes he backed up the files sometime in 2015 or 2016. Ridley located those files after he left EcoLab in July 2021 and deleted the files. Ridley no longer has access to or a copy of those files. Ridley also located three (3) USB drives that he believes he received at industry events while employed with Nalco Water / EcoLab. Ridley located these USB drives in an old bag after EcoLab initiated this action. Ridley's counsel at the time returned the USB drives to EcoLab pursuant to counsel's instructions. Ridley no longer has access to any files

14

that were on those USB drives. By providing this response Ridley does not consent or admit that he possessed or misappropriated in anyway any EcoLab trade secrets, confidential information, or proprietary information.

(Ex.3, Anthony Ridley's Answers and Objections to Plaintiffs' First Interrogatories.)

To begin with, Ridley's interrogatory response is perjured because it states that "he backed up files from his work laptop while employed with Nalco Water to an external hard drive **before the company had a cloud-based back-up system**." Id. (emphasis added) In actuality, as discussed above, Ridley admitted during his deposition testimony on April 17, 2023, that he continued saving Nalco documents to his external WD Drive even after Plaintiffs had given him a cloud-based OneDrive account. (Ex. 1, 89:8-90:1) The interrogatory response is also perjured because Ridley now admits that he did, in fact, access Nalco documents which he saved and stored on his WD Drive while using a ChemTreat computer on at least four occasions – twice in August of 2021, in September of 2021, and January of 2022. Furthermore, Ridley's interrogatory response does not disclose that he continued saving documents to his external WD Drive through 2020; he joined Nalco's direct competitor ChemTreat on July 2, 2021. Finally, Ridley's assertion in his above interrogatory response that he no longer had "access" to that WD Drive was intentionally misleading and false. In actuality, Ridley gave his WD Drive to his attorney after he received a cease-and-desist letter from Plaintiffs. (Ex. 1, 136:1-19)

Nevertheless, despite his contractual obligation pursuant to Section 12 of his Restrictive Covenant Agreement with Plaintiffs to allow Plaintiffs to inspect that WD Drive, and notwithstanding an inspection request which Plaintiffs served long ago for that WD Drive, Ridley has refused to produce it. There is simply no excuse for Ridley's refusal to produce his WD Drive which he has belatedly admitted that: (1) he used to perform complete and partial back-ups of his Nalco computer

through 2020; (2) which he continued to save Nalco documents through at least 2020; and (3) which he connected to his ChemTreat laptop (which ChemTreat wiped) to access and review Nalco documents on no less than four occasions in August of 2021, September of 2021, and January of 2022 while he was employed by Nalco's direct competitor, ChemTreat. Although Ridley contends that he has now deleted all Nalco documents from his WD Drive, he also simultaneously contends that he is unsophisticated about IT-related issues. Moreover, Ridley's claim to have deleted all Nalco documents from the WD Drive cannot be taken at face value, given that he used his ChemTreat computer on at least four occasions after joining ChemTreat to access Nalco documents on the WD Drive. Needless to say, neither Ridley nor ChemTreat has allowed any expert to analyze the WD Drive to confirm whether all Nalco documents were deleted, when those deletions took place, whether the allegedly deleted documents are recoverable, and/or whether Ridley is being truthful that, after joining ChemTreat, he only accessed Nalco documents on four occasions.

### Ridley's Personal OneDrive Account

Ridley's personal OneDrive Account is a likely location to store the thousands of files that were stolen by Ridley.

### (2) Ridley's Wife's MacBook Computer, Ridley's personal computer and iPad

Ridley has claimed that he lacked a personal computer until after his employment ended at ChemTreat or that the only computer in his house is his wife's computer; however, the evidence in the case confirms that at some point Ridley used a personal computer. For instance, when Ridley began downloading files on February 9, 2022, immediately after receiving the cease-and-desist letter, Ridley created a file on the USB001 called "Files from Ridley's personal computer." (**Ex. K, Lieb Report.**) Such a name would suggest that as of February 9, 2022, Ridley had a personal computer – it is unclear whether this computer belongs to Ridley, to his family, or to Ridley and his wife jointly.

In any event, it is clear that Ridley downloaded and deleted certain files from a "personal computer." Plaintiffs are entitled to access this information in order to find out what documents were contained on that personal computer and whether those files were manipulated, destroyed, or otherwise modified. Plaintiffs are also entitled to learn the extent of Ridley's theft – including whether the personal computer at issue contains even additional Ecolab documents that have not yet been identified. Plaintiff testified in his deposition that he connected his WD Drive to his wife's computer to "transfer pictures" (Ex. 1, 114:10-17).

. Plaintiffs are entitled to this discovery as it is more than likely that these devices contain Ecolab's files based on Plaintiffs' forensic expert's analysis.

**(3)  Ridley's Hotmail Account, Gmail Account; and  Google Drive Account.**

Forensic analysis has uncovered that Ridley accessed his personal Microsoft account including a "live.com" account from his ChemTreat computer.  **(Ex. K, Lieb Report at 12.)**  Ridley accessed a file from that account on his ChemTreat computer called "EMS-103A empty Container Requirements.docx" and a document called "Arnold Airforce Base/HVAC/bid-2021."  He accessed these documents on October 30, 2021.  This access to the Microsoft account warrants Plaintiffs' request to access Ridley's accounts and search for what documents are present in his accounts.

