UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ECOLAB Inc., and NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company and/or
Nalco Water,

         Plaintiffs,

v.

ANTHONY RIDLEY, and CHEMTREAT,
INC.,

         Defendants.

Case No. 1:22-cv-00050-TRM-SKL

Hon. Travis McDonough

Magistrate Judge Susan K. Lee

**CHEMTREAT'S REPLY IN SUPPORT OF MOTION TO COMPEL EVIDENCE
OF UPLOADING, DOWNLOADING, OR DELETIONAND A PRIVILEGE LOG**

Far from seeking "to distract from the issue[s] at the heart of this case," Doc. 219 ("Opp.") at 1, ChemTreat's motion to compel seeks discovery that confronts those issues directly: discovery focused on resolving discrepancies in the documents, testimony, and representations made by Plaintiffs regarding their central allegation that Ridley misappropriated and then deleted thousands of their trade secret documents. These discrepancies raise serious questions regarding both (1) the authenticity of the DLP report that Plaintiffs cite as incontrovertible proof of their allegations, and (2) whether, in the days leading up to their creation of that report, Plaintiffs were on notice of their duty to preserve Ridley's devices. In its moving papers, ChemTreat set out at length, with specificity and citations to the record, the factual basis for its requested relief and the related inadequacies in Plaintiffs' discovery responses. *See* Doc. 205 ("Br.") at 3-10. Plaintiffs hardly engage in their Opposition with those inadequacies, nor do they explain why they have yet to locate, produce, or, where applicable, log the responsive documents they still have not provided to ChemTreat. Testimony given by Plaintiffs' Rule 30(b)(6) representative this week confirms the serious defects in Plaintiffs' document production that ChemTreat's motion raised weeks ago— defects that go to what Plaintiffs themselves identify as "the issue[s] at the heart of this case."

*First*, testimony from Plaintiffs' corporate representative confirmed that Ecolab has ***no*** explanation for discrepancies between the DLP report generated by Jennifer Semmler on July 23, 2021, and the DLP report produced to ChemTreat on December 19, 2022. Br. 3-6. Plaintiffs' representative could not explain why the 62-day period, which is "not a standard period," covered by that report matched neither the 90-day period that Semmler (who ran the report) testified applied, nor the 60-day period that Plaintiffs' representative subsequently testified applied. Ex. 18 at 34:5.[1] Plaintiffs' corporate representative, like Semmler, also could not explain why the file

---

[1] Unless noted, all emphasis is added and quotations are cleaned up, with internal citations omitted.

name of the report produced to ChemTreat in December 2022 does not match the file name of the DLP report created by Semmler in July 2021.  Ex. 18 at 90:4-20; Br. 4.

*Second*, Plaintiffs have no explanation for discrepancies between their claim that Ridley deleted documents and the documents they have produced, including the DLP report.  Their corporate representative confirmed—as ChemTreat's motion explained—that the DLP report does not show any deletion activity by Ridley.  Ex. 18 at 147:18 to 148:7; Br. 6.  Moreover, Plaintiffs' corporate representative testified that he personally restored any files in the recycle bin of Ridley's OneDrive in July 2021, which would include anything that Ridley had deleted since at least April 29, 2021 (93 days before July 31, 2021).  Ex. 18 at 98:16-21.  As such, the files supposedly "missing" from Ridley's OneDrive ***could not*** be the result of any alleged deletion by Ridley.  They could, however, be the result of actions taken by others after Ridley's departure on July 1, 2021.  Plaintiffs' corporate representative testified that an unknown number of unidentified individuals, including Ridley's former manager and various individuals in Plaintiffs' in-house legal department, had access to Ridley's OneDrive from around July 18, 2021, until January 25, 2022, when the OneDrive was forensically imaged from a copy placed on the hard drive of an in-house paralegal, and a legal hold was belatedly issued for Ridley's data.  Ex. 18 at 94:5 to 96:7, 127:13-19; Ex. 20 at 97:1-23, 102:15 to 103:8.

