UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ECOLAB, INC., *et al.*,  )
  )
       Plaintiffs,  )
  )
v.  )    Case No. 1:22-cv-050-TRM-SKL
  )
ANTHONY RIDLEY, *et al.*,  )
  )
       Defendants.  )

## **ORDER**

Before the Court are several discovery-related motions: (1) ChemTreat's Motion to Compel Evidence of Uploading, Downloading, or Deletion and a Privilege Log [Doc. 204] with a supporting brief and various exhibits concerning discovery issues [Doc. 205], to which Plaintiffs filed a response in opposition [Doc. 219], and ChemTreat filed a reply [Doc. 237]; (2) ChemTreat's related motion for leave to file documents under seal [Doc. 206] with two proposed sealed documents [Doc. 207 & 208], to which Plaintiffs did not file a response; (3) Plaintiffs' Emergency Motion for Leave to Allow Plaintiffs to Take Additional Depositions Pursuant to Federal Rule of Civil Procedure 30(A)(2)(A) [Doc. 213] with a supporting brief [Doc. 214], to which Defendants each filed a response in opposition [Doc. 239 & Doc. 241], and Plaintiffs replied [Doc. 244]; and (4) Plaintiffs' Motion to Compel Ridley's Compliance with Plaintiffs' Rule 34 Request To Inspect [Doc. 224] with a supporting brief [Doc. 225], to which Ridley filed an expedited response in opposition [Doc. 242] and Plaintiffs filed an expedited reply [Doc. 245].[1] These motions are now ripe.

---

[1] ChemTreat did not file a response to Plaintiffs' Motion to Compel Ridley's Compliance with Plaintiffs' Rule 34 Request to Inspect, and the Court will not address ChemTreat's references to this motion in its other filings made on May 1, 2023.

## I.     BACKGROUND

As well documented in the extensive record, difficult discovery planning and arduous disputes have festered in this case from the start[2] when the parties submitted separate discovery planning proposals in their "Joint Rule 26(f) Report" because of their failure to reach agreement,[3] continuing through the time the parties finally exchanged discovery after many months of discord about their Agreed Protective Order and their Agreed ESI Protocol [Doc. 91 & Doc. 92], and through numerous so-called "emergency" motions in which each vigorously complained about the other sides' allegedly offensive discovery tactics, culminating in these last-minute, accusatory discovery-related motions.

Before turning the substance of the motions, all movants are advised that, contrary to their view of their own motions, none of the pending motions are timely—they were all filed during the waning days of the jointly-consented-to extended discovery period.  The earliest-filed motions at issue, ChemTreat's motions, only became fully briefed and, thus, ripe on the very last day of discovery when ChemTreat filed its reply to its motion to compel at 11:57 PM, with only seven minutes to spare before both the time to reply and the time to conduct discovery expired.  Plaintiffs'

---

[2] The Court did not become aware of the parties' failure to exchange meaningful discovery until mid-November of 2022, when the discovery-related motion practice began in earnest.  On December 16, 2022, Plaintiffs' consent motion to amend the scheduling order, which was filed with the consent of all Defendants, was granted and an amended scheduling order was issued by the Court on December 22, 2022.  At the parties' joint request, the amended scheduling order extended the discovery deadline by the requested 45 days, to April 27, 2023 [Doc. 99].

[3] Commendably, the parties were able to reach an agreement regarding the schedule and deadlines on the day of the Court's scheduling conference, and they submitted an Addendum to Joint Rule 26(f) Report regarding same [Doc. 58].  Even given the hardships created by their exceedingly late and slow start to discovery, the parties have generally avoided outright rancor.  Instead, for the most part, they have "politely" leveled charges of discovery abuse, subterfuge, and misrepresentation at each other; but, unfortunately, the rhetoric has sharpened in the most recent filings.

motions, on the other hand, were filed so late in the discovery period that, even with expedited briefing, they did not become ripe until May 3, after the discovery period closed on April 27, 2023.

