UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>    Defendants. | Case No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

**CHEMTREAT'S MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE CERTAIN OPINIONS OF LAURENCE D. LIEB**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

      A.     DLP Report ............................................................................................ 3

      B.     CrowdStrike Log .................................................................................... 5

      C.     Ridley's OneDrive Folder ....................................................................... 5

      D.     Lieb's Intent-Based Opinions ................................................................. 8

LEGAL STANDARD ....................................................................................................... 8

ARGUMENT .................................................................................................................. 10

I.      LIEB IS NEITHER QUALIFIED TO OFFER OPINIONS ABOUT THE DLP
      REPORT AND CROWDSTRIKE LOG NOR ARE HIS OPINIONS BASED ON
      A RELIABLE METHODOLOGY. ..................................................................... 10

      A.     Lieb Is Not Qualified to Offer Opinions About the DLP Report and
              CrowdStrike Log. .................................................................................. 10

      B.     Lieb's Opinions About The DLP Report And CrowdStrike Log Are Not
              Based On a Reliable Methodology. ......................................................... 14

II.     LIEB'S ONEDRIVE DELETION OPINIONS ARE SPECULATIVE AND
      UNRELIABLE. .............................................................................................. 15

III.    LIEB CANNOT OFFER OPINIONS REGARDING STATE OF MIND OR
      INTENT. ....................................................................................................... 19

IV.    LIEB CANNOT OFFER LEGAL OPINIONS. .................................................. 21

V.     LIEB'S REBUTTAL OPINIONS ARE MISLEADING AND UNFAIRLY
      PREJUDICIAL. ............................................................................................. 22

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 794328 (N.D. Cal. Feb. 24, 2014) ................10

*Ask Chems., LP v. Comp. Packagers, Inc.*, 593 F. App'x 506 (6th Cir. 2014) .......................10, 17

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) .......................................................11, 21, 22

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 2022 WL 3337792 (E.D. Va. July 8, 2022) ..............................................................................................................................23

*Brown v. City of Shelbyville*, 2020 WL 13173275 (E.D. Tenn. Sept. 17, 2020) .................. *passim*

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 2019 WL 1435934 (W.D. Ky. Mar. 29, 2019) ..............................................................................................................21

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004) .........17

*Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958 (M.D. Tenn. 2002) ........................................18

*Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927 (6th Cir. 2003) .....................................................18

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .......................................1, 10, 15, 23

*Flex Homes, Inc. v. Ritz-Craft Corp*, 491 F. App'x 628 (6th Cir. 2012) .........................................9

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................................16

*Hershey v. Pacific Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945 (N.D. Ill. 2010) ...........................20

*Hillerich & Bradsby Co. v. Travelers Prop. Cas. Co.*, 2007 WL 403596 (W.D. Ky. Jan. 31, 2007) ..............................................................................................................................10

*Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993 (9th Cir. 2001) ....................................10

*Lawrence v. Raymond Corp.*, 501 F. App'x 515 (6th Cir. 2012) ....................................................8

*Little v. City of Morristown*, 2023 WL 2769446 (E.D. Tenn. Mar. 31, 2023) ................................................................................................................................................19, 20, 21

*Madej v. Maiden*, 951 F.3d 364 (6th Cir. 2020) ..........................................................................10

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................11

*Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748 (8th Cir. 2006) ................................................14

*Moisenko v. Volkswagenwerk Aktiengesellschaft*, 198 F.3d 246 (6th Cir. 1999) ........................23

ii

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521 (6th Cir. 2012) ........................ *passim*

*Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308 (10th Cir. 1998)...................................21

*Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) .......................................................15

*Proofpoint, Inc. v. Vade Secure, Inc.*, 2021 WL 2383574 (N.D. Cal. June 10, 2021)..................22

*Summerland v. Cnty. of Livingston*, 240 F. App'x 70 (6th Cir. 2007)...........................................22

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311 (6th Cir. 2015)................20

*Synopsys, Inc. v. Risk Based Security, Inc.*, 2022 WL 3005990 (E.D. Va. July 28, 2022)
.................................................................................................................................16, 17

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010) .........................................9, 12, 14, 15

*Thomas v. Novartis Pharma. Corp.*, 443 F. App'x 58 (6th Cir. 2011).........................................15

*United States v. LeBlanc*, 45 F. App'x 393 (6th Cir. 2002).............................................9

*United States v. Semrau*, 693 F.3d 510 (6th Cir. 2012) ...................................................9

*Vanderpool v. Edmonson*, 2005 WL 5164857 (E.D. Tenn. Mar. 23, 2005)...........................13, 15

*Williams v. Syphan*, 2023 WL 1305084 (6th Cir. Jan. 31, 2023) ...........................................12, 14

*Yancey v. Carson*, 2007 WL 3088232 (E.D. Tenn. Oct. 19, 2007) .......................................19, 20

## STATUTES AND RULES

Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839.........................................................2, 21

Tennessee Uniform Trade Secret Act ("TUTSA"), Tenn. Code Ann.
§ 47-25-1702(2) ..........................................................................................................2, 21

Federal Rule of Civil Procedure 26(b)...........................................................................23

Federal Rule of Evidence 403.........................................................................................2, 9, 23

Federal Rule of Evidence 702.........................................................................................1, 8, 9, 21

iii

# INTRODUCTION

The opinion testimony of Laurence D. Lieb, Plaintiffs' designated expert witness on forensic issues, falls well short of the standards for admissibility set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Lieb rests his opinions, all of which relate to Ridley's alleged misappropriation and misuse of Plaintiffs' purported trade secrets, principally on two pieces of evidence—Plaintiffs' data loss prevention report ("DLP Report") and ChemTreat's CrowdStrike log, both of which reflect user activity on electronic devices. But Lieb has no training, experience, or expertise with respect to that software or these reports, and is thus unqualified to render his opinions, which suffer from crippling methodological defects as well. Lieb in addition relies heavily on a particular OneDrive subfolder to show that "Ridley exfiltrated thousands of Ecolab files and then deleted those same files" from his Ecolab OneDrive folder. The problem: The folder Lieb has reviewed was not copied from Ridley's cloud-based OneDrive folder or even Ridley's laptop; rather, it was copied from the laptop of an Ecolab paralegal months after Ridley left. Lieb cannot reliably say with any degree of confidence, and certainly not with the degree of confidence that Rule 702 requires, that he in fact is reviewing and opining on Ridley's OneDrive folder at all.

Lieb elsewhere offers patently inadmissible opinions. He opines repeatedly regarding Ridley's state of mind. Lieb testified, for example, that he "use[s] the word 'intent' . . . and that [it] is . . . [his] opinion as to why [Ridley] stole those files." Ex. 1 at 243:1-7. His report is replete with similar references. Lieb likewise reaches legal conclusions, opining, for example, that Ridley "misappropriated" Ecolab's files. Misappropriation is a legal term under the DTSA and TUTSA, and an issue for the jury, not an expert. Finally, in his rebuttal report, Lieb asserts there are sources of information that he believes are "conspicuously absent" from the report of ChemTreat's own forensic expert. Those sources were not produced in discovery and are not part of the factual

1

record. Federal Rule of Evidence 403 precludes Lieb from speculating as to what other evidence might exist or the contents of any such "missing" evidence.

## BACKGROUND

Ridley worked for Nalco and Ecolab (together "Ecolab") in various positions from November 1, 1999, until July 1, 2021. He joined ChemTreat as a Field Sales Representative on July 2, 2021. Plaintiffs bring claims against Ridley for breach of his employment agreement, and against ChemTreat for tortiously interfering with that agreement. Doc. 229 at 43-56, 59-63. Plaintiffs also bring claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(5), and the Tennessee Uniform Trade Secret Act ("TUTSA"), Tenn. Code Ann. § 47-25-1702(2). *Id.* at 47-53.

Plaintiffs proffer the forensic opinion testimony of Laurence D. Lieb regarding Ridley's alleged misappropriation and use of what Plaintiffs contend is their trade secret information. Ex. 2. In forming his opinions, Lieb considered four sources of information: (1) Plaintiffs' DLP Report and the website of Digital Guardian, the company whose software generated the report, *id.* ¶ 7; Ex. 1 at 55:9-15; (2) ChemTreat's CrowdStrike log and a brief conversation with unidentified CrowdStrike employees, Ex. 2 ¶¶ 7, 58; (3) a forensic image of a folder collected from an Ecolab paralegal's hard drive in January 2022, Ex. 1 at 117:7-13; and (4) forensic images of three USB drives, Ex. 2 ¶ 32. Lieb did not consider any additional evidence in the record, such as deposition testimony or produced documents (including Plaintiffs' O365 Log which, like the DLP Report, reflects Ridley's digital activity prior to his resignation). *Id.* ¶ 7; Ex. 1 at 123:23-124:8.

Lieb offers three opinions relevant to this motion. *First*, Lieb opines that Ridley "exfiltrated" and "misappropriated thousands of Ecolab's files" before deleting files from his Ecolab OneDrive folder. Ex. 2 ¶¶ 12, 14, 41, 43, 50. (Lieb testified that "exfiltration" and "misappropriation" mean "theft." Ex. 1 at 203:15-16, 204:20-23.) *Second*, Lieb also opines that

2

Ridley downloaded Ecolab files with the intent to use them at ChemTreat, and later deleted files to hide this alleged conduct. Ex. 2 ¶¶ 24, 35. *Third*, Lieb opines that ChemTreat's forensic expert, Jim Vaughn, failed to search every possible repository of electronic documents before forming his own opinions. Ex. 3 ¶¶ 31, 34, 35, 40, 54.

### A. DLP Report

Plaintiffs generated a DLP Report on July 23, 2021. Ex. 4 at 136:11-18; Ex. 5 at 23. A DLP Report is a large Excel file, with cells indicating different electronic devices and files a user interacted with while logged into Ecolab's computer system, as well as the manner in which the user interacted with them. Ex. 2 ¶ 12; Ex. 4 at 177:5-187:20. Plaintiffs have a standard procedure for running DLP Reports, which includes prompting the software to identify whether a user deleted files. Ex. 6 at 2; Ex. 4 at 99-102, 208-209. The DLP Report that Plaintiffs produced regarding Ridley's activity covers 62 days and reflects no deletion activity. Ex. 7; Ex. 1 at 264:1-8; Ex. 8 at 37:8-38:9. Plaintiffs also produced a copy of an "Office 365 Audit Log" ("O365 Log") that "logs and journals employee activity" within OneDrive. Ex. 1 at 42:9-12. That log captured Ridley's activity between June 4, 2021 and July 1, 2021. Ex. 9. The O365 Log is designed to capture deletion activity, amongst other actions. Ex. 8 at 46:15-47:12; Ex. 9 at Column T. The O365 Log for Ridley did not show deletion of any relevant files. Ex. 10 at 20-21.

Lieb has no prior experience with Digital Guardian software or DLP Reports:

Q: . . . [W]hat is your personal experience with Digital Guardian?

A: My personal experience with Digital Guardian actually began with the Ridley matter.

Q: . . . [S]o you had not used Digital Guardian before you were retained for this litigation?

A: Correct.

Q: Did you receive training on Digital Guardian?

A: I did not.

> Q: Have you ever personally run a Digital Guardian report?
>
> A: I have not . . . .
>
> Q: . . . [H]ow many Digital Guardian reports have you examined?
>
> A: To date, I believe three, one in each of the cases [Ecolab has subsequently brought against ChemTreat and/or its employees].

Ex. 1 at 45:8-46:23. Before this case, Lieb was not aware that Digital Guardian was a data loss prevention software application. *Id.* at 50:15-23.

Lieb's "forensic analysis" of the DLP Report, in his words, consisted of "just reading" the Excel file, as any layperson could do. *Id.* at 181:8-10. When tasked with analyzing the DLP Report, Lieb did not ask anyone at Ecolab or Digital Guardian to explain the terms used in the DLP Report, and was not sure what certain terms meant, such as "Alert Was Blocked." *Id.* at 181:25-182:13, 183:5-15. He explained that:

> [I]t would be asking me to speculate what alert was blocked . . . what that means. . . . I don't know if that means that the action was blocked or that the alert was blocked . . . . I didn't ask anyone to expand on what that particular column means.

*Id.* at 183:6-11. Nonetheless, Lieb "interpret[ed]" the DLP Report using five steps: (1) he "opened it up in Microsoft Excel," *id.* at 162:18-163:4; (2) he froze the first row and column, *id.*; (3) he used the "filter" function—which he described as "little drop-down arrows"—to see what categories of information were included in the DLP Report, *id.*; (4) he focused on the "rule violation" column because he believed, without explanation, that the other columns "were not relevant to this dispute," *id.* at 163:5-16, and only rule violations "show any evidence . . . of exfiltration," *id.* at 185:21-186:3; and (5) he filtered by date of activity to reach his final conclusions about "which files were exfiltrated . . . on a specific day," *id.* at 163:17-24; *see also id.* at 171:19-177:15. When he recreated this methodology during his deposition, he was left with a list of 576 rule violations, *id.* at 185:21-186:11, which contradicted the conclusion in his report

that the DLP Report showed Ridley's exfiltration of "thousands" of files, Ex. 2 ¶ 14.

### B.    CrowdStrike Log

ChemTreat produced a report regarding Ridley's activity as a ChemTreat employee using a software application designed to monitor external file access and USB activity.  Ex. 11; Ex. 12 at 11. Upon realizing that the first laptop ChemTreat had issued to Ridley had been mistakenly reformatted and issued to a new user (resulting in the loss of data relating to Ridley's use of the laptop), ChemTreat used a data protection program called CrowdStrike to generate a log reflecting external USB activity on that laptop. Ex. 12 at 11, 35. The CrowdStrike log identifies all external USB devices accessed (identified by serial number), any files accessed from such devices, and the date and time of access. *Id.* at 35, 37-38.  Thus, although the data on the first laptop was lost, ChemTreat was able to determine what, if anything, had been accessed on that laptop, and when.

Lieb's claimed "forensic analysis" of the CrowdStrike log, Ex. 2 ¶ 51, was much the same as his analysis of the DLP Report: "first attempting to open the actual file itself" and then running generic term searches for "Nalco, Ecolab, USB, USB drive, hotmail, Google, Gmail, Yahoo and serial numbers." Ex. 1 at 287:22-23, 288:7-14. Despite his lack of experience with either software, Lieb opines that Plaintiffs' DLP Report is a reliable method of analyzing a user's actions on a device that is no longer available, whereas ChemTreat's CrowdStrike log is not. Ex. 2 ¶¶ 12, 58-59.

### C.    Ridley's OneDrive Folder

Both Ecolab and ChemTreat use Microsoft software applications, including a cloud-based electronic document storage platform called OneDrive. Ex. 1 at 40:6, Ex. 12 at 10. OneDrive can be configured so that a single user has access to an electronic folder, but it also has file-sharing capabilities, allowing multiple people to access and edit documents in a shared folder. Ex. 8 at 26:23-28:13. For example, Ecolab assigned a particular OneDrive folder to Ridley for his use, and

he shared access to it with at least three other Ecolab employees. Ex. 13 at 148:13-149:9; Ex. 14 at 222:17-24.

Ridley resigned his Ecolab employment on July 1, 2021, Ex. 15, and Ecolab began considering possible legal action that same day, Ex. 16. Plaintiffs nonetheless waited nearly seven months, until January 25, 2022, before asking Lieb to create a forensic image—an exact electronic copy—of a folder that was, allegedly, a copy of Ridley's OneDrive folder. Ex. 1 at 21:8-24, 117:7-13. The folder that Lieb imaged was not a cloud-based OneDrive folder like the one Ridley had used while employed by Ecolab. The folder Lieb imaged was located on the hard drive of the computer assigned to an Ecolab paralegal. *Id.* at 117:7-13. Lieb remotely accessed the paralegal's computer to create the forensic image. *Id.* at 87:14-23. He testified about his involvement in this belated preservation attempt:

> Q: You collected this folder, which has a completely different name [than the file path reflected on the DLP Report], seven months later, from the hard drive of a paralegal at Ecolab based on representations to you that it was the only information they had for you; correct?
>
> A: That is correct.[1]

*Id.* at 117:7-13. Lieb testified that he had no information about the chain of custody for the folder he collected from the paralegal's computer in January 2022:

> Q: So when was the folder that you forensically collected placed on [the paralegal's] hard drive?
>
> A: I don't know.
>
> Q: Where did that folder come from?
>
> A: I don't know.
>
> Q: Do you know whether Mr. Ridley's OneDrive had remained in active use by other employees in the intervening months?
>
> A: I don't.
>
> Q: Do you know whether it had to be restored in whole or in part?

---

[1] Unless noted, all emphasis is added and quotations are cleaned up with internal citations omitted.

6

A: I do not.

Q: Do you know whether it had to be reconstituted in whole or in part?

A: I do not.

Q: Do you know whether it had to be recovered in whole or in part?

A: I do not.

Q: Do you know how it came to be located on the hard drive of [the paralegal]?

A: I do not.

*Id.* at 97:2-23. Lieb did not obtain, create, or maintain a chain of custody record of any of this vital information, *id.* at 18:16-24, 21:13-16, 157:14-18, despite his belief that "[i]t is critical to use . . . industry-standard chain of custody forensic software that will preserve and maintain which specific person has sole control over a specific single source of electronic evidence up to a time and date certain." Ex. 2 ¶ 11.

Lieb concludes that files missing from the image he collected of this folder from a paralegal's hard drive in January 2022 support his conclusion that Ridley deleted files from his OneDrive before leaving Ecolab on July 1, 2021. *Id.* ¶¶ 41, 43, 50. Lieb testified that: "[He] analyzed the contents of the forensic image of Anthony Ridley's OneDrive account data and compared it to the files described as having existed or existing in Anthony Ridley's OneDrive account in the Digital Guardian report." Ex. 1 at 96:8-11. Lieb assumed, based on representations from counsel, that the folder he imaged in January 2022 was a complete copy of Ridley's OneDrive as it existed on July 1, 2021. *Id.* at 93:23-94:2, 95:24-96:11. Based on this assumption for which there is no evidentiary support, Lieb concluded that a "now deleted 'ridley's nalco folder' folder would have existed" at the time Lieb forensically imaged Ridley's alleged OneDrive folder on January 25, 2022, "but for the fact that Ridley deleted [that] folder from his Ecolab OneDrive after downloading [that] folder and [its] contents to the LaCie drive" between May 22 and July 1, 2021. Ex. 2 ¶¶ 13, 45.

7

### D. Lieb's Intent-Based Opinions

Lieb purports to offer expert opinion testimony that Ridley downloaded Ecolab files with the intent to use them at ChemTreat, and Ridley later deleted files to hide this alleged conduct. *Id.* ¶¶ 24, 35. Lieb testified:

> Q: . . . [Y]ou are offering an opinion about Mr. Ridley's intent with regard to actions you say he took, correct?
>
> A: Yes. That I use the word "intent" there and that is . . . my opinion as to why he stole those files.

Ex. 1 at 243:1-7 (referencing Ex. 2 ¶ 24). Examples of Lieb's "intent" opinions include:

- "It is my opinion that Ridley exfiltrated the many Ecolab files documented in this report *specifically to utilize them while employed at ChemTreat.*" Ex. 2 ¶ 24; Ex. 1 at 241:21-25.

- "Mr. Ridley deleted the files listed below in Table 2 in a *failed attempt to hide the fact that the drive contained Ecolab files.*" Ex. 2 ¶ 35.

- "Ridley *attempted, but failed to hide the fact* that he was in possession of the abovementioned Ecolab files." *Id.* ¶ 40.

- "Ridley exfiltrated and then destroyed a significant number of Ecolab files in an *attempt to deprive his former employer access to these same files.*" *Id.* ¶ 41.

- "It is my opinion that there was absolutely no need to 'declutter' his OneDrive account, but in fact *this act of deletion was designed to deprive Ecolab access to these same files*." *Id.* ¶ 48.

- "[A]ll evidence is consistent with the fact that Ridley exfiltrated thousands of Ecolab files and *then deleted those same files to deprive Ecolab access to them*." *Id.* ¶ 50.

- "It's my opinion that [Ridley] took those files *to use them to compete against his former employer*." Ex. 1 at 204:1-5.

- "[Ridley] took [the files] *to use while working at ChemTreat*." *Id.* at 207:11-16.

## LEGAL STANDARD

"The admissibility of expert witness testimony is governed by Rule 702 of the Federal Rules of Evidence." *Lawrence v. Raymond Corp.*, 501 F. App'x 515, 517 (6th Cir. 2012). Expert

testimony should be excluded unless "the witness is sufficiently qualified, the testimony is relevant, and the testimony is reliable." *Flex Homes, Inc. v. Ritz-Craft Corp*, 491 F. App'x 628, 638 (6th Cir. 2012). "The proponent of expert testimony must establish its admissibility by a preponderance of proof." *United States v. LeBlanc*, 45 F. App'x 393, 400 (6th Cir. 2002). The proponent must do so by demonstrating that the expert: (1) used "technical[] or other specialized knowledge [that] will help the trier of fact to understand the evidence"; (2) formed opinions "based on sufficient facts or data"; (3) formed opinions that are "the product of reliable principles and methods"; and (4) "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

When assessing methodology, courts consider whether the methods have been or can be tested, have been subject to peer review, have any known error rates, and have been generally accepted in the field. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). "Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* "[T]he '*ipse dixit* of the expert' is alone not sufficient to permit the admission of an opinion." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010).

"[A] judge assessing a proffer of expert . . . testimony under Rule 702 should also be mindful of other applicable rules" including Rule 403. *Brown v. City of Shelbyville*, 2020 WL 13173275, at *6 (E.D. Tenn. Sept. 17, 2020). "[A] court [can] exclude relevant evidence if its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury, among other things." *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012).

9

I.      **LIEB IS NEITHER QUALIFIED TO OFFER OPINIONS ABOUT THE DLP REPORT AND CROWDSTRIKE LOG NOR ARE HIS OPINIONS BASED ON A RELIABLE METHODOLOGY.**

      A.      **Lieb Is Not Qualified to Offer Opinions About the DLP Report and CrowdStrike Log.**

"[C]are must be taken to assure that a proffered witness truly qualifies as an expert" on the topics on which they opine. *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001); *accord Ask Chems., LP v. Comp. Packagers, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (An unqualified expert opinion "cloaks unexamined assumptions in the authority of expert analysis."). This is because a witness who "c[omes] before the jury cloaked with the mantle of an expert" provides "statements [that are] likely to carry special weight with the jury." *Jinro Am. Inc.*, 266 F.3d at 1004; *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 794328, at *9 (N.D. Cal. Feb. 24, 2014) ("Juries are likelier to credit experts, who are perceived to possess special relevant knowledge"); *Hillerich & Bradsby Co. v. Travelers Prop. Cas. Co.*, 2007 WL 403596, at *1 (W.D. Ky. Jan. 31, 2007) (expert's opinion carries with it "respectability" and "credibility");

In short, expert testimony "can be both powerful and quite misleading." *Daubert*, 509 U.S. at 595. To alleviate these risks, courts exercise their gatekeeping function to ensure experts do "not broadly testify about an area in which they possess[] no specialized knowledge." *Brown*, 2020 WL 13173275, at *7. In doing so, "courts consider whether the qualifications 'provide a foundation for a witness to answer a specific question,' as opposed to considering his or her qualifications in the abstract." *Id.* at *5; *see also Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020) ("When a[n] [expert's] opinion 'strays from' [his] 'professional experience,' the opinion is 'less reliable.'").

Lieb is not qualified to render opinions regarding the DLP Report, including its meaning and significance. His "credentials ***as set forth in the record*** do not qualify him to know any more

about" that report than a layperson, *Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir. 1994) (emphasis in original), and his forensic experience or expertise, whatever it may be, does not extend to expert review and interpretation of any and all electronically stored data. *Id.* ("A divorce lawyer is no more qualified to opine on patent law questions than anyone else, and it is a mistake for a trial judge to declare anyone to be generically an expert."). Lieb's testimony confirms that he lacks the experience or expertise (neither of which he sought to obtain in connection with his work here) that would qualify him to draw reliable conclusions from the DLP Report. *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 616 (S.D.N.Y. 2007) ("thin qualifications" are "relevant to the reliability inquiry").

Lieb's firm, Tyger Forensics, specializes in "forensic preservation and collection of electronic evidence, generation of forensic databases . . . , [and] forensic analysis of evidence." Ex. 1 at 16:20-17:2. Lieb explained that his "forensic review of electronic evidence" generally entails generating a timeline of events, generating a searchable database, developing and executing keyword searches, and tagging documents of interest. *Id.* at 27:15-28:14. Lieb had no personal experience with Digital Guardian before this case. He has never received training regarding Digital Guardian, and he has never run a Digital Guardian report. *Id.* at 45:8-46:23. His "understanding of the Digital Guardian data loss prevention tool is related to [his] research performed reading [Digital Guardian's] website and analyzing the report, itself."[2] *Id.* at 55:9-15. In fact, he first

_____

[2] In early 2022, Lieb spoke with Jennifer Semmler, the Ecolab employee who generated the DLP Report in this case. Ex. 1 at 69:7-14. Lieb did not cite, or mention in his report, his conversation with Semmler as a fact he considered when forming his opinions. Nor did Lieb recall much about the discussion at deposition. He vaguely recalled that Semmler confirmed the accuracy of "whatever the time period . . . we see" in the DLP Report, *id.* at 70:5-9, and told him Ecolab's DLP Reports cover 60 days of activity, *id.* at 70:5-9, 70:17-20. However, Semmler—the person who actually generated the DLP Report in this case—testified that she always generates them for 90 days (the maximum period) as a default, Ex. 4 at 41:8-24, 144:14-22, 173:25-175:4, and the DLP Report produced here covers 62 days, Ex. 8 at 37:8-38:9. Lieb did not investigate these

learned that Digital Guardian is a "data loss prevention tool" when he went to Digital Guardian's website in connection with this assignment. *Id.* at 50:15-23 (noting that this information was "right on the front page of their website").

Nor did Lieb's alleged forensic analysis of the DLP Report require any specialized skill or training. Although Lieb's forensic analysis was limited to sorting and filtering an Excel spreadsheet (*see* Ex. 1 at 162:18-163:4, 163:17-24, 171:19-177:15, 185:21-186:3), counsel nonetheless had to assist him in performing those same functions during the deposition. *Id.* at 270:24-271:17. Nothing about Lieb's methodology requires, or relies upon, specialized knowledge or training; as he admitted, his opinions were a matter of "just reading . . . what they're saying" (meaning the cells in the DLP Report spreadsheet). *Id.* at 181:8-10. Indeed, Lieb disavowed any knowledge about what the various cells in the DLP report meant. *See, e.g.*, Ex. 1 at 183:5-11 ("I don't know if that means that the action was blocked or that the alert was blocked . . . . I didn't ask anyone to expand on what that particular column means."). In fact, Lieb did not ask anyone to expand on what **any** of the terms in the DLP Report meant. *Id.* at 181:25-182:13. Rather, Lieb speculated about their meaning. But "the courtroom is not the place for scientific guesswork, even of the inspired sort." *Tamraz*, 620 F.3d at 671. The Court should therefore exclude Lieb's opinions related to, or derived from, the DLP Report. Lieb lacks any specialized knowledge or expertise to offer opinions about or interpret this document, such that his "forensic analysis" is of "equal parts extrapolation and speculation" and is therefore unreliable. *Williams v. Syphan*, 2023 WL 1305084, at *3 (6th Cir. Jan. 31, 2023).

Lieb similarly is not qualified to offer opinions regarding the CrowdStrike log. His

---

discrepancies, but reached his conclusions "[w]ithout questioning or verifying the data and without conducting any tests of his own." *Newell Rubbermaid*, 676 F.3d at 528.

opinions about the software, as he admitted, rested principally on a call with unnamed CrowdStrike employees and (unspecified) commentary on CrowdStrike's website. Ex. 1 at 346:15-348:5; *see also id.* 300:9-24. Consistent with his (at best) limited knowledge, several of Lieb's conclusions displayed his unfamiliarity with CrowdStrike logs. For example, Lieb testified that ChemTreat's "CrowdStrike report lists a Volume 5 and Volume 6 and it doesn't list the make, model and serial numbers of those external USB devices." *Id.* at 209:9-12, 301:16-302:5; *see also* Ex. 3 ¶ 43 ("Also omitted from Vaughn report [*sic*] is the makes, models and serial numbers of these two USB drives because the CrowdStrike omits this critical information!"). Lieb was apparently unaware (although it is easily ascertainable) that the CrowdStrike log does, in fact, list the make, model, and serial numbers of the USB devices, as an exhibit prepared by ***Plaintiffs' counsel themselves*** demonstrates, Ex. 17. This error underscores the unreliability of his opinions related to the CrowdStrike log. *See Vanderpool v. Edmonson*, 2005 WL 5164857, at *3, *5 (E.D. Tenn. Mar. 23, 2005) (excluding expert opinion as unreliable when "predicated on . . . incorrect and false premise[s]"). Likewise, Lieb erroneously states that the CrowdStrike log did not "record[] or capture[]" Ridley's interaction with a document he emailed from his personal email account to his ChemTreat email account. Ex. 3 ¶ 19. Either Lieb did not know that a simple search for that file name in the CrowdStrike log confirms that the log ***did*** record and capture that activity (which would underscore his lack of expertise) or he did not bother to perform that search (which would underscore his failure to apply any recognized methodology). Ex. 11. Either way, Lieb is not qualified to render opinion testimony regarding the CrowdStrike software in general or ChemTreat's CrowdStrike log in particular. Any such opinions that he offers are, therefore,

unreliable.[3] *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case.").

**B.     Lieb's Opinions About The DLP Report And CrowdStrike Log Are Not Based On a Reliable Methodology.**

Experts must "explain why or how [they] could reach the conclusion[s]" they reached. *Williams*, 2023 WL 1305084, at *2. "The '*ipse dixit* of the expert' alone is not sufficient to permit the admission of an opinion." *Tamraz*, 620 F.3d at 671.

Although Lieb provided a step-by-step summary of his analysis, as described above, his methods fall apart when subject to even the slightest scrutiny. At deposition, Lieb was unable to replicate his analysis. Lieb testified, without explanation, that he filtered the DLP Report based on Column ET, "Rule Violations," so that the DLP Report showed "just rule violations because in [his] opinion . . . that's all that's really relevant." Ex. 1 at 185:21-186:3. He further testified that the "rule violation" column is the only one that "show[s] any evidence . . . of exfiltration." *Id.* When he filtered the DLP Report to show only those entries reflecting "rule violations," however, the list shrank from the 94,489 entries he had asserted in his report to only 576 entries (some of which were duplicate file names). *Id.* at 186:4-11. Lieb agreed that this number accurately reflected every "rule violation" listed in the DLP Report. *Id.* Given that this number starkly contradicted the statement in his report that "Ridley exfiltrated thousands of Ecolab files," Ex. 2 ¶ 50, Lieb resorted to speculation.  He suggested that other possible filters and columns could or might show exfiltration, but in doing so put himself entirely at odds with his own, steadfast opinion that only "rule violations" were relevant. Ex. 1 at 185:21-187:18.

---

[3] Lieb also opines on the reliability of the CrowdStrike log in his rebuttal report. Ex. 3 ¶¶ 12, 14-17. For the same reasons discussed herein, the Court should preclude Lieb from offering any opinions that rely on his analysis of, or draw any conclusions about, the CrowdStrike log.

14

"[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact [is] whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. If Lieb cannot **replicate** his own analysis, there is no means for him (or anyone else) to test or validate it. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (upholding exclusion of expert who "failed timely to conduct replicable laboratory experiments" to justify or explain conclusions). If Lieb himself cannot explain or recreate his analysis of the DLP Report, it cannot withstand—or even undergo—review and potential replication by ChemTreat's expert or by anyone else. *See Newell Rubbermaid*, 676 F.3d at 527.

Lieb's opinions related to the CrowdStrike log fare no better. His forensic analysis of that document consisted of "first attempting to open the actual file itself" before running generic term searches for "Nalco, Ecolab, USB, USB drive, hotmail, Google, Gmail, Yahoo and serial numbers." Ex. 1 at 287:22-23, 288:10-14. But he cannot have applied his methodology reliably, because it led him to conclude—contrary to the undisputed content of the CrowdStrike log—that it "doesn't list the make, model and serial numbers of those external USB drives." *Id.* at 209:9-12; Ex. 11; *see also Vanderpool*, 2005 WL 5164857, at \*3 (excluding expert opinion as unreliable when "predicated on . . . incorrect and false premise[s]").

## II. LIEB'S ONEDRIVE DELETION OPINIONS ARE SPECULATIVE AND UNRELIABLE.

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Thomas v. Novartis Pharma. Corp.*, 443 F. App'x 58, 61 (6th Cir. 2011). Even a well-credentialed expert is "not permitted to speculate." *Tamraz*, 620 F.3d at 671. Proffered opinions "must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation." *Brown*, 2020 WL 13173275, at \*10. Courts should

15

not allow the jury to hear expert testimony that "reli[es] on anecdotal evidence [or] improper extrapolation" or that "fail[s] to consider other possible causes." *Newell Rubbermaid*, 676 F.3d at 527. Thus, while "trained experts commonly extrapolate from existing data," their opinions cannot be "connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Courts should heed "[r]ed flags" such as "anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid*, 676 F.3d at 527.[4] Lieb's OneDrive opinion—that "Ridley exfiltrated thousands of Ecolab files and then deleted those same files" from his Ecolab OneDrive folder—is full of such "[r]ed flags." Ex. 2 ¶ 50; *see also id.* ¶¶ 41, 43, 45.

*First*, Lieb's assertion that he collected a "complete forensic image of Mr. Ridley's OneDrive account" on January 25, 2022, is anecdotal and speculative. Ex. 1 at 113:24-114:1. Lieb did not attempt to create a forensic image from within OneDrive, where Ridley's electronic folder originally resided. He instead collected an image from the hard drive of a paralegal in Ecolab's in-house counsel's office. *Id.* at 21:17-18, 117:7-13. Lieb did not ask how the data came to reside on an Ecolab paralegal's hard drive seven months after Ridley resigned. *Id.* at 96:3-11, 115:10-16, 117:7-13. And Lieb admittedly did not know where the data came from, whether the data had to be restored, or whether others had access to the data before he retrieved it. *Id.* at 97:2-23, 102:15-105:9.

Courts routinely exclude opinions premised on similarly unsupported, and unsupportable, assumptions. *Synopsys, Inc. v. Risk Based Security, Inc.*, 2022 WL 3005990, at *7 (E.D. Va. July

---

[4] Instead of fulfilling his duty as an independent and impartial examiner, Lieb appears to have developed a personal interest in proving up Plaintiffs' unsupported and speculative theories under an aura of expert credibility, even seeking—in his own words—"vindicat[ion]" for his opinions. Ex. 1 at 207:6.

16

28, 2022). In *Synopsys*, the court excluded a plaintiff's trade secret expert who "was provided no other context, but assumed" that a spreadsheet belonged to the defendant because the defendant produced it. *Id.* The expert's assumptions rendered his opinion "laden with speculation and lacking explanation of a reliable methodology." *Id.* Lieb's opinions are just as flawed. Lieb relied on counsel's non-evidentiary representations that the data he collected was, in fact, a copy of Ridley's OneDrive folder—he did not take any steps, or seek any documentation, to independently verify this assumption. Ex. 1 at 93:23-94:2, 115:14-16. "When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded." *Ask Chems.*, 593 F. App'x at 511. Indeed, courts must exclude an expert's testimony that "willingly draws . . . conclusions despite admitting that he lacks information about the material he purports to evaluate." *Synopsys*, 2022 WL 3005990, at *6. There is no foundation for Lieb's threshold assertion (which is indispensable to his ultimate opinion) that he imaged a complete and accurate copy of Ridley's OneDrive as it existed on July 1, 2021. Lieb accordingly is unable to offer an opinion based on "a line of reasoning arising from a logical foundation," as required for his opinion to be admissible. *Brown*, 2020 WL 13173275, at *10; *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 120 (3d Cir. 2004) (When an expert's conclusions are based on unreliable evidence, "the universe is skewed," and "the conclusion will similarly be skewed," and the "jury is likely to give special weight to the skewed conclusion.").

Nor does Lieb's underlying assumption itself rest on a sound forensic methodology. The forensic experts in this case agree that "best practices" require forensic examiners to utilize "chain of custody forensic software that will preserve and maintain which specific person has sole control over a specific single source of electronic evidence up to" the time and date of forensic collection. Ex. 2 ¶ 11; Ex. 10 at 18. Only with this information in hand can a forensic examiner reliably

17

conduct a forensic analysis of the collected data. Yet Lieb did not use such software when he collected the folder he claims is a copy of Ridley's Ecolab OneDrive. Ex. 1 at 157:14-18. Lieb also testified that his standard practice is "to generate a paper chain of custody document" when creating a forensic image. *Id.* at 18:20-24. Again, Lieb did not adhere to this standard practice when forensically imaging a folder stored on an Ecolab paralegal's hard drive. *Id.* at 21:13-16. His conclusion that he collected "a copy of Mr. Ridley's complete OneDrive account," *id.* at 96:3-5, is not supported by any record evidence (in fact is contradicted by record evidence) nor is it the product of what Lieb himself has characterized as forensic best practices. *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 978 (M.D. Tenn. 2002) ("An expert must not compromise his or her own professional standards when acting as an 'expert' in a court of law."); *see also Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 932 (6th Cir. 2003) (upholding exclusion expert because opinions "were based on data which may not reflect conditions in the real world").

*Second*, Lieb's deletion opinion relies on improper extrapolation. He concludes that "[t]his now deleted 'ridley's nalco folder' folder ***would have existed***" at the time Lieb forensically imaged Ridley's alleged OneDrive folder on January 25, 2022, "but for the fact that Ridley deleted [that] folder from his Ecolab OneDrive after downloading [that] folder and [its] contents to the LaCie drive" between May 22 and July 1, 2021. Ex. 2 ¶¶ 13, 45. The underlying assumption is that the image Lieb obtained from the paralegal's hard drive on January 25, 2022, is in fact an image of Ridley's OneDrive folder, and that the contents of the folder remained intact and unchanged between the time of Ridley's departure from Ecolab on July 1, 2021, and January 25, 2022. Ex. 1 at 94:9-96:11, 97:2-23. As Lieb admitted, he has no basis for this assumption. *Id.* at 97:2-23. Accordingly, his opinions lack a "logical foundation" "based on what is known." *Brown*, 2020 WL 13173275, at *10.

*Third*, Lieb fails to "consider other possible causes" of the file discrepancies that led him to conclude that Ridley deleted Ecolab files before he resigned—yet another "[r]ed flag" that weighs against admissibility. *Newell Rubbermaid*, 676 F.3d at 528. The evidentiary record reflects that at least three other Ecolab employees had access to Ridley's OneDrive files before his departure on July 1, 2021, that others gained access after his departure, and that a document preservation notice for Ridley's data was not issued until many months later, in January 2022— the same month Lieb collected from an Ecolab paralegal's computer the folder on which he bases his opinions. Ex. 13; Ex. 1 at 148:13-149:9; Ex. 14 at 222:17-24; Ex. 8 at 102:8-11, 136:13-21. Given the seven-month gap between Ridley's resignation and Lieb's creation of a forensic image of the folder on the paralegal's hard drive, the number of people with access to Ridley's OneDrive files, and the absence of any instruction to Ecolab's employees to preserve the data, there are a number of "other possible causes," *Newell Rubbermaid*, 676 F.3d at 528, for the discrepancies between the files seen in the folder, and the files listed on the DLP Report between May 22 and July 1, 2021. Yet Lieb did not consider any alternative explanations for the "missing" files before concluding Ridley deleted them. Ex. 2 at 10.

The Court should exclude Lieb's OneDrive deletion opinions because they amount to mere "subjective belief and unsupported speculation." *Brown*, 2020 WL 13173275, at *10.

## III.  LIEB CANNOT OFFER OPINIONS REGARDING STATE OF MIND OR INTENT.

A defendant's "state of mind . . . is subjective and not based upon facts or data," such that "any [expert] opinion as to [the defendant's] subjective knowledge or state of mind is speculative and must be excluded." *Little v. City of Morristown*, 2023 WL 2769446, at *3 (E.D. Tenn. Mar. 31, 2023); *see also*, *e.g.*, *Yancey v. Carson*, 2007 WL 3088232, at *6 (E.D. Tenn. Oct. 19, 2007) (holding that experts "shall not be allowed to testify as to . . . [a defendant's] subjective intent, his

state of mind, or what motivated his action or inaction").[5] There is no dispute that Lieb offers state of mind opinions. Ex. 1 at 243:1-7 ("I use the word 'intent' there and that is . . . my opinion as to why he stole those files."). Courts routinely exclude this type of testimony where there is "no reason to believe that [the witness's] expertise affords him the ability to read minds." *Hershey v. Pacific Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949 (N.D. Ill. 2010) (expert's testimony regarding "inten[t] to manipulate" prices and the reasons for "institut[ing] position limits" inadmissible); *Little*, 2023 WL 2769446, at *3 (holding expert's testimony regarding officers' intent was inadmissible because "intent is subjective"). "[N]othing currently before the Court" demonstrates that Lieb has the training, experience, qualifications, or "compete[nce] to opine on the mental states of others." *Hershey*, 697 F. Supp. 2d at 949.

Lieb opines on Ridley's state of mind no less than eight times. *See supra* at 8; *e.g.*, Ex. 2 ¶ 24 ("It is my opinion that Ridley exfiltrated the many Ecolab files documented in this report *specifically to utilize them while employed at ChemTreat*."). The Court should preclude Lieb from offering these state of mind opinions. *See Yancey*, 2007 WL 3088232, at *6.

Moreover, by concluding that Ridley "exfiltrated" Ecolab documents, which Lieb equates with "theft," the majority of Lieb's opinions incorporate a state of mind determination and opinion. Lieb renders a "strongly held opinion that Ridley *exfiltrated* thousands of Ecolab files." Ex. 2 ¶¶ 12, 41, 56. Lieb did not define "exfiltrate" in his report, but testified that:

> It's a – a forensic term meaning taken up – copied to an external USB drive that a former employee will take with them *to use in their own company that they establish, or a competitor*, sent to – any document activity copying, moving to – from a company-owned device or account *for purposes of being used for themselves or another company*.

---

[5] The Sixth Circuit has also excluded expert opinion about the defendant's intent on the basis of relevance, explaining that "no expert testimony is truly needed on the question of intent." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 324 (6th Cir. 2015).

Ex. 1 at 198:19-199:2. By this definition, Lieb's use of the term "exfiltrate" is, itself, an improper opinion about Ridley's state of mind. Each time Lieb opines that Ridley "exfiltrated" various files, he is saying that Ridley took those files "for purposes of" using them to gain a competitive advantage for himself or for ChemTreat. *Id.* Lieb has no basis to opine on ***why*** Ridley allegedly downloaded various files. An actual "forensic analysis," like Lieb's purported analysis, is limited to ***what*** happened. Lieb's use of "exfiltrate" to reflect intent and motive does not fall within the purview of a proper forensic analysis. *See Little*, 2023 WL 2769446, at *3.

Each of Lieb's opinions regarding Ridley's alleged "exfiltration" should be excluded. *See* Ex. 2 ¶¶ 12, 14, 24, 39, 41, 49, 50, 56, 59, 60.

## IV.    LIEB CANNOT OFFER LEGAL OPINIONS.

An expert's legal opinions fail Rule 702's most basic test: They are "not relevant . . . in the sense that [they] will not assist the jury," *Brown*, 2020 WL 1313275, at *9, either "in understanding the evidence or in determining a factual issue." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998). "Although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, . . . the issue embraced must be a ***factual*** one." *Berry*, 25 F.3d at 1353. "Opinions are inadmissible as legal conclusions when they weigh the evidence, find the facts, apply the law as the expert sees it, and resolve the case. These opinions do not assist the jury; rather, they supplant the jury." *Brown*, 2020 WL 13173275, at *9. "[P]articularly suspect" are "carefully couched" opinions that "merely [tell] the jury what result to reach." *Berry*, 25 F.3d at 1353–54.

Lieb concludes "that Ridley ***misappropriated*** thousands of Ecolab files." Ex. 2 ¶ 14. Misappropriation is a term of art defined by the DTSA and TUTSA. 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2). "It is the responsibility of the court, not testifying witnesses, to define legal terms" such as misappropriation. *Berry*, 25 F.3d at 1353; *see also Caudill Seed & Warehouse*

21

*Co., Inc. v. Jarrow Formulas, Inc.*, 2019 WL 1435934, at *3–*4 (W.D. Ky. Mar. 29, 2019) (precluding expert testimony on ultimate issue of whether alleged trade secrets were generally known or readily ascertainable); *Proofpoint, Inc. v. Vade Secure, Inc.*, 2021 WL 2383574, at *1– *2 (N.D. Cal. June 10, 2021) (precluding expert testimony on ultimate issue of misappropriation). The Court should therefore preclude Lieb from opining on whether Ridley and ChemTreat engaged in misappropriation.

Lieb also cannot do indirectly that which he cannot do directly. Even where Lieb omits the term "misappropriate," his opinions are a thinly veiled attempt to suggest an answer on this ultimate issue by swapping out the word "misappropriated" with "exfiltrated." During his deposition, Lieb equated "misappropriation" with "theft," after earlier defining "exfiltration" as "theft." Ex. 1 at 203:15-16, 204:20-23. Lieb cannot mask his legal conclusions by using a synonym for misappropriation—exfiltration—and claiming this synonym as "[his] word." *Id.* at 56:11-14 ("exfiltration, that's ***my word***, exfiltration"); 163:22 (same); 201:5 (same); 356:13 (same).

Lieb's ultimate opinions that Ridley "exfiltrated" Ecolab's information would mislead the jury "into adopting outright a legal conclusion proffered by an expert witness." *Berry*, 25 F.3d at 1354. The Court should preclude Lieb from opining on whether Ridley "exfiltrated" Ecolab's documents.[6] *See Summerland v. Cnty. of Livingston*, 240 F. App'x 70, 81 (6th Cir. 2007) (striking expert report "riddled with legal conclusions").

## V. LIEB'S REBUTTAL OPINIONS ARE MISLEADING AND UNFAIRLY PREJUDICIAL.

In his rebuttal report, Lieb claims three sources of information are "conspicuously absent"

---

[6] Even if a legal conclusion could, in theory, assist the jury in reaching its factual findings, it is undisputed that Lieb—who is not a lawyer and has no legal training, expertise, or experience of any kind—is not qualified to render such opinions.

from Vaughn's Report: (1) "the forensic imaging and analysis of Ridley's colleagues' ChemTreat workstations"; (2) "ChemTreat network stored backups of Ridley's wiped ChemTreat workstation"; and (3) "the forensic imaging and analysis of Ridley's personally owned devices and accounts." Ex. 3 ¶¶ 31-37.

Lieb does not explain what basis he has to believe these repositories even exist—an obviously fatal flaw in the foundation of his opinion that they should have been searched, as Lieb's criticisms, whatever they are, must be fairly grounded in the evidence. To the extent Lieb intends to opine that Vaughn should have analyzed these supposed sources based on Lieb's speculation about their existence or contents, the Court should exclude his opinion under Federal Rule of Evidence 403. It is likely to mislead the jury and its admission would unfairly prejudice ChemTreat. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. The Court may exclude expert testimony under Rule 403 when the opinions relied on or pointed to facts "that d[id] not appear to be in evidence." *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 2022 WL 3337792, at *1–*2 (E.D. Va. July 8, 2022).

Notably, ChemTreat detailed the repositories and custodians it searched in discovery in its ESI Report, Doc. 143, and Plaintiffs did not challenge the scope of ChemTreat's search. *See generally* Fed. R. Civ. P. 26(b). Any testimony Lieb could offer about what information would be available had Plaintiffs sought additional evidence in discovery necessarily would be pure conjecture. Allowing an expert to speculate about what other evidence may or may not exist, and in particular what it may or may not show, would impermissibly "create[] an 'aura of reliability' tending to mislead the jury." *Moisenko v. Volkswagenwerk Aktiengesellschaft*, 198 F.3d 246 (6th

Cir. 1999) (table).[7] The Court should exclude Lieb's rebuttal opinions to the extent he suggests that additional data repositories exist or opines as to the possible contents of such repositories.

## CONCLUSION

ChemTreat requests that the Court exclude Lieb's opinions related to: (1) the DLP Report and CrowdStrike log; (2) Ridley's alleged deletion activity within his Ecolab OneDrive folder; (3) Ridley or ChemTreat's intent or state of mind; (4) the use of terminology suggesting a legal conclusion, such as "misappropriation" or "exfiltration"; and (5) speculation regarding the existence or content of any data repositories not produced in discovery.


DATED: May 25, 2023                  Respectfully submitted,

*/s/ Troy C. Homesley*
Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: vmirmira@wc.com
E-mail: wburke@wc.com
E-mail: jlund@wc.com
E-mail: thomesley@wc.com

W. Scott Sims
Michael R. O'Neill
SIMS FUNK PLC
3322 West End Ave. #200
Nashville, TN 37203

[7] Although the Court previously indicated that Plaintiffs could cross-examine Vaughn "regarding why, for example, he did not search any standalone devices other than those belonging to Ridley," Doc. 223 at 12, it left open the question now before it: Whether Lieb may offer expert opinions on the existence and content of repositories Plaintiffs chose not to seek in discovery, *id.* at 15.

Telephone: (615) 425-7432
Facsimile: (615) 649-8565
E-mail: ssims@simfunk.com
E-mail: moneill@simsfunk.com

*Attorneys for Defendant ChemTreat, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served via the Court's

CM/ECF system on May 25, 2023, upon the following:

J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

*Attorneys for Plaintiffs*

/s/ *Troy C. Homesley*
Troy C. Homesley

26