United States District Court
Eastern District of Tennessee
At Chattanooga

| | |
|---|---|
| Ecolab, Inc. and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water<br><br>    Plaintiffs<br><br>            v.<br><br>Anthony Ridley and ChemTreat<br><br>    Defendants | No. 1:22-CV-00050<br><br>TRM-SKL |

### Anthony Ridley's Brief in Support of his Motion for Spoliation Sanctions

### I. Issue

To adjudicate Anthony Ridley's motion, the Court must consider only a single, straightforward legal issue:

> **Failure to preserve documents –** Parties who have a duty to preserve relevant data in anticipation of litigation and fail to do so may be sanctioned to the extent necessary to cure the prejudice caused by their conduct. Here, though Ecolab and Nalco's trade-secrets claim is largely premised upon the contents of a company-issued hard drive that Ridley returned to them soon after he left their employment, they allowed that drive to be discarded after they had knowledge of Ridley's alleged misconduct. Should the Court sanction Ecolab and Nalco for their conduct?

### II. Background

**A.     After terminating Ridley's employment upon learning of his intent to resign, the Plaintiffs asked him to return his company-issued devices to the Plaintiffs' I.T. vendor.**

In June 2021, Ridley ended his 22-year career with the Plaintiffs and accepted a position with ChemTreat.[1] Soon after accepting the job, Ridley informed Ecolab that he intended to resign

---

[1] Herrera Dep. at 38:4–42:4, 60:17-21. Excerpts of Jaqueline Herrera's deposition transcript are

effective July 14, 2021.² Ecolab did not accept that and instead terminated Ridley's employment effective July 1, 2021.³

In the days following his termination, Ridley communicated with Ecolab about how he should return his company assets, such as his computer and a LaCie brand external hard drive. Ecolab emailed him a FedEx shipping label for everything, and Ridley used the label to send his Ecolab laptop, the LaCie drive, and other equipment to Ecolab's I.T. vendor, Insight.⁴ Only days later, on July 12, 2021, Insight confirmed that it had received what Ridley had sent:



⁵

**B.  Though the Plaintiffs' I.T. vendor received Ridley's returned laptop and company-issued hard drive, and though the Plaintiffs had a report demonstrating that Ridley recently transferred many files to that hard drive, the Plaintiffs did not preserve them.**

Soon after Insight received Ridley's computer and the LaCie drive, Ecolab analyzed Ridley's data transfer activity during his last two months of work and created a Digital Guardian Data Loss Prevention ("DLP") Report. The DLP report—which is dated July 23, 2021—indicated that Ridley had recently transferred many computer files from his company-issued computer to his company-

---

Exhibit 1 to this document.

² *Id.* at 38:4–42:4.

³ *Id.*

⁴ Ridley Dep. at 171:22–172:10, 446:5–10. Excerpts of Anthony Ridley's deposition transcript are Exhibit 2 to this document.

⁵ Doc. 242-4 at Page ID # 4838.

issued LaCie drive.[6]

Ecolab did not, however, contact Insight regarding the equipment that Ridley had returned or otherwise seek to preserve it.[7] So weeks later, in August 2021, Insight moved Ridley's old laptop and LaCie drive "to inventory."[8]

In January 2022, Ecolab's legal team began reaching out to Insight regarding Ridley's old devices. But it was too late—Insight could not locate the LaCie drive that Ridley returned the previous July.[9] And the laptop had already been reassigned to another person.[10]

C. **The Plaintiffs accused Ridley of using the company-issued hard drive to steal massive amounts of their trade secrets, and they calculated their damages based upon the value that their expert assigned to the information Ridley saved on the hard drive.**

On February 9, 2022, armed with the knowledge that they had not preserved Ridley's returned equipment, Ecolab and Nalco contacted Ridley for the first time since his resignation.[11] In their letter, they accused Ridley of misappropriating or otherwise taking a "massive amount" of their "proprietary, confidential, and trade secret information" by "downloading" or "copying" it before he left their employment.[12]

Since Ridley was employed with ChemTreat, ChemTreat responded to Ecolab's letter and advised that Ridley returned his Ecolab laptop and the LaCie drive in July 2021.[13] ChemTreat also

---

[6] Garza Dep. at 89:11–90:20. Excerpts from David Garza's deposition transcript are Exhibit 3 to this document.

[7] *Id.* at 108:1–19, 109:24–110:16, 125:6–134:18.

[8] *Id.* at 175:3–19.

[9] *Id.* at 119:2–124:1.

[10] *Id.* at 145:17–146:12.

[11] Doc. 225-13.

[12] *Id.*

[13] Doc. 242-7.

informed Ecolab that Ridley had located two thumb drives with Nalco logos and offered to have Ridley return them to Ecolab, and it noted that Ridley had located an old personal hard drive that once contained some Nalco information but that Ridley had deleted that data from it and continued using it for personal documents.[14]

Unsatisfied with that explanation, Ecolab and Nalco sued Ridley and ChemTreat in March 2022 for a host of things, including misappropriation of confidential information and trade secrets. Over the course of three amended pleadings, the Plaintiffs eventually asserted that Ridley and ChemTreat had violated state and federal trade-secrets laws.

At the center of the Defendants' alleged misconduct was Ridley's "downloading" and "copying" "voluminous amounts of information" from the Plaintiffs' computer system to the LaCie drive over the course of several days in 2021.[15] It was "highly likely," the Plaintiffs continued, that Ridley "copied the files from the LaCie Drive to other sources . . . before 'returning' the LaCie drive (if he actually returned it)" and then "took" those files to ChemTreat.[16] And if he did return the drive as he claimed, they alleged that he did so only "to hide his misconduct."[17]

The LaCie drive's significance to the Plaintiffs' case continued into discovery. Their claim for damages under state and federal trade-secrets statutes is based entirely upon an expert's report that contains an estimated "value" of the data that Ridley transferred to the LaCie drive as the measure of damages.[18]

---

[14] *Id.*

[15] Doc. 229 at Page ID # 4494–4503.

[16] *Id.* at 4516–17, 4526.

[17] *Id.* at 4517–18.

[18] Joint Appx. to Motions for Summ. J. at Joint Ex. 302.

### III. Discussion

Courts in the Sixth Circuit have traditionally been empowered to sanction litigants for the destruction of evidence when three factors exist. First, the litigant must have "had an obligation to preserve the evidence" when "it was destroyed."[19] Second, the litigant must have destroyed the evidence with a "culpable state of mind," which means that they acted either "knowingly, even if without intent to breach a duty to preserve it, or negligently."[20] And third, the destroyed evidence must have been "'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."[21]

When the evidence at issue is electronically stored information, however, the standard is somewhat different. Rule 37(e) dictates that the loss or destruction of ESI by a litigant who "failed to take reasonable steps to preserve it" and who cannot "restore" or "replace" the evidence "through additional discovery" is sanctionable even without a showing of intent or negligence.[22] So long as a litigant's spoliation prejudiced an opposing party, then a court should issue a sanction that is proportional to the degree of prejudice.[23]

A burden to show prejudice under Rule 37(e) is not heavy and in fact it does not always even fall upon the party moving for sanctions.[24] The chief task of a court in considering the prejudicial

---

[19] *Christian v. Auto-Owners Ins. Co.*, No. 2:13-CV-339, 2016 U.S. Dist. LEXIS 53405, at *12–13 (E.D. Tenn. Apr. 21, 2016).

[20] *In re McCarty*, 644 F. App'x 372, 378 (6th Cir. 2016).

[21] *Yoe v. Crescent Sock Co.*, No. 1:15-cv-3-SKL, 2017 U.S. Dist. LEXIS 187900, at *34–35 (E.D. Tenn. Nov. 14, 2017).

[22] *DriveTime Car Sales Co., LLC v. Pettigrew*, No. 2:17-cv-371, 2019 U.S. Dist. LEXIS 66339, at *9 (S.D. Ohio Apr. 18, 2019) (noting that the traditional three-prong "standard's 'culpable state of mind' [factor] no longer applies to less severe sanctions under Rule 37(e)(1)"); Fed. R. Civ. P. 37(e)(1).

[23] Fed. R. Civ. P.l 37(e)(1).

[24] *Id.* (2015 adv. cmt. note) (providing that Rule 37(e) "does not place a burden of proving or

effect of spoliated evidence is therefore to determine whether and to what extent "the loss of ESI could negatively impact a party's ability to make its case . . . ."[25] In the words of one court, "[t]o show prejudice resulting from the spoliation, a party must only come forward with plausible, concrete *suggestions* as to what [the destroyed] evidence *might have been*.'"[26]

Here, the evidence of the Plaintiffs' spoliation is clear. First, the Plaintiffs were obligated to preserve the devices that Ridley returned because they "should have known that the evidence may be relevant to future litigation."[27] When Ridley returned the devices to Insight as the Plaintiffs requested in mid-July 2021, the Plaintiffs knew that he was going to work for one of their competitors. Then, less than two weeks later, on July 23, 2021—and well before Insight moved the devices to its "inventory"—the Plaintiffs obtained the DLP report, which showed that Ridley transferred thousands of old Nalco files to a company-issued Lacie drive from his company-issued laptop.

So, no later July 23, 2021, the Plaintiffs should have known that the devices they asked him to return to Insight may have been relevant to future litigation.

Second, the Plaintiffs did not take reasonable steps to preserve the data on the devices that Ridley returned. Upon receiving the DLP report on July 23, 2021, the Plaintiffs did nothing to preserve the devices implicated by the report. They did nothing in July, nothing in August, nothing in September, October, November, or December.[28] It was not until January 2022 that the Plaintiffs

---

disproving prejudice on one party or the other" and noting that "placing the burden of proving prejudice on the party that did not lose the information may be unfair" in some cases).

[25] *Yoe*, 2017 U.S. Dist. LEXIS 187900 at *28.

[26] *Id.* at *28–29 (emphasis in original) (quoting *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. CV 15-2121 (BJM), 2017 U.S. Dist. LEXIS 46772, 2017 WL 1155743, at *1-2 (D.P.R. Mar. 27, 2017)).

[27] *Yoe*, 2017 U.S. Dist. LEXIS 187900 at *23.

[28] Garza Dep. at 108:1–19, 109:24–110:16, 125:6–134:18 (confirming that the Plaintiffs did not place any "legal hold" on any data or device Ridley returned to Insight, that the Plaintiffs did not

6

Case 1:22-cv-00050-TRM-SKL   Document 263   Filed 05/25/23   Page 6 of 10   PageID #: 6588

contacted Insight to see what they "might be able to find out" about the hard drive that Ridley returned the previous July.[29] But by that time, the hard drive had either been "wiped and redeployed" or "put into the bin for destruction" and the laptop had been "redeployed to other users."[30] And even then, the Plaintiffs still made no effort to recall Ridley's "redeployed" devices since their return in July.[31]

Third, the lost proof cannot be "restored" or "replaced" with additional discovery. The Plaintiffs have confirmed that Ridley's returned devices had been either "wiped and redeployed," "disposed of," or destroyed.[32] But "even if there were a marginal chance that the information could be recovered, reopening discovery at this late stage of the litigation would be inequitable" to Ridley and therefore would not save the Plaintiffs from spoliation sanctions.[33]

Fourth and finally, Ridley was severely prejudiced by the Plaintiffs' spoliation. The Plaintiffs allege that after Ridley transferred the 16,000+ Nalco files to his company-issued LaCie drive, he transferred those files to "other sources," deprived the Plaintiffs of their "primary copies" of those files by "deleting" them from the Plaintiffs' computer system, and then took them to ChemTreat.[34] Ridley denied and continues to deny those allegations. But the only evidence that would

---

contact ChemTreat or Ridley to discuss the devices, and that the Plaintiffs took "no steps to try to recover" the devices).

[29] *Id.* at 119:2–124:1.

[30] *Id.* at 108:1–12, 146:6–12.

[31] *Id.* at 107:19–22, 146:6–12.

[32] *Id.* at 107:19–22, 108:1–12, 121:6–122:1.

[33] *Adamczyk v. Sch. Dist. of the City of Hamtramck Pub. Sch.*, No. 2:20-cv-12450, 2023 U.S. Dist. LEXIS 57295, at *39 (E.D. Mich. Mar. 31, 2023) (finding that the "additional discovery" spoliation factor was "satisfied" in part because of the procedural posture of the case).

[34] Doc. 229 at Page ID # 4494, 4516–18,

definitively prove or disprove either party's position—the scope of Ridley's activity with the drive, the content of the files on the drive, his return of the alleged "primary copies" of the Plaintiffs' files, etc.—was "wiped and redeployed," lost, discarded, or destroyed after Ridley returned it per the Plaintiffs' instructions. So instead of having the benefit of that evidence, Ridley must now proceed solely upon the basis of his testimony about what he did with the hard drive and secondary evidence that he never used ChemTreat's computers to access it.

Since Ridley's position has been "adversely affected" by the loss of evidence that "could have been probative" to his defense,[35] the Court should therefore issue curative sanctions proportional to the prejudice that Ridley has suffered. Though the "range" of sanctions that the Court may issue "is quite broad" and a matter of discretion, the official comments to Rule 37 note that "serious measures" may be "necessary to cure prejudice."[36] The examples of potential sanctions provided in the rule are duly broad: "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument . . . ."[37]

Given the severity of the prejudice Ridley faces because of the Plaintiffs' failure to preserve the LaCie drive, Ridley proposes the following curative measures under Rule 37(e)(1):

(1) The Court should bar the Plaintiffs from contesting the fact that Ridley returned the LaCie drive per the Plaintiffs' instructions and that their I.T. vendor received it on July

---

[35] *Yoe*, 2017 U.S. Dist. LEXIS 187900 at *31–34 (premising a finding of prejudice upon the fact that finds "the data at issue in this case would, and certainly could, be relevant to a claim or to a defense").

[36] Fed. R. Civ. P. 37(e), 2015 adv. cmt. note.

[37] *Id.*

12, 2021;

(2) The Court should bar the Plaintiffs from arguing that Ridley transferred any of the 16,000+ files identified on the DLP report from the LaCie drive to any other device; and

(3) The Court should bar the Plaintiffs from arguing that Ridley deleted or otherwise removed any of the 16,000+ files identified on the DLP report on their system given that, upon his termination, Ridley returned the LaCie drive containing those files per the Plaintiffs' instructions.

## IV. Conclusion

The complexion of this litigation would have been entirely different had the Plaintiffs preserved the devices that they asked Ridley to return. The transfer of files to the LaCie drive is the single act that spurred the Plaintiffs to start this litigation. If the Plaintiffs would have preserved the drive, what Ridley did or did not do with the files on that drive would not be up for debate. The LaCie drive would have shown exactly what occurred before he sent the drive back to the Plaintiffs, and the parties would have immediately known in 2021 what they still cannot agree on two years later.

While the Court cannot undo the protracted, expensive litigation that has occurred following the Plaintiffs' evidentiary failure, it can take whatever measures it deems necessary to cure the harm that the Plaintiffs' failure has engendered. The Court should therefore grant Ridley's motion and sanction the Plaintiffs accordingly.

Respectfully Submitted:

**Patrick, Beard, Schulman & Jacoway, P.C.**

By: /s/ Lance W. Pope
    Lance W. Pope, BPR No. 025054
    Jeremy M. Cothern, BPR No. 027116
    537 Market Street, Suite 300
    Chattanooga, TN 37402
    (423) 756-7117 – phone
    (423) 267-5032 – fax
    lpope@pbsjlaw.com
    jcothern@pbsjlaw.com

### Certificate of Service

I certify that on May 25, 2023, this document has been served upon all the parties via the Court's ECF system.

By: /s/ Lance W. Pope