UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>　　　　Defendants. | Case No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

**CHEMTREAT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SANCTIONS FOR PLAINTIFFS' SPOLIATION**

## TABLE OF CONTENTS

FACTS ............................................................................................................................................2

ARGUMENT ..................................................................................................................................4

I. PLAINTIFFS' ADMITTED SPOLIATION OF RIDLEY'S PHYSICAL
DEVICES ENTITLES CHEMTREAT TO SANCTIONS. ...................................................5

    A. Plaintiffs' Admitted Conduct as to the Destruction of Ridley's Devices
Satisfies the Test for Spoliation Sanctions. ................................................................5

    B. Fairness Dictates that ChemTreat Is Entitled to Sanctions that Prevent
Plaintiffs from Benefitting from Their Spoliation of the Physical Devices.............8

II. PLAINTIFFS' ADMITTED SPOLIATION OF RIDLEY'S ESI ENTITLES
CHEMTREAT TO RULE 37(E)(1) SANCTIONS. ..............................................................9

    A. Plaintiffs' Admitted Conduct as to the Destruction of the ESI on Ridley's
Devices Satisfies the Test for Rule 37(e)(1) Sanctions. ............................................9

    B. ChemTreat Is Entitled to Sanctions that Prevent Plaintiffs from Benefitting
from Their Spoliation of the ESI on Ridley's Devices. ..........................................12

        1. Whether documents produced by Plaintiffs are the same document
as the document allegedly misappropriated by Ridley ..............................13

        2. Whether Ridley deleted the allegedly misappropriated documents ...........14

        3. Whether any Microsoft-affiliated website Ridley visited was
associated with a personal or a corporate account .....................................14

        4. Whether the LaCie drive was connected to any device other than
an Ecolab-issued laptop ..............................................................................15

CONCLUSION.............................................................................................................................15

Plaintiffs claim that, shortly before Ridley resigned to work for ChemTreat, he used his Ecolab-issued laptops to copy more than 16,000 of Plaintiffs' alleged trade secrets to his Ecolab-issued mobile drive (a LaCie drive), then deleted those documents so that only he and ChemTreat—not Plaintiffs—would be able to use that information. Ridley, by contrast, has testified under oath that he separated his old Nalco files (relevant only to a job he had left months earlier) from his then-current Ecolab files (relevant to his position at the time), copying the Nalco files on his Ecolab-issued laptop onto his Ecolab-issued mobile drive, both of which he returned to Plaintiffs' vendor Insight after his departure.

Which of these two narratives is true could be easily divined from the electronic devices at the heart of this dispute: the two Ecolab-issued laptops and one mobile drive that Plaintiffs admit Ridley returned to them—except that Plaintiffs, despite anticipating litigation from the day that Ridley told them he was (in Plaintiffs' words) "going to the competition," did not preserve those devices or the centrally relevant ESI they contained. Instead, Plaintiffs (including their Deputy General Counsel, who was involved from the day Ridley notified Plaintiffs of his resignation) knowingly allowed this key evidence to be lost, waited months until it was no longer recoverable, and only then notified ChemTreat and Ridley of their allegations regarding the documents and devices that Plaintiffs had ensured were no longer available to refute their claims.

Whether Plaintiffs destroyed the evidence at the heart of their claims with the intent to deprive ChemTreat and Ridley of that evidence is a disputed question that may need to be resolved by the jury should this case proceed to trial. But whether Plaintiffs' admitted destruction of that key evidence has prejudiced ChemTreat is indisputable: It has. To cure that prejudice, the Court should preclude Plaintiffs from offering argument or evidence as to the issues on which ChemTreat cannot fully defend itself due to Plaintiffs' undisputed destruction of the evidence.

1

# FACTS

Ridley worked at Nalco for more than two decades. Ex. 1. In October 2020, he moved from his final role there, as a district manager, to a position at Ecolab, as a corporate account manager. Ex. 2 at 434:4-6. Although Nalco is a division of Ecolab, the two companies provide different services, and Ridley's role at Ecolab involved different responsibilities than his previous role at Nalco. Ex. 2 at 166:21-167:15.

In May and June of 2021, Ridley began transferring his old Nalco files from the hard drive of his laptop onto the LaCie drive, a process that he worked on intermittently over the course of several weeks, "drag[ging] and drop[ping]" batches of old documents as he had time. Ex. 2 at 163:9-22. In June 2021, Ridley's laptop began malfunctioning, with the fan rattling so loudly it could be heard on conference calls. Ex. 2 at 277:9-278:1. Insight, Plaintiffs' third-party vendor for electronic devices, sent Ridley a replacement laptop, after which he returned his malfunctioning laptop to Insight for repair. Ex. 3 at 3-4. Insight received the malfunctioning laptop on June 16, 2021. Ex. 4, at 4.

On July 1, 2021, Ridley notified his supervisor, Jacqueline Herrera, that he had accepted a position with ChemTreat and his last day at Ecolab would be July 14, 2021. Ex. 1. Within minutes, Herrera reached out to Plaintiffs' human resources department, reporting that Ridley was "going to the competition" and asking how to immediately "shutdown the information to him." Ex. 1. That same day, Kristin Mahre, a Human Resources Manager, began discussing "strategy" regarding Ridley's resignation with Theresa Corona, Plaintiffs' Deputy General Counsel. Ex. 5 at 1. Plaintiffs admit those discussions were undertaken in anticipation of litigation. Ex. 5 at 1. Unlike other situations where "the employee went to a competitor" (Ex. 6), however, Plaintiffs did not issue a litigation hold notice upon being notified of Ridley's hiring by ChemTreat. Ex. 7 at 77:5-22.

Herrera, Mahre, and Corona, along with other employees involved in human resources and corporate compliance, continued their strategy discussions over the next two weeks. Ex. 5 at 1-5. On July 7, 2021, Ridley, as instructed by Plaintiffs, returned his Ecolab-issued laptop and mobile drive to Insight, notifying Herrera that day that he had done so. Ex. 8 at 3. Insight received the laptop and mobile drive on July 12, 2021. Ex. 9; Ex. 10 at 4.

On July 18, 2021, Mahre, at the direction of Corona, requested that Plaintiffs' Information Security Risk Management team conduct an "employee data review"—a review of Ridley's electronic activity on his laptop, cloud-based "OneDrive" file for storing electronic documents, and email account. Ex. 4 at 2. During this same time period, Plaintiffs' information security team removed Ridley's OneDrive from the automatic deletion queue and recovered all files deleted from it during the previous 93 days, then provided access to Ridley's OneDrive to Plaintiffs' in-house counsel. Ex. 7 at 103:2-105:20. The information security team did not forensically image or otherwise preserve Ridley's OneDrive before providing it to in-house counsel, nor did they take steps to ensure that in-house counsel (or Herrera, who also had access to Ridley's OneDrive at this time) did not inadvertently or deliberately alter the content of the OneDrive. Ex. 7 at 31:8-17, 109:4-110:4. Nor did the information security team terminate the pre-existing access to various folders on Ridley's OneDrive that Ridley had granted to other employees during the course of his employment with Plaintiffs. Ex. 7 at 30:1-3, 166:9-18; Ex. 2 at 222:23-223:14, 228:20-231:19.

Plaintiffs' Information Security Risk Management team completed the "employee data review" and provided it to Mahre and Corona on July 23, 2021. Ex. 4 at 2; Ex. 5 at 5. That review included the Digital Guardian data loss prevention report ("DLP report") that Plaintiffs have cited throughout this litigation (and in pre-suit communications with defense counsel) as "proof" of Ridley's alleged misappropriation of Plaintiffs' trade secrets. Ex. 11 at 3-4; Ex. 12 at 2; *see also*

3

Ex. 13 at 2. The DLP report shows that Ridley copied files from the hard drive of his Ecolab-issued laptop to his Ecolab-issued LaCie drive. Ex. 18 at 177:19-179:9. But it does not show that Ridley deleted any of the copied files, although that is data that would be included on the DLP report had any such deletion occurred. Ex. 7 at 154:3-156:3.

After receiving the DLP report, Plaintiffs' in-house counsel, corporate compliance, and human resources employees continued discussing "legal strategy with respect to Ridley" regularly through November 2021. Ex. 5 at 4-17. No legal hold was issued at any point during those months. *See, e.g.*, Ex. 7 at 77:5-22, 110:5-8, 127:16-19. In January 2022, Plaintiffs began a flurry of activity: retaining Laurence Lieb, a digital forensics investigator; forensically imaging a copy of Ridley's OneDrive housed on the laptop of a paralegal in Plaintiffs' in-house legal department; reaching out to Insight about Ridley's "old assets," including his Ecolab-issued laptops and the mobile drive he returned; and, finally—seven months after anticipating litigation involving Ridley—issuing a litigation hold. Ex. 7 at 136:13-139:24; Ex. 9. Plaintiffs' tardy actions came too late. By then, both laptops had been wiped, the mobile drive could not be located, and there was no chain of custody that could verify what happened in the months that various employees of Plaintiffs had access to Ridley's former OneDrive. *Id.*

## ARGUMENT

"Spoliation is the destruction or material alteration of evidence or the failure to preserve evidence once a duty to preserve attaches." *Yoe v. Crescent Sock Co.*, 2017 WL 5479932, at *7 (E.D. Tenn. Nov. 14, 2017). Plaintiffs spoliated two distinct kinds of evidence, which are subject to different standards. Sanctions to address Plaintiffs' spoliation of the key physical evidence here—Ridley's two Ecolab-issued laptops and the mobile drive he returned to Ecolab—are considered under the Court's "'broad discretion' to manage discovery." *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 1542040, at *10 (M.D. Tenn. Mar. 29, 2018)

4

(quoting *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009)).[1] Sanctions to address Plaintiffs' spoliation of the ESI contained on those devices—such as the thousands of alleged trade secrets and data reflecting his online activity—are subject to Rule 37(e). *Yoe*, 2017 WL 5479932, at *7 & n. 5 (explaining "Rule 37(e) applies only to the loss of data," while "[c]ase law before December 1, 2015, still applies to the loss of physical objects"). Under both standards, Plaintiffs' admitted spoliation entitles ChemTreat to remedial sanctions.

## I. PLAINTIFFS' ADMITTED SPOLIATION OF RIDLEY'S PHYSICAL DEVICES ENTITLES CHEMTREAT TO SANCTIONS.

### A. Plaintiffs' Admitted Conduct as to the Destruction of Ridley's Devices Satisfies the Test for Spoliation Sanctions.

As the Sixth Circuit has explained, under the test applicable to the spoliation of physical evidence:

> A party seeking a spoliation sanction because evidence was destroyed must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014). Each element is satisfied here, entitling ChemTreat to sanctions for Plaintiffs' spoliation of Ridley's Ecolab-issued laptops and the mobile drive he returned to Plaintiffs.

*First*, Plaintiffs had an obligation to preserve this physical evidence at the time it was destroyed. As their assertion of the attorney work product doctrine on their privilege log reflects, Plaintiffs anticipated litigation as of July 1, 2021, when they learned that Ridley was "going to the competition" and immediately began discussing "strategy" regarding that departure. Ex. 1; Ex. 5

---

[1] Unless noted, all emphasis is added and quotations are cleaned up, with internal citations omitted.

at 1.[2] As Plaintiffs have acknowledged, if they had issued a litigation hold that day, all three of the physical devices would have been preserved and available as evidence. Ex. 7 at 175:20-178:4. That is precisely what Plaintiffs did when other employees "went to a competitor," Ex. 6, but they did not follow that practice here. As a result, this indisputably relevant evidence was destroyed.

*Second*, Plaintiffs destroyed these devices with the requisite "culpable state of mind." As this Court has explained, "[t]he culpable state of mind factor can be established by conduct ranging from negligent to intentional conduct in the Sixth Circuit." *Yoe*, 2017 WL 5479932, at *13. The Court thus need not consider the circumstantial evidence of Plaintiffs' intentional destruction of these devices (and the information on them), such as Plaintiffs' failure to take the same preservation steps as in other similar situations[3]; their preservation only of the information they have cited as favorable to them, such as the DLP report[4]; or their shifting explanations regarding what they did, when, and why[5] (and even which devices were at issue[6]) with regard to the

---

[2] To be protected as attorney work product, documents must have been created "in anticipation of litigation." *United States v. Roxworthy*, 457 F.3d 590, 593–94 (6th Cir. 2006). Plaintiffs' assertion that documents created on July 1, 2021, are properly withheld as attorney work product thus constitutes a binding admission that Plaintiffs anticipated litigation as of that date. *PNC Bank, NA v. Goyette Mech. Co.*, 140 F. Supp. 3d 623, 632 (E.D. Mich. 2015).

[3] *See, e.g.*, Ex 6.

[4] *See, e.g.*, Ex. 11 at 4 ("Since there is no question that Defendant Ridley downloaded or uploaded over 16,000 files in May and June 2021 as set forth in detail by Plaintiffs in Paragraphs 40 through 107 of the Second Amended Complaint, details about Plaintiffs' investigation is simply not relevant nor justified by the needs of the case. . . . The Digital Guardian Report revealed extensive downloading/uploading and file transfer activity that is outlined in detail in the Second Amended Complaint").

[5] *Compare* Ex. 4 at 6 (claiming "no effort" made to recover the mobile drive returned by Ridley), *with* Ex. 14 at 5 (reflecting January 2022 request from "legal counsel" to locate the mobile drive); *compare also* Ex. 11 at 6 (asserting "[t]here was no duty to preserve any data maintained on his computer" at the time of Ridley's resignation), *with* Ex. 5 at 1 (identifying attorney work product created in anticipation of litigation on day of Ridley's resignation).

[6] *Compare* Doc. 111 at 11-12 ("For the laptops, Plaintiffs clarified that only one Nalco/Ecolab laptop is at issue (i.e., they do not contend that Ridley misappropriated the documents at issue in this case using any Nalco/Ecolab laptop returned during the course of his employment, only the

6

destruction of the devices.[7] Because "negligence is sufficient to find a 'culpable state of mind' to support spoliation," *id.*, this factor is satisfied by Plaintiffs' admission that they took no steps to preserve these devices, resulting in the destruction of the devices. Ex. 4 at 4-6.

*Finally*, these devices are indisputably relevant to the party's claims and defenses. Ridley testified the "mobile drive" he returned to Plaintiffs upon his departure was the "LaCie Drive" that Plaintiffs claim he used to misappropriate their documents. Ex. 2 at 308:4-12. Plaintiffs concede Ridley "may have given the LaCie Drive to one of Nalco/Ecolab's outside, third party, vendors." Doc. 229 ¶ 205. Because the DLP report identifies the serial number of the LaCie drive (Ex. 16 at 6), but for Plaintiffs' destruction of the mobile drive, the parties would be able to confirm whether, as Ridley testified, the mobile drive he returned to Plaintiffs is, in fact, the LaCie drive allegedly used to misappropriate Plaintiffs' documents.[8] As Ridley cannot have misappropriated documents he returned to Plaintiffs, and ChemTreat cannot have acquired, much less used, any such documents, this evidence is facially relevant—but no longer exists due to Plaintiffs.

Likewise, when Plaintiffs finally admitted (nearly a year after filing this action) that, contrary to their previous representations, *two* laptops are at issue, they attempted to cast doubt on their own internal document reflecting that Ridley had to send the first laptop to Insight for repair

---

Nalco/Ecolab laptop returned after the end of his employment."), *with* Ex. 4 at 4 (identifying two laptops used by Ridley during period of alleged misappropriation).

[7] Direct evidence of intentional spoliation is rare; instead, "[r]esort to circumstantial evidence is by far the most common means of proving intentional destruction of evidence." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2018 WL 1616725, at *11 (N.D. Ill. Apr. 4, 2018) ("As Judge Easterbrook once pithily observed, "the evidence was circumstantial, but what circumstances!").

[8] The serial number for a LaCie drive is listed on its external housing. *See* https://www.lacie.com/support/kb/instructions-to-find-a-serial-number-on-the-lacie-drives-007763en/ ("The serial number of your product can also be found on the label attached to your drive.").

7

due to a "constant buzzing and humming inside it." Ex. 3 at 4; Ex. 17 at 68:3-10 ("He downloaded documents with the—well, the *alleged* broken fan. And he did that and right after he got done downloading the documents, he *claimed* it was broken."). The condition of the physical device—if it had not been destroyed by Plaintiffs—would clearly be relevant to the question of whether it had a defect requiring repair (as Ridley testified and Plaintiffs' records reflect) or whether that was a pretext invented by Ridley (as Plaintiffs now appear to claim).

### B. Fairness Dictates that ChemTreat Is Entitled to Sanctions that Prevent Plaintiffs from Benefitting from Their Spoliation of the Physical Devices.

As the Sixth Circuit has explained, "[b]ecause failures to produce relevant evidence fall along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality," federal courts have "broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 652–53 (6th Cir. 2009) (holding spoliation sanctions "should serve both fairness and punitive functions"). At base, "a proper sanction will serve the purposes of leveling the evidentiary playing field and sanctioning the improper conduct." *Id.* at 653. Consistent with those purposes, fairness dictates that the Court should impose sanctions that prevent Plaintiffs from benefitting from their spoliation of the physical devices.

*First*, the Court should preclude Plaintiffs from presenting any evidence or argument that the "mobile drive" they admit Ridley returned to them was *not* the LaCie drive identified on the DLP report. The only evidence on this issue is Ridley's testimony that the mobile drive he returned *was* the LaCie drive. As Plaintiffs admit, their records do not reflect information (such as the serial number of the returned mobile drive) that could refute that testimony. Speculation, of course, is not evidence, and Plaintiffs cannot rely on speculation to carry their burden of proof on their statutory misappropriation claims. But Plaintiffs also should not be permitted to argue that the mobile drive Ridley returned was not the LaCie drive, as they are solely responsible for the

8

destruction of that device. They should not be permitted to benefit from their spoliation by making an argument contrary to the remaining evidence.

*Second*, the Court should preclude Plaintiffs from presenting any argument or evidence on whether Ridley's Ecolab-issued laptop actually required repair. Because Plaintiffs destroyed the physical device, the only remaining evidence on the issue is found in Plaintiffs' business records, which reflect the device required repair due to a "constant buzzing and humming inside it." Ex. 3 at 4. Plaintiffs should not be permitted to contradict that evidence, or to suggest the reason Ridley returned the device to Insight was pretextual, as permitting them to do so would allow them to benefit from their destruction of the laptop while preventing Defendants from presenting potentially helpful evidence in their defense.

## II. PLAINTIFFS' ADMITTED SPOLIATION OF RIDLEY'S ESI ENTITLES CHEMTREAT TO RULE 37(E)(1) SANCTIONS.

### A. Plaintiffs' Admitted Conduct as to the Destruction of the ESI on Ridley's Devices Satisfies the Test for Rule 37(e)(1) Sanctions.

This Court has previously detailed the "step-by-step analysis under Rule 37(e)" that applies to Plaintiffs' destruction of the ESI on Ridley's devices:

> First, was there a duty to preserve the data in issue? If not, the analysis ends. Second, were reasonable steps taken to avoid the loss of the data? If so, the analysis ends. Third, can the lost data be "restored or replaced" through additional discovery? If so, the analysis ends. Fourth, was the other party prejudiced by the loss of the data? If not, the analysis ends, but if there was prejudice, the court can impose "measures no greater than necessary to cure the prejudice." Such measures may include, allowing the injured party to comment on or introduce evidence about the lost data at trial.

*Yoe*, 2017 WL 5479932, at *9.

As this analysis reflects, there are two relevant differences between the standard for sanctions applicable to the ESI on Ridley's devices and the standard for sanctions applicable to the devices themselves. *First*, "Rule 37(e) eliminates the requirement of a culpable state of mind;

9

instead, the rule now focuses on prejudice to the moving party," which "relates to the issue of the relevance of the lost data." *Id.* at *11. *Second*, "subsection (e)(1) does not contain an 'intent' requirement; thus, a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith" for sanctions to be imposed. *Id.* at *8. Application of the controlling analysis demonstrates that Plaintiffs' destruction of the ESI on Ridley's devices is sanctionable under Rule 37(e)(1).

As discussed above, upon learning Ridley had accepted employment with ChemTreat, Plaintiffs began discussing "strategy" related to possible litigation; they have asserted the attorney work product doctrine—based on their anticipation of litigation—as the basis to withhold those communications from production. Ex. 5 at 1. As the plain language of Rule 37(e) reflects, Plaintiffs' anticipation of litigation triggered their corresponding obligation to preserve relevant evidence. Fed. R. Civ. P. 37(e) (authorizing sanctions "[i[f electronically stored information that should have been preserved **in the anticipation or conduct of litigation** is lost because a party failed to take reasonable steps to preserve it"). The first step of the analysis is thus satisfied.

Proceeding to the second step, Plaintiffs did not take "reasonable steps to avoid the loss of the data." *Yoe*, 2017 WL 5479932, at *9. Indeed, as they admit, they did not take any steps at all: They did not contact Ridley; they did not contact Insight; and they did not implement a litigation hold. Ex. 7 at 77:5-8, 97:23-98:20, 122:2-20. These omissions are especially glaring in light of Plaintiffs' practice in other, similar situations (*see* Ex.6) and the fact that Ridley informed Herrera (who was assembling information for Plaintiffs' in-house counsel at the time) when he shipped the devices to Insight (*see* Ex. 5 at 3; Ex. 8 at 3).

As Plaintiffs have also admitted, the lost data cannot be "restored or replaced" through other discovery. As the Court is aware, ChemTreat undertook extensive efforts to obtain the

10

documents listed on the DLP report—i.e., the ESI contained on the spoliated devices. *See* Doc. 76; Doc. 111; Doc. 122; Doc. 158. In response, Plaintiffs repeatedly represented to the Court that the ESI was no longer available, asserting they have only the file paths listed on the DLP report and not the documents themselves. *See, e.g.*, Doc. 158 at 11 (quoting Plaintiffs' representation that "[t]hey cannot produce what they do not have"). Garza testified that Plaintiffs recovered any files that had been deleted from Ridley's cloud-based OneDrive reaching back to sometime in April 2021, before Ridley's departure from Ecolab (and any of the alleged deletion activity). Ex. 7 at 104:9-105:20. Thus, to the extent Plaintiffs no longer have copies of the documents identified on the DLP report, that evidentiary gap must be the result of Plaintiffs' spoliation of Ridley's ESI. Moreover, the DLP report does not identify the MD5 hash values (the unique "fingerprint" that demonstrates whether two documents are identical) for the documents it lists. Ex. 7 at 66:10-68:11; Ex. 18 at 260:15-262:5, 330:5-331:7. Without that information, it is not possible to ensure that two documents with the same name are actually the same document, *id.*, as would be required for that ESI to be "restored or replaced" from an alternative source.

Nor is there any replacement for the other kinds of ESI the spoliated devices contained. Without the mobile drive, it is impossible to prove (or disprove) whether it was connected to any devices other than Ridley's Ecolab-issued laptops, and thus whether documents on the mobile drive were transferred to other sources before the drive was returned to Ecolab. And without those Ecolab-issued laptops, ChemTreat cannot determine, for example, what websites Ridley was visiting, including what personal email or other online accounts he accessed. Given the dispute over whether certain Microsoft-affiliated websites reflected on the DLP report are associated with a personal account owned by Ridley or a corporate account owned by Ecolab, this is a significant and irreparable data loss.

The final step—whether ChemTreat is prejudiced by the loss of the data—is clearly satisfied here. As the Court has explained, prejudice in this context "is another way of saying the loss of ESI could negatively impact a party's ability to make its case." *Id.* In addition to the loss of data about Ridley's use of the spoliated devices, ChemTreat also does not have access to the very documents that Plaintiffs allege constitute their trade secrets—a determination that requires an examination of the content of those documents to resolve. *See W. Excelsior Corp. v. Propex Operating Co., LLC*, 2017 WL 11195421, at *2 (E.D. Tenn. Sept. 6, 2017). ChemTreat's ability to defend itself against a claim of trade secret misappropriation is obviously "negatively impact[ed]" when it does not have access to the alleged trade secrets.

With each step of the analysis satisfied, the focus turns to what sanctions are appropriate "to cure the prejudice" to ChemTreat caused by Plaintiffs' spoliation. *Yoe*, 2017 WL 5479932, at *9.

### B. ChemTreat Is Entitled to Sanctions that Prevent Plaintiffs from Benefitting from Their Spoliation of the ESI on Ridley's Devices.

As this Court has explained:

> When imposing sanctions under Rule 37(e)(1), "the range of [curative] measures is quite broad" and "much is entrusted to the court's discretion." Fed. R. Civ. P. 37(e) advisory committee's note. As stated in the advisory committee's note, "it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than [adverse inference instructions]."

*Yoe*, 2017 WL 5479932, at *14.

Consistent with Rule 37(e)(1), the Court should preclude Plaintiffs from presenting evidence or argument on issues as to which their spoliation has deprived ChemTreat of the ability to fully defend itself. Those issues fall into four general categories: (1) whether documents

12

produced by Plaintiffs are the same documents as the documents allegedly misappropriated by Ridley; (2) whether Ridley deleted the allegedly misappropriated documents; (3) whether any Microsoft-affiliated website (*e.g.*, "live.com" or "officeapps.live.com") that Ridley visited using his Ecolab-issued laptops was associated with a personal rather than corporate account; and (4) whether the LaCie drive was connected to any device other than an Ecolab-issued laptop.

### 1. Whether documents produced by Plaintiffs are the same document as the document allegedly misappropriated by Ridley

The best evidence rule already bars Plaintiffs from proceeding on their trade secret misappropriation claims as to any document they have not produced in this litigation. Fed. R. Civ. P. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."). Because the question of whether a document contains a trade secret necessarily requires Plaintiffs "[t]o prove the content" of that document, the best evidence rule applies here. As the Sixth Circuit has explained, the best evidence rule is "something of a misnomer": "The rule is perhaps more accurately dubbed the original document rule, for instead of requiring the 'best' evidence in every case, the rule actually requires the production of an original document rather than a copy." *DeMarco v. Ohio Decorative Prod., Inc.*, 19 F.3d 1432 (6th Cir. 1994). Because of the nature of ESI, there can be more than one "original"—the test is whether the ESI "accurately reflects the information." Fed. R. Civ. P. 1001(d) ("For electronically stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information.").

Because of Plaintiffs' spoliation of the ESI on Ridley's devices, it is no longer possible to determine whether any alleged copy produced by Plaintiffs is the same document—and thus an "original" for purposes of the best evidence rule—as the document allegedly misappropriated by Ridley. That a document produced by Plaintiffs bears the same name as a document listed on the

13

DLP report does not suffice to prove whether its content "accurately reflects the information" in the original. Ex. 7 at 66:10-68:11; Ex. 18 at 260:15-262:5, 330:5-331:7. As Plaintiffs' spoliation has left ChemTreat unable to fully defend itself on this issue, a proper curative measure is precluding Plaintiffs from presenting evidence or argument that a document they have produced is the same document misappropriated by Ridley unless they can establish a chain of custody directly connecting the document they produced, without changes, to the document allegedly misappropriated by Ridley.

### 2. Whether Ridley deleted the allegedly misappropriated documents

Plaintiffs have repeatedly asserted that Ridley deleted their documents after allegedly misappropriating them. *See, e.g.*, Doc. 97 at 2; Doc. 136 at 1; Doc. 139 at 2. Discovery has revealed no evidence supporting that claim. The DLP report does not show any deletion of the allegedly misappropriated files, although Plaintiffs' corporate representative and Plaintiffs' business records both confirm that if any deletion had occurred, it would be reflected on the DLP report. Ex. 7 at 154:3-156:3; Ex. 15 at 2. And Plaintiffs have failed to produce any other contemporaneous evidence of the deletion they allege. Plaintiffs nevertheless continue to press the claim. *See, e.g.*, Doc. 196 at 1; Doc. 203 at 10; Doc. 219 at 2. Since Plaintiffs' spoliation of Ridley's Ecolab-issued laptops prevents ChemTreat from assessing the ESI on those laptops—ESI that could disprove Plaintiffs' claims of deletion—a proper remedy for Plaintiffs' spoliation of that ESI is precluding Plaintiffs from presenting evidence or argument that Ridley deleted the allegedly misappropriated documents.

### 3. Whether any Microsoft-affiliated website Ridley visited was associated with a personal or a corporate account

The DLP report shows that Ridley visited certain Microsoft-affiliated websites using his Ecolab-issued laptops. Plaintiffs admittedly use cloud-based Microsoft services, hosted online

14

through Microsoft Azure. Ex. 7 at 14:4-15:8. They nonetheless assert that the Microsoft-affiliated websites Ridley visited are associated with personal rather than corporate accounts. If Plaintiffs had not destroyed Ridley's Ecolab-issued laptops, ESI on those laptops reflecting information about Ridley's online activity, including his internet browsing history and the nature of the websites he visited, would be available. Because of Plaintiffs' spoliation, however, ChemTreat has no ability to use such information to defend itself. Accordingly, to remedy the prejudice caused by Plaintiffs' spoliation of this ESI, a proper curative measure is to preclude Plaintiffs from presenting evidence or argument that the Microsoft-affiliated websites identified on the DLP report relate to Ridley's personal accounts, rather than Plaintiffs' corporate accounts.

### 4. Whether the LaCie drive was connected to any device other than an Ecolab-issued laptop

As discussed above, Plaintiffs' destruction of the mobile drive returned by Ridley prevents the parties from ascertaining whether, as Ridley testified, that mobile drive is the LaCie drive identified on the DLP report as the destination location for files copied by Ridley using his Ecolab-issued laptops. Plaintiffs' destruction of the mobile drive also prevents the parties from ascertaining whether that device was ever connected to any laptop other than an Ecolab-issued laptop. Plaintiffs have attempted to take advantage of the uncertainty created by their spoliation of this evidence by speculating that Ridley could have "copied the files to the LaCie Drive, used that same drive to transfer the files to other devices; and then possibly returned the LaCie Drive to an outside vendor to hide his misconduct." Doc. 229, ¶ 214. To prevent Plaintiffs from profiting from their spoliation, a proper remedy is to preclude them from presenting evidence or argument that the LaCie drive was ever connected to any laptop other than an Ecolab-issued laptop.

### CONCLUSION

For the foregoing reasons, ChemTreat requests that the Court grant ChemTreat's motion

15

and impose the sanctions set forth above against Plaintiffs for their spoliation of (1) the electronic devices returned by Ridley to Plaintiffs, and (2) the ESI those devices contained.

DATED: May 26, 2023

Respectfully submitted,

*/s/ Troy C. Homesley*
Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: vmirmira@wc.com
E-mail: wburke@wc.com
E-mail: jlund@wc.com
E-mail: thomesley@wc.com

W. Scott Sims
Michael R. O'Neill
SIMS FUNK PLC
3322 West End Ave. #200
Nashville, TN 37203
Telephone: (615) 425-7432
Facsimile: (615) 649-8565
E-mail: ssims@simfunk.com
E-mail: moneill@simsfunk.com

*Attorneys for Defendant ChemTreat, Inc.*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served via the Court's CM/ECF system on May 26, 2023, upon the following:

J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

*Attorneys for Plaintiffs*

Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

/s/ *Troy C. Homesley*
Troy C. Homesley