UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>　　　　　Defendants. | Case No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

### CHEMTREAT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO RIDLEY

Plaintiffs direct their motion for partial summary judgment motion only to Ridley. That is not surprising. The contract breaches that Plaintiffs allege in their motion cannot form the predicate for *any* of the claims pled against ChemTreat. To the contrary, even if the undisputed factual record could establish any such breaches, those breaches would undeniably rest on Ridley's alleged misappropriation of Plaintiffs' trade secrets. Accordingly, as Plaintiffs admit (and the Court has confirmed), preemption precludes Plaintiffs from relying on any such breach as the predicate for any contractual interference claim against ChemTreat.

Nor, for that matter, can any such alleged breach establish a factual predicate for Plaintiffs' statutory misappropriation claims under the Defend Trade Secrets Act ("DTSA") and Tennessee Uniform Trade Secrets Act ("TUTSA"). Plaintiffs do not even assert, much less establish as a matter of undisputed fact, that any particular allegedly misappropriated document constitutes a trade secret under those statutes. Thus, the "undisputed" facts presented by Plaintiffs in support of their motion for partial summary judgment as to Ridley cannot serve as predicate facts for any statutory misappropriation claim pled against ChemTreat.

1

# ARGUMENT

I. **Plaintiffs' Alleged Contract Breaches Cannot Form the Predicate for Any Contractual Interference Claim Against ChemTreat.**

Plaintiffs assert they are entitled to summary judgment as to four alleged contract breaches by Ridley. Doc. 264 ("Br.") at 13. Their argument as to those breaches—in its entirety—is as follows:

> Ridley breached paragraph 11 by failing to return to Plaintiffs its property and information upon termination of his employment and/or promptly upon request. This is supported by undisputed facts 20, 21, 22, 25, 27, 31, 32, 35, 36, 37, and 38.
>
> Ridley breached paragraph 4 by transferring, without authorization, Company information to personal computer devices not provided by the Company, and by deleting Company information. This is supported by undisputed facts 18, 19, 24, 25, 27, 28, 29, 30, 31, 33, 35, and 45 (Section II supra).
>
> Ridley breached paragraph 2 by using or disclosing Plaintiffs' confidential information as supported by the following undisputed facts. This is supported by undisputed facts 18, 19, 23, 25, 32, 33, 34, 36, 37, 41, 42, and 44 (Section II supra).
>
> Ridley breached paragraph 12 by failing to permit Plaintiffs to inspect his personal WD Drive upon which Plaintiffs had a reasonable (and accurate) belief that it contained Company confidential information. This is supported by undisputed fact 47 (Section II supra).

*Id.*[1]

Plaintiffs do not explain how the allegedly "undisputed facts" they cite establish a breach of the enumerated contract paragraphs. Even if the Court does Plaintiffs' work for them[2] and hunts through the evidentiary record and legal authority to determine whether Plaintiffs' motion is justified, the outcome is necessarily limited to the narrow disputes between Plaintiffs and Ridley

---

[1] Unless noted, all emphasis is added and quotations are cleaned up with internal citations omitted.

[2] As the Court has repeatedly reminded Plaintiffs, "a party may not present a skeletal argument, leaving the court to put flesh on its bones." Doc. 223 at 14 (quoting *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) and *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("Judges are not like pigs, hunting for truffles."); *see also* Doc. 201 at 15 (same); Doc. 137 at 12 (same).

raised in Plaintiffs' motion. None of those alleged breaches, even if established, can form the predicate for either of the contractual interference claims Plaintiffs assert as to ChemTreat—tortious interference with contract (Count V) or procurement of breach of contract (Count VI).[3] For each of those claims, Plaintiffs disclaimed (as they must, to avoid preemption, *see* Doc. 215 at 5-6) any "rel[iance] on facts related to misappropriation of trade secrets." Doc. 229 at 59 n.2, 61 n.3. Yet, as Plaintiffs themselves make clear, each alleged contract breach on which they seek summary judgment rests expressly on the alleged misappropriation of Plaintiffs' allegedly confidential or trade secret information.

For example, the first alleged breach rests on the alleged misappropriation of "customer files." Br. 7, ¶¶ 20-22. "Customer files" is one of the categories of alleged trade secrets identified by Plaintiffs in their sworn interrogatory responses. JA-724-25.[4] Nor is the first breach limited to the alleged misappropriation of Plaintiffs' customer files; Plaintiffs also rely on the alleged misappropriation of other purported "trade secrets at Ecolab/Nalco, including programs, financial data, financial plans, list of customers, pricing, purchasing patterns, and customers contacts." Br.

---

[3] None of these four alleged breaches fully aligns with the alleged breaches that Plaintiffs' Third Amended Complaint identifies as predicate breaches supporting their contractual interference claims against ChemTreat. *See* Doc. 229, ¶¶ 304-311, 316-323. None of the four contract provisions cited in Plaintiffs' partial summary judgment motion (paragraphs 2, 4, 11, and 12) overlap with the contract provisions cited in Counts V and VI, and none of the underlying factual allegations match up; the sole exception relates to Plaintiffs' allegations regarding Ridley's creation of the "business plan" projecting his anticipated ability to grow ChemTreat's existing customer base in the territory he would inherit if he were to be hired by ChemTreat. *Compare* Doc. 229, ¶¶ 304-311, 316-323, *with* Br. 7, ¶ 18.

[4] Although Plaintiffs allege their customer files constitute "compilation" trade secrets, JA-724, Plaintiffs failed to produce ten (or indeed, any) exemplar customer files as ordered by the Court, Doc. 158 at 9 n.9, 10 & n.10. Because no customer files are in evidence, Plaintiffs cannot satisfy the threshold requirement of proving those files are trade secrets. Fed. R. Evid. 1002; *see infra* at 5. But Plaintiffs' decision to disregard the Court's Order and abandon their statutory misappropriation claims as to their customer files does not alter the preemptive force of TUTSA, which applies regardless of whether a plaintiff pursues a statutory misappropriation claim. *See, e.g.*, *RN Ent., LLC v. Clement*, 380 F. Supp. 3d 711, 720 (M.D. Tenn. 2019).

7, ¶ 25. Likewise, the second alleged breach rests on the claimed misappropriation of the same information at issue in their statutory misappropriation claims, including the same "business plan" (*see* Br. 7, ¶ 18) that the Court has already held triggers preemption based on Plaintiffs' claim that the template used to create that plan "qualifies as a trade secret." Doc. 215 at 5-6.

Finally, Plaintiffs themselves characterize the third and fourth alleged breaches as involving their "confidential information." Br. 13. Under Tennessee law, "confidential business information is only protectible to the extent that it qualifies as a trade secret." *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 26 F. Supp. 2d 1029, 1031 (M.D. Tenn. 1998), *aff'd*, 215 F.3d 1326 (6th Cir. 2000). Thus, any claimed contract breach resting on the alleged misappropriation of Plaintiffs' "confidential information" is equally preempted by TUTSA. *See Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) ("[T]he UTSA would appear to occupy the field and create a single class of commercially valuable intangible property which the law protects as such.").

The four contract breaches Plaintiffs identify in their partial summary judgment motion rest on Ridley's alleged misappropriation of Plaintiffs' confidential or trade secret information. As a matter of law, then, none of those breaches—even if established by Plaintiffs—can form a predicate breach for either of Plaintiffs' contractual interference claims against ChemTreat.

II. **Plaintiffs' Alleged Contract Breaches Cannot Form the Predicate for Any Statutory Misappropriation Claim Against ChemTreat.**

TUTSA creates a binary: Either a document satisfies the statutory definition of a trade secret or there is no "legal interest" in the document "giving rise to a claim." Doc. 215 at 5-6; *see also Hickory Specialties*, 26 F. Supp. 2d at 1031. Plaintiffs, however, offer no argument as to why any particular document at issue in their partial summary judgment motion constitutes a trade secret under the applicable statutory test; instead, their motion relies on contract provisions that

4

apply equally to "trade secrets" and "confidential information," or to some even less restrictive category, like "Company information." *See* Br. 3-6, ¶¶ 9-11, 13-14; *see also* Br. 13. Plaintiffs do not even cite to any specific document in the record as constituting a trade secret. Rather, they rely entirely on Ridley's generic testimony about categories of documents: "Ridley testified that he received trade secrets at Ecolab/Nalco, including programs, financial data, financial plans, list of customers, pricing, purchasing patterns, and customers contacts (Joint Appx., pp. 505-508)." Br. 8, ¶ 25. That testimony does not provide the requisite factual predicate for a statutory misappropriation claim.

*First*, under the best evidence rule, Plaintiffs cannot rely on secondary evidence—such as testimony—to establish that a document contains trade secret information; rather, the document itself "is required in order to prove its contents." Fed. R. Evid. 1002; *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020–21 (6th Cir. 1995) (affirming summary judgment as to insurance coverage under policies not produced by the plaintiff); *Sylvania Elec. Prods., Inc. v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir. 1965) (holding that best evidence rule is not a "mere technicality," particularly "where the missing original writings in dispute are the very foundation of the claim"); *Keller v. Fifth Third Bank*, 2011 WL 161649, at *3 (M.D. Tenn. Jan. 18, 2011) (granting summary judgment when plaintiff failed to produce EEOC letter showing claim was timely as testimony about letter did not satisfy Rule 1002); *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 2007 WL 9705875, at *9 (C.D. Cal. June 12, 2007) (CEO's testimony regarding contents of an allegedly copyrighted (but unproduced) work insufficient to satisfy best evidence rule). Plaintiffs, however, do not identify any document in the record as an alleged trade secret, much less offer any argument as to how such a document satisfies each of the elements for trade secret status under the DTSA and TUTSA.

*Second*, the limited testimony from Ridley that Plaintiffs cite in their motion does not prove that the statutory requirements for a trade secret are satisfied as to any of Plaintiffs' documents. Plaintiffs did not ask Ridley about each statutory requirement as to any particular document, or even as to any particular category of documents, nor, in any event, did they establish that Ridley has personal knowledge sufficient to form an adequate foundation to testify to each of those statutory elements. JA-505-508 (Ridley). Thus, even if testimony alone could establish the existence of a trade secret, Plaintiffs have not offered evidence demonstrating that Ridley's testimony would be competent to prove the issue.

*Third*, Ridley's testimony—in a portion elided by Plaintiffs—demonstrates that the trade secret status of Plaintiffs' documents is, at best, a disputed issue of fact. A trade secret must be **secret**—once publicly disclosed, the information loses any statutory protection. *See, e.g., Heartland Home Finance, Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 862 (6th Cir. 2008) ("Once material has been publicly disclosed, it loses any status it ever had as a trade secret."); *see also Hickory Specialties, Inc. v. Forest Flavors Int'l Inc.*, 215 F.3d 1326, at *4 (6th Cir. 2000) (table) ("The subject matter of a trade secret must be secret. Matters of public knowledge or general knowledge in the industry or ideas which are well known or readily ascertainable, cannot be trade secrets."). But when Plaintiffs asked Ridley whether any of their purported "trade secrets" were "publicly available," he responded "yes." JA-508:14-23 (Ridley). Ridley then testified at length as to all of the various kinds of "trade secret" information that, based on his personal knowledge, was publicly available, including:

- "components of products" sold by Plaintiffs;
- the "chemical programs" that Plaintiffs offered to treat customers' systems;
- the "program administration manuals" describing those chemical programs (and other information related to the pricing and services provided by Plaintiffs to their customers, *see* JA-75-88);

6

- "training for both customers and potential customers";

- "financial data" and "pricing information," including "costing and pricing" for individual customers as well as "commodity pricing" across multiple customers;

- "new products being developed" by Plaintiffs; and

- the identity of Plaintiffs' customers, including "information about customer contacts" that Plaintiffs provided to potential customers as "third-party references."[5]

Addendum to Joint Appendix ("AJA") AJA-1014:24-1019:13, 1020:1-24 (Ridley). Given the substance of Ridley's testimony overall—as well as his status as a non-lawyer, and the lack of any foundational questions to establish that he understands the legal definition of a trade secret—his acceptance of Plaintiffs' counsel's characterization of various document categories as "trade secrets" cannot prove as a matter of undisputed fact that any particular document constitutes a trade secret under the DTSA or TUTSA—a threshold requirement for any statutory misappropriation claim.[6]

*Finally*, as to the only two specifically identified documents referenced in Plaintiffs'

---

[5] Ridley testified that his Outlook contacts included some "customer names and numbers," along with his personal contacts (which constituted the "vast majority" of the contacts because his cell phone automatically copied such contacts to his Outlook account). JA-584:1-585:23 (Ridley). Plaintiffs allege that Ridley took a copy of his Outlook contacts when he left their employ. Br. 8-9, ¶ 32. Plaintiffs, however, admittedly failed to preserve Ridley's Outlook contacts. AJA-1035 ("On February 7, 2023, Jack Anderson from Ecolab Global Information Security confirmed that while Ridley's emails are available in a Veritas email archive, the archive does not maintain a user's contact list."). As a result, there is no record evidence regarding which customers' contact information was included among the other personal and professional contacts in Ridley's Outlook contact list, nor any way to ascertain which of those names and numbers were publicly disclosed as "third-party references" (or simply publicly available through, e.g., company websites, professional networking sites, etc.).

[6] The elements of a trade secret claim are "(1) the existence of a trade secret; (2) communication of that trade secret to the defendant while the defendant was in a position of trust and confidence; (3) use of the trade secret; and (4) damage to the plaintiff." *Knox Trailers, Inc. v. Maples*, 2023 WL 2570970, at *3 (E.D. Tenn. Feb. 14, 2023).

7

motion—the 2015 AEDC bid (Br. 10, ¶ 42) and the "business plan" (Br. 7, ¶ 18)—the undisputed evidence establishes that neither qualifies as a trade secret.[7]

As to the 2015 AEDC bid (JA-29-35), Plaintiffs concede that document is "not a trade secret individually." JA-725. That admission is conclusive, given that Plaintiffs did not produce the full AEDC customer file "the compilation of which," according to Plaintiffs, "constitutes a trade secret." *Id.*

As to the "business plan," although Plaintiffs assert "[t]he template that Ridley utilized in formulating the Business Plan that he sent to ChemTreat was proprietary company property," Doc. 229, ¶ 55, their corporate representative admitted the "template" is simply a Microsoft Excel bar chart and would only be proprietary if "the template that was used contained Ecolab formulas and information to create the bar chart." AJA-1003:7-1004:11, 1005:10-1008:18 (DeMarco). It did not. Plaintiffs admit the only financial information in the "business plan" is **ChemTreat's** information. Doc. 229, ¶ 51. And Ridley testified that "every number under sales, every one of those numbers is a number—outside of the 800K at the very top [which was provided by

---

[7] Pointing to Ridley's testimony, Plaintiffs also assert that "Ridley accessed (at least) seven Nalco documents while at ChemTreat from his ChemTreat computer." Br. 10, ¶ 41. Plaintiffs do not identify which documents are encompassed in that reference to "(at least) seven Nalco documents," but the cited testimony indicates Plaintiffs are referring to the seven documents whose file paths were identified in the CrowdStrike log discussed in the report of ChemTreat's forensic expert James Vaughn. JA-613:10-614:23 (Ridley). As noted above, the best evidence rule precludes Plaintiffs from relying on Ridley's testimony alone to establish that any of those "seven Nalco documents" (only three of which Plaintiffs produced, *see* Doc. 256 at 13-14) contains trade secret information. In any event, Plaintiffs do not allege (nor could they) that Ridley testified that any of those seven documents are trade secrets; to the contrary, the testimony Plaintiffs cite makes clear that each of those documents was a public-facing document (i.e., something created to be shared with a customer). JA-614:10-636:24 (Ridley). Those documents thus cannot constitute trade secrets for purposes of a statutory misappropriation claim unless they were only shared pursuant to a confidentiality agreement. Plaintiffs, however, do not identify any record evidence establishing that all (or even any) of the customers who received the information contained in those seven documents were subject to such confidentiality obligations.

8

ChemTreat], every one of those numbers is a number that I calculated and I came up with based upon 20-plus years of history in this industry." JA-596:23-597:6 (Ridley).

A comparison of the "business plan" Ridley prepared with a "business plan" Plaintiffs created using the same Excel template confirms Ridley's testimony that he used his 20-plus years of personal experience in the water treatment industry—not any "Ecolab formulas and information," AJA-1003:7-1004:11 (DeMarco)—to create the three-year projections of his anticipated performance if hired by ChemTreat: Despite the superficial similarity of the formatting for the two documents, the substance is completely different. *Compare* JA-11-13, *with* AJA-991-994; *see generally* AJA-1034 (identifying AJA-991-994 as an exemplar business plan). ***None*** of the percentages for the various metrics in the two business plans (related to things like one-time business, repeat business, customer attrition, etc.) match, even though Plaintiffs' corporate representative explained that the allegedly proprietary information in Plaintiffs' template is tied to those percentages, which he testified are produced by formulas using "Nalco specific" information:

> Q: And this says it's a template, correct?
> A: Yeah, it does say template.
> Q: So do you know whether it contains any actual business information in it?
> A: It does. Some of the formulas and things are what we came up with that we know specifically about Nalco Water business, ***so it's very Nalco specific based on what we know about our business in composite***.
> Q: When you say "some of the formulas," what formulas specifically are linked to Nalco Water's business?
> A: Well, there's assumptions that we use that comes from Nalco, just our history and knowledge of our business over many years.
>
> \* \* \*
>
> Q: So you're saying those are calculations that the Excel spreadsheet does?
> A: Based on knowledge and assumptions of our historical business.
> Q: So is it essentially like for a particular cell, Excel will take—multiply cell one times cell two?

9

>   A: No, *it's more complex formulas than that. You would take some of the historical information that we might know about our business, and different aspects of our business would be built into the formulas.*
>
>   Q: And what specifically? Give me an example of a formula that is based on Nalco/Ecolab's historic information that would be contained in this bridge plan template.
>
>   A: Well, like a percent of—how can I explain it? *We know a certain percent of our business—new business claimed each year grows by a certain percent the next year, and so we use historical data to build in some of the logic behind that, so it's very Nalco specific*.
>
>   Q: So *if somebody used a different percentage, that wouldn't be Nalco specific*?
>
>   A: *No, I wouldn't think so*. I don't know.

AJA-1009:8-1011:3 (DeMarco).

That Plaintiffs do not consider either the 2015 AEDC bid or the "business plan" created by Ridley to be trade secrets (despite their allegations here) is further confirmed by the fact that both documents have been filed in the public record without protest by Plaintiffs—indeed, in the case of the "business plan," Plaintiffs insisted the document be made part of the record. *See* Doc. 67 at 1 (noting Plaintiffs did not try to maintain the 2015 AEDC bid under seal); Doc. 68-1 (2015 AEDC bid); AJA-1040:12-1041:6, 1042:22-1043:24, 1044:11-1045:1, 1050:17-1051:12 (Plaintiffs' counsel moving for admission of the "business plan" as an exhibit to the hearing, despite Court cautioning that there was no motion to seal the document and confirming it would therefore be publicly accessible).

Plaintiffs do not identify record evidence sufficient to establish that any of their documents constitute trade secrets within the meaning of the DTSA and TUTSA. As such, the "undisputed facts" set forth in their motion cannot form the predicate for either of the statutory misappropriation claims Plaintiffs allege against ChemTreat.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is, as they admit, limited to Ridley only. It does not, and cannot, establish the predicate—whether in whole or in part—for any claim against ChemTreat.

DATED: June 15, 2023

Respectfully submitted,

*/s/ Troy C. Homesley*
Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: vmirmira@wc.com
E-mail: wburke@wc.com
E-mail: jlund@wc.com
E-mail: thomesley@wc.com

W. Scott Sims
Michael R. O'Neill
SIMS FUNK PLC
3322 West End Ave. #200
Nashville, TN 37203
Telephone: (615) 425-7432
Facsimile: (615) 649-8565
E-mail: ssims@simfunk.com
E-mail: moneill@simsfunk.com

*Attorneys for Defendant ChemTreat, Inc.*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served via the Court's CM/ECF system on June 15, 2023, upon the following:

J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

*Attorneys for Plaintiffs*

Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

/s/ *Troy C. Homesley*
Troy C. Homesley