# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

ECOLAB INC., and NALCO COMPANY,
LLC d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

       Plaintiffs,

v.

ANTHONY RIDLEY and CHEMTREAT,
INC.,

       Defendants.

No. 1:22-cv-00050-TRM-SKL

Hon. Travis McDonough

Magistrate Judge Susan K. Lee

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF
# MOTION FOR RULE 37(E) SPOLIATION SANCTIONS

FP 47444807.2

# TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ....................................................................................... 2

    A.  Ridley's Employment With Plaintiffs ...................................................... 2

    B.  ChemTreat Recruits Ridley. ..................................................................... 2

    C.  Ridley resigned his employment with Plaintiffs on July 1, 2021 and started working for ChemTreat later that same month (Third Amended Complaint, ¶ 40; ChemTreat's Answer to Third Amended Complaint, ¶ 40; Ex. 8, Ridley000271) Ridley Downloads Thousands Of Plaintiffs' Trade Secret Files Prior To Joining ChemTreat. ........................................... 3

    D.  Ridley Joins ChemTreat And Retains Thousands Of Plaintiffs' Confidential And Trade Secret Files, Including Complete Backups Of His Nalco Computer, And Uses His ChemTreat Computer To Access Plaintiffs' Documents. ................................................ 5

    E.  Ridley Spoliated Evidence Present On His WD Drive By Using A Wiping Program Five Days After Receiving Plaintiffs' February 9, 2021 Preservation Letter. .......................... 6

    F.  Ridley Used His ChemTreat Computer To Access An Ecolab Document On A Web-Based Account. ................................................................................................. 8

    G.  Ridley Deleted Documents He Was Obligated To Preserve. ........................................ 8

    H.  ChemTreat Wiped Ridley's Work Laptop Spoliating Key Inculpatory Evidence. .............. 9

    I.  ChemTreat Terminated Ridley After First Wiping His Computer. ................................. 9

II.  LEGAL STANDARD FOR SPOLIATION SANCTIONS ......................................................... 10

III.  ARGUMENT ....................................................................................................... 11

    A.  First Rule 37(e) Factor: Defendants Had A Duty To Preserve Based On The February 2022 Preservation Letters. ................................................................................. 11

    B.  Second Rule 37(e) Factor: Defendants Failed To Take Reasonable Steps To Preserve Relevant Data Sources. .............................................................................. 11

    C.  Third Rule 37(e) Factor: None Of The Spoliated Data Sources Can Be Restored Or Replaced Through Additional Discovery. .............................................................. 13

    D.  Plaintiffs Are Entitled To Rule 37(e)(2) Sanctions Because Defendants' Intended To Deprive Plaintiffs Of Evidence. ...................................................................... 13

    E.  Defendants' spoliation coupled with discovery abuses and misrepresentations warrant sanctions pursuant to Rule 37(e)(2) including default and/or unfavorable presumption instructions. ........................................................................................... 23

    F.  In the Alternative, Rule 37(e)(1) Sanctions Should Be Imposed ................................. 25

IV.  CONCLUSION ..................................................................................................... 25

# INTRODUCTION

Defendant Anthony Ridley ("Ridley") abruptly quit his job with Nalco Water ("Nalco") and Ecolab, Inc. ("Ecolab") in July of 2021 to start a new job with Plaintiffs' direct competitor, Defendant ChemTreat, Inc. ("ChemTreat"). However, before leaving his job, Ridley downloaded and misappropriated thousands upon thousands of Nalco/Ecolab files containing Plaintiffs' confidential and trade secret information. Ridley even made multiple complete and partial backups of his Nalco computer, which he saved to his personal one terabyte Western Digital ("WD") Drive. Ridley did not return to Plaintiffs the full and partial backups of his Nalco computer which he saved to his WD Drive. Instead, he took Plaintiffs' confidential and trade secret information with him to ChemTreat where he repeatedly accessed that information.

When Plaintiffs learned that Ridley may have engaged in misappropriation, Plaintiffs sent via electronic mail preservation letters to both Defendants on February 9, 2021. That same day, Ridley deleted information from Plaintiffs' USB flash drives that he had improperly retained, and that he was contractually obligated to return to Plaintiffs at the time of his resignation. Four days later, on February 13, 2021, Ridley used a software wiping program called "C-cleaner" to delete all evidence of his misappropriation from his personal WD Drive which, as noted above, he used to store thousands of Nalco/Ecolab files. Three weeks after receiving Plaintiffs' preservation letter ChemTreat wiped Ridley's ChemTreat work laptop which Ridley used to access the WD Drive during his eight plus months of employment with ChemTreat. To be clear: Defendants destroyed these three critical sources of evidence (USB flash drives, the one terabyte WD Drive, and the ChemTreat laptop used by Ridley) ***after*** receiving Plaintiffs' preservation letters. Needless to say, Defendants' wiping of these devices were not the product of bad luck or incompetence but, rather, intentional acts of spoliation.

The significance of this spoliation cannot be overstated. Defendants spoliated the two

keystone pieces of evidence in this case: (1) the ChemTreat laptop assigned to Ridley which he used as a ChemTreat employee for over eight months and which he used to access the WD Drive, and (2) the WD Drive itself, which Ridley admits contained full and partial backups of his Nalco computer. Further, Defendants' rampant discovery abuse and their numerous material misrepresentations made to Plaintiffs and the Court lead to the only logical conclusion: Defendants' willful and intentional spoliation of these devices was intended to deprive Plaintiffs of evidence of their wrongdoing.

## I. FACTUAL BACKGROUND

### A. Ridley's Employment With Plaintiffs

Ridley began his employment with Nalco on November 1, 1999 as a Senior Account Manager and subsequently rose to the position of District Manager. In October 2020, Ridley transferred from Nalco to Ecolab and started a new position as a Corporate Account Manager. During his employment Ridley was given substantial access to Plaintiff's confidential information. In connection with becoming Corporate Account Manager, Ridley executed an Employee Sales, Service, Marketing & Inventions Agreement ("Agreement") whereby he agreed to, among other things: maintain the confidentiality of Plaintiff's confidential information (para 2), not to "transfer or store" any information to devices not provided by Plaintiffs (para 4), at separation to return all company property (para 11), and to permit Plaintiffs to inspect any of his devices if Plaintiffs reasonably believed they contained company confidential information (para 12), (Ex. 1, Ridley Depo. 23:9-16, Ex. 77.).

### B. ChemTreat Recruits Ridley.

ChemTreat and Ridley began discussing Ridley's employment with ChemTreat in 2019 and their talks continued into 2020. (Ex. 1, Ridley Depo. 360:2-24; 361:1-16; 365:3-24, 366:1-24, 367:1-16; 371:4-16; Exs. 32, 37.).

On October 1, 2020, Ridley transferred within the Company from one segment of the business to another (Nalco to Ecolab). (Ex. 1, Ridley Depo. 434:4-12.) Ridley's replacement at Nalco, Ben Irwin, asked Ridley for a copy of his Nalco client files because Ridley had the only copies. (Ex. 2,

Irwin Depo. 63-65, 191:13-24; 192:1-19.) Ridley lied and told Irwin that he (Ridley) did not have the client files. (Ex. 2, Irwin Depo. 63:2-25; 64:1-15.)

In January 2021, Ridley sent his Ecolab Agreement to ChemTreat. (Ex. 1, Ridley Depo., Ex. 43). In March 2021, while Ridley was still employed by Plaintiffs, he created a business plan at ChemTreat's request using a proprietary Nalco business planning document as a template.[1] (Ex. 4, Cissell Depo. Ex. 43; Ex. 1, Ridley Depo. 289:12-24; 290:1-17., Exs. 43, 44). In March 2021, Ridley and ChemTreat exchanged detailed compensation plans for Ridley. (Ex. 4, Cissell Depo. 117:14-25; Cissell Depo. Ex. 47.) On May 11, 2021, ChemTreat sent Ridley a link so he could formally apply for employment with ChemTreat. (Ex. 5, RIDLEY0000062).

**C.    Ridley resigned his employment with Plaintiffs on July 1, 2021 and started working for ChemTreat later that same month (Third Amended Complaint, ¶ 40; ChemTreat's Answer to Third Amended Complaint, ¶ 40; Ex. 8, Ridley000271) Ridley Downloads Thousands Of Plaintiffs' Trade Secret Files Prior To Joining ChemTreat.**

Ridley admitted in his deposition to a pattern and practice of misappropriating Plaintiff's confidential and trade secret information. Specifically:

- Ridley downloaded full back-ups of his Nalco/Ecolab files from 2015 through 2018, and partial back-ups through 2020 to his personal WD Drive, and admits to possessing and accessing these files while employed with ChemTreat. (Ex. 1, Ridley Depo. 90:22-24, 91:1-18, 254:23-24, 255:1-12, 448:4-15).

- On May 24, 2021, two weeks **after** receiving a link to formally apply to work for ChemTreat, Ridley downloaded approximately 4,891 files from his Ecolab OneDrive account to an 80GB external mobile drive (the "LaCie Drive"). (Ex. 6, Lieb Report at ¶ 31.) The downloads included complete files of numerous Nalco/Ecolab customers. (Ex. 6, Lieb Report at ¶ 31).

- That same day, as well as two days earlier, Ridley uploaded Nalco documents to a personal Live.com account. (Ex. 6, Lieb Report at ¶¶ 15-20).

- On May 25, 2021, Ridley downloaded approximately 1800 additional files from Ecolab's OneDrive to the LaCie, including customer files from former employees, and highly confidential financial documents known as "Fact Packs." (Ex. 6, Lieb Report

---

[1] This template was developed over time with substantial effort and had certain built-in presumptions and calculations based on Plaintiffs' experience and know-how. (Ex. 3, DeMarco Depo. 286:1-8; 287:3-25)

at ¶ 30.) Included in Ridley's download of Fact Packs were ones for both his territory and other territories and even an entire region, consisting of multiple districts. (Ex. 6, Lieb Report at ¶ 30, and Ex. 1, Ridley Depo. 239:3-17).

- On May 26, 2021, Ridley downloaded 185 files from Plaintiffs' OneDrive to the LaCie Drive, including confidential Nalco training materials. (Ex. 6, Lieb Report at ¶ 29).

- On May 27, 2021, Ridley downloaded 149 more Nalco/Ecolab files, including monthly commission payouts for all Nalco/Ecolab sales representatives in his district. (Ex. 6, Lieb Report at ¶ 28; Ex. 1, Ridley Depo. 242:23-24; 243:17-24; 244:14-24).

- On June 1, 2021, Ridley downloaded over 9,700 Nalco/Ecolab files from Plaintiffs' OneDrive account to a LaCie Drive, including more client files. (Ex. 6, Lieb Report at ¶ 27). These included files Ridley's former co-worker, Ben Irwin, asked him for and Ridley denied having. (Ex. 2, Irwin Depo. 63-65, 191:13-24; 192:1-19).

Ridley engaged in additional dishonest activities immediately before joining ChemTreat:

- On June 9, 2021, before he announced his resignation, Ridley returned his computer (that he had used for all the improper activities detailed above) to Ecolab's IT department and claiming it was "broken," hoping that it would be wiped/destroyed per normal IT procedures. (Ex. 1, Ridley Depo. 277:9-24; 278:1-4). At deposition, Ridley admitted that his reason for returning the computer was not true; it worked but the fan was "loud." (Ex. 1, Ridley Depo. 278:1-4). Ridley asked for a new computer even though he was leaving for vacation and planned to resign immediately upon his return. (Ex. 1, Ridley Depo. 279: 13-24; 280:1-14).

- On June 16, 2021, Ridley signed a ChemTreat document certifying that he would not take any Nalco/Ecolab information with him to ChemTreat. Defendants knew this document was false at its inception because Ridley had already sent the Nalco business plan document to ChemTreat in March 2021. (Ex. 1, Ridley Depo. 379:9-24, 380:1-24; Ridley Depo. Exs. 43, 44, 52).

- On June 18, 2021, ChemTreat made Ridley a formal job offer, which he immediately accepted. (Ex. 7, CHEMR-00000625-CHEMR00000626).

- On June 21, 2021, Ridley misappropriated his Ecolab Outlook Contacts which he later downloaded to ChemTreat's computer system. (Ex. 1, Ridley Depo. 266:2-6; 268:21-24; 269:1-9; Ex. 6, Lieb Report at ¶ 26).

- Ridley resigned from Ecolab on July 1, 2021 and began working for ChemTreat the following day, July 2, 2021. (Ex. 1, Ridley Depo. 279:13-18, 280-281; 434:7-8; Ex. 8, RIDLEY000271).

**D. Ridley Joins ChemTreat And Retains Thousands Of Plaintiffs' Confidential And Trade Secret Files, Including Complete Backups Of His Nalco Computer, And Uses His ChemTreat Computer To Access Plaintiffs' Documents.**

Ridley downloaded an enormous volume of Nalco/Ecolab confidential information to various USB devices. (Ex. 6, Lieb Report at 4-17). As discussed below, Ridley did not return the confidential information that he downloaded onto these USB devices. Instead, he took these USB devices with him to ChemTreat, maintained possession and control of Plaintiffs' confidential information stored on these devices, and repeatedly accessed that information while he was employed by ChemTreat. The USB devices at issue included a 1TB external Western Digital drive (the "WD Drive") which he used without authorization to back up Plaintiffs' files. (Ex. 1, Ridley Depo. 58:12-24; 59:1-2; 80:1-24; 81:1-11.) Ridley's download of Plaintiffs' files to his WD Drive was a breach of paragraph 4 of his employment agreement prohibiting him from transferring files to devices not provided by the Company. (Ex. 1, Ridley Depo., Ex. 77 at ¶ 4). Ridley took all these files with him to ChemTreat and admittedly accessed them with his ChemTreat-assigned laptop. (Ridley Depo. 96:14-22; 97: 4-18; 120:17-24; 326:3-23).

Ridley also kept three Nalco flash drives. (Ex. 6, Lieb Report at 7-8.). One had a full copy of his Nalco/Ecolab contacts, as well as other files (*id.* at 7, 9), which he entered into ChemTreat's computer system. (Ex. 1, Ridley Depo. 266:2-6; 268:21-24; 269:1-9; Ex. 6, Lieb Report at 7-9.) Ridley claims he failed to return this information because he "forgot." (Ex. 1, Ridley Depo. 384:5-10).

In addition, as Ridley belatedly conceded on April 17, 2023, he saved no less than five to ten full backups of his Nalco computer to his WD Drive through 2017-18, and thereafter continued with "partial" backups to the WD Drive through 2020. (Ex. 1, Ridley Depo. 78:4-92:11). Ridley's sworn admission that he continued backing up and saving Nalco documents to his WD Drive through 2020 clearly shows that he lied in his sworn interrogatory responses in which he stated that he stopped backing up files to his WD Drive "sometime in 2015 or 2016" – a half decade before he joined

ChemTreat. (Ex. 9, Ridley's Answer to First Set of Interrogatories, Request No. 2. As this Court has already noted, although it "appears that when [Ridley] did realize [that he continued making] the 2020 backups to the WD Drive, **Ridley did not notify Plaintiffs or correct/supplement his prior interrogatory response representing that the backups stopped in 2015/16."** (Order May 5, 2023, D.E. 246, p. 15) (emphasis added). The Court has recognized that Defendants' "spoliation of evidence has the potential to be a significant issue in the next phases of this case, and it appears **the WD Drive may be germane to spoliation issues**." Id. at p. 13 (emphasis added). The Court made this salient observation before Ridley's wiping of his WD Drive came to light. Ridley never returned the WD Drive or Plaintiffs' information which he backed up to that drive. Instead, he took the WD Drive with him to ChemTreat, and used his ChemTreat-issued laptop to access Plaintiffs' files on the WD Drive on a minimum of four occasions (twice in August of 2021; September of 2021; and January of 2022). (Ex. 1, Ridley Depo., 56:21-58:7; 61:6-17).

As the Court is aware, ChemTreat wiped that same laptop which Ridley used to connect to his WD Drive and access the full or partial backups of his Nalco computer. ChemTreat issued that laptop, which it later wiped, to Ridley on July 9, 2021. (Ex. 10, Vaughn Report at 36-37; Ex. 11, CHEMR-000001530-1536). According to ChemTreat's CrowdStrike report, an Amazon Basics flash drive was used on the computer shortly after it was assigned (Ex. 12, Vaughn Depo. Ex. 121). (Ex. 13, Mumpower Depo. 37:15-25; 38:1-2; 41:1-21). Defendants have not produced the flash drive in discovery and it remains unaccounted for. Thus, ChemTreat either spoliated that Amazon Basics flash drive or wrongfully withheld it from Plaintiffs.

**E.    Ridley Spoliated Evidence Present On His WD Drive By Using A Wiping Program Five Days After Receiving Plaintiffs' February 9, 2021 Preservation Letter.**

Plaintiffs just recently learned that Ridley used wiping software on his WD Drive ***five days***

**_after he had received a preservation letter_**. (Ex. 14, Lieb Declaration[2] at ¶¶ 86-92.). Prior to wiping the WD drive, Ridley repeatedly used his ChemTreat computer to access that Drive. (Ex. 1, Ridley Depo. 61:1-24, 68:11-15, 110:7-24, 313-314, 389). All of Plaintiffs' information has been wiped from the WD drive. (Ex. 14, Lieb Declaration at ¶¶ 86-92). Accordingly, the following events are taken from the only available evidence: Ridley's sworn deposition testimony. Needless to say, Ridley's own admitted access of Plaintiffs' files (although still very troubling) is undoubtedly understated and incomplete.

In August 2021, Ridley plugged his WD Drive into his ChemTreat computer (Ex. 1, Ridley Depo. 61:1-24) and accessed Plaintiffs' documents. (Ex. 1, Ridley Depo. 313-314). He did it again later that same month. (Ex. 1, Ridley Depo. 68:11-15). He accessed Plaintiffs' documents stored on the WD Drive from ChemTreat's computer again in September 2021 (Ex. 1, Ridley Depo. 389, Ex. 66), during this session emailing a Nalco document to himself. (Ex. 1, Ridley 124:11-15; 391:1-24). He did it again in January 2022, accessing more of Plaintiffs' documents (Ex. 1, Ridley Depo. 110:7-24). Ridley did not return to Ecolab any of the documents that he accessed on his WD Drive twice in August of 2021, in September of 2021, or in January of 2022 despite his contractual obligations to do so. (Ex. 1, Ridley Depo., Ex. 77 at ¶ 11.).

Between August 2021 and January 2022, when Ridley accessed these documents on his ChemTreat computer Ridley claimed he only used the WD Drive. (Ex. 1, Ridley Depo. 75-76). But ChemTreat's CrowdStrike report establishes that at least two different USB drives were used during these sessions – "Volume 5" and "Volume 6." (Ex. 15, Lieb Rebuttal Report at ¶¶ 21-22, 42-43). Further, the CrowdStrike report shows that Ridley connected several additional USB devices to his ChemTreat computer, (Ex. 12, Vaughn Depo. 145:3-12), including flash drives, disk drives, hard

---

[2] Plaintiffs are attaching the Declaration of Laurence D. Lieb ("Lieb Declaration) without its exhibits. Those exhibits include documents containing Plaintiffs' confidential and trade secret information and would have to be filed under seal. As the paragraphs of the Lieb Declaration cited by Plaintiffs herein do not refer to those exhibits, Plaintiffs did not include them in Exhibit 14.

drives, and an iPad. (Ex. 10, Vaughn Report at 12; Ex. 12, Vaughn Depo. 113:7-25, 114:1-19, 145:3-12, 148:25, 149:1-12, Ex. 121). Only one flash drive and the WD Drive have been accounted for. (Ex. 15, Lieb Rebuttal Report at ¶¶ 21-26).

### F. Ridley Used His ChemTreat Computer To Access An Ecolab Document On A Web-Based Account.

Ridley also used his ChemTreat computer to access a confidential Ecolab document on a web-based Microsoft account relating to Plaintiffs' client, Arnold's Air Force Base. (Ex. 6, Lieb Report at 12-13). Ridley then immediately opened a folder on his ChemTreat OneDrive account *__also__* entitled: "Arnold's Air Force Base." (*Id.*). Thus, Ridley had the same customer folders on his ChemTreat OneDrive account that he had on his Ecolab OneDrive account, before he <u>deleted</u> it.

### G. Ridley Deleted Documents He Was Obligated To Preserve.

Just hours after receiving Plaintiffs' February 9, 2022 preservation letter, Ridley deleted his Nalco/Ecolab contacts file from a Nalco flash drive. (Ex. 16, Feb. 9, 2022 Letter to Ridley, Ex. 17, Feb. 9, 2022 Letter to ChemTreat); (Ex. 6, Lieb Report, p. 8-9). He also created a folder on one of those drives called "Files from Ridley **Personal Computer**." (Ex. 6, Lieb Report, p. 8). Yet, Ridley falsely testified that he only used company issued computers because he did not have a personal computer. (Ex. 1, Ridley Depo 353:10-24, 354:1-24, 355:1).

Also, on February 9, 2022, just hours after receiving Plaintiffs' preservation letter, Ridley used his ChemTreat laptop to access a folder called "Nalco." (Ex. 14, Lieb Declaration at ¶ 39). Ridley accessed this "Nalco" folder several times at 2:11PM; 2:12PM; 2:13PM; 2:14PM; 2:15PM; 2:16PM; 7:33PM; and 9:28PM. (Ex. 14, Lieb Declaration at ¶ 40). This suggests additional deletion activity. Further, this "Nalco" folder was likely on his ChemTreat laptop or a One Drive account (this folder was not on the WD Drive). (Ex. 14, Lieb Declaration at ¶ 41). The fact that Ridley had a folder called "Nalco" on his ChemTreat computer or OneDrive account suggests he was actively using Nalco documents while he was working for ChemTreat.

### H. ChemTreat Wiped Ridley's Work Laptop Spoliating Key Inculpatory Evidence.

On March 2, 2022, nearly a month after receiving the data preservation letter, ChemTreat instructed Ridley to send his ChemTreat-issued computer to its headquarters rather than to its computer forensic expert. (Ex. 1, Ridley Depo. 407:2-20; 408: 23-24; 409:1-7; Ex. 10, Vaughn Report at 7-8). As delivered, the laptop was packaged in the same manner as all other laptops routinely returned to ChemTreat's headquarters for processing, without any indication that the files on its hard drive were to be preserved. (Ex. 18, James Dep. 19:16-24, 21:14-25; Ex. 1, Ridley Depo. 407:2-18). When the computer reached ChemTreat's IT department, ChemTreat's Pete Mumpower ("Mumpower") wiped the laptop. (Ex. 13, Mumpower Dep. 16:4-12, 24:6-10). Despite having received Plaintiffs' preservation letter on Feb. 9, 2022 (which clearly put ChemTreat on notice of it duty to preserve evidence), ChemTreat elected not to issue a litigation hold. The failure to take this simple step virtually guaranteed the spoliation of Ridley's computer. In fact, even when ChemTreat's IT department received and wiped Ridley's laptop a month later in March of 2022, ChemTreat had intentionally not issued litigation hold instructions. (Ex. 13, Mumpower Dep. 24: 5-14; 28:10-16). Mumpower testified that if there had been a litigation hold, he would have been notified and would not have wiped Ridley's computer. (Ex. 13, Mumpower Dep. 28:10-16).

### I. ChemTreat Terminated Ridley After First Wiping His Computer.

On March 18, 2022 ChemTreat terminated Ridley purportedly for sending a single Nalco/Ecolab document from his personal email account to his ChemTreat e-mail account on September 29, 2021, in violation of his certification agreement with ChemTreat. (Ex. 19, March 21, 2022 Letter from V. Mirmira; Ex. 20, Alcorn Depo. 121:1-24, 122:1-18). ChemTreat never disciplined Ridley for using his ChemTreat computer to access Plaintiffs' documents on his WD Drive, even though ChemTreat's own CrowdStrike report showed that he had.

On March 21, 2022, ChemTreat informed Plaintiffs that it had purportedly terminated Ridley over a single Nalco/Ecolab document: "Last week, ChemTreat's investigation revealed that Mr.

Ridley sent a Nalco document (a September 2015 response to a request for quotation) from his personal email account (aridley75@hotmail.com) to his ChemTreat email account. This is the only Ecolab or Nalco document located during the course of ChemTreat's investigation." (Ex. 19, March 21, 2022 Letter from V. Mirmira).

Four days later, ChemTreat finally informed Plaintiffs that it had wiped Ridley's laptop, rendering everything on it unrecoverable. (Ex. 21, March 25, 2022 E-mail from V. Mirmira, Esq. to D. Walton, Esq.). ChemTreat concealed that it had not issued a litigation hold notice to its own IT department and thereafter refused to produce a forensic image of the laptop's hard drive. (ECF No. 193; ECF No. 223, p. 13).

## II.    LEGAL STANDARD FOR SPOLIATION SANCTIONS

Spoliation is the destruction or material alteration of evidence or the failure to preserve evidence once a duty to preserve attaches. *Ross v. Am. Red Cross*, 567 F. App'x 296, 301-02 (6th Cir. 2014). A district court has "broad discretion" to impose sanctions for spoliation. *Adkins v. Wolever (Adkins II)*, 554 F.3d 650, 653 (6th Cir. 2009) (en banc). Federal Rule of Civil Procedure 37(e) governs the effect of a party's failure to preserve ESI, providing:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment. Fed. R. Civ. P. 37(e).

As a threshold matter, Rule 37(e) requires a showing that: (1) the electronically stored information ("ESI") was lost in "anticipation or conduct of litigation," such that the party had a duty to preserve it; (2) the ESI was lost after the party "failed to take reasonable steps to preserve it"; and (3) the lost

ESI cannot be restored or replaced through additional discovery. "A party has a duty to preserve all evidence that it knows or should know is relevant to any present or future litigation, and a party must not destroy unique, relevant evidence that might be useful to an adversary." *Clark Constr. Grp. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005); *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). Once the threshold elements under Rule 37(e) have been established, a "district court has wide discretion in determining an appropriate sanction under Rule 37." *Gott v. Neuman & Esser USA, Inc.*, No. 19-cv-4, 2019 WL 6121118, at *5 (E.D. Tenn. Nov. 1, 2019).

## III.     ARGUMENT

### A.     First Rule 37(e) Factor: Defendants Had A Duty To Preserve Based On The February 2022 Preservation Letters.

A party has a duty to preserve evidence, including ESI, "when that party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). A cease-and-desist letter triggers the obligation to preserve. *See Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 753 (M.D. Tenn. 2021). Here, on February 9, 2022, Plaintiffs sent both Defendants a letter notifying them of their duty to safeguard the contents of Ridley's computer and ChemTreat's ESI obligations. (Ex. 16, February 9, 2022 Letter to Ridley; Ex. 17, February 9, 2022 Letter to ChemTreat). Defendants' failures to preserve and spoliation occurred after this date. In fact, as discussed, *infra,* Defendants' spoliation of devices was triggered by and in response to the preservation demand notice. Thus, the first prong for a finding of spoliation is satisfied.

### B.     Second Rule 37(e) Factor: Defendants Failed To Take Reasonable Steps To Preserve Relevant Data Sources.

The second Rule 37(e) factor is the spoliating party's failure to take "reasonable steps to preserve" the lost evidence. Once the duty to preserve attaches, the party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Forest Labs, Inc. v. Caraco Pharm. Labs, Ltd.*, No. 06-CV-13143, 2009 WL

998402, at *3 (E.D. Mich. Apr. 14, 2009) *see, e.g., Franklin v. Shelby Cnty. Bd. of Educ.*, No. 20-cv-02812, 2021 WL 6066673, at *5 (W.D. Tenn. Sept. 28, 2021) (Rule 37 "requires compliance with a litigation hold"). Neither Defendant took reasonable steps in this case.

### 1. ChemTreat Failed To Take Reasonable Steps To Preserve Ridley's ChemTreat-Assigned Computer.

ChemTreat did not instruct Ridley to provide his company laptop to its own forensic examiner where it would have been imaged and preserved. Instead, Ridley was instructed to send his computer to ChemTreat as if it were a routine matter, resulting in the computer going to IT for ordinary processing. (*See* Ex. 13, Mumpower Dep. 16:4-12). ChemTreat made no effort to contact anyone at IT about the computer's importance. (Ex. 13, Mumpower Dep. 24:5-14; Ex. 18, James Dep. 16-20). Instead, the computer was just passed along to IT for wiping and redeployment. (Ex. 13, Mumpower Depo. 16:1-10). ChemTreat did not instruct Ridley to provide any special notice that the computer should not be wiped. (Ex. 1, Ridley Depo. 407:2-18). ChemTreat did not alert its IT department that the computer should not be wiped and redeployed. And, perhaps most critically, ChemTreat intentionally did not issue a litigation hold despite being put on notice of its duty to preserve. (Ex. 13, Mumpower Depo. 24:6-14). Indeed, the IT employee who handled Ridley's computer (Mumpower) said he would have never wiped Ridley's computer if a litigation hold had been issued. (Ex. 13, Mumpower Depo. 27:16-25, 28:1-9). Obviously, ChemTreat did not take reasonable steps to preserve Ridley's laptop. (*See* Ex. 13, Mumpower Depo. 16:1-10; 24:6-14; Ex. 1, Ridley Depo. 7:2-18).

### 2. Ridley Intentionally Destroyed And Spoliated Critical Evidence On The WD Drive, USB Flash Drives And An Amazon Basics Drive.

Ridley received Plaintiffs' preservation letter on February 9, 2021. (Ex. 16, February 9, 2022 Letter to Ridley). Four days, later, he used an unknown computer to intentionally wipe all of Plaintiffs' information from the WD Drive. (Ex. 14, Lieb Declaration at ¶¶ 86-92 ). Ridley did this using a wiping program called C-cleaner. (*Id.*). Now, Plaintiffs are substantially prejudiced as they are unable to fully test the assertions made by Ridley in his deposition regarding his access and use

of Plaintiffs' documents on the WD Drive. Ridley also failed to preserve evidence on Nalco USB drives. Ridley deleted information on February 9, 2022, the same day that he received the preservation letter. (Ex. 6, Lieb Report at ¶¶ 35-38). While certain of this information was recovered, Plaintiffs' contact list was not able to be recovered and was entered into ChemTreat's computer network. (Ex. 1, Ridley Depo. 268:13-24, 269:1-5; Ex. 6, Lieb Report at ¶ 39).

Similarly, Ridley's receipt of the preservation letter prompted him to delete files from two Nalco USB drives which he did not return upon his separation from employment. (Ex. 6, Lieb Report at ¶¶ 35-38). In addition, ChemTreat's CrowdStrike report shows that an Amazon Basics flash drive was also connected to Ridley's wiped computer. (Ex. 12, Vaughn Depo. Ex. 121). (Ex. 13, Mumpower Depo. 37:15-25; 38:1-2; 41:1-21). Defendants claim not to have used any such drive – demonstrating that they either spoliated it or have concealed it. (Ex. 6, Lieb Report at 12).

### C.     Third Rule 37(e) Factor: None Of The Spoliated Data Sources Can Be Restored Or Replaced Through Additional Discovery.

It is not a matter of dispute that ChemTreat's laptop assigned to Ridley and Ridley's WD Drive have both been forensically wiped, rendering their contents totally unrecoverable. (*See* Ex. 10, Vaughn Report at p. 11).

### D.     Plaintiffs Are Entitled To Rule 37(e)(2) Sanctions Because Defendants' Intended To Deprive Plaintiffs Of Evidence.

As an initial matter, Ridley intended to wipe the WD Drive and USB Drives. Accordingly, there is no explanation for him to have wiped this information other than to hide his wrongdoing. ChemTreat alleges that it "accidentally" wiped the laptop it assigned to Ridley. However, ChemTreat's actions in this case evidence that its explanation is not credible.

The Court "may infer an intent to deprive from defendants' actions in this matter." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019); *Moody v. CSX Transportation, Inc.*, 271 F.Supp.3d 410, 431 (W.D.N.Y. 2017) ("While knowing they had a duty to preserve the

event recorder data, defendants allowed the original data on the event recorder to be overwritten and destroyed or recycled Lewandowski's laptop...") (quoted in *Culhane*, 364 F. Supp. 3d at 774).

Courts look to the following factors when assessing the intent-to-deprive standard:

• the timing of the destruction;
• whether the spoliating party selectively preserved relevant ESI;
• whether the destruction was consistent with a party's document retention policy;
• the method of deletion;
• the spoliating party's technological sophistication; and
• the spoliating party's conduct in connection with litigating the spoliation dispute.

*Bistrian v. Levi*, 448 F. Supp. 3d 454, 474-76 (E.D. Pa. 2020); *Blazer v. Gall*, No. 16-CV-01046, 2019 WL 3494785, at *3 (D.S.D. Aug. 1, 2019); *see also Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017). Each of these factors are met with respect to the spoliated devices in this case (ChemTreat laptop, WD Drive).

### 1.    The timing of spoliation shows intent to deprive.

The day Ridley received Plaintiffs' document preservation letter he deleted files from two Nalco USB drives. (Ex. 6, Lieb Report at ¶¶ 35-38.). Ridley then intentionally wiped Plaintiffs' data from the WD Drive just five days later. (Ex. 14, Lieb Declaration at ¶¶ 85-87, 91). ChemTreat wiped the laptop it assigned to Ridley several weeks after receiving its preservation letter. (Ex. 10, Vaughn Report at 11). Thus, the timing of spoliation clearly evidences an intent to deprive.

### 2.    Defendants' selective preservation shows an intent to deprive.

Ridley permanently deleted all of Plaintiffs' information from the WD Drive but not his personal information.

Defendants failed to preserve the Amazon Basics USB drive. This was one of the first devices attached to Ridley's ChemTreat computer. (Ex. 6, Lieb Report at 12).  Both disavow its existence. Yet, ChemTreat's own CrowdStrike report shows an Amazon Basic USB drive was used on Ridley's ChemTreat computer soon after he received it. (*Id*.).

Defendants failed to preserve several USB drives that Ridley attached to his (now wiped) ChemTreat computer. (Ex. 6, Lieb Report at ¶¶ 21-26). These drives remain unaccounted for.

Ridley failed to preserve his iPad that he connected to his ChemTreat computer. (Ex. 12, Vaughn Depo. 145:3-12). Ridley has not produced any information from his iPad nor preserved it.

### 3. The destruction was inconsistent with ChemTreat's document retention policy.

ChemTreat failed to initiate a litigation hold for its IT department per Company policy and as discussed above (*supra* Section I.I) – if it had the laptop would have been preserved.

### 4. The method of spoliation shows an intent to deprive.

Rule 37 "requires compliance with a litigation hold, and for counsel to begin 'monitoring the party's efforts to retain and produce the relevant [ESI].'" *Franklin*, 2021 WL 6066673, at *5. Here, ChemTreat failed to institute a litigation hold and clearly did not "ensure the preservation of relevant documents." *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, No. 16-CV-00024, at *12 (W.D. Ky. July 18, 2022). Despite knowing what devices were at issue, ChemTreat took no reasonable steps to ensure relevant evidence was preserved. *See Blazer,* 2019 WL 3494785, at *3 (awarding spoliation sanctions where defendant did not prevent automatic deletion of relevant audio and video recordings despite receiving "warnings indicating future litigation" and a preservation request). Indeed, ChemTreat should not have only preserved its laptop assigned to Ridley, but also the WD Drive which its laptop accessed during Ridley's employment with ChemTreat. Defendant's fundamental failures support an intent to deprive. Moreover, Ridley intentionally deleted evidence from the WD Drive and USB Drives.

### 5. Defendants' technological sophistication points to an intent to deprive.

The Court also looks to Defendants' technological sophistication in determining whether there was an intent to deprive. *See Bistrian*, 448 F. Supp. 3d at 474-75 (citing to Fed. R. Civ. P. 37 Comm. Notes). Defendants' lawyers, Williams & Connolly, boasts at length on its website about its ESI sophistication.[3]

---

[3] *See* Williams & Connolly, LLP, eDiscovery Strategy, https://www.wc.com/Practices/eDiscovery-Strategy (updated March 23, 2023).

Ridley used numerous USB drives throughout his employment at both Ecolab and ChemTreat. He knew how to wipe his Ecolab iPhone before he sold it. (Ex. 1, Ridley Dep. 130:22-24, 131:1-14). He used a scrubbing program to permanently delete evidence from the WD Drive. (Ex. 14, Lieb Declaration at ¶¶86-92). He had a personal Live.com account and knew how to view the Nalco documents on it by using his ChemTreat computer. (Ex. 15, Lieb Rebuttal Report at ¶ 46). And he knew how to use a defragmentation utility within Microsoft Windows. (Ex. 1, Ridley Depo. 101:12-24, 102:1-11).

### 6. ChemTreat and Ridley's deceptive and deficient discovery conduct, and misrepresentations to the Court support a finding of intent to deprive.

"Since intent is rarely proved by direct evidence, the court has 'substantial leeway' to determine intent through consideration of circumstantial evidence, witness credibility, motives of witnesses, and other factors. Prejudice need not be shown because it is inferred through the court's finding of intent." *Jones v. Hirschbach Motor Lines, Inc.*, No. 21-CV-01004, 2022 WL 4354856, at *1 (D.S.D. Sept. 20, 2022). Courts also look to the spoliating party's conduct in connection with litigating the spoliation dispute and whether there has been an intent to deprive a party of evidence. *Bistrian*, 448 F. Supp. 3d at 474-76; *Blazer v. Gall*, 2019 WL 3494785, at *3 (D.S.D. Aug. 1, 2019).

### a.) Defendants' discovery conduct establishes an intent to deprive.

After ChemTreat spoliated the laptop, rather than owning up to it and providing the laptop to Plaintiffs' expert so he could attempt to recover data, ChemTreat refused to provide an image of the laptop. On March 23, 2022, two days after learning of Ridley's termination, Plaintiffs requested an independent forensic examination of Ridley's ChemTreat-assigned computer. (Ex. 22, March 23, 2022 E-mail from D. Walton, Esq, to V. Mirmira, Esq.). ChemTreat refused to produce the laptop to Plaintiffs' expert to conduct his own inspection and determine if he could recover the data and confirm the history of the spoliation. This resulted in Plaintiffs' having to file a motion to compel. (See ECF Nos. 193, 194). There is absolutely no reasonable explanation for ChemTreat's refusal other than it intended to deprive Plaintiffs of relevant evidence.

The same holds true for Ridley who refused to produce the WD Drive even though he admittedly had downloaded thousands of Plaintiffs' documents to the WD Drive and despite having a contractual duty to do so in his employment agreement which provided:

> "The Employee agrees that in any proceedings alleging breach of this Agreement, each party shall have the right to engage in deposition… and the Company will have the right to conduct forensic examination(s) of any computers and/or electronic devices in the Employee's possession or control, if the Company reasonably believes such devices contain Company Confidential Information and/or inventions." (Ex. 1, Ridley Depo., Ex. 77 at ¶ 12 ).

During discovery, Plaintiffs requested Ridley produce the relevant WD Drive, even reminding him of his contractual obligations to do so, but Ridley refused. This required Plaintiffs to submit a Rule 34 Request for Inspection. Ridley objected and Plaintiffs had to file a motion to compel. (ECF No. 224). The Court granted Plaintiffs' motion and ordered the parties to negotiate a protocol for review. (ECF No. 246). During negotiations over the protocol, Ridley initially refused to allow Plaintiffs to search for forensic artifacts like wiping programs. Now we know why. Plaintiffs' review of the WD Drive shows that Ridley used a wiping program called "C-cleaner" to wipe all of Plaintiffs' information from it just five days after receiving Plaintiffs' preservation letter. (Ex. 14, Lieb Declaration at ¶¶ 86-92).

ChemTreat's alleged "comprehensive" investigation into the misappropriation from the beginning and alleged attempts to respond to discovery was designed to appear broad, but to avoid finding anything. In reality, ChemTreat did not search all its "systems" as it alleged but only a small subset. (Ex. 10, Vaughn Report at 17). ChemTreat unilaterally hand-picked twelve ChemTreat employees ("custodians") and searched their emails and OneDrive accounts – which they designated as "ChemTreat's Systems" – but not their laptop computers which could have been easily searched. (Ex. 10, Vaughn Report at 7, 17). Claiming not to have found any Ecolab files among the emails or OneDrive accounts, Vaughn opined there was no Ecolab information in "ChemTreat's Systems" as Vaughn narrowly defined them. (Ex. 10, Vaughn Report at 7-8, 17), is problematic because ChemTreat's own employees testified that employees typically save information to their laptops

rather than the company OneDrive. (*See* Ex. 23, Leavell Depo. at 205:14-22, 206:1-5; Ex. 4, Cissell Depo. at 159:8-24, 160:1-6).

Further, when searching the purported "ChemTreat Systems" (as he defined them) Vaughn used exact file names for his search so that he would discover Plaintiffs' files only if they were saved with those exact file names. (Ex. 12, Vaughn Depo. 58:1-25; 59:1-20). The slightest alteration of file names would avoid detection. (Ex. 12, Vaughn Depo. 58:1-25; 59:1-20).

Vaughn also claims he searched the metadata in "ChemTreat's Systems." (Ex. 10, Vaughn Report at 25). But he failed to use basic search terms like "Nalco" and "Ecolab" (Ex. 10, Vaughn Report at 19-20). Accordingly, he failed to find the Nalco business plan which Ridley <u>undisputedly</u> sent to ChemTreat in March 2021, which had "Nalco" in its metadata and was sitting in ChemTreat's email account begging to be discovered. (Ex. 10, Vaughn Report at 12-24; Ex. 12, Vaughn Depo. 173:15-25; 174:1-3).

Moreover, Defendants failed to disclose in discovery that Ridley had the WD Drive with multiple backups of his Nalco/Ecolab files; which he repeatedly accessed via his ChemTreat computer; and several other external drives, including his iPad and other devices still unaccounted for. (*See* Ex. 6, Lieb Report; Ex. 10, Vaughn Report; Ex. 1, Ridley Depo. 94-99, 102:7-24).

ChemTreat's investigation found that Ridley had accessed several more Nalco documents on his ChemTreat computer. (Ex. 10, Vaughn Report at 12-13). Yet, instead of disclosing that information, ChemTreat hid it and continued to represent to Plaintiffs and this Court that it found Ridley had accessed ***only one*** Ecolab file at ChemTreat. (ECF No. 52, p.6-7; Ex. 18, March 21, 2022 Letter from V. Mirmira, Esq. to D. Walton, Esq.). ChemTreat knew Ridley had attached several USB devices (and his iPad) to his ChemTreat computer (Ex. 10, Vaughn Report at 9-12), but never disclosed these facts prior to the Vaughn Report on February 21, 2023.

**b.)** <u>Defendants' numerous and ongoing misrepresentations to the Court establish an intent to deprive.</u>

On April 12, 2023, in responding to Plaintiffs' Second Motion to Compel, ChemTreat **finally** acknowledged their misleading statements to the Court stating:

> Perhaps, somewhere amongst the innumerable statements ChemTreat and its counsel have made in the course of this litigation, there has been some unintentional **<u>lack of clarity</u>**. (ECF No. 211 at 7) (Emphasis added).

ChemTreat's attempt to paint Defendants' course of conduct as an inadvertent "lack of clarity" falls flat. Defendants' misrepresentations throughout this case are overwhelming. Ridley early on in an effort to dismiss Plaintiffs' Complaint stated:

> Ecolab and Nalco did not believe that Ridley had returned all the files in his possession so they eventually filed suit against Ridley and ChemTreat (ECF No. 34, p. 22).

Ridley was asking the Court to believe him and that he had returned all of Plaintiffs' files– which he had not done. Ridley then doubled down on his blatant misrepresentation, stating as part of his Answer and Counterclaim:

> "Nalco and Ecolab did not believe ChemTreat, nor did they believe that Ridley had returned all the files in his possession, so they eventually filed suit against Ridley and ChemTreat." (ECF No. 34, pg. 2).

We now know that Ridley's statements imploring the Court to believe that he had returned all Plaintiffs' files were false. It is undisputed that Ridley left Plaintiffs' employment with thousands of files which he later accessed at ChemTreat.

Ridley also signed Interrogatory responses that were plainly not truthful. In response to Interrogatory No. 2: "State whether you have had (or currently have) access to any Ecolab trade secrets, Confidential Information, or proprietary information since the end of your employment with Ecolab," Ridley attested:

> "… Mr. Ridley believes he backed up the files sometime in 2015 and 2016. Ridley located those files after he left Ecolab in July 2021 and deleted the files." (Ex. 9, Ridley's Answers to First Interrogatory No. 2.)

Ridley, at his deposition, provided a much different response testifying that he also backed up his Nalco computer in 2018 and possibly 2019. (Ex. 1, Ridley Depo. 87:1-12; 89: 1-12; 91:1-24; 92:1-3). He further testified that in 2020 he copied and downloaded other Nalco files to the WD drive. (*Id.* at 87:5-12, 89:8-24; 90:1-15.) Ridley lied yet again in this regard in responding to Request for Admission No. 38:

> 38. After You commenced employment with ChemTreat, You used a ChemTreat Device to access Ecolab Documents or files.
>
> RESPONSE: ADMITTED – By way of further response and clarification, after Ridley's resignation from EcoLab, he located EcoLab files on a personal external hard drive that he used to back up his Nalco Water laptop prior to the company providing the LaCie hard drive or having a cloud-based file storage system. After Ridley learned that he still had those old files, he deleted them from the external hard drive. Ridley used his ChemTreat laptop to delete the files from his personal external hard drive. (emphasis added.) (Ex. 24, Ridley's Response to Request for Admission No. 8.)

However, Plaintiffs provided the Lacie Drive and adopted a cloud-based storage system long before Ridley admittedly downloaded Plaintiffs' information to his personal WD Drive in 2018, 2019, and 2020. (Ex. 25, Garza Depo. 18:6-8, 20:21-24, 21:1-5). But Ridley's lies do not end there. Ridley's statements, made under the penalty of perjury, that he only accessed files on the WD Drive in August, September and January using his ChemTreat computer and "deleted them" prior to the February 9, 2022 preservation letter are demonstrably false:

- First, the C-Cleaner was used to delete Plaintiffs' information on February 14, 2022 (Ex. 14, Lieb Declaration at ¶ 86-92).

- Second, ChemTreat's expert report states that the CrowdStrike report shows all human interactions with Ridley's laptop. (Ex. 10, Vaughn Report at 35). But the CrowdStrike report does not show any deletions even though Ridley testified that he used his ChemTreat laptop to repeatedly delete Plaintiffs' documents from the WD Drive (August and September 2021 and January 2022. ). (Ex. 1, Ridley Depo., 56:21-58:7; 61:6-17); (Ex. 10, Vaughn Report).

Accordingly, Ridley is lying about having deleted Plaintiffs' files when he admittedly accessed them on at least four prior occasions as an employee of ChemTreat.

Ridley's discovery responses were false, he knew it, and lead to the conclusion that he intentionally provided false and incomplete responses to deceive the Court and deprive Plaintiffs of evidence.[4]

ChemTreat also repeatedly provided false information in order to hide or try to justify Ridley's misappropriation:

- ChemTreat claimed Ridley downloaded the files to the LaCie Drive as a backup. (ECF No. 52-2).
  - Ridley admitted at his deposition this was false. (Ex. 1, Ridley Depo. 75:15-24; 76:1-12; 79:1-17; 82:12-24).

- ChemTreat claimed Ridley downloaded the files to the LaCie Drive because his Ecolab OneDrive account was "cluttered."
  - Ridley admitted this was false. (Ex. 1, Ridley Depo. 75:15-24; 76:1-12; 79:1-17; 82:12-24).

- ChemTreat claimed Ridley had a personal, external drive that he deleted documents from "around the Holidays." (ECF No. 52-2).
  - This was false. (Ex. 14, Lieb Declaration at ¶¶ 14).

- When ChemTreat notified Plaintiffs of Ridley's termination, it claimed Ridley had accessed only one document on his ChemTreat computer from his email. (Ex. 19, Letter to D. Walton March 21, 2022).
  - This was false: Ridley had accessed numerous Nalco files as he had connected several USB devices, and his iPad, to his ChemTreat computer; and had accessed at least one other Nalco document from a personal Live.com account. (Ex. 15, Lieb Rebuttal Report at ¶¶ 42-48).

ChemTreat's pleadings and discovery responses also made false and misleading statements about its "comprehensive investigation" that revealed that Ridley had only accessed "one" Nalco document. These representations were made by ChemTreat to this Court in two Motions to Dismiss, Answer and Counterclaim, Defendants' Motion for Reconsideration of a Discovery Order, and in its

---

[4] In Interrogatory response No. 2, Ridley claimed he found these Nalco flash drives **_after_** Plaintiffs filed this lawsuit. (Ex. 9, Ridley Answers to Plaintiffs' First Interrogatories, No. 2). Ridley is caught in yet another lie because at deposition he testified that he retrieved these flash drives and opened them the same day he received the February 9 letter. (Ridley Depo. 345:1-24; 346:1-24; 347:1-9). The lawsuit was filed on March 3, 2022. (ECF No. 1). Thus, contrary to Ridley's Interrogatory response, he accessed the flash drives **_before_** this lawsuit was filed.

appeal of a discovery ruling. (ECF No. 36, pp. 6-9; ECF No. 52, pp. 6-7; ECF No. 78, pp. 62-63; ECF No. 152, pp. 4-5). Defendants' material misrepresentations include but are not limited to:

- Although, in the interim, ChemTreat had terminated Ridley's employment and confirmed to Plaintiffs that <u>only a single Nalco document had been located</u> during ChemTreat's investigation… (ECF No. 36, pg. 9).

- ChemTreat retained an "experienced forensic examiner, to ensure that [Plaintiffs'] documents are not on ChemTreat's systems,…" (ECF No. 52, pg. 10). ChemTreat thereafter notified Plaintiffs that its investigation had identified a "single Nalco document"… (ECF No. 52, pg. 11).

- Instead, the March 21, 2022 letter from ChemTreat's counsel simply provided the factual result of the investigation into Plaintiffs' allegations: "ChemTreat's investigation revealed that Mr. Ridley sent a Nalco document (a September 2015 response to a request for quotation) from his personal email account (aridley75@hotmail.com) to his ChemTreat email account. (Ex. 19, Letter to D. Walton March 21, 2022). <u>This is the only Ecolab or Nalco document located during the course of ChemTreat's investigation…</u> (ECF No. 152, pg. 6, see also ECF No. 52, pg. 11; ECF No. 78, p. 62).

- Despite ChemTreat's cooperation with Plaintiffs, <u>its candid explanation of the facts as understood by ChemTreat</u> during the course of its ongoing investigation, the extensive information ChemTreat provided to Plaintiffs without any obligation to do so, and its prompt actions to address Plaintiffs' concerns – all of which provided concrete evidence supporting ChemTreat's repeated statements to Plaintiffs that Plaintiffs' allegations against ChemTreat lacked a good faith basis in fact and law – in April 2022, Plaintiffs sued ChemTreat for misappropriation of trade secrets under. (ECF No. 78, pg. 63).

As an initial matter, ChemTreat outrageously did not even interview Ridley as part of its "comprehensive investigation." Nor did it interview any of the people that he worked with at ChemTreat. Rather, ChemTreat's investigation was limited to a demonstrably deficient computer forensic review. Any investigation that did not include interviewing the misappropriator (Ridley) and the employees he worked with is anything but comprehensive. Indeed, it is per se deficient.

Defendants' misrepresentations to this Court, and failure to provide truthful information in discovery responses or in correspondence for well over one year-demonstrates the Defendants' intent to hide evidence, mislead the Court, and obtain a litigation advantage. This is discussed in detail in Section 10, *supra*. However, by way of just another example, ChemTreat claimed at the February 3,

2023 hearing that it had "provided the factual non-privileged information regarding those investigations in our interrogatory responses." (Ex. 26, Feb. 3, 2023, Hearing Tr. 50: 5-13). This statement to the Court was not true. ChemTreat did not provide any information in its interrogatory responses related to Vaughn's discovery in **early 2022** that Ridley had **accessed** Nalco/Ecolab documents from his ChemTreat computer. (Ex. 10, Vaughn Report). The Vaughn Report now confirms ChemTreat learned that Ridley accessed Ecolab/Nalco documents from two USB drives during its February 2022 investigation. (Ex. 10, Vaughn Report).

**E.     Defendants' spoliation coupled with discovery abuses and misrepresentations warrant sanctions pursuant to Rule 37(e)(2) including default and/or unfavorable presumption instructions.**

ChemTreat's wiping of Ridley's laptop and Ridley's wiping of the WD Drive constitute egregious cases of intentional spoliation. Courts routinely grant default judgment as a sanction in situations just like this one, where Defendants have acted egregiously in spoliating evidence and where their discovery misconduct causes the harm of the spoliation to multiply. Indeed, if Defendants had preserved the key pieces of evidence in this case and not have fought Plaintiffs tooth and nail over production of clearly relevant evidence, this case would have likely either been resolved or Plaintiffs would not have had to expend substantial time and financial resources to find evidence that does not exist because of Defendants' spoliation. It is in instances like this where sanctions are appropriate. See *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008). "[I]n cases like this one, where the obstruction prevented the other party from accessing evidence needed" to prosecute the case, default is the appropriate sanction).

In *Calsep, Inc. v. Intelligent Petroleum Software Solutions,* No. 19-CV-1118, 2021 WL 1729169 (S.D. Tex. Apr. 29, 2021), the court granted default judgment because the defendants filed false affidavits and manipulated and permanently deleted data. Default judgment was appropriate because "defendants have willfully and intentionally attempted to manipulate the judicial system and the court's numerous hearings on discovery have been met with delay tactics and deceit. A less drastic

sanction would not achieve the deterrent effect." *Id.* at *9 (quoting *Arya Risk Mgt. Sys., Pvt. Ltd. v. Dufossat Cap. P.R., LLC,* No. H-16-3595, 2019 WL 6840395, at *8 (S.D. Tex. Aug. 22, 2019)).

Similarly, in *HealthPlan Services, Inc. v. Dixit*, No. 18-CV-2608, 2020 WL 12048884 (M.D. Fla. July 29, 2020), the court found the defendant had blatantly disregarded the Court's discovery orders and deliberately made a laptop inaccessible to the plaintiff, with the result that the plaintiff could not prove the defendants misappropriated its trade secret information. *See id.* at *13 (noting that defendant's discovery strategy was to "provide deficient discovery responses and productions," which "has succeeded in depriving [plaintiff] of evidence"). The court ruled defendant's "discovery antics warrant[ed] the most severe sanction of default judgment." *Id.* at *12. Similarly, here, Ridley's false discovery responses and the Defendants' refusal to cooperate with Plaintiffs' Rule 34 requests have deprived Plaintiffs of discovery it is entitled. The court in *HealthPlan* found that the defendant's discovery violations and flagrant disregard for the judicial process warranted the entry of default.

A California district court granted default judgment in a trade secret case where the defendants destroyed emails and wiped laptops. *WeRide Corp. v. Huang*, No. 18-cv-07233, 2020 WL 196209 (N.D. Ca. Apr. 16, 2020). Defendant AllRide had failed to disable its automatic email deletion settings, repeatedly destroyed and recreated email accounts, and wiped the laptops of several key individuals after the complaint was filed. The court deemed this a "disturbing pattern of destroying discoverable material." *Id.* at *12. Defendants' conduct in this case is similarly disturbing.

Defendants have intentionally spoliated evidence, engaged in blatant discovery abuse and misrepresented facts to the Court. Defendants' spoliation of evidence and underhanded litigation tactics warrant default judgment under Rule 37(e)(2). There is no alternate remedy that would be as appropriate in light of Defendants' concerted conduct and deception.

Alternatively, under 37(e)(2) Plaintiffs ask the Court to instruct the jury that it *may presume* that the spoliated evidence would have been unfavorable to Defendants. *See, e.g., S.D. Wheat Growers Ass'n v. Chief Indus., Inc.*, 337 F. Supp. 3d 891, 914-15 (D.S.D. 2018) (upon receipt of

preservation letter, defendant should have sequestered the relevant documents so that "inadvertent elimination" and prejudice to plaintiff would not occur; as sanction, adverse inference instruction to be given "allowing the jury to draw an inference that the evidence destroyed would not support [defendant's] claim"); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746-47 (N.D. Ala. 2017) (ordering adverse inference jury instruction where Boeing's "unexplained, blatantly irresponsible behavior leads the court to conclude that Boeing acted with the intent to deprive [plaintiff] Pemco of the use of this information in connection with its claims against Boeing").

**F.        In the Alternative, Rule 37(e)(1) Sanctions Should Be Imposed.**

If the Court declines to grant the sanctions requested above, Plaintiffs request appropriate remedial measures under Rule 37(e)(1) aimed at remedying Defendants' misconduct in this case. Under Rule 37(e)(1), if the moving party was prejudiced from the loss of the information, the Court may order such measures as it believes appropriate to cure the prejudice. Here, the prejudice is obvious. The destroyed data on Ridley's computer, the spoliated USB drives, and the wiped WD Drive are all keystone sources of evidence that are now gone forever. Thus, if the Court declines to impose sanctions under Rule 37(e)(2), Plaintiffs respectfully request that the Court issue sanctions against both Defendants under Rule 37(e)(1) as outlined in Plaintiffs' Motion.

## IV.        CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court find that ChemTreat and Ridley caused the spoliation of ESI in violation of Rule 37(e)(2) with the intent to deprive Plaintiffs of the ESI, and enter default judgment or, in the alternative, to give the jury an adverse inference instruction. Absent entry of default, Plaintiffs ask the Court to also grant relief under Rule 37(e)(1) and order remedial measures as requested in Plaintiffs' Motion.

Dated this 17th day of June, 2023.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By:  /s/ David J. Walton
J. Gregory Grisham (TN BPR#013810)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 901.526.0431
Fax: 901.526.8183
ggrisham@fisherphillips.com

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone:  610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

Edward G. Winsman
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone:  610.230.2142
Fax: 610.230.2151
ewinsman@fisherphillips.com

COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

/s/ David J. Walton
David J. Walton

FP 47444807.2