UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>    Defendants. | No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

## BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO REOPEN DISCOVERY FOR A LIMITED AND NARROWLY TAILORED REQUEST

Plaintiffs Ecolab, Inc. ("Ecolab") and Nalco Company LLC d/b/a Nalco Water, an Ecolab company, or Nalco Water ("Nalco") (collectively "Plaintiffs") file this emergency motion to move the Court to reopen discovery for the limited purpose of seeking to compel Defendant Anthony Ridley ("Ridley") to fully comply with Plaintiffs' Rule 34 Request to Inspect by producing the computer(s) that Ridley used to run wiping software on a personal external hard drive.

In February 2022, Ridley received a preservation notice from Plaintiffs. Hours after receiving this notice, Ridley deleted Nalco files from two Nalco USB drives. Five days later, Ridley used wiping software to permanently delete thousands of Nalco files from a personal external hard drive (the "WD Drive"). During discovery, Ridley falsely denied deleting any information from the WD Drive after receiving this notice. After this Court ordered Ridley to produce the WD Drive, Plaintiffs recently discovered Ridley's use of the wiping program following his receipt of the notice. Thus, the question here is: should the Court order production of the computer(s) that Ridley used to wipe the WD Drive?

## I. Factual Background

When he resigned from Ecolab, Ridley had a personal external drive (the "WD Drive"). (Ex. 1, Deposition of Anthony Ridley ("Ridley Depo.") 58:12 – 59:6). This was a 1TB drive that Ridley used over several years to back-up his Nalco computer. (*Id.* at 79:1 – 80:22). At the time of his resignation, Ridley had multiple full and partial backups of his Nalco computer, containing thousands of Nalco files on it. (*Id.* at 80:1 – 81:11; 448:4-17; 96:6-22). When Ridley resigned in June 2021, Ecolab instructed him to return all devices and Nalco/Ecolab information. (*Id.* at 307:11-15; 449:9 – 450:9). Ridley ignored these instructions, secretly taking the WD Drive with him to ChemTreat (along with three Nalco USB drives). (*Id.* at 56:21 – 57:9.)

Ridley took all these files with him to ChemTreat. (*Id.* at 96:14-22; 97: 4-18; 120:17-24; 326:3-23). In August 2021, Ridley connected the WD Drive to his ChemTreat computer (*Id.* at 61:1-24), and accessed numerous Nalco documents (*Id.* at 313-314). He did it again later that same month. (*Id.* at 68:11-15). He did it again in September 2021 (*Id.* at 389, Ex. 66), during this session emailing a Nalco document to himself (*Id.* at 124:11-15; 391:1-24). And he did it again in January 2022, accessing more Nalco documents (*Id.* at 110:7-24). All told, Ridley connected the WD Drive to his ChemTreat computer at least nine separate times. (Ex. 2, Declaration of Laurence Lieb ("Lieb Dec.") at ¶ 87). Ridley claimed in his deposition that he did this to copy personal pictures to his ChemTreat computer, but ChemTreat's own forensic analysis shows that Ridley did not load any personal pictures to his ChemTreat computer. (*Id.* at ¶ 55).

On February 9, 2022, Plaintiffs sent Ridley a document preservation notice.[1] (Ex. 4, February 9, 2022 Letter to Ridley; Ex. 5, February 9, 2022 Letter to ChemTreat). Hours after

---

[1] Plaintiffs advised counsel for ChemTreat of the cease-and-desist letter to Ridley, and later provided a copy of the cease-and-desist letter directly to ChemTreat through its attorneys. (Ex. 3, Email to V. Mirmira, February 17, 2022.)

receiving this notice, Ridley deleted several Nalco/Ecolab files from these flash drives. (Ex. 2, Lieb Dec. at ¶ 29).[2] Yet, in his responses to Plaintiffs' First Requests for Admissions, Ridley falsely denied deleting information on February 9, 2022:

> 44. After receiving February 9, 2022 correspondence from counsel for Ecolab (attached to the Second Amended Complaint as Exhibit B), You deleted Ecolab Documents or files from a personal Device that was in your possession, custody, or control.
> RESPONSE: **DENIED**
>
> 45. After receiving February 9, 2022 correspondence from counsel for Ecolab (attached to the Second Amended Complaint as Exhibit B), You deleted Ecolab Documents or files from a Storage Media that was in your possession, custody, or control.
> RESPONSE: **DENIED**

(Ex. 6, Ridley's Responses to Plaintiffs' First Set of Admissions Nos. 44-45).

Also, on February 9, 2022, just hours after receiving Plaintiffs' preservation letter, Ridley used his ChemTreat laptop to access a folder called "Nalco." (Ex. 2, Lieb Dec. at ¶¶ 39-43). Ridley accessed this "Nalco" folder several times at 2:11PM; 2:12PM; 2:13PM; 2:14PM; 2:15PM; 2:16PM; 7:33PM; and 9:28PM. (*Id*. at ¶ 40). This suggests additional deletion activity. Further, the fact that Ridley had a folder called "Nalco" on his ChemTreat computer or OneDrive account suggests he was actively using Nalco documents while he was working for ChemTreat.

On February 14, 2022, Ridley wiped thousands of Nalco files from the WD Drive. (*Id.* at ¶ 86). To do this, Ridley used wiping software called "C-Cleaner." (*Id*. at ¶ 96.) The wiping program was run by an undisclosed computer, not Ridley's ChemTreat laptop. (*Id*. at ¶ 97.)[3]

Not to be outdone by Ridley's spoliation, on March 2, 2022, ChemTreat wiped Ridley's work computer. (Ex. 7, Deposition of Pete Mumpower at 16:4-12, 24:6-10). All the data on that computer is permanently deleted. Thus, within three weeks of receiving Plaintiff's preservation

---

[2] He also created a folder on one of those drives called (Files from Ridley's Personal computer), but Ridley denies that he had a personal computer at this time.

[3] As discussed below, Plaintiffs just learned this.

notice, Ridley deleted Nalco files from Nalco USB drives; he wiped Nalco files from the WD Drive; and ChemTreat wiped Ridley's work computer. This is the antithesis of preservation.

Focusing again on the WD Drive, Plaintiffs requested that Ridley voluntarily turn over the WD Drive for searching and analysis. By refusing to turn over this device, Ridley was in breach of paragraph 12 of his agreement:

> 12. In the event the Employee violates, or the Company reasonably believes the Employee is about to violate, this Agreement, the Employee agrees that the Company is entitled to injunctive relief to prevent violation(s) and/or preserve the status quo and confidentiality of the Company's Confidential Information and Trade Secrets. The Employee agrees that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and the Company will have the right to conduct forensic examination(s) of any computer and/or electronic devices in the Employee's possession or control, if the Company reasonably believes such devices contain Company Confidential Information and/or Inventions. The Employee further agrees that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis.

(Ex. 1, Ridley Depo., Ex. 77 at ¶ 12).[4]

Further, in his interrogatory responses, Ridley claimed that he last backed up Nalco documents to the WD Drive in 2015 or 2016. (Ex. 8, Defendant Ridley's Answers and Objections to Plaintiffs' First Interrogatories at No. 2). This made it seem like the WD Drive held older information. This was Ridley's way of trying to build a false narrative that the WD Drive was not important. We found out later Ridley's interrogatory response was false.

Still, on February 13, 2023, Plaintiffs served a Rule 34 Request to Inspect on Ridley seeking, among other items, an image of the WD Drive and "Ridley's personal computer and any personal computer in his house, that was used by Ridley on one or more occasions from August 1, 2020, to present." (*See* Ex. 9, Plaintiff's Request to Inspect). Ridley objected to this Request and

---

[4] Ridley also violated his paragraph 11 of his employment agreement by failing to return the Nalco information on the WD Drive before he joined ChemTreat. (ECF #264).

refused to comply.

In April, Plaintiffs took Ridley's deposition. There, Ridley admitted that he downloaded full and partial backups of his entire Nalco computer through 2020 (contrary to his interrogatory responses). (Ex. 1, Ridley Depo. 69:20 – 70:4). Ridley also admitted that:

- he took the WD Drive when he left for ChemTreat (*Id.*, at 96:14-22; 97: 4-18; 120:17-24; 326:3-23).

- the WD Drive had multiple back-ups of Ridley's Nalco computer, constituting thousands of Nalco files (*Id.*, at 78:4-92:11; Ex. 2, Lieb Dec. at ¶ 91); and

- he accessed the WD Drive with his ChemTreat computer on several occasions (Ex. 1, Ridley Depo. at 56:21-58:7; 61:6-17).

In his deposition, Ridley specifically denied wiping any information from the WD Drive after receiving Plaintiffs' February 9, 2022, preservation letter:

> **Q**. Did you wipe any information off the WD drive after you received my letter of February 9, 2022?
> **A.** Not to my knowledge.

(*Id.* at 101:14-17).

We recently discovered, of course, that this testimony was false.

After Ridley's deposition, Plaintiffs kept pushing for the WD Drive. However, Ridley refused to provide this access unless Plaintiffs agreed to unacceptable restrictions and related terms. Ultimately, Plaintiffs filed a motion to compel production of the WD Drive, among other devices. (ECF #224). On May 5, 2023, the Court granted this Motion, ordering the parties to negotiate search protocol for the WD Drive. (ECF #246). Counsel negotiated this protocol and search terms over several weeks. While negotiating the search terms, Ridley's counsel never told

Plaintiffs that his client used a wiping program to delete all of the Nalco files on the WD Drive. As such, the search-term negotiations ended up being a complete waste of time.

On May 11, 2023, Ridley finally sent the WD Drive to Plaintiffs' forensic expert, Larry Lieb. (Ex. 2, Lieb Dec. at ¶ 86). Mr. Lieb imaged the drive and discovered that an individual, assumed to be Ridley, wiped the WD Drive using a program called C-Cleaner just five days after Ridley's receipt of Plaintiffs' preservation letter. (*Id.*, at ¶ 90). Mr. Lieb also discovered that Ridley did not use his ChemTreat laptop to do the wiping – he used a different, unknown laptop that he failed to produce or acknowledge throughout discovery. (*Id.*, at ¶ 99-100).

In summary, the following events have occurred during discovery leading to this point:

1. **Ridley refused to turn over his WD Drive despite his contractual obligation to do so.**
2. **Ridley falsely denied in admission responses that he deleted information from the WD Drive after receiving Plaintiffs' preservation letter (on February 9, 2022).**
3. **Plaintiffs made a Rule 34 Request for,** *inter alia*, **the WD Drive and all personal computers.**
4. **Ridley objected, claiming that he had never used his wife's computer for work, and he did not have a personal computer.**
5. **Ridley falsely testified in his deposition when he denied deleting information from the WD Drive after receiving Plaintiffs' (February 9, 2022) preservation notice.**
6. **Plaintiffs filed a Motion to Compel seeking Ridley's compliance with Plaintiffs' requests, but Plaintiff focused on getting access to the WD Drive because Ridley claimed he did not use his wife's computer and he did not have a personal computer.**
7. **Over Defendants' objections, the Court ordered Ridley to produce the WD Drive.**
8. **Once Plaintiff's analyzed the WD Drive, Plaintiffs discovered that—contrary to**

**Ridley's sworn testimony—Ridley wiped thousands of Nalco files on the WD Drive using an unknown computer. We don't know which computer, but it does not appear to be Ridley's ChemTreat laptop (that ChemTreat wiped).**

9. **Now, Plaintiffs seek to analyze the computer that was the source of the wiping.**

Based on this, Plaintiffs move this Court to reopen discovery pursuant to Rule 16(b)(4) for the limited purpose of compelling Ridley to produce the computer that he used to surreptitiously wipe his WD Drive.

## II. Argument and Authority

A scheduling order may be modified only for good cause and with the court's consent. Fed. R. Civ. P. 16(b)(4); *see also Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 430 (6th Cir. 2006). A district court has "substantial discretion over pretrial matters such as the conduct of discovery." *In re Wilkinson*, 137 F.3d 911, 916 (6th Cir. 1998) (Jones, J., dissenting (citing *Chem. & Indus. Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962)). This broad discretion applies to determining whether to reopen the discovery period. *Union Univ. v. Evanston Ins. Co.*, No. 1:20-CV-01254, 2022 WL 4389709, at *1 (W.D. Tenn. Sept. 22, 2022). The Sixth Circuit has held that the determination of good cause includes consideration of the following factors: (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the [case]; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests. *Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010).

   1. <u>Plaintiffs just recently learned about Ridley wiping of the WD Drive.</u>

Throughout discovery, Ridley tried to stonewall production of the WD Drive. In his

FP 47477962.1
Case 1:22-cv-00050-TRM-SKL   Document 296   Filed 06/20/23   Page 7 of 15   PageID #: 9697

employment agreement, Ridley agreed that Ecolab could have access to any personal devices that he used to store Nalco/Ecolab files. (Ex. 1, Ridley Depo., Ex. 77). Despite this contractual duty, Ridley refused to turn over the WD Drive. Plaintiffs then served a Rule 34 Request for Inspection that included the WD Drive, and any other computer used to access Nalco/Ecolab files. Ridley then objected to the Rule 34 Request for Inspection. Plaintiffs had a to file a motion to compel Ridley's compliance with this Request. (ECF #224). Judge Lee then ordered Ridley to produce the WD Drive and negotiate a search protocol with Plaintiffs. (ECF #246). At this point, Ridley still did not disclose that he used a wiping program on the WD Drive. Instead, his counsel engaged in protracted negotiations over search terms even though he apparently knew that the WD Drive had been wiped.

Finally, after completing negotiations on the protocol for searching the WD Drive, Plaintiffs' forensic expert, Laurence Lieb, was able to image and analyze the device. He did not receive the drive until May 11, 2023. During this process, Mr. Lieb found evidence of the wiping software. Specifically, Mr. Lieb found that Ridley accessed the WD Drive on February 14, 2022 (merely five days after receiving Plaintiffs' preservation letter) and used a program called C-Cleaner, a software used to forensically wipe data from digital devices. Mr. Lieb then went back to check the CrowdStrike report for this date. He found no evidence that C-Cleaner was loaded onto Ridley's ChemTreat's computer. This means that Ridley must have used a different, undisclosed computer to do this wiping. Therefore, Plaintiffs had no way of knowing about the existence of this separate computer and only recently became aware of it. This factor is in Plaintiffs' favor.

2. It is very likely that the production of the computer at issue will substantially affect the case.

The production of the computer used to wipe information from Ridley's WD Drive will demonstrate Ridley's efforts to conceal evidence, his dishonesty during the discovery process including during his deposition, his non-compliance with Plaintiffs' preservation, and, most importantly, will speak to the main issue in this case: whether Ridley improperly took and used Nalco/Ecolab documents and information when he left the company. Also, it's likely that the same computer that Ridley used to wipe Nalco files from the WD Drive could also been used to further misappropriate Nalco files during his tenure at ChemTreat. Access to this computer is also important to understand the full scope of Ridley's misappropriation. This factor also favors Plaintiffs.

3. <u>Plaintiffs were unable to specifically request the laptop in discovery until Mr. Lieb could analyze the WD Drive.</u>

The discovery period in this case was nine months. In a vacuum, this factor alone may not favor reopening discovery. But, as discussed below, Ridley was not truthful during the discovery about the WD Drive (section II.5 (below) discusses Ridley's dishonesty in great detail). In his interrogatory responses, he misrepresented the last time he saved Nalco files to the WD Drive. In his admission responses, he lied directly about the accessing and deleting information from the WD Drive. And, in his deposition, he lied about deleting information from the WD Drive after receiving Plaintiffs' preservation notice. Thus, the length of the discovery is not a factor that should govern the decision on the underlying motion. It took months to find out that Ridley wiped the WD Drive, and Ridley has been less than honest about the wiping of the WD Drive.

Further, any delays in the discovery process are attributable to Ridley strategic stonewalling of Plaintiffs' requests and continued misrepresentations. Ridley was on notice of the information and devices Plaintiffs sought throughout discovery. Parties are required to supplement disclosures and response "in a timely manner," and "periodically in a fashion that will allow [the

opposing party] to conduct meaningful discovery and avoid undue delay in the progress of the case." Fed. R. Civ. P. 26(e)(1); *U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03–0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009). By refusing to comply with Plaintiffs' request to inspect Ridley's personal computers, Ridley effectively delayed discovery and failed to comply with Rule 26. Further, Ridley never supplemented his interrogatory responses and admission responses even though they clearly contained false information. Any delay during or following the discovery period should not be attributed to Plaintiffs.

Finally, Plaintiffs are seeking to reopen discovery solely to access the computer that Ridley used to wipe the WD Drive. This Court has also identified the "specificity of the discovery request" as being pertinent to the analysis of extending discovery. *See Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *2 (E.D. Tenn. Mar. 27, 2017). This request is as narrowly tailored as it could possibly be: Plaintiffs are requesting the computer(s) that Ridley used to wipe the WD Drive. And, once Plaintiffs receive this computer, the forensic investigation will take less than two weeks. Again, this factor favors reopening discovery for this limited purpose.

4. <u>Plaintiffs were not dilatory in seeking the computer that Ridley used to wipe the WD Drive.</u>

Plaintiffs diligently pursued the discovery they now seek. Throughout discovery, Ridley actively tried hide to his wiping of the WD Drive. Plaintiffs did not even know about the wiping of the WD Drive or that an unknown computer was used to conduct the wiping until very recently. It has taken substantial efforts by Plaintiffs to parse through Ridley's numerous lies about the WD Drive. When Plaintiffs' finally got access to the WD Drive, after filing a motion to compel, Plaintiffs' forensic examiner was able to determine that Ridley—contrary to his prior denials— used a wiping program on the WD Drive after receiving Plaintiffs' February 9th preservation letter.

As of the date of this Motion, Ridley still has not disclosed the wiping of the WD Drive and he (and his counsel) have not corrected his false discovery responses.

It took some time, but the truth finally came out. When it did, Plaintiffs then acted diligently in pursuing this Motion. Therefore, this Court should find that Plaintiffs have been diligent in seeking Ridley's compliance with his discovery obligations and that, again, this factor favors reopening discovery.

5. <u>Ridley was not responsive, or truthful, in his discovery responses.</u>

Ridley (and ChemTreat) have continually and intentionally tried to hide the full extent of Ridley's misconduct with the WD Drive. At the very beginning of this case, ChemTreat's counsel represented that Ridley had a "personal external drive" with "some" Nalco files on it. (ECF #261). Representing ***multiple back-ups*** of Ridley's Nalco computer as "some" files is a gross understatement.

In his interrogatory responses, Ridley stated he backed up his Nalco computer to the WD Drive *only* in 2015 and 2016. (Ex. 8, Defendant Ridley's Answers and Objections to Plaintiffs' First Interrogatories at No. 2.) But, at his deposition, he testified that he also backed up his Nalco computer in 2018 and possibly 2019. (Ex. 1, Ridley Depo. at 87:1-12; 89: 1-12; 91:1-24; 92:1-3.) He also admitted that in 2020 he copied other Nalco files to the WD drive from his Nalco computer. Ridley was trying to downplay the significance of the WD Drive by claiming he last copied files on it in 2016. But the truth came out in his deposition.

In his responses to Plaintiffs' First Requests for Admissions, Ridley falsely denied deleting information from the WD Drive:

> 44. After receiving February 9, 2022 correspondence from counsel for Ecolab (attached to the Second Amended Complaint as Exhibit B), You deleted Ecolab Documents or files from a personal Device that was in your possession, custody, or control.
> RESPONSE: **DENIED**

> 45. After receiving February 9, 2022 correspondence from counsel for Ecolab (attached to the Second Amended Complaint as Exhibit B), You deleted Ecolab Documents or files from a Storage Media that was in your possession, custody, or control.
> RESPONSE: **DENIED**

(Ex. 6, Ridley's Responses to Plaintiffs' First Set of Admissions at Nos. 44-45). These denials are false. Ridley accessed the WD Drive on February 14 and used a wiping program, C-Cleaner, on the WD drive. Now, most of the files on C-Cleaner have been completely wiped and are unrecoverable.

Further, Ridley falsely testified when he denied deleting any information on the WD Drive after receiving Plaintiffs' preservation letter on February 9, 2021. In his deposition, Ridley admitted that he accessed the WD Drive after receiving Plaintiffs' preservation letter, but he claimed that he did so only to verify that he previously deleted all the Nalco documents in January:

> **Q.** When is the last time you used or accessed the WD drive?
> **A.** Probably February of -- probably when I received your letter.
> **Q.** So did you access the drive after you received my letter?
> **A.** Yes.
> **Q.** Why?
> **A.** To verify that what I knew that I had done, which is delete all the Nalco files in January.

(Ex. 1, Ridley Depo. at 120:17-121:4). This testimony is not true. There's no record of deletions on the CrowdStrike report. (Ex. 2, Lieb Dec. at ¶¶ 46-49). Ridley also specifically denied wiping any information from the WD Drive after receiving Plaintiffs' February 9, 2022, preservation letter:

> **Q**. Did you wipe any information off the WD drive after you received my letter of February 9, 2022?
> **A.** Not to my knowledge.

(Ex. 1, Ridley Depo. at 101:14-17). Yet again, this testimony is clearly false. Ridley accessed the WD Drive on February 14, 2022, using a wiping program, C-Cleaner, on it. He did not access the WD Drive just to make sure he previously deleted documents or for any other reason but to

intentionally delete document he was directed to preserve.

Ridley willfully misrepresented facts or attempted to avoid admissions with tactful half-truths. Courts in this Circuit have dismissed cases against parties when they fail to cooperate in discovery due to willfulness, bad faith, or fault. *Norris v. MK Holding, Inc. (In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.)*, No. 2:09-md-02009, at *22 (W.D. Tenn. Aug. 17, 2017). Even in cases where a party answers discovery requests, sanctions have been deemed appropriate where the answer are late, inadequate, or improper. *See Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 365 (6th Cir. 1997). Ridley's actions during discovery may very well rise to the level of necessitating sanctions, so they should certainly justify a limited reopening of discovery.

### III. Conclusion

All five factors favor Plaintiffs. The Court should grant this Emergency Motion and order Ridley to produce the computer(s) he used to wipe the WD Drive.

WHEREFORE, pursuant to Fed. R. Civ. P. 16(b)(4), Plaintiffs Ecolab Inc. and Nalco Company LLC respectfully request that this Court reopen discovery for the limited purpose of compelling Defendants' immediate compliance with Plaintiffs Rule 34 Request to Inspect and for such further relief as the Court deems just and proper.

          Respectfully submitted,

          ECOLAB INC. NALCO COMPANY, LLC
          d/b/a Nalco Water, an Ecolab Company
          and/or Nalco Water

By:   */s/ David J. Walton*
       J. Gregory Grisham (TN BPR#013810)
       FISHER & PHILLIPS LLP
       1715 Aaron Brenner Drive, Suite 312
       Memphis, Tennessee 38120
       Telephone: 901.526.0431
       Fax: 901.526.8183
       ggrisham@fisherphillips.com

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

Edward G. Winsman
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.2142
Fax: 610.230.2151
ewinsman@fisherphillips.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ David J. Walton*
David J. Walton
