UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,

  Plaintiffs,

v.

ANTHONY RIDLEY and CHEMTREAT, INC.,

  Defendants.

No. 1:22-cv-00050-TRM-SKL

Hon. Travis McDonough

Magistrate Judge Susan K. Lee

# PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO THE MOTIONS TO EXCLUDE CERTAIN OPINIONS OF LAURENCE D. LIEB OF DEFENDANTS CHEMTREAT AND ANTHONY RIDLEY

Plaintiffs, Ecolab, Inc. and Nalco Company, LLC ("Plaintiffs" or "Ecolab"), by and through their undersigned counsel, hereby file their Consolidated Memorandum in Opposition to the Motions to Exclude Certain Opinions of Laurence D. Lieb of Defendants ChemTreat and Anthony Ridley (collectively "Defendants"), and in support, aver as follows:

## I. INTRODUCTION

On November 1, 1999, Defendant Anthony Ridley ("Ridley") began working for Plaintiffs as a Senior Account Manager. ECF Doc. 229 at ¶ 22. On July 1, 2021, Ridley resigned his employment for Plaintiffs to work for ChemTreat, a direct competitor. *Id.* at ¶ 40. Before resigning, Ridley secretly uploaded several key documents to a personal email account and downloaded over 16,000 of Plaintiffs' documents constituting trade secrets and highly confidential and/or proprietary information, to external USB devices. *Id.* at ¶ 60. Ridley also

1

took an external hard drive (the "WD Drive"). The WD Drive contained several full and partial backups of his Nalco computer totaling thousands of files. *Id.* at ¶ 61.

On March 3, 2022, Plaintiffs filed suit against Ridley and ChemTreat, asserting claims under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*. ("DTSA") and the Tennessee Uniform Trade Secret Act, Tenn. Code Ann. § 47-50-109 ("TUTSA"), and related tort and breach of contract claims. *See* ECF No. 1.

In discovery, Plaintiffs produced a data loss prevention report ("DLP Report"), and ChemTreat produced a log from CrowdStrike, a data protection program (the "CrowdStrike Log"). The DLP Report and CrowdStrike Log both reflect Ridley's user activity on certain electronic devices. In addition, Plaintiffs have proffered Laurence D. Lieb ("Lieb") as its digital-forensics expert. ChemTreat has proffered rebuttal digital forensics expert, James D. Vaughn ("Vaughn"). Both Lieb and Vaughn authored expert reports and rebuttal reports.

In their Motions to Exclude Certain Opinions of Laurence D. Lieb (the "Motions to Exclude"), Defendants seek to exclude certain of Lieb's opinions on the following bases: (1) Lieb is not qualified to opine on the DLP Report and CrowdStrike Log, due to his limited experience with both tools; (2) Lieb's opinions on the DLP Report and CrowdStrike Log are not based on a reliable methodology; (3) Lieb's opinions on Ridley's OneDrive account deletion are speculative and unreliable; (4) Lieb offers impermissible state-of-mind opinions and legal conclusions; and (5) Lieb's rebuttal opinions are misleading and unfairly prejudicial.

Defendants couch their objections to Lieb's testimony as bases for the Court to exclude it pursuant to its gatekeeping function under Federal Rule of Evidence 702 ("Rule 702"). However, in reality, Defendants' objections address their challenges to the credibility and

accuracy of Lieb's opinions, which is the sole province of the jury. For the reasons discussed below, Lieb's testimony is admissible, and should not be excluded.

## II. ARGUMENT

### A. Standard

Rule 702 states as follows, regarding expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Sixth Circuit has interpreted Rule 702's requirements as follows:

> [A] proposed expert's opinion is admissible, at the discretion of the trial court, if (1) the witness is qualified by knowledge, skill, experience, training, or education; (2) the witness's testimony is relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the witness's testimony is reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (quoting Fed. R. Evid. 702). In evaluating the reliability of expert opinion testimony, a trial court must consider whether the testimony is based on sufficient facts or data and is the product of reliable principles and methods, as well as whether the expert has applied the principles and methods reliably to the facts of the case. *See* Fed R. Evid. 702. Such factors as testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community should be considered in this review. *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)).

3

*Malibu Boats, LLC v. Skier's Choice, Inc.*, No. 3:18-CV-00015, 2021 WL 1572477, at *1 (E.D. Tenn. Apr. 21, 2021).

While on a motion to exclude, it is the burden of the party offering the expert's testimony to prove the expert's qualifications by a preponderance of the evidence,

> the court will not exclude expert testimony merely because the factual bases for an expert's opinion are weak. **Exclusion is the exception, not the rule**, and the gatekeeping function established by *Daubert* was never intended to serve as a replacement for the adversary system. Rather, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. **Rule 702 does not require anything approaching absolute certainty**.

*CapitalPlus Equity, LLC v. Espinosa Grp., Inc.,* No. 3:18-CV-10-CEA-HBG, 2022 WL 37354, at *2 (E.D. Tenn. Jan. 4, 2022) (internal quotations and citations omitted) (emphasis added).

### B. Lieb is Qualified to Opine on the DLP Report and CrowdStrike Log.

"The Sixth Circuit takes a liberal view of what knowledge, skill, experience, training, or education is sufficient to satisfy the Rule 702 requirement." *Thomas v. S. Health Partners, Inc.,* No. 221CV012WOBCJS, 2023 WL 3935047, at *34 (E.D. Ky. June 9, 2023) (internal quotations and citations omitted) (citing *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208-09 (6th Cir. 2015)).

Defendants argue that Lieb is not qualified to opine on the DLP Report and CrowdStrike Log because his experience in digital forensics does not include extensive experience in the Digital Guardian data loss prevention tool and CrowdStrike software. ECF No. 258 at 15 – 18. However, Defendants' argument is merely a distraction from Lieb's extensive qualifications and experience in the digital forensics field.

Lieb stated as follows, in his expert report:

4

FP 47432973.3
Case 1:22-cv-00050-TRM-SKL   Document 298   Filed 06/21/23   Page 4 of 18   PageID #: 9905

> I counsel and assist clients in the preservation, extraction, and analysis of electronic data, using industry-standard practices, based on evidence personally analyzed, and form expert opinions regarding human interaction with electronic data from smartphones, computers, cloudbased sources, and a myriad of other electronic devices. I have been retained for this type of work around the country by numerous clients, as described in my curriculum vitae, which is attached as Exhibit C.

Lieb's expert report is attached hereto as Exhibit A.

He testified during his deposition that he is CEO, President, and Owner of Tyger Forensics, which "provides computer forensic services, which involves forensic preservation and collection of electronic evidence, generation of forensic databases to enable analysis of electronic evidence, forensic analysis of evidence, and then reporting declarations, testimony, if required." *See* Deposition of Laurence D. Lieb at 16:20 – 17:2, attached hereto as Exhibit B. He further testified that he takes "one to two or more training classes each year," in digital forensics. *Id.* at 29:5-6.

**His curriculum vitae ("CV") states that he published Continuing Legal Education classes "on employee turnover and forensic analysis best practices, currently accredited by bar associations in seventeen U.S. states" and "on theft of trade secrets best practices, currently accredited by bar associations in seventeen U.S. states**." ECF No. 257-2 (emphasis added). His CV further includes ten digital forensics certifications, **seventy-five cases in which he was retained as an expert on digital forensics**, and fourteen additional cases in which he provided testimony regarding digital forensics. *Id.*

He further testified during his deposition, as follows, regarding courts previously deeming him qualified as an expert on digital forensics:

> Q. Has any judge ever determined that you were not qualified to testify as an expert?

5

> A. No.
>
> Q. Has any judge ever determined that one of your opinions was unreliable?
>
> A. No.
>
> Q. Has any judge ever precluded you from testifying, in whole or in part, as to any of your opinions?
>
> A. No.

Exhibit B at 15:6-16.

In *Thomas*, the plaintiff sought to exclude the defendant's digital forensics expert from opining on the audit trail for the plaintiff's medical records regarding the medical care she received while she was incarcerated. 2023 WL 3935047, at *34 – *35. Specifically, the plaintiff argued that the digital forensics expert was not qualified to opine on the defendants' HIPAA-compliant electronic medical records ("EMR") system. *Id.* at *35. The court disagreed with the plaintiff, and reasoned as follows:

> Ms. Rhodes's lack of experience building, designing, testing, or educating end users on EMR systems, does not mean that she is not qualified to opine on the audit trail of such a system….
>
> While Ms. Rhodes was unaware of the particular CorrecTek settings used at KCDC and did not "dig into" errors in the audit trail, any weaknesses in the factual basis of her opinions are the proper subject of cross-examination because they bear on weight, not admissibility. The Court finds that Ms. Rhodes is qualified to offer expert opinions on the audit trail of Thomas's CorrecTek medical record.

*Id*. (internal citations omitted) (citing *McLean v. Piper Aircraft Corp.,* 224 F.3d 797, 801 (6th Cir. 2000)).

Similarly, in *University of Pittsburgh v. Townsend*, No. 304-CV-291, 2007 WL 1002317, at *1 (E.D. Tenn. Mar. 30, 2007), the defendants sought to exclude the plaintiff's expert from opining on whether the defendants "subverted and misappropriated the University's rights and

6

interests in valuable medical scanning technology, namely a combined PET/CT scanner." *Id.* The court held that while the expert had more experience in the field of PET physics than in PET/CT scanners, he had "adequate specialized knowledge to proffer opinions regarding the subject PET/CT scanner." *Id.* at *12. In so holding, the court reasoned:

> it is not required that a proffered expert have specific expertise in the specialized area at issue. **Where a witness is qualified in a general relevant field, the witness's lack of familiarity with specific aspects of the specialized field at issue merely goes to the weight and credibility of the testimony, not its admissibility.**

*Id.* (emphasis added).

ChemTreat cites *Vanderpool v. Edmonson,* 2005 WL 5164857 (E.D. Tenn. Mar. 23, 2005) in its Motion to Exclude in support of excluding Lieb's Crowdstrike Log opinion. However, *Vanderpool* is wholly inapposite. *Vanderpool* excluded the expert's testimony as "predicated on…incorrect and false premises," because the expert based his opinion on a statute that was inapplicable to the case. *Id.* at *3. That's not applicable here.

Therefore, any alleged shortcomings in Lieb's specific experience with the Digital Guardian data loss prevention tool and CrowdStrike software, despite his extensive digital forensics qualifications, is a credibility issue for the jury, not an admissibility issue for the Court.

    C.    <u>**Lieb's Opinions are Based on Reliable Methodologies**</u>.

Defendants argue that Lieb's opinions are not based on reliable methodologies because he was unable to replicate his analysis of the DLP Report at his deposition. ECF No. 258 at 18.

"In analyzing the reliability of an expert's testimony, the key question is whether it can be (and has been) tested." *In re Scrap Metal*, 527 F.3d 517, 531 (6th Cir. 2008).

As Lieb testified during his deposition, *Vaughn, ChemTreat's own digital forensics expert, confirmed Lieb's findings regarding the DLP Report*:

7

> Q. And you'll see the second sentence of paragraph 14, you say, "From a forensic analysis standpoint, the Digital Guardian Report provides more than sufficient amount of information for me to arrive at my conclusion that Ridley misappropriated thousands of Ecolab files." Is that still your opinion?
>
> A. It is….

Exhibit B at 204:10-18.

> Q. you have testified that everything you do is, quote, 100 percent based upon science and can 100 percent be replicated by a qualified peer.
>
> A. Yes.
>
> Q. And I'm asking you what objective standard can a qualified peer apply to reach the same conclusion you did that this was theft as opposed to ordinary course of business?
>
> A. Well, it would be the timing that the activity occurred, the business circumstances under which it occurred, a knowledge of an employee having already accepted or looking for another work -- another job, the volume and -- the volume and amount and frequency by which the data was stolen, and then subsequent -- you know, Jim -- **Jim Vaughn's report confirmed my findings**.

*Id.* at 206:12 - 207:5 (emphasis added).

In addition, *Ridley has admitted that he downloaded and copied thousands of files and folders from his Ecolab OneDrive account to the LaCie Drive*, in his responses to Plaintiffs' Requests for Admissions. *See* Ridley's responses to Plaintiff's Requests for Admissions Nos. 90 - 94, attached hereto as Exhibit C.

Furthermore, Defendants are aware that the parties experienced technical issues during Lieb's deposition. *See* Exhibit B at 168:16-171:16. The fact that technical issues during his deposition may have made it difficult for Lieb to replicate his analysis, has no bearing on the fact that his findings have been confirmed by Vaughn.

8

FP 47432973.3
Case 1:22-cv-00050-TRM-SKL   Document 298   Filed 06/21/23   Page 8 of 18   PageID #: 9909

### D. Lieb's Opinions Regarding Ridley's OneDrive Deletion are Reliable and Not Speculative.

Defendants object to Lieb's conclusion regarding Ridley's OneDrive account, on the basis that he obtained the data as an image from the hard drive of Ecolab's paralegal, without knowing how the data came to reside on the paralegal's hard drive. *See* ECF No. 258 at 20. In support of the objection, ChemTreat characterizes "Lieb's assertion that he collected a 'complete forensic image of Mr. Ridley's OneDrive account'" as anecdotal and speculative. *Id.*

Upon reviewing Defendants' Motions to Exclude, and his file on the matter, it subsequently came to Lieb's attention that his deposition testimony regarding the source of Ridley's OneDrive account was mistaken. *See* the Declaration of Laurence D. Lieb, attached hereto as Exhibit D. Lieb's file reflects that on January 25, 2023, he participated in a telephone call with Ecolab's Information Technology ("IT") department, during which IT assisted him in accessing the OneDrive Account directly from EcoLab's Microsoft Compliance Center. *Id.* at 6. Lieb also confirmed with IT that in August of 2021, IT ran a Powershell script to restore the OneDrive account contents. *Id.* at 7. Therefore, Lieb obtained the OneDrive Account in its entirety from EcoLab's Microsoft Compliance Center, rather than as a forensic image residing on EcoLab's paralegal's computer, as he mistakenly testified during my deposition.[1] *Id.* at 8.

Notwithstanding, it is well-established in the Sixth Circuit that challenges to the source of the data provided to an expert to render an opinion, is a credibility determination for the jury, rather than an admissibility determination for the Court. *See In re Scrap Metal*, 527 F.3d 517, 531 (6th Cir. 2008). In *In re Scrap Metal,* the court reasoned as follows in affirming the district court's admission of the expert's testimony:

---

[1] Plaintiffs would honor any requests from Defendants to re-depose Lieb on this limited issue of how he accessed Ridley's OneDrive account.

9

> Columbia contends that Leitzinger used erroneous data and necessarily produced an erroneous conclusion; in sum, "garbage in, garbage out." Columbia argues that the district court should have, therefore, excluded Leitzinger's proposed testimony as insufficiently reliable under Rule 702.
>
> Columbia's argument is unpersuasive because it fundamentally confuses the *credibility and accuracy* of Leitzinger's opinion with its *reliability*....
>
> An analogous case is illustrative. In *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343-44 (11th Cir. 2003), the appellant challenged the admission of the appellee's expert testimony relating to computational fluid dynamics ("CFD"). The appellant focused on the specific application of the CFD method, not on the reliability of the CFD method in general. **Specifically, the appellant argued that the expert used incorrect data or was missing data to run the CFD study and used the wrong equations to run the analysis.** *Id.* at 1344. If the data used was incorrect, the appellant argued, the conclusions necessarily were flawed as well and should be excluded from the jury. *Id.* at 1344-45. The Eleventh Circuit, however, held that **such an attack goes to the weight of the evidence, rather than to its admissibility**.

*Id.* at 530-31 (holding the question of whether the expert's "opinion is accurate in light of his use of the [certain] data goes to the weight of the evidence, not to its admissibility."). *See also Shampine v. U.S. Foods, Inc.*, No. 3:20-CV-380-CEA-JEM, 2022 WL 17098731, at *7 (E.D. Tenn. Nov. 21, 2022) (noting "it is the role of the jury, not [the] Court, to determine whether [the expert] used the right information and came to credible results.").

Defendants cite *Synopsys, Inc. v. Risk Based Security, Inc.*, 2022 WL 3005990, at *7 (E.D. Va. July 28, 2022), a case from within the Fourth Circuit, in support of its argument that Lieb's opinion regarding Ridley's OneDrive account is "flawed." ECF No. 258 at 21. However, notwithstanding the fact *Synopsys* is not binding on this Court, it is distinguishable from the instant case. The expert in *Synopsys* offered an opinion based solely on a spreadsheet about which he had no information whatsoever, and merely assumed was from a defendant. *Synopsys,*

10

*Inc.*, 2022 WL 3005990, at *7. Whereas, in the instant case, Lieb analyzed Ridley's OneDrive account that Ecolab was storing and represented as such.

Sixth Circuit precedent is clear that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. Where an expert's testimony amounts to mere guess or speculation, the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, the testimony should be admitted, and any remaining challenges merely go to the weight, as opposed to the admissibility, of the expert testimony. . . .Gesturing to a theoretical source of better data is not enough to overcome the deference owed to the district court's judgment of the foundation for expert testimony, particularly when reviewing for clear error.

*United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (internal quotations and citations omitted).

Here, even if Lieb accessed Ridley's OneDrive account through Ecolab's paralegal's computer and was uncertain how the data resided on the computer, any related objections directly concern issues of credibility and accuracy, which is the province of the jury, not Lieb's reliability, which is the province of the court.

### E. Lieb Does Not Seek to Proffer Impermissible Opinions on Ridley's State of Mind.

Defendants assert that Lieb should be precluded from opining on the reason for Ridley's alleged misappropriation or "exfiltration" of data from Plaintiffs. *See* ECF No. 258 at 23-25. Specifically, Defendants object to Lieb's opinion that "Ridley exfiltrated the many Ecolab files documented in this report specifically to utilize them while employed at ChemTreat." *Id.* at 24. Defendants assert that Lieb's use of the term "exfiltrate" in his deposition testimony implies that

Ridley copied data to an external USB drive for purposes of being used for himself or another company, which attests to his state of mind. *Id.*

As an initial matter, Lieb does not opine on Ridley's intent or purpose related to the Ecolab data in either the expert report or rebuttal report, and did not intend to testify at trial regarding those issues. *See* Exhibit A and ECF No. 257-2.

Furthermore, Lieb testified during his deposition that he was not offering an opinion about Ridley's intent that he exfiltrated Ecolab's files for the purpose of utilizing them at ChemTreat; rather, he was repeating information contained in the record:

> Q. And my question to you is, you are offering an opinion about Mr. Ridley's intent that he did something specifically for a purpose to utilize them while employed at ChemTreat. That is your opinion; correct?
>
> A. Which he -- which he -- which he did.
>
> Q. I understand that's your opinion, Mr. Lieb. I'm asking you, what is --
>
> A. No, that's not opinion. That's what shows in the CrowdStrike report and what I've been informed that he admitted to on – doing on less four -- less than four no -- no less than four occasions in his deposition yesterday.

Exhibit B at 242:3-18.

### F. Lieb's Does Not Seek to Proffer Impermissible Legal Conclusions.

Defendants argue that Lieb's opinion should be excluded regarding whether Ridley misappropriated Ecolab files, because "misappropriation" is a legal term of art defined by the DTSA and the TUTSA. ECF No. 258 at 25. Defendants further argues that Lieb's opinion that Ridley "exfiltrated" Ecolab data should equally be excluded as a synonym of misappropriation. *Id.* at 26.

12

An expert's opinion may not "improperly incorporate legal terminology," *Schlueter v. Ingram Barge Co.*, No. 3:16-CV-02079, 2019 WL 5683371, at *10 (M.D. Tenn. Nov. 1, 2019). However,

> The Sixth Circuit has recognized that **an expert's testimony that conveys an opinion about what might ultimately be considered a legal issue is not objectionable solely on that basis.** Instead, the problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law. Thus, the court determined that, in the exercise of their discretion, the district courts are to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate.

*Id.* (emphasis added).

> [I]f the [witness] expresses an opinion using legal terms that follow the statutes . . ., it is more likely to be held that the [witness] is giving a legal conclusion. In contrast, . . . testimony that uses words that do not have specialized legal meaning is more likely to be admissible.

*United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007).

In *Schlueter,* the court declined to exclude the expert's testimony in a negligence action that used terms such as "responsibility," "ultimate responsibility," "failure in his duties," "normal operations," and "failure to take necessary precautions," rather than "negligence," "comparative negligence," or "deliberate indifference," because the testimony did "not improperly incorporate legal terminology." *Schlueter,* 2019 WL 5683371, at *10. *See also Corizon Health, Inc. v. Correctek, Inc.,* No. 5:17-CV-00035-TBR, 2018 WL 2768883, at *21 (W.D. Ky. June 8, 2018) (allowing the expert to use the terms "false," "untrue," "misleading statements" or, "misstatements," rather than "misrepresentation").

In the instant case, should the Court find that Lieb's use of the term "misappropriation" constitutes rendering a legal conclusion, it should allow his use of the term "exfiltrate," as it is not used in the relevant statutes; and as Mr. Lieb testified, "exfiltrate" is a forensic term used in the industry. *See* Exhibit B at 198:17-20. The DTSA and TUTSA's definitions of "misappropriation" discuss acquisition or disclosure of trade secrets, while the definition of "exfiltrate" is narrower and specifically discusses stealing sensitive data from a computer.[2] Furthermore, "exfiltrate" is not a synonym for "misappropriate."[3]

### G. Lieb's Rebuttal Opinions are Neither Misleading, Nor Unfairly Prejudicial.

Defendants assert that Lieb's rebuttal opinion that Vaughn's report omitted three sources of information, without a basis for opining whether the sources exist, should be excluded under Federal Rule of Evidence 403 ("Rule 403") as unfairly prejudicial. ECF No. 258 at 26 – 28.

Rule 403 allows the court to exclude relevant "evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. "Unfair prejudice refers to evidence which tends to suggest decision on an improper basis." *Kush Enters. v. Mass. Bay Ins. Co.*, No. 3:18-CV-492, 2021 WL 3007263, at *9 (E.D. Tenn. July 15, 2021) (internal quotation marks omitted).

---

[2] "Exfiltrate" is defined as "to steal (sensitive data) from a computer (as with a flash drive)." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/exfiltrate (June 15, 2023).
[3] Merriam-Webster's list of 57 synonyms for "misappropriate" excludes the term "exfiltrate." *See* MERRIAM-WEBSTER THESAURUS, https://www.merriamwebster.com/thesaurus/misappropriate (June 15, 2023).

14

"District courts are given broad discretion in making a Rule 403 determination." *Id.* at *8. "Moreover, when confronted with competing opinions, the resolution of conflicting expert testimony is a factual issue that must be reserved for the trier of fact." *Covic v. Berk*, No. 11-2571-STA-DKV, 2013 WL 2288404, at *4 (W.D. Tenn. May 23, 2013); *see also Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir.2005) ("[C]ompeting expert opinions present the classic battle of the experts and it is up to a jury to evaluate what weight and credibility each expert opinion deserves.").

Defendants object to Lieb's opinion regarding Ridley's OneDrive account because it is allegedly based on potentially incomplete data, then contradictorily challenges Lieb's rebuttal report because it states that Vaughn's report omits certain information. Defendants fail to explain how Lieb's rebuttal opinion could result in a decision on an improper basis or on anything other than the merits. *See Kush Enters.,* 2021 WL 3007263, at *9 (denying the defendant's motion to exclude the testimony of plaintiff's two expert witnesses).

As is the case with Defendants' challenges to Lieb's opinion regarding Ridley's OneDrive account, Defendants' objections to Lieb's rebuttal report are a credibility issue for the jury, not an admissibility issue for the Court. Defendants' issues with Lieb's rebuttal report are a challenge to a factual assumption Lieb made about Vaughn's opinion, which goes "to the weight of the opinion rather than its admissibility." *See Ultima Servs Corp. v. U.S. Dep't of Agric*, No. 220CV00041DCLCCRW, 2023 WL 3211860, at *8 (E.D. Tenn. May 2, 2023). ChemTreat will have the opportunity to cross-examine Lieb at trial, on the basis for his rebuttal opinion. *See CapitalPlus Equity, LLC* 2022 WL 37354, at *2; *see also Am. Nat'l Propery & Cas. Co. v. Stutte,* No. 3:11-CV-219, 2015 WL 1641955, at *6 (E.D. Tenn. Apr. 13, 2015) (declining to bar the plaintiff's expert witness under Rule 403, reasoning the defendants failed

15

to note how the expert testimony would unfairly prejudice them, the defendants will have the opportunity to present their own expert on the issue, and excluding the plaintiff's expert while allowing the defendants' expert on the same issue would unfairly prejudice the plaintiff).

### III. CONCLUSION

As stated above, Defendants' objections to certain of Lieb's testimony addresses credibility issues and factual conclusions that are in the solve province of the jury, not this Court. In light of the foregoing, Plaintiffs request this Honorable Court deny Defendants' Motions to Exclude Certain Opinions of Laurence D. Lieb and admit Lieb's opinions in their entirety.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water

By: */s/ David J. Walton*
J. Gregory Grisham (TN BPR#013810)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 901.526.0431
Fax: 901.526.8183
ggrisham@fisherphillips.com

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

Edward G. Winsman
(*pro hac vice*)

FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.2142
Fax: 610.230.2151
ewinsman@fisherphillips.com

Pavneet Singh Uppal
(*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
Telephone: 602.281.3410
Fax: 602.281.3401
puppal@fisherphillips.com

COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

                                          */s/ David J. Walton*
                                          David J. Walton