# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>  Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>  Defendants. | No. 1:22-cv-050-TRM-SKL |

## DECLARATION OF COREY DEMARCO

I, Corey DeMarco, declare as follows:

1. I submit this Declaration in support of Plaintiffs' Response in Support of ChemTreat, Inc.'s Consolidated Motion to File Under Seal (Doc. 284) and Plaintiffs' Response in Support of ChemTreat, Inc.'s Motion to File Under Seal (Doc. 310), and as directed by this Court's June 23, 2023 Order (Doc. 307).

2. I am employed by Nalco Water, an Ecolab Company, as a Vice President. In that capacity, I am familiar with the confidential and proprietary business information of both Ecolab, Inc., ("Ecolab") and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water ("Nalco"), which are the Plaintiffs in this litigation. I make this declaration based on my own personal knowledge or based on information and belief where stated and can and would testify to the same if required to do so in a court of law.

3. Plaintiffs, among other things, are engaged in the highly competitive business of monitoring and controlling performance of industrial water treatment systems for clients in a wide range of industries including, but not limited to, food preparation, pulp and paper, agriculture,

manufacturing, refining, mining, power production, healthcare, pharmaceutical, and high-tech businesses.

4. Plaintiffs provide a broad spectrum of products and services to businesses throughout the United States. To that end, Plaintiffs partner with customers across a wide range of industries and develop solutions for such customers' specific water needs and business goals.

5. Plaintiffs have developed business templates, customer files, customer proposals, selling strategies and techniques, and other highly confidential and proprietary trade secret information based on, among other things: years of developing relationships with customers, building extensive knowledge regarding each customer; years of experience treating our customers' systems; and years of training our representatives to provide excellent value and service for our customers. In fact, Plaintiffs have an extensive, world-class training program for its employees. Plaintiffs' employees rely on this training as well as the use of Plaintiffs' existing forms and templates to further collect information regarding prospective and actual customers, develop sales and service strategies, and provide status reports to customers. Using this training, our employees collect and create the type of incredibly valuable information that Ridley uploaded and downloaded before leaving our company.

6. The information described above could have substantial competitive value to Plaintiffs' competitors, who could use the training materials, templates, proposal forms, and format of client presentations Plaintiffs' developed over years and in many cases at significant expense and use that information to compete with Plaintiffs.

7. Plaintiffs take substantial steps to protect its proprietary and confidential information, including use of employment agreements protecting confidential information, password-protected computer systems, and other measures.

8. I have been advised that, as part of the litigation Plaintiffs have filed against Defendants Anthony Ridley and ChemTreat, Inc. to protect their trade secret information, some of Plaintiffs' confidential and proprietary information is being submitted to the Court in connection with various motions. I have been further advised that, unless the information is maintained under seal, this information would be available to any interested member of the public, including potentially Plaintiffs' competitors.

9. I have reviewed the pleadings regarding the parties' position on maintaining certain documents under seal. Based on my knowledge of the information at issue and my years of experience working for Plaintiffs and in the industry, I can state that the following documents or portions of documents contain Plaintiffs' trade secret information and highly sensitive confidential business information and should be kept under seal rather than be available to the public.

10. I have reviewed the three-page attachment to a March 2, 2021 email Ridley sent to a ChemTreat employee that he characterized as a "business plan that [Ridley] prepared." This business plan, which I have been advised is JE-7 in the parties' Joint Appendix, was based on an Excel spreadsheet prepared over a substantial period of time by one of Plaintiff's employees. The spreadsheet includes certain formulas to make seals and business projections and is based on the categories of data that Plaintiffs factor into setting sales goals for its employees. In my opinion, Ridley must have believed this document had value to Plaintiffs' competitor, as he used it to prepare a draft business plan as part of his candidacy for employment with Plaintiffs' competitor, ChemTreat. This document could not be redacted to hide Plaintiffs' confidential and proprietary information, as the confidential information is fundamental to the assumptions regarding the categories of data and the calculations demonstrated in the document.

11. I have reviewed Plaintiffs' offer letter to Tyler Bates, a former employee of Plaintiffs who also left Ecolab to join ChemTreat. The only highly confidential information in the document that should be redacted is the information regarding salary, potential bonus amounts, and calculation of incentive compensation, as this information could be very valuable when Plaintiffs and a competitor are competing for talent in this highly competitive industry. The information is less than three years old, and Plaintiffs' compensation structure has not changed so significantly in that time that this information would not remain relevant to Plaintiffs' recruitment efforts and, as such, to a competitor's efforts to hire highly valued employees.

12. I have reviewed the template for a Program Administration Manual that was submitted as JE-25 in the Joint Appendix. While the information contained therein is highly confidential, the format of the document is also a valuable trade secret, one that would have immeasurable competitive advantage to any individual or company who wanted to model Plaintiffs' plans for treatment and follow-up for individual customers. It sets out in detail the information that Plaintiffs consider regarding the chemical composition of the water, specific amounts and products used in the treatment phase, and the fees charged for specific products and services provided as part of the particular project. Indeed, the format, and information included, is as important as the specific customer content in assessing the value of the information to a competitor. Although I am aware that, whenever possible, documents should be made available to the public as part of a judicial proceeding, this document in its entirety is one that a competitor could use to improve its own processes and to Plaintiffs' detriment, and I do not believe that this document can be redacted in a way that does not disclose highly sensitive and confidential business information.

13. The document submitted as JE-26 was titled Training Draft, but I have reviewed the document and in fact it is a service plan developed for a specific site of one of Plaintiffs' customers. It details the scheduled service tasks and applications for the specific customer location and would be highly valuable for any competitor looking to make a pitch to perform the same services as Plaintiff provides for that client. However, I believe that, with the client's name, specific tasks, products, and prices redacted, this document can be filed in the public record without causing competitive harm to Plaintiffs.

14. As I noted above, Plaintiffs are renowned for their training and development programs. I have reviewed JE-27 and recognized it as an internal PowerPoint presentation used to educate our employees on the best practices for dealing with closed loop systems, which are frequently employed in water management systems. It represents the accumulation of several years of knowledge and experience, developed through Plaintiffs' trial-and-error efforts to determine what works best, and what should be avoided, as it relates to the mechanical, operational, chemical, and monitoring aspects of the system. The document includes recommendations on the type and amount of particular chemical productions to be used, recommendations on system design, and other insider tips that Plaintiffs have developed over time. This document, which has been developed over time based on Plaintiffs' experience in the industry, would likely have a competitive advantage to other companies in this industry, who could assess how Plaintiffs approach closed loop systems and adjust accordingly; in short, these competitors would get the benefit of the proprietary information Plaintiffs accumulated over the years, but without having to do any of the underlying work. Because the document intermingles some publicly-available information along with the confidential and trade secret information Plaintiffs have developed and

refined over time, I do not believe it would be possible to easily separate out the confidential and sensitive business information that would have potential value to competitors.

15. I have reviewed JE-28, which is a personal service report prepared by one of Plaintiffs' employees for a specific customer. Upon review, I believe that the customer-specific information can be redacted and the report otherwise made available to the public; the customer-specific information could be highly valuable to a competitor who wants to compete with Plaintiffs for that specific customer's business, as it contains detailed information on the results of the analytics performed during the service visit.

16. I understand thar, among the documents Ridley is believed to have misappropriated is a copy of a seven-page summary of the proposed agreement between Plaintiffs and a customer, which is in the Joint Appendix as JE-29. The summary sets out the scope of the agreement, general description of the terms of the proposed agreement, and the action items that will be part of the arrangement between Plaintiffs and the customer. Knowing the proposed terms of a deal between Plaintiffs and a customer would be highly valuable to a competitor; even the general terms encompassed by the agreement – not just the terms specific to this customer – could have competitive value to one of Plaintiffs' competitors. Accordingly, I believe that the document as a whole could have competitive value and should not be disclosed to the general public.

17. Another document I have reviewed is the Billing Agreement/Scope of Work between Plaintiffs and a customer, identified in the record as JE-30. As with some of the other documents herein, the customer-specific information can be redacted and, without that information, the document can be filed publicly without disclosing Plaintiffs' highly confidential and sensitive business information.

18. JE-31 is an expense report from a training program Plaintiffs sponsored for its personnel. Plaintiffs' initial concern related to the disclosure of the identities of a number of current and former employees who have no involvement in this matter. However, upon further review, Plaintiffs understand that the limited intrusion into the personal privacy of these employees does not warrant redaction, and Plaintiffs no longer seek to have any portion of this document filed under seal.

19. As with many other documents at issue, the information that Plaintiffs are concerned about and seek to protect is the client specific information in JE-32, which is a quote for the sales price of some equipment. Pricing information is some of the most highly confidential sensitive information in this industry and such knowledge could facilitate a competitors' efforts to undercut Plaintiffs' pricing and potentially unfairly divert business from Plaintiffs. With the identifying information regarding the customer, the unit price and number of units, and total price redacted, Plaintiffs believe that its confidential and proprietary information is appropriately protected and the rest of the document can be filed in the public record without concern.

20. As mentioned above, Plaintiffs regularly train its employees, including in particular its sales personnel. The PowerPoint identified as JE-33 is a document used in such a training, and is intended to facilitate an interactive process that allows our sales team to practice and improve skills under the trained and experienced eye of Plaintiffs' more senior personnel. I believe the document includes key details of our sales strategy and would be the playbook for a competitor to understand and undermine Plaintiffs' business. However, with appropriate redactions, Plaintiffs can protect the most confidential and sensitive aspects of its training program.

21. A "scorecard" that complements the training document described above has also been submitted to this Court as JE-34. This document identifies the sales skills Plaintiffs identify

as critical for its sales team to have, and I believe that this information, particularly in combination with the other training materials, could have real value to a competitor who wanted to better understand how Plaintiffs develop and improve their own sales force. In particular, there was a single metric, where the description refers to some proprietary offerings of Plaintiffs, that Plaintiffs consider highly propriety, but Plaintiffs submit that, with that single bit of information redacted, the document can be filed so the public may access the other information and Plaintiffs are not likely to incur any substantial harm.

22. I have reviewed the document identified for me as JE-35, which contains the technical notes for a service visit to the same customer whose information was included in JE-28 and JE-30. The document contains confidential information concerning the customer's water system and Plaintiffs' proprietary information concerning the corrective actions recommended and/or taken to address various issues identified during the service visit. The customer information and limited information about certain of Plaintiffs' proprietary products should be redacted to protect tis valuable information, but with those redactions Plaintiffs have no objection to filing this information.

23. Plaintiffs, like many companies, often do presentations for valued customers; the lengthy PowerPoint presentation identified as JE-36 is just such a document. The PowerPoint contains a lot of general information on Nalco's business and customer service strategies, but also contains some confidential and proprietary information about the recent projects undertaken for this specific client, the cost savings realized as a result of those projects, and examples of the type of real-time data that customer can have access to through certain of Plaintiffs' analytics. Although Plaintiffs believe that this is a highly sensitive business document that would have substantial value for other companies in the industry, Plaintiffs believe that with appropriate redactions Plaintiffs'

highly sensitive business information can be protected. Accordingly, I understand Plaintiffs have already submitted a redacted version of this document, with the customer's name, the name of certain of Plaintiffs' employees who are not involved in this matter, and certain specific details regarding the services the Plaintiffs provided to that customer, blacked out.

24. Like many companies, Plaintiffs rely heavily on templates to make its daily operations more efficient and more consistent. Those templates were developed and refined over time, based on Plaintiffs' experience of what worked and what didn't. The document identified as JE-38 is an example of such a template; this particular template is for a proposal for business services to be sent to prospective clients. While Plaintiffs submit that the template as a whole represents Plaintiffs' highly sensitive business information, and it contains valuable information regarding what goes into the proposal and the usual terms and conditions of the sale; this information is not available to Plaintiffs' competitors. However, with appropriate redactions to hide information related to the payment terms, insurance coverage maintained by Plaintiffs, and projected savings as a result of the proposed services, Plaintiffs have no objection to the redacted document being filed in the public record.

25. JE-39 is a template for the proposed remote service plan for Plaintiffs to show prospective and actual customers how a remote service plan would operate. This template is confidential for the same reasons as JE-38, and comes with the same explicit confidential designation as JE-38. It could easily be converted by a competitor going after the same business opportunities as Plaintiffs. Upon review of the document, Plaintiffs submit that, with the portion a portion of the document that reflects specific parts of the process Plaintiffs believe can be monitored remotely and what may still require in-person support redacted, the document otherwise does not contain such highly confidential and sensitive information that warrant filing under seal.

26. I have been advised that Defendants want to file the expert report prepared by Plaintiffs' damages expert as part of the public record. I am familiar with the contents of the report, which was prepared by Dana Trexler. Her report is full of highly confidential information about Plaintiffs' business that could be of incalculable value to Plaintiffs' competitors. It includes information on Plaintiffs' customer attrition rates, customer retention rates, and detailed information on the per-customer sales and gross margin for a three-year period. This information is highly confidential and Plaintiffs take every precaution to protect this information from unnecessary disclosure, as it would be extremely valuable to its competitors. Indeed, Ms. Trexler only gained access to this information after she and her colleagues agreed to protect the confidentiality of this information. In particular, the information on specific customer sales, and the profit and loss associated with those sales, is highly confidential and sensitive business information. There does not appear to be any reasonable way to redact the document, since the highly confidential information infuses all of Ms. Trexler's opinions and cannot be easily separated out. Plaintiffs submit that the entire report, which contains some of Plaintiffs' most sensitive business information, should be maintained under seal in its entirety. In addition, any documents that are derived from the information contained in this report, including the rebuttal report submitted by ChemTreat, should also be maintained under seal.

27. Ms. Trexler relied on Plaintiffs' sales data in developing her opinions, and that sales data contains detailed information about volume of Plaintiffs' sales to specific customers, and will show whether such sales increased or decreased, and by what amount, in any given year. This information would be the easiest way for a competitor to identify which clients were high-volume targets and which clients might be ripe for picking based on decreased sales volume over time. This information, which is detailed in Exhibits 5 and 6 to the motion to exclude Ms. Trexler's

opinion, contain highly confidential business information and these documents should be maintained under seal. The same is true of the deposition excerpt of Karry Mackie, as the excerpted testimony is related to the same granular sales data that Ms. Trexler used in her report.

28. I understand that Defendants have submitted a copy of Plaintiffs' internal procedure for review of employee data in the context of an investigation of data security incident, which is Exhibit 6 to the motion to exclude the opinions of Plaintiffs' forensic computer expert, Laurence Lieb. I have been advised that this document is also Exhibit 12 to a motion for sanctions under Rule 37 and Exhibit 15 to a motion for spoliation sanctions. However, the same confidentiality concerns exist regardless of how or for what purpose Defendants purport to be using the document. This document sets out Plaintiffs' internal procedures for investigation of an employee-related information security issue and it is the result of Plaintiffs' iterative development over time of the appropriate procedure to identify, investigate, and address any internal incidents. Plaintiffs' work product in this regard is confidential and should not be disclosed to competitors and others to build on Plaintiffs' work product and efforts. Moreover, given the nature of the document, I do not believe that redaction would be a reasonable alternative.

29. I am advised that there are two documents at issue that show the file names associated with the documents that Plaintiffs contend Ridley misappropriated for use at ChemTreat. Specifically, Exhibit 7 to the motion to exclude Lieb's opinions is an export of the data loss prevention report that Plaintiffs ran in the wake of Ridley's departure. It lists thousands of file names that provide information on Plaintiffs' customers and prospective customers, services provided for those customers, and other confidential business information. Exhibit 9 to that same motion, an audit log, contains similar information. In short, this is Plaintiffs' customer list, and Plaintiffs treat this information as highly confidential; the potential value to a competitor of

knowing who Plaintiffs provide services to and at what locations is without measure. These documents should be withheld from the public and should be maintained under seal.

30. Finally, I have reviewed the document identified as JE-306, which I am advised ChemTreat has submitted as part of an Addendum to the Joint Appendix. I have also looked at Plaintiffs' Amended Responses to Certain of ChemTreat, Inc.'s First Set of Interrogatories, which I verified, and the portion of my deposition transcript that relates to a document derived from a similar template. Specifically, I have reviewed the interrogatory response and the portion of my sworn deposition testimony that explains that the template at JE-306 contains confidential and sensitive business information and should be kept under seal. This remains true and correct as of today.

31. As described in more detail in the Interrogatory Responses and my sworn deposition testimony, the formulas used in this business planning template is based on Plaintiffs' years of experience, which informs how the formulas are set and the data used in completing the projections. This information is highly confidential to Plaintiffs, disclosed to only a limited number of Plaintiffs' personnel, and not shared with third parties. A competitor would be able to use the document to understand how Plaintiffs' set business plans for specific regions and potentially adjust their own business strategies to gain a competitive edge against Plaintiffs.

32. Plaintiffs respectfully submit that they have taken diligent steps to ensure that their trade secrets, confidential information, and proprietary and sensitive business information is not subject to unwarranted disclosure, and have requested that documents be filed entirely under seal, rather than as redacted documents, only where Plaintiffs had a reasonable and good-faith belief that redaction was not a reasonable alternative to protect the information based on the nature of

the document and the extent to which it represents Plaintiffs' sensitive business information, work product, and trade secrets.

I declare under the penalty of perjury under the laws of the State of Wisconsin and the United States of America that the foregoing is true and correct, and that this declaration was executed on June 29, 2023.

_____
Corey DeMarco