UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, | |
| Plaintiffs, | No. 1:22-cv-00050-TRM-SKL |
| v. | Hon. Travis McDonough |
| ANTHONY RIDLEY and CHEMTREAT, INC., | Magistrate Judge Susan K. Lee |
| Defendants. | |

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR RULE 37(E) SPOLIATION SANCTIONS

INTRODUCTION

Defendants Anthony Ridley ("Ridley") and ChemTreat, Inc ("ChemTreat") spoliated critical pieces of evidence *after* receiving preservation letters from Plaintiffs Ecolab Inc. ("Ecolab") and Nalco Company, LLC ("Nalco") (collectively, "Plaintiffs"). As set forth in Plaintiffs' Memorandum in Support of Motion for Rule 37(e) Spoliation Sanctions ("Memorandum"), Defendants spoliation was intentional, and the evidence that Defendants destroyed cannot be recovered. For the reasons set forth in Plaintiffs' Memorandum and herein, the Court should impose appropriate sanctions on Defendants for their purposeful misconduct.

I. **PLAINTIFFS' REQUEST FOR RULE 37(E) SANCTIONS IS BASED UPON THE CONDUCT OF BOTH DEFENDANTS**

ChemTreat argues that should not be subject to any sanctions because it was Ridley who destroyed evidence. (Doc. 314 at 2-12). But this argument fails to account for ChemTreat's admitted wiping of the laptop that it issued to Ridley. (Doc. 314-1 at 2). While ChemTreat

1

purportedly conducted a forensic investigation after receiving Plaintiffs letter in February 2022, it instructed Ridley to return his ChemTreat laptop to its corporate headquarters rather than the computer forensic expert whom it had engaged. (Doc. 293-1 at 407-409; Doc 293-10 at 7-8). Pete Mumpower, the ChemTreat IT employee who received the computer, had not received a litigation hold notice. (Doc. 293-13 at 24). He then wiped all information contained on the ChemTreat computer that, had it been retained, would have unequivocally established ChemTreat's use of misappropriated Nalco information. (Doc. 314-1 at 2). Mumpower was clear that if he had received a litigation hold, he would not have wiped Ridley's computer. (Doc. 293-13 at 28:10-16). ChemTreat cannot deny (in fact, it has admitted) that it spoliated evidence, and it should be sanctioned.

## II. PLAINTIFFS HAVE ESTABLISHED A BASIS FOR RULE 37(E) SANCTIONS

Neither Ridley nor ChemTreat can dispute that, as of February 9, 2021, they had a duty to preserve all data relevant to the case. In its Response, ChemTreat spends many pages detailing its purported efforts to avoid the loss of data, but they focus on various ChemTreat systems. (Doc. 314 at 4-6). Multiple ChemTreat employees testified that their ChemTreat laptop computer was where they stored most documents, but the ChemTreat IT employee who wiped Ridley's computer acknowledged not only that we did not receive a litigation hold (until after he wiped the computer), but that he was not aware (as of his testimony a year later) of whether Ridley's computer was ever the subject of a litigation hold. (Doc. 293-13 at 24:5-14, 28:23-29:6). If Ridley's laptop itself, a prime repository of data, was never subject to a litigation hold, ChemTreat cannot possibly argue that it took reasonable steps to preserve it. As for the WD Drive and USB devices discussed in Plaintiffs' Motion, ChemTreat has never offered any steps, much less reasonable ones, that it took to preserve them (despite becoming aware of those devices during the investigation it purported

conducted). And Ridley, who took affirmative steps to delete documents from those devices, has absolutely no room to make arguments about his preservation efforts.

Finally, Plaintiffs have more than met their burden when it comes to establishing that they suffered prejudice as a result of Defendants spoliation. The CrowdStrike report offered up by ChemTreat is a poor replacement for what Plaintiffs would have been able to discovery if they had access to Ridley's ChemTreat computer before it was spoliated. In fact, there is considerable evidence that CrowdStrike report is inaccurate. For example, while ChemTreat's expert report states that the CrowdStrike report shows <u>all</u> human interactions with Ridley's laptop. (Doc. 293-10 at 35), it does not contain any logging of Ridley's multiple deletions of data from the WD Drive using his ChemTreat laptop. (*Id.*). Discrepancies such as these only highlight the prejudice suffered by Plaintiffs as a result of the spoliation of Ridley's ChemTreat computer. The prejudice is even more obvious, of course, when it comes to Ridley's deletion of Plaintiffs' data from multiple devices *after* receiving a preservation letter.

The suggestion by ChemTreat that the prejudice is not obvious defies reality. Each of the devices at issue—the ChemTreat laptop, the WD Drive, the other USB devices—stored and/or were used to access Plaintiffs' confidential and trade secret information. Absent Defendants' spoliation, Plaintiffs would be able to ascertain—and present to a jury—exactly which of Plaintiffs' documents and files was contained on those devices or accessed with the, what data was contained within those documents and files, where those documents and files first came from, to what other devices those documents and files maybe have been transferred or copied. Such information would, in short, establish what information Ridley misappropriation from Plaintiffs, the extent of ChemTreat's complicity in that misappropriation, and how the misappropriated data may have been used.

While Plaintiffs have considerable evidence of Defendants wrongdoing, they would be in a much better position to prosecute each and every one of their claims if Defendants had not spoliated valuable evidence.

### III. PLAINTIFFS ARE ENTITLED TO RULE 37(E)(2) SANCTIONS

Plaintiffs established that Ridley and ChemTreat spoliated evidence with the requisite level of intent and are therefore entitled, pursuant to Rule 37(e)(2), to the sanctions sought in their Motion.

Both Defendants spoliated evidence *after* receiving Plaintiffs' document preservation letter. Ridley deleted files from Nalco USB drives the same day as receiving the letter, and then scrubbed the WD Drive only a few days later. (Doc. 293-6 at ¶¶ 35-38; Doc. 293-15 at ¶¶ 85-87). ChemTreat wiped Ridley's computer nearly a month after receiving Plaintiffs letter. (Doc. 314-1 at 2). Defendants' selective preservation of evidence further highlights their intent. While ChemTreat argues that the CrowdStrike report it produced provided evidence that Ridley accessed Nalco documents on its system, that report was extremely limited and is not intended to be used as a forensic tool for identifying trade secret misappropriation. (Doc. 293-14 at ¶¶ 46-49, 53). Similarly, the fact that Ridley returned certain USB drives to Plaintiffs (and only after demand by counsel) does not make up for the fact that he refused, until being ordered to do so by the Court, to return the WD Drive, which had contained back-ups of his entire Nalco computer, but which he had wiped before returning. And while ChemTreat contends that the record defeats Plaintiffs allegation that it did not initiate a litigation hold, the record is clear that the ChemTreat employee who wiped Ridley's computer never received a litigation hold. (Doc. 293-13 at 24). ChemTreat further argues that its failure to take any steps to preserve the WD Drive and prevent Ridley from deleting the documents stored on it should not be used as evidence of its intent, because it had not

control over Ridley's personal device. (Doc. 314 at 19). But ChemTreat has not offered any evidence that it even attempted to collect the numerous devices that Ridley used to access Nalco information on his ChemTreat computer. ChemTreat benefitted tremendously from Ridley's spoliation of the WD drive (as well as his spoliation of other devices), and it cannot on one had claim that it conducted a full investigation as soon as it received allegations of his misappropriation, but on the other hand claim that it had no allegation to even attempt to collect any devices used by Ridley. As for the Defendants' technological sophistication, both Defendants are well-versed in technology and should have been able to avoid and/or limit the spoliation that occurred. ChemTreat, despite its resources, limited its efforts to recover information from Ridley's wiped computer to utilizing a malware program. (Doc. 293-14 at ¶¶ 46-49, 53). It did not, like Plaintiffs, utilize a Data Loss Prevention program that gathers significantly more data. And Ridley, by, *inter alia*, his use of a sophisticated computer wiping program called C-cleaner, evidenced that he knew exactly what he was doing what it came to covering his tracks to prevent Plaintiffs from discovery the extent of how and why he used the WD Drive. (Doc. 293-14 at ¶¶ 86-92).

All of these factors, particularly when combined with Defendants' extensive misconduct and misrepresentations through discovery in this case (Doc. 293 at 18-23), create a clear inference of intent by the Defendants to deprive Plaintiffs of valuable evidence needed to prosecute their case.

## IV. PLAINTIFFS ARE ENTITLED TO RULE 37(E)(1) SANCTIONS

Even if the Court declines to sanction Defendants pursuant to Rule 37(e)(2), sanctions are still appropriate under Rule 37(e)(1). First the Court should prohibit Defendants from taking the position that Ridley did not possess, access, and/or use Plaintiffs confidential and trade secret information (1) contained on the WD Drive during his ChemTreat employment and (2) utilizing

5

his now-spoliated ChemTreat computer. It should also be taken as established that Ridley stored Plaintiffs' confidential and trade secret information on the WD Drive and accessed and used this information thereafter on behalf of Defendants utilizing his ChemTreat assigned laptop. As Ridley deleted the contents of the WD Drive, and ChemTreat deleted the contents of Ridley's ChemTreat computer, thus preventing Plaintiffs from both presenting to the Court (and the jury) the full extent of the Nalco information on those devices as well as how Defendants utilized that information, such prohibitions would be the least restrictive means of curing the prejudice to Plaintiffs cause by Defendants' spoliation. Such sanctions are remedial, as they put Plaintiffs in the position they would have been in had Defendants not spoliated evidence. ChemTreat contends, without explanation, that such sanctions are "functionally dispositive as to Plaintiffs' statutory misappropriation claims." (Doc. 312 at 24). But such sanctions, unlike Plaintiffs' request for entry default judgment against Defendants under Rule 37(e)(2), do not relieve Plaintiffs' of their obligation to meet their burden of proof on each claim.

The Court also should require ChemTreat, in the alternative, to produce a copy of Ridley's contacts that he copied to the ChemTreat system from a Nalco USB drive as well as an image of his ChemTreat iPhone. ChemTreat does not deny that it has the ability to do each of these. Both measures are curative, as they represent alternative sources of evidence that would have been found on the spoliated devices. Finally, contrary to ChemTreat's assertion, such sanction are certainly within this Court's "broad discretion" to impose sanction for spoliation. *See Adkins v. Wolever (Adkins II)*, 554 F.3d 650, 653 (6th Cir. 2009) (en banc).

## V. CONCLUSION

Based on the foregoing, as well as Plaintiffs Memorandum, Plaintiffs respectfully request that this Court find that ChemTreat and Ridley caused the spoliation of ESI in violation of Rule 37(e)(2) with the intent to deprive Plaintiffs of the ESI, and enter default judgment or, in the

6

alternative, to give the jury an adverse inference instruction. Absent entry of default, Plaintiffs ask the Court to also grant relief under Rule 37(e)(1) and order remedial measures as requested in Plaintiffs' Motion.

Dated this 10th day of July, 2023.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By: /s/ David J. Walton
J. Gregory Grisham (TN BPR#013810)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 901.526.0431
Fax: 901.526.8183
ggrisham@fisherphillips.com

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
dwalton@fisherphillips.com

Edward G. Winsman
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.2142
Fax: 610.230.2151
ewinsman@fisherphillips.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

/s/ David J. Walton
David J. Walton