**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,

Plaintiffs,

v.

ANTHONY RIDLEY, and CHEMTREAT, INC.,

Defendants.

Case No. 1:22-cv-00050-TRM-SKL

Hon. Travis McDonough

Magistrate Judge Susan K. Lee

**PLAINTIFFS' RESPONSE IN OPPOSTION TO**
**CHEMTREAT'S MOTION TO STRIKE PORTION OF LIEB'S TESTIMONY**

This Court should reject the Motion to Strike Portions of Lieb's Declaration ("Motion) filed by Defendant ChemTreat, Inc. ("ChemTreat"). Plaintiffs Ecolab, Inc., and Nalco Company, LLC (collectively "Plaintiffs" or "Ecolab") have more than satisfied their obligations under Fed. R. Civ. P. 26(e) and have provided ChemTreat much more information than required by the Rules. ChemTreat's efforts to strike portions of the Declaration of Plaintiffs' computer forensic expert, Laurence Lieb (the "Lieb Declaration"), is another one of many attempts to hide the full scope of their misconduct behind alleged procedural deficiencies.

## I. FACTUAL BACKGROUND

On March 2, 2023, just three weeks after receiving an evidence preservation notice from Plaintiffs, ChemTreat inexplicably wiped Ridley's work laptop. ChemTreat claims this was done via "administrative error." (D.E. 315-7 at p. 11) At this time, ChemTreat used a malware detection program called CrowdStrike. (*Id.* at p. 35). ChemTreat asserted that CrowdStrike recorded every human interaction between Ridley and his (wiped) work computer. (*Id* at p. 11-12). Trying to

show that Plaintiffs were not prejudiced by ChemTreat's inexcusable wiping of Ridley's work laptop, ChemTreat promised to produce a report from CrowdStrike for Ridley's now-wiped laptop. Instead, on December 30, 2022, ChemTreat produced the raw data from the CrowdStrike program. This consisted of over 12,000,000 lines of raw data. ChemTreat produced this data in a format that made the CrowdStrike data incredibly difficult to search. When asked to produce this data in an excel format, ChemTreat flatly refused. ChemTreat also did not provide access to the CrowdStrike software so Plaintiffs' expert, Lieb, could search and read the data.

As a result, Lieb had to find different ways to search through the 12,000,000 lines of CrowdStrike raw data. He tried to index the data (i.e., you index data to make it easier to search) using a forensic tool. The raw CrowdStrike data was so voluminous and dense that multiple forensic tools used by Lieb were unable to access it. (D.E. 315-4 at 287:22-25). Ultimately, Lieb had to use the Notepad app in Microsoft Office to search the CrowdStrike data *one word at a time*. Because he had 12,000,000 lines of data to review, this took a substantial amount of time and effort.

Plaintiffs filed Lieb's initial expert report on February 24, 2023. (D.E. 315-2). At the outset of his report, Lieb noted:

> I reserve the right to render additional opinions, to supplement or amend the opinions in this report, and to provide additional grounds for those opinions based on my ongoing analysis of the materials provided to me or as may be required by events that occur during the course of this Litigation, including but not limited to responding to or analyzing positions taken by Ridley or his experts.

(*Id.* at ¶ 9). Lieb filed a rebuttal report to ChemTreat's forensic expert, James Vaughn, on March 20, 2023. (D.E. 315-3). On April 17, 2023, nearly two months after the filing of Lieb's initial expert report, and nearly one month after the filing of his rebuttal report, Plaintiffs took Ridley's deposition. The Lieb Declaration, portions of which ChemTreat seeks to strike, was filed on June

17, 2023 as part of Plaintiffs' Motion for Rule 37(e) Spoliation Sanctions. (D.E. 293-14). It accomplishes exactly what Lieb reserved the right to do in Paragraph 9 of his initial report.

## II. LIEB'S DECLARATION DOES NOT INCLUDE IMPROPER OR UNTIMELY NEW OPINIONS

The portions of the Lieb Declaration that ChemTreat seeks to strike are summarized below, along with a brief explanation as to why the paragraph(s) were included in the Lieb Declaration:

- ¶ 17: Lieb states that, after filing his initial and rebuttal expert reports, he was able to find evidence in the CrowdStrike data that Defendant Anthony Ridley ("Ridley") connected a total of eight external USB drives to his ChemTreat laptop. This contradicted prior assertions by ChemTreat. Lieb found this evidence through his continued analysis of the raw CrowdStrike data.

- ¶¶ 18-21: Lieb states that Vaughn's report fails to mention several drives that were attached to Ridley's ChemTreat laptop, including two Lexar flash drives, a NY Technologies flash drive, and a UDisk. Lieb found this evidence through his continued analysis of the raw CrowdStrike data.

- ¶ 22: Lieb notes that, per his original report, he was able to recover some deleted files from the UDisk drive and that he provided a forensic image of these files to Mr. Vaughn.

- ¶¶ 23-26: Lieb identifies additional deleted files that he recovered from the UDisk. These were files that Ridley tried to delete from the UDisk the same day he received Plaintiffs' preservation notice. (D.E. 315-2 at ¶¶ 32-38). These files were part of the forensic image that Lieb sent to ChemTreat's expert, Vaughn.

- ¶¶ 32-35: Based on his continued analysis of the CrowdStrike raw data, Lieb noted that Vaughn failed to mention that several other devices that were connected to Ridley's ChemTreat laptop: an Amazon Basics drive (connected on July 9, 2021); an Apple iPad

(connected on August 3, 2021 and October 21, 2021); and a general USB Flash Drive (connected on July 22, 2021 and October 1, 2021)[1]. ChemTreat already had this information in its possession for several months. Indeed, ChemTreat had access to this data (and the CrowdStrike software to properly and expeditiously search it) since the beginning of this case.

- ¶¶ 37-38: In these paragraphs, Lieb details how he was able to receiver a file named "Ridley Contacts.CSV" from the generic USB drive. This is the file with the customer contact information that Ridley downloaded and took from Ecolab. Lieb also notes that Ridley deleted this file form the generic USB drive on February 9, 2022—the same day Ridley received Plaintiffs' preservation notice. Lieb further notes that the CrowdStrike log shows that Ridley opened this same file on his ChemTreat computer on October 1, 2021. This contradicted Ridley's April 2023 deposition testimony that he opened his file in July 2021, and this information was not available to Lieb until after Ridley's deposition was taken.
- ¶¶ 39-43: Lieb notes that, based on his continued analysis of the CrowdStrike data, he found that Ridley created a folder called "Nalco" on either his ChemTreat laptop, a personal (unaccounted for computer), or his ChemTreat OneDrive account. Despite having access to this information, Vaughn failed to mention this in his report. Lieb further states that he believes his "Nalco" folder was located on the desktop of Ridley's (now wiped) ChemTreat computer. Lieb further notes that he found that Ridley accessed this folder at least seven times between February 9, 2022 and February 20, 2022. This was, of course, right after Ridley received Plaintiffs' preservation notice on February 9, 2022. Lieb further

[1] The Declaration refers to these dates as 2022, but this is an error. It should be 2021.

notes that the CrowdStrike logs do not show what specific files Ridley was interacting within this "Nalco" folder, which Lieb said was highly likely on Ridley's (now wiped) ChemTreat laptop.

- ¶¶ 44-45: In Ridley's deposition, he claimed that he copied files to the LaCie drive to because they had" "personnel" files on his Ecolab OneDrive account. Here, Lieb is giving notice to Defendants that he searched the Digital Guardian Report for the term "personnel" and, contrary to Ridley's deposition testimony, found no hits for that term. Ridley's deposition occurred nearly two months after Lieb's initial expert report was due, which is why Lieb's initial report reserved the right, *inter alia*, to respond to and analyze subsequent positions taken by Ridley and subsequent information that became available in discovery.
- ¶¶ 46-52: Here, Lieb conducts a forensic analysis relating to Ridley's deposition testimony. Ridley testified that he deleted specific files after he found them on the WD Drive[2] that he connected to his (now wiped) ChemTreat laptop. Lieb, however, found no evidence of these deletions (or any others) on the CrowdStrike logs. Further, Ridley testified that he accessed the WD Drive in August 2021to downloaded pictures from a "deer camera" to his ChemTreat computer. Here, Lieb is providing notice to ChemTreat that he found no evidence in the CrowdStrike logs that Ridley downloaded a "deer" picture. Lieb also notes that he found evidence of only two pictures in the entire 12,000,000 lines of CrowdStrike data. Both of these pictures were accessed on July 21, 2021.[3] One was a headshot; another was called "IMG_1864.jpg." This contradicts Ridley's testimony that

[2] The WD Drive is a personal external hard drive that Ridley used to back-up his Nalco computer. He also saved other Nalco files to the WD Drive as late as 2020 and used the WD Drive after he joined ChemTreat.
[3] Here, Lieb says July 2022. This is an error. He meant July 2021.

he connected the WD Drive to his ChemTreat laptop in August 2021 to transfer several deer pictures.

- ¶ 53: Lieb reiterates that the CrowdStrike software is not a forensic tool. It is for malware detection only. Lieb addressed this point in his prior reports. (D.E. 315-3 at ¶¶ 15, 60). This is not a "new" opinion, to the extent it even constitutes an opinion.

- ¶¶ 54-56: Ridley testified that he connected the WD Drive to his ChemTreat computer in September 2021 to download more pictures to his ChemTreat computer. In this paragraph, Lieb provides notice to Defendants that he searched the CrowdStrike data and found no evidence that Ridley downloaded pictures from the WD Drive to his ChemTreat computer in September 2021 (or any other time). This directly responds to the deposition testimony that was not available to Lieb at the time his expert report was submitted.

- ¶¶ 57-67: Lieb outlines several areas of his analysis of the CrowdStrike logs do not support Ridley's deposition testimony. In ¶¶ 60-62, for example, Lieb states that Ridley's testimony that he reorganized the files on the WD Drive in January 2022 does not comport with the evidence in the CrowdStrike data. Specifically, Lieb provides the Defendants with notice that his analysis of the CrowdStrike logs show that Ridley accessed only 1-2 files on the WD Drive in January 2022. This directly contradicts Ridley's testimony that he accessed and deleted hundreds or thousands of Nalco files on the WD Drive in January 2022.

- ¶ 68-69: Ridley testified that once he found three Nalco flash drives that he failed to return when he joined ChemTreat, he "set these drives aside" and "did not reconnect" them to any device. Here, refuting Ridley's sworn testimony, Lieb indicates that Ridley actually reconnected two of the three Nalco flash drives to his (wiped) ChemTreat laptop.

- ¶¶ 70-79: Lieb provides notice of additional deficiencies in Jim Vaughn's expert report that were revealed after Ridley's April 2023 deposition. These paragraphs are intended to assess Ridley's deposition testimony that he had numerous, significant file interactions with the WD Drive (while it was connected to his ChemTreat computer), testimony that, as Lieb explains, is not supported by the CrowdStrike data, and was not available to Lieb before Ridley gave his deposition testimony.
- ¶¶ 80-84: Based on his continued analysis of the CrowdStrike data, Lieb provides Defendants with notice of his additional criticisms of Vaughn's report in light of Ridley's deposition testimony. Lieb also puts the Defendants on notice that he disagrees with Ridley's deposition testimony that he never owned a personal computer. Lieb explained that he disagrees with this testimony because Ridley—on February 9, 2022—created a folder on one of the Nalco flash drives called "Files from Ridley's personal computer."
- ¶ 85: Lieb explains that he has no explanation why Vaughn failed to interview Ridley; failed to analyze the WD Drive; failed to analyze Ridley's personal email account; and failed to analyze Ridley's personal OneDrive account.
- ¶ 87: Lieb explains that his continued analysis of the CrowdStrike logs show that Ridley connected the WD Drive to his ChemTreat computer on nine different days, including: July 21, 2021, August 17, 2021, August 18, 2021, August 20, 2021, August 21, 2021, August 22, 2021, December 12, 2021, January 28, 2022, and January 30, 2022. This directly contradicts Ridley's deposition testimony where he claimed that he connected the WD Drive to his ChemTreat computer only four times.

Notably, these sections are based primarily on Lieb's continued analysis of the CrowdStrike data and, in particular, his follow-up analysis based on Ridley deposition testimony,

which occurred nearly two months after initial expert reports were due. Further, from the beginning of this case, ChemTreat has had access to the CrowdStrike logs and CrowdStrike's software that is designed to read, search, and create reports based on the log data. Lieb tried to get access this this software. CrowdStrike denied his request for a trial license. Defendants refused to provide the CrowdStrike in a more usable format. Thus, Lieb has continued analyzing the data in an effort to put Plaintiffs in the same position of knowledge where ChemTreat has rested comfortably since the beginning of this case. There are no new or late disclosures; all Lieb has done is taken information and testimony he did not have at the time his expert report was due and complete the analysis as best he could in light of the obstacles Defendants placed in his way.

## III. PLAINTIFFS WERE ENTITLED TO SUBMIT LIEB'S DECLARATION BECAUSE SIGNIFICANT AND MATERIAL DISCOVERY WAS COMPLETED AFTER LIEB'S INITIAL EXPERT REPORT WAS DUE

Contrary to ChemTreat's insinuation, Plaintiffs are eager for the opportunity to present their claims to the jury and the need to provide Lieb's updated Declaration was the result of Defendants' – in particular Ridley's – failure to provide Plaintiffs with the necessary information for Lieb to properly prepare his expert report. Disclosures that occur after the deadline under Rule 26(a) are permissible if the disclosure was either harmless or substantially justified. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). Here, in light of the circumstances that compelled Plaintiffs to submit Lieb's Declaration on June 17, Plaintiffs respectfully submit that *both* criteria are satisfied.

### A. The Lieb Declaration Does Not Contain Harmful "New" Opinions Because His Conclusions Are Based on Information ChemTreat Had or Should Have Had and Defendants Intentionally Hindered Lieb's Access to Such Information

ChemTreat states that "Plaintiffs' Rule 26 violations are indisputably harmful to ChemTreat," *see* Brief at 18 (Doc. 316), asserting that this injury results from "Plaintiffs' efforts

to revive discovery at this stage, and to shift the factual landscape that lies at the foundation of the parties' pending spoliation, Daubert, and summary judgment briefing, inherently prejudices ChemTreat." *See id.* Respectfully, ChemTreat's objection is driven by the fact that Plaintiffs, through diligence and directed discovery efforts, finally obtained the information that permitted Lieb to complete his expert analysis; any "harm" results only from the fact that Lieb's disclosure further confirms Ridley's unmistakable misconduct and, by extension, ChemTreat's liability for abetting and facilitating that misconduct.

In the Sixth Circuit, a court considering whether a party would be harmed by a late disclosure should take into account "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-CV-12606, 2020 WL 1502004, at *8 (E.D. Mich. Mar. 30, 2020) (citing *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015)).

First, ChemTreat cannot credibly claim that it is surprised by this evidence. As detailed at greater length earlier herein, there was nothing in the Lieb Declaration that was not either a supplementation of his earlier opinions based on additional information obtained during the two months of discovery that occurred ***after*** Lieb's initial report was submitted nor an opinion based on information that had not previously been available to Plaintiffs or Lieb. The Crowdstrike report that is at the center of so much of the Lieb Declaration was uniquely in ChemTreat's possession and it was ChemTreat's refusal to permit Lieb a license to review the data using the proprietary software that substantially delayed Lieb's ability to conduct a proper analysis of it. Moreover, as noted previously, the Lieb Declaration as it relates to the Crowdstrike report does not constitute

opinion, but simply an assessment and summary of the objective facts that can be discerned from the raw data that ChemTreat provided to Plaintiffs.

Second, contrary to ChemTreat's assertion that not striking substantial portions of the Lieb Declaration will result in a significant delay of the trial date, there is no reason to believe that ChemTreat cannot test the Lieb Declaration in the almost two months between now and the first day of trial. ChemTreat has had access to the information it needs to assess the Lieb Declaration for far longer than Plaintiffs have. Plaintiffs have already requested that this Court grant it leave to pursue limited additional discovery to probe some late-disclosed information from Ridley but has not access this Court to move the trial date; if ChemTreat insists that it is necessary, Plaintiffs will similarly produce Lieb for a deposition limited to any opinions in his Declaration that ChemTreat contends are "new"; to be clear, these new opinions are different than Lieb simply detailing certain indisputable facts that he was able to determine based on his forensic expertise once the deposition testimony provided him the additional information needed to identify those facts, which does not warrant additional deposition testimony from Lieb.

ChemTreat has ample time to review and respond to the Lieb Declaration. Pre-trial disclosures are not due for another two weeks, giving ChemTreat plenty of time for its own expert to consider the contents of the Lieb Declaration and prepare to rebut those contents at trial. Moreover, it bears repeating that it is Defendants' sharp discovery practices and Ridley's ever changing story regarding what he saved, copied, and deleted that led Plaintiffs' expert to believe that an additional Declaration was necessary to address the version of events that only came to light ***after*** Ridley testified under oath and provided additional detail on both his misdeeds and his efforts to hide that misconduct. It should not take ChemTreat long to respond to the information that it had and intentionally made more difficult for Plaintiffs to consider.

For those same reasons, there is no reason that the Lieb Declaration has to delay or disrupt the trial schedule. ChemTreat had the Declaration for two weeks before moving to strike certain portions, and this delay allows ChemTreat to artificially bolster its argument that it does not have time to address the Declaration and that the disclosures in the Declaration "are most prejudicial to ChemTreat." *See* Brief at 19. As noted above, the disclosure came after the close of discovery because, as a result of the schedule, the initial report was due two months ***before*** the close of discovery, and Ridley's deposition, which was taken towards the end of the discovery period, required Lieb to supplement his prior submission to address the additional information learned in the final weeks of discovery. Nor has ChemTreat explained ***how*** the additional disclosures would have impacted the briefing on summary judgment or spoliation, and the deadline for submission of motions *in limine,* to the extent some of the disclosures are otherwise not admissible, has not passed. The Lieb Declaration has not changed his opinions, merely provided additional evidentiary support for those opinions, and that evidentiary support has at all times been available to Defendants. And as to the argument that ChemTreat is prejudiced because certain exhibits to the Lieb Declaration had not previously been produced, these documents are available in spite of Ridley's intentional and malicious efforts to hide this evidence and to prevent Plaintiffs from access to their own confidential information and trade secrets. It hardly seems fair to contend that Plaintiffs cannot rely on the documents at issue because they did not manage to recover certain of the information Ridley spoliated earlier.

The final two factors clearly weigh in Plaintiffs' favor. The additional information contained in Lieb's disclosure is critical to showing the steps Ridley took to hide his misconduct and the type of information that he stole from Plaintiffs in the first place. And Plaintiffs have explained at length why this information took so long to obtain, be analyzed, and be distilled into

the Lieb Declaration. The crux of this motion is the same as the entire case – Defendants want to be able to hide the evidence of their misconduct and, if Plaintiffs discover that evidence, Defendants argue that Plaintiffs' methods of using established forensic techniques and legal discovery to uncover those misdeeds is unfair or harm Defendants.

In short, ChemTreat cannot show that the Lieb Declaration is harmful as that term has been used in the context of late disclosures, and, in light of the well-substantiated obstacles Defendants have placed in Plaintiffs' way, Plaintiffs respectfully suggest that the only harm to ChemTreat is that its misconduct was eventually uncovered.

**B. The Lieb Declaration Was Substantially Justified.**

Not only are Lieb's new opinions harmless, but they are also substantially justified. It is true that Lieb had some of the facts and data required to reach the conclusions made in the Lieb Declaration; however, Lieb was not aware of the numerous factual assertions that Ridley would make during his deposition that took place months after Lieb first published his report. Rule 26(a)(2) provides a party with 30 days to disclose "evidence ... intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "Under Fed. R. Civ. P. 26(e)(2), an expert may supplement or correct his opinions after issuing his report and being deposed." *Aguirre v. Mitsubishi Motors N. Am.*, No. 3:11-cv-00225, at *14 (M.D. Tenn. Sep. 28, 2012).

The Sixth Circuit has noted that Rule 26 contemplates that an expert may "supplement, elaborate upon, [and] explain" his expert report. *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006). The only restriction placed on an expert's ability to supplement or elaborate is that the "courts should not permit experts to testify as to a wholly new, previously unexpressed opinion." *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724,

760 (N.D. Ohio 2014) (internal citation and quotation marks omitted). For example, new statistical analyses used to rebut claims and arguments are considered to be supplemental to the extent that they reaffirm the conclusions in the expert's original report. *Equal Emp't Opportunity Comm'n v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1049 (E.D. Tenn. 2015). Similarly, Lieb's continued analysis of the existing data, based on additional information obtained during discovery, should not be excluded. *See id.*

As noted above, in determining whether an initial failure to provide information under Rule 16(a) is "harmless" or "substantially justified," the Sixth Circuit relies on the five factors outlined in *Howe v. City of Akron*:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). Each of these factors decidedly favors Lieb's ability to supplement his report following Ridley's deposition to the extent Plaintiffs need to demonstrate that this supplemental disclosure is substantially justified.

First, it should come as no surprise that Ridley's factual statements as to his use of the hard drives, storage of files, and access of the drives following his departure from Ecolab would be reviewed by Lieb. Lieb had access to the data necessary to confirm or deny each of these claims. The only obstacle was that Lieb was unaware of what claims Ridley would make during his deposition which occurred after Lieb's initial report was published. Second, Ridley can easily cure this alleged "surprise" by supplementing his own testimony or further clarifying his statements. Lieb did not deviate from the specific assertions made by Ridley in his analysis. Third, this evidence will not disrupt the trial in any way. Lieb did nothing more than provide relevant analysis based on data that was already produced. Fourth, this analysis is vital to the resolution of

the case. Ridley's use, access, and deletion of the files on his hard drives speaks directly to his culpability. The truthfulness of the statements made in Ridley's testimony are determinative factors in the case and must be resolved. Fifth and finally, Lieb did not delay in the disclosure of the evidence. Lieb's first report spoke to the issues raise in the litigation up the point of his report. He further supplemented and reaffirmed his analysis when additional assertions were made by Ridley at his deposition. Had Ridley's deposition taken place prior to Lieb's initial report, all the same issues would have been analyzed and addressed without the need for a supplemental report. Lieb provided analysis as soon as he was able to do so.

In sum, the Rule 26 allows for reasonable supplementation of evidence by an expert, and the Sixth Circuit's established factors both allow for Lieb's supplementation, and the facts demonstrate that the supplementation is substantially justified.

## IV. CONCLUSION

When evaluating this Motion, the Court should keep the big picture of this case in mind. This case started with extensive spoliation. Within three weeks after receiving a clear preservation notice from Plaintiffs, Ridley deleted files from Nalco flash drives, Ridley wiped Nalco files from a personal hard drive, and ChemTreat wiped Ridley's work laptop. These are the main evidentiary receptacles that would show Ridley's misconduct and they were spoliated.

Then, ChemTreat argued essentially "no big deal" because they "fully" investigated the allegations against Ridley and ChemTreat fund only that he emailed one Nalco document to himself. Well, this investigation was based on the CrowdStrike logs. Now we know that ChemTreat's claim that Ridley only emailed one document to himself is a farce. Based on the CrowdStrike data, that ChemTreat has had access to from the beginning, we know that:

- Ridley attached the WD Drive (with thousands of Nalco files on it) to his ChemTreat computer at least nine times;

- Ridley accessed several Nalco files from the WD Drive using his ChemTreat computer;

- Ridley attached numerous other USB drives to his ChemTreat computer, but ChemTreat has not accounted for these drives;

- Ridley had a folder on his ChemTreat computer called "Nalco" and accessed that folder numerous times after receiving Plaintiff's preservation notice;

- Ridley did not delete documents (as ChemTreat claimed from the beginning of the case) from the WD Drive (the CrowdStrike logs show no deletion activity);

- Ridley did not reorganize the Nalco files, as ChemTreat claimed, in January 2022; and

- Ridley wiped the WD Drive with C-cleaner five days after receiving Plaintiffs' preservation notice.

All of this information was available to ChemTreat when it claimed they fully investigated Ridley's conduct and found only that he emailed one Nalco document to himself. This is all part of ChemTreat's false narrative that "there's nothing to see here." In fact, ChemTreat did not produce the CrowdStrike data until December 2022. And when it was produced, it was unusable. Even though Plaintiffs produced their DLP (Digital Guardian) report in an easily searchable Excel format, Defendants refused to produce the CrowdStrike logs in Excel format. This is more "hide the ball" tactics. It took time, but Mr. Lieb was able to dig through 12,000,000 lines of data and find objective facts showing that ChemTreat and Ridley have misrepresented numerous facts. This is all objective evidence. ChemTreat is afraid of it because it cannot any longer hide from these

objective facts. The Court should not let ChemTreat get away with playing these types of games. It's time for ChemTreat to face the music. And as part of that, ChemTreat's Motion should be denied.

DATED: July 17, 2023

                                    Respectfully submitted,

                                    ECOLAB INC. NALCO COMPANY, LLC
                                    d/b/a Nalco Water, an Ecolab Company
                                    and/or Nalco Water,

By: */s/ David J. Waltons*
     J. Gregory Grisham (TN BPR#013810)
     FISHER & PHILLIPS LLP
     1715 Aaron Brenner Drive, Suite 312
     Memphis, Tennessee 38120
     Telephone: 901.526.0431
     Fax: 901.526.8183
     ggrisham@fisherphillips.com

     David J. Walton
     (*pro hac vice*)
     FISHER & PHILLIPS LLP
     Two Logan Square, 12th Floor
     100 N. 18th Street
     Philadelphia, PA 19103
     Telephone: 610.230.6015
     Fax: 610.230.2151
     dwalton@fisherphillips.com

     Edward G. Winsman
     (*pro hac vice*)
     FISHER & PHILLIPS LLP
     Two Logan Square, 12th Floor
     100 N. 18th Street
     Philadelphia, PA 19103
     Telephone: 610.230.2142
     Fax: 610.230.2151
     ewinsman@fisherphillips.com

     *COUNSEL FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ David J. Walton*
David J. Walton