| | |
|---|---|
| ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, | |
| Plaintiffs, | No. 1:22-cv-00050-TRM-CHS |
| v. | Hon. Travis McDonough |
| ANTHONY RIDLEY and CHEMTREAT, INC., | Magistrate Judge Christopher H. Steger |
| Defendants. | |

## PLAINTIFFS' BRIEF ON SPOLIATION SANCTIONS

Plaintiffs Ecolab Inc. ("Ecolab") and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water ("Nalco") (collectively "Plaintiffs"), pursuant to the Court's August 11, 2023 Order (D.E. 356), hereby file this Brief on Spoliation Sanctions and state the following:

## I. <u>INTRODUCTION</u>

As has been well-briefed and subsequently acknowledged by this Court, Defendants Anthony Ridley ("Ridley") and ChemTreat, Inc. ("ChemTreat") spoliated the two key pieces of evidence: (1) the ChemTreat laptop assigned to Ridley which he used as a ChemTreat employee for over eight months and which he used to access the WD Drive, and (2) the WD Drive itself, which Ridley admits contained full and partial backups of his Nalco computer. (D.E. 349, pp. 30, 33). As a result, Plaintiffs request the following reasonable sanctions pertaining to the reopening of discovery for the reasons more fully addressed below:

(1)     Compel Ridley to produce the computer that he has characterized as his wife's

1

computer ("the Ridley Home Computer")[1] to Plaintiffs' ESI expert for imaging and inspection;

(2)     Compel inspection of ChemTreat's relevant local drives and repositories;

(2)     Compel Ridley and ChemTreat to produce relevant USB drives and Ridley's iPad; and

(4)     Hold Ridley and ChemTreat responsible for their portion of any fees charged by the special master, as well as for attorneys' fees and costs incurred by Plaintiffs in having to file motions and compel production, imaging and inspection of the foregoing devices and repositories.

These reasonable requests are appropriate and necessary as they will bring Plaintiffs closer to the position they would have occupied had Defendants properly preserved crucial evidence. Furthermore, to the extent warranted by inspection and analysis of the additional devices and repositories discussed herein, Plaintiffs reserve the right to seek additional sanctions under Fed. R. Civ. P. 37(e), including the reopening of Ridley's deposition, other depositions and additional discovery.

## II. ARGUMENT

**A.     Sanction Request #1: Compel Ridley to Produce His Home Computer for Imaging and Inspection.**

The Court should order Ridley to produce the Ridley Home Computer to Plaintiffs for imaging and inspection; and further order Ridley to produce the previously obtained image of the device (which Ridley does not oppose). During the Court's hearing on August 10, 2023, counsel for Ridley belatedly disclosed critical pieces of information regarding this device which makes clear its production is warranted. First, Ridley used the Ridley Home Computer to wipe the WD Drive on February 14, 2022. (Hrg. Tr. 7:7 – 8:22). Second, the Ridley Home Computer was imaged

---

[1]     Plaintiffs refer herein to the computer at issue as "the Ridley Home Computer" merely for convenience. Contrary to Ridley's assertions, imaging and inspection of that computer may reveal that it was regularly used by Ridley to do more than just spoliate and wipe the WD Drive.

in April of 2022 (the "April 2022 Image"). (Hrg. Tr. 9:2-9). And, importantly, Ridley did not search the Ridley Home Computer or the April 2022 Image as part of responding to Plaintiffs' discovery requests. (Hrg. Tr. 9:15-18). Because Ridley concedes that he used the Ridley Home Computer to wipe the WD Drive, he now agrees that it is reasonable for Plaintiffs to obtain their own image of that computer, as well as the April 2022 Image.

As the Court is well aware, the WD Drive contained multiple *complete* back-ups of Ridley's Nalco/Ecolab computer for the years 2015 through 2018, as well as partial back-ups from 2019 and 2020. (D.E. 293-1 at 90:22-24, 91:1-18, 254:23-24, 255:1-12, 448:4-15). Ridley brought all of these files with him to ChemTreat, and he accessed them with his ChemTreat computer, which ChemTreat also wiped. (*Id.* at 96:14-22; 97: 4-18; 120:17-24; 326:3-23). Thus, Defendants have deprived Plaintiffs of evidence of Ridley's misappropriation as well as evidence that Ridley shared misappropriated files and documents with ChemTreat. The Ridley Home Computer represents Plaintiffs' best remaining opportunity to discover exactly what files were on the WD Drive as well as what devices and computers were used to access those files.

Thus, Plaintiffs request that the Court order Ridley to turn over (a) the April 2022 Image; and (b) the Ridley Home Computer to either Plaintiffs' forensic expert, Laurence Lieb,[2] or a third-party examiner so Plaintiffs can obtain a new, current forensic image of the Computer. Plaintiffs respectfully request that the Court order Ridley to provide both the forensic image and the Ridley Home Computer within 2 business days of the Order.[3]

---

[2]    After Judge Lee ordered Ridley to turn over the WD Drive for imaging, Ridley agreed to a protocol whereby Mr. Lieb would image the device and then analyze that image. Thus, Plaintiffs see no reason why Mr. Lieb could not do the same here.

[3]    While Plaintiffs understand that the Court intends to appoint a Special Master for this case, these initial steps set forth in (a) and (b) above should not be delayed.   Though the trial date has been continued, it is fast approaching and the parties cannot afford to delay conducting the additional discovery.

FP 47957122.6

Once the images are secured, Plaintiffs propose that the forensic inspection and analysis of the Ridley Home Computer and April 2022 Image include the following:

- search for and disclosure of any evidence of the use of C-Cleaner or other wiping or defragging software, including the type of software, dates of such use, evidence of the Master File Table (if not deleted) and, if possible, the identity of the files that were on the computer before being wiped;

- search for USB drives and other devices that have been connected to the computer since September 1, 2020;

- search for evidence of Ridley's interactions with and the frequency of his use of the computer;

- search Master File Table for any evidence of Nalco/Ecolab documents;

- search for any forensic artifacts regarding use of the WD Drive;

- search for evidence of any access to cloud-storage and/or live.com accounts;

- apply search terms to active and deleted space; and

- recover and carve-out deleted documents, which will then be searched by agreed-upon search terms.

Plaintiffs propose that the initial searching and analysis that does not involve turning over files be conducted under the very same protocol that the parties utilized (and which Ridley agreed to) after the Court ordered Ridley to provide Plaintiffs with access to the WD Drive. *See* Exh. 1 (May 2023 Email Exchange Negotiating Protocol for Inspection and Search of WD Drive). This portion of the search and analysis of the Ridley Home Computer and April 2022 Image should be completed as expeditiously as possible in order to facilitate a potential resolution of this matter.

4

The process for production of files that have positive "hits" on search terms should be subject to the oversight of the Special Master.

As the Court recognized in its Order dated August 1, 2023, to the extent that analysis of the Ridley Home Computer reveals "more information about what Ridley deleted and the circumstances under which he deleted that information," Plaintiffs reserve the right to seek additional sanctions under Fed. R. Civ. P. 37(e), including such matters as reopening of Ridley's deposition, depositions of other witnesses, analysis of additional devices, and/or analysis of such data repositories as reasonably warranted by the analysis of the Ridley Home Computer. (*See* D.E. 349 at 33). As discussed at the hearing, Plaintiffs also reserve the right to seek sanctions against Ridley for, *inter alia*, the wiping of the WD Drive under Fed. R. Civ. P. 37(e)(2). These additional steps and sanctions can also be developed under the guidance of the Special Master.

**B.** **Sanction Request #2: Allow Plaintiffs Access to Data Repositories and Local Drives for 12 Custodians**

Plaintiffs request access to (1) data repositories and (2) local drives for 12 custodians identified by ChemTreat. Plaintiffs' proposal addresses, at least in part, a clear gap caused by ChemTreat's spoliation of Ridley's computer—the question of whether Ridley shared any misappropriated Nalco/Ecolab documents with other ChemTreat employees. By searching only the email and OneDrive accounts of such employees, ChemTreat ignored the local hard drives that serve as the preferred storage locations for its own employees. Plaintiffs' proposal addresses ChemTreat's intentionally selective searching and brings Plaintiffs closer to the position they would have occupied had ChemTreat not wiped Ridley's computer after the initiation of this lawsuit.

First, as discussed at the August 10, 2023 hearing before this Court, if ChemTreat is going to present evidence that the repositories used by its employees (such as their email and OneDrive

FP 47957122.6

account) were searched by their computer forensic expert and there is no evidence of wrongdoing because no Nalco/Ecolab documents were located, then Plaintiffs and their expert should—based on fundamental notions of fairness—have access to those same repositories in order to conduct their own searches. (Hrg. Tr. 33:7 – 34:5). Indeed, this Court has already noted that "granting discovery to those repositories has the potential to cure some of the prejudice resulting from ChemTreat's spoliation of Ridley's ChemTreat issued laptop because reasonable searches may help disclose whether Ridley stored Ecolab/Nalco's information through ChemTreat's systems – evidence that may have been available and more accessible had ChemTreat not spoliated Ridley's laptop." (D.E. 349, p. 34). This process of searching ChemTreat's data repositories can be overseen and conducted by the Special Master.

Second, Plaintiffs should be given access to local drives of the laptops of the twelve custodians selected by ChemTreat. Notably, ChemTreat did not search the local hard drives for the twelve individuals it selected and identified as relevant custodians. This omission is striking because the record reflects that most ChemTreat employees use their local hard drives for storing and managing their documents. (D.E. 293-4 (Excerpts of Deposition of Clay Cissell) at 159:8-24 ("I save all my work on my ChemTreat computer."), 160:1-6 ("I know I don't physically put anything on a share drive that I know of."); D.E. 293-23 (Excerpts of Deposition of Steve Leavell) at 205:14-22, 206:1-5 ("I don't know all the mediums on which they are stored. Probably the most common is just on their laptop.")). There is no legitimate explanation for ChemTreat's failure to search these local drives. And it is unknown whether ChemTreat took any necessary steps to preserve these drives before the August 10, 2023 hearing. This is a critical point that must be explored and could certainly lead to the discovery of additional inculpatory evidence and/or evidence of spoliation if ChemTreat did not preserve the local drives.

FP 47957122.6

As such, Plaintiffs propose the following protocol that can be managed by the Special Master:

- ChemTreat will produce full forensic images of the 12 local drives for the selected custodians to Plaintiffs' ESI expert;

- the parties will agree to search terms and protocol for both the repositories and local hard drives that will be administered by the Special Master;

- this analysis will include searching for USB drive activity during the relevant time periods; and

- for each local hard drive, ChemTreat will identify when it was preserved/imaged to allow Plaintiffs to determine whether additional discovery is needed to address any gaps caused by a failure to preserve them earlier.

C. **Sanction Request #3: Compel Ridley and ChemTreat to Produce Certain Other USB Drives and Ridley's iPad**

Plaintiffs request that the Court compel Ridley to produce relevant USB drives and his iPad. As determined by **ChemTreat's own forensic expert**, several USB drives and an iPad were connected to Ridley's ChemTreat computer before it was wiped. (D.E. 293-10 at p. 12; Doc. 293-12 at 113:7-25, 114:1-19, 145:3-12, 148:25, 149:1-12, and Ex. 121). Laurence Lieb, Plaintiffs' ESI forensic expert, identified several other USB drives connected to Ridley's ChemTreat computer through his own analysis of ChemTreat's CrowdStrike report. (D.E. 293-14 at ¶ 17). Simply put, Plaintiffs should get access to these devices. This would enable Plaintiffs to learn whether Nalco/Ecolab files were transferred to or from such devices using Ridley's ChemTreat computer. Moreover, it is unacceptable that these devices were not searched by Defendants during the course of discovery, and it is unknown whether Ridley/ChemTreat took any necessary steps to

7

preserve them. This issue must be clarified, which could certainly lead to the discovery of additional spoliation if Ridley and/or ChemTreat did not preserve these devices.

Plaintiffs propose the following process, which can be managed by the Special Master:

- Ridley and ChemTreat provide to Plaintiffs' ESI expert for imaging all of the aforementioned USB drives,[4] iPad and other devices that that were connected to Ridley's ChemTreat computer as identified by the computer forensic experts of ChemTreat and Plaintiffs (*Id.*);

- For each such device, ChemTreat and/or Ridley must identify when, how, and by whom it was preserved;

- All identified devices are imaged by either Mr. Lieb or a third-party examiner; and

- The parties work with the Special Master to develop search terms and a review protocol for each of the devices.

Plaintiffs' proposal places minimal burden on Ridley and ChemTreat while at the same time providing Plaintiffs with access to potentially dispositive information that they should have received many months ago.

**D.     Sanction Request #4: Special Master's Fees and Plaintiffs' Attorney's Fees and Costs**

Plaintiffs request that the Court order that all fees charged by the Special Master that relate to the imaging and inspection of the Ridley Home Computer (Section II A (*supra*)) be apportioned such that Ridley shall pay half of such fees and Plaintiffs shall pay the remaining half. Likewise, Plaintiffs request that all fees charged by the Special Master that relate to the imaging and inspection of ChemTreat's data repositories and local drives for twelve custodians (Section II.C

---

[4]     Plaintiffs will forego production and searching of the Amazon Basics USB Drive that is the subject of the Court's Order at D.E. 349, f.n. 19.

8

(*supra*)) be apportioned such that ChemTreat shall pay half of such fees and Plaintiffs shall pay the remaining half.  To avoid unnecessary disputes on this subject, Plaintiffs propose that the Court require the Special Master to separately identify his/her fees that relate to the imaging and inspection of the Ridley Home Computer and those that relate to the imaging and inspection of ChemTreat's data repositories and local drives.

Plaintiffs further request the Court to sanction Defendants by awarding attorneys' fees and costs in favor of the Plaintiffs. Specifically, Plaintiffs request that the Court issue an order permitting Plaintiffs to file a motion for attorneys' fees and costs against: (i) Ridley for reasonable fees and costs (including expert fees) incurred by Plaintiffs in having to file motions and compel the imaging and inspection of the Ridley Home Computer; and (ii) ChemTreat for reasonable fees and costs (including export fees) incurred by Plaintiffs in having to file motions and compel the imaging and inspection of ChemTreat's data repositories and local drives for twelve custodians.[5]

## II.  CONCLUSION

The record establishes that both Ridley and ChemTreat destroyed irreplaceable evidence that has unfairly hamstrung Plaintiffs' ability to prove its case against Defendants.

Plaintiffs therefore respectfully request that the Court order and issue the sanctions requested herein. Moreover, because Plaintiffs do not yet know exactly what information may be revealed in connection with the Court's re-opening of discovery, Plaintiffs further request that the

---

[5]     Pursuant to the Court's instruction that this Brief "should not include arguments as to sanctions [Plaintiffs] will ask the Court to impose at trial," (D.E. 356) Plaintiffs reserve their request for attorney's fees against Defendants for their spoliation of the WD drive, Ridley's ChemTreat computer and potential spoliation and/or failure to preserve additional devices and repositories of electronically stored information. Notably, with respect to Ridley, the Court has reserved ruling as to "whether sanctions against him under Rule 37(e)(2) are appropriate." (D.E. 349, p. 33).

FP 47957122.6
Case 1:22-cv-00050-TRM-CHS   Document 359   Filed 08/17/23   Page 9 of 11   PageID #: 15028

Court reserve Plaintiffs' right to seek attorney's fees and costs as well as further sanctions under

Rule 37(e)(2).

Submitted this 17th day of August 2023.

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By:    *Pavneet S. Uppal*
J. Gregory Grisham (TN BPR#013810)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 901.526.0431
Fax: 901.526.8183
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone:  610.230.6015/2412
Fax: 610.230.2151
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Singh Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
Telephone:  602-281-3400
Fax: 602-281-3401
puppal@fisherphillips.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*Pavneet S. Uppal*
Pavneet S. Uppal

FP 47957122.6