UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>    Defendants. | Case No. 1:22-cv-00050-TRM-CHS<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Christopher H. Steger |

**<u>JOINT PROPOSED AND DISPUTED JURY INSTRUCTIONS</u>**

# PRELIMINARY STATEMENT

The parties submit the following proposed jury instructions. The parties have attempted to provide a comprehensive set of instructions for both the opening and closing of trial, together with supporting authorities, as required by the Court's scheduling order. The parties have attempted to resolve their disagreements as to which instructions and what language are appropriate. Instructions that are disputed are so noted, with footnotes explaining the parties' rationales for why the instruction should or should not be given.

The parties have included proposed conditional instructions for claims and issues that may ultimately be resolved before trial by motions that are pending before the Court. The fact that a party has proposed an instruction for a certain issue or claim does not mean that the party agrees the issue or claim should ultimately be decided by the jury. The parties thus respectfully request the ability to amend or supplement these proposed instructions and requests, or to withdraw proposed instructions, as necessary based on the contents of any opinions or rulings issued by the Court, the outcome of various pending and anticipated motions, any rulings the Court may render in charging conferences or during the course of the trial, or the evidence adduced at trial.[1]

---

[1] Defendants Mr. Ridley and ChemTreat agree that, based upon the procedure this Court followed in *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), the Court should hold bifurcated proceedings to determine whether Plaintiffs are entitled to punitive or exemplary damages on their claims. Accordingly, Mr. Ridley and ChemTreat have not presented the Court with instructions as to those issues in this filing, but will do so before any trial on such issues.

Plaintiffs' position is that the Court may determine to address punitive or exemplary damages in a bifurcated proceeding, but the Parties have not at this time agreed to a bifurcated proceeding.

1

# I. PROPOSED PRETRIAL INSTRUCTIONS

## A. AT THE OPENING OF VOIR DIRE

### AGREED INSTRUCTION NO. [1] —Voir Dire

Ladies and gentlemen, the Court and the parties thank you for your time. This portion of the proceedings is called voir dire. That phrase, "voir dire," is literally translated as to speak the truth. That's what you're here to do today in this portion of the proceedings.[2] This process helps me decide whether any juror should be excused from service on the jury.[3]

---

[2] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 4 (modified).

[3] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 4–5 (modified).

**AGREED INSTRUCTION NO. [2] – Juror Strikes.**

A juror can be excused for two reasons: a strike for cause or a peremptory strike. A strike for cause simply means that, for some reason, you may not be suited to sit on this particular jury. And that's fine. You may be perfectly suited to sit on the next jury. The parties and I will ask some questions about you to get facts needed in order to make decisions like that.[4]

Jurors can also be excused because of a peremptory strike, which are strikes that the parties get to decide by themselves. Each party has the right to strike jurors for really no reason at all, just based upon preferences that they don't need to disclose. The questions we ask you will enable the attorneys and the parties to make their own independent judgments about how they should use their peremptory strikes.[5] There is nothing wrong with peremptory strikes. They give the parties, the lawyers, and the public, in fact, more reason to have faith in the proceedings and confidence in the proceedings. And so, even if you are excused from this jury today, you will have played an important part in these proceedings.[6]

---

[4] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 4-5 (modified).

[5] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 5 (modified).

[6] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 5 (modified).

**AGREED INSTRUCTION NO. [3] – Duty of Candor**

We are here to give everybody a fair trial. That's my job. That's your job. But fairness starts with your honesty and candor right now. The lawyers and I can't do our jobs unless you meet your obligation to be honest and candid as you swore you would do just a few moments ago.[7]

---

[7] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 5.

**DISPUTED INSTRUCTION NO. [4] – Short Summary of the Case**

I'll start by asking you all some preliminary questions, and then the lawyers will have a few minutes to follow up with their own questions. Before we get to that, let me give you a short summary of the what this case is about so you'll have some context from which to answer my questions and the lawyers' questions.

[Defendants' proposed summary: The Plaintiffs, Ecolab Inc. and its subsidiary Nalco Company LLC, are providers of industrial water treatment services. They assert, among other things, that their former employee, Mr. Anthony Ridley, took documents with him containing trade secrets when he resigned from Ecolab and took a job with ChemTreat, Inc. Plaintiffs have brought this lawsuit against Mr. Ridley and ChemTreat. Mr. Ridley and ChemTreat deny Plaintiffs' allegations.]

[Plaintiffs' proposed summary: The Plaintiffs, Ecolab Inc. and its subsidiary Nalco Company LLC, are providers of industrial water treatment services. They assert, among other things, that their former employee, Mr. Anthony Ridley, unlawfully took Ecolab documents with him containing trade secrets when he resigned from Ecolab and took a job with ChemTreat, Inc. They assert that ChemTreat unlawfully accepted and used those trade secrets in their business. Plaintiffs have brought this lawsuit against Mr. Ridley and ChemTreat. Mr. Ridley and ChemTreat deny Plaintiffs' allegations.][8] [9]

---

[8] Plaintiffs submit that it is important to state that they are alleging that ChemTreat, Inc. unlawfully accepted and used those trade secrets to properly frame ChemTreat's position in the case. Otherwise, it is not as clear to the jury Plaintiffs' issue with ChemTreat.

[9] ChemTreat objects that Plaintiffs' proposed summary is overly argumentative. For example, Plaintiffs include language asserting that Mr. Ridley and ChemTreat acted "unlawfully" and used trade secrets. In the event the Court opts to use Plaintiffs' proposal, ChemTreat requests that the Court also instruct the jury that: "ChemTreat contends that it does not authorize or encourage any

5

prospective or current employees to retain confidential documents from their prior employers. ChemTreat further contends that Ecolab's documents are not of value to ChemTreat's business."

### B.     AT THE CLOSE OF VOIR DIRE AND BEFORE OPENING STATEMENTS

### AGREED INSTRUCTION NO. [5] — Duty of the Jury

Now that you have been sworn, I will give you some preliminary instructions to guide you in your performance during trial. It will be your duty to find from the evidence what the facts are. And you and you alone are the judges of the facts. You will then have to apply those facts to the law that I will give you. You must follow that law whether you agree with it or not.[10]

Nothing that I say or do during the course of the trial is intended to indicate, nor should be taken by you as indicating, what your verdict should be.[11] You find the facts, you apply them to the law that I give you, and you provide us your verdict.[12]

---

[10] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 91.

[11] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 91–92.

[12] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 92.

**AGREED INSTRUCTION NO. [6] – Evidence to Consider**

The evidence from which you will find the facts consists of the testimony of witnesses, documents, and other things received into the record as exhibits, and any facts that the lawyers agree or stipulate to, or that I may instruct you to find.[13]

Certain things are not evidence and must not be considered by you. For example, statements, arguments, and questions by the lawyers are not evidence. Also, objections to questions are not evidence.[14]

---

[13] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 92.

[14] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 92.

**AGREED INSTRUCTION NO. [7] -- Objections**

Lawyers have an obligation to their client to make objections when they believe that evidence being offered doesn't satisfy the rules of evidence. You should not be influenced by the objection or by my ruling on it. When a lawyer asks a witness a question, opposing counsel might object to the question. If that happens, I will either sustain the objection or overrule it. If I sustain an objection to a question, ignore the question. If I overrule an objection to a question, treat the answer like any other answer. And if you are instructed that you may consider some item of evidence for a limited purpose only, you must follow that instruction. Also, testimony that I have excluded or told you to disregard is not evidence and must not be considered.[15]

---

[15] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 92 (modified).

9

**AGREED INSTRUCTION NO. [8] – No Evidence from Outside the Courtroom.**

Finally, please remember that anything you may have seen or heard outside of the courtroom is not evidence and must also be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.[16]

---

[16] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 92–93.

**AGREED INSTRUCTION NO. [9] – Direct and Circumstantial Evidence**

There are two kinds of evidence; direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. I will give you further instructions on these as well as other matters at the end of the case. But keep in mind that you may consider both kinds of evidence.[17]

---

[17] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 93.

**AGREED INSTRUCTION NO. [10] – Witness Credibility**

It will be up to you to decide which witnesses to believe, which witnesses not to believe, or how much of any witness's testimony to accept or reject. I will give you some guidelines for determining the credibility of witnesses at the end of the case.[18]

---

[18] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 93.

**DISPUTED INSTRUCTION NO. [11] – Burden of Proof**

This is a civil case not a criminal case, and the Plaintiffs, with [ChemTreat proposal: a couple of exceptions][19] [Plaintiffs' and Ridley's proposal: one exception][20] I will explain later, have the burden of proving their claims by what is called a preponderance of the evidence. Preponderance of the evidence means that the Plaintiffs have to produce evidence which considered in light of all of the facts leads you to believe that what the Plaintiffs allege is more likely true than not true. To put it differently, if you were to put the Defendants' and the Plaintiffs' evidence on opposite sides of a scale, the Plaintiffs' would have to make the scale tip somewhat on their side. If the Plaintiffs fail to meet their burden as to any element of a particular claim, then you must find for the Defendants on that claim. If any of you have sat on criminal cases or seen them on television, you will have heard of the phrase "proof beyond a reasonable doubt." That concept does not apply in this case. And you should, therefore, put it out of your mind.[21]

---

[19] ChemTreat contends that there are multiple issues that may arise over the full course of the trial that are subject to the clear and convincing evidence standard, including Plaintiff's procurement of breach of contract claim, Plaintiffs' claim for common-law punitive damages, and Plaintiffs' claim for trade secret exemplary damages. It is thus misleading to tell the jury that only one issue is subject to the clear and convincing evidence standard if the Court accepts Plaintiffs' position that punitive or exemplary damages should be addressed in the first phase of trial. If the Court follows its practices in *Knox Trailers* here, and defers any consideration of punitive or exemplary damages until after the liability determination, then ChemTreat agrees that "one exception" is appropriate.

[20] Plaintiffs maintain the position that there is one exception to preponderance of the evidence burden of proof in this case. Claiming there are more one exception is not only factually and legally inaccurate, but would be confusing and misleading for the jurors.

[21] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 93–94 (modified).

13

## DEFENDANTS' PROPOSED INSTRUCTION NO. [12A] – Brief Summary of the Claims

Let me now briefly describe the Plaintiffs' claims and applicable law. I'll give you more instructions about this later, but this will give you context as we begin the evidentiary part of the trial.

The Plaintiffs, Ecolab and Nalco, bring a number of different claims against Defendants Mr. Anthony Ridley and ChemTreat. You must evaluate the evidence and decide the claims separately for each defendant. Plaintiffs bring their first two claims under the federal Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act, respectively. Plaintiffs contend that Mr. Ridley, while he was their employee, transferred their electronic documents to external storage devices that he took with him when he resigned to work for ChemTreat. Plaintiffs allege that some of the documents Mr. Ridley took contained trade secret information. To prevail on these claims, the law requires Plaintiffs to prove by a preponderance of the evidence three things:

1. First, that the documents at issue were trade secrets;

2. Second, that the documents at issue were misappropriated. For Mr. Ridley, that requires Plaintiffs to prove by a preponderance of the evidence that Mr. Ridley acquired their trade secrets by using improper means or used those trade secrets after acquiring them through means he knew were improper. For ChemTreat, that requires Plaintiffs to prove by a preponderance of the evidence that ChemTreat acquired those trade secrets from Mr. Ridley knowing he had used improper means to acquire them or that ChemTreat used those trade secrets after knowing Mr. Ridley had acquired them through improper means; and

3. Third, that Plaintiffs suffered an injury caused by that misappropriation.

Plaintiffs also contend that Mr. Ridley breached his employment agreement with Plaintiffs

14

in several ways. To prevail on this claim, the law requires Plaintiffs to prove by a preponderance of the evidence that:

1. An enforceable contract existed;

2. Mr. Ridley breached that contract; and

3. Plaintiffs were injured as a result of that breach.

Plaintiffs next assert that Mr. Ridley breached his fiduciary duty of loyalty to them. To prevail on this claim, the law requires Plaintiffs to prove by a preponderance of the evidence three things:

1. First, that Mr. Ridley owed a fiduciary duty to Plaintiffs as a result of his employment by them;

2. Second, that Mr. Ridley breached his fiduciary duty to Plaintiffs while employed by Plaintiffs, and

3. Third, that Plaintiffs were injured as a result of that breach.

Plaintiffs next allege that ChemTreat unlawfully interfered with the employment agreement of Mr. Ridley. To prevail on this claim, the law requires Plaintiffs to prove by a preponderance of the evidence that:

1. A legal contract existed between Plaintiffs and Mr. Ridley.

2. ChemTreat was aware of that contract.

3. ChemTreat intended to induce Mr. Ridley to breach that contract.

4. ChemTreat acted without legal justification.

5. A breach of the contract occurred.

6. The breach was a proximate result of ChemTreat's conduct.

7. Plaintiffs suffered damages as a result of the breach.

15

Plaintiffs also allege that ChemTreat procured a breach of Mr. Ridley's employment agreement. This claim has the same elements as the claim that ChemTreat unlawfully interfered with Mr. Ridley's employment agreement, but it requires Plaintiffs to prove each of those elements under a higher standard of proof known as "clear and convincing evidence." I will instruct you on the difference between those two standards at the end of the case.

Finally, Plaintiffs contend that Mr. Ridley and ChemTreat entered into a civil conspiracy to interfere with one of the restrictions in Mr. Ridley's employment agreement with Plaintiffs. To prevail on this claim, the law requires Plaintiffs to prove by a preponderance of the evidence that:

1. There was a common design between Mr. Ridley and ChemTreat, each having the intent and knowledge of the other's intent;

2. To accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means;

3. An overt act in furtherance of the conspiracy; and

4. Resulting injury to Plaintiffs.

I will give you more detailed instructions about all of these claims and elements at the end of the case.[22]

---

[22] ChemTreat contends that Defendants' proposed instruction 12A is more consistent with the Court's approach in *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 94–95, which noted the basic elements of the plaintiff's claims but did not describe the theories of liability in detail.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [12B] – Brief Summary of the Claims[23]**

Let me now briefly describe the Plaintiffs' claims and applicable law. I'll give you more instructions about this later, but this will give you context as we begin the evidentiary part of the trial.

The Plaintiffs, Ecolab and Nalco, bring a number of different claims against Defendants Mr. Anthony Ridley and ChemTreat. You must evaluate the evidence and decide the claims separately for each defendant.

First, Plaintiffs bring two claims under the federal Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act, respectively.

Mr. Ridley was previously employed by Plaintiffs. In 2021, he resigned and began to work for Plaintiffs' competitor, ChemTreat. Plaintiffs contend that Mr. Ridley, while he was their employee, transferred their electronic documents to external storage devices and personal email accounts and that he then took those documents with him when he began to work for ChemTreat. Plaintiffs allege that the documents Mr. Ridley took contained their trade secret information, which was beneficial to his new employer, ChemTreat.[24]

Second, Plaintiffs contend that Mr. Ridley breached his contract with Plaintiffs. When Mr. Ridley worked for Plaintiffs, he signed an employment agreement. Plaintiffs contend that Mr.

---

[23] Plaintiffs maintain that the purpose of pre-trial jury instructions is to lay out the case simply and succinctly. Stating the various elements of each claim and their respective burdens of proof would be burdensome and mentally exhaustive on the jury, leading to their confusion.

[24] ChemTreat objects that Plaintiffs' proposed instruction no. 12B is overly argumentative, unfairly biased, and includes irrelevant information. Here, Plaintiffs contend that "the documents Mr. Ridley took contained their trade secret information, which was beneficial to his new employer, ChemTreat." Plaintiffs have identified no evidence showing ChemTreat benefitted from their trade secrets and should not be permitted to present to the jury an argumentative assertion for which they will not present any evidence to the jury.

17

Ridley violated that contract in several ways, including but not limited to his unauthorized copying and retention of Plaintiffs' trade secret information and his solicitation of Plaintiffs' customers and other employees.[25]

Third, Plaintiffs assert that Mr. Ridley's conduct also breached his fiduciary duty of loyalty to them.

Plaintiffs also assert claims against ChemTreat.

First, Plaintiffs allege that ChemTreat unlawfully interfered with Plaintiffs' employment agreement with Mr. Ridley by, among other things, inducing him to misappropriate Plaintiffs' trade secrets and solicit Plaintiffs' clients and employees.

Second, Plaintiffs allege that ChemTreat procured a breach of Mr. Ridley's employment agreement on those bases.[26]

Lastly, Plaintiffs contend that Mr. Ridley's and ChemTreat's conduct constituted a civil conspiracy.

I will give you more detailed instructions about all of these claims at the end of the trial.

---

[25] ChemTreat objects to this summary of Plaintiffs' breach of contract claim. Plaintiffs have already admitted that there is no evidence that Mr. Ridley solicited customers, and they have only ever alleged that Mr. Ridley improperly solicited *one* Nalco employee, Tyler Bates. The use of the word "employees" improperly suggests Mr. Ridley solicited other Nalco or Ecolab employees.

[26] ChemTreat objects to this summary of Plaintiffs' unlawful interference with contractual relations claim and procurement of breach of contract claim. As Plaintiffs' Complaint acknowledges (*see* Doc. 229 at 59 n.2, 61 n.3), these claims are preempted insofar as they concern the misappropriation of trade secrets. This summary is also flawed insofar as it refers to solicitation of Plaintiffs' clients and employees for the reasons noted in ChemTreat's prior footnote.

**AGREED INSTRUCTION NO. [13] – No Discussion of the Case**

Let me give you a few words about your conduct as jurors. First, I instruct you that during the trial, you're not to discuss this case with anyone, or to permit anyone to discuss it with you. This includes family and friends and other jurors. Until you retire to the jury room at the end of the case to deliberate on your verdict, you're simply not to talk about this case.[27]

---

[27] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 95 (modified).

**AGREED INSTRUCTION NO. [14] – Smart Phones and Internet**

I know that many of you use smart phones, computers, and the internet to get information and to share information, but you may not communicate with anyone about this case, either publicly or privately, by using any app, social media, text messaging or even a phone call. If anyone should try to talk to you about this case, please bring it to my attention promptly.[28]

---

[28] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 95–96.

**AGREED INSTRUCTION NO. [15] – No Independent Research**

You as jurors must decide this case based solely on the evidence presented here in the courtroom. This means that you must not conduct any independent research about this case or the matters in this case. In other words, you should not consult dictionaries, reference materials, or the internet or use any other electronic tools to obtain information about this case, to learn about something you hear in this case, or to help you decide this case.[29]

Do not read or listen to anything on the radio or television touching on this case in any way. And do not try to get information from any source outside of the confines of this courtroom. And you are bound to determine the outcome of this case by what you see and hear in this courtroom only.[30]

---

[29] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 96.

[30] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 96.

**AGREED INSTRUCTION NO. [16] – Open Mind**

Do not form any opinion until all of the evidence is in.  Keep an open mind until you start

your deliberations at the end of the case.[31]

---

[31] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 96.

**AGREED INSTRUCTION NO. [17] – No Communications with Attorneys or Parties or Witnesses**

I'm going to warn you about something that may seem a bit out of the ordinary but is important to keep in mind when you serve on a jury, especially in this courthouse and in this courtroom. The attorneys who will argue before you are under strict ethical rules that forbid them from communicating with you. Others involved in the trial are under similar restrictions.[32]

Because this portion of the building is so small, you may run into attorneys, parties, and witnesses. When you see these people in the hall or anywhere else, they are not allowed to greet you, or to talk with you in any way. There should be no conversation of any kind. Therefore, please, do not be offended or make any judgments pertaining to this case because these people ignore you or do not speak to you. They're simply abiding by the rules of the Court and are doing their jobs. Similarly, do not permit any other person to discuss the case in your presence. If anyone does attempt to do so, report this fact to the Court immediately, without discussing it, without discussing the incident with any of the other jurors.[33]

---

[32] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 96–97.

[33] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 97.

23

Jurors normally do not ask a witness questions.  However, I allow jurors to ask important questions during the trial under certain conditions.

If you feel the answer to your question would be helpful in understanding the issues in the case, please raise your hand after the lawyers have completed their examination but before I have excused the witness.  You will then be given pen and paper with which to write your question for the witness, and you should hand your written question silently to my clerk.  Please do not state your question aloud.

I will talk privately with the lawyers and decide whether the question is proper under the law.  If the question is proper, I will ask the witness the question.  Do not give undue weight to questions you or other jurors propose.

Some questions may be rewritten or rejected.  Do not be concerned if the question is not

---

[34] ChemTreat asserts that permitting the jurors to ask questions that have been reviewed and approved by the Court is a common practice in federal court (as shown by the multiple circuits with a pattern jury instruction permitting such questions) and will provide the parties with insight into how the jurors are receiving the evidence and may keep the jurors more engaged in what will be a complex dispute.  *See* Third Circuit Pattern Civil Instructions § 1.8 (comment); Eighth Circuit Pattern Civil Instructions § 1.07.

[35] There is no basis or need to permit the jury to question the witnesses in this case. The proposed instruction may be seen as *inviting* questions from jurors where they otherwise would have none. This risks delays and trial inefficiencies for no appreciable benefit on the facts of this case. The source from which Plaintiffs have pulled this requested instruction acknowledges that many circuit courts have expressed "strong concerns" about the practice of allowing juror questions. It cites numerous cases for the propositions that the practice "risks turning jurors into advocates," "presents substantial risk of reversal and retrial," and even constitutes an abuse of discretion when permitted "as a matter of course." *See* 3 Fed. Jury Prac. & Instr. § 101:17 (6th ed.) (citing *United States v. Bush*, 47 F.3d 511, 515 (2d Cir. 1995); *United States v. Ajmal*, 67 F.3d 12, 13-15 (2d Cir. 1995); *United States v. Welliver*, 976 F.2d 1148, 1154-55 (8th Cir. 1993); *United States v. Sutton*, 970 F.2d 1001, 1005 (1st Cir. 1992)). Defendant Ridley likewise does not request this instruction. It need not and should not be given to the jury.

asked.

Do not discuss your question with anyone, including the marshal, clerk, or other jurors. Remember, you are not to discuss the case with the other jurors until it is submitted for your decision.

If you have difficulty hearing a witness or lawyer, please raise your hand immediately.[36]

---

[36] 3 Fed. Jury Prac. & Instr. § 101:17 (6th ed.) (modified).

**AGREED INSTRUCTION NO. [19] – Personal Needs**

If at any time during the trial you have any personal needs that must be taken care of, just raise your hand or otherwise notify me, or my courtroom deputy. Your comfort is important us to and we want to accommodate you in any way that we can.[37]

---

[37] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 97.

**AGREED INSTRUCTION NO. [20] – Course of Trial**

The trial will begin soon. First, each party may make an opening statement. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove. And it's offered to help you follow the evidence.[38]

Next, counsel for the Plaintiffs will examine their witnesses, and counsel for each Defendant may cross-examine those witnesses. Then each Defendant will present their witnesses and the Plaintiffs may cross-examine them.[39]

After all of the evidence is in, the attorneys will present their closing arguments to summarize and interpret the evidence for you, and then I will instruct you on the law.[40]

After that, you will retire to deliberate on your verdict. At the end of the trial, you must make your decision based upon what you recall of the evidence. You will not have a written transcript to consult. This is why it is critically important that you pay close attention to the testimony as it is given.[41]

---

[38] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 97.

[39] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 97–98 (modified).

[40] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 98.

[41] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 98.

## AGREED INSTRUCTION NO. [21] – Notes Are Allowed

That being said, if you wish, I'm going to allow you to take notes to help you remember what each witness said. If you choose to take notes, there are some important things to remember, though.[42]

First, your notes are not evidence. They are for your own use to help you recall your impression of the evidence. You should not view your notes as authoritative records or consider them as a transcript of the testimony. Your notes may be incomplete or contain errors and they are not an exact account of a witness's testimony.[43]

Second, if you do choose to take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.[44]

And, third, do not let notetaking distract you or the other jurors so you do not hear the other answers by a witness. In other words, don't concern yourself with taking down one answer and miss the next answer.[45]

The courtroom deputy will provide each of you with a pad of paper and a pen or pencil. At each recess just leave them on your seat in the jury box, when the court is in recess, the courtroom is locked. No one will read your notes or look at them and no one will have access to

---

[42] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 98.

[43] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 98.

[44] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 98.

[45] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 98–99.

Case 1:22-cv-00050-TRM-CHS   Document 384-1   Filed 10/13/23   Page 29 of 164   PageID #: 16454

them.  Also, when you leave at night, your notes will be secured, and no one will read them.[46]

---

[46] Jury Instructions, *Stephenson v. YRC, Inc.*, No. 1:17-CV-194 (E.D. Tenn. Aug. 19, 2019), ECF No. 113 at 99.

**II.      PROPOSED INSTRUCTIONS AFTER CLOSING**

    **A.      GENERAL INSTRUCTIONS**

       **AGREED INSTRUCTION NO. [22] — Introduction**

Members of the jury, now it is the time for me to instruct you about the law that you must follow in deciding this case.  At the start, I gave you some guidelines on the applicable law.  I will now instruct you on the law that you should use in reaching your verdict.

I will start by explaining the duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. And, finally, I will explain the law relating to the claims made in this case.  Please listen very carefully to everything that I say.[47]

---

[47] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 3.

**AGREED INSTRUCTION NO. [23] — Order of Instructions**

All of the instructions you are about to be given are equally important. The order in which these instructions are given has no significance. You must follow all of the instructions and not single out some and ignore others.[48]

---

[48] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 3.

## AGREED INSTRUCTION NO. [24] – Jurors' Duties

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if the Plaintiffs have met their burden of proof on their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

The lawyers have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.[49]

---

[49] Sixth Circuit Pattern Criminal Instructions § 1.02 (modified).

**AGREED INSTRUCTION NO. [25] — More Than One Defendant**

There are two defendants in this lawsuit, Mr. Ridley and ChemTreat. You will decide the claims against Mr. Ridley and ChemTreat separately. Each defendant is entitled to a fair and separate consideration. If you find that Plaintiffs have proven their claims against only one of the Defendants, you are required to return a verdict against that Defendant alone, not against both Defendants. Unless you are instructed to the contrary, the instructions apply to your consideration of the claims against each Defendant.[50]

---

[50] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 3 (modified).

33

**AGREED INSTRUCTION NO. [26] — Corporate Parties**

The fact that some of the parties are corporations must not influence you in your deliberations or in your verdict. Corporations and persons are equal in the eyes of the law. Both are entitled to the same fair and impartial treatment and to justice by the same legal standards.[51]

---

[51] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 8 (modified).

**AGREED INSTRUCTION NO. [27] — Decide Based on Admitted Evidence**

You are to decide this case only from the evidence which was presented at trial. The evidence consists of (1) the sworn testimony of the witnesses who have testified, (2) the exhibits that were received and marked as evidence, and (3) any other matters that I have instructed you to consider as evidence. If I sustained an objection to any evidence or if I ordered evidence stricken, you must entirely ignore that evidence.[52]

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.[53]

You will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time-consuming for the reporter to read back lengthy testimony.[54]

---

[52] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 4 (modified).

[53] Sixth Circuit Pattern Criminal Instructions § 1.04(3).

[54] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 4.

35

**AGREED INSTRUCTION NO. [28] — Direct and Circumstantial Evidence**

There are two kinds of evidence, direct and circumstantial. Direct evidence is proof of a fact, such as testimony of a witness about what the witness personally observed. Circumstantial evidence is indirect evidence that gives you clues about what happened. Circumstantial evidence is proof of a fact or a group of facts that causes you to conclude that another fact exists. It is for you to decide whether a fact has been proved by circumstantial evidence. If you base your decision upon circumstantial evidence, you must be convinced that the conclusion you reach is more probable than any other explanation.

For example, if a witness testified that the witness saw it raining outside, that would be direct evidence that it was raining. If a witness testified that the witness saw someone enter a room wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. You are to consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence. In making your decision you must consider all the evidence in light of reason, experience, and common sense.[55]

---

[55] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 5.

**AGREED INSTRUCTION NO. [29] — Duty to Consider All Evidence**

Although you must consider all of the evidence, you are not required to accept all of the evidence as true or accurate. You should not decide an issue by the simple process of counting the number of witnesses who have testified on each side. You must consider all the evidence in the case. You may decide that the testimony of fewer witnesses on one side is more convincing than the testimony of more witnesses on the other side.[56]

---

[56] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 5–6.

**AGREED INSTRUCTION NO. [30] – Evidence for A Limited Purpose (If Needed)**

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose.  Specifically, [list limiting instructions]. You must consider this evidence only for the limited purpose for which it was admitted.[57]

---

[57] Seventh Circuit Pattern Civil Instructions § 1.09.

**DISPUTED INSTRUCTION NO. [31] – Consideration of Summaries and Other Materials**

During the trial you have seen counsel use summaries, charts, drawings, calculations, or similar material which were offered to assist in the presentation and understanding of the evidence.

[Plaintiffs' proposal: Unless this material is admitted into evidence and marked as an exhibit, this . . .][58] [59] This material is not itself evidence and must not be considered as proof of any facts.[60]

[Defendants' proposal:  If summary evidence in the form of a chart, drawing, calculation, testimony, or similar material was admitted into evidence and marked as an exhibit, then you may consider it as evidence.  This summary was admitted in evidence, in addition to the material it summarizes, because it may assist you in understanding the evidence that has been presented.

But the summary itself is not evidence of the material it summarizes, and is only as valid and reliable as the underlying material it summarizes.][61]

---

[58] Plaintiffs maintain that ChemTreat's proposed language is superfluous, redundant and may cause confusion; particularly the phrase "the summary itself is not evidence of the material it summarizes, and is only as valid and reliable and the underlying material it summarizes." While technically correct, it does clearly and succinctly explain the simple concept of anything that is not marked as an exhibit, is not evidence.

[59] ChemTreat contends that Defendants' proposed additional language provides context which the jury must consider in their analysis of any summary exhibits that are admitted into evidence.  This language comes directly from the Sixth Circuit's Pattern Criminal Instructions.  As noted in the commentary to § 7.12A, this language is necessary to avoid error.

[60] Sixth Circuit Pattern Criminal Instructions § 7.12.

[61] Sixth Circuit Pattern Criminal Instructions § 7.12A.

39

**AGREED INSTRUCTION NO. [32] — Interrogatories**

During the course of the trial you may have heard reference made to the word interrogatory. An interrogatory is a written question that must be answered under oath and in writing. You are to consider interrogatories and their answers as if the questions had been asked and answered here in court.[62]

---

[62] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 7.

40

**DISPUTED INSTRUCTION NO. [33] — Requests for Admission**

The parties have introduced evidence of certain requests for admissions. A request for admission is a written request that a party admit or deny that a particular fact is true. The party to whom such a request is made must admit or deny the request under oath and in writing. If these facts were admitted [Plaintiffs' proposal: or not answered],[63] [64] you are to consider the facts to be true since the other party had the opportunity to deny the request for admission but did not do so.[65]

---

[63] Plaintiffs maintain that this proposed language is a simple way to explain to jurors that under the Federal Rules of Civil Procedure, when a request for admission is not answered, it is deemed admitted after 30 days. *See* Fed. R. Civ. P. 36.

[64] ChemTreat objects that there are no RFAs in this case that have not been answered; thus, this language is not necessary and is likely confusing for the jury.

[65] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 7 (modified).

41

**DISPUTED INSTRUCTION NO. [34] -- Requests for Production**

Additionally, you may have heard references to requests for production. A request for production is a request by one party that the opposing party produce specific documents. The opposing party must respond in writing and must produce responsive documents.[66] [ChemTreat proposes adding the following sentence: [67] [68] Requests for production and written responses to them are not evidence.][69]

---

[66] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 7 (modified).

[67] ChemTreat contends that the final additional sentence that it proposes adding is necessary to ensure that, to the extent RFPs are raised at trial, the jury should not treat them as evidence. RFAs and interrogatories are statements made under oath and thus may be considered as if they were statements made in court. Without this additional disclaimer, the jury may mistakenly give responses to RFPs the same evidentiary weight as RFAs and interrogatories.

[68] Plaintiffs maintain that this unnecessary to explain request for production, wastes time and resources, and may confuse the jury.

[69] *ILS, Inc. v. WMM, Inc.*, 2014 WL 4375890, at *4 (D. Colo. Sept. 4, 2014).

**AGREED INSTRUCTION NO. [35] — Depositions**

Certain testimony has been presented by deposition. A deposition is testimony taken under oath before the trial and preserved in writing or on a videotape. You are to consider that testimony as if it had been given in court.[70]

---

[70] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 7; Seventh Circuit Pattern Civil Instructions § 1.05.

**AGREED INSTRUCTION NO. [36] — Stipulations**

A stipulation is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved.[71]

The parties have stipulated to the following facts that are to be treated by you as proven:

1. Plaintiff Ecolab Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Minnesota.

2. Plaintiff Nalco Company, LLC (d/b/a "Nalco Water, an Ecolab Company" and "Nalco Water") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Illinois.

3. Nalco is a subsidiary of Ecolab.

4. Defendant ChemTreat, Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Virginia.

5. Defendant Anthony Ridley is a resident of the State of Tennessee.

6. Nalco, Ecolab, and ChemTreat are companies that provide industrial water treatment products and services to industries including, but not limited to, food and beverage, chemical and refining, manufacturing, mining, commercial, and pharmaceutical.

7. Mr. Ridley first began working at Nalco on November 1, 1999 and held several positions with Nalco, with his last position as a District Manager until September 30, 2020.

---

[71] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 7.

8. Mr. Ridley sent ChemTreat a copy of his resume on August 17, 2020.

9. Mr. Ridley signed an "Employee Sales, Service, Marketing & Inventions Agreement" with Ecolab on September 16, 2020 in connection with accepting a job at Ecolab.

10. Mr. Ridley began working as a Corporate Account Manager at Ecolab on October 1, 2020.

11. Mr. Ridley sent ChemTreat a copy of his Ecolab "Employee Sales, Service, Marketing & Inventions Agreement" on January 13, 2021.

12. ChemTreat offered Mr. Ridley a position as a Regional Sales Manager on June 18, 2021.

13. On June 19, 2021, Mr. Ridley signed copies of ChemTreat's "Certification of Compliance of Obligations to Prior Employers," "Certification of Danaher Corporation Standards of Conduct," and "Signing Bonus Repayment Agreement."

14. Mr. Ridley accepted ChemTreat's offer of future employment on June 20, 2021.

15. Mr. Ridley submitted his two-week notice of resignation to his supervisor at Ecolab, Jacqueline Herrera, on July 1, 2021, stating that his last day would be July 14, 2021.

16. Ecolab terminated Mr. Ridley's employment upon receipt of his resignation, and cut off his access to their networks on the same day, July 1, 2021.

17. Mr. Ridley began working at ChemTreat as a Regional Sales Manager on July 2, 2021.

18. On February 9, 2022, counsel for Plaintiffs sent both Mr. Ridley and ChemTreat a demand letter alleging that Mr. Ridley took Ecolab/Nalco documents.

19. On March 3, 2022, Plaintiffs filed this lawsuit.

20. On March 18, 2022, ChemTreat terminated Mr. Ridley.

21. On March 21, 2022, ChemTreat notified Mr. Ridley of his obligation to return his signing bonus in light of his termination.[72]

---

[72] *See* Doc. 370.

**AGREED INSTRUCTION NO. [37] — Lawyer Objections**

The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  Those rules are designed to make sure that both sides receive a fair trial.  And do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.  Remember that your decision must be based only on the evidence that you saw and heard here in court.  Nothing I have said or done during this trial was meant to influence your decision in any way.[73]

---

[73] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 10.

## AGREED INSTRUCTION NO. [38] — Credibility of Witnesses

You are the sole and exclusive judges of the credibility or believability of the witnesses who have testified in this case. You must decide which witnesses you believe and how important you think their testimony is. You are not required to accept or reject everything a witness says. You are free to believe all, none, or part of any person's testimony. In deciding what testimony you believe, you should rely on your own common sense and everyday experience. There is no fixed set of rules to use in deciding whether you believe a witness, but it may help you to think about the following questions:

1. Was the witness able to see, hear, or be aware of the things about which the witness testified?

2. How well was the witness able to recall and describe those things?

3. How long was the witness watching or listening?

4. Was the witness distracted in some way?

5. Did the witness have a good memory?

6. How did the witness look and act while testifying?

7. Was the witness making an honest effort to tell the truth, or did the witness evade questions?

8. Did the witness have any interest in the outcome of the case?

9. Did the witness have any motive, bias, or prejudice that would influence the witness's testimony?

10. How reasonable was the witness's testimony when you consider all of the evidence in the case?

11. Was the witness's testimony contradicted by what that witness has said or done at

48

another time, by the testimony of other witnesses, or by other evidence?[74]

---

[74] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 8–10.

Case 1:22-cv-00050-TRM-CHS   Document 384-1   Filed 10/13/23   Page 50 of 164   PageID #: 16475

## DEFENDANTS' PROPOSED INSTRUCTION NO. [39A] — Opinion Testimony

(1) You have heard the testimony of _____, who testified as opinion witnesses.

(2) You do not have to accept _____'s opinions.  In deciding how much weight to give an opinion, you should consider the witness's qualifications and how the witness reached conclusions.  Also consider the other factors discussed in these instructions for weighing the credibility of witnesses.

(3) Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.[75]

---

[75] Sixth Circuit Pattern Criminal Instructions § 7.03; *see also* Eight Circuit Pattern Civil Instructions § 3.05.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [39B] — Opinion Testimony[76][77]**

Usually, witnesses are not permitted to testify as to opinions or conclusions. However, a witness who has scientific, technical, or other specialized knowledge, skill, experience, training, or education may be permitted to give testimony in the form of an opinion. Those witnesses are often referred to as "expert witnesses."

You should determine the weight that should be given to each expert's opinion. You should consider:

1. The education, qualifications, and experience of the witnesses; and

2. The credibility of the witnesses; and

3. The facts relied upon by the witnesses to support the opinion; and

4. The reasoning used by witnesses to arrive at the opinion.

You should consider each expert opinion and give it the weight, if any, that you think it deserves. You are not required to accept the opinion of any expert.[78]

---

[76] ChemTreat's version of this jury instruction, number 39A, unnecessarily singles out any given expert by instructing the jury that they do not have to accept a specific excerpt's testimony, rather than just any expert's testimony. This approach risks being misleading and prejudicial. It also does not apprise the jury that the instruction pertains to the opinion testimony of the expert witnesses and risks causing confusion as to its scope and application in this case.

[77] ChemTreat objects to Plaintiffs' proposed instruction no. 39B. Plaintiffs propose using a state instruction on how the jury should consider the testimony of expert witnesses, but this case is proceeding in federal court and the Sixth Circuit has already expressed its preferred instruction on this issue. Moreover, the Sixth Circuit has specifically criticized the practice of referring to a witness as an expert before the jury, as Plaintiffs' proposal does. *See United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007).

[78] T.P.I.—CIVIL 2.30 Expert Testimony—Determination of Weight, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 2.30 (2023 ed.)

Case 1:22-cv-00050-TRM-CHS   Document 384-1   Filed 10/13/23   Page 53 of 164   PageID #: 16478

**AGREED INSTRUCTION NO. [40] — Number of Witnesses**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.[79]

---

[79] Sixth Circuit Pattern Criminal Jury instructions § 1.08.

**AGREED INSTRUCTION NO. [41] — Lying Witness**

You may conclude that a witness deliberately lied about a fact that is important to your decision in the case.  If so, you may reject everything that witness said.  On the other hand, if you decide that the witness lied about some things but told the truth about others, you may accept the part you decide is true and you may reject the rest.[80]

---

[80] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 11.

**AGREED INSTRUCTION NO. [42] — Discrepancies in Witness Testimony**

There may be discrepancies or differences within a witness's testimony or between the testimony of different witnesses. This does not necessarily mean that a witness should be disbelieved. Sometimes when two people observe an event they will see or hear it differently. Sometimes a witness may have an innocent lapse of memory. Witnesses may testify honestly but simply may be wrong about what they thought they saw or remembered. You should also consider whether a discrepancy relates to an important fact or only to an unimportant detail.[81]

---

[81] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 11–12.

55

**AGREED INSTRUCTION NO. [43] — Reliance on Common Sense.**

You are to decide the case solely on the evidence received at trial. Although you must only consider the evidence in this case in reaching your verdict, you are not required to set aside your common knowledge. You are permitted to weigh the evidence in the light of your common sense, observations, and experience.[82]

---

[82] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 13–14.

## DEFENDANTS' PROPOSED INSTRUCTION NO. [44A] — Burden of Proof Standards

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.

First, on most issues, you must decide whether a party has proven certain allegations to be true by a "preponderance of the evidence." To prove an allegation by a "preponderance of the evidence," a party must convince you that the allegation is more likely true than not true. If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence and the party having the burden of proving that issue has failed. You must consider all the evidence on each issue.[83]

The second standard of proof that you will apply is proof by "clear and convincing evidence." When I say a particular party must prove an allegation by "clear and convincing evidence," it means the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it is a lower standard of proof than proof beyond a reasonable doubt, which applies only in criminal trials.[84]

---

[83] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 14-15 (modified).

[84] Sixth Circuit Pattern Criminal Instructions § 6.04 (modified); *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

### PLAINTIFFS' PROPOSED INSTRUCTION NO. [44B] – Burden of Proof Standards[85] [86]

On every issue but one, you must decide whether a party has proven certain allegations to be true by a "preponderance of the evidence." The term preponderance of the evidence means that amount of evidence that causes you to conclude than an allegation is probably true. To prove an allegation by a preponderance of the evidence, a party must convince you that the allegation is more likely true than not true. If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence and the party having the burden of proving that issue has failed. You must consider all the evidence on each issue.[87]

A separate burden of proof will apply only to one specific claim, and I will provide further instructions at the appropriate time. However, for every other issue in this case, you must apply the "preponderance of the evidence" standard.

---

[85] Plaintiffs maintain that there is only one claim that requires a burden of proof beyond a preponderance of the evidence standard. Claiming there is more than one general standard is not only factually and legally inaccurate, it is misleading and confusing to the jury.

[86] ChemTreat objects to Plaintiffs' proposed instruction no. 44B on multiple grounds. First, as noted earlier, there are multiple issues in this trial subject to the clear and convincing evidence standard, not one, and it is inaccurate and misleading to the jury for Plaintiffs simultaneously to propose that all issues be heard in a single phase of the trial, and that the jury be instructed that only a single issue is subject to the clear and convincing evidence standard. Second, Plaintiffs state that "preponderance of the evidence means that amount of evidence that causes you to conclude than an allegation is probably true." That is a vague and incorrect definition of the standard and conflicts with the subsequent sentence, which states that preponderance of the evidence means an allegation is "more likely true than not true." Finally, an instruction on the applicable burdens of proof should include both burdens of proof, not only one of the two burdens of proof, and there is no reason to reference, but not explain, the clear and convincing standard.

[87] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 14-15.

58

**DEFENDANTS' PROPOSED INSTRUCTION NO. [45] — Respondeat Superior[88] [89]**

If you find that Mr. Ridley is liable to Plaintiffs, that does not mean that ChemTreat is also necessarily liable. Instead, for ChemTreat to be held liable for the conduct of Mr. Ridley or any other ChemTreat employee, you must determine whether Plaintiffs have proven by a preponderance of the evidence that:

1. The individual was a ChemTreat employee at the time he caused Plaintiffs an injury;

2. The individual was working on ChemTreat's business when the injury occurred; and

3. The individual was acting within the scope of his employment when the injury

---

[88] ChemTreat contends that, as it is a corporation and can only act through its employees, an instruction on respondeat superior is necessary. Without such an instruction, the jury could be misled into believing that ChemTreat is responsible for the conduct of all of its employees or prospective employees, regardless of whether the requirements of respondeat superior are satisfied. Moreover, Plaintiffs' Complaint expressly alleges that "ChemTreat is liable for Ridley's misconduct both vicariously and under principles of *respondeat superior*." Doc. 229, ¶¶ 193, 254, 266, 279. Plaintiffs declined to disavow that theory of liability when the parties conferred on jury instructions. Accordingly, it is necessary to include an instruction on the issue.

[89] Plaintiffs oppose this proposed jury instruction because it is argumentative and misstates case law. Under the respondeat superior doctrine, an employer can be held liable for the intentional torts that its employees committed within the scope of employment even if the employer did not authorize the employee to commit the tort. *See SolarCity Corp.*, 2016 WL 11019989, at *5. Courts can find vicarious liability "so long as there is a 'causal nexus' between the activity and the employee's work." *Id.*; *Thola*, 164 P.3d at 528 ("[W]e agree with the majority of jurisdictions addressing the issue and conclude that one may violate the UTSA vicariously and be held responsible for such violation.") "[C]onduct will be considered within the scope of employment when it is performed, at least in part, to benefit the employer, though the employer may forbid it." *SolarCity Corp.*, 2016 WL 11019989, at *5 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Stating otherwise will inevitably mislead the jury and prejudice Plaintiffs.

59

occurred.[90]

If, for example, you determine that Mr. Ridley was not an employee of ChemTreat or was not working on ChemTreat's business at the time he inflicted an injury on Plaintiffs, you may not hold ChemTreat liable for Mr. Ridley's conduct.[91]  This is true even if you find that Mr. Ridley intended to benefit ChemTreat at the time he injured Plaintiffs.[92]  In addition, you may not hold ChemTreat liable for Mr. Ridley's conduct even if Mr. Ridley was planning to become a ChemTreat employee or had accepted ChemTreat's job offer but had yet to resign from Ecolab at the time he injured Plaintiffs.[93]

To determine whether Mr. Ridley's or another ChemTreat employee's conduct was within the scope of his employment, you may consider whether the conduct:  (a) is of the kind he was employed to perform, (b) occurred substantially within the authorized time and place limits, and (c) was motivated at least in part by a purpose to serve ChemTreat.[94]  An employee's conduct is not within the scope of employment if it is different in kind from that authorized, far beyond the

---

[90] *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992).

[91] *Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023);

[92] *See Alert Enter.*, 2023 WL 2541353, at *3 (dismissing misappropriation claim because plaintiff did not cite "any law suggesting the future employer of a person who steals a company's trade secrets for the benefit of the future employer is liable under respondeat superior, absent" proof of actual use post-employment).

[93] See *Weeks v. Sands*, 2021 WL 5828043, at *4–5 (W.D. Tenn. Dec. 8, 2021); *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020).

[94] T.P.I.—CIVIL 12.04A Factors to Determine Whether an Act Occurred Within the Scope of Employment, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 12.04A (2023 ed.).

authorized time and place limits, or too little motivated by a purpose to serve the employer.[95]  If you find that ChemTreat did not authorize Mr. Ridley's or another ChemTreat employee's conduct, then you may not hold ChemTreat liable for Mr. Ridley's conduct.[96]

---

[95] T.P.I.—CIVIL 12.04A Factors to Determine Whether an Act Occurred Within the Scope of Employment, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 12.04A (2023 ed.).

[96] *See* Restatement (Second) of Agency § 239 (1958); s*ee also Ellington v. Cajun Operating Co.*, 2021 WL 507888, at *4 (Tenn. Ct. App. Feb. 10, 2021); *Wallace v. Leidos Innovations Corp.*, 805 F. App'x 389, 393 (6th Cir. 2020) (holding there was no "genuine dispute of fact" regarding respondeat superior liability where "undisputed evidence" showed that employee's conduct was "not authorized" by employer).

61

**AGREED INSTRUCTION NO. [46] -- SPOLIATION**

[The parties reserve their rights and will propose instructions related to spoliation after the culmination of the Special Master's proceedings.]

### B. DEFENDANTS' PROPOSED INTRODUCTION: COUNTS I & II (DEFEND TRADE SECRETS ACT AND THE TENNESSEE UNIFORM TRADE SECRETS ACT)

I will now instruct you about the law regarding Plaintiffs' specific claims against Mr. Ridley and ChemTreat. Plaintiffs claim that Mr. Ridley and ChemTreat misappropriated Plaintiffs' trade secrets. While Plaintiffs bring these claims against both Mr. Ridley and ChemTreat, you are to consider the evidence and claims against each Defendant separately. The fact that you find one Defendant liable does not mean that you must find both Defendants liable.

To prove that either Mr. Ridley or ChemTreat misappropriated trade secrets, Plaintiffs must establish by a preponderance of the evidence the following as to that Defendant:

1. Plaintiffs owned a trade secret;[97] and

2. The Defendant misappropriated a trade secret;[98] and

3. That Defendant's misappropriation of that trade secret caused a detriment to Plaintiffs.[99]

As I explained before, ChemTreat is a corporation and can only act through its employees but not all actions by employees are considered the actions of the corporation. Thus, when you are considering whether Plaintiffs have met their burden of proof as to ChemTreat, you must decide whether Plaintiffs have proven by a preponderance of the evidence that a ChemTreat employee was acting within the scope of his employment under the standard I gave you previously in

---

[97] *Western Excelsior Corp. v. Propex Operating Co.*, LLC, 2017 WL 11195421, at *2 (E.D. Tenn. Sept. 6, 2017).

[98] *Western Excelsior Corp. v. Propex Operating Co.*, LLC, 2017 WL 11195421, at *2 (E.D. Tenn. Sept. 6, 2017).

[99] *Western Excelsior Corp. v. Propex Operating Co.*, LLC, 2017 WL 11195421, at *2 (E.D. Tenn. Sept. 6, 2017).

Instruction ▢.

I will now explain each of these elements in greater detail.

## C.   PLAINTIFFS' PROPOSED INTRODUCTION:  COUNTS I & II (DEFEND TRADE SECRETS ACT AND THE TENNESSEE UNIFORM TRADE SECRETS ACT)[100] [101]

Plaintiffs claim that Mr. Ridley and ChemTreat misappropriated Plaintiffs' trade secrets under both the federal Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act. The elements of these claims are substantially the same.[102] To prove each claims, Plaintiffs must prove the following acts by a preponderance of the evidence:

1.      The existence of a trade secret;

2.      Defendant misappropriated the trade secret; and

3.      The misappropriation resulted in detriment to Plaintiffs.[103]

---

[100] ChemTreat's proposed language, particularly that which explains the employee-employer relationship between Ridley and ChemTreat, is unnecessary, argumentative and might confuse and mislead the jury. This jury instruction should state the elements and the burden of proof.

[101] ChemTreat objects that Plaintiffs' proposed introduction omits key language reminding the jury to consider the claims against Mr. Ridley and ChemTreat individually.  That caution is necessary to avoid reversible error, as the parties are distinct and the proof regarding the parties is similarly distinct.  Plaintiffs' proposal also omits language reminding the jury that it may only find ChemTreat liable if the requirements of *respondeat superior* are satisfied.  During the parties' conferral, Plaintiffs declined to explain how ChemTreat could be held liable for misappropriation except under a theory of *respondeat superior* (as pled in their Complaint), such that it is necessary to instruct the jury on that issue.

[102] *Enchant Christmas Light Maze & Mkt., Ltd. v. GlowCo, LLC*, 2019 WL 5964531, at *5 (M.D. Tenn. Nov. 13, 2019) ("requirements for establishing misappropriation of a trade secret are largely the same under the DTSA and the Uniform Act").

[103] *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)); *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D. Tenn. 2011).  *See also* Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 17

## DEFENDANTS' PROPOSED INSTRUCTION NO. [47A] — Existence of a Trade Secret [104]

The first element that Plaintiffs must prove is the existence of a trade secret. It is Plaintiffs' burden to specify exactly what information they contend is a "trade secret."[105] Plaintiffs cannot assert that information constitutes a trade secret if I have not admitted that information into evidence as an exhibit or instructed you that it is permissible to consider it.[106]

The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily learned or discovered through proper means by, another person who can obtain economic value from the disclosure or use of the information;[107] and

2. The owner of the information has taken reasonable measures to keep secret.[108]

In sum, the definition of trade secret consists of three elements: (1) information, (2) that is

---

[104] Plaintiffs maintain that ChemTreat's proposed jury instruction No. 47A is superfluous and argumentative. ChemTreat's proposed jury instruction attempts to directly inform jurors of Defendants' desired conclusion as to what they should or should not consider to be a trade secret.

[105] *Broad-Ocean Techs., LLC v. Lei*, 2023 WL 145001, at *5 (E.D. Mich. Jan. 9, 2023)

[106] *Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc.*, 1998 WL 151814, at *6 (N.D. Ill. Mar. 27, 1998); *Freebird Commc'ns, Inc. Profit Sharing Plan v. Roberts*, 2019 WL 5964583, at *4 (D. Kan. Nov. 13, 2019)

[107] *W. Excelsior Corp. v. Propex Operating Co., LLC*, 2017 WL 11195421, at *2 (E.D. Tenn. Sept. 6, 2017) (DTSA); *see also BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, 602 F. Supp. 3d 1059, 1064 (M.D. Tenn. 2022) (TUTSA), *aff'd*, 63 F.4th 1061 (6th Cir. 2023).

[108] *W. Excelsior Corp. v. Propex Operating Co., LLC*, 2017 WL 11195421, at *2 (E.D. Tenn. Sept. 6, 2017) (DTSA); *see also BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, 602 F. Supp. 3d 1059, 1064 (M.D. Tenn. 2022) (TUTSA), *aff'd*, 63 F.4th 1061 (6th Cir. 2023).

66

valuable because it is unknown to others, and (3) that the owner has taken reasonable measures to keep secret.[109]

A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes.[110]

The fact that Plaintiffs allege a document or piece of information is important or confidential does not mean that it is necessarily a trade secret. Not all confidential, proprietary, or otherwise secret information qualifies as a trade secret.[111] The mere fact that a document relates to Plaintiffs' business or that Mr. Ridley or other employees used a document while working for Plaintiffs does not necessarily make that document a trade secret.[112]

If you find that Plaintiffs have failed to prove that a document contains a trade secret, then you must find that Plaintiffs have not proven their trade secrets claims as to either Defendant.

---

[109] *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

[110] 18 U.S.C. § 1839(3).

[111] *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004); *see also PartyLite Gifts, Inc. v. Swiss Colony Occasions,* 246 F. App'x 969, 976 (6th Cir. 2007).

[112] *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (holding not "all information in or about" a company's products is "a trade secret").

67

## PLAINTIFFS' PROPOSED INSTRUCTION NO. [47B] – Existence of a Trade Secret [113]

The first element that Plaintiffs must prove is the existence of a trade secret. A "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information that the owner thereof has taken reasonable measures to keep secret if the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[114]. A trade secret may be tangible or intangible. A trade secret does not have to be stored, compiled, or memorialized; but, if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.[115]

---

[113] ChemTreat objects to Plaintiffs' proposed instruction no. 47B for several reasons. First, it omits necessary language that it is Plaintiffs' burden to specify the information they claim is a trade secrets and that the jury cannot consider trade secrets that were not admitted into evidence. Second, Plaintiffs' proposal uses legal jargon that is needlessly complex (such as the word "ascertainable") and thereby risks confusing the jury. Third, Plaintiffs' proposal includes parts of the statutory definition of a trade secret that are not at issue in this case, including describing whether a trade secret may be tangible or whether and how it must be stored. Defendants' proposed instruction no. 47A provides such needed detail along with additional context needed to instruct the jury that not all confidential information is a trade secret.

[114] Tenn. Code Ann. § 47-25-1702(4); *see also* 18 U.S.C. § 1839(3)

[115] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 17-18.

68

**DEFENDANTS' PROPOSED INSTRUCTION NO. [48] – Factors Indicative of a Trade Secret[116] [117]**

In determining whether Plaintiffs have proven by a preponderance of the evidence that they possessed one or more specific, identifiable trade secrets, you may consider the following factors

1. The extent to which the information is public knowledge;

2. The extent of measures taken by Plaintiffs to guard the secrecy of the information;

3. The value of the information to Plaintiffs' business and to their competitors;

4. The amount of time, effort, and money expended by Plaintiffs in developing the information; and

5. The ease or difficulty with which the information could be properly acquired or duplicated by others.[118]

---

[116] Jurors are elsewhere instructed that they may consider direct and circumstantial evidence generally. The only reason Defendants here attempt to explain in detail all of the factors that jurors could consider when determining what is a trade secret is to inject suggestive language to persuade jurors to find for the Defendants. Plaintiffs oppose this jury instruction because it is argumentative and is meant to inappropriately sway jurors' opinions on trade secrets.

[117] ChemTreat contends that this instruction properly assists the jury by identifying various factors as permissive elements to consider in applying a complex legal concept. ChemTreat notes that Plaintiffs do not dispute that this instruction accurately states the law on this issue.. Defendants' proposed instruction no. 48 does not prohibit the jury from deciding which pieces of evidence to consider.

[118] *Knox Trailers, Inc. v. Clark*, 2021 WL 2043188, at *6 (E.D. Tenn. May 21, 2021); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) (interpreting the common law factors as "instructive guidelines for ascertaining whether a trade secret exists under the Act"); *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074–75 (7th Cir.1992).

69

**DEFENDANTS' PROPOSED INSTRUCTION NO. [49] – Public Information is not a Trade Secret. [119] [120]**

Some types of information are not trade secrets.  For example, information that is public knowledge or general knowledge in the water treatment industry or ideas which are well known or easily learned or discovered cannot be trade secrets.[121]  If information is made available to others, such as customers or on the internet, without confidentiality restrictions, such information is publicly available and cannot be a trade secret.[122]

---

[119] ChemTreat contends that this instruction is indisputably an accurate statement of the law and is properly given here because, as noted in ChemTreat's summary judgment brief, it is undisputed that certain of Plaintiffs' alleged trade secrets are publicly available or were made accessible to third parties without confidentiality restrictions.  *See*  Doc. 256 at 14-15 & n.10, 18.

[120] Defendants' proposal that the Court provide specific examples of what is not considered a trade secret is unnecessary, argumentative and inappropriate. Plaintiffs object to this proposed jury instruction.

[121] *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 215 F.3d 1326, 2000 WL 687681, at *7 (6th Cir. 2000)

[122] *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622, 632 (E.D. Pa. 2017) ("The posting of materials on the internet without any confidentiality protections makes the information publicly available and renders the materials incapable of trade secret status.").

**DEFENDANTS' PROPOSED INSTRUCTION NO. [50] – Employee's General Knowledge is not a Trade Secret[123] [124]**

An employee's general knowledge, skills, talents, and abilities are not trade secrets.[125]  For that same reason, not all documents an employee creates using his general knowledge and work experience are trade secrets that belong to his employer.[126]  Facts and information acquired during employment can only be trade secrets if they meet the given definition.[127]

---

[123] ChemTreat contends that this is an accurate summary of the law and properly given here to assist the jury in resolving the parties' dispute regarding the Business Plan (the basis for Plaintiffs' breach of fiduciary duty claim), which Ridley testified he created using his 20 years of experience and Plaintiffs contend contains unspecified trade secret formulas.

[124] Defendants' proposal that the Court provide specific examples of what is not considered a trade secret is unnecessary, argumentative and inappropriate. Plaintiffs object to this proposed jury instruction.

[125] *United States v. Liew*, 856 F.3d 585, 597 (9th Cir. 2017).

[126] *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, 2013 WL 4498993, at *10 (W.D. Mich. Aug. 19, 2013) ("[T]he general knowledge of an employee does not constitute a trade secret."); *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 589–90 (Tenn. Ct. App. 2001).

[127] *United States v. Liew*, 856 F.3d 585, 597 (9th Cir. 2017).

71

### DEFENDANTS' PROPOSED INSTRUCTION NO. [51] – Stale Information is not a Trade Secret[128] [129]

Just because information may have been a trade secret in the past does not mean that it is always a trade secret. Some information, like marketing plans and documents concerning prices, quality, or reliability of products, can lose its value and trade secret status quickly after it is created, as market conditions, prices, and profit margins change and business relationships evolve rapidly in certain industries.[130] So, in determining whether a document contains Plaintiffs' trade secret information, you may consider whether that information is so stale that it would be of little use to a competitor.

---

[128] ChemTreat contends that because it is undisputed that many of Plaintiffs' alleged trade secrets are years or even decades old, it is appropriate to instruct the jury on this issue, the legal accuracy of which Plaintiffs do not contest.

[129] Defendants' proposal that the Court provide specific examples of what is not considered a trade secret is unnecessary, argumentative and inappropriate. Plaintiffs object to this proposed jury instruction.

[130] *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 903 (N.D. Ill. 2019); *PrimeSource Bldg. Prod., Inc. v. Huttig Bldg. Prod., Inc.*, 2017 WL 7795125, at *14 (N.D. Ill. Dec. 9, 2017); *Avtel Servs., Inc. v. U.S.*, 70 Fed. Cl. 173, 191 (2006) (collecting cases); *WEG Elec. Corp v. Pethers*, 2016 WL 1441793, at *3 (D. Minn. Apr. 12, 2016); *see also DeVere Co. v. McColley*, 2014 WL 6473513, at *8 (W.D. Wis. Nov. 18, 2014) ("[S]trategy and marketing plans grow stale; pricing changes; and customer demands shift."); *Taylor v. Babbitt*, 760 F. Supp. 2d 80, 88–89 (D.D.C. 2011).

**DEFENDANTS' PROPOSED INSTRUCTION NO. [52] – Information that is
not a Trade Secret as a Matter of Law[131] [132]**

Additionally, certain types of information are not trade secrets under the law. These include (1) information that an ex-employee remembered about Plaintiffs' prices; (2) specific needs and business habits of certain customers; and (3) an employee's personality and relationships that he has established with certain customers.[133]

---

[131] ChemTreat contends that this is an accurate statement of the law and is properly given her as the parties' trade secret dispute centers on information about customers' practices, preferences, and pricing that Plaintiffs contend constitutes a trade secret.

[132] Defendants' proposal that the Court provide specific examples of what is not considered a trade secret is unnecessary, argumentative and inappropriate. Plaintiffs object to this proposed jury instruction.

[133] *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 215 (Tenn. Ct. App. 2004).

**DEFENDANTS' PROPOSED INSTRUCTION NO. [53] – Reasonable Secrecy Measures[134] [135]**

In addition to identifying the information they allege was a trade secret, Plaintiffs must show that they took reasonable measures to keep the information secret. What is reasonable depends on the situation.[136] However, a substantial element of secrecy must exist so that a person or competitor would have difficulty in acquiring the necessary information.[137] Transmitting trade secrets to third parties, including customers, without a confidentiality agreement or making trade secret information publicly available means that Plaintiffs did not take reasonable efforts to keep such information secret.[138]

Merely declaring that something is confidential or a trade secret is not evidence that the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[139]

If you find that Plaintiffs did not take reasonable measures to protect the secrecy of their

---

[134] ChemTreat contends that this instruction properly assists the jury in evaluating a complex legal concept. ChemTreat notes that Plaintiffs do not dispute that this instruction accurately states the law on this issue. Moreover, one of Defendants' defenses in this case is that Plaintiffs failed to take reasonable measures to protect their trade secrets, and the jury should be instructed about what this concept means.

[135] Defendants' proposal that the Court provide specific examples of what is not considered a trade secret is unnecessary, argumentative and inappropriate. Plaintiffs object to this proposed jury instruction.

[136] *Knox Trailers, Inc. v. Clark*, 2021 WL 2043188, at *7 (E.D. Tenn. May 21, 2021).

[137] *Knox Trailers, Inc. v. Clark*, 2021 WL 2043188, at *7 (E.D. Tenn. May 21, 2021).

[138] *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 269 (S.D.N.Y. 2021) (disclosure of trade secrets "without evidence of any written or verbal confidentiality agreements deprives them of any trade secret protection under federal or state law").

[139] *EarthCam, Inc. v. Oxblue Corp.*, 2017 WL 3188453, at *8 (11th Cir. July 27, 2017).

alleged trade secret, then you must find that Plaintiffs have not proven their trade secrets claims as to either Defendant.

## DEFENDANTS' PROPOSED INSTRUCTION NO. [54] -- Independent Economic Value[140] [141]

Plaintiffs must also show that the information they identified as a trade secret has actual or potential economic value because it is not generally known by and cannot be readily learned or discovered through proper means by another person who can obtain economic value from disclosing or using the information.[142]  In other words, Plaintiffs must show that they gain a competitive advantage in the marketplace over those who do not have knowledge of the information because they derive independent economic value from the information being kept secret.[143]

If you find that the information that Plaintiffs contend is a trade secret does not have independent economic value, then you must find that Plaintiffs have not proven their trade secrets claims as to either Defendant.

---

[140] ChemTreat contends that this instruction properly assists the jury in evaluating a complex legal concept.  ChemTreat notes that Plaintiffs do not dispute that this instruction accurately states the law on this issue.

[141] This proposed jury instruction is unnecessary and argumentative. Overexplaining what Plaintiffs need to prove regarding the independent economic value of a trade secret is an attempt to either (at best) confuse jurors or (at worst) persuade them through the Court's instructions to find for Defendants. Plaintiffs object to this proposed jury instruction.

[142] 18 U.S.C. § 1839(3)(B).

[143] *Daimler–Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 922 (6th Cir.2008).

76

**DEFENDANTS' PROPOSED INSTRUCTION NO. [55A] —
Misappropriation of a Trade Secret[144]**

If you find that Plaintiffs have proven the existence of a trade secret, then you must decide whether a Defendant misappropriated that trade secret information. Basically, misappropriation means that a Defendant knowingly acquired a trade secret that Plaintiffs owned through improper means or used a trade secret belonging to Plaintiffs knowing it had been acquired through improper means. As I stated before, you must separately analyze whether Mr. Ridley misappropriated a trade secret and whether ChemTreat misappropriated a trade secret.

To prove that a Defendant misappropriated a trade secret, Plaintiffs must prove by a preponderance of the evidence the following as to that particular Defendant:

1. The Defendant acquired Plaintiffs' trade secret knowing or having reason to know that the trade secret was acquired by improper means;[145] or

2. The Defendant used Plaintiffs' trade secret without Plaintiffs' express or implied consent, and that Defendant either:

   a. Used improper means to acquire the trade secret; or

   b. At the time the Defendant used the trade secret, that Defendant knew or had reason to know that knowledge of the trade secret was:

      i. Derived from or through a person who used improper means to acquire it; or

      ii. Acquired under circumstances giving rise to a duty to maintain its

---

[144] Plaintiffs maintain that overexplaining the meaning of misappropriation is redundant, confusing, and argumentative. This proposed instruction is persuasive rhetoric designed to suggest that the jurors should find in Defendants' favor regarding misappropriation claims.

[145] 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2).

77

secrecy or limit its use; or

      iii.  Derived from or through a person who owed a duty to Plaintiffs to maintain its secrecy or limit its use.[146]

  c.  Before a material change of the Defendant's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[147]

---

[146] 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2).

[147] Tenn. Code Ann. § 47-25-1702(2); *see also* 18 U.S.C. § 1839(5).

78

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [55B] — Misappropriation of a Trade Secret**

Plaintiffs claim that the Defendants acquired, disclosed, or used Plaintiffs' trade secrets without the right to do so.[148] This is called misappropriation.

For Plaintiffs to prove that Defendants misappropriated Plaintiffs' trade secrets, Plaintiffs much prove the following by a preponderance of the evidence:

3. The Defendant acquired Plaintiffs' trade secret knowing or having reason to know that the trade secret was acquired by improper means;[149] or

4. The Defendant disclosed[150] or used Plaintiffs' trade secret without Plaintiffs' express or implied consent, and that Defendant either:

   a. Used improper means to acquire the trade secret; or

   b. At the time the Defendant used the trade secret, that Defendant knew or had reason to know that Defendant's knowledge of the trade secret was:

      i. Derived from or through a person who used improper means to acquire it; or

---

[148] ChemTreat objects that Plaintiffs' proposed instruction no. 55B improperly suggests to the jury that they can treat Mr. Ridley and ChemTreat collectively, rather than analyze the claims against each separately.

[149] 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2).

[150] ChemTreat objects that Plaintiffs' proposed instruction no. 55B improperly suggests to the jury that they may find Mr. Ridley or ChemTreat misappropriated a trade secret through disclosure. Plaintiffs have never pursued that theory over the course of this litigation and there is no evidence that either Mr. Ridley or ChemTreat disclosed Plaintiffs' information to a third party or to the public. In the event the Court elects to include the word "disclosed," that theory of liability should be described in a separate paragraph from use to avoid suggesting to the jury that use and disclosure are the same.

ii. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

iii. Derived from or through a person who owed a duty to Plaintiffs to maintain its secrecy or limit its use;[151] or

c. Before a material change of the Defendant's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[152]

---

[151] 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2).

[152] Tenn. Code Ann. § 47-25-1702(2); *see also* 18 U.S.C. § 1839(5). *See also* Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 19-20.

**DEFENDANTS' PROPOSED INSTRUCTION NO. [56A] – Improper Means**

"Improper means" may include theft, misrepresentation, or breach or inducement of a breach of duty to maintain secrecy, but it does not include reverse engineering, independently determining or learning the information, or any other lawful means of acquisition.[153]

---

[153] 18 U.S.C. § 1839(6) (modified); Tenn. Code Ann. § 47-25-1702(1) (modified).

"Improper means" may include theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, and espionage through electronic or other means. Each act of acquiring, disclosing, or using Plaintiffs' trade secrets may constitute a separate act of misappropriation.[156]  It is not a defense to trade secret misappropriation for a defendant to use another's trade secrets with modifications or improvements effected by his own efforts, so long as the process and/or product used by the defendant is substantially derived from the other's trade secret.[157]

---

[154] Plaintiffs propose this version of the instruction to more closely hew to the language of the statutes and this Court's prior form of the instruction as cited. The last sentence of this proposed instruction is a necessary legal instruction in this case to ensure the jury is not misled to find no liability on the basis of alleged modifications or improvements to the trade secrets at issue.

[155] ChemTreat objects to Plaintiffs' proposed instruction no. 56B on three grounds.  First, it includes parts of the statutory definition of "improper means" that are not at issue in this litigation, including "bribery" and "espionage through electronic means."  Second, it omits the statutory language making clear what kind of conduct is not "improper means."  And third, the final sentence of this instruction does not relate to "improper means."  As best ChemTreat can tell, this sentence concerns use of a trade secret, and it would be confusing to instruct the jury on that while discussing "improper means."  Moreover, the final sentences relates to an issue on which Plaintiffs have not identified any evidence.  Instructing the jury on issues that are not presented in this case and for which there is no evidence to support a jury verdict serves only to confuse the jury and invite error.  In any event, there is no basis in the record upon which Plaintiffs can justify requesting an instruction on modifications or improvements, and it would be confusing to instruct the jury on that issue.

[156] 18 U.S.C. § 1839(6) (modified); Tenn. Code Ann. § 47-25-1702(1) (modified); Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 20.

[157] Jury Instructions*, Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196 ("The user of another's trade secret is liable even if he uses it with modifications or improvements upon it effected by his own efforts, so long as the ***substance of the process*** used by the actor is substantially derived from the other's secret.") (emphasis added); *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 326 (7th Cir. 1984) ("[A] party may not use another's trade secret, even with independent improvements or modifications, ***so long as the product or process is substantially derived from the trade secret***.") (emphasis added).

82

83

**DEFENDANTS' PROPOSED INSTRUCTION NO. [57] -- Knowledge is Needed as to Each Defendant.[158]**

You may only find that a Defendant misappropriated a trade secret if that Defendant knew or should have known that the trade secret was acquired using improper means.[159] For purposes of this analysis, you may not attribute Mr. Ridley's knowledge to ChemTreat.[160] [ChemTreat proposes including the following paragraphs:[161] If you find, for example, that Mr. Ridley took trade secrets belonging to Plaintiffs by moving them onto his personal storage devices while he was working for Ecolab, that does not mean that ChemTreat knew or had reason to know that Mr. Ridley acquired those trade secrets by improper means.[162] ChemTreat's knowledge may only be determined based on what its employees other than Mr. Ridley knew or should have known about Mr. Ridley's conduct at the time it occurred. If other ChemTreat employees did not know and had

---

[158] Plaintiffs object to this proposed instruction in its entirety. *I.e.*, While ChemTreat's highlighted additional sentences are not joined by Mr. Ridley, Plaintiffs assert that the *whole instruction* is objectional. This instruction is substantively redundant of proposed instructions 12 and 25 and is purely argumentative on Defendants' behalf. The level of granular argument is unnecessary and likely to confuse the jury. It is not a proper jury instruction.

[159] 18 U.S.C. § 1839(5); Tenn. Code Ann. § 47-25-1702(2).

[160] *See, e.g., Biomin Am., Inc. v. Lesaffre Yeast Corp.*, 2020 WL 2395200, at *6 & n.8 (D. Kan. May 12, 2020) (allegation that defendant "acted in concert" with plaintiff's former employees to misappropriate trade secrets was "not supported by any facts that someone at" defendant "knew—or should have known—about any alleged misappropriation or about any alleged 'use' by" plaintiff's former employees); *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 525 (E.D. Pa. 2018) (requiring evidence that defendant "knew or should have known" that individual defendants "misappropriated trade secrets when they were hired"); *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1347 (N.D. Ga. 2017) ("Plaintiff has not asserted facts to show that after Solutions II began employing Hall, Solutions II learned of Hall's alleged illegal takings and continued to use the information with full knowledge of these facts").

[161] ChemTreat contends that the additional paragraphs are needed to simplify the complicated issues surrounding the statutory requirement that Plaintiffs must prove each defendant had independent knowledge that a trade secret was acquired by improper means.

[162] *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78–80 (N.D. Cal. 2020).

84

no reason to know that Mr. Ridley acquired Plaintiffs' trade secrets through improper means, then you may not find that ChemTreat misappropriated any trade secret even if you find that ChemTreat acquired or used that trade secret.[163]

If you find that ChemTreat learned after the fact that Mr. Ridley may have acquired Plaintiffs' trade secrets through improper means, that is not sufficient to show that ChemTreat knew or should have known of Mr. Ridley's conduct at the time it occurred. However, you may consider whether ChemTreat acquiesced in or otherwise approved of Mr. Ridley's conduct after learning that he acquired Plaintiffs' trade secrets.[164]

If you find that Mr. Ridley shared one of Plaintiffs' trade secrets with another ChemTreat employee, you must determine whether that ChemTreat employee would have known, from the face of the document, that the information it contained was obtained by Mr. Ridley using improper means. If the ChemTreat employee did not know Mr. Ridley acquired the trade secret information by improper means or had no reason to know from the face of the document that Mr. Ridley acquired it by improper means, then ChemTreat did not misappropriate that document.][165]

---

[163] *Ciena Commc'ns, Inc. v. Nachazel*, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) ("An employer who is unaware of an employee['s] misappropriation of another['s] trade secret would not be liable," nor would "an employer who knows that its employee has pilfered another['s] trade secrets but who undertakes scrupulous efforts to ensure that the employee's knowledge of the trade secret is not put to use by the employer."); *AWP, Inc. v. Henry*, 2020 WL 6876299, at *4 (N.D. Ga. Oct. 28, 2020) ("It is not enough for AWP to simply allege McNulty and L30 hired two individuals who happen to possess knowledge of AWP's trade secrets.").

[164] *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1347 (N.D. Ga. 2017).

[165] *Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *13 (N.D. Cal. Mar. 22, 2023).

85

**CHEMTREAT'S PROPOSED INSTRUCTION NO. [58] -- Acquisition is not Vicarious[166] [167]**

If you find that Mr. Ridley knowingly acquired Plaintiffs' trade secrets through improper means, then you may find that Mr. Ridley misappropriated Plaintiffs' trade secrets. That fact alone, however, does not mean that ChemTreat also acquired Plaintiffs' trade secrets by improper means.[168] Instead, as to ChemTreat, you must determine whether a trade secret that you find Mr. Ridley acquired by improper means actually came into ChemTreat's possession and whether ChemTreat knew at the time the trade secret came into its possession, based on information known to a ChemTreat employee other than Mr. Ridley, that the trade secret had been acquired by Mr. Ridley using improper means.[169]

---

[166] ChemTreat contends that this instruction properly differentiates between the distinct theories of liability alleged by Plaintiffs as to the two defendants (as Plaintiffs allege that Mr. Ridley directly acquired trade secrets and that ChemTreat indirectly acquired trade secrets through Mr. Ridley) and is necessary to avoid jury confusion.

[167] Plaintiffs object to this proposed instruction in its entirety. This instruction is redundant of proposed instructions 12, 25, and 55 and is purely argumentative on Defendants' behalf. The level of granular argument is unnecessary and likely to confuse the jury. It is not a proper jury instruction.

[168] *United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 412 (6th Cir. 2004).

[169] *United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 412–13 (6th Cir. 2004); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78–80 (N.D. Cal. 2020).

86

## DEFENDANTS' PROPOSED INSTRUCTION NO. [59] – "Use" of a Trade Secret[170] [171]

If you find that a Defendant knowingly acquired a trade secret by improper means, you must then consider whether the Defendant "used" that trade secret. Use, in the trade secret context, requires some commercial exploitation of the trade secret that is likely to result in injury to the Plaintiffs or enrichment to the Defendant, such as marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of trade secret information.[172]

If you find that a Defendant acquired a trade secret belonging to Plaintiffs, that alone is not sufficient for you to find that the Defendant used that trade secret.[173] Likewise, if you find that Mr. Ridley accessed or opened a document containing trade secret information, that does not necessarily mean that he used any trade secret information. However, you may consider that fact as circumstantial evidence in determining whether Mr. Ridley actually used any of Plaintiffs' trade

---

[170] ChemTreat contends that this instruction properly captures the law on "use," as previously determined by the Court, *see* Doc. 353, and is necessary to ensure that the jury understands that "use" in this legal context is distinct from "use" in the colloquial context.

[171] Plaintiffs object to this proposed instruction in its entirety. The charging instruction for this count, *i.e.*, proposed instruction 55, is sufficient. This proposed instruction is purely argumentative for Defendants. The level of granular argument is unnecessary and likely to confuse the jury. It is not a proper jury instruction.

[172] Restatement (Third) of Unfair Competition § 40, cmt. c (1995); Jury Instructions, *Resman, LLC v. Karya Property Management, et al.*, No. 4:19-CV-00402 (E.D. Tex. Mar. 18, 2021) ECF No. 286 at 20.

[173] *Saniteq, LLC v. GE Infrastructure Sensing, Inc.*, 2018 WL 4522107, at *9 (E.D.N.Y. July 12, 2018); *Apple Inc. v. Rivos, Inc.*, 2023 WL 5183034, at *7 (N.D. Cal. Aug. 11, 2023).

87

secrets.[174]

If you find that Mr. Ridley used any trade secret that he knowingly acquired by improper means, then you may find that Mr. Ridley misappropriated that trade secret and may consider whether Plaintiffs were damaged.

To find that ChemTreat used any of Plaintiffs' trade secrets, you must first determine whether a ChemTreat employee other than Mr. Ridley knew at the time of that use that the trade secret being used was acquired by improper means. If you make such a finding, you must then determine whether the employee who used the trade secret, including Mr. Ridley, was acting within the scope of his employment by ChemTreat, according to the instructions I gave you earlier (see Instructions ___). If you find that Mr. Ridley or another ChemTreat employee used a trade secret but no ChemTreat employee other than Mr. Ridley knew at the time of that use that the trade secret being used was acquired by improper means, then you must find that ChemTreat did not use Plaintiffs' trade secret.

---

[174] *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 602 (6th Cir. 2005) (affirming summary judgment where defendant had access to a trade secret but plaintiff did not provide evidence "to permit an inference of use"); *In re Simons Broad., LP*, 2013 WL 9542015, at *17 (W.D. Tex. Nov. 19, 2013) ("[T]he uncontroverted facts at trial establish that data from the [trade secret] was eventually accessed by [defendant]. However, without more, [plaintiff] did not present the jury with a fact-issue on the 'use' element.").

88

**DEFENDANTS' PROPOSED INSTRUCTION NO. [60] -- Deletion is not Misappropriation[175] [176]**

Deleting a document does not constitute misappropriation.[177]  If you find that Mr. Ridley or someone else may have deleted Plaintiffs' documents from a computer, device, or other storage location, that does not mean that Mr. Ridley or ChemTreat misappropriated a trade secret.  Instead, misappropriation requires acquisition of the trade secret through improper means, or use of a trade secret despite knowing it was acquired by improper means, per my earlier instructions to you.

---

[175] ChemTreat contends that, given the allegations of deletion and spoliation in this litigation, this instruction is needed to ensure that the jury does not mistakenly conclude that deletion of a document from Plaintiffs' computer systems constitutes misappropriation.  ChemTreat maintains that Plaintiffs should not be permitted to speculate that Ridley deleted documents from Plaintiffs' devices or system before departing Ecolab, given Plaintiffs' spoliation of those devices and the evidence from Plaintiffs' records and witnesses defeating any claim that any missing evidence is the result of conduct by Ridley, but if Plaintiffs are permitted to speculate regarding such deletion, ChemTreat's proposed instruction is critical to avoid misleading or confusing the jury.  This issue is not addressed in any other proposed instruction.

[176] Plaintiffs object to this proposed instruction in its entirety. The charging instruction for this count, *i.e.*, proposed instruction 55, is sufficient. This proposed instruction is purely argumentative for Defendants. The level of granular argument is unnecessary and likely to confuse the jury. It is not a proper jury instruction.

[177] *LifeLinc Anesthesia, PLLC v. Wolfe*, 2012 WL 13026748, at *2 (W.D. Tenn. Nov. 1, 2012); *Brock Servs., LLC v. Rogillio*, 2019 WL 9096410, at *8 (M.D. La. June 17, 2019) ("The Court is not permitted to infer that because Rogillio had access to confidential information, deleted certain information, and thereafter left Brock for a direct competitor, he necessarily misappropriated trade secrets.").

## DEFENDANTS' PROPOSED INSTRUCTION NO. [61] – Employee's General Skills[178] [179]

Merely hiring another company's employee who has been exposed to trade secrets is not misappropriation.[180] ChemTreat and Mr. Ridley were free to enter into an employment relationship, and Mr. Ridley was free to use his general knowledge, skills, and experience as a ChemTreat employee, even if his knowledge, skills, and experience were obtained or developed while working for Plaintiffs or another employer.[181]

---

[178] ChemTreat contends that this instruction is necessary to ensure that the jury does not mistakenly conclude that ChemTreat's decision to hire Mr. Ridley constitutes misappropriation. Plaintiffs do not dispute that this instruction accurately states the law on this issue. This issue is not addressed in any other proposed instruction.

[179] Plaintiffs object to this proposed instruction in its entirety. The charging instruction for this count, *i.e.*, proposed instruction 55, is sufficient. This proposed instruction is purely argumentative for Defendants. The level of granular argument is unnecessary and likely to confuse the jury. It is not a proper jury instruction.

[180] *Ciena Commc'ns, Inc. v. Nachazel*, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010); *AWP, Inc. v. Henry*, 2020 WL 6876299, at *4 (N.D. Ga. Oct. 28, 2020).

[181] *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 589–90 (Tenn. Ct. App. 2001); *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 535 (6th Cir. 2008); *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1303 (Fed. Cir. 2000).

90

**DISPUTED INSTRUCTION NO. [62] — Detriment to Plaintiffs**

The third element of Plaintiffs' trade secret claims is detriment to Plaintiffs.[182]  It is Plaintiffs' burden to show, by a preponderance of the evidence, that a Defendant's alleged misappropriation of trade secrets caused them detriment.  [Defendants propose including this additional sentence:  For purposes of these claims, detriment means that a Defendant was unjustly enriched by misappropriating trade secret information.][183] [184] [185]

---

[182] *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D. Tenn. 2011).

[183] 18 U.S.C. § 1836(b)(3)(B); Tenn. Code Ann. §§ 47-25-1704.

[184] ChemTreat contends that this addition is necessary because Plaintiffs' only theory of trade secret damages in this case concerns unjust enrichment.  It would be misleading and confusing to the jury for them to be instructed regarding other forms of injury that are not at issue here and for which Plaintiffs have conceded no evidence will be presented to the jury.

[185] Plaintiffs object to this addition. It distorts and overstates this Court's prior orders and attempts to improperly constrain Plaintiffs' claims and evidence at trial.

91

**DEFENDANTS' PROPOSED INSTRUCTION NO. [63] – Unjust Enrichment[186] [187]**

A Defendant was unjustly enriched if that Defendant's misappropriation of a trade secret caused the Defendant to receive a benefit that the Defendant otherwise would not have achieved.[188]

A Defendant cannot be unjustly enriched by only acquiring but never using a trade secret.[189]

Plaintiffs must show that a Defendant was unjustly enriched because the Defendant actually put the trade secret to some commercial use that created a benefit for that Defendant.[190]

---

[186] ChemTreat contends that the Court has already rejected Plaintiffs' erroneous legal argument that unjust enrichment does not require use, such that this instruction is a proper and legally accurate summary of a necessary element of Plaintiffs' trade secret claims..  Without this instruction, Plaintiffs would ask the jury to award it damages for unjust enrichment without explaining what unjust enrichment is.  That omission invites error.

[187] Plaintiffs object to this instruction in its entirety. It distorts and overstates this Court's prior orders and attempts to improperly constrain Plaintiffs' claims and evidence at trial.

[188] *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

[189] Doc. 353 at 36.

[190] Doc. 353 at 36; *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, 2013 WL 4498993, at *33 (W.D. Mich. Aug. 19, 2013); *see also id.* (explaining that the "[c]ost avoidance" theory of unjust enrichment "necessarily contemplates use"); *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 485 (6th Cir. 2002) (admitting damages model on the condition that it measured "the benefits that [the defendant] derived from the use of the secrets"); *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *13 (E.D. Mich. July 9, 2018) (excluding expert who could not point to "evidence that [the defendant] actually experienced these 'estimate[d]' cost savings as a result of its use" of alleged trade secrets); *MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 782 (N.D. Ohio 2013) ("[I]f SEP used MAR's seismic data improperly, what MAR spent and SEP thereby saved would appear to be a proper yardstick for a damage award."); Jury Instructions, *Epic Systems Corp., v. Tata Consultancy Servs. Limited, et al.*, No. 3:14-cv-00748-wmc (April 15, 2016) (W.D. Wis.), ECF No. 872 at 3.

92

**DEFENDANTS' PROPOSED INSTRUCTION NO. [64] — Trade Secret Damages Generally[191] [192]**

I will now instruct you on the law you must follow in determining damages, if any, for Plaintiffs' trade secret claims.

You should not interpret the fact that I am giving instructions about Plaintiffs' potential damages as an indication in any way that I believe that Plaintiffs should, or should not, prevail on their trade secret claims. It is your task to decide first whether a Defendant is liable. I am instructing you on damages only so that you will have guidance in the event that you decide that a Defendant is liable and that Plaintiffs are entitled to recover money from that Defendant.[193]

---

[191] ChemTreat contends that severing the damages instructions from the instructions regarding other elements of the respective claims is inappropriate for two reasons. First, Plaintiffs' claims present distinct theories of damage, resting on distinct evidence, such that separating the legal requirements for proving a particular form of damages from the claim to which that form of damages applies risks confusing the jury and injecting error into the verdict. Second, damages are an essential element of some of Plaintiffs' claims (e.g., tortious interference) such that Plaintiffs' proposed severing of the elements risks not only confusion of the jury but prejudice to ChemTreat.

[192] Plaintiffs object to Defendants' proposal to insert quantum-of-damages instructions into the charging instructions on liability. Plaintiffs propose that the proper order of instruction is to set out the charging instructions of liability on each claim; after each claim is set out, the Court should then instruct the jury of the principles of determining damages. These proposed instructions are located *infra* at Proposed Instruction No. 90 *et seq.*

[193] Fifth Circuit Pattern Civil Jury Instructions § 15.1 (modified).

## DEFENDANTS' PROPOSED INSTRUCTION NO. [65] – Causation of Damages[194][195]

If you find by a preponderance of the evidence that a Defendant misappropriated a trade secret owned by Plaintiffs, you may award Plaintiffs damages against that Defendant for any unjust enrichment caused by the misappropriation of that trade secret.[196] The misappropriation of Plaintiffs' trade secrets caused them harm if you find that the Defendant's misappropriation was a "substantial factor" leading to the unjust enrichment of the Defendant.[197] A substantial factor in causing unjust enrichment means a factor that a reasonable person would consider to have contributed to the unjust enrichment. It must be more than a remote or trivial factor. It does not have to be the only cause. Conduct is not a substantial factor in causing unjust enrichment if the same benefit would have occurred without that conduct.[198]

---

[194] ChemTreat contends that it is confusing and potentially misleading to the jury to aggregate the causation requirements for distinct statutory and common law claims into a single instruction, particularly as differences in the underlying damages theory results in differences in how the jury is to apply a similar concept, such as proximate causation.

[195] Plaintiffs object to this proposed instruction and instead have proposed a single instruction on causation that will apply to all claims. That instruction is located *infra* at Proposed Instruction 86. Plaintiffs assert that their proposed approach is more efficient, more clear, and less confusing for the jury. Defendants' proposal to include redundant causation language such as the language found in this proposed instruction, therefore, should be rejected in favor of Plaintiffs' Proposed Instruction 86.

[196] 18 U.S.C. § 1836(b)(3)(B).

[197] Jury Instructions, *Waymo LLC, v. Uber Technologies, Inc., et al.*, No. C 17-00939 WHA (Jan. 3, 2018) (N.D. Cal.), ECF No. 2449 at 8 (modified); *King v. Anderson Cnty.*, 419 S.W.3d 232, 247 (Tenn. 2013).

[198] Jury Instructions, *Waymo LLC, v. Uber Technologies, Inc., et al.*, No. C 17-00939 WHA (Jan. 3, 2018) (N.D. Cal.), ECF No. 2449 at 8.

94

### DEFENDANTS' PROPOSED INSTRUCTION NO. [66] – Unjust Enrichment Damages[199] [200]

I will now instruct you on what damages you can award for unjust enrichment.

If you find that a Defendant actually used one or more trade secrets and received a benefit from that use, then you may award Plaintiffs damages against that Defendant for unjust enrichment. If you decide to award such damages, you must apportion those damages on a trade-secret-by-trade-secret basis.[201] That means that you must distinctly determine the value of the benefit that the Defendant received for each trade secret that you find the Defendant misappropriated. For example, if you find that Plaintiffs proved five trade secrets existed and that a Defendant misappropriated three of them, you must determine how much each of those three trade secrets benefitted the Defendant. You may not award Plaintiffs any damages for trade secrets that were misappropriated but did not result in a Defendant being unjustly enriched.[202]

---

[199] ChemTreat contends that the Court has already rejected Plaintiffs' erroneous legal argument that unjust enrichment damages can be awarded for mere possession of trade secrets, such that this instruction is a proper and legally accurate summary of the damages element of Plaintiffs' trade secret claims. As detailed further below, Plaintiffs' proposed instructions nos. 90–92 are misleading and confusing to the jury. Among other things, they invite the jury to award Plaintiffs damages based on theories that have not been defined and do not instruct the jury on how abstract concepts like unjust enrichment might apply to the facts of this case.

[200] Plaintiffs object to Defendants' proposal to insert damages instructions into the charging instructions on liability for each count. Plaintiffs propose that the proper order of instruction is to set out the charging instructions of liability on each claim; after each claim is set out, the Court should then instruct the jury of the principles of determining damages. These proposed instructions are located *infra* at Proposed Instruction No. 90 *et seq.* In addition, this Proposed Instruction 66 includes argumentative language, including imbalanced and unhelpful hypothetical examples. This instruction should be rejected.

[201] *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *11 (E.D. Mich. July 9, 2018).

[202] *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *11 (E.D. Mich. July 9, 2018).

The "unjust enrichment" you may award is not the whole of the gain realized by a Defendant but only the amount of the gain that is attributable to the Defendant's use of the trade secret. When a benefit or advantage has been realized in part as a result of misappropriation and in part as a result of legitimate business activities, you may award as unjust enrichment damages only that portion of the gain that is attributable to a Defendant's misappropriation. If a Defendant would have realized the gain in any event, or if the gain was the result of alternative causes, it is not attributable to misappropriation.[203] Once you determine the value of the benefit that a Defendant obtained due to using a trade secret, you must then subtract from that amount the Defendant's reasonable expenses, including the value of the Defendant's own efforts, such as research and development.[204]

In calculating damages for unjust enrichment, you may not award Plaintiffs any damages that are related to an actual loss, like lost customers or sales.[205] I have already determined that there has been no such actual loss by Plaintiffs in this case.[206] You are not to guess or speculate as to the amount of damages for unjust enrichment to award to Plaintiffs; you must instead calculate such amounts based on the evidence.[207]

If you find that a Defendant acquired a trade secret but never used it, then you may not

---

[203] Jury Instructions, *Resman, LLC v. Karya Property Management, et al.*, No. 4:19-CV-00402 (E.D. Tex. Mar. 18, 2021) ECF No. 286 at 20–21 (modified).

[204] Jury Instructions, *Waymo LLC, v. Uber Technologies, Inc., et al.*, No. C 17-00939 WHA (Jan. 3, 2018) (N.D. Cal.), ECF No. 2449 at 9 (modified).

[205] 18 U.S.C. § 1836(b)(3)(B).

[206] Doc. 349 at 43; Doc. 353 at 26.

[207] *Pakenas v. State Farm Ins. Co.*, 488 F. App'x 43, 54 (6th Cir. 2012).

award Plaintiffs any damages on their trade secret claims.[208]  The mere fact that Plaintiffs may have proven that a trade secrets has value and was acquired by a Defendant does not entitle Plaintiffs to damages.[209]

---

[208] Doc. 353 at 36.

[209] *MSC.Software Corp. v. Altair Eng'g, Inc.*, 281 F. Supp. 3d 660, 662 (E.D. Mich. 2017); Jury Instructions, *Epic Systems Corp., v. Tata Consultancy Servs. Limited, et al.*, No. 3:14-cv-00748-wmc (April 15, 2016) (W.D. Wis.), ECF No. 873.

## D. RIDLEY'S PROPOSED JURY INSTRUCTION NO. [67A] – BAD FAITH TRADE SECRET CLAIM[210]

You are also to consider whether either or both of the Plaintiffs brought any of their trade secret claims against Mr. Ridley in bad faith. The Defend Trade Secret Act and the Tennessee Uniform Trade Secret Act offer a defendant certain protections in bad faith trade secret disputes to deter frivolous trade-secret actions that threaten free and open competition or that discourage workers from pursuing their livelihoods when they leave their current positions.[211]

In determining whether one or both of the Plaintiffs brought any of their trade secret claims against Mr. Ridley in bad faith, you are to consider (1) the objective speciousness of the claim, and (2) the subjective bad faith in bringing or maintaining the claim.[212]

Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim.[213] Objective speciousness may be shown by,

---

[210] ChemTreat does not object to the substance of Mr. Ridley's proposed instruction, but ChemTreat contends that the jury should be instructed about Mr. Ridley's counterclaim after the first phase of the trial concludes and the jury has resolved the predicate issue of DTSA/TUTSA liability.

[211] *Degussa Admixtures, Inc. v. Burnett*, 277 Fed. Appx. 530, 534 (6th Cir. 2008) (internal citation and quotation marks omitted).

[212] *See Magnesium Mach., LLC v. Terves, LLC*, No. 20-3779, 2021 WL 5772533, at *5 (6th Cir. Dec. 6, 2021); *e.g.*, *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 4680177, at *2 (N.D. Cal. Sept. 28, 2018) (internal citation omitted); *Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*, No. CV420-322, 2022 WL 987945, at *2 (S.D. Ga. Mar. 31, 2022); *Kipu Sys. LLC v. Zencharts LLC*, No. 17-24733-CIV, 2021 WL 1891710, at *7 (S.D. Fla. Apr. 6, 2021), report and recommendation adopted, No. 17-CV-24733, 2021 WL 4505527 (S.D. Fla. Sept. 30, 2021); *Farmers Edge Inc. v. Farmobile, LLC*, No. 8:16CV191, 2018 WL 3747833, at *6 (D. Neb. Aug. 7, 2018).

[213] *Swarmify, Inc. v. Cloudflare,* No. C 17-06957 WHA, 2018 WL 4680177, at *2 (N.D. Cal. Sept. 28, 2018) (internal citation and quotation marks omitted).

98

among other factors, demonstrating that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm.[214]

Subjective bad faith means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition.[215] The timing of the action may raise an inference of bad faith.[216] Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel.[217] The absence of evidence alone, even after discovery, however, does not support a finding of subjective bad faith.[218]

---

[214] *Id.* (internal citation and quotation marks omitted).

[215] *Id.* (internal citation and quotation marks omitted).

[216] *Id.* (internal citation and quotation marks omitted).

[217] *Id.* (internal citation and quotation marks omitted).

[218] *Id.* (internal citation and quotation marks omitted).

99

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. [67B] – RIDLEY'S COUNTERCLAIM – ATTORNEYS' FEES[219] [220]**

Ridley brings one counterclaim against Plaintiffs, alleging that Plaintiffs brought misappropriation action against Ridley in bad faith. Under Tennessee and Federal law, if Ridley prevails—meaning he is not found liable for trade secret misappropriation—and you believe Plaintiffs brought such a claim against Ridley in bad faith, you may award Ridley reasonable attorneys' fees.[221]

Unlike Plaintiffs' claims, Ridley has the burden of proof here. Ridley must prove by preponderance of the evidence that Plaintiffs acted in bad faith, meaning Plaintiffs had a sinister motive behind bringing misappropriation claims against Ridley.[222]

---

[219] Plaintiffs request this form of jury instruction on Mr. Ridley's counterclaim. Mr. Ridley's formulation is argumentative and goes far beyond the necessary law that they jury will rely upon to determine the claim. To the extent this claim survives to the close of trial, the Court should reject the Proposed Instruction 67A and provide instead Proposed Instruction 67B.

[220] ChemTreat objects to this instruction on the grounds that the jury should be instructed about Mr. Ridley's counterclaim after the first phase of the trial concludes.

[221] *Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC,* 2013 WL 785938, (M.D. Tenn. Feb. 28, 2013); 18 U.S.C.§1836(b)(3)(D); *see also* Tenn. Code Ann. § 47-25-1705.
[222] *United States ex rel. Wall v. Circle C Constr., LLC,* 868 F.3d 466, 471 (6th Cir. 2017).

## E.    DISPUTED INTRODUCTION -- COUNT III (BREACH OF CONTRACT)

Plaintiffs allege that Mr. Ridley breached his employment agreement with Plaintiffs in a number of ways. To prove that Mr. Ridley committed any of these breaches of contract, Plaintiffs must establish the following elements by a preponderance of the evidence:

1. The existence of an enforceable contract;

2. Breach of the contract; [Ridley proposes using this phrasing: Nonperformance amounting to breach of the contract]

3. And damages caused by the breach of the contract.[223]

I will now instruct you further as to each of these elements.

---

[223] *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019).

**AGREED INSTRUCTION NO. [68] – Definition of a Contract**

A contract is an agreement or exchange of promises between two or more persons to do or not to do certain things. This agreement or exchange of promises can be oral or in writing and must be supported by something of value. The requirements for a valid contract are an offer, an acceptance, consideration, competent parties, and a legal purpose.[224] If you find that Plaintiffs failed to establish any of those requirements by a preponderance of the evidence, then you must return a verdict for Mr. Ridley on Plaintiffs' breach of contract claim.

---

[224] T.P.I.—CIVIL 13.01 Definition, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.01 (2023 ed.).

Case 1:22-cv-00050-TRM-CHS   Document 384-1   Filed 10/13/23   Page 103 of 164   PageID #: 16528

**DEFENDANTS' PROPOSED INSTRUCTION NO. [69] – Offer[225] [226]**

An offer occurs when one party communicates to the other a willingness to enter into a contract. The communication must be made under circumstances that would justify the other party in understanding that an agreement would result if the offer were accepted.[227]

---

[225] ChemTreat contends that Defendants' proposed instructions nos. 69–71 are all necessary, as they define the elements Plaintiffs must prove in order to establish that an enforceable contract existed.

[226] There is no evidence or dispute in the case regarding an offer *vel non* for the formation of the contract at issue. This instruction is unnecessary and inefficient, and it may cause unnecessary confusion amongst the jury. This instruction should not be given.

[227] T.P.I.—CIVIL 13.02 Offer, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.02 (2023 ed.).

**DEFENDANTS' PROPOSED INSTRUCTION NO. [70] – Acceptance[228] [229]**

An acceptance occurs when a party communicates by words or actions an agreement to an offer. It must be made before the offer is withdrawn and must match the terms of the offer.[230]

---

[228] ChemTreat contends that Defendants' proposed instructions nos. 69–71 are all necessary, as they define the elements Plaintiffs must prove in order to establish that an enforceable contract existed.

[229] There is no evidence or dispute in the case regarding an acceptance *vel non* for the formation of the contract at issue. This instruction is unnecessary and inefficient, and it may cause unnecessary confusion amongst the jury. This instruction should not be given.

[230] T.P.I.—CIVIL 13.03 Acceptance, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.03 (2023 ed.).

## DEFENDANTS' PROPOSED INSTRUCTION NO. [71] -- Consideration[231] [232]

For there to be a sufficient exchange of consideration, something of value must be bargained for and given in exchange for the other party's promise. "Something of value" may be a promise, an act, or forbearance. It can be a benefit to one party or a detriment to the other party. Its actual value in money terms is not important.[233]

---

[231] ChemTreat contends that Defendants' proposed instructions nos. 69–71 are all necessary, as they define the elements Plaintiffs must prove in order to establish that an enforceable contract existed.

[232] There is no evidence or dispute in the case regarding consideration *vel non* for the formation of the contract at issue. This instruction is unnecessary and inefficient, and it may cause unnecessary confusion amongst the jury. This instruction should not be given.

[233] T.P.I.—CIVIL 13.04 Consideration, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.04 (2023 ed.)

## DEFENDANTS' PROPOSED INSTRUCTION NO. [72A] – Breach Of Contract

If you find that Mr. Ridley's employment agreement with Plaintiffs was a valid contract, you must determine whether Mr. Ridley breached the employment agreement. If a party does not perform according to the contract terms, that party has committed a breach of the contract.[234]

The breach of contract must be a material breach. A minor and insubstantial failure of a party to meet the terms of a contract does not entitle the other party to reject the contract and not be responsible under it.[235] In determining whether a breach is material the following factors should be considered: (1) The extent to which the injured party will be deprived of the expected benefit of his contract; (2) The extent to which the injured party can be adequately compensated for loss of benefit; (3) The extent to which the non-performing party will suffer forfeiture; (4) The likelihood that the non-performer will cure his failure, taking into account the circumstances including any reasonable assurances; and (5) The extent to which the behavior of the non-performing party comports with standards of good faith and fair dealing.[236]

Plaintiffs contend that Mr. Ridley breached the employment agreement in the following ways:

1. By transferring Plaintiffs' electronic documents and information to his personal email account and storage drives;[237]

2. By retaining and failing to return Plaintiffs' documents and information upon the

---

[234] T.P.I.—CIVIL 13.10 Breach, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.10 (2023 ed.) (modified).

[235] T.P.I.—CIVIL 13.10 Breach, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.10 (2023 ed.).

[236] *Adams TV of Memphis v. Comcorp of Tenn., Inc.*, 969 S.W.2d 917 (Tenn. App. 1997).

[237] Doc. 229 ¶ 285.

106

end of his employment with Ecolab;[238]

3. By inducing or assisting ChemTreat to hire Plaintiffs' former employee, Tyler Bates. [239]

Mr. Ridley denies that he committed any of these alleged breaches of contract. You should only continue your analysis as to damages if you conclude that Mr. Ridley breached the employment agreement in at least one of these ways.

---

[238] Doc. 229 ¶ 288.

[239] Doc. 229 ¶ 293.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. [72B] – Breach Of Contract[240] [241]

You must determine whether Mr. Ridley breached the employment agreement. If a party does not perform according to the contract terms, that party has committed a breach of the contract.[242]

The breach of contract must be a material breach. A minor and insubstantial failure of a party to meet the terms of a contract does not entitle the other party to reject the contract and not be responsible under it.[243]

Plaintiffs contend that Mr. Ridley breached the employment agreement in several ways, including the following:

1. By transferring or uploading plaintiffs' electronic documents and information to his personal devices and email account;

2. By wiping and deleting information from plaintiffs' computer systems;

---

[240] Plaintiffs request that this formulation of the Breach of Contract instruction be given rather than Defendants' formulation above. Defendants' formulation of this instruction improperly attempts to narrow and limit Plaintiffs claims to without any basis in the law or the case. It further includes superfluous and improper argumentative language concerning materiality. Plaintiffs' formulation of this instruction more accurate to the facts of the case and hews more closely to the Tennessee model instruction.

[241] ChemTreat objects to Plaintiffs' proposed instruction no. 72B. First, Plaintiffs omit legally accurate and necessary language informing the jury of the factors they may consider in determining whether a breach is material. Second, Plaintiffs present five theories of breach that are unsupported by any citation to the record or the operative complaint. And third, Plaintiffs' fifth theory of breach appears to simply be an elaboration on their first theory of breach and thus is unnecessary and risks confusing the jury and prejudicing ChemTreat. ChemTreat requested that Plaintiffs explain the difference between the first and fifth theories of breach during the parties' conferral and Plaintiffs were unable to do so, but Plaintiffs declined to remove or revise the fifth theory as stated.

[242] T.P.I.—CIVIL 13.10 Breach, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.10 (2023 ed.) (modified).

[243] T.P.I.—CIVIL 13.10 Breach, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.10 (2023 ed.).

108

3. By failing to return all plaintiffs' documents and information upon the end of his employment with plaintiffs;

4. By retaining, using, and/or disclosing plaintiffs' confidential and trade secret information following the termination of his employment with plaintiffs; and

5. By transferring or uploading plaintiffs' information to his personal devices and email account while he was in negotiations with ChemTreat and after he accepted employment with ChemTreat, and by failing to disclose to plaintiffs the conflict of interest in his actions

Mr. Ridley denies that he committed any of the alleged breaches of contract.

**DEFENDANTS' PROPOSED INSTRUCTION NO. [73] – Damages for Breach of Contract[244] [245]**

When a contract is breached, the plaintiff is entitled to be placed in as good a position as would have been occupied had the contract been fulfilled in accordance with its terms. The plaintiff is not entitled to be put in a better position through a recovery of damages for breach of contract than would have been realized had there been full performance. Thus, you may award Plaintiffs damages that may fairly and reasonably be considered as arising out of Mr. Ridley's alleged breach or those that may reasonably have been in the contemplation of the parties when the contract was made. Damages that are remote or speculative may not be awarded.[246] Just because you find that a breach of contract occurred does not mean that you must award Plaintiffs damages. Only award Plaintiffs damages if you find that they have actually been injured.[247]

In calculating damages, if any, that arose from Mr. Ridley's breach of contract, you may

---

[244] ChemTreat contends that, as noted earlier with regard to trade secrets damages, because damages are an essential element of a breach of contract claim, the jury should be instructed about damages at the same time they are instructed about the other elements of the breach of contract claim. As detailed further below, Plaintiffs' proposed instructions nos. 90–92 are misleading and confusing to the jury. Among other things, they invite the jury to award Plaintiffs damages based on theories that have not been related back to the facts of this case and do not instruct the jury about what types of damages they are foreclosed from awarding.

[245] Plaintiffs object to Defendants' proposal to insert damages instructions into the charging instructions on liability for each count. Plaintiffs propose that the proper order of instruction is to set out the charging instructions of liability on each claim; after each claim is set out, the Court should then instruct the jury of the principles of determining damages. These proposed instructions are located *infra* at Proposed Instruction No. 90 *et seq.* In addition, this Proposed Instruction 73 is argumentative and should be rejected.

[246] T.P.I.—CIVIL 14.70 Contracts Generally, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.70 (2023 ed.).

[247] *Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 35 (Tenn. Ct. App. 2005).

110

not award Plaintiffs any damages relating to the loss of customers or business opportunities.[248]

Nor may you award Plaintiffs any damages for harm to their reputation or standing.[249]

---

[248] Doc. 255-2 at JA-320 to 336.

[249] Doc. 255-2 at JA-336 to 337.

## F. DEFENDANTS' PROPOSED INTRODUCTION – COUNT IV (BREACH OF THE FIDUCIARY DUTY OF LOYALTY)

Plaintiffs allege that Mr. Ridley breached the fiduciary duty of loyalty an employee owes to his employer.

In order to recover for breach of fiduciary duty, Plaintiffs must establish the following by a preponderance of the evidence:

1. A fiduciary relationship between Mr. Ridley and his employer;

2. Breach of the resulting fiduciary duty, and

3. Injury to the employer or benefit to Mr. Ridley as a result of that breach.[250]

I will now instruct you further as to each of these elements.

---

[250] *Mitchell v. Morris*, 2016 WL 890212, at *9 (Tenn. Ct. App. Mar. 9, 2016).

## G. PLAINTIFFS' PROPOSED INTRODUCTION – COUNT IV (BREACH OF THE FIDUCIARY DUTY OF LOYALTY)[251] [252]

Plaintiffs allege that Mr. Ridley breached the fiduciary duty of loyalty an employee owes to his employer. The duty of loyalty requires an employee to act solely for the benefit of the employer in matters within the scope of his or her employment. The employee must not engage in conduct that is adverse to the employer's interests. This includes a duty not to compete with the employer during the employment relationship. The law allows an employee to make preparations to compete if those preparations do not violate this duty of loyalty. An employee may announce his future departure to a competitor but may not engage in conduct for the benefit of the competitor [ChemTreat conditionally proposes adding: before the end of his employment].

In order to prevail on their claim against Mr. Ridley for breach of his fiduciary duty and loyalty as an employee, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1.  An employment relationship existed between a plaintiff and Mr. Ridley;

2.  While employed by a plaintiff, Mr. Ridley breached his duty of loyalty [ChemTreat

---

[251] Plaintiffs' construction of this proposed instruction is necessary to provide the jury with foundational instruction on the basic precepts of the fiduciary duty at issue in this case. It is an accurate statement of the law and the elements of the claim pursuant to the cited authorities. Defendants' construction of this proposed instruction is unclear and vague and risks confusing the jury.

[252] ChemTreat objects to Plaintiffs' proposed introduction because it misstates the elements required to prove a breach of the fiduciary duty of loyalty, as those elements are stated in *Mitchell v. Morris*, 2016 WL 890212, at *9 (Tenn. Ct. App. Mar. 9, 2016). ChemTreat further objects to Plaintiffs' proposed introduction because Plaintiffs must prove that a fiduciary relationship existed between Mr. Ridley and the particular *Plaintiff* that was allegedly harmed by the breach at the time the alleged breach occurred. Plaintiffs' generic reference to "a plaintiff" invites error as it wrongly suggests that the jury can conclude that Mr. Ridley owed a fiduciary duty to one Plaintiff and harmed a different Plaintiff for a single alleged breach of fiduciary duty. To the extent the Court adopts Plaintiffs' proposed introduction, ChemTreat has proposed clarifications to address these issues.

113

==conditionally proposes adding: to that plaintiff==]; and

3. A [ChemTreat conditionally proposes revising "A" to "That"] plaintiff was harmed or Mr. Ridley benefitted because of this breach.[253]

---

[253] *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009); *Efird v. Clinic of Plastic and Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003); *Mitchell v. Morris*, 2016 WL 890212, at *9 (Tenn. Ct. App. Mar. 9, 2016). Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 21-22

**DEFENDANTS' PROPOSED INSTRUCTION NO. [74] – Existence of a Fiduciary Relationship[254] [255]**

Plaintiffs must establish by a preponderance of the evidence that Mr. Ridley was in a fiduciary relationship with a Plaintiff during his employment by that Plaintiff. A fiduciary relationship may arise whenever confidence is reposed by one party in another who exercises dominion and influence. A fiduciary duty is the duty to act primarily for another's benefit.[256]

An employee owes his employer a fiduciary duty of loyalty during the period of employment. That means that the employee must act solely for the benefit of the employer in matters within the scope of his employment during the period of employment. The employee must not engage in conduct that is adverse to the employer's interests during the period of employment.[257] During the period of employment, however, an employee may prepare to compete with his employer without breaching the duty of loyalty, provided that the employee does not engage in actual competition with his employer until after the employment relationship ends.[258]

---

[254] ChemTreat contends that this is a necessary element of Plaintiffs' claim and, unless it is stipulated, the jury should be instructed on it to avoid error. Moreover, given that there are two distinct Plaintiffs (and potentially two distinct theories of breach, each of which applies to a different Plaintiff, although Plaintiffs declined to clarify this issue when requested by ChemTreat), it is necessary to include this instruction to avoid confusing and misleading the jury as to Plaintiffs' burden of proof with regard to establishing that Mr. Ridley owed a fiduciary duty to the Plaintiff that alleges it was harmed by his alleged conduct at the time of that alleged conduct.

[255] Plaintiffs' note that the existence of the relevant fiduciary relationship *vel non* is not meaningfully disputed in this case. Providing this proposed instruction to the jury is not assistive to any determination they must make and instead risks juror confusion.

[256] *Thompson v. Am. Gen. Life & Acc. Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005).

[257] *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 529 (W.D. Tenn. 2015).

[258] Doc. 215 at 4.

115

## DEFENDANTS' PROPOSED INSTRUCTION NO. [75] – Breach of Fiduciary Duty[259] [260]

If you find that Mr. Ridley was in a fiduciary relationship with a Plaintiff during his employment by that Plaintiff, you must then consider whether that Plaintiff has established by a preponderance of the evidence that Mr. Ridley breached his fiduciary duty of loyalty owed to that Plaintiff while employed by that Plaintiff. Here, Nalco alleges that Mr. Ridley breached his fiduciary duty of loyalty to it by refusing to assist or answer inquiries from Nalco employees regarding the scope of service and historical volume of chemicals supplied by Nalco at various customer locations.[261] If you find that Plaintiffs proved by a preponderance of the evidence that Mr. Ridley engaged in such conduct, then you must decide whether such conduct was in violation of Mr. Ridley's fiduciary duty of loyalty to Nalco.

---

[259] ChemTreat contends that this instruction is necessary to avoid misleading or confusing the jury given the undisputed facts as to the only theory of breach that ChemTreat understands to remain given the Court's preemption ruling: that Ridley, while employed by Ecolab, breached an alleged fiduciary duty owed to Nalco by not responding to requests from the individual who assumed his former position at Nalco.

[260] Plaintiffs object to this instruction. It has no basis in the law or any other authority. It is pure argument and should be rejected.

[261] Doc. 229 ¶ 296. The Court previously determined that Plaintiffs' additional theory that Mr. Ridley breached his fiduciary duty of loyalty to Ecolab by preparing the Business Plan is preempted by TUTSA. *See* Doc. 215 at 4 ("[C]laims against Ridley and ChemTreat based on Ridley's use of an Ecolab/Nalco template to create the ChemTreat business plan are preempted by the Tennessee Uniform Trade Secrets Act.").

116

**DEFENDANTS' PROPOSED INSTRUCTION NO. [76] – Injury as a Result of Breach[262] [263]**

The last element Plaintiffs must establish by a preponderance of the evidence is that a breach of fiduciary duty caused Nalco to suffer an injury or resulted in a benefit to Mr. Ridley. In undertaking that analysis, you must consider whether:

1.  Mr. Ridley's conduct directly contributed to Nalco's injury and without it Nalco's injury would not have occurred;[264]

2.  Mr. Ridley's conduct was a substantial factor in bringing about Nalco's injury;[265] and

3.  Nalco's injury could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care.[266]

---

[262] ChemTreat contends that it is confusing and potentially misleading to the jury to aggregate the causation requirements for distinct statutory and common law claims into a single instruction, particularly as differences in the underlying damages theory results in differences in how the jury is to apply a similar concept, such as "but for" causation.. Plaintiffs' proposal divorces the issue of causation from the facts of this case and makes the issue overly abstract, which could confuse the jury.

[263] Plaintiffs object to this proposed instruction and instead have proposed a single instruction on causation that will apply to all claims. That instruction is located *infra* at Proposed Instruction 86. Plaintiffs assert that their proposed approach is more efficient, more clear, and less confusing for the jury. Defendants' proposal to include redundant causation language such as the language found in this proposed instruction, therefore, should be rejected in favor of Plaintiffs' Proposed Instruction 86.

[264] T.P.I.—CIVIL 3.21 Cause in Fact, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 3.21 (2023 ed.).

[265] T.P.I.—CIVIL 3.22 Legal Cause, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 3.22 (2023 ed.); *Grant v. Tucker*, 57 F. Supp. 3d 852, 859–60 (M.D. Tenn. 2014).

[266] T.P.I.—CIVIL 3.22 Legal Cause, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 3.22 (2023 ed.); *Grant v. Tucker*, 57 F. Supp. 3d 852, 859–60 (M.D. Tenn. 2014).

117

## DEFENDANTS' PROPOSED INSTRUCTION NO. [77] – Damages for Breach of Fiduciary Duty[267] [268]

If you find that Nalco suffered an injury as a result of Mr. Ridley's breach of fiduciary duty, then you may decide to award Nalco damages. The mere fact that Mr. Ridley breached his fiduciary duty does not entitle Nalco to damages.[269]

An employee who breaches the fiduciary duty of loyalty may be required to disgorge any profit or benefit he received as a result of his disloyal activities.[270] In addition, an employee who breaches the duty of loyalty may be required to surrender any compensation paid by the employer during the period of breach.[271] It is not necessary that the employer suffer a loss in order to recoup such illicit profits or compensation from the employee.[272]

---

[267] ChemTreat contends because damages are an essential element of Plaintiffs' claim, the jury should be instructed about damages at the same time they are instructed about the remainder of the breach of fiduciary duty claim. As detailed further below, Plaintiffs' proposed instructions nos. 90–92 are misleading and confusing to the jury. Among other things, they invite the jury to award Plaintiffs damages based on theories that have not been related back to the facts of this case and do not instruct the jury about what types of damages they are foreclosed from awarding.

[268] Plaintiffs object to Defendants' proposal to insert damages instructions into the charging instructions on liability for each count. Plaintiffs propose that the proper order of instruction is to set out the charging instructions of liability on each claim; after each claim is set out, the Court should then instruct the jury of the principles of determining damages. These proposed instructions are located *infra* at Proposed Instruction No. 90 *et seq*. In addition, this Proposed Instruction 77 is argumentative and should be rejected.

[269] *Ford Motor Co. v. Toth*, 872 F.2d 1025, 1989 WL 40481 at *3 (6th Cir. 1989); *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 223 (Tenn. Ct. App. 2004);

[270] *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003).

[271] *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003).

[272] *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003).

If you find that Mr. Ridley profited or benefited from his breach of fiduciary duty, you may award Plaintiffs an amount equal to the value of Mr. Ridley's profit or benefit. You may also award Nalco the value of the compensation it paid to Mr. Ridley during the period of time in which he was in breach of his fiduciary duty. However, you may not award Nalco any damages related to the loss of customers or sales or any damages related to trade secrets.[273]

---

[273] Doc. 255-2 at JA-422–424; Doc. 215 at 4.

## H. DEFENDANTS' PROPOSED INTRODUCTION – COUNT V (INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS)

Plaintiffs allege that ChemTreat unlawfully interfered with their contractual relationship with Mr. Ridley. To prove this claim, Plaintiffs must establish all of the following by a preponderance of the evidence:

1. A legal contract existed between Plaintiffs and Mr. Ridley.

2. ChemTreat was aware of the contract.

3. ChemTreat intended to induce a breach of that contract.

4. ChemTreat acted without legal justification.

5. A breach of the contract occurred.

6. ChemTreat's conduct was the proximate cause of the breach.

7. Plaintiffs suffered damages as a result of the breach.[274]

Plaintiffs allege that ChemTreat induced Mr. Ridley to breach his employment agreement with Plaintiffs by encouraging Mr. Ridley to recruit Tyler Bates to join ChemTreat, who they allege fell into a group of employees that Mr. Ridley was prohibited from recruiting for one year after he resigned from Ecolab.[275] As you are considering this claim, you may not consider any facts related to Mr. Ridley's and ChemTreat's alleged misappropriation of trade secrets.[276] I will now instruct you as to each of these elements.

---

[274] T.P.I.—CIVIL 13.14 Procurement of Breach of Contract, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.14 (2023 ed.) (modified).

[275] Doc. 229 ¶ 308. To the extent Counts V and VI are predicated on alleged trade secret information, those claims are preempted by TUTSA. *See* Doc. 215.

[276] Doc. 229 at 59 n.2, 61 n.3, 63 n.4.

120

## I. PLAINTIFFS' PROPOSED INTRODUCTION – COUNT V (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS)[277]

Plaintiffs allege that ChemTreat unlawfully interfered with their contractual relationship with Mr. Ridley. The law does not permit a plaintiff to recover damages from a defendant who has engaged in proper competitive business practices. However, the law does prohibit a defendant from unfairly interfering with a business relationship by using improper means or by acting with the predominant purpose of injuring the plaintiff.[278]

To prevail on this claim, plaintiffs must prove all of following by a preponderance of the evidence.

1. Plaintiffs had a valid and enforceable contract with Ridley that imposed certain restrictions on Ridley; and

2. ChemTreat was aware of the contract and of Ridley's restrictions under the contract; and

---

[277] Plaintiffs request that this formulation of the charging instruction on Count V be given instead of Defendants' formulation above. The parties dispute whether the elements for this count should be in line with (1) tortious interference with business relationships, as proposed here; or (2) statutory procurement of breach, as proposed by Defendants. Plaintiffs assert that the former is correct based upon the authorities cited in support of this Proposed Instruction.

[278] ChemTreat contends that Plaintiffs have mistakenly conflated the elements of a common-law tortious interference with contractual relations claim (the claim they pled), on the one hand, and a common-law intentional interference with business relationships claim (a claim they have not pled), on the other hand. As Tennessee courts have repeatedly made clear, the elements of a common-law tortious interference with contractual relations claim and a statutory procurement of breach of contract claim are exactly the same, though the latter is subject to a clear and convincing evidence standard. *See Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999). Intentional interference with business relationships is a distinct claim that is inapplicable where a plaintiff had a contractual relationship with the breaching party, and thus could not apply here in light of Ridley's employment agreement with Plaintiffs, even had Plaintiffs pled the claim. *See BNA Assocs. LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, 63 F.4th 1061, 1064 (6th Cir. 2023).

121

3. ChemTreat intentionally interfered with plaintiffs' contractual relationship by inducing, aiding and abetting, and encouraging Ridley to violate his contractual covenants and restrictions;

4. ChemTreat's had an improper motive or used improper means; and

5. ChemTreat's action caused damage to the plaintiffs, including (but not limited to) by plaintiffs being required to act in the protection of their interests by bringing an action against Ridley [ChemTreat's conditionally proposes including: by requiring Plaintiffs to bring a lawsuit against Mr. Ridley and ChemTreat to protect its legitimate interests that were jeopardized by ChemTreat's alleged conduct].[279] [280]

---

[279] T.P.I.—CIVIL 13.16 Intentional Interference with Business Relationship, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.16 (2023 ed.) (modified); *BlueCross BlueShield v. Dunwoody Labs, Inc.*, 2021 WL 6275265, at **6–7 (E.D. Tenn. Dec. 8, 2021); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985). *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002); *Kolstad v. Leehar Distributors, LLC*, No. 3:18-CV-00060, 2018 WL 6832086, at *6 (M.D. Tenn. Dec. 28, 2018); *Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *9 (M.D. Tenn. Jan. 10, 2022) (Tennessee common law version of tortious interference ''has only five elements, compared to the statutory version's seven elements");.

[280] ChemTreat objects to Plaintiffs' proposed introduction. Plaintiffs' tortious interference claim cannot be premised on a preempted breach of Ridley's employment agreement with Plaintiffs. Each at-issue provision of Ridley's employment agreement is preempted, except for the sole provision identified by ChemTreat's proposed introduction. Doc. 288 at 2-4. Plaintiffs' proposed introduction improperly invites the jury to consider preempted provisions of Ridley's employment agreement when assessing the extent to which ChemTreat tortiously interfered with Plaintiffs' contractual relationship with Ridley. To the extent the Court adopts Plaintiffs' proposed introduction, ChemTreat has proposed striking "but not limited to," as even if the Court does not hold Plaintiffs to their representation that they had no damages other than those set forth in the report of Dana Trexler, Plaintiffs have alleged no damages other than their July 31, 2023 assertion of attorneys' fees. ChemTreat has further proposed additions to clarify that, to the extent Plaintiffs' attorneys' fees associated with this litigation are a proper basis for damages at all, those damages must have been proximately caused by an effort to protect Plaintiffs' legitimate business interests through a breach of contract suit brought against Mr. Ridley as to a breach of contract induced by ChemTreat..

122

## DEFENDANTS' PROPOSED INSTRUCTION NO. [78] — Existence of a Contract[281][282]

The first element is existence of a contract. I have previously instructed you on what is needed in order to find that a contract exists (see Instructions [68] – [71]). You must undertake that same analysis to resolve Plaintiffs' claim that ChemTreat induced a breach of Mr. Ridley's contract. That means you must determine whether Plaintiffs have established by a preponderance of the evidence that they had a valid employment agreement with Mr. Ridley.

If you find that Plaintiffs failed to prove the existence of a valid employment agreement with Mr. Ridley, you must find that Plaintiffs have failed to prove their claim that ChemTreat interfered with that contract.

---

[281] ChemTreat contends that it is misleading and prejudicial to instruct the jury on only certain elements of a claim. Plaintiffs do not dispute this is a mandatory element of their claim nor do they identify any legal error in the instruction. ChemTreat's proposed instruction appropriately instructs the jury on this element of the claim by referring the jury back to the Court's previous instruction.

[282] As identified above, the existence of the contract is not at issue in this case. Even if it were, this instruction is duplicative of other of Defendants' proposed instructions. It is redundant, unnecessary, and more likely to confuse than clarify the issue for the jury. This instruction should not be given.

**DISPUTED INSTRUCTION NO. [79] — Awareness of a Contract**

[Defendants' proposed first sentence:  The second element Plaintiffs must establish by a preponderance of the evidence is ChemTreat's awareness of the terms of the contract.] [Plaintiffs' Proposed First Sentence:  Plaintiffs must establish by a preponderance of the evidence that ChemTreat was aware of the terms of the contract.]  A party is aware of the terms of a contract if it was put on notice or informed of the terms of the contract before it induced the contracting party to breach the contract.[283]

---

[283] *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 388 (M.D. Tenn. 1993).

**DISPUTED INSTRUCTION NO. [80] — Intention to Induce Breach of Contract.**

The third element Plaintiffs must establish is that ChemTreat intended to induce a breach of contract. When someone intends to do something, it means that he desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.[284] [Defendants propose including this additional sentence Thus, Plaintiffs must prove by a preponderance of the evidence that ChemTreat desired to cause Mr. Ridley to breach his employment agreement with Plaintiffs, or that ChemTreat believed that a breach was certain to occur as a result of its actions.][285] [286]

---

[284] Restatement (Second) of Torts § 8A (1965); *JIT Concepts, Inc. v. Shelby Cnty. Healthcare Corp.*, 358 F. Supp. 2d 678, 685–86 (W.D. Tenn. 2005).

[285] ChemTreat contends that this is an accurate statement of the law and properly instructs the jury on this element of the claim.

[286] Defendants' proposed addition here is argumentative, unnecessary, and may confuse the jury. Plaintiffs oppose the inclusion of this sentence.

125

## DEFENDANTS' PROPOSED INSTRUCTION NO. [81A] — Acting without Legal Justification

To satisfy the fourth element, Plaintiffs must show that ChemTreat engaged without legal justification in a willful violation of a known right of Plaintiffs.[287]  Interference is without legal justification if it is done for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense.[288]

To show that ChemTreat acted without legal justification, Plaintiffs must do more than simply prove that ChemTreat hired Mr. Ridley even though it knew he was subject to restrictions in his employment agreement with Plaintiffs.[289]  Plaintiffs must prove by a preponderance of the evidence that ChemTreat induced Mr. Ridley to violate a restriction in his employment agreement while knowing that such a violation would cause harm to Plaintiffs.[290]

---

[287] *Crye-Leike Realtors, Inc. v. WDM, Inc.*, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998); *Prime Co. v. Wilkinson & Snowden, Inc.*, 2004 WL 2218574, at *4 (Tenn. Ct. App. Sept. 30, 2004).

[288] *Crye-Leike Realtors, Inc. v. WDM, Inc.*, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998).

[289] *Rezult Grp., Inc. v. Turkheimer*, 2023 WL 1975239, at *11 (M.D. Tenn. Feb. 13, 2023).

[290] *F.S. Sperry Co. v. Schopmann*, 304 F. Supp. 3d 694, 704 (E.D. Tenn. 2018).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [81B] – Improper Motive or Improper Means[291] [292]**

To satisfy the fourth element, Plaintiffs must show that ChemTreat acted with an improper motive or improper means.[293]

To demonstrate that ChemTreat acted with an improper motive when interfering with the contract, Plaintiffs must demonstrate that ChemTreat's predominate purpose was to injure the plaintiff.[294]

To demonstrate that ChemTreat acted with improper means when interfering with the contract, Plaintiffs must show that the means were illegal or independently tortious. Examples of such means include:

---

[291] Plaintiffs object to Defendants formulation of the element instructions on this claim insofar as they are based on Defendants' assumption that the elements match those of the statutory procurement-of-breach claim. As stated above, Plaintiffs argue that those elements do not apply, and these instructions are therefore improper.

[292] ChemTreat objects to Plaintiffs' instruction because it is based on the wrong claim, tortious interference with business relations rather than tortious interference with a contract. Moreover, Plaintiffs' instruction is confusing and misleading as it includes among the list of conduct giving rise to a finding of "improper means" conduct that is preempted and, therefore, cannot be considered by the jury when assessing whether ChemTreat acted with "improper means." Moreover, Plaintiffs' proposed instruction includes among the list of conduct giving rise to a finding of "improper means" "violations of statutes, regulations, or recognized common-law rules." There is no allegation that ChemTreat violated a non-preempted statute or regulation, and Plaintiffs' reference to "recognized common-law rules" is vague and confusing to a jury. Similarly, there is no allegation that ChemTreat aided in any breach of fiduciary duty; to the contrary, the Court rejected Plaintiffs' attempt to amend their Complaint to plead such a claim against ChemTreat. *See* Doc. 215

[293] *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002).

[294] *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 699-701 (Tenn. 2002); *Kolstad v. Leehar Distributors, LLC*, No. 3:18-CV-00060, 2018 WL 6832086, at *7 (M.D. Tenn. Dec. 28, 2018).

a. violations of statutes, regulations, or recognized common-law rules;

b. violence, threats or intimidation;

c. bribery;

d. unfounded litigation;

e. fraud, misrepresentation or deceit;

f. defamation;

g. duress;

h. undue influence;

i. misuse of inside or confidential information;

j. breach of a fiduciary relationship; or

k. methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition[295]

---

[295] *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 & n.5 (Tenn. 2002); *Kolstad v. Leehar Distributors, LLC*, No. 3:18-CV-00060, 2018 WL 6832086, at *7 (M.D. Tenn. Dec. 28, 2018).

## DEFENDANTS' PROPOSED INSTRUCTION NO. [82] — Breach of Contract[296] [297]

The fifth element is an underlying breach of contract.  To satisfy this element for Plaintiffs' claim that ChemTreat unlawfully interfered with Mr. Ridley's contract by inducing Mr. Ridley to recruit an employee of Plaintiffs that Mr. Ridley was prohibited from recruiting, Plaintiffs must prove three things by a preponderance of the evidence:

1.  First, that between July 1, 2020, and July 1, 2021, Mr. Ridley had material contact on Plaintiffs' behalf with Tyler Bates.[298] "Material contact" for purposes of this contract means contact for the purposes of furthering Plaintiffs' business, not personal or social contact.

2.  Second, that the material contact happened at a time when both Mr. Ridley and Mr. Bates were employees of Plaintiffs; and

3.  Third, that, while Mr. Ridley was an employee of ChemTreat, he induced or attempted to induce ChemTreat to hire Mr. Bates.[299]

If you find that Plaintiffs failed to prove this alleged breach of contract occurred, then you must return a verdict for ChemTreat as to the claim that ChemTreat tortiously interfered with Mr.

---

[296] ChemTreat contends that it is misleading and prejudicial to instruct the jury on only certain elements of a claim.  Plaintiffs do not dispute this is a mandatory element of their claim nor do they identify any legal error in the instruction.  Moreover, given that many of the breaches of contract Plaintiffs alleged as to Mr. Ridley are preempted for purposes of this claim, it is misleading and confusing to the jury not to specify the only theories of breach than can supply the necessary predicate breach for this element.

[297] Plaintiffs object to Defendants formulation of this instruction for the same reasons as stated in Proposed Instruction 72. Furthermore, this instruction is redundant of the instructions concerning the breach-of-contract claim and can and should incorporate those instructions instead.

[298] Doc. 255-2 at JA-55.

[299] Doc. 255-2 at JA-55.

Ridley's employment contract.

The sixth element Plaintiffs must prove by a preponderance of the evidence is that a breach of contract induced by ChemTreat proximately caused an injury to Plaintiffs. A breach is a proximate cause of an injury when it:

1. Was a substantial factor in bringing about the injury Plaintiffs complain of; and

2. The injury could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care.[302]

To be a substantial factor, a breach of contract must be more than a remote or trivial factor in causing the injury complained of. A breach of contract does not have to be the only cause to be a substantial factor. A breach of contract is not a substantial factor in causing an injury if the same injury would have occurred without that breach.[303]

---

[300] ChemTreat contends that this instruction is necessary because it is an element of an interference with contractual relationships claim. Plaintiffs have the burden of proof on this claim and must put forward evidence to prove all elements of their claim. The jury should be instructed on each element of the claim. As noted in ChemTreat's objection to Plaintiffs' proposed instruction no. 86, ChemTreat contends that it is confusing and potentially misleading to the jury to aggregate the causation requirements for distinct statutory and common law claims into a single instruction, particularly as differences in the underlying damages theory results in differences in how the jury is to apply a similar concept, such as "but for" causation.

[301] Plaintiffs object to this proposed instruction and instead have proposed a single instruction on causation that will apply to all claims. That instruction is located *infra* at Proposed Instruction 86. Plaintiffs assert that their proposed approach is more efficient, more clear, and less confusing for the jury. Defendants' proposal to include redundant causation language such as the language found in this proposed instruction, therefore, should be rejected in favor of Plaintiffs' Proposed Instruction 86.

[302] T.P.I.—CIVIL 3.22 Legal Cause, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 3.22 (2022 ed.) (modified); *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005)

[303] *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991); *3500 Sepulveda, LLC v. RREEF Am. Reit II Corp.*, 2023 WL 3866570, at *2–3 (C.D. Cal. June 6, 2023); 18B Am. Jur. Pl. & Pr. Forms Negligence § 201.

132

**DEFENDANTS' PROPOSED INSTRUCTION NO. [84A] — Injury and Damages[304] [305]**

The seventh element Plaintiffs must prove by a preponderance of evidence is they suffered damages as a result of ChemTreat inducing Mr. Ridley to breach his employment agreement with Plaintiffs. The mere fact that you may find that ChemTreat induced Mr. Ridley to breach his contract does not require you to award Plaintiffs any damages.[306]

If you find that ChemTreat interfered with Mr. Ridley's employment agreement, you may award Plaintiffs an amount that will compensate Plaintiffs for all damages legally caused by ChemTreat's interference with Mr. Ridley's employment agreement in connection with the recruiting of Mr. Bates. The award of damages shall include compensation for:

1. The pecuniary loss of the benefits of the contract, that is, the sum of money necessary to place the Plaintiffs in the position that Plaintiffs would have been in if the contract had been performed according to its terms; and

2. Any consequential losses legally caused by the interference. A consequential loss

---

[304] ChemTreat contends that severing the damages instructions from the instructions regarding other elements of the respective claims is inappropriate for two reasons. First, Plaintiffs' claims present distinct theories of damage, resting on distinct evidence, such that separating the legal requirements for proving a particular form of damages from the claim to which that form of damages applies risks confusing the jury and injecting error into the verdict. Second, damages are an essential element of some of Plaintiffs' claims (e.g., tortious interference) such that Plaintiffs' proposed severing of the elements risks not only confusion of the jury but prejudice to ChemTreat.

[305] Plaintiffs object to Defendants' proposal to insert damages instructions into the charging instructions on liability for each count. Plaintiffs propose that the proper order of instruction is to set out the charging instructions of liability on each claim; after each claim is set out, the Court should then instruct the jury of the principles of determining damages. These proposed instructions are located *infra* at Proposed Instruction No. 90 *et seq.* In addition, this Proposed Instruction 84A is argumentative and should be rejected in favor of Plaintiffs' Proposed Instruction 84B.

[306] *Shockley v. Crosby*, 2004 WL 2113052, at *11 (Tenn. Ct. App. Sept. 21, 2004); *Ford Motor Co. v. Toth*, 872 F.2d 1025, 1989 WL 40481 at *3 (6th Cir. 1989).

is any direct out-of-pocket expense incurred by a party as a direct and legal result of a breach of contract. The out-of-pocket expense must have been within the contemplation of the parties to the contract.[307]

Each of these elements of damage is separate. You may not duplicate damages for any element by also including that same loss or harm in another element of damage.[308] Any damages award must be limited to damages caused by interference with the contract provision prohibiting Mr. Ridley from recruiting an employee of Plaintiffs with whom he had material contact on Plaintiffs' behalf while they were both employed by Plaintiffs, not by any other cause.

---

[307] T.P.I.—CIVIL 13.15 Procurement of Breach of Contract—Damages, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.15 (2022 ed.) (modified); *Reinhart v. Knight*, 2005 WL 3273072, at *4 (Tenn. Ct. App. Dec. 2, 2005).

[308] T.P.I.—CIVIL 14.01 Compensatory Damages, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.01 (2022 ed.).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [84B] — Injury and Damages** [309]

The fifth element Plaintiffs must prove by a preponderance of evidence is they suffered damages as a result of ChemTreat inducing Mr. Ridley to breach his employment agreement with Plaintiffs. I will provide you more detail on the showings required for damages later in these instructions.[310]

---

[309] ChemTreat contends that severing the damages instructions from the instructions regarding other elements of the respective claims is inappropriate for two reasons. First, Plaintiffs' claims present distinct theories of damage, resting on distinct evidence, such that separating the legal requirements for proving a particular form of damages from the claim to which that form of damages applies risks confusing the jury and injecting error into the verdict. Second, damages are an essential element of some of Plaintiffs' claims (e.g., tortious interference) such that Plaintiffs' proposed severing of the elements risks not only confusion of the jury but prejudice to ChemTreat.

[310] *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

## J.   DEFENDANTS' PROPOSED INTRODUCTION – COUNT VI (PROCUREMENT OF BREACH OF CONTRACT)

Plaintiffs also allege that ChemTreat procured a breach of Mr. Ridley's employment agreement with Plaintiffs.  To prove this claim, Plaintiffs must establish all of the following by clear and convincing evidence:

1. A legal contract existed between Plaintiffs and Mr. Ridley.

2. ChemTreat was aware of the contract.

3. ChemTreat intended to induce a breach of that contract.

4. ChemTreat acted without legal justification.

5. A breach of the contract occurred.

6. ChemTreat's conduct was the proximate cause of the breach.

7. Plaintiffs suffered damages as a result of the breach.[311]

These are the same elements that I just instructed you about with regard to Plaintiffs' unlawful interference with contract claim.  Plaintiffs' theory of liability for this claim is also the same—they allege that ChemTreat procured a breach of contract by encouraging Mr. Ridley to recruit Tyler Bates, who they allege fell into a group of employees that Mr. Ridley was prohibited from recruiting for one year after he resigned from Ecolab.[312]

However, please note that to succeed on this claim, Plaintiffs must prove each of the seven elements by clear and convincing evidence, a higher burden of proof than the preponderance of

---

[311] T.P.I.—CIVIL 13.14 Procurement of Breach of Contract, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.14 (2023 ed.) (modified).

[312] Doc. 229 ¶ 325.  To the extent Counts V and VI are predicated on alleged trade secret information, those claims are preempted by TUTSA.  *See* Doc. 215.

evidence standard, as I instructed you earlier.[313]  To find that Plaintiffs proved by clear and convincing evidence their claim that ChemTreat procured Mr. Ridley's breach of contract, you must have a firm belief or conviction that it is highly probable that the factual contentions of the claim are true.[314]

Although these two claims have the same seven requirements, because they have different burdens of proof, you must assess those seven requirements separately for each claim.  If you find that Plaintiffs have proved each of the seven requirements by the preponderance of the evidence, but not by clear and convincing evidence, you must find in favor of Plaintiffs on their unlawful interference with contract claim and in favor of ChemTreat on Plaintiffs' procurement of breach claim.

---

[313] T.P.I.—CIVIL 13.15 Procurement of Breach of Contract—Damages, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.15 (2023 ed.); *Koshani v. Barton*, 2020 WL 535960, at *20 (E.D. Tenn. Feb. 3, 2020).

[314] *Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997).

## K. PLAINTIFFS' PROPOSED INTRODUCTION – COUNT VI (PROCUREMENT OF BREACH OF CONTRACT)[315] [316]

Plaintiffs also allege that ChemTreat procured a breach of Mr. Ridley's employment agreement with Plaintiffs. To prove this claim, Plaintiffs must establish all of the following by clear and convincing evidence:

1. A legal contract existed between Plaintiffs and Mr. Ridley.

2. ChemTreat was aware of the contract.

3. ChemTreat intended to induce a breach of that contract.

4. ChemTreat acted without legal justification.

5. A breach of the contract occurred.

6. ChemTreat's conduct was the proximate cause of the breach.

7. Plaintiffs suffered damages as a result of the breach.[317]

Please note that to succeed on this claim, Plaintiffs must prove each of the seven elements by clear and convincing evidence, a higher burden of proof than the preponderance of evidence

---

[315] Plaintiffs assert that their formulation of this charging is the proper formulation. First, Defendants' formulation relies on their conclusion that the elements of this claim are identical to those in the tortious interference claim, which Plaintiffs dispute. Second, Defendants' formulation deviates from the standard form instruction and strays into the realm of argument. This is unnecessary and confusing for the jury and prejudicial to Plaintiffs. Therefore, the Court should adopt Plaintiffs' proposed jury instruction on Count VI.

[316] ChemTreat objects to Plaintiffs' proposed introduction as misleading and confusing to the jury as it fails to identify Plaintiffs' theory of liability, thereby inviting the jury to erroneously base a finding of liability on underlying alleged breaches that are preempted. ChemTreat also objects to Plaintiffs' proposed introduction because it does not sufficiently distinguish the standard of proof on Plaintiffs' interference with contractual relations claim from Plaintiffs' procurement of breach claim, which differs as to the burden of proof but not as to the elements. Finally, for the reasons noted above, Plaintiffs incorrectly assert that their interference with contractual relations has different elements than their statutory procurement of breach of contract claims.

[317] T.P.I.—CIVIL 13.14 Procurement of Breach of Contract, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.14 (2023 ed.) (modified).

standard that applies to the other claims in this case.[318]  To find that Plaintiffs proved by clear and convincing evidence their claim that ChemTreat procured Mr. Ridley's breach of contract, you must have a firm belief or conviction that it is highly probable that the factual contentions of the claim are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it is a lower standard of proof than proof beyond a reasonable doubt, which applies only in criminal trials.[319]

---

[318] T.P.I.—CIVIL 13.15 Procurement of Breach of Contract—Damages, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 13.15 (2023 ed.); *Koshani v. Barton*, 2020 WL 535960, at *20 (E.D. Tenn. Feb. 3, 2020).

[319] *Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997).

139

## L.    DISPUTED INTRODUCTION:  COUNT VII (CIVIL CONSPIRACY)

If you have found that ChemTreat intentionally interfered with Mr. Ridley's contract, or procured Mr. Ridley's breach of contract, [Plaintiffs propose adding:  or breached his fiduciary duty of loyalty][320] then you are to consider whether Mr. Ridley and ChemTreat engaged in a civil conspiracy in connection with that conduct.[321]

To prove a civil conspiracy, Plaintiffs must prove all of the following by a preponderance of the evidence:

1. A common design between Mr. Ridley and ChemTreat, each having the intent and knowledge of the other's intent;

2. To accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means;

3. An overt act in furtherance of the conspiracy; and

4. Resulting injury to Plaintiffs.[322]

---

[320] ChemTreat objects to Plaintiffs inclusion of the phrase "breached his fiduciary duty" because there is no basis for Plaintiffs to allege ChemTreat's involvement in any non-preempted breach of a fiduciary duty by Ridley.  Plaintiffs' sole basis for alleging ChemTreat's involvement in Ridley's alleged breach of the fiduciary duty was Ridley's transmission of a "business plan" to ChemTreat prior to his resignation from Plaintiffs' employment.  The Court has already ruled that any theory of fiduciary breach premised on that document is preempted because Plaintiffs allege it is a trade secret.  Doc. 215 at 4 ("[C]laims against Ridley and ChemTreat based on Ridley use of an Ecolab/Nalco template to create the ChemTreat business plan are preempted by the Tennessee Uniform Trade Secrets Act.").

[321] T.P.I.—CIVIL 8.80 Civil Conspiracy, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 8.80 (2022 ed.).

[322] T.P.I.—CIVIL 8.80 Civil Conspiracy, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 8.80 (2023 ed.).

[Defendants propose adding the following paragraph: [323] [324] You may not consider the alleged misappropriation of Plaintiffs' trade secrets in deciding this claim. This claim only involves ChemTreat's conduct in connection with the contractual restriction on Mr. Ridley recruiting certain employees of Plaintiffs while he was a ChemTreat employee.][325]

---

[323] ChemTreat contends that this additional instruction is necessary to ensure that the jury does not mistakenly consider any facts related to the alleged misappropriation of trade secrets in deciding the civil conspiracy claim.

[324] Plaintiffs object to this proposed paragraph, which misapplies the Court's prior rulings, improperly seeks to restrain Plaintiff from pursuing its claims, and is argumentative.

[325] Doc. 229 at 59 n.2, 61 n.3, 63 n.4.

**DISPUTED INSTRUCTION NO. [85] – No Intracorporate Conspiracy**

A conspiracy cannot exist between a corporation and its officer, director, employee, or other agent when the conduct is a single act by a corporation acting through its officer, director, employee, or other agent, each acting within the scope of his or her employment. Conduct of a person is within the scope of employment if (a) it is the kind the person is employed to perform, (b) it occurs substantially within the authorized time and place limits, and (c) it is motivated, at least in part, by a purpose to serve the employer.[326] [Defendants propose adding the following sentence: [327] [328] Thus, if you find that Mr. Ridley was an employee or agent of ChemTreat at the time he breached his contract with Plaintiffs and that Mr. Ridley's conduct was within the scope of his employment or agency as an employee of ChemTreat, then you may not find that Mr. Ridley and ChemTreat were engaged in a civil conspiracy.][329]

---

[326] T.P.I.—CIVIL 12.04A Factors to Determine Whether an Act Occurred Within the Scope of Employment, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 12.04A (2023 ed.); Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 24.

[327] ChemTreat contends that this additional language appropriately instructs the jury as to the intracorporate conspiracy doctrine. Moreover, the additional language is not simply appropriate but necessary to avoid confusing or misleading the jury given Plaintiffs' refusal to clarify what conduct underlies this claim and whether it pre- or post-dates Mr. Ridley's employment by ChemTreat.

[328] Plaintiffs object to the inclusion of this sentence because it is pure argument, unnecessarily deviates from the pattern instruction, and may confuse the jury.

[329] *See, e.g., Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 749–50 (E.D. Tenn. 2014).

142

## III. PLAINTIFFS' PROPOSED INSTRUCTIONS REGARDING CAUSATION

### PLAINTIFFS' PROPOSED INSTRUCTION NO. [86] – Causation in Fact and Legal Causation[330]

This instruction shall apply to any claim which has, as one of its elements, that a defendant's conduct causes the plaintiff to suffer injury.

A defendant's conduct is the cause in fact of a plaintiff's injury if, as a factual matter, it directly contributed to the plaintiff's injury and without it plaintiff's injury would not have occurred. It is not necessary that a defendant's act be the sole cause of plaintiff's injury, only that it be a cause.[331]

Once you have determined that a defendant's conduct is a cause in fact of the plaintiff's injury, you must decide whether the defendant's conduct was also a legal cause of the plaintiff's injury.

The law in Tennessee sets out two requirements to determine whether an act or omission was a legal cause of the injury or damage.

1. The conduct must have been a substantial factor in bringing about the harm being

---

[330] ChemTreat objects to Plaintiffs' proposed instruction no. 86 as confusing and potentially misleading. While Plaintiffs' definitions of factual and legal causation are not erroneous, ChemTreat contends that discussing causation separate and apart from the claims at issue may confuse the jury. ChemTreat further contends that it is improper to aggregate the causation requirements for distinct statutory and common law claims into a single instruction, particularly as differences in the underlying damages theory results in differences in how the jury is to apply a similar concept, such as "but for" causation. Moreover, the generic definitions Plaintiffs propose are not related back in any way to the allegations in this case, making it even more difficult for the jury to analyze causation.. Moreover, the generic definitions Plaintiffs propose are not related back in any way to the allegations in this case, making it even more difficult for the jury to analyze causation.

[331] T.P.I.—CIVIL 3.21 Cause in Fact, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 3.21 (2023 ed.).

complained of; and,

2. The harm giving rise to the action could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care.

To be a legal cause of an injury there is no requirement that the cause be the only cause, the last act, or the one the nearest to the injury, so long as it is a substantial factor in producing the injury or damage.[332]

---

[332] T.P.I.—CIVIL 3.22 Legal Cause, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 3.22 (2023 ed.).

## IV.    INSTRUCTIONS REGARDING DAMAGES

### AGREED INSTRUCTION NO. [87] — No Duplicative Damages

In the event you decide to award Plaintiffs any damages, Plaintiffs will not be entitled to duplicative damages.  If necessary, they will later elect which damages to recover to avoid double recovery.  If you find Plaintiffs are entitled to damages on a claim, you should award full damages on that claim.  Do not limit your damages amount on one claim because you have decided to award the same or similar damages on other claims.[333]

---

[333] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 26 (modified).

## DEFENDANTS' PROPOSED INSTRUCTION NO. [88] – Mitigation of Damages[334] [335]

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his or her damages, that is, to avoid or to minimize those damages.

If you find that a Defendant is liable and Plaintiffs have suffered damages, Plaintiffs may not recover for any item of damage which they could have avoided through reasonable effort. Here, Plaintiffs have agreed there is no evidence they took any steps to avoid any item of damages. Accordingly, if you find that Plaintiffs had an opportunity to prevent or lessen their damages, you should deny Plaintiffs recovery for those damages that they could have avoided had they taken advantage of the opportunity.

You are the sole judge of whether Plaintiffs acted reasonably in avoiding or minimizing their damages. Plaintiffs may not sit idly by when presented with an opportunity to reduce their damages. However, they are not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. In deciding whether to reduce the Plaintiffs' damages because of their failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether Plaintiffs' conduct was not reasonable.[336]

---

[334] ChemTreat proposes this instruction because, consistent with the authorities cited herein, a plaintiff is required to mitigate damages under applicable law. This instruction is particularly appropriate here given that the Court ordered Plaintiffs to produce evidence relevant to the mitigation of damages and Plaintiffs asserted they had no responsive evidence beyond what was in the report of Dana Trexler, which did not address mitigation. Doc. 212 at 16-17; Doc. 268-5; Doc. 300-1; Doc. 349 at 43-44.

[335] Plaintiffs oppose this instruction because it is not the subject of the evidence nor is it at issue in the case. This proposed instruction is argumentative, and its only function is to confuse the jury into improperly lessening its award of damages.

[336] Fifth Circuit Pattern Civil Jury Instructions § 15.5 (modified); *Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App. 1971); T.P.I.—CIVIL 14.70

Contracts Generally, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.70 (2023 ed.); *Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572 (Tenn. App. 1979).

**DEFENDANTS' PROPOSED INSTRUCTION NO. [89] — No Prejudgment Interest[337] [338]**

In determining an appropriate amount of compensatory damages, you are not to assess an amount reflecting interest. The law allows Plaintiffs to recover prejudgment interest on a compensatory damages award in certain circumstances. Assuming you find a Defendant liable to Plaintiffs, the Court will determine whether to award prejudgment interest at a later date, therefore you should be careful not to make any award for such interest.[339]

---

[337] ChemTreat proposes this instruction to avoid the jury speculating on this issue. Instead, ChemTreat's proposed instruction properly avoids the jury erroneously including elements of damages that, consistent with the authority cited, it is not permitted to include or consider in its damages calculation.

[338] Plaintiffs object to this instruction. Prejudgment interest is not an issue that will be presented to the jury, so this instruction could cause confusion amongst the jury.

[339] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 26.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [90] — Trade Secret Misappropriation Damages (Count I and II).** [340]

If, under the Court's instructions, you find that the defendants misappropriated plaintiffs' trade secrets and you find, by a preponderance of the evidence, that plaintiffs were harmed as a result of that misappropriation, you must award plaintiffs:

    i.    damages for actual loss caused by the misappropriation of the trade secret; and

    ii.    damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.[341]

Plaintiffs also seek an award of "exemplary" damages for misappropriation of trade secrets. Exemplary damages may be considered if defendants misappropriated the trade secrets willfully or maliciously.[342]

---

[340] ChemTreat objects to Plaintiffs' proposed instructions nos. 90–92 because the instructions are untethered from the claims to which they relate. Damages are necessary elements for each of these claims and, therefore, should be grouped with the instructions related to these claims. ChemTreat also objects to Plaintiffs' proposed instruction no. 90 because Plaintiffs are not seeking any "actual loss caused by the misappropriation of" a trade secret, and have explicitly stated that they are "not claiming damages for lost customers at this time." Doc. 349 at 16. The Court has stated that it "intends to hold Ecolab/Nalco to that representation" and that "Ecolab/Nalco will not be permitted to introduce evidence related to lost customers at trial." Doc. 349 at 43. ChemTreat also contends that Plaintiffs' requested instruction regarding "exemplary damages" should be withheld until after the jury decides liability in the first proceeding. In any event, Plaintiffs' exemplary damages claim fails to define what kind of conduct is willful or malicious or the proper burden of proof.

[341] 18 U.S.C. § 1836(b)(3)(B); *see also* Tenn. Code Ann. § 47-25-1704.

[342] 18 U.S.C. § 1836(b)(3)(B); Tenn. Code Ann. § 47-25-1704.

149

### PLAINTIFFS' PROPOSED INSTRUCTION NO. [91] — Damages for Breach of Contract (Count III) [343]

When a contract is breached, the Plaintiffs are entitled to be placed in as good a position as would have been occupied had the contract been fulfilled in accordance with its terms. The Plaintiffs are not entitled to be put in a better position through a recovery of damages for breach of contract than would have been realized had there been full performance. The damages to be awarded are those that may fairly and reasonably be considered as arising out of the breach or those that may reasonably have been in the contemplation of the parties when the contract was made. Damages that are remote or speculative may not be awarded.[344] [345]

---

[343] ChemTreat objects to Plaintiffs' proposed instructions nos. 90–92 because the instructions are untethered from the claims to which they relate. Damages are necessary elements for each of these claims and, therefore, should be grouped with the instructions related to these claims.

[344] T.P.I.—CIVIL 14.70 Contracts Generally, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.70 (2023 ed.).

[345] ChemTreat objects to this instruction for the same reasons listed in its objection to Plaintiffs' proposed instruction no. 90.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. [92] — Compensatory Damages For Tort Claims (Counts IV, V, VI, and VIII)** [346]

If you find that the plaintiffs are entitled to damages , then you must award plaintiffs damages that will reasonably compensate the plaintiffs for claimed loss or harm which has been proven by a preponderance of the evidence, provided you also find it was or will be suffered by the plaintiffs and was legally caused by the act or omission which you base your finding of liability. [347]

With respect to the measure of damages for breach of fiduciary duty of loyalty (Count IV), while such damages should be to reasonably compensate the plaintiffs for claimed loss or harm which has been proven by a preponderance of the evidence, one type of damages for such breach is that an employee may be required to surrender any compensation paid by the employer during the period of breach. [348] Surrender of any compensation should not be viewed as required damages or as the sum total of damages for breach of fiduciary duty of loyalty.

With respect to the measure of damages for Tortious Interference with Contractual Relationships (Count V), your measure of damages should include reasonable compensation for

---

[346] ChemTreat objects to Plaintiffs' proposed instruction because (1) the location of the instruction improperly invites the jury to award tort damages for other, non-tort claims, including trade secret misappropriation; (2) it improperly invites the jury to award breach of fiduciary duty of loyalty damages that include compensation paid by employers other than the Plaintiff to whom the jury finds a fiduciary duty was breached; and (3) it fails to properly instruct the jury that any tortious interference damages must be proximately caused by the underlying alleged tortious conduct.

[347] T.P.I.—CIVIL 14.01 Compensatory Damages, 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.01 (2023 ed.) (modified)

[348] Efird v. Clinic of Plastic and Reconstructive Surgery, P.A., 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003).

the loss of time, attorney fees and other expenditures incurred in bringing a lawsuit against a third person.[349]

---

[349] *Engstrom v. Mayfield*, 195 F. App'x 444, 451–52 (6th Cir. 2006); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985).

## V.     INSTRUCTIONS REGARDING DELIBERATIONS

### AGREED INSTRUCTION NO. [93] — Unanimous Verdict and Duty to Deliberate

The verdict you return to the Court must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to that verdict.  Your verdict must be unanimous.  It is your duty to consult with one another and to reach an agreement if you can do so without acting contrary to your individual judgment.  Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations do not hesitate to reexamine your own views and to change your opinion if you are convinced that it is not correct.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.[350]  Remember at all times that you are not partisans, you are judges of the facts.  Your sole interest is to seek the truth from the evidence in this case.[351]

---

[350] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 26–27.

[351] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 28.

153

**AGREED INSTRUCTION NO. [94] — Verdict Form**

I have prepared a verdict form for you to use to record your verdict.  You will be taking with you to the jury room a verdict form that will reflect your findings.  Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find. Determining what the verdict shall be is your sole and exclusive duty and responsibility.[352]

---

[352] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 27.

**AGREED INSTRUCTION NO. [95] — Foreperson**

You will be selecting a foreperson after you retire to the jury room. That person will preside over your deliberations and be your spokesperson here in court. When you have completed your deliberations, your foreperson will fill in and sign the verdict form. Your verdict must represent the considered judgment of each of you.[353]

---

[353] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 27.

**AGREED INSTRUCTION NO. [96] — Evidence in Jury Room**

You have heard the testimony of many witnesses.  No transcript of witness testimony is readily available.  In your deliberations you must rely on your individual and collective recollection as to all the proof, including the testimony of witnesses.

We will be sending with you to the jury room all of the exhibits in the case.  You may have not seen all of these previously, and they will be there for your review and consideration.[354]

---

[354] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 28.

**AGREED INSTRUCTION NO. [97] — Deliberation When All Are Present**

You may take a break before you begin the case; however, you may not deliberate at any time unless all of you are present together in the jury room.[355]

---

[355] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 28–29.

**AGREED INSTRUCTION NO. [98] — Notes**

Some of you have taken notes. I remind you that these are for your own individual use only and are to be used by you only to refresh your recollection about the case. They are not to be shown to others or otherwise used as a basis for your discussion about the case.[356]

---

[356] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 29.

**AGREED INSTRUCTION NO. [99] — Return Verdict Form**

You will take the verdict form to the jury room, and when you have reached a unanimous agreement as to your verdict you will have your foreperson fill it in, date and sign it, and then return to the courtroom.[357]

---

[357] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 29.

**AGREED INSTRUCTION NO. [99] — Questions for the Court**

If during your deliberations you should desire to communicate with the Court, please reduce your message or question to writing signed by the foreperson and pass the note to the clerk, who will bring it to my attention.  No member of the jury shall ever attempt to communicate with me by any means other than a signed writing.  I will never communicate with any member of the jury on any subject touching on the merits of the case otherwise than in writing or orally here in open court.  I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.

I caution you, however, with regard to any message or question you might send, that you are never to reveal to any person, not even to me, how the jury stands, numerically or otherwise, on the questions before you until you have reached a unanimous verdict.[358]

---

[358] Jury Instructions, *Knox Trailers, Inc., et al., v. Billy Maples, et al.*, No. 3:20-CV-137 (E.D. Tenn. Nov. 1, 2022), ECF. No. 591 at 29–30.

DATED: October 13, 2023                                     Respectfully submitted,

*/s/ Troy C. Homesley*
Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: vmirmira@wc.com
E-mail:  jlund@wc.com
E-mail:  thomesley@wc.com

Kyle W. Eiselstein, Tenn. BPR No. 020727
Zachary H. Greene, Tenn. BPR No. 024451
Erin E. Steelman, Tenn. BPR No. 038463
MILLER & MARTIN PLLC
1200 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone:  (423) 756-6600
kyle.eiselstein@millermartin.com
zac.greene@millermartin.com
erin.steelman@millermartin.com

*Attorneys for Defendant ChemTreat, Inc.*

*/s/ Lance W. Pope (by permission)*
Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

_/s/ David J. Walton (by permission)_
J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (_pro hac vice_)
Edward G. Winsman (_pro hac vice_)
Kathleen Laubenstein (_pro hac vice_)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (_pro hac vice_)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (_pro hac vice_)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

Edward N. Boehm, Jr.
FISHER & PHILLIPS LLP
1230 Peachtree St., NE, Suite 330
Atlanta, GA 30309
tboehm@fisherphillips.com

_Attorneys for Plaintiffs_

162

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served via the Court's

CM/ECF system on October 13, 2023, upon the following:

J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

Edward N. Boehm, Jr. (*pro hac vice*)
FISHER & PHILLIPS LLP
1230 Peachtree St., NE, Suite 330
Atlanta, GA 30309
tboehm@fisherphillips.com

*Attorneys for Plaintiffs*

Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

/s/ *Troy C. Homesley*
Troy C. Homesley

163