United States District Court
Eastern District of Tennessee
At Chattanooga

| | |
|---|---|
| Ecolab, Inc. and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water<br><br>Plaintiffs<br><br>v.<br><br>Anthony Ridley and ChemTreat<br><br>Defendants | No. 1:22-CV-00050<br><br>TRM-SKL |

**Anthony Ridley's Response in Opposition to Plaintiffs' Omnibus Motion *in Limine***

1. **Introduction.**

Plaintiffs, in their Omnibus Motion *in Limine* [Doc. 373-74.], continue to lean into their pivot away from the allegations in their four (4) different complaints, which have proven to have no merit, to attempt to secure relief through satellite spoliation litigation and evidentiary gamesmanship that the law does not support. Such efforts should be repelled by the Court as this case, at trial, should be decided on the merits by the jury based on admissible evidence as determined by the Rules of Evidence rather than resolved through Plaintiffs' maneuverings without legal support. Accordingly, Ridley requests for each of Nalco/Ecolab's motions *in limine* to be denied.

2. **Response to Motion *in Limine* to Exclude Ridley from Presenting Evidence or Arguments Regarding the Size and Resources of Plaintiffs or Ridley.**

Nalco/Ecolab, in its fourth complaint filed in this matter, sued Ridley for 1) violation of Defendant Trade Secrets Act, 2) violation of the Tennessee Uniform Trade Secrets Act,

3) breach of contract, 4) breach of fiduciary duty of loyalty, and 5) civil conspiracy [Doc. 229.]. Pursuant to the Rules of Evidence and Rules of Civil Procedure, Ridley intends to present evidence related to Nalco/Ecolab's relative size, financial position, and sophistication as this evidence is relevant, under Rule of Evidence 402, for at least the following purposes: 1) attacking the credibility of Nalco/Ecolab's witnesses, 2) bolstering Ridley's credibility in response to Nalco/Ecolab's continued efforts to besmirch his character as Ridley was in a relatively unsophisticated position and without the benefit of a deep bench of legal and IT experts at his beck and call as compared to Nalco/Ecolab's sophisticated position with the benefit of a deep bench of legal and IT experts at their beck and call at all relevant times to this litigation, 3) Nalco/Ecolab claims an entitlement to punitive damages and Ridley's financial position is relevant to the request for punitive damages, and 4) Nalco/Ecolab claim an entitlement to attorney's fees and litigation expenses and whether to award attorney's fees and litigation expenses and how much turns on the facts of each case, including the relative financial positions of the parties. Accordingly, the financial position of the parties is relevant for at least these four reasons.

*First*, Nalco/Ecolab failed to cite a single case where the financial position of a *plaintiff* compared to a *defendant* is inadmissible under the Rules of Evidence. Rather, Nalco/Ecolab's position that the relative size and resources of the parties is wholly irrelevant, or at least too prejudicial to be probative, finds no grounding in the law, even in their cited cases, for *their* lawsuit against Ridley. Nalco/Ecolab, in point of fact, cite only tort or employment discrimination cases in which punitive damages are ***not*** at issue and the only theoretical relevance that the relative size of the parties has on the litigation is the plaintiff's hope that an enlarged verdict would be rendered in its favor because of defendant's superior

financial position. [Doc. 374, PageID #: 15803-804 (citing *Bell v. Sam's East, Inc.*, No. 1:16-cv-315-SKL, 2018 WL 719042, 2018 U.S. Dist. LEXIS 18448, at *3-6 (E.D. Tenn. Feb. 5, 2018) (excluding evidence of relative financial positions of parties in slip-and-fall case where punitive damages were not requested); *Maseru v. Univ. of Cinci.*, No. 1:18-cv-106, 2022 WL 7506368, 2022 U.S. Dist. LEXIS 188340, at *10 (S.D. Ohio Oct. 13, 2022) (excluding evidence of the University of Cincinnati's financial position in employment discrimination case where punitive damages were not at issue); *Storrs v. Univ. of Cinci.*, No. 1:15-cv-136, 2018 WL 684759, 2018 U.S. Dist. LEXIS 17451, at * (S.D. Ohio Feb. 2, 2018) (*without objection by plaintiff*, excluding evidence of the University of Cincinnati's financial position in employment discrimination case where punitive damages were not at issue); *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980) (when applying Ohio law, Sixth Circuit ordered a new trial when plaintiff made inadmissible references to defendant's insurance, size, and financial position, which resulted in an exorbitant verdict against the defendant). *None* of these cases support exclusion of the comparative size and financial position of the parties introduced by the *defendant* regarding the *plaintiff*.

*Second*, Ridley, among other relevant matters, intends to present evidence to the jury that 1) Nalco/Ecolab immediately involved legal counsel to advise them on Ridley's departure the same day he resigned (July 1, 2021) and going forward, and so they had the benefit of legal counsel immediately upon his departure and thereafter [Doc. 255-2, PageID #: 5920 (Amended Privilege Log of Plaintiffs Ecolab, Inc. and Nalco Company, LLC (which omits communications with external counsel as noted on page 1 in footnote 1).], 2) Nalco/Ecolab had an inhouse IT team reviewing Ridley's computer activity, including running a DLP report, shortly after Ridley's departure from Nalco/Ecolab on July 1, 2021, in July 2021, 3)

Nalco/Ecolab, while being advised by legal counsel [Doc. 255-2, PageID #: 5920.] and while being told what Ridley's computer activity revealed by its inhouse IT team (and potentially an external forensic team and an external legal team), failed to take steps to preserve the documents and computer activity that the DLP report allegedly captures and all such information could have been preserved, reviewed, and presented in this lawsuit but Nalco/Ecolab *did not* preserve such evidence while simultaneously receiving advice about this information, 4) the failure to take actions to preserve this computer activity while receiving advice from legal counsel and IT experts means the failure to preserve such evidence was either reckless or tactical, 5) Nalco/Ecolab alleged in their complaints that Ridley deleted documents that he alone had access to and those documents were irretrievably lost, all of which allegations have proven to be false and which must necessarily have been known to be false given the legal counsel and IT experts advising Nalco/Ecolab, 6) Nalco/Ecolab were informed that Ridley had deleted all Nalco/Ecolab documents off of his external hard drive before they filed suit, which is true, but, with all of the resources available and their foreknowledge that they failed to preserve key evidence, went forward with baseless litigation just the same, 7) Nalco/Ecolab made no allegations in any of their four complaints about the external hard drive, and yet they now claim it is the pivotal evidence after striking out across the board on their other allegations, 8) Nalco/Ecolab have pivoted entirely away from the allegations in their four complaints, which were made with its extensive legal and IT teams input, to try to exaggerate the importance of the external hard drive that Ridley voluntarily disclosed to Nalco/Ecolab that he had deleted documents off of prior to Nalco/Ecolab filing suit because they have no evidence that Ridley and ChemTreat trafficked in Nalco/Ecolab documents, and 9) Nalco/Ecolab lack the semblance of factual support for any of their

allegations and they necessarily must have known this to be the case prior to filing suit and throughout prosecuting this suit given the sophistication and sizeable legal and IT teams advising them pre-suit and during suit.

These matters are relevant for at least two (2) reasons. Primarily, the credibility of Nalco/Ecolab's witnesses is "always relevant[.]" *See e.g. United States v. Vandetti*, 623 F.2d 1144, 1150 (6th Cir. 1980) (citing Fed. R. Evid. 608). Each of these categories, and other related categories, goes directly to the credibility of each and every witness that Nalco/Ecolab seeks to present at trial that will allegedly support their claims. Secondarily, the sophistication of the party is relevant when considering their culpability in spoliating evidence. *See e.g. Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 289-90 (S.D.N.Y. Jan. 14, 2011) (citations omitted). Given Nalco/Ecolab's sophistication and sizeable legal and IT teams providing it advice, they certainly knew their obligation to preserve the evidence, what steps were necessary to preserve the evidence, and their failure to preserve this evidence and still file suit after knowing it spoliated this key evidence constitutes damaging evidence.

*Third*, the Court's record is replete with Nalco/Ecolab's attacks on Ridley's credibility and character. If past is prologue, Ridley hazards a guess that Nalco/Ecolab will engage in more of the same at trial. Accordingly, Nalco/Ecolab's comparative position when they a) failed to preserve key evidence, which formed the basis of their claims, and still filed suit and b) made misrepresentation after misrepresentation after misrepresentation to the Court despite having the benefit of significant support resources versus Ridley, who was without the ability to have the benefit of an inhouse IT team and an external forensic IT specialist at his beck and call and legal counsel since July 2021, is relevant to explaining his missteps in

this litigation and comparing and contrasting these missteps with Nalco/Ecolab's significant misconduct. So, this evidence is relevant both for credibility of witnesses and for the spoliation issues. *See e.g. Vandetti*, 623 F.2d at 1150 (citing Fed. R. Evid. 608) (credibility of a witness is always relevant); *Cedar Petrochemicals*, 769 F. Supp. 2d at 289-90 (citations omitted) (sophistication of a party is relevant when considering spoliation).

*Fourth*, Ridley's financial position is relevant to Nalco/Ecolab's request for punitive damages. *See e.g. Winkler v. Petersilie*, 124 Fed. Appx. 925, at 936 (6th Cir. 2005) (citation omitted) (holding defendant's financial position is relevant under Tennessee law on the issue of whether to award punitive damages, and, if so, how much); *Allen v. Wyndham Vacation Resorts*, No. 3:18-CV-259-TAV-DCP, 2021 WL 2434355, 2021 U.S. Dist. LEXIS 115516 (E.D. Tenn. Mar. 18, 2021) (same). Nalco/Ecolab even acknowledges that Ridley's financial position is relevant to punitive damages as held by the United States Supreme Court in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 426-28 (2003), but try to downplay its significance compared to other factors. *See* [Doc. 374, PageID #: 15805-06.] Irrespective of the significance of Ridley's financial position to Nalco/Ecolab's request for punitive damages, it remains relevant to the requested damages under Rule of Evidence 402, and that is corroborated by both *Winkler* and *Allen*, which were both decided after *State Farm*.

*Fifth*, Nalco/Ecolab requests attorney's fees from Ridley. Such a request is discretionary under both the Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act. 18 U.S.C.A. § 1836(b)(3)(D) (a court "may" "award reasonable attorney's fees to the prevailing party."); Tenn. Code Ann. § 47-25-1705 ("the court may award reasonable attorney's fees to the prevailing party" in one (1) of three (3) instances). The request for the discretionary award of attorney's fees makes the issue of the relative wealth of the parties

relevant. *See e.g. Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1230 (6th Cir. 1989) (citation omitted) (financial positions of the parties relevant to request for attorney's fees under Rule 11); *Erwin v. BAE Sys., Ordnance Sys.*, No. 2:19-CV-00227-DCLC-CRW, 2023 WL 2292343, 2023 U.S. Dist. LEXIS 31082, at *17 (E.D. Tenn. Feb. 24, 2023) (citations omitted) ("[F]ee awards are at bottom an equitable matter, [and] courts should not hesitate to take the relative wealth of the parties into account"); *Brooks v. Invista (Koch Indus.)*, No. 1:05-CV-328, at * (E.D. Tenn. Nov. 21, 2007) ("Insolvency is not a proper consideration in deciding whether to award attorney's fees, but is a proper factor to consider in deciding the amount of attorney's fees to be awarded."); *Smith v. Great Dane Trailer Tennessee, Inc.*, 1987 U.S. Dist. LEXIS 13727, at *2 (W.D. Tenn. Nov. 13, 1987) (citing *Durett v. Jenkins Brickyard*, 678 F.2d 1025, 1028 (11th Cir. 1982); *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028 (2d Cir. 1979); *Davidson v. Allis-Chalmers Corp.*, 567 F. Supp. 1532, 1542 (W.D. Mo. 1983); *Kaimowitz v. Howard*, 547 F. Supp. 1345, 1355 (E.D. Mich. 1982), *aff'd*, 751 F.2d 385 (6th Cir. 1984)). Accordingly, Nalco/Ecolab's request for attorney's fees makes the issue of the financial positions of the parties relevant under Rule of Evidence 402.

In sum, Nalco/Ecolab have cited no law that supports the notion that Ridley should be prohibited from presenting evidence to the jury about Nalco/Ecolab's size, sophistication, and financial wherewithal as their sole sources for such argument are restricted to rulings prohibiting plaintiffs from introducing evidence of the defendants' financial positions to avoid the jury awarding increased damages against the defendant. The absence of such legal support is telling on its own, but the absence of such law when paired with the relevance of the evidence as articulated herein demonstrates that there is no basis to exclude this evidence

because it is certainly relevant under Rule of Evidence 402, and it will be for the jury to decide the weight of this admissible evidence. Accordingly, Nalco/Ecolab's first motion *in limine* should be denied.

### 3. Response to Motion *in Limine* to Exclude any Argument or Evidence Regarding Ridley's Counterclaim.

Nalco/Ecolab rely on and incorporate their positions in Documents 262 and 264 for their position that evidence related to Ridley's counterclaim should be excluded. Accordingly, Ridley relies on and incorporates his responsive positions in Document 287 on PageID #: 8792-95, and contends evidence of Nalco/Ecolab's bad faith trade secrets claims is admissible. Accordingly, Accordingly, Nalco/Ecolab's second motion *in limine* should be denied.

### 4. Response to Motion *in Limine* to Exclude Arguments that Plaintiffs Cannot Prove Acquisition or Use of Damages and to Grant an Adverse Inference Jury Instruction.

Nalco/Ecolab effectively circle back to their spoliation arguments in their third motion *in limine* requesting exclusion of evidence that is admissible but which Nalco/Ecolab prefer the jury not hear. They argue that ChemTreat and Ridley should be prohibited from demonstrating to the jury that Nalco/Ecolab have no evidence that 1) ChemTreat and Ridley acquired Nalco/Ecolab trade secrets or 2) they sustained damages as the result of any alleged misappropriation of trade secrets. In effect, Plaintiffs want to prohibit Defendants from demonstrating the lack of key evidence in the Plaintiffs case and thus paper over their evidentiary deficiencies with spoliation sanctions. Neither argument passes muster to exclude the evidence.

*First*, the Sixth Circuit has held that spoliation remedies cannot be awarded when the claim the spoliation sanction seeks to bolster "is subject to dismissal for independent legal reasons" because the request is rendered moot by the independent legal deficiency. *See In re McCarty*, 644 Fed. Appx. 372, 379 (6th Cir. 2016) (citation omitted). But the spoliation remedies Nalco/Ecolab seek through this argument is an attempt to bolster their DTSA and TUTSA claims that cannot proceed because they have no admissible evidence of damages, which is an independent legal deficiency since both forms of trade secret claims require evidence of some form of damages. *See* [Doc. 260, PageID #: 6557-61 (Nalco/Ecolab claims no actual damages).]; [Doc. 353, PageID #: 14481-85, 14495-511 (the Court holding that a valid claim for damages must exist under the DTSA and TUTSA and excluding Dana M. Trexler's trade secrets damages opinion).]; [Doc. 372, PageID #: 15792-94 (damages are inadmissible).]

***Accordingly, Nalco/Ecolab have no trade secret-related damages to present to the jury, which renders the DTSA and TUTSA without a necessary element of their claims and renders them subject to dismissal under the previously filed Rule 56 motions or under Rule 50 upon oral motion at the close of Plaintiffs' proof***. But in no event should spoliation remedies be granted to provide Plaintiffs with a damages theory when they have no such theory remaining related to trade secrets as this would grant a benefit to the Plaintiffs that the law does not permit, particularly when there is an independent basis for dismissal.

*Second*, the Court has already granted Nalco/Ecolab relief related to their allegations of spoliation by reopening discovery and appointing the special master to oversee additional electronic discovery. *See* [Doc. 349, PageID #: 14444-56.]; [Doc. 361 (order appointing special master).] The Court specifically ordered ChemTreat to provide information to the special

master necessary to determine "whether Ridley transferred Ecolab/Nalco files to these custodians during his employment at ChemTreat" in order to determine once and for all whether the Defendants utilized Nalco/Ecolab documents or not since there was no evidence of it prior to the special master being appointed. *See* [Doc. 349, PageID #: 15664.] So, whether Ridley and ChemTreat trafficked in Nalco/Ecolab's documents or not will soon be determined by the special master. If the special master, for the first time in this litigation, finds evidence that Ridley and ChemTreat trafficked in Nalco/Ecolab's documents, that evidence, consistent with the Rules of Evidence, can be presented to the jury. If the special master corroborates that Ridley and ChemTreat did ***not*** traffic in Nalco/Ecolab's documents, that evidence, consistent with the Rules of Evidence, can be presented to the jury.

Notably, Nalco/Ecolab requested the exclusion of evidence about their absence of essential evidence for their DTSA and TUTSA claims on September 29, 2023. On September 29, 2023, the Court already excluded Trexler's trade secrets damages opinion on August 9, 2023 (*i.e.*, fifty-one (51) days earlier). On September 29, 2023, the Court had already appointed the special master on August 23, 2023 (*i.e.*, thirty-seven (37) days earlier). So, when Nalco/Ecolab filed Documents 373-74, they knew they had no viable trade secrets damages theory, an unavoidable fatal deficiency for their case, and that they had no evidence that trade secrets were ever misappropriated by either of the defendants, yet another unavoidable fatal deficiency for their case, and that the special master would soon either refute that or corroborate the absence of such evidence. But yet, they boldly sought to preclude the defendants from pointing out these deficiencies through a baseless spoliation sanction request even with the special master's investigation underway to address one aspect of their lamentations.

Accordingly, the Court should *deny* the third motion *in limine* by refusing to permit Nalco/Ecolab to resuscitate an excluded damages theory through an unwarranted sanctions request and permit the findings of the special master, consistent with the Rules of Evidence, to be admitted into evidence to demonstrate the merits of the case to the jury.

Respectfully Submitted:

**Patrick, Beard, Schulman & Jacoway, P.C.**

By: /s/ *Jeremy M. Cothern*
Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

### Certificate of Service

I certify that on October 27, 2023, this document has been served upon all the parties via the Court's ECF system.

By: /s/ *Jeremy M. Cothern*