| | |
|---|---|
| ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY and CHEMTREAT, INC.,<br><br>    Defendants. | No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

# PLAINTIFFS' OBJECTIONS TO REPORT OF THE SPECIAL MASTER

### I. The Special Master Should Have Collected and Searched All the ChemTreat Custodians' Hard Drives Addressed in the Court's Order.

The Special Master process was initiated to "mitigate the prejudice caused by spoliation." Doc. 361 at 2. Specifically, the Court found that ChemTreat failed to uphold its legal duty to "preserve evidence in connection with the case beginning on February 9, 2022," and that "ESI lost from Ridley's ChemTreat laptop cannot be restored or replaced and the inability to do so necessarily prejudices Ecolab/Nalco." Doc. 349 at 28, 29.

One way to try mitigating this spoliation was the Court's Order that ChemTreat "shall produce to the Special Master (or his vendor or delegate) electronically stored information data sources, *including . . . local hard drives*, as directed for" 13 different ChemTreat custodians (the "ChemTreat Custodians"). Doc. 361 (emphasis added). To have fully achieved the aim of this process, it was essential that all of the devices be produced to the Special Master and searched to accomplish the Court's goal of learning if these 13 custodians' hard drives (the "Hard Drives") were used to disclose Plaintiffs' information to ChemTreat. Instead, the majority of the Hard

Drives were not even produced, let alone searched. This failure reveals a severe limitation of the Special Master's ability to mitigate the prejudice that defendants' spoliation already caused.

### A. The Special Master Did Not Require ChemTreat to Produce the Hard Drives, as the Court Ordered.

The Court ordered that "ChemTreat shall produce" the Hard Drives. Before the Special Master, ChemTreat resisted this requirement, and the Special Master did not require ChemTreat to comply with the Court's Order. Moreover, during the Special Master process ChemTreat revealed for the first time that many of the ChemTreat Custodians used their own personal computers for their ChemTreat work—and that ChemTreat therefore did not have possession, custody or even control over those devices. *See* Aug. 30, 2023 Hr. Tr. 109:17-21.

The Special Master incorrectly determined that ChemTreat should not even have to collect and produce the forensic images of these personal laptops—even though those devices essentially functioned as the work computers for certain Chemtreat Custodians. Doc.413, Ex. 18. This was not only contrary to the Court's order but was also unjustified based on the record—which shows that discoverable information would exist on these devices, but ChemTreat has successfully avoided preserving such information, much less producing it.

For example, the record shows that the "most common" way that ChemTreat employees store customer files is on the hard drives of their individual laptops—not on some network drive accessible throughout ChemTreat. (*See* S. Leavell Tr. 206:3-5, 22-207:2.) Thus, the 8 ChemTreat Custodians who did not have company-provided computers saved their work—and information relevant and discoverable in this lawsuit—on their personal computers. This is the type of information that the Court ordered be made available to the Special Master for each of the 13 ChemTreat Custodians. But ChemTreat refused to collect these "home/work" computers, claiming that it did not have the authority to require its own employees to turn over ChemTreat work-related

2

Case 1:22-cv-00050-TRM-CHS   Document 416   Filed 12/01/23   Page 2 of 9   PageID #: 18024

information just because those Custodians followed ChemTreat's "most common" practice of keeping their work on their personally-owned computers. *See* Aug. 30, 2023 Hr. Tr. 109:24-25. This outright refusal to do what the Court ordered deprived the Special Master of discoverable information that should have been available to mitigate the prejudice caused by defendants' spoliation. The Special Master erred by refusing to require ChemTreat to produce this information.[1]

ChemTreat's revelation about its employees' storage of work on their personal computers—and ChemTreat's position that it does not control this information—exposes another serious flaw in ChemTreat's discovery conduct, and further likely spoliation. With ChemTreat only in August 2023 admitting that 8 of the 13 ChemTreat Custodians retained (discoverable) work information on their personal ChemTreat computers, ChemTreat has not disclosed whether or when these ChemTreat Custodians were instructed to preserve information relevant to this lawsuit. ChemTreat was required to give the Custodians such preservation instructions back on February 9, 2022, when Plaintiffs first sent a preservation letter. ChemTreat was required to tell all of the ChemTreat Custodians that they should preserve all potentially relevant documents—whether they were on a ChemTreat issued-device or a personal device used for ChemTreat purposes. It now appears that ChemTreat did not do so, and ChemTreat has not stated when it instructed the Custodians to preserve this information. This means that ChemTreat would have further spoliated

---

[1] ChemTreat asserts that some of the Hard Drives were not available because the employees retired, and apparently took their personal computers—and potentially the ChemTreat work data they might have contained—with them upon their retirement. Sept. 13, 2013 Hr. Tr. 23:6-19 (ChemTreat admitting it "do[es not] know" if all of its work-related data had "been regathered" from these retirees.) Without conceding that these Custodians' devices were not within ChemTreat's control, ChemTreat still should have been required to produce the **6** Hard Drives belonging to ChemTreat employees who did not retire. Doc. 413, Ex. 31.

discoverable information, starting on February 9, 2022 and continuing until some unknown date in August 2023 or later.

There are real consequences to ChemTreat's failure to preserve—or even acknowledge the existence of—these sources. For example, during discovery Plaintiffs asked ChemTreat to produce communications and documents "concerning Ecolab's products, services, technical analyses or reports, clients, potential clients, or business operations which Ridley disclosed or provided to any employee, agent, consultant or independent contractor of ChemTreat." (*See* attached **Exhibit A,** No. 11 of ChemTreat's Resp. and Obj. to Plaintiffs' First Set of RFP's.) After a lengthy objection, ChemTreat responded: "no such Documents exist." *Id.* However, Plaintiffs now know that ChemTreat ***did not search*** any of the personal computers—where ChemTreat work-related data was stored—of 8 Custodians ***that ChemTreat itself identified as being potentially relevant to Plaintiffs' claims.*** This is another example of ChemTreat making discoverable information simply vanish.

ChemTreat's failure to preserve this information undermines the very purpose of the Court's Order that ChemTreat produce the Custodians' Hard Drives to the Special Master. ChemTreat's conduct also made it impossible for the Special Master to even investigate—much less mitigate—the spoliation that has already been established. This preservation failure reveals another significant gap in the Special Master process.

The Court ordered that "ChemTreat Shall produce" the Hard Drives. The Special Master's failure to require ChemTreat to do so was error that undermined the Special Master's ability to mitigate the prejudice that Plaintiffs suffered from defendants' spoliation.

### B. The Special Master Should Have Searched all of the ChemTreat Custodians' Hard Drives to Prevent Prejudice Against Plaintiffs.

While the Court gave the Special Master discretion as to whether or not he could search all of the ChemTreat Custodians' hard drives, failing to search all of them necessarily prejudiced Plaintiffs. Due to ChemTreat's spoliation, Plaintiffs operated in a vacuum when seeking information during the discovery process and, to some degree, during the Special Master process. Plaintiffs even asked several times that ChemTreat provide more information as to why the ChemTreat Custodians were identified, to no avail. Doc. 413, Ex. 49. ("Also, per our prior correspondence, we respectfully request that ChemTreat provide information as to why it selected the custodians in issue. Only ChemTreat has possession of this information, and there is no reason for ChemTreat to refuse to disclose why it selected specific custodians. At minimum, this should be part of any cooperative process involving ESI.") Nevertheless, following the Special Master's guidance and in an effort to cooperate with the process, Plaintiffs followed the group-by-group review of the ChemTreat Custodians—and provided the Special Master with bases for searching more of the ChemTreat Custodians' hard drives. *Id.* However, the Special Master denied several of Plaintiffs' proposals, and now writes that, "Ecolab was unable to provide a specific foundation for any additional custodians" beyond the four that were searched. Doc. 413 at 21. The record does not support this finding. For example, Plaintiffs provided express justifications for why hard drives for custodians Larry Harmon, David Pearson and Todd Kraft should be searched. Doc. 413, Exhibit 49.

Plaintiffs—operating largely in a vacuum due to defendants' spoliation—had little other information at their disposal to justify searching Custodians that ***ChemTreat itself identified as potentially relevant***. *See* Doc. 143 (identifying the Custodians as "ChemTreat employee with whom Ridley may have interacted" at ChemTreat after he left Ecolab). The Special Master process

was supposed to mitigate defendants' spoliation by making available information that is potentially relevant but was not produced in discovery. *See* Doc. 349 at 33; Doc. 361 at 2. Of necessity—because defendants destroyed documents that should have been produced in discovery—the Special Master process should have examined what remained. But here, Plaintiffs were not given the chance to determine why the non-searched ChemTreat Custodians were potentially relevant, or whether they possessed the discoverable information that ChemTreat indicated they could possess. As a result, a process designed to mitigate the effects of spoliation has, ironically, penalized Plaintiffs for not possessing the information that defendants destroyed.

Plaintiffs object to the Special Master's decision not to collect and search the Hard Drives identified on pages 3-4 of the Court's August 23, 2023 Order.

## II. *Plaintiffs Object to the Special Master's Allocation of Costs*

ChemTreat's spoliation and failure to preserve evidence that should have been produced during discovery caused most of the work in this process, including extensive searching and analysis of the various ChemTreat computers. Plaintiffs therefore object to the Special Master's cost allocation ratio of 55% to Plaintiffs and 45% to ChemTreat.

Even the Special Master conceded that while the Court found that all parties spoliated evidence, "the Special Master's engagement was to find 'whether Ridley transferred Ecolab/Nalco files to these custodians **during his employment at ChemTreat**'" and that ChemTreat did not search the local hard drives of the personal computers during discovery. Doc. 413 at 29 (citing Doc. 361 at 1) (emphasis in original). The record otherwise does not support the Special Master's allocation of costs.

For example, the Special Master noted that ChemTreat was "tasked with doing more work than [Plaintiffs]." Doc. 413 at 30. This is because ChemTreat had the most crucial pieces of

6
Case 1:22-cv-00050-TRM-CHS   Document 416   Filed 12/01/23   Page 6 of 9   PageID #: 18028

evidence due to its own spoliation. The Special Master also argues that he adopted Plaintiffs' "more comprehensive approach." *Id.* at 30. Plaintiffs respectfully disagree, as evidenced by the fact that the Special Master only searched four out of 13 the ChemTreat Custodians' local hard drives and never requested that ChemTreat even attempt to retrieve the hard drives of the personal computers that several ChemTreat Custodians used to conduct ChemTreat business.

Plaintiffs were within their rights to ask that the purpose of the Special Master process—remedying defendants' spoliation—be fulfilled. Plaintiffs worked diligently at all times in good faith to comply with every request of the Special Master, and rejects any characterization that defendants may make to the contrary.

The record—including the Special Master's decision not to require steps that the Court's order expressly requires—does not support the Special Master's cost determination. Plaintiffs should be required to assume no more than 50 % of the costs.

DATED: December 1, 2023

Respectfully submitted,

ECOLAB INC. and NALCO COMPANY, LLC

By: /s/ *Ted Boehm*
Ted Boehm (TN BPR#025275)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
Telephone: 404.240.4286
Fax: 404.240.4249
ggrisham@fisherphillips.com

Randall E. Kahnke
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
90 South 7th Street, UNIT 2200
Minneapolis, Minnesota 55402
Telephone: 612.766.7658
randall.kahnke@faegredrinker.com

Martin S. Chester
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
90 South 7th Street, UNIT 2200
Minneapolis, Minnesota 55402
Telephone: 612.766.7232
martin.chester@faegredrinker.com

Emmanuel L. Brown
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite #2000
Philadelphia, Pennsylvania 19103
Telephone: 215.988.2637
mmmanuel.brown@faegredrinker.com

David Yoshimura
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave, Suite #3100
Des Moines, Iowa 50309
Telephone: 515.447.4738
david.yoshimura@faegredrinker.com

*COUNSEL FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

*Ted Boehm*
Ted Boehm