UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB INC., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY RIDLEY and CHEMTREAT, INC., <br><br> Defendants. | No. 1:22-cv-00050-TRM-SKL <br><br> Hon. Travis McDonough <br><br> Magistrate Judge Susan K. Lee |

## PLAINTIFFS' RESPONSE TO CHEMTREAT'S OBJECTION
## TO THE REPORT OF THE SPECIAL MASTER

### INTRODUCTION

ChemTreat's Objection to the Special Master's report distorts not only the Special Master's findings, but the very nature of the Special Master process, leading to a conclusion unsupported by the record or the report. ChemTreat asserts that "the entire process was for [Plaintiffs'] benefit," acting as though the Court's appointment of the Special Master was some kind of favor to Plaintiffs. (Doc. 415 at 1.) This attitude ignores that ChemTreat's own negligent spoliation of evidence and failure to conduct proper searches during discovery were a prime reason for the Special Master process.

ChemTreat's "spin" on the process—which, in reality, forced Plaintiffs to search in the dark for information obscured due to ChemTreat's negligence—portrays Plaintiffs' reasonable efforts to mitigate the effects of ChemTreat's spoliation as somehow nefarious. The Special Master's report, however, shows that Plaintiffs acted in good faith. The record also shows that Ecolab was within its rights to advocate for searches that it believed proportional to the needs of

the case—especially in light of ChemTreat's spoliation of the best sources of evidence. Still, ChemTreat opposed nearly every position Plaintiffs took in this process, no matter how objectively reasonable. In the end, the Special Master—who was closest to the process and spent hours with counsel—is best qualified to judge the propriety of either party's conduct. Although Plaintiffs believe that a proper allocation of the costs would be 50/50, reasonable minds can disagree on whether the Special Master's allocation of an additional five percent of the costs to Plaintiffs was necessary. But there is no basis in the Special Master's report or in the record for the lopsided, improperly punitive allocation that ChemTreat now proposes. ChemTreat's objection should be overruled.

**ChemTreat's Spoliation Created an Evidentiary Void That Put Plaintiffs at a Disadvantage.**

ChemTreat wishes to obscure the fact that it negligently destroyed one of the Plaintiffs' most critical repositories of discovery: Mr. Ridley's ChemTreat laptop. (Doc. 349 at 30) ("ChemTreat destroyed ESI that should have been preserved, that it failed to take reasonable steps to preserve the information on Ridley's ChemTreat laptop, that ESI cannot be restored or replaced through additional discovery, and…[Plaintiffs] ha[ve] been prejudiced as a result."). ChemTreat also ignores that it failed to collect and preserve repositories that it should have collected during the discovery process. (Doc. 413 at 29.)

It was thus only natural that ChemTreat—the party that actually possessed any remaining available evidence—was required to do "more work than Ecolab/Nalco" in trying to cure the effects of its own spoliation. (*See* Doc. 415 at 12). Plaintiffs, meanwhile, had the daunting task of determining how to proportionally search into the evidentiary black hole that ChemTreat's spoliation created. This process was made even more difficult by ChemTreat's persistent objections to searches that were simple, non-burdensome, and did not pose confidentiality risks—

2

Case 1:22-cv-00050-TRM-CHS   Document 417   Filed 12/08/23   Page 2 of 7   PageID #: 18037

forcing extensive argument before the Special Master. (*See e.g.*, August 30, 2023, SM. Tr.136:23 (refusing a simple hit search of the relevant and probative terms of "Nalco" and "Ecolab"); Nov. 8, 2023 SM. Tr. 14:8-15:25 (refusing to provide a non-burdensome but potentially relevant production of documents under "Attorneys' Eyes Only"); August 30, SM. Tr. 112:10-13 (refusing to search hard drives of custodians ***ChemTreat*** designated as potentially relevant).)

Despite ChemTreat's resistance, Plaintiffs tried to cooperate. For example, when the Special Master addressed the hard drives of 13 ChemTreat custodians—selected because ***ChemTreat itself identified them as potentially relevant***[1]—ChemTreat refused to provide Plaintiffs more information as to why ChemTreat designated those custodians as such. Instead, ChemTreat insisted that Plaintiffs provide further basis for searching those local hard drives, even though ChemTreat had already destroyed evidence from which Plaintiffs could have independently obtained such basis. Still, Plaintiffs explained—as best they could given the dearth of evidence available without Mr. Ridley's ChemTreat laptop—why certain custodians should be searched. (Doc. 416 at 5; *see* Doc. 413, Ex. 49.)

ChemTreat also created an evidentiary black hole by failing to preserve repositories that it admitted are potentially relevant. After being ordered by the Court to produce hard drives for 13 of its custodians, ChemTreat claimed—for the very first time (after months of discovery)—that it was powerless to produce information for ***eight of those repositories*** because those custodians used personal computers for their ChemTreat work (a practice that ChemTreat permitted).[2] (*See*

---

[1] *See* Doc. 143 (identifying those custodians as "ChemTreat employee[s] with whom Ridley may have interacted" at ChemTreat after Mr. Ridley left Ecolab).

[2] The fact that ChemTreat failed to image and preserve these computers makes it impossible to determine if these custodians, who all interacted with Ridley at ChemTreat, improperly received and/or used Nalco information.

Aug. 30, 2023, SM Tr. 109:17-2; Doc. 413, Ex. 31) In other words, ChemTreat designated these custodians as potentially relevant, but then admitted it did not preserve their information in discovery. This violated ChemTreat's discovery obligations and created additional spoilation if, as it now seems, ChemTreat did not preserve these drives until after the Court's August 10, 2023 hearing. But Plaintiffs still do not know when these drives were preserved, because ChemTreat refused to disclose this basic information about materials that ChemTreat conceded to be discoverable. All this further hampered Plaintiffs' efforts to mitigate ChemTreat's spoliation through the Special Master process, given that drives from more than half of the potentially relevant custodians were not searched. ChemTreat's Objection ignores this fact.

This background also undermines ChemTreat's mischaracterization of Plaintiffs' diligence in the Special Master process—an accusation unsupported by any of the Special Master's findings. Throughout the process, Plaintiffs tried accessing data that was either destroyed or obscured through ChemTreat's actions. Nevertheless, ChemTreat fought Plaintiffs' efforts to mitigate the damage (that ChemTreat had already caused), and further frustrated the process through positions like its refusal to produce most of the 13 ChemTreat repositories. In other words, Plaintiffs were shooting in the dark and ChemTreat was moving the target. For example, it was difficult for Plaintiffs to identify a detailed basis to search certain custodians because ChemTreat refused to provide more information as to why *ChemTreat* designated those custodians as "potentially relevant." (Doc. 413, Ex. 49). ("[W]e respectfully request that ChemTreat provide information as to why it selected the custodians in issue. Only ChemTreat has possession of this information, and there is no reason for ChemTreat to refuse to disclose why it selected specific custodians. At minimum, this should be part of any cooperative process involving ESI.") This is an example of why the Special Master may have determined that Plaintiffs were "sometimes slower" to produce

information.  (Doc. 413 at 30.)  Yet nothing in the Special Master's report or the record justifies ChemTreat's accusation that Plaintiffs somehow acted in bad faith or intentionally slowed down the process.

\* \* \*

Plaintiffs' efforts in the Special Master process—indeed, the entire process—were necessary because ChemTreat and Mr. Ridley destroyed the most relevant evidence to support Plaintiffs' claims.[3]  Now, ChemTreat suggests that Plaintiff must pay nearly all the costs for trying to alleviate a problem that Defendants caused.  The Special Master already considered the same arguments that ChemTreat now makes about Plaintiffs' conduct during the process, and rejected them by issuing his cost allocation of 55% to Plaintiffs and 45% to ChemTreat.  While Plaintiffs maintain that a more appropriate split is 50/50, the record supports no greater allocation of costs to Plaintiffs.  ChemTreat's objection should be overruled.

---

[3] ChemTreat's argument about apportionment also ignores that a tremendous amount of the Special Master's time was spent examining the devices of Mr. Ridley and accounting for the fact that Mr. Ridley kept changing stories about which computers he used to wipe the WD drive that contained information that he took from Ecolab. (413, Ex. 39) ChemTreat does not dispute that this work was necessary and appropriate, yet it now seems to claim that Plaintiffs should pay for nearly all the work made necessary by the misconduct of ChemTreat's former employee and co-defendant, Mr. Ridley.  Plaintiffs understand the Court's reluctance to apportion Special Master fees to Mr. Ridley given his financial circumstances, but that does not justify ChemTreat's attempt to shift nearly all the costs of the process onto Plaintiffs.

DATED: December 8, 2023					Respectfully submitted,

									ECOLAB INC. and NALCO COMPANY, LLC

					By:		s/ *Edward N. Boehm, Jr.*
							Edward N. Boehm, Jr. (TN BPR#025275)
							FISHER & PHILLIPS LLP
							1715 Aaron Brenner Drive, Suite 312
							Memphis, Tennessee 38120
							Telephone: 404.240.4286
							tboem@fisherphillips.com

							Randall E. Kahnke
							randall.kahnke@faegredrinker.com
							(*pro hac vice*)
							Martin S. Chester
							martin.chester@faegredrinker.com
							(*pro hac vice*)
							FAEGRE DRINKER BIDDLE & REATH LLP
							90 South 7th Street, UNIT 2200
							Minneapolis, Minnesota 55402
							Telephone: 612.766.7000

							Emmanuel L. Brown
							(*pro hac vice*)
							FAEGRE DRINKER BIDDLE & REATH LLP
							One Logan Square, Suite #2000
							Philadelphia, Pennsylvania 19103
							Telephone: 215.988.2637
							emmanuel.brown@faegredrinker.com

							David Yoshimura
							(*pro hac vice*)
							FAEGRE DRINKER BIDDLE & REATH LLP
							801 Grand Ave, Suite #3100
							Des Moines, Iowa 50309
							Telephone: 515.447.4738
							david.yoshimura@faegredrinker.com

							*COUNSEL FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

/s *Edward N. Boehm, Jr.*
Edward N. Boehm, Jr.