UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ECOLAB INC. and NALCO COMPANY, LLC d/b/a NALCO WATER, AN ECOLAB COMPANY and/or NALCO WATER,<br><br>    *Plaintiffs*,<br><br>v.<br><br>ANTHONY RIDLEY and CHEMTREAT, INC.<br><br>    *Defendants*. | Case No. 1:22-cv-50<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Susan K. Lee |

**ORDER**

On August 1, 2023, the Court entered a memorandum and order finding that Plaintiffs Ecolab, Inc., and Nalco Company, LLC (collectively "Ecolab/Nalco"), as well as Defendants Anthony Ridley and ChemTreat, Inc. ("ChemTreat"), spoliated evidence in this case. (Doc. 349.) As a sanction for the parties' spoliation, the Court appointed Clinton P. Sanko of the law firm Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson") as Special Master in this case pursuant to Federal Rule of Civil Procedure 53. (Doc. 361.) The Court appointed the Special Master to oversee a limited reopening of discovery to mitigate the prejudice caused by the parties' spoliation. (*Id*.) As set forth in detail in the order appointing the Special Master, the Court ordered, among other things, that the Special Master develop search protocols for searching certain devices and data repositories, guided by the Court's rulings on the parties' cross-motions for spoliation sanctions and Federal Rule of Civil Procedure 26(b)(1)'s instruction that discovery should be "proportional to the needs of the case." (*Id*. at 4.) The Court

further ordered that "the Special Master retains the ultimate discretion to determine whether to search a data source and what search protocols will be used." (*Id*.)  As it related to the Special Master's compensation, the Court noted that it "anticipate[d] initially apportioning the costs of the Special Master equally between Ecolab/Nalco and ChemTreat," but that it could ultimately "reapportion[ ] the costs based on the results of the Special Master's work, the ultimate necessity or productivity of the parties' requests for the Special Master to conduct searches or other action, and the reasonableness of the parties' conduct in working with the Special Master to produce, review, and analyze the electronically stored information and data repositories . . . ." (*Id*. at 7.)

On November 17, 2023, the Special Master filed his report.  (Doc. 413.)  As detailed in his report, the Special Master found, among other things, that:  (1) Defendant Anthony Ridley's wife's computer was used to access information in August 2021 and September 2021 from the WD Drive; (2) forensic analysis of Ridley's iPad did not reveal any files of relevance; (3) no responsive information was found in searching the hard drives for Clay Cissell, Tyler Bates, and Steve Leavell; (4) no evidence of problematic deletion was found on the hard drives for Clay Cissell, Tyler Bates, and Steve Leavell, and their hard drives did not contain any identifiable traces of Ecolab or Nalco confidential documents; (5) a search of Clay Cissell, Tyler Bates, and Steve Leavell's e-mails containing the terms "Ecolab" or "Nalco" did not reveal "content probative to the issues in this case"; (6) text messages sent from Ridley's iPad "do not appear probative of Ridley transferring Ecolab/Nalco information to ChemTreat"; (7) review of user data from Ridley and ChemTreat devices using a variety of searching, sampling and other review strategies, did not reveal any responsive documents; (8) "[n]o evidence was found showing that Ridley transferred Ecolab/Nalco files to ChemTreat on ChemTreat computers that were

2

reviewed; and (9) review of network file shares did not reveal any responsive documents.[1] (*See generally id.*)

The Special Master's report also included his recommendation as to allocation of costs. Ultimately, the Special Master recommended that Ecolab/Nalco be allocated fifty-five percent of the total costs and that ChemTreat be allocated forty-five percent of the total costs. (*Id.* at 28–30.) In support of this proposed allocation, the Special Master noted, among other things, that: (1) both parties spoliated evidence; (2) searching ChemTreat devices and data repositories "resulted in no evidence of any transferred Ecolab/Nalco information; (3) Ecolab/Nalco argued for the "most comprehensive" analysis leading to the Special Master "adopting a more comprehensive approach with no results"; (4) counsel for Ecolab/Nalco consistently requested that the Special Master "leave no stone unturned"; (5) ChemTreat was tasked with doing more work and was "very responsive and made the work able to proceed very efficient[ly]; and (6) Ecolab/Nalco was slower in responding to the Special Master's requests for information. (*Id.*)

After the Special Master filed his report, the parties filed objections. (Docs. 415, 416.) Ecolab/Nalco objected, arguing that the Special Master failed to comply with the Court's order by not requiring ChemTreat to produce the hard drives for thirteen ChemTreat custodians and that the Special Master should have searched all of the hard drives for these custodians to prevent prejudice caused by ChemTreat's spoliation.[2] (Doc. 416, at 2–6.) Ecolab/Nalco also objected to the Special Master's proposed cost allocation, arguing that Ecolab/Nalco and Chemtreat should each be responsible for fifty percent of the incurred costs. (*Id.* at 6–7.) Conversely, ChemTreat

---

[1] A review of the network file shares did reveal one issue that the Special Master brought to the parties' attention. After presenting the issue to the parties, "Ecolab was unable to make a reasonable connection" to issues related to this case. (*Id.* at 27–28.)

[2] Ecolab/Nalco did not object to the search terms used or search methodology employed by the Special Master as it relates to devices and data repositories the Special Master searched.

objected, arguing that the Special Master's proposed allocation of costs was inequitable given his findings during the limited reopening of discovery and that it should only be required to pay ten percent of the costs incurred. (*See generally* Doc. 415.)

Regardless of what language the Court used in defining the scope of the Special Master's duties related to the collection of devices and data repositories, the Court's order was clear that the Special Master was to develop search protocols guided, in part, by Federal Rule of Civil Procedure 26(b)(1)'s instruction that discovery should be "proportional to the needs of the case." (Doc. 361, at 4.) The Court further explained that the Special Master retained "the ultimate discretion to determine whether to search a data source and what search protocols will be used." (*Id.*) Given these instructions, combined with the fact that the Special Master found nothing responsive in his searches of Clay Cissell, Tyler Bates, and Steve Leavell's information, the Special Master did not err in not requiring ChemTreat to produce additional hard drives or in electing not to search those data sources. To the contrary, the Special Master followed the Court's directive and used his discretion to conduct discovery that was proportional to the needs of this case and confirmed that the sound and fury of Ecolab/Nalco's assertions about this dispute do not square with the evidence. The Special Master took reasonable steps to allow Ecolab/Nalco to substantiate its view of the case. But the Federal Rules of Civil Procedure do not require the Special Master—or the Court—to continue to endorse Ecolab/Nalco's demands for more, no matter the cost and no matter how many times its searches come up empty. Accordingly, Ecolab/Nalco's objections the Special Master's report are **OVERRULED** to the extent they contend that the Special Master should have collected and searched additional data sources.

As it relates to allocation of costs, Federal Rule of Civil Procedure 53(g)(3) provides that "[t]he court must allocate payment among the parties after considering the nature and amount in controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." In this case, neither the amount in controversy nor the parties' means bears significantly on the Court's allocation of costs. The amount in controversy is unclear,[3] and both Ecolab/Nalco and ChemTreat are large corporations with significant resources.[4] Assessing the parties' relative responsibility for the reference to the Special Master is slightly more complicated. ChemTreat bears responsibility because its spoliation made it more difficult to conduct discovery regarding whether Ridley misappropriated Ecolab/Nalco's trade secrets and, if so, to what extent ChemTreat appreciated Ridley's actions. Those considerations, however, must be weighed against Ecolab/Nalco's insistence that the Court and the Special Master leave "no stone unturned." (Doc. 413, at 30.) While some level of skepticism may have initially been justified, Ecolab/Nalco urged the Special Master to undertake the "most comprehensive" analysis, which ultimately led to the Special Master "adopting a more comprehensive approach with no results." (*Id*.) Even with the Special Master's "more comprehensive approach" yielding no results, and even with the Court's warning that it may reapportion the costs based on the results of the Special Master's work, the productivity of the parties' requests, and the reasonableness of the parties' conduct in working with the Special

---

[3] Ecolab/Nalco disclosed a damages expert whose report indicated that damages were somewhere between $0 and $158 million. (Doc. 275-3.) The Court, however, granted ChemTreat's motion to exclude Ecolab/Nalco's damages expert under Federal Rule of Evidence 702, finding that her methodology was unreliable, unhelpful to the jury, and did not fit the facts of the case. (Doc. 353, at 25–41.)

[4] As the Special Master noted in his report, "Ecolab and ChemTreat have much greater means than Mr. Ridley," and he is "not sitting on a pile of money." These considerations weigh against allocating costs and fees incurred by the Special Master on Ridley.

Master, Ecolab/Nalco continues to insist that more devices and data repositories need to be searched. As a result, Ecolab/Nalco also bears responsibility for the scope of work undertaken by the Special Master and the costs incurred in performing that work.

Accordingly, the Court **OVERRULES** ChemTreat's objection to the Special Master's report (Doc. 415) and **OVERRULES** Ecolab/Nalco's objection to the Special Master's proposed allocation of costs (Doc. 416). Consistent with the Court's order entered on August 23, 2023, the Special Master has provided the Court with itemized statements of fees and expenses incurred totaling $317,798.56,[5] which the Court has reviewed for reasonableness. The Court finds that the Special Master's fees and expenses are reasonable. The Special Master's fees and expenses are **APPROVED FOR PAYMENT**, with Ecolab/Nalco apportioned fifty-five percent of the Special Master's total fees and costs and ChemTreat apportioned forty-five percent of the Special Master's total fees and costs.[6] The parties **SHALL** remit payment as directed by the Special Master within twenty days of the date of this order.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[5] This amount reflects the total fees and costs incurred inclusive of the Special Master's first itemized statement of fees and costs totaling $75,056.68 (*see* Doc. 385).

[6] The Court initially apportioned the fees and expenses of the Special Master's first itemized statement of fees and costs equally between Ecolab/Nalco and ChemTreat. (Doc. 385.) This order amends the Court's prior order to the extent that the Court is apportioning fifty-five percent of the Special Master's total fees and costs to Ecolab/Nalco and forty-five percent of the Special Master's total fees and costs to ChemTreat.