UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY RIDLEY, and CHEMTREAT, INC.,<br><br>    Defendants. | Case No. 1:22-cv-00050-TRM-SKL<br><br>Hon. Travis McDonough<br><br>Magistrate Judge Susan K. Lee |

**PLAINTIFFS' TRIAL BRIEF**

Plaintiffs Ecolab Inc. and Nalco Company, LLC d/b/a Nalco Water (collectively "Plaintiffs"), submit the following trial brief, which briefly sets forth Plaintiffs' position on anticipated evidentiary and legal issues at trial.

**I.  Evidentiary Issues**

The Parties have engaged in extensive motion practice disputing various evidentiary issues presented in this case, and Plaintiffs' positions on each respective issue are outlined in their briefing. *See* Doc. Nos., 373, 374, 399, 405. For purposes of this Trial Brief, Plaintiffs briefly summarize the outstanding evidentiary issues.

    **A.  Size and Resources of the Parties**

Plaintiffs have moved to exclude evidence relating to the Parties' relative sizes and financial resources because such evidence is irrelevant in a case such as this and therefore inadmissible under the Federal Rules of Evidence. *See* Doc. No. 374 at 2–6. Similarly, Defendant ChemTreat, Inc. has moved to exclude evidence relating to its corporate structure and financial

status. *See* Doc. No. 376 at 13–14. With respect to ChemTreat's motion *in limine*, Plaintiffs agree that such evidence regarding its size and financial status may not be used to prove liability.[1] As evidence of both ChemTreat's *and* Plaintiffs' financial statuses is irrelevant, the Court should grant Plaintiffs' motion to exclude evidence of Plaintiffs' size and resources.

### B. Ridley's Counterclaim

Plaintiffs have also moved to exclude evidence relating to Defendant Anthony Ridley's Counterclaim asserting attorneys' fees under the DTSA or TUTSA. *See* Doc. No. 374 at 6. As set forth in Plaintiffs' pending dispositive motion, Ridley cannot establish his claim for attorneys' fees as a matter of law, and his request is otherwise procedurally improper. *See* Doc. No. 264 at 14–16. Plaintiffs have also demanded pursuant to Rule 11 of the Federal Rules of Civil Procedure that Ridley withdraw this claim, and Plaintiffs reserve their rights in this regard. Because the counterclaim cannot proceed, the Court should exclude any evidence presented in support of Ridley's Counterclaim at trial.

### C. Evidence of Plaintiffs' Trade Secrets and Damages

For the reasons set forth below, Plaintiffs are entitled to an adverse inference instruction permitting the jury to infer that Ridley's ChemTreat laptop, which was spoliated by ChemTreat, contained evidence of misappropriation. In light thereof, Plaintiffs have moved to exclude Defendants from presenting evidence or argument to the effect that there is no evidence to show acquisition or use of trade secrets. *See* Doc. No. 374 at 6–10. To allow otherwise would permit ChemTreat to benefit from its wrongful spoliation. In contrast, ChemTreat seeks to exclude lay testimony and other foundational evidence regarding Plaintiffs' trade secrets that ChemTreat

---

[1] Plaintiffs agree that this evidence is improper for purposes of liability but reserve the right to present such evidence as appropriate for impeachment and/or rebuttal purposes, or as relevant to support Plaintiffs' claim for punitive damages.

argues should have been produced or disclosed in more detail—but about which Plaintiffs ***could not give more specificity because of Defendants' spoliation***. *See* Doc. No. 376 at 3–7, 16–17. In light of ChemTreat's spoliation of key evidence, the Court should deny ChemTreat's motion, grant Plaintiffs' motion, and allow Plaintiffs to present evidence at trial—including from lay witnesses—regarding Defendants' acquisition or use of Plaintiffs' trade secrets.

### D. Data Loss Prevention Report

Ridley has moved to exclude Plaintiffs' Digital Guardian Loss Prevention report ("DLP Report") because Plaintiffs have not produced every single one of the documents referenced in the DLP Report—even though doing so is impossible because Defendants deleted those documents. Relatedly, ChemTreat seeks to exclude the DLP Report by claiming that deposition testimony does not sufficiently authenticate the Report. Plaintiffs may, however, authenticate the DLP Report at trial. The Court should deny Defendants' effort to exclude the DLP Report, which is crucial, admissible evidence regarding Ridley's misconduct in deleting swaths of documents.

### E. Solicitation, Recruitment, or Hiring of Other Employees

ChemTreat seeks to exclude evidence at trial concerning ChemTreat's solicitation, recruitment, and hiring of other Nalco employees. Doc. No. 376 at 11–13. Because ChemTreat's hiring activities are admissible to prove its knowledge and intent with respect to Plaintiffs' tortious interference claim or could be used for impeachment or rebuttal purposes at trial, the Court should deny ChemTreat's motion.

### F. Use of Specified Terms

ChemTreat has moved to preclude Plaintiffs—whether counsel or fact witnesses—from using certain words that ChemTreat deems "pejorative," or to elicit testimony from Ecolab witnesses that describes the facts as "misappropriation." *See* Doc. No. 376 at 14–15. ChemTreat argues that this is simply an effort to exclude legal opinion testimony; however, lay legal opinion

testimony is already precluded by the Rules of Evidence, and Plaintiffs have represented to the Court they will not elicit such evidence at trial. In reality, ChemTreat's motion is an attempt to improperly limit the use of certain words it unilaterally and subjectively characterizes as "pejorative." As Plaintiffs have discussed in their response to Defendants' motions *in limine*, this is improper because it unfairly constrains Plaintiffs and their counsel from advocating and prosecuting Plaintiffs' claims. The Court should deny this motion.

### G. Injunctive Relief

ChemTreat seeks to preclude Plaintiffs from arguing for or referring to Plaintiffs' request for injunctive relief at trial. *See* Doc. No. 376 at 15–16. This request would exclude relevant evidence that the Court is entitled to hear to decide whether a permanent injunction is warranted to prevent Ridley and ChemTreat from using Plaintiffs' trade secrets. ChemTreat's motion should be denied.

### H. Plaintiffs' Forensic Computer Expert

Defendants have moved to exclude the expert report and any accompanying documents of Plaintiffs' expert, Laurence Lieb. Doc. No. 372 at 2–4; 376 at 17–19. ChemTreat further seeks to exclude any expert reports, disclosures, opinions, and declarations that it—unilaterally and incorrectly—declares are untimely. Doc. No. 376 at 19–20. These materials were provided to ChemTreat well before the close of discovery. The fact that the documents at issue were later attached to a supplemental declaration in response to developments that occurred in discovery does not make them untimely. Furthermore, Defendants have had ample time and opportunity to prepare for his testimony at trial. Indeed, they have deposed Lieb no less than three times total: *twice* after the documents at issue were attached to the Lieb declaration. Defendants' most recent deposition of Lieb took place just a few short weeks ago, on November 29, 2023—two months *after* their motions *in limine*. Defendants' many opportunities to develop the record on these issues forecloses

their request to exclude this evidence. The Court should deny Defendants' motions to exclude Lieb's expert report and attachments.

## I.     Plaintiffs' Damages

Ridley has moved to exclude evidence relating to Plaintiffs' damages, including damages for Plaintiffs' claims against Ridley for breach of fiduciary duty of loyalty and civil conspiracy. *See* Doc. No. 372 at 10–15. Additionally, both Ridley and ChemTreat moved to exclude evidence of Plaintiffs' attorneys' fees. *See* Doc. Nos. 372 at 10–12; 376 at 7–11. Because Plaintiffs' initial disclosures directly contradict the assertions in Defendants' motions, and because Plaintiffs' damages are relevant to the claims at issue, the Court should deny these motions *in limine*.

## J.     Spoliation and Discovery Compliance

ChemTreat seeks to exclude evidence or argument that it spoliated Ridley's ChemTreat-issued laptop and otherwise failed to comply with discovery obligations. *See* Doc. No. 376 at 22–25. The Court has already determined that ChemTreat "was negligent in failing to preserve the ESI on Ridley's laptop." Doc. No. 349 at 30. As discussed more fully below, Plaintiffs are entitled to adverse inference instructions against Ridley and ChemTreat because they destroyed evidence, and Plaintiffs reserve all rights to provide evidence in accordance with the Court's ruling that ChemTreat "destroyed ESI that should have been preserved, that [ChemTreat] failed to take reasonable steps to preserve the information on Ridley's laptop, that ESI cannot be restored or replaced through additional discovery, and that [Plaintiffs ha[ve] been prejudiced as a result." *Id.* With respect to introducing evidence regarding ChemTreat's compliance with its discovery obligations, the relevant text messages, sufficiency of ChemTreat's document production, and preservation of Plaintiffs' documents are highly probative of factual questions bearing upon the jury's right to draw appropriate inferences. The Court should therefore deny ChemTreat's motion.

5

### K. Parties' Exhibits List and Objections

Contemporaneously with this brief, the Parties jointly submit to the Court the list of potential trial exhibits with their anticipated objections. The consolidated list reflects the Parties' successful efforts to resolve authenticity objections as to a number of documents in advance of trial, and Plaintiffs remain open to discussions with the Parties in advance of trial to seek resolution of outstanding authenticity objections. However, even as to exhibits for which the Parties have stipulated or will stipulate to authenticity, Plaintiffs reserve all other objections to admissibility during trial as may be proper in the circumstances of the exhibit's offering, including, but not limited to, objections based on lack of foundation, hearsay, relevance, and lack of probative value.

## II. Legal Issues

The contested issues of law are set forth in various motions pending before the Court, including each party's dispositive motions, motions *in limine*, and responses thereto. *See* Doc. Nos. 256, 258, 264, 371–76. In this Trial Brief, Plaintiffs focus on the important issue of their entitlement to adverse inference instructions for spoliation by Ridley and ChemTreat.

### A. Plaintiffs Are Entitled to Adverse Inference Instructions for Spoliation by ChemTreat Under Rule 37(e)(1) and by Ridley Under Rule 37(e)(2).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 465 (M.D. Tenn. 2018) (citing *Clark Constr. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005)). Spoliation occurs when a party destroys evidence "that is presumed to be unfavorable to the party responsible for the destruction." *Id.* (citing *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 1542040, at *10 (M.D. Tenn. Mar. 29, 2018) ("*EPAC I*"); *see also United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003).

Rule 37 prescribes remedies for spoliation of ESI:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court[,] upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to **cure the prejudice**.

Fed. R. Civ. P. 37(e)(1) (emphasis added). The Court has already found that ChemTreat failed to take reasonable steps to preserve key evidence and that Plaintiffs have been prejudiced by the loss of the information. *See* Doc. No. 349 at 29. Pursuant to Rule 37(e)(1), therefore, the Court may take steps necessary to "cure the prejudice." *Id.*

Furthermore, if "the court finds that the party acted *with the intent to deprive another party of the information's use* in the litigation, it may: (1) presume that the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment." *Billiter*, 329 F. Supp. 3d at 465 (emphasis added) (citing Fed. R. Civ. P. 37(e)(2)).

Whether the Defendants deprived Plaintiffs of the key spoliated evidence negligently—as did ChemTreat—or intentionally—as did Ridley, the Court now has "broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc). For the Court to impose spoliation sanctions as a result of Defendants' destruction of evidence, the Court must find:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quotations omitted). In light of the Court's previous rulings, these elements are satisfied as to each Defendant as a matter of law. *See* Doc. No. 349 at 28–32.

*First*, it has been established that Ridley and ChemTreat had duties to preserve the data at the time it was destroyed. The rule "does not create a duty to preserve ESI" but rather "recognizes the common-law duty to preserve relevant information when litigation is reasonably foreseeable." *EPAC I*, 2018 WL 1542040, at *12. A party's duty to preserve evidence is triggered by an event that places the party on "notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citations omitted); *see also United States v. Florence*, No. 2:13-cv-00035, 2020 WL 1047377, at *4 (M.D. Tenn. Mar. 4, 2020) ("While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action . . . ."). While such notice is often accomplished through a "litigation hold" from the other party, the duty attaches "independent of whether [the opposing party] requested a litigation hold." *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2008 WL 1902499, at *3 (S.D. Ohio Apr. 28, 2008).

*Second*, it has been established that Ridley and ChemTreat destroyed evidence with the requisite culpable state of mind. For Ridley, the state of mind is intent at worst, or negligence at least. For ChemTreat, the Court has already held that it was negligent—and the Sixth Circuit has held that if a party destroys evidence "negligently," that satisfies the culpable-state-of-mind requirement. *Beaven*, 622 F.3d at 553 ("The 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or *negligently*." (emphasis in original) (cleaned up)); *see Billiter*, 239 F. Supp. 3d at

468. As a result, ChemTreat's negligent spoliation and Ridley's intentional spoliation satisfy this element as a matter of law. *See* Doc. No. 349 at 28–32.

*Third*, the evidence that Ridley and ChemTreat destroyed goes to the heart of Ecolab's claims and is highly relevant. Demonstrating that the destroyed evidence in this case is relevant requires a showing that "the evidence would have been relevant to a contested issue . . . such that a reasonable trier of fact could find that it would support [Plaintiffs'] claim." *Byrd v. Alpha Alliance Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013). In this case, the evidence that Ridley and ChemTreat destroyed goes to the heart of this case: *i.e.*, what Ridley did with the documents he took, and with whom he shared them.

As to Ridley, the Court has already determined that Ridley was under an obligation to preserve ESI when Ecolab issued its preservation letter to him on February 9, 2022. *See* Doc No. 349 at 32. Although Ridley testified that he thought Ecolab's preservation letter was a "joke," the Court has already concluded that "no reasonable person would immediately delete ESI after receiving a letter expressly explaining preservation obligations." *Id.* The record shows that Ridley permanently deleted ESI from multiple sources beyond recovery—in ways that the Special Master was not able to address because nothing was left to examine. This conduct severely prejudiced Ecolab.

As to ChemTreat, the Court has already held that ChemTreat's efforts to preserve ESI from Ridley's ChemTreat-issued laptop fell unreasonably short of guarding against the loss of data. *See* Doc No. 349 at 28–29. Although ChemTreat instructed Ridley to return his laptop to company headquarters and to address the package to in-house counsel, ChemTreat failed to take reasonable measures to preserve the laptop thereafter. Specifically, even though the package containing Ridley's laptop was expressly addressed to ChemTreat's in-house counsel, a ChemTreat employee

9

decided to deliver the package to the IT department. *Id.* at 9–10. And when the computer addressed to ChemTreat's General Counsel reached ChemTreat's IT department, ChemTreat's IT personnel did not return it to its clear addressee, nor did they even contact the General Counsel's office to ask about the laptop. *Id.* Instead, ChemTreat's IT department simply wiped Ridley's laptop and prepared it for another user. *Id.* The Parties do not dispute that after Ridley started working at ChemTreat, he used his ChemTreat computer to access documents that he had copied and taken from Ecolab/Nalco. But Because ChemTreat destroyed the evidence on Ridley's laptop, Ecolab has been unable to determine what Ridley did with that information, to whom he disseminated it, and other evidence of misappropriation. The Special Master had access to none of this information *because it was deleted*. As revealed through the Special Master proceedings, the only information that the Special Master had available to review was several steps away from Ridley's now-deleted laptop, and therefore even a robust process would not have been able to cure the prejudice that Ecolab has suffered due to ChemTreat's negligent, legally "culpable" spoliation. *Beaven*, 622 F.3d at 553. Sanctions are therefore warranted to "cure the prejudice." Fed. R. Civ. P. 37(e)(1).

Based on these facts and under the Court's prior ruling, Plaintiffs have shown that sanctions are proper to cure the prejudice caused by Defendants' spoliation. *See* Doc. No. 349 at 28–32. The initial sanction—the reopening of discovery and appointment of a Special Master—did not "cure the prejudice" as contemplated by Rule 37. Therefore, Plaintiffs now seek sanctions at trial that are necessary to truly cure the prejudice that Plaintiffs have suffered.

### B. Permissive Adverse Inference Jury Instructions Are the Proper Sanctions for Defendants' Spoliation Under These Circumstances of the Case

An adverse inference for evidence of spoliation is appropriate if Defendants "knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction." *Beaven*, 622 F.3d at 553 (quotation omitted). That is precisely the case here.

As to Ridley, his spoliation conduct satisfies the intentional spoliation provisions of Rule 37(e)(2), and as a result, an adverse inference jury instruction is appropriate. *EPAC Techs., Inc. v. Harpercollins Christian Publishing, Inc.*, No. 3:12-cv-00463, 2019 WL 109371, at *15 (M.D. Tenn. Jan. 4, 2019) (citing Fed. R. Civ. P. 37(e)(2)).

As to ChemTreat, its negligent spoliation calls for sanctions sufficient to cure the prejudice under Rule 37(e)(1). At this stage in the proceedings, a permissive adverse inference jury instruction is the minimum measure "necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

The Court should include jury instructions permitting the jury, in its own judgment, to infer that the spoliated evidence contained evidence in support of Plaintiffs' claim, including inferences of misappropriation, breach of duties, or interference as against both ChemTreat and Ridley.

To be clear, Plaintiffs do *not* seek a mandatory jury instruction directing the jurors that they *must* infer the spoliated evidence would support Plaintiffs' position. They merely seek a permissive jury instruction that will *allow* the jurors—in their own judgment—to draw inferences from evidence presented at trial of the circumstances surrounding the spoliation of this key evidence. Thereby, Plaintiffs seek only those "measures *no greater than necessary to cure the prejudice.*" *Id.* (emphasis added).

Together with the proposed curative permissive jury instruction, the Court should permit Plaintiffs to present evidence at trial of the nature of and circumstances surrounding the spoliated materials. Without such evidence, the jury instruction would be illusory and would provide the jury no basis on which to determine whether to apply an inference in its own judgment.

In sum, therefore, the Court should order (1) that the prejudice visited on Plaintiffs flowing from Defendants' spoliation—which has already been definitively established in this case—requires a further curative sanction; (2) that the jury shall be instructed that they are permitted to

make an adverse inference in Plaintiffs' favor as a result of the spoliation; and (3) that Plaintiffs may present evidence of the spoliation at trial to ensure the jury has a proper foundation upon which to determine whether to make such an inference.

DATED: December 18, 2023

Respectfully submitted,

ECOLAB INC. NALCO COMPANY, LLC
d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

By: */s/ David Yoshimura*
Edward N. Boehm, Jr. (TN BPR#025275)
FISHER & PHILLIPS LLP
1230 Peachtree Street NE
Suite 3300
Atlanta, Georgia 30309
Telephone: 404.240.4286
Fax: 404.240.4249
*tboehm@fisherphillips.com*

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
*dwalton@fisherphillips.com*

Randall E. Kahnke
Martin S. Chester
Kacie Phillips Tawfic
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
90 South 7th Street, Unit 2200
Minneapolis, Minnesota 55402
Telephone: 612.766.7658
*randall.kahnke@faegredrinker.com*
*martin.chester@faegredrinker.com*
*kacie.tawfic@faegredrinker.com*

Emmanuel L. Brown
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite #2000
Philadelphia, Pennsylvania 19103
Telephone: 215.988.2637
*emmanuel.brown@faegredrinker.com*

David Yoshimura
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave, 33rd Floor
Des Moines, Iowa 50309
Telephone: 515.447.4738
*david.yoshimura@faegredrinker.com*

Sophie Gotlieb
(*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street
Chicago, Illinois 60606
Telephone: 312.569.1000
*sophie.gotlieb@faegredrinker.com*

*COUNSEL FOR PLAINTIFFS*

# CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

                                  */s/ David Yoshimura*
                                  David Yoshimura