United States District Court
Eastern District of Tennessee
At Chattanooga

Ecolab, Inc. and Nalco Company, LLC d/b/a
Nalco Water, an Ecolab Company and/or
Nalco Water

      Plaintiffs

      v.

Anthony Ridley and ChemTreat

      Defendants

No. 1:22-CV-00050

TRM-SKL

## Anthony Ridley's Trial Brief

### 1. Summary of Facts.

After legitimate market competition attempts failed to stem Nalco/Ecolab's loss of market share and employees to ChemTreat, Nalco/Ecolab shifted focus from legitimate market competition to illegitimate courtroom tactics. The shift in tactics was designed to stifle ChemTreat's growth and to intimidate and harass employees who left Nalco/Ecolab for the greener pastures of ChemTreat and to discourage other Nalco/Ecolab employees from following suit.

Ridley, among many other former Nalco/Ecolab employees, has been caught in the crossfire. Not only are Ridley and the other former Nalco/Ecolab employees collateral damage in the struggle between water treatment titans but Nalco/Ecolab deploy scorched earth litigation tactics. They relentlessly and ruthlessly prosecute these lawsuits to hurt, punish, and ruin their former employees and stifle competition and the hemorrhaging of employees to a competitor. Their aim has nothing to do with the merits of the case, which are immaterial

to them, and everything to do with causing as widespread of wreckage as can be caused by whatever means can be deployed.

Here, Nalco/Ecolab accepted Ridley's resignation the same day he gave it on July 1, 2021. They immediately involved legal counsel and IT professionals to guide them to review Ridley's computer activity and to set a course for litigation with Ridley and "the competition" – ChemTreat – as that was Nalco/Ecolab's game all along. But they did not put a litigation hold in place until January 2022.

While Ridley sought direction from Nalco/Ecolab on how to comply with the requirements of Nalco/Ecolab upon his exit from HR, he was largely ignored and was provided few instructions all while Nalco/Ecolab plotted this lawsuit. For instance, he was never instructed to make a search for any Nalco/Ecolab documents in his possession or stored on electronic devices and to return them. He instead followed the few instructions he was provided, which led to him returning his Nalco/Ecolab issued laptop and LaCie hard drive exactly how he was instructed to return these devices in the summer of 2021.

Despite the involvement of legal and IT professionals for Nalco/Ecolab in July 2021, no one put a hold on Nalco/Ecolab's computer data to preserve it for this lawsuit. So, despite Nalco/Ecolab's ability to preserve all the information, it was deleted and lost beyond retrieval. This was pivotal evidence, and Nalco/Ecolab knew it was deleted before they filed suit, but they filed suit just the same.

Despite the involvement of legal and IT professionals for Nalco/Ecolab in July 2021, no one put a hold on the Nalco/Ecolab laptop and LaCie hard drive Ridley returned as instructed to preserve it for this lawsuit. So, despite the ability to preserve all information, the devices were either wiped and redeployed or lost beyond retrieval. This was pivotal

evidence, and Nalco/Ecolab knew the devices were wiped or lost before filing suit, but they filed suit just the same.

Nalco/Ecolab also knew they had not suffered any harm as the result of any actions or inactions by Ridley and/or ChemTreat before they filed suit. But they filed suit just the same.

Not only did they file suit after they destroyed and/or lost the pivotal evidence and despite their knowledge they were not harmed, but they alleged they had actually been directly damaged by the loss of customers to ChemTreat by reason of alleged misconduct by Ridley and by ChemTreat in four (4) separate complaints. They went so far as to swear under oath that this was true in discovery, but that too was false.

Because of their misconduct and the lack of merits to their claims, Nalco/Ecolab have been forced to make more and more outrageous accusations against Ridley and ChemTreat as they try to make unrelated threads weave into something coherent to salvage their lawsuit. The loudly screeched allegations often have no truth to them, and those that have some truth to them are exaggerated and stretched so far that there is no resemblance to the truth when they are done with what was once partially true. And all of this is done to distract from Nalco/Ecolab's misconduct and the lack of merits to their claims in the cynical hope that if they say it enough times and if they say it loud enough over and over and over and again that maybe, just maybe, the Court or the jury will take their eye off the ball and start to believe the elaborate fiction and ignore the actual evidence.

But after all of the accusations fall by the wayside and the cacophony of the stream of consciousness allegations soften, or at least fade into the background, what is left is this: Nalco/Ecolab have no evidence to support any of their claims. First, they cannot prove that

any of the information or documents Ridley allegedly took are trade secrets under the Defend Trade Secrets Act ("DTSA") and/or Tennessee Uniform Trade Secrets Act ("TUTSA"). Second, they cannot prove disclosure, use, or acquisition by improper means of any alleged trade secrets by Ridley or ChemTreat as required under the DTSA or TUTSA. Third, Nalco/Ecolab lack a viable damages theory to support any claim for relief, including those under the DTSA and TUTSA. Fourth, they failed to properly plead a claim for attorney's fees or litigation expenses under any legal theory, and the documentary evidence they have provided to support such claims is inadmissible. Fifth, their breach of duty of loyalty claim is preempted by the DTSA and TUTSA. Sixth, even if not preempted, there is no proof of a breach of duty of loyalty. Seventh, Nalco/Ecolab cannot establish a breach of contract claim against Ridley.

After Nalco/Ecolab's paucity of proof is examined under the crucible of trial, it will be revealed that all they have are conspiracy theories to support their claims. Given the allegations' hollowness, there is a reasonable question as to whether Nalco/Ecolab intentionally discarded Ridley's electronic information and devices prior to filing suit to give them free license to argue about the content of the missing documents, or if they merely took advantage of their negligence by arguing the content of the missing documents. In any event, the missing evidence being missing allowed them to spin up this litigation with allegations about what the documents might contain but without being troubled by the documents' actual content.

But Nalco/Ecolab, sophisticated companies both, received high level advice before filing suit and they knew before they filed suit that they had no valid claims and they had already disposed of the key evidence. Yet they filed suit just the same. They then made

misrepresentation after misrepresentation about actual losses of customers, damages, alleged misconduct, and so on that led to any number of rabbit trails, and each new rabbit trail has been examined and dispelled time and again. Yet they prosecuted suit just the same and continued to invent new rabbit trails as each prior fantastical allegation was brought to a close with evidence.

Through it all Nalco/Ecolab, both in its instigation of suit and in its willful and belligerent prosecution of suit, demonstrated beyond doubt their bad faith in bringing their DTSA and TUTSA claims – the drivers of this entire lawsuit. So, Ridley must be awarded his attorneys' fees and litigation expenses incurred through defending himself against these bad faith claims pursuant to 18 United States Code § 1836(b)(3)(D) and Tennessee Code Annotated § 47-25-1705(1).

## 2. Summary of Legal Positions.

Nalco/Ecolab, in its fourth complaint filed in this matter, sued Ridley for 1) violation of the DTSA, 2) violation of the TUTSA, 3) breach of contract, 4) breach of fiduciary duty of loyalty, and 5) civil conspiracy [Doc. 229.]. Ridley denies many of Nalco/Ecolab's allegations spanning 69 pages with 337 paragraphs of fact and/or legal allegations and 10 paragraphs (one with four subparagraphs) of demands for relief, but Ridley does not have the space to identify all such disputes and instead relies on his Affirmative Defenses, Answer and Counterclaim to Ecolab Inc. and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water's Third Amended Complaint [Doc. 247.] to articulate those with greater specificity.

Ridley, in response to Nalco/Ecolab's allegations, asserts a claim to attorney's fees and litigation expenses pursuant to 18 United States Code § 1836(b)(3)(D) and Tennessee

Code Annotated § 47-25-1705(1) against Plaintiffs for their bad faith in bringing and prose-cuting the trade secret claims. Under these circumstances, Ridley contends their bad faith is nearly self-evident.

      a.   <u>Nalco/Ecolab's trade secret deficiencies.</u>

Nalco/Ecolab's trade secret claims will fail for a number of reasons. Ridley summa-rizes these failures below.

*First*, Nalco/Ecolab cannot sufficiently identify trade secrets alleged to be protected by the DTSA or TUTSA. A thing does not qualify as a "trade secret" under either state or federal law simply because Nalco/Ecolab claim they are trade secrets. Instead, a claimant must prove that the item in question is not only actually secret, but that it also has "inde-pendent economic value from not being generally known," that a third party could "obtain economic value from its disclosure or use," and that the claimant duly took reasonable steps "to maintain its secrecy." *PSC Indus. v. Johnson*, No. 3:19-cv-00362, 2021 U.S. Dist. LEXIS 81350, at *28 (M.D. Tenn. Apr. 28, 2021).

Before a court can consider that proof, however, it must first be able to identify the nature and content of the alleged "trade secrets" at issue. Plaintiffs cannot proceed by "iden-tify[ing] a technology or document allegedly containing a potential trade secret 'and then invite the court to hunt through the details in search of items'" that qualify. *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2019 U.S. Dist. LEXIS 168365, at *19–20 (E.D. La. Sep. 30, 2019). That is why plaintiffs must identify "the information for which" trade-secret "protection is sought with sufficient definiteness" or "reasonable particularity" from the out-set of litigation. *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380-81 (6th Cir. 2022). Otherwise, an opposing party would not have sufficient "notice of the

nature of the claims," nor would it be able to "discern the relevancy of any requested discovery . . . ." *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-CV-508-CEA-JEM, 2022 U.S. Dist. LEXIS 241013, at *5–6 (E.D. Tenn. July 13, 2022).

In this case, Ecolab and Nalco have a report that lists the names of around 16,000 computer files that they claim contain at least some trade secrets that Ridley allegedly "misappropriated" by transferring the files from a company-issued laptop to a company-issued hard drive and suspicions about what else Ridley may have had in his possession. But they have not produced nor located the 16,000 documents listed on the report, though they admitted that they did not look for them anywhere on their computer system other than a single drive that related only to Ridley. [Garza Dep. at 170:18–171:2 (JA-444–JA-445) (admitting that the Plaintiffs have done nothing "to try to recover or find" the "documents that Mr. Ridley allegedly misappropriated" other than search a single location on their computer system that related exclusively to Ridley).]. They "assume" they know the contents of some of those documents based upon the names of the computer files listed in the DLP report. [De-Marco Dep. at 110:8–167:5 (JA-340–JA-397), 176:24–194:13 (JA-398–JA-416) (discussing the file names of multiple computer files among the 16,000 that he had not seen, repeatedly "assuming" or "guessing" things about the nature and contents of some of those files based upon their names).] They however also freely admit that even with the file names, they simply "don't know" or have "no idea" what some of those documents might be, what they might contain, who made them, whether or to what extent third parties could access them, or whether they could potentially contain trade secrets. [DeMarco Dep. at 116:15–120:24 (JA-346–JA-350), 129:3–131:9 (JA-359–JA-361), 200:2–24 (JA-417), 205:11–206:2 (JA-418–JA-419).]

In lieu of producing all the files or identifying the specific information in them, the Plaintiffs identified seven (7) broad categories of alleged trade secrets they claim encompass most of the files in the report: (1) Customer Files and Documents, (2) Business Plans, (3) Playbooks/Best Practices, (4) Training Documents, (5) Employee Compensation Documents, (6) Fact Packs, and (7) Customer Contact Information. [Doc. 158 at Page ID# 2420.] The Plaintiffs claimed that the file names in the DLP report could be matched to those categories depending upon the words in the file names. *Id.* But it appears Plaintiffs have only produced approximately 88 "exemplar" files that they claimed represented the types of documents included in each of the categories. [JE-305, Exhibit C to Rebuttal Expert Report of James Vaughn, March 20, 2023, (JA-985–90).] And Plaintiffs indicate that they may have recreated some of these exemplars, but it is unclear which ones are recreations of Plaintiffs' guesses as to what the documents were or if the Plaintiffs had certain documents and are simply guessing those are the documents represented by the file pathnames.

That is not enough. Trade-secret claimants "cannot rely on 'catchall phrases' or simply identify general categories of trade secrets" with "vague labels" or "high level concepts." *SMH Enters.*, 2021 U.S. Dist. LEXIS 249750 at *31. And yet here, that is what Plaintiffs have done with respect to the majority of file names included in the DLP report. Yes, the Plaintiffs identified and produced approximately 88 exemplars (representing less than 0.01% of those allegedly secret computer files listed on the DLP report) during discovery, but they are meant to represent thousands of documents that purportedly fall under the umbrellas of six of the seven generally stated categories and there is no certainty that those documents actually are represented on the report. That does not transform the Plaintiffs' voluminous disclosure of file names into an identification of "concrete secrets" that the law requires.

*CHS Inc. v. PetroNet, LLC*, No. 10-94 (RHK/FLN), 2011 U.S. Dist. LEXIS 53393, at *17–20 (D. Minn. May 18, 2011) (finding that a litigant's identification of "three categories" of documents "as trade secrets," which included the production of "a few specific examples of the documents it claims are trade secrets," was insufficient because the litigant "fail[ed] to explain what the allegedly secret" data "in these documents are"); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (noting that plaintiffs cannot just "point to broad areas of technology and assert that something there must have been secret and misappropriated"). Instead, it leaves Ridley and the Court "to wade through thousands" of lines of a report "in an effort to ferret out a trade secret like a hidden acorn[,]" and guided only by the Plaintiffs' assignment of categories to documents based upon what words appear in the documents' file names. *SMH Enters.*, 2021 U.S. Dist. LEXIS 249750 at *31–32 (finding that a claimant's production of "thousands of pages of documents" that allegedly contain trade secrets, "while voluminous, does not provide the sufficient detail to allow the court and defendant to understand exactly what Plaintiff is alleging").

That proof is therefore insufficient. By simply identifying the names of computer files that, in the Plaintiffs' best guess, could have contained trade secret information, there is no way for Ridley, the Court, or any potential juror to gauge whether the information warrants protection as a trade secret under the federal or Tennessee statutes. *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2020 U.S. Dist. LEXIS 112361, at *22 (C.D. Cal. May 13, 2020) (confirming that "[w]ithout a sufficiently defined trade secret, the Court is unable to determine whether that information had 'independent economic value, actual or potential, from not being generally known,' or if Plaintiff 'has taken reasonable measures to keep such information secret'"). Likewise, there is no way to determine what parts of the

huge compilation of data the Plaintiffs have identified are trade secrets and what parts are not. *Capricorn Mgmt. Sys.*, 2019 U.S. Dist. LEXIS 123723 at *53–56 (noting that "[a] plaintiff asserting a combination trade secret must demonstrate that the way in which the publicly-available components fit together is unique and not publicly known").

*Second*, to successfully pursue a claim for misappropriation of a trade secret under either federal or state law, a plaintiff must prove that one of three things occurred. The defendant must have either "disclosed" the secret without permission, "used" the secret without permission, or "acquired" it "by improper means." Tenn. Code Ann. § 47-25-1702(2); 18 U.S. Code § 1839(5). *See Lifelinc Anesthesia, PLLC v. Wolfe*, No. 2:12-cv-02662-JPM-cgc, 2012 U.S. Dist. LEXIS 200321, at *5–6 (W.D. Tenn. Nov. 1, 2012) (confirming that the "misappropriation" of a trade secret "is limited to" to instances of improper "acquisition," "disclosure," or "use").

"Disclosure" in this context is simple. It occurs when a defendant does some unauthorized act "that enabled a third party to learn the trade secret." *Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F.3d 1284, 1293 (11th Cir. 2003) (*citing Restatement (Third) of Unfair Competition* § 40, cmt. c).

Unauthorized "use" in these cases cover "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant . . . ." *Agency Sols..Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1028 (E.D. Cal. 2011) (*quoting Restatement (Third) of Unfair Competition* § 40, cmt. c) (noting this "general" rule that equates use to exploitation resulting in damages to the owner even though there "are no technical limitations" of "use" in the governing statutes). That means that "[m]erely copying trade secret information" without more "does not constitute 'use[.]'" *People Experts CA,*

*Inc. v. Engstrom*, No. 2:17-cv-00318-KJM-CKD, 2017 U.S. Dist. LEXIS 154524, at *23 (E.D. Cal. Sep. 21, 2017) (noting that "copying" cannot constitute "use" "because copying does not affect the value of the trade secrets or otherwise enrich" a person who could already access them as part of their employment). Relatedly, "mere possession" of a secret that is "lawfully acquired" does not amount to actionable use. *CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 U.S. Dist. LEXIS 101527, at *31 (W.D. Okla. May 28, 2021). Likewise, as another Tennessee District Court acknowledged, "the deletion of data" does not qualify as "use," either. *Lifelinc Anesthesia, PLLC v. Wolfe*, No. 2:12-cv-02662-JPM-cgc, 2012 U.S. Dist. LEXIS 200321, at *5–6 (W.D. Tenn. Nov. 1, 2012) (dismissing a claim under the Tennessee Uniform Trade Secrets Act to the extent that it was premised upon a party's "act of deleting the [allegedly secret] data from" a company-issued "laptop and cell phone" because "the deletion of data is not covered by TUTSA's definition of 'mis-appropriation'").

"Acquisition" occurs under trade-secret statutes only when a defendant "comes into possession" of or gains "control" or "power" over a trade secret by "improper means." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1129 (9th Cir. 2010). A mode of acquisition is, in turn, "improper" only if it is unlawful, such as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage . . . ." 18 U.S. Code § 1839(6). *Cf.* Tenn. Code Ann. § 47-25-1702(1).

In this case, Nalco/Ecolab have no evidence that Ridley impermissibly used, disclosed, or acquired any of the alleged trade secrets that it has purportedly identified among the 16,000+ file names on its DLP report that Plaintiffs allege Ridley transferred to the LaCie drive nor any other Nalco/Ecolab documents they allege Ridley had after his employment

ended. The Plaintiffs have no proof that Ridley exploited any of those files transferred to the LaCie or other drive in any way, either for financial gain or to the Plaintiffs' detriment, and they have no proof that he disclosed those files to ChemTreat or any other third party.

That leaves "acquisition by improper means" as the Plaintiffs' only possible avenue under the federal and state statutes. But there, too, the proof is lacking. The Plaintiffs' evidence from the DLP report related to the LaCie drive shows that in mid-2021, Ridley accessed the files identified in the DLP report via his Ecolab-issued laptop and transferred them to his Nalco-issued LaCie external hard drive. JE-304, Rebuttal Expert Report of James Vaughn, March 20, 2023, at JA-949–51 (noting that the DLP report does not show deletion of the files transferred to the LaCie drive). Then, less than two weeks after his termination, Ridley returned both the laptop and the LaCie drive to the Plaintiffs. Ridley Dep. at 171:22–172:10 (JA-553–54), 446:5–10 (JA-665); Asset Portfolio Detail, P.4 (JA-73). Moreover, as to Ridley's personal external hard drive that had outdated Nalco/Ecolab documents, he acquired those and stored them in the usual course of his employment with Nalco/Ecolab.

Those acts do not amount to "acquisition by improper means" under the statute. Improper "acquisition" does not occur when a person "already had possession of" an alleged trade secret "as an employee" of the alleged secret's owner. *JustMed, Inc.*, 600 F.3d at 1129. Likewise, an employer "cannot show" that an employee "misappropriated its trade secret information by copying it from one computer to another" because if the person "already had this information on a computer he regularly used for personal and business purposes," that person "could not 'acquire' it." *People Experts CA, Inc.*, 2017 U.S. Dist. LEXIS 154524 at *23.

Ridley's contract did not forbid the transfer of company information between two company-issued devices. JE-5 at JA-6, ¶4 (barring employees from transferring or storing business information "on any device . . . not provided or authorized by" the Plaintiffs without written permission). And Plaintiffs can identify no company policy that prohibited Ridley from doing that, either. *Aday v. Westfield Ins. Co.*, 486 F. Supp. 3d 1153, 1170 (S.D. Ohio 2020) (rev'd in part on other grounds by 2022 U.S. App. LEXIS 2319 (6th Cir. Jan. 24, 2022)) (rejecting an "improper means" argument where the employer failed to identify a specific company policy that the employee violated).

So, Ridley did not "use," "disclose," or "acquire" any of the data identified by the filenames in the DLP report that were transferred to the LaCie drive or any other drive. At most, he possessed those company files on a company-issued device while employed by the Plaintiffs, and then continued to possess them on that same device for less than two weeks after his employment ended. That is not misappropriation. *Camick v. Holladay*, 758 F. App'x 640, 645 (10th Cir. 2018) (recognizing that "an allegation that a defendant merely continues to possess a trade secret is not an allegation the defendant acquired, disclosed, or used a trade secret" under the Defend Trade Secrets Act).

Similarly, as to the outdated Nalco/Ecolab documents that may have been on any personal devices, that was done with Nalco/Ecolab's blessing at the time the documents were acquired by Ridley, and there is no evidence Ridley did anything with those documents to harm Nalco/Ecolab or cause Nalco/Ecolab any damage. Moreover, Ridley had no access to any such documents when Nalco/Ecolab filed this lawsuit.

*Third*, Nalco/Ecolab cannot present admissible evidence regarding purported damages. They failed to properly disclose their alleged damages in that they were not identified

in initial disclosures as required by Rule 26(a)(1)(A)(iii), which renders any evidence of alleged damages excludable under Rule 37(c)(1). But even if the Court permits Nalco/Ecolab to rely on damages theories only disclosed in expert disclosures and never included in any supplemental initial disclosures, Plaintiffs' primary theory of damages – an unreliable hybridization of the avoided cost approach – has been excluded from the trial [Doc. 349.].

      b.  <u>Nalco/Ecolab's breach of contract deficiencies</u>.

Nalco/Ecolab's breach of contract claim fails for a number of reasons. Ridley summarizes these failures below.

*First*, Nalco/Ecolab must initially prove an enforceable contract and a breach of the enforceable contract. *See e.g. ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). They will be unable to prove that there was an enforceable contract with Ridley that he breached by any of his actions. One contract provision at issue did not prohibit Ridley from storing Nalco/Ecolab documents at the time that he did so. In point of fact, Ridley used this storage device with Nalco/Ecolab's explicit, or at least implicit, blessing as he did so as a matter of course as did numerous other Nalco/Ecolab employees. Moreover, by the time Nalco/Ecolab filed suit, Ridley had no Nalco/Ecolab documents of any kind in his possession as all such documents were either deleted or on storage devices he returned to Nalco/Ecolab upon demand. Another contract provision at issue did not prohibit Ridley from soliciting Tyler Bates because Ridley had not managed, supervised, nor had material professional contract with Bates while Ridley and Bates were employed by Nalco/Ecolab. So, there's no breach of any enforceable contract.

In addition, under Tennessee law, employers cannot simply declare that business information is "confidential" and thereby bestow upon that information a protective cloak.

Rather, that information is protectable "only to the extent that it satisfied the" common-law "definition of a trade secret," and that holds true "even where a former employee signs a contract promising never to divulge confidential information . . . ." *Hamilton-Ryker Grp., LLC v. Keymon*, No. W2008-00936-COA-R3-CV, 2010 Tenn. App. LEXIS 55, *37–38 (Tenn. Ct. App. Jan. 28, 2010); *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 26 F. Supp. 2d 1029, 1031 (M.D. Tenn. 1998). So, the same problem that the Plaintiffs have in sufficiently identifying their trade secrets infects their claim under Paragraph 2 of the contact. Further, that claim also fails because, just as the Plaintiffs failed to show that Ridley "used" or "disclosed" any of their alleged trade secrets, they have no proof that he "used" or "disclosed" any "confidential" information under Paragraph 2.

*Second*, Tennessee requires a breach of contract plaintiff to allege and prove damages. *See e.g. ARC LifeMed*, 183 S.W.3d at 26. Plaintiffs, however, have not disclosed a computation of any category of damages that they seek for their contract claim. The initial disclosure lacks a computation for any claim, and the Plaintiffs' damages report includes computations only for the statutory trade-secrets claims and the fiduciary duty claim based upon Ridley's "business plan." They therefore should not be permitted to present any computation or evidence of damages for other claims at trial. *Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 147 (E.D. Mich. 2020) (acknowledging that it is not the burden of the "party requesting exclusion under Rule 37(c)(1)" to "show prejudice" of any kind, but instead it is the burden of the non-disclosing party to "show that the exclusion was 'harmless' or 'substantially justified'").

*Third*, Nalco/Ecolab's attempt to claim attorneys' fees as damages or under an independent tort claim fail. As an initial matter, since attorneys' fees are "special damages" that

must be "specifically pleaded," that general request is not enough to insert fee demand into claims for which the Plaintiffs did not plead one. *In re American Casualty Co.*, 851 F.2d 794, 802 (6th Cir. 1988) (confirming that fees are "special damages" under Rule 9(g)); *West Lumber, LLC v. Burke-Parsons-Bowlby Corp.*, No. 4:09-cv-52, 2011 U.S. Dist. LEXIS 4672, *13–19 (E.D. Tenn. Jan. 18, 2011) (finding that a "Plaintiff's request for attorneys' fees [was] insufficiently pled" under Rule 9(g) because, even though the pleading contained a "request for attorneys' fees," it "did not specify the basis upon which it seeks attorneys' fees"). *See Burlington Transp. Co. v. Josephson*, 153 F.2d 372, 377 (8th Cir. 1946) (confirming that "[i]n the federal courts an indispensable allegation in a demand for special damages is a statement 'of the special circumstances giving rise to the special damages'"). *Cf. Milazzo v. First Liberty Ins. Corp.*, No. 2:21-cv-550-JLB-MRM, 2021 U.S. Dist. LEXIS 235718, *13–14 (M.D. Fla. Dec. 9, 2021) (dismissing a complaint and noting that, since the plaintiff had demanded fees in his complaint without "specify[ing] the basis supporting the fee request as to each count," any refiled complaint must "include the basis supporting the fee request as to each count"); *Duncan v. Bank of N.Y. Mellon*, NO. SA-13-CA-88-FB, 2013 U.S. Dist. LEXIS 204110, *27 (W.D. Tex. May 1, 2013) (dismissing the "plaintiffs' claim for attorneys' fees" because "there is no basis for the fees pleaded in the original petition" and the plaintiffs had "not identified a substantive source for the fees pleaded").

Additionally, the "independent tort" doctrine suffers from the additional problem that it is contrary to the doctrine itself. Tennessee law indeed recognizes the "independent tort" or "tort of another" doctrine. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985). Where a party's tortious conduct requires a plaintiff "to act in the protection of his interests by bringing or defending an action against a third person," the plaintiff may

recover "for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action" with the third party. *Id.* (favorably citing and adopting portions of the Restatement (Second) of Torts and an American Jurisprudence entry on the "independent tort" doctrine).

But according to the very source from which Tennessee courts adopted that doctrine, it is inapplicable to the civil-conspiracy claim against Ridley and ChemTreat—the "doctrine does not apply to a situation where a plaintiff has been damaged by a joint tort committed by codefendants." 22 Am. Jur. 2d Damages § 45422 Am. Jur. 2d Damages § 454 (2023). Courts in multiple jurisdictions have confirmed that limitation, noting that a rule to the contrary would essentially allow for fee recoveries in every case with multiple tortfeasors:

> [T]he tort of another doctrine does not apply to the situation where a plaintiff has been damaged by the joint negligence of codefendants. "The rule . . . was not intended to apply to one of several joint tortfeasors in order to justify additional attorney fee damages. If that were the rule there is no reason why it could not be applied in every multiple tortfeasor case with the plaintiff simply choosing the one with the deepest pocket . . . ."

*Gorman v. Tassajara Development Corp.*, 178 Cal. App. 4th 44, 80 (Cal. Ct. App. 2009). *See also OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 352 (8th Cir. 2007) (rejecting a plaintiff's fee request under the doctrine because the defendants were alleged to be "joint tortfeasors acting together" and noting that under the plaintiff's "view, courts could award attorney's fees under the third-party litigation exception whenever a plaintiff sued two or more defendants who acted jointly"); *Advanced Telcom. Network v. Flaster/Greenburg, PC (In re Advanced Telecomm. Network, Inc.)*, No. 6:03-bk-00299-KSJ, 2018 Bankr. LEXIS 2686, *10 (M.D. Fla. Bankr. Jan. 31, 2018) (recognizing that "[t]he Tort of Another Doctrine does not provide a basis for recovery when the claimant is not harmed by a third party but instead incurred attorneys' fees because they sued" two "joint or co-tortfeasors . . . on

theories of civil conspiracy and aiding and abetting a breach of fiduciary duty"); *Harder v. Foster*, 401 P.3d 1032, 1051 (Kan. Ct. App. 2017) (acknowledging that "[w]hen the third party is a joint tortfeasor with the wrongdoer, or where the third party and defendant are in privity, claimants cannot raise this exception" to the American Rule).

> c. <u>Nalco/Ecolab's breach of fiduciary duty of loyalty deficiencies.</u>

Nalco/Ecolab's breach of fiduciary duty of loyalty claim fails for a number of reasons. Ridley summarizes these failures below.

*First*, Tennessee courts "equate breaches of duty of loyalty with the acts of a traitor." *Boothe v. Fred's Inc.*, W2002-01414-COA-R3-CV, 2003 Tenn. App. LEXIS 582, *39–41 (Tenn. Ct. App. Aug. 19, 2003). The mere fact that an employee's actions are "adverse" or "unquestionably detrimental" to an employer is not enough. *Whited v. Westrock Servs.*, No. 3:17-cv-01341, 2018 U.S. Dist. LEXIS 117144, *10 (M.D. Tenn. July 13, 2018). Rather, "Tennessee courts have applied the requirement of adversity in situations where an employee acted not just detrimentally to the employer, but in furtherance of the interests of another." *Id.* So, for example, courts in Tennessee have found that employees breached their duties of loyalty when, while still working for their employer, they "recruited and solicited co-workers to leave and work for a competitor," "diverted business from" their employers to a competitor, and "recruited customers of [their] employer" to a competing business. *Id.* Without proof of "traitorous," "perfidious" conduct, there can be no claim for breach of the duty of loyalty. *Id.* at *11. (dismissing an employer's duty-of-loyalty claim against an employee whose misconduct, while "troubling," did not amount to treachery).

Ridley's "business plan" was similarly a "preparation for postemployment competition." It was an act that he took to communicate to a potential employer the ways in which

he believed he could help their business. Likewise, any allegations that he did not adequately perform his job does not equate to the acts of a traitor. That is not illegal in Tennessee.

*Second*, not only do the complained of acts not amount to a breach of fiduciary duty of loyalty as defined by Tennessee law but the business plan aspect of the claim is preempted by TUTSA. *See* Tenn. Code Ann. § 47-25-1708(a). So, the claim is dead on arrival.

### d. Nalco/Ecolab's civil conspiracy deficiencies.

A civil conspiracy requires an actionable separate claim to have vitality under Tennessee law. *See e.g. Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010). Because Nalco/Ecolab cannot prove a single viable claim that they alleged Ridley was engaged in a civil conspiracy with ChemTreat, they cannot prove the predicate existence of a civil conspiracy to a legal wrong.

### e. Ridley's trade secret bad faith claims.

Both the DTSA and the TUTSA allow for the recovery of attorney's fees and litigation expenses when trade secret misappropriation claims are brought and prosecuted in bad faith. *See* 18 U.S.C. § 1836(b)(3)(D); Tenn. Code Ann. § 47-25-1705(1). Under these facts and circumstances, Ridley should be awarded his attorneys' fees and litigation expenses.

### 3. Related Key Evidentiary Issues.

Ridley briefed a series of evidentiary issues in his summary judgment [Doc. 259-60, 287, 322.], sanctions [Doc. 262, 263, 321], and motion *in limine* [Doc. 371-72, 396, 406.] filings, and he relies on those positions without restating the same here. He, however, identifies the following issues as the most pivotal for trial.

a. <u>Plaintiffs' inability to present admissible evidence of recoverable damages</u>.

As detailed at length in Ridley's summary judgment [Doc. 259-60, 287, 322.] and motion *in limine* [Doc. 371-72, 396, 406.] filings, Plaintiffs have an unavoidable and fatal hole in their case: a lack of recoverable damages. They failed to properly disclose their alleged damages in that they were not identified in initial disclosures as required by Rule 26(a)(1)(A)(iii), which renders any evidence of alleged damages excludable under Rule 37(c)(1). But even if the Court permits Nalco/Ecolab to rely on damages theories only disclosed in expert disclosures and never included in any supplemental initial disclosures, Plaintiffs' primary theory of damages – an unreliable hybridization of the avoided cost approach – has been excluded from the trial [Doc. 349.] – and the sole remaining disclosed damages theory is disgorgement of a portion of Ridley's salary under the breach of fiduciary duty of loyalty claim. Accordingly, either the pending Rule 56 motions should be granted, or the Court must prohibit Plaintiffs from executing a surprise about-face to resurrect claims vis-à-vis undisclosed damages theories, which renders a Rule 50 motion all but unavoidable should certain claims survive the pending Rule 37 and Rule 56 motions.

Ridley identifies this in this brief because Plaintiffs are all too aware of this issue. So, Ridley expects Plaintiffs to attempt to effectuate a workaround to resurrect their claims, and that attempt should not be permitted to succeed.

b. <u>Plaintiffs' inability to present admissible evidence regarding alleged trade secrets, which insufficient evidence is also an insufficiency for the breach of contract claim</u>.

As detailed at length in Ridley's summary judgment [Doc. 259-60, 287, 322.], sanctions [Doc. 262, 263, 321], and motion *in limine* [Doc. 371-72, 396, 406.] filings, Plaintiffs cannot present admissible evidence to demonstrate a single trade secret in this case. In order

to carry their burden of proof under the DTSA and TUTSA, they must identify what they contend is the trade secret or are the trade secrets with reasonable particularity. *See e.g. Caudill*, 53 F.4th at 380-81. They, however, have not, and cannot, meet this burden as Plaintiffs a) have never identified any trade secrets with sufficient particularity in discovery to present alleged trade secrets to the jury, and b) rely solely on inadmissible evidence – *e.g.* the DLP report that is inadmissible under Rules 1001-1008 and the content of the documents allegedly captured by the DLP report is inadmissible under Rules 403 and 1004 and speculation as to what was on Ridley's external hard drive prior to Nalco/Ecolab filing suit, which is inadmissible under Rules 403, 602, 801-02, and 1004. This evidentiary issue also informs the breach of contract claim as Plaintiffs would have to prove the same grounds for a breach of contract as they cannot prove for the DTSA and TUTSA claims and so the breach of contract claim fails due to lack of evidence as well.

Ridley identifies this in this brief because Plaintiffs are all too aware of this issue. So, Ridley expects Plaintiffs to attempt to effectuate a workaround to resurrect their claims, likely with inadmissible evidence to "prove" trade secrets, and that attempt should not be permitted to succeed.

   c.   <u>Inadmissibility of evidence alleged to support Nalco/Ecolab's claim for attorney's fees and litigation costs.</u>

Nalco/Ecolab have provided only summary documents to support their claims for attorney's fees and costs. *See* [Doc. 375, Exhibits 20 and 21 (filed under seal).] The summaries of hours per lawyer multiplied by the lawyer's hourly rate on these documents must necessarily be based on services rendered but those services are unidentified in the produced documents and the documents that theoretically capture and describe those services have not been produced. *See* [Doc. 375, Exhibits 20 and 21 (filed under seal).] The produced summary

documents are insufficient to meet the admissibility requirements of Rules 1002, 1003, and 1006 and thus insufficient to establish an entitlement to attorneys' fees. *See e.g. United States v. Bray*, 139 F.3d 1104, 1009-10 (6th Cir. 1998). The information captured by these documents, moreover, is insufficient to support a claim for attorneys' fees and litigation expenses even if the exhibits themselves were admissible. *See e.g. Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 4372350, 2022 U.S. Dist. LEXIS 170675, *6 (E.D. Tenn. Sep. 21, 2022). So, even if Plaintiffs have properly pled attorney's fees and costs under the DTSA, TUTSA, and breach of contract theories and prove an entitlement for relief under one (1) or more the theories, the evidence is still inadmissible and insufficient to support the award of attorney's fees and costs.

### d. Lieb's testimony regarding state of mind and overly suggested verbiage.

The Court already prohibited Nalco/Ecolab's attempts to have Lieb offer "opinion testimony regarding why Ridley took certain actions or his motivations for taking those actions. To that end, Lieb will not be permitted to use the term 'exfiltrate' in his testimony, because his own definition of that term suggests that Ridley took Ecolab/Nalco's documents 'for purposes of being used for … another company,' thereby offering an opinion as to Ridley's state of mind." [Doc. 353, PageID #: 14494.] Lieb, however, persisted in making the same prognostications and used the same verbiage during his supplemental depositions on October 24, 2023, and November 29, 2023. Accordingly, Lieb will likely need personal instruction from this Court for Lieb to heed this Court's limitations on his testimony prior to him taking the stand before the jury to avoid a real risk of a mistrial.

e. <u>Special Master's findings should be considered by the jury</u>.

Rule 53 authorized this Court to delegate the tasks related to the complex electronic discovery matters in dispute in this case. *See e.g. Am. Consol. Indus. v. Blasingim*, Case No. 1:19-cv-137; Case No. 5:17-cv-2253, 2022 WL 17687491, 2022 U.S. Dist. LEXIS 226203 (N.D. Ohio Dec. 15, 2022). The Special Master, and his agents, conducted an extensive investigation into the matters assigned to him, and he largely, if not entirely, corroborated Defendants' contentions [Doc. 413.]. This Court, after receiving objections and responses to objections from Nalco/Ecolab [Doc. 416-17.] and ChemTreat [Doc. 415, 418.] and performing an independent review, confirmed the Special Master's report [Doc. 419.].

This Court accurately summarized the Special Master's findings in Document 419 on PageID #18059-60 and 18062-63, which, in sum, was no evidence of unlawful use or disclosure of alleged trade secrets. This Court specifically rejected Nalco/Ecolab's objections to the Special Master's Report and adopted it in total [Doc. 419.].

Ridley wants to present these findings to the jury at trial. But here, Ridley is again confronted with Nalco/Ecolab's unwillingness to acknowledge that the Special Master was assigned a task by this Court, that the Special Master discharged the assigned task, and that the Special Master's investigation involved the conclusion of facts that are antithetical to Nalco/Ecolab's position. Nalco/Ecolab understandably does not want the jury to hear the facts determined by the Special Master and approved by this Court that the investigation yielded nothing beneficial for Plaintiffs and in fact refuted their contentions. Ridley, however, insists that the Special Master's findings be able to be presented to the jury without Nalco/Ecolab's spin.

### 4. Conclusion.

If one (1) or more of Nalco/Ecolab's claims are not dismissed with prejudice either as spoliation remedies pursuant to Rule 37 or as a matter of law pursuant to Rule 56, their claims should be dismissed at the close of their evidence under Rule 50. To the extent that any claims survive the various motions pending under Rules 37, 50, or 56, the jury, once properly instructed, should return a defense verdict. In any event, this Court should award Ridley his attorney's fees and litigation costs for Nalco/Ecolab's bad faith prosecution of their trade secret claims.

Respectfully Submitted:

**Patrick, Beard, Schulman & Jacoway, P.C.**

By: _/s/ Jeremy M. Cothern_____
    Lance W. Pope, BPR No. 025054
    Jeremy M. Cothern, BPR No. 027166
    537 Market Street, Suite 300
    Chattanooga, TN 37402
    (423) 756-7117 – phone
    (423) 267-5032 – fax
    lpope@pbsjlaw.com
    jcothern@pbsjlaw.com

    _Attorneys for Anthony Ridley_

### Certificate of Service

I certify that on December 18, 2023, this document has been served upon all the parties via the Court's ECF system.

By: _/s/ Jeremy M. Cothern_____