The same is true for Ridley's Gmail account and Google Drive account. Both of these accounts, even if created after Ridley was terminated from ChemTreat,  are likely storage locations for the missing confidential information and trade secrets belonging to Plaintiffs or could be used to access Plaintiffs' missing files and documents.

**(4)  Ridley's iPhone and iCloud Account**

The iCloud account is particularly important because it appears that Ridley had several text messages that may have been backed up to the iCloud. Plaintiffs attempted during the initial meet-

17

and-confer call to determine if Ridley backed-up his Ecolab or ChemTreat iPhone to his personal iCloud account. This is critical information that Plaintiff needs access to and it should be made available for examination.

## C.  *Ridley's Objections To the Rule 34 Request Are Meritless*

For each of Plaintiffs' requests, Ridley largely provides the same objections.  Ridley claims that any information sought after March 18, 2022, is irrelevant because Ridley's last day of employment with ChemTreat was March 18, 2022.  Plaintiffs disagree with this assertion.  The relevant time period includes information through the present because Plaintiffs are entitled to access data that may have been modified, altered, deleted, or otherwise manipulated between Ridley's last day of employment and the present. Ridley's current use of Plaintiffs' information is just as relevant to the misappropriation claims as his use right after his resignation.  Such a limitation on the documents requested is unreasonable.  Plaintiffs and Ridley have not reached an agreement for purposes of the Request to Inspect to such a limited time frame.

Ridley also objects to each request because "Ridley has complied with his discovery obligations and any alleged deficiencies have been resolved by motion to compel practice and a resultant order." This is not a proper objection.  The Rule 34 request was propounded on February 13, 2023, and is discovery that is not the subject of any pending motion to compel.  Ridley cannot claim he has now – after the court ordered him to fully respond to other discovery requests – complied with all discovery in perpetuity.

Ridley also asserts that because Ecolab "spoliated the central evidence in this dispute when Ridley returned the Nalco/Ecolab issued laptop and LaCie drive to Nalco/Ecolab per its instructions, which deprived Ridley of exonerating evidence." **(Ex. B,  at 4.)**  This objection is similarly meritless. First, Ridley's initial counsel has an image of Ridley's external hard drive that Ridley used to back up

18

his Ecolab computer over a period of five years. Ridley himself is in possession of the evidence he claims was spoliated. In any event, even if there were any issues of spoliation, Ridley's claim is no basis for an objection to Plaintiffs' legitimate discovery request. The discovery rules "do not permit one party to condition his discovery obligations on the other party's discovery responses." *Grant v. Target Corp.*, 281 F.R.D. 299, 313 (S.D. Ohio 2012) (quoting *Moses v. Sterling Commerce (America), Inc.*, No. Civ.A. 2:99-CV-1357, 2003 WL 23412984, *3 (S.D. Ohio July 1, 2003)). Ridley's assertion that Plaintiffs are allegedly deficient in their discovery obligations is irrelevant to Ridley's obligation.

Ridley also claims that because there are no specific allegations about his personal cellphone, iCloud backup, or related requests, he is not required to produce any information on his personal cellphone. This also lacks any foundation in law or logic. Plaintiffs may request discovery from numerous sources even if those specific sources are not outlined specifically in a Complaint or Answer. *See* Fed. R. Civ. P. 34.

Ridley further argues that because Plaintiffs' expert has confirmed that the Digital Guardian Report contains more than sufficient amount of information for him to conclude that Ridley misappropriated thousands of Ecolab files, he is under no further discovery obligations. The ample evidence of certain misconduct does not preclude Plaintiffs from discovery as to the extent of Ridley's transgressions and to locate the thousands of files that Ridley downloaded and deleted that are missing.

As outlined in Plaintiffs' response to Ridley's objections to the Rule 34 request, Plaintiffs have invited Ridley to identify any privileged information and redact the same from the forensic copies. Plaintiffs have attempted to engage with Ridley in order to find a common ground with respect to the search. The protocols proposed in the April 6, 2023 letter to Ridley's counsel (Exh. E) are more than adequate to protect any private information. In any event, Ridley's comingling of his personal files along with Plaintiffs' files is not a basis for precluding discovery entirely. Instead, it is

reasonable for the parties to come to an agreement as to how to remove Ridley's personal information from the forensic images. *See List v. Umina*, 2019 WL 1933970 (S.D. Oh. May 1, 2019). Plaintiffs have attempted to provide reasonable compromises in this area to no avail.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs Motion and order Ridley to agree to the forensic protocol set forth in Exh. E.

Dated this 23rd day of April 2023.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By: */s/ J. Gregory Grisham*
J. Gregory Grisham (TN BPR#013810)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 901.526.0431
Fax: 901.526.8183
ggrisham@fisherphillips.com

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

Edward G. Winsman
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103

20

Telephone:  610.230.2142
Fax: 610.230.2151
ewinsman@fisherphillips.com

COUNSEL FOR PLAINTIFFS

FP 46941928.1

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ J. Gregory Grisham*
J. Gregory Grisham

FP 46941928.1