*Third*, Plaintiffs state in their Opposition that they failed to preserve ***any*** of Ridley's devices, including both of the laptops Ridley allegedly used to misappropriate Plaintiffs' documents and the mobile drive they admit he returned.  Opp. 2, 8.  But Plaintiffs' corporate representative testified that ***all*** of those devices would have been preserved (and so available as evidence in this litigation) if Plaintiffs had issued a legal hold on July 1, 2021, when Ridley informed them he was going to work for ChemTreat, Ex. 21 at 1), rather than nearly seven months

later, on January 25, 2022. Ex. 18 at 167:7 to 169:14. That testimony underscores how critical it is for ChemTreat to obtain the evidence sought in its motion regarding when Plaintiffs suspected Ridley of wrongdoing and accordingly were under a duty to preserve Ridley's devices.

Plaintiffs initially averred that Kristin Mahre requested the DLP report on July 18, 2021, because Ridley "had gone to work for a competitor." Ex. 22 at 3. That was information contemporaneous records confirm Mahre knew as of July 1, 2021. Ex. 21 at 1. Plaintiffs then averred that Mahre requested the DLP report on July 18, 2021, "based on a request from Plaintiffs' in-house counsel, Theresa Corona." Ex. 15 at 2. Plaintiffs' corporate representative, just this week, however, was unprepared to testify as to what new information (if any) Plaintiffs obtained between July 1 and July 18, 2021, that led to that request. Ex. 18 at 77:17-19. Plaintiffs' failure to produce non-privileged documents or provide a privilege log that includes whatever communications occurred between July 1 and July 18 on this subject improperly deprives ChemTreat of discovery that this Court has twice held is relevant and discoverable. *See* Doc. 201 (explaining that "Plaintiffs have already been ordered to produce information related to Kristen Mahre's pre-DLP report investigation [Doc. 158 at Page ID # 2436]").

The Court should grant ChemTreat's motion in its entirety.

## ARGUMENT

**I.** **PLAINTIFFS MUST PRODUCE ALL DOCUMENTS RESPONSIVE TO THE RFPs SEEKING EVIDENCE OF UPLOADING, DOWNLOADING, OR DELETION BY RIDLEY.**

### A. RFPs 10 and 54: Plaintiffs' Investigation Into Alleged Misappropriation.

Plaintiffs do not dispute that RFPs 10 and 54 seek relevant information, nor do Plaintiffs deny they have responsive documents they have not produced or logged. Plaintiffs instead argue this Court's March 31, 2023 Order (Doc. 201) requires summary denial of ChemTreat's motion because these requests seek "discoverable underlying facts" relating to Plaintiffs' forensic

3

investigation. Opp. 4. The problem with Plaintiffs' argument is that, to the extent Plaintiffs construe these RFPs as seeking the same "***discoverable*** underlying facts" already addressed by a previous Order, Plaintiffs' failure to produce documents responsive to these RFPs is a violation of that Order.[2] Nor is there any "slippery slope" here. Opp. 4. The requested documents relate directly to Plaintiffs' allegations, purportedly based on their own investigations of Ridley's Ecolab devices and accounts, that Ridley downloaded, deleted, and misappropriated thousands of their documents. As the Court has recognized, documents related to Plaintiffs' investigations are relevant to the parties' claims and defenses. Doc. 201 at 15–17. Plaintiffs may not "unilaterally decide that there has been enough discovery on a given topic." *Richards v. City of Jackson*, 2017 WL 11458265, at *1 (E.D. Mich. Aug. 22, 2017).[3]

Plaintiffs, lastly, do not deny that certain of the three documents listed on their privilege log contain responsive, non-privileged information, in particular the "Global Information Security—Request for Employee Data Form seeking information concerning Ridley" and the transmittal email associated with that request. Opp. 5. They say (in passing) only that ChemTreat offers a "blanket statement" that "cannot form the basis of production." *Id.* Not so. ChemTreat explained that Plaintiffs' privilege log identified Kristin Mahre, a human resources manager (and

---

[2] Plaintiffs take the Court's statement regarding "summary denial" of motions seeking "underlying facts" out of context. All discovery seeks "underlying facts." Nothing in the Court's March 31, 2023 Order, however, reflects an intent to pre-judge, and reject, all future discovery motions. The Court's use of the phrase "underlying facts" was tied to Ridley's privilege waiver argument. *See* Doc. 201 at 16 ("Any underlying facts generally are not protected, as the Court recently explained."). ChemTreat's motion does not seek a privilege waiver; it seeks (1) non-privileged documents; and (2) a compliant privilege log.

[3] Plaintiffs are correct, Opp. at 4, that ChemTreat inadvertently attributed this Court's holding that "there is nothing inherently objectionable about requesting 'all documents,'" to the Court's February 24, 2023 Order (Doc. 158). The correct citation is to the Court's March 31, 2023 Order. *See* Doc. 201 at 17 ("The RFP are not overly broad or unduly burdensome because they seek 'any and all documents relating to' the subject matter of the RFP.").

4

non-lawyer), as the author of both documents, which Mahre sent to an IT listserv ("IS Security Risk Mgmt Research"). Br. 15; Ex. 12. By their nature, then, these documents contain at least some non-privileged information, such as the date range and other parameters that Mahre requested Semmler use in her analysis of Ridley's devices. Ex. 5 at 103-04; 144-45; 173-75. That Theresa Corona, Plaintiffs' Deputy General Counsel, was among the recipients of these documents does not justify withholding them entirely on privilege grounds. "[S]imply copying corporate counsel on communications will not automatically cloak the document with privilege. There must be some explanation as to how the communication was for the purpose of securing legal advice." *See Royal Surplus Lines Ins. v. Sofamor Danek Grp.*, 190 F.R.D. 463, 477 (W.D. Tenn. 1999). Plaintiffs do not and cannot justify withholding these documents in their entirety, if at all.

**B.     RFPs 12, 33, 35, and 36: Reports Related to Ridley's Alleged Misappropriation.**

Plaintiffs contend they have produced all "responsive, non-privileged reports" called for by RFPs 12, 35, and 36, which seek reports (including other versions of the DLP report) related to Ridley's digital activity, including his alleged misappropriation and deletion. Opp. 5-6. Plaintiffs then further (and conspicuously) state, "to be clear, Plaintiffs do not waive their privilege objections." *Id.* at 6. Both statements strongly suggest Plaintiffs are withholding documents they contend to be privileged. If that is the case, Plaintiffs should be ordered to promptly amend their privilege log—which elsewhere in their Opposition they imply is complete—so that ChemTreat may evaluate those privilege claims.

Plaintiffs' production of a single DLP Report regarding Ridley is not fully responsive to these RFPs. Setting aside the authenticity questions regarding that report, *see* Br. 3-6, Plaintiffs' corporate representative testified that (1) any files deleted from Ridley's OneDrive during the period at issue were restored in July 2021, after Ridley left, and (2) an unknown number of

5

unidentified individuals had access to Ridley's OneDrive after that time. Ex. 18 at 94:11-15; 98:16-21. This testimony bears directly on Plaintiffs' allegation that it was Ridley, and not anyone else, who deleted the documents allegedly "missing" from Ridley's OneDrive. Plaintiffs do not deny that the requested reports exist. If they do exist, Plaintiffs must produce them; if not, Plaintiffs should be required to say so.

   C.   **RFPs 37 and 38: Ridley's Backup Activity.**

Plaintiffs' production of Ridley's DLP Report likewise does not fully respond to RFPs 37 and 38 (which seek documents sufficient to show instances between January 1, 2020 and the present in which Ridley backed up his computer or OneDrive to an external device). *See* Opp. 7. As Plaintiffs concede, the DLP Report includes only Ridley's activity during a limited window shortly before his departure from Ecolab. Plaintiffs' protestations to the contrary, *see id.*, that is not the entirety of the relevant time period. Documents showing Ridley's backup activity in the months before his resignation relate specifically and directly to Plaintiffs' claim that Ridley's practice before that point was not to externally back up his computer or OneDrive. ChemTreat is entitled through discovery to determine whether that allegation is consistent with Ridley's backup practices generally. If, as Plaintiffs suggest, their claim that "Ridley never backed-up his computer in the months leading to his separation from Nalco/Ecolab" is based solely on the 62-day period in the DLP report they produced, Opp. 7, they should be required to say so. But if they have other documents relating to an earlier time period, those documents are discoverable.

   D.   **RFPs 24, 34, 98, and 100: Data Related to Plaintiffs' Misappropriation Claims.**

RFP 24 calls for (by the parties' agreement) data on the last two laptops or computers Plaintiffs issued Ridley. Br. 16, 18. Plaintiffs concede they have nothing to produce, not because

responsive data never existed, but because Plaintiffs "repurposed" both laptops after Ridley returned them.  Opp. 8.

RFPs 34, 98, and 100 seek the data Plaintiffs used to create the previously produced DLP Report, ProofPoint report, and O365 Log.  *Id.* at 18.  Plaintiffs only directly address the DLP Report, arguing that "[a]ll data is contained in the report."  Opp. 8.  If Plaintiffs are now conceding (as their corporate representative testified yesterday) that the DLP report would include any deletion activity, such that the lack of any record of deletions proves none occurred during the period covered by the report, then nothing more is required.  If Plaintiffs still contend, however, despite this testimony, that there is some data that shows Ridley deleted the documents listed on the DLP report, Plaintiffs must produce that data.

### E.  RFPs 99 and 102: Ridley's Alleged Deletion.

With respect to RFP 99, Plaintiffs did not produce documents sufficient to show Ridley's deletion activity merely by producing a DLP Report and a forensic image of Ridley's OneDrive account from his hard drive.  Opp. 8–9.  ChemTreat explained in its initial brief why neither of those productions is sufficient—the DLP report does not show *any* deletion activity at all from Ridley's OneDrive folder in Ecolab's cloud or the corresponding folder on his laptop's hard drive and the OneDrive was not forensically imaged until nearly seven months after Ridley left, meaning that it shows nothing at all as to when any allegedly "missing" files were deleted.  Br. 6–7, 22–23.  Nowhere in their Opposition do Plaintiffs address this argument.  And, contrary to their assertion, Plaintiffs have only produced one email directly concerning Ridley's alleged deletion—a May 11, 2021 automated email from SharePoint Online to Ridley, stating that he recently deleted a large number of files from his OneDrive account.  *See* Ex. 14.  Despite that email, Plaintiffs' Third Amended Complaint alleges Ridley deleted documents only after ***May 22, 2021***.  Doc. 229 ¶¶ 73, 218.  Moreover, Plaintiffs' corporate representative testimony, given yesterday, confirms that any

7

deleted files—whether deleted on May 11, May 22, or some other date between then and July 1, 2021—were all restored by Plaintiffs in July 2021. If Plaintiffs have any documents related to Ridley's alleged deletion (such as other "head's up" emails from other dates[4]) or any proof tying Ridley's actions to the allegedly missing OneDrive files, they must produce those documents or an affirmation that no other responsive documents exist.

The documents sought in RFP 102—those showing the identity of users who had access to the OneDrive folders or accounts that Ridley allegedly deleted files from—are not irrelevant merely because they involve individuals other than Ridley. Opp. 9. The alleged deletion of those files is at the heart of Plaintiffs' claims, and Plaintiffs' corporate representative confirmed that an unknown number of unidentified individuals had access to Ridley's OneDrive after he left the company—and after any deleted files were restored to his OneDrive. Ex. 18 at 94:11-15. ChemTreat is entitled to discover who, other than Ridley, had access to the files during the time frame at issue. Br. 23.

**F.    RFPs 106–110: Plaintiffs' Retention Policies and Periods for Deleted Files.**

Plaintiffs represented in their Opposition they would confirm "whether the time period noted in the email referenced in ChemTreat's Motion (PLAINTIFFSR-000002008 – 000002009) was in effect on May 1, 2021, July 1, 2021, and September 1, 2021." Opp. 9. Yesterday, their corporate representative testified that the 93-day recovery period referenced in that email applied to the OneDrive files throughout the period at issue. This dispute has, accordingly, been resolved.

---

[4] Plaintiffs' corporate representative testified that Plaintiffs have a searchable archive containing every email sent or received by any employee dating back to 2011, such that if other emails regarding bulk deletion from the OneDrive exist (as Plaintiffs suggest), those emails are readily accessible. Ex. 18 at 117:14-24. Plaintiffs should be required to produce any other such emails, or to affirm that none exist.

8

## II. Plaintiffs Do Not Contest That Their Privilege Log Is Insufficient.

Plaintiffs make no effort to defend the completeness of their privilege log, stating only that "ChemTreat provides no clear basis for its dispute with the log Plaintiffs produced." Opp. 10. Plaintiffs do not substantiate this argument, *see McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."), and it has no merit. ChemTreat explained in detail why Plaintiffs necessarily are withholding, on privilege grounds, more than three documents from production, including:

- Insight, Plaintiffs' vendor, produced an email chain showing that "Ecolab personnel contacted Insight in January 2022 at the direction of 'legal counsel.'" Br. 11. Communications between Plaintiffs' legal counsel and the employees who were directed to reach out to Insight are relevant and responsive to ChemTreat's RFPs, but they have not been logged.

- Semmler testified that she transmitted an "Employee Data Sheet" that is related to the DLP Report "to Mahre and Herrera on July 23, 2021, and may have had further written communications regarding her data review." *Id.* Again, Plaintiffs have not logged Semmler's communication or any others she may have had regarding her analysis of Ridley's devices and accounts, even though they are responsive. After ChemTreat filed its motion, it deposed Herrera, who confirmed she was involved in written communications regarding Ridley's departure. Ex. 23 at 127:2 to 131:13. Plaintiffs objected to further testimony on the subject on the ground of privilege, confirming their privilege log is incomplete. *Id.*

- Plaintiffs stated in a supplemental interrogatory response that their review of Ridley's accounts and devices was precipitated by ChemTreat's recruitment of multiple Plaintiffs' employees from January through May of 2021, including Jeff Michel's solicitation of "Plaintiffs' District Manager Aaron Benarek and Sales Representative Ed Swenson." *Id.* at 11–12; Ex. 15 at 2. Yet Plaintiffs have not produced or logged any documents relating to this alleged solicitation or in-house counsel's subsequent request to review Ridley's devices and accounts. Br. 12, 26.

- Communications that led to the creation of "the additional iterations of the DLP report from September 2021 and January 2022 that Plaintiffs produced," (*id.* at 26), which Semmler testified she would not have created without a written request to do so, (*id.* at 6; Ex. 5 at 78–81; 95).

Notably absent from Plaintiffs' Opposition is what one would expect to find—an affirmative representation that their privilege log is complete. Plaintiffs nowhere dispute that they

9

are withholding on privilege grounds additional documents responsive to ChemTreat's RFPs. Plaintiffs must log these additional documents as the ESI protocol requires so that ChemTreat can assess the claims of privilege. Br. 26; *see also Brown v. Tax Ease Lien Servicing, LLC*, 2017 WL 6939338, at *13 (W.D. Ky. Feb. 16, 2017) (noting that Federal Rule of Civil Procedure 26 requires a party to "prepare a privilege log that generally describes the nature of the documents not produced to enable the other parties to assess the merits of the claim"). Consistent with the Court's April 24, 2023 Order, Plaintiffs should also be required to clarify (as ChemTreat has done) whether, for documents post-dating February 9, 2022, "all withheld, non-logged documents are 'communications involving counsel,' and for any withheld documents that are not "communications involving counsel," to "provide an appropriate privilege log."  Doc. 226 at 7-8.

## CONCLUSION

For the foregoing reasons, ChemTreat requests that the Court order Plaintiffs to produce within seven days all remaining documents responsive to the RFPs discussed herein and to provide within seven days a privilege log identifying all responsive documents predating February 9, 2022, that Plaintiffs are withholding pursuant to a claim of privilege.

10

DATED: April 27, 2023                    Respectfully submitted,

*/s/ Troy C. Homesley*
Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail:  vmirmira@wc.com
E-mail:  wburke@wc.com
E-mail:  jlund@wc.com
E-mail:  thomesley@wc.com

W. Scott Sims
Michael R. O'Neill
SIMS FUNK PLC
3322 West End Ave. #200
Nashville, TN 37203
Telephone: (615) 425-7432
Facsimile: (615) 649-8565
E-mail:  ssims@simfunk.com
E-mail:  moneill@simsfunk.com

*Attorneys for Defendant ChemTreat, Inc.*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served via the Court's

CM/ECF system on April 27, 2023, upon the following:

| | |
|---|---|
| J. Gregory Grisham, BPR No. 013810<br>FISHER & PHILLIPS LLP<br>1715 Aaron Brenner Drive, Suite 312<br>Memphis, Tennessee 38120<br>ggrisham@fisherphillips.com | Lance W. Pope, BPR No. 025054<br>Jeremy M. Cothern, BPR No. 027166<br>Patrick, Beard, Schulman & Jacoway, P.C.<br>537 Market Street, Suite 300<br>Chattanooga, TN 37402<br>(423) 756-7117 – phone<br>(423) 267-5032 – fax<br>lpope@pbsjlaw.com<br>jcothern@pbsjlaw.com |

J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

*Attorneys for Plaintiffs*

Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

/s/ *Troy C. Homesley*
Troy C. Homesley