A motion to compel filed within days of the close of discovery is plainly untimely. *See, e.g., United States ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, No. CV 02-2964, 2020 WL 1888966, at *4 (E.D. Pa. Apr. 16, 2020) ("District courts have repeatedly recognized that '[m]otions to compel filed within days of the close of discovery are untimely.'" (quoting *Cont'l Cas. Co. v. Tyson Foods, Inc.*, No. 1:15-CV-20-HSM-SKL, 2017 WL 11180629, at *2 (E.D. Tenn. June 15, 2017) (collecting cases))); *see also Wilbur v. Cnty. of Waukesha*, No. 14-CV-0046-PP, 2016 WL 4082666, at *4 (E.D. Wis. July 29, 2016) ("In light of the lengthy discovery period, the absence of any explanation for the last-minute filing, the multiple extensions of the discovery period, the plaintiff's knowledge of the impasse some two weeks prior to the filing of the motion, and the fact that granting this motion would require yet another extension of the discovery period, the court finds that this motion is untimely."); *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612, 2012 WL 1680109, at *4-6 (W.D. Ky. May 14, 2012) (collecting cases and concluding that a motion to compel filed only ten days before the close of discovery is untimely); *West v. Miller*, No. 05C4977, 2006 WL 2349988, at *5-6 (N.D. Ill. Aug. 11, 2006) (motion to compel filed eleven days before the close of discovery deemed untimely); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, No. 03 C 760, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (finding that a motion to compel filed four days before the close of discovery is a case of "too little, too late").

The Court has denied Plaintiffs' motion to extend the discovery period yet again [Doc. 243]. In doing so, however, the Court did not foreclose ruling on the pending motions, including granting appropriate relief, but noted that substantive rulings on the pending motions were not

required, and that any relief ordered would not constitute good cause for extending the deadlines for filing dispositive and *Daubert* motions or the trial date.

## II.   ANALAYSIS

The Court starts with the overarching proposition that the Federal Rules of Civil Procedure, including those governing discovery, "should be construed, administered and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.  Although the district judge has given the undersigned wide discretion to address the pending motions, he did not extend the discovery period.  Any discovery sought in the motions that is not specifically ordered herein is denied pursuant to Federal Rules of Civil Procedure 26(b)(2)(C)(ii), which provides in relevant part:

> (C)   *When Required*. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; . . .

### A.  ChemTreat's Motion to Compel and Motion to Seal

#### 1.  Motion to Compel

ChemTreat's motion to compel [Doc. 204] seeks documents responsive to a broad range of its Requests for Production ("RFP"); specifically, RFP 10, 12, 24, 33-38, 54, 98-100, 102, and 106-11 seeking information related to Plaintiffs' claims that Ridley misappropriated Plaintiffs' confidential or trade secret documents prior to leaving Plaintiffs' employment, investigations of that conduct, and document retention policies.  ChemTreat further asks the Court to compel Plaintiffs to provide within seven days a privilege log listing all responsive documents predating February 9, 2022, pursuant to the Agreed ESI Protocol.  ChemTreat filed 17 exhibits in support of

4

this motion, two of which are the subject of the pending motion to seal. In response, Plaintiffs essentially dispute all of Defendants' arguments.

At this late date, the Court will not attempt to parse through the parties' arguments to determine which party is correct about the current status of the responses to the RFP and the completeness of the privilege log. Indeed, despite the pendency of its own motion to compel [Doc. 204], ChemTreat opposed Plaintiffs' recent request for any extension of the deadline for completing discovery [*see* Doc. 230 (Plaintiffs' motion), Doc. 238 (ChemTreat's opposition)]. ChemTreat argued the requested extension of discovery should be denied outright, which would mean discovery would now be closed. In the alternative and without directly addressing its own belated motion, ChemTreat argued the Court "should limit any re-opening and extension of discovery to the two specific issues identified by Plaintiffs (a revised rebuttal report by Plaintiffs' forensic expert, and a Rule 34 inspection of Ridley's devices . . .)" [Doc. 238 at Page ID # 4638]. Even if ChemTreat's position does not amount to an implied waiver of the relief it seeks in the motion to compel, it certainly speaks to whether there is good cause to order the relief after the close of discovery. In any event, the Court will deny ChemTreat's motion to compel [Doc. 204], with some caveats set forth below.

First, in their discussion of RFP nos. 10 and 54, Plaintiffs seem to misconstrue the brief discussion regarding "underlying facts" in the Court's March 31 Order [Doc. 201]. In that Order, the Court addressed certain of Ridley's RFP relating to Plaintiffs' forensic investigation of Ridley's devices. The Court found Plaintiffs' argument that the RFP sought production of irrelevant information bordered on frivolous. Plaintiffs also argued that the RFP sought production of documents protected by the attorney-client privilege and the work-product doctrine. The Court held that underlying facts are generally not protected, such that any "underlying facts responsive

to the RFP" must be produced [Doc. 201 at Page ID # 3360]. Plaintiffs now argue that "the Court granted Ridley's motion *only* with respect to the underlying facts of the forensic investigation." [Doc. 219 at Page ID # 3825 (emphasis added)]. Plaintiffs' meaning is not entirely clear, but it appears they have taken liberties with the Court's language. The Court held that underlying facts, generally speaking, must be produced, even if such facts are set forth in a document that may otherwise contain protected or privileged information. The Court did not hold that Plaintiffs were relieved of all document production obligations so long as they provided ChemTreat with their version of the "underlying facts." The Court also indicated it would not revisit discovery requests and responses multiple times to address issues that could have been raised in the first instance.

In addition, as the Court has previously observed, the parties agreed they "need not log communications involving counsel on or after February 9, 2022." [Doc. 91 at Page ID # 1077]. All other documents and information purported to be withheld on grounds of privilege or work product must be included on a privilege log. ChemTreat identifies documents which, as far as the Court can tell, should either have been produced or included on Plaintiffs' privilege log [*see* Doc. 237 at Page ID # 4592].

Beyond these issues, ChemTreat primarily argues that Plaintiffs' document production has been consistently incomplete, for various reasons. ChemTreat repeatedly states that Plaintiffs should be required to state that no additional responsive documents exist for a given RFP. As the Court has previously held, it cannot order a party to produce documents that the party claims do not exist, and the Court declines to require Plaintiffs to produce certifications regarding these RFP after the close of discovery. The Court will, however, permit and require Plaintiffs to supplement their document production and update their privilege log to correct any known deficiencies within **SEVEN DAYS** of entry of this Order. As mentioned, the Court declines to order any specific

6

production, but Plaintiffs are reminded that if they fail to disclose evidence in discovery, it is unlikely the Court will consider the evidence when ruling on any dispositive motions or permit Plaintiffs to rely on the evidence at trial. *See Jones v. McGrath*, No. 1:12-cv-946, 2014 WL 4388262, at *7 (S.D. Ohio Sept. 5, 2014) (citing *Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 554-55 (6th Cir. 2010)); *Thomas v. McDowell*, No. 2:10-cv-152, 2014 WL 5305501, at *6 (S.D. Ohio Oct. 15, 2014) (granting motion in limine to exclude late-disclosed witnesses and medical records but holding such evidence may be used for impeachment purposes).

### 2. Motion to Seal

In its motion to seal, which is accompanied by two proposed sealed documents, ChemTreat states neither proposed seal document qualifies for sealing under the high standard established for sealing court records and it argues neither document should be sealed. Apropos of the parties' discovery difficulties, ChemTreat was unable to obtain Plaintiffs' consent to filing the documents in the public record, although it apparently only gave Plaintiffs one day to respond to its request to file the documents in the public record. As noted above, however, Plaintiffs have not responded to the motion to seal, nor do they even mention sealing in their response to ChemTreat's motion to compel. Given the complete absence of any argument to support sealing the proposed seal documents in whole or in part, the motion to seal [Doc. 206] is **DENIED** and ChemTreat may now file the documents in the public record.

In the future, any party wishing to file a document deemed **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL—ATTORNEY EYES ONLY** by the opposing side pursuant to the Protective Order is **ORDERED** to confer in good faith at least **48 HOURS PRIOR** to filing a "provisional" motion to seal in order to try to obtain consent to file the document(s) in the court record. If a party designating the document(s) as **CONFIDENTIAL** or **HIGHLY**

7

**CONFIDENTIAL—ATTORNEY EYES ONLY** refuses, or timely fails, to give consent to file a document unsealed within the **48 HOURS** and then does not present a valid, good faith argument supported by applicable citation to authority for sealing in response to the resulting motion to seal, the party will be sanctioned for wasting the resources of the filing party and the Court. These requirements are in addition to those set forth in the Scheduling Order [Doc. 99] regarding motions, which requires the parties to comply with § 5.H. of the Court's preferences concerning joint appendices in connection with motions for summary judgment.[4]

### B. Plaintiffs Motion to Compel and Motion to Take Additional Depositions

#### 1. Motion for Additional Depositions

Plaintiffs' "emergency" motion for leave to take five additional depositions pursuant to Federal Rule of Civil Procedure 30(A)(2)(A) is not well-taken. Under the Rule, a "party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)(A) if the parties have not stipulated to the deposition and the deposition would result in more than 10 depositions being taken." Fed. R. Civ. P. 30(A)(2)(A)(i). In turn, Rule 26(b)(1) and (2) provide:

---

[4] The Court's preferences are available at: https://www.tned.uscourts.gov/content/travis-r-mcdonough-chief-united-states-district-judge. Section 5.H of the Court's preferences states: "Prior to a motion for summary judgment, the parties shall meet, confer, and develop a single, joint appendix of all exhibits. The joint appendix shall be filed by the movant no later than the initial motion for summary judgment. All pages of the joint appendix shall be consecutively numbered and referenced in the motions and briefs by such page numbers. The joint appendix shall include a table of contents. The parties shall make every effort to include all necessary exhibits in the initial joint appendix. The parties should not, however, prospectively over-designate exhibits or deposition testimony for inclusion in the joint appendix. For example, parties should only include those pages of a deposition transcript that are cited to by one of the parties. Should it become necessary for the non-moving party to submit additional exhibits, it may do so at the time it files its opposition brief. Any addendum to the initial joint appendix shall be consecutively numbered, following the page number at which the joint appendix ended, and shall include a table of contents. The Court will not consider material not included in the joint appendix and addendum."

>  (b) Discovery Scope and Limits.
>
>> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>>
>> (2) *Limitations on Frequency and Extent*.
>>
>>> (A)  *When Permitted*. By order, the court may alter the limits in these rules on the number of depositions . . . under Rule 30. . . .

Fed. R. Civ. P. 26(b)(1) & (2).

Expert depositions, like other depositions, are governed by Rule 30. *See* Fed. R. Civ. P. 30(d). The Rules expressly contemplate depositions of experts following submission of their reports. *See* Fed. R. Civ. P. 26(b)(4) ("A party may depose any person who has been identified as an expert . . . . If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."). Federal Rule of Civil Procedure 16(b), of course, gives district courts broad discretion to manage the litigation schedule and the scope of discovery. *See Andretti v. Borla Perf. Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).

Together, the Scheduling Order, Rule 16, Rule 26, and Rule 30 provide protections and procedures for the parties and lay and expert witnesses. As a matter of policy, requiring parties to seek leave to conduct more than ten depositions ensures that the parties "'develop a mutual cost-effective plan for discovery' and do not needlessly depose scores of unnecessary expert witnesses."

9

*Smith v. Smith*, No. 19-10330, 2020 WL 1933820, at *5 (E.D. Mich. Apr. 22, 2020) (quoting 8A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2104 (3d ed. 2017)). "Because this limit is intended to curb abusive discovery practices . . . a party wishing to conduct more than 10 depositions has the burden of persuading the court that these additional depositions are *necessary*. This showing cannot be based on general assertions. Rather, the moving party must make a particularized showing why the extra depositions are necessary." *Goree v. United Parcel Service, Inc.*, No. 14-2505, 2016 WL 3647681, at *2 (W.D. Tenn. Apr. 12, 2016) (emphasis in original) (quoting *Moore v. Abbott Labs*., No. 2:05-cv-1065, 2009 WL 73876, at *1 (S.D. Ohio Jan. 8, 2009)).

Almost a year ago, the parties identified in their Rule 26(f) Report that each side would seek discovery regarding the other's alleged spoliation and that "[t]his may require depositions in excess of the number provided by right. If the parties cannot resolve this issue amongst themselves, they can seek leave of Court for depositions in excess of ten as provided for in Rule 30(a)(2)(A)(i), and opposing parties reserve the right to object to such a request." [Doc. 39 at Page ID # 281]. After Defendants refused to agree to the additional, apparently last-minute deposition requests, made on April 17—with only ten days left in the extended discovery period—Plaintiffs filed their motion seeking to take up to five additional depositions—three nonparty fact witnesses and two expert witnesses—claiming the motion was timely because it was filed ten days before the already once extended discovery period closed. In their reply, Plaintiffs narrowed their request to only one nonparty fact witness (Tyler Bates) and two experts (Andrew Rapolevich, identified as "Ridley's forensic computer rebuttal expert," and Robert Cunningham, identified as ChemTreat's "rebuttal expert to Plaintiffs' damages expert") [Doc. 244 at Page ID # 4873]. According to ChemTreat, Plaintiffs filed the motion before they exhausted their ten depositions as

10

of right, presumably because so many depositions were being taken in the last few days of the discovery period.

Plaintiffs should be disabused of any sincere notion this motion was timely filed as they claim. The motion essentially asks the Court to compel additional depositions after the close of discovery and it is clearly untimely. Moreover, granting the requested relief would require the Court to allow Plaintiffs to conduct discovery after the discovery period has closed. While the Court has the discretion to grant such relief, it will not do so under the circumstances at hand.

This is not a case where previously undisclosed witnesses are discovered for the first time on the eve of the discovery deadline. Although in the motion Plaintiffs claim they "learned new details necessitating more depositions than Plaintiffs initially anticipated" [Doc. 214 at Page ID # 3757], they clearly have known for almost a year that the presumptive limit of ten might be insufficient [Doc. 39 at Page ID # 281]. Tyler Bates, the nonparty fact witness Plaintiffs seek to depose, is named in Plaintiffs' second amended complaint [*see* Doc. 46 at Page ID # 422], filed June 13, 2022. Plaintiffs issued a subpoena duces tecum to Bates on July 14, 2022 [Doc. 241-1]. As that subpoena listed Mr. Bates' address in Chattanooga, it appears that Mr. Bates is a witness who is subject to the subpoena power of the Court should Plaintiffs wish to present his testimony at trial.

Moreover, Defendants' experts were disclosed on the timeline proposed by the parties and set by the Court [Doc. 144]. Plaintiffs also have known throughout the almost yearlong discovery period that they were allocating a short period of time to taking depositions, and furthermore that they were making choices about who to depose within a set limit of ten unless they obtained agreement or leave of Court.

In addition, as argued by Defendants, Plaintiffs failed to demonstrate a particularized need for any additional depositions in their opening brief. They attempt to do so in their reply [Doc. 244], but the Court is not required to consider arguments raised for the first time in reply, and it declines to do so here. *See R Gang Inc. v. Hofstetter*, No. 3:15-CV-39-TAV-CCS, 2015 WL 11109238, at *5 n.2 (E.D. Tenn. Aug. 14, 2015) (citing *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577-78 (E.D. Tenn. 2012) (declining to address issue raised for the first time in a reply brief "as a matter of litigation fairness and procedure")); *Ritchie v. Coldwater Cmty. Sch.*, 947 F. Supp. 2d 791, 806-07 (W.D. Mich. 2013) ("Case law is legion for the proposition that it is generally improper for a litigant . . . to present a new, previously available argument for the first time in a reply brief.")).

Finally, the taking of depositions of experts and a third-party witness after the close of discovery would certainly result in an undue burden on all the parties and potentially result in a delay of the impending deadlines—especially the *Daubert* and summary judgment motions deadlines.

For these reasons, the Court concludes that the burden of the requested three additional depositions outweighs the possible benefit. Accordingly, the motion seeking leave to take additional depositions is **DENIED**.

### 2. Plaintiffs' Motion to Compel a Rule 34 Inspection

Plaintiffs' Rule 34 Request to Inspect ("RTI") certain electronic devices, email accounts, cloud storage accounts and any existing forensic images of same was served on Ridley on February 13, 2023, seeking inspection on March 15, 2023 [Doc. 225-4]. The RTI addressed several devices [*see id.*], and Plaintiffs argued in their opening brief in support of their Rule 34 motion to compel that they should be permitted to inspect all the devices [Doc. 225]. In their reply, however,

Plaintiffs state: "In an effort to compromise, Plaintiffs are now limiting the scope of their Motion to the person[al] Western Digital hard drive ('WD Drive') that Ridley used throughout his tenure with Plaintiffs but retained following his resignation." [Doc. 245 at Page ID # 4996].[5]

In its discretion, and after careful consideration of the issues in this case including the parties' well-documented dilatory discovery tactics and the potentially significant spoliation issues, the Court will permit Plaintiffs to inspect a forensic image of Ridley's hard drive.

The record reflects Plaintiffs only recently learned that Ridley continued to backup Ecolab/Nalco documents to the WD Drive as late as 2020. That is, Plaintiffs learned this information during Ridley's April 17 deposition. As Plaintiffs point out, Ridley's interrogatory responses from July 2022 state that Ridley backed up "files from his work laptop" while he was employed by Plaintiffs, and that he used the WD Drive to do so. The interrogatory response states that Ridley "believes he backed up the files sometime in 2015 or 2016." [Doc. 225-3 at Page ID # 4024]. In his deposition, however, Ridley testified that he saved Nalco files to the WD Drive as late as 2020 [Doc. 225-1 at Page ID # 3993, 4001]. In an affidavit attached to Plaintiffs' reply, Plaintiffs' forensic computer expert explains why this discrepancy is significant and why Plaintiffs' possession of the CrowdStrike log since the end of 2022 is insufficient to fully address the discrepancy between Ridley's interrogatory response and his deposition testimony:

> 15. The CrowdStrike report is an extremely voluminous electronic document, which is too large to print or attach as an exhibit. Ridley's response to Plaintiffs' Interrogatory No. 2 states that he "last backed up files from his work laptop while employed with Nalco Water to his external hard drive sometime in 2015 or

---

[5] Confusingly, Plaintiffs go on to address the various other devices originally included in the RTI [*see* Doc. 245 at Page ID 4899 ("The same analysis holds true for each of the other devices and accounts covered by Plaintiffs' motion.")]. The Court will not address the other devices; instead the Court will hold Plaintiffs to their representation that they are making an effort to compromise by limiting their request to the WD Drive. To the extent Plaintiffs continue to seek to inspect any other devices, such request is denied.

13

> 2016." Thus, when I received the CrowdStrike report, my focus was not on reviewing that report for interactions between the ChemTreat laptop referenced in paragraph 6 above and Ridley's [WD Drive]. In my role as an ESI expert, I am required to prioritize the searches and analyses that I conduct of electronically stored information. In reviewing and analyzing the CrowdStrike report, I prioritized many other issues over the WD drive because: (1) Ridley separated from Plaintiffs on July 1, 2021; and (2) Ridley represented in his Interrogatory Response that he last backed up to the WD drive in 2015/2016 which predates his departure from Plaintiffs by a half decade or more.
>
> 16. I have reviewed the transcript of Defendant Ridley's deposition, which was taken on April 17, 2023. During that deposition, and contrary to his Interrogatory Response that he last backed up to the WD drive in 2015/2016, Defendant Ridley testified that he continued backing up and/or saving documents to the WD drive until 2020. If Ridley had disclosed in his Interrogatory Response that he continued backing up and/or saving documents to the WD Drive through 2020, I certainly would have made it a priority to review the CrowdStrike report for interactions between his wiped ChemTreat computer and the WD drive.

[Doc. 245-2 at Page ID # 4909-10]. At no point in his response in opposition to Plaintiffs' motion does Ridley address his testimony that he backed up Nalco/Ecolab files to his WD Drive in 2020.

The Court finds Plaintiffs have sufficiently narrowed their RTI by limiting it to the WD Drive. Further, they have demonstrated the WD Drive is likely to contain discoverable information, and they have adequately justified why they did not raise this issue sooner. As mentioned above, the spoliation of evidence has the potential to be a significant issue in the next phases of this case, and it appears the WD Drive may be germane to spoliation issues.

Ridley argues Plaintiffs have not shown his own document production was deficient, which Ridley contends is a prerequisite for the Court to allow Plaintiffs to inspect the WD Drive. But again, Ridley fails to address the confusion created by his interrogatory response indicating he last backed up Nalco/Ecolab files in 2015/2016 as compared to his very recent deposition testimony which states that he backed up these files as late as 2020. *Cf. Bishop v. Hamya, Inc.*, No. 3:16-

14

1123, 2017 WL 6944794, at *2 (M.D. Tenn. Oct. 16, 2017) (denying request for inspection as untimely, finding defendants "made no effort to clarify" ownership of backpack containing tablet prior to close of discovery). It is certainly true Plaintiffs could have, and perhaps should have, deposed Ridley sooner, and it is not clear when Ridley remembered or learned that he backed up Nalco/Ecolab documents to the WD Drive as late as 2020. But it also appears that when he did realize the 2020 backups to the WD Drive, Ridley did not notify Plaintiffs or correct/supplement his prior interrogatory response representing that the backups stopped in 2015/2016.

Contrary to Ridley's argument, this is not a case of "mere suspicion" that Plaintiffs' information is (or at least was at one time) stored on the WD Drive. *See Diepenhorst v. City of Battle Creek*, No. 1:05-CV-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006). Ridley has admitted to saving Plaintiffs' documents on the WD Drive, and he does not identify the documents, nor does he demonstrate the documents are not relevant. Indeed, Ridley previously agreed to provide a forensic image of the WD Drive for inspection upon reaching agreement on certain proposed conditions, which resulted in further delay as the parties attempted to work out the issues without court intervention [Doc. 225-11 at Page ID # 4413]. The Court acknowledges Ridley's conditional agreement was premised on the parties' ability to agree to an inspection protocol, but many of his reservations concerning the protocol relate to cost and privacy concerns, which can be addressed.

The Court declines to order a specific detailed protocol for the forensic inspection, because the Court lacks sufficient information about, for example, how long creating an expedited forensic image and reasonable search takes, what information can be easily removed from the forensic image, etc. The Court will therefore require the parties to meet and confer within **48 HOURS** to come up with an efficient, workable protocol that allows the forensic image to be created and

15

inspected on a reasonable timeline. If, however, ChemTreat elects not to participate in the WD Drive protocol process, they are not required to do so.

The Court offers the following guidance to aid the parties during their meet and confer. Ridley shall not bear the costs of producing or conducting an appropriate word search of the forensic image, nor any increased cost due to the need to expedite the process. The inspection shall not involve examining any of Ridley's personal pictures or videos, and any such files shall be removed or left unreviewed from the forensic image to the extent possible. The Court finds it is neither practical nor necessary for a "neutral third-party forensic examiner" to produce the forensic image or perform the inspection at this point in the case. The Court will permit Plaintiffs' expert, Mr. Lieb, to produce the forensic image and perform the word search. Mr. Lieb shall perform searches for relevant documents, which shall then be produced to all parties at Plaintiffs' expense, and Plaintiffs are not entitled to production of "all non-personal documents" from the WD Drive [*see* Doc. 225-8 at Page ID # 4400]. If Ridley wishes to engage in a pre-production privilege review, he shall bear the costs of such review, which must be conducted on an expedited basis. The parties are **ORDERED** to cooperatively undertake and complete this task as soon as possible.

## III. CONCLUSION

For the reasons stated herein, ChemTreat's Motion to Compel Evidence of Uploading, Downloading, or Deletion and a Privilege Log [Doc. 204] and related motion for leave to file documents under seal [Doc. 206] are **DENIED,[6]** except that Plaintiffs are **ORDERED** to supplement their document production and update their privilege log to correct any known deficiencies within **SEVEN DAYS** of entry of this Order. Plaintiffs' Emergency Motion for Leave

---

[6] *See* Electronic Case Filing Rules & Procedures, E.D. Tenn. Rule 12.2.

to Allow Plaintiffs to Take Additional Depositions Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A) [Doc. 213] is **DENIED**. Plaintiffs' Motion to Compel Ridley's Compliance with Plaintiffs' Rule 34 Request To Inspect [Doc. 224] is **GRANTED IN PART AND DENIED IN PART**, as set forth above. The parties are **ORDERED** to meet and confer within **48 HOURS** of entry of this Order for the purpose of developing and agreeing on a protocol for the inspection of the forensic image of Ridley's WD Drive, which protocol **SHALL** be consistent with the Court's guidance set forth above. As noted above, if ChemTreat elects not to participate in the WD Drive process, they may do so.

    SO ORDERED.

    ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE