# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, | ) ) ) | Case No. 1:22-cv-00050-TRM-CHS |
| | ) | |
| *Plaintiffs*, | ) | Judge Travis R. McDonough |
| | ) ) | Magistrate Judge Christopher H. Steger |
| v. | ) ) | |
| ANTHONY RIDLEY, and CHEMTREAT, INC., | ) | |
| | | |
| *Defendants*. | | **JURY TRIAL DEMANDED** |

## [PROPOSED] AGREED FINAL PRETRIAL ORDER

This Court conducted a Final Pretrial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on January 8, 2023. Randall Kahnke, Martin Chester, David Yoshimura, Emmanuel Brown, Sophie Gotlieb and Kacie Tawfic of Faegre Drinker Biddle & Reath LLP appeared as counsel for the Plaintiffs Nalco Company, LLC ("Nalco") and Ecolab, Inc. ("Ecolab"), Vidya Atre Mirmira, William T. Burke, Juli Ann Lund, Troy C. Homesley, Zac Greene, and Kyle Eiselstein appeared as counsel for Defendant ChemTreat, Inc. ("ChemTreat"), and Lance Pope and Jeremy Cothern of Patrick, Beard, Schulman & Jacoway, P.C. appeared as counsel for Defendant Anthony Ridley ("Ridley"). The following action was taken:

## I. <u>Jurisdiction</u>

Plaintiffs allege causes of action for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, tortious interference with a contractual relationship, procurement of

breach of contract, and civil conspiracy. Original jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836, et seq. The jurisdiction of the Court is not disputed.

## II. <u>Pleadings</u>

Plaintiffs' Third Amended Complaint is the operative complaint. Doc. 229. ChemTreat has filed an Answer to Plaintiffs' Third Amended Complaint. Doc. 247. Ridley has filed an Answer and Counterclaims to Plaintiffs' Third Amended Complaint. Doc. 248.

## III. <u>General Nature of the Claims of the Parties:</u>

**a. Claims:** The following claims, as limited by the Court's prior Orders (Docs. 69, 215, 349, 353) and the parties' amended pleadings (Docs. 229, 247, 248), remain to be tried:

### Claims Asserted by Plaintiffs

I. Defend Trade Secrets Act (Count I) – Asserted against Ridley and ChemTreat

II. Tennessee Uniform Trade Secrets Act (Count II) – Asserted against Ridley and ChemTreat

III. Breach of Contract (Count III) – Asserted against Ridley

IV. Breach of the Fiduciary Duty of Loyalty (Count IV) – Asserted Against Ridley

V. Tortious Interference with Contractual Relationships (Count V) – Asserted Against ChemTreat

VI. Procurement of Breach of Contract (Count VI) – Asserted Against ChemTreat

VII. Civil Conspiracy (Count VII) – Asserted Against Ridley and ChemTreat

### Claims Asserted by Ridley

I. Ridley asserts a claim to attorney's fees and litigation expenses pursuant to 18 United States Code § 1836(b)(3)(D) and Tennessee Code Annotated § 47-25-1705(1) against Plaintiffs.

**b. Stipulated Facts:** The parties previously stipulated to the following facts (*see* Doc.

370):

1. Plaintiff Ecolab Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Minnesota.

2. Plaintiff Nalco Company, LLC (d/b/a "Nalco Water, an Ecolab Company" and "Nalco Water") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Illinois.

3. Nalco is a subsidiary of Ecolab.

4. Defendant ChemTreat, Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Virginia.

5. Defendant Anthony Ridley is a resident of the State of Tennessee.

6. Nalco, Ecolab, and ChemTreat are companies that provide industrial water treatment products and services to industries including, but not limited to, food and beverage, chemical and refining, manufacturing, mining, commercial, and pharmaceutical.

7. Mr. Ridley first began working at Nalco on November 1, 1999 and held several positions with Nalco, with his last position as a District Manager until September 30, 2020.

8. Mr. Ridley sent ChemTreat a copy of his resume on August 17, 2020.

9. Mr. Ridley signed an "Employee Sales, Service, Marketing & Inventions Agreement" with Ecolab on September 16, 2020 in connection with accepting a job at Ecolab.

10. Mr. Ridley began working as a Corporate Account Manager at Ecolab on October 1, 2020.

11. Mr. Ridley sent ChemTreat a copy of his Ecolab "Employee Sales, Service, Marketing & Inventions Agreement" on January 13, 2021.

12. ChemTreat offered Mr. Ridley a position as a Regional Sales Manager on June 18, 2021.

13. On June 19, 2021, Mr. Ridley signed copies of ChemTreat's "Certification of Compliance of Obligations to Prior Employers," "Certification of Danaher Corporation Standards of Conduct," and "Signing Bonus Repayment Agreement."

14. Mr. Ridley accepted ChemTreat's offer of future employment on June 20, 2021.

15. Mr. Ridley submitted his two-week notice of resignation to his supervisor at Ecolab, Jacqueline Herrera, on July 1, 2021, stating that his last day would be July 14, 2021.

16. Ecolab terminated Mr. Ridley's employment upon receipt of his resignation, and cut off his access to their networks on the same day, July 1, 2021.

17. Mr. Ridley began working at ChemTreat as a Regional Sales Manager on July 2, 2021.

18. On February 9, 2022, counsel for Plaintiffs sent both Mr. Ridley and ChemTreat a demand letter alleging that Mr. Ridley took Ecolab/Nalco documents.

19. On March 3, 2022, Plaintiffs filed this lawsuit.

20. On March 18, 2022, ChemTreat terminated Mr. Ridley.

21. On March 21, 2022, ChemTreat notified Mr. Ridley of his obligation to return his signing bonus in light of his termination.

### c. Parties' Dispute Regarding Uncontroverted Facts from the Special Master Report

ChemTreat provided proposed uncontroverted facts derived from the Special Master's Report (Doc. 413). Ridley's counsel agreed to all of ChemTreat's proposed uncontroverted facts. Plaintiffs' counsel agreed to some, but not all, of ChemTreat's proposals, and Plaintiffs proposed their own set of uncontroverted facts. ChemTreat and Ridley do not agree to Plaintiffs' counter-proposal. The parties will continue to confer to determine whether agreement can be reached on the substance of uncontroverted facts derived from the Special Master's Report to be provided to the jury.

### d. Plaintiffs' Theory:

Mr. Ridley was employed by Nalco/Ecolab from November 1, 1999, until July 1, 2021, at which point Mr. Ridley joined Nalco/Ecolab's direct competitor, ChemTreat. Specifically, both Nalco/Ecolab and ChemTreat compete in the industrial water treatment industry. Throughout his over 20-year tenure at Nalco/Ecolab, Mr. Ridley held various sales positions at the company:

Senior Account Management (Nalco), District Manager (Nalco), and a Corporate Account Manager (Ecolab). All of these positions made Mr. Ridley privy to Nalco/Ecolab's trade secrets and highly confidential and/or proprietary information.

Though Mr. Ridley resigned from Nalco/Ecolab on July 1, 2021 to work for ChemTreat, Mr. Ridley began recruitment conversations with ChemTreat as early as August 2020, when Mr. Ridley first emailed his resume to ChemTreat employee Clay Cissell. Between August 2020 and June 2021, Mr. Ridley had several communications with ChemTreat, including: 1) Mr. Ridley sending ChemTreat his Nalco/Ecolab Employment Agreement, including his restrictive covenant; 2) Mr. Ridley sending ChemTreat a copy of a "Business Plan" for the years 201, 2022 and 2023, contemplating Mr. Ridley's proposed sales plan on behalf of ChemTreat (which contained confidential and proprietary Nalco/Ecolab information); and 3) ChemTreat sending Mr. Ridley proposed compensation plans. Also, during this time period, Mr. Ridley met with ChemTreat employees for in-person recruitment meetings on multiple occasions. In May of 2021, as Mr. Ridley began preparing to transition over to ChemTreat, and without Nalco/Ecolab's knowledge, Mr. Ridley began downloading over 16,000 Nalco/Ecolab files to an external hard drive containing Nalco/Ecolab's confidential and trade secret information. Mr. Ridley subsequently permanently deleted his entire "Nalco Water" folder from his cloud-based account at Nalco/Ecolab.

These files Mr. Ridley downloaded included proposal pricing worksheets; quotes; fact packs (sales tool); bid letters; pricing worksheets; engineering analyses; purchasing documents; contracts; product volumes (for each customer); detailed scope of work documents; future projects (for specific customers); profit-margin reports; profit analyses; detailed sales and volume reports; service reports and plans; customer-meeting summaries; service agreements; renewal documents; transition playbooks; inspection documents, service/product best practices, treatment plans; testing

documents; chemical analyses, chemical specifications; water analyses; and many, many more types of confidential and trade secret customer information.

In or around February 2022, while in the employment of ChemTreat and with the knowledge of ChemTreat, Mr. Ridley breached the employee non-solicitation provision of his Nalco/Ecolab Employment Agreement by recruiting Nalco sales representative Tyler Bates to join Mr. Ridley's two-person "team" at ChemTreat.

When Nalco/Ecolab sent a preservation letter to Mr. Ridley on February 9, 2022, Mr. Ridley began deleting several Nalco/Ecolab files from his ChemTreat computer's desktop and used a C-Cleaner (a permanent file wiping software) on an external drive that was connected to his ChemTreat computer. Then, ChemTreat negligently wiped Mr. Ridley's ChemTreat computer on March 3, 2022, making it impossible for Nalco/Ecolab to engage in proper discovery. Later that month on March 18, 2022, Mr. Ridley was terminated for sending a Nalco/Ecolab document from his personal email account to his ChemTreat email account.

Mr. Ridley misappropriated Nalco/Ecolab's trade secrets by secretly downloading them off of his Nalco/Ecolab computer onto external hard drives and using those files while employed at ChemTreat for the benefit of ChemTreat. By misappropriating trade secrets to ChemTreat, Mr. Ridley also breached his Nalco/Ecolab Employment Agreement, including various restrictive covenants. He also breached his fiduciary duty to Nalco/Ecolab.

As evidenced by ChemTreat's receipt of Mr. Ridley's "Business Plan," ChemTreat was fully aware of Mr. Ridley's actions and even encouraged them, making ChemTreat also liable for the misappropriation, as well as tortious interference with a contract and procurement of a breach of contract. ChemTreat intentionally and without justification interfered with Nalco/Ecolab's contractual relationship with Mr. Ridley by inducing, aiding, abetting and encouraging Mr. Ridley

to 1) craft a prospective Business Plan for ChemTreat while Mr. Ridley was employed by Nalco/Ecolab; 2) solicit Tyler Bates to come work for ChemTreat, and 3) solicit business from Nalco/Ecolab.

### e. ChemTreat's Theory:

ChemTreat denies that there is a factual basis for any of Plaintiffs' claims against it. As to Plaintiffs' state law claims, Plaintiffs have admitted that they have no evidence of Ridley soliciting any customer within the scope of his restrictive covenant. ChemTreat cannot be liable for inducing a non-existent breach. The same is true for the only other alleged breach underlying Plaintiffs' contractual interference claims—ChemTreat's alleged involvement in Ridley's recruitment or solicitation of Tyler Bates. Ridley's restrictive covenant only prohibited him from recruiting employees who he managed, supervised, or had material contact with while both were employed by Plaintiffs. Ridley did not manage or supervise Tyler Bates, and had no "material contact" with Bates that was within the scope of Ridley's employment while both were employed by Plaintiffs. Given the absence of any underlying, non-preempted breach of Ridley's contract with Plaintiffs, Plaintiffs cannot prove this essential element of their tortious interference or procurement of breach claims. Plaintiffs likewise cannot prove the essential element of damage for those claims: Because there was no underlying breach, Plaintiffs were not required to bring suit against Ridley to protect their rights under the restrictive covenants, such that any attorneys' fees Plaintiffs claim to have spent in suing Ridley for those alleged breaches cannot be attributed to ChemTreat under the independent tort doctrine.

Plaintiffs also cannot establish a factual basis for their civil conspiracy claim. As an initial matter, Plaintiffs cannot prove the existence of any underlying tort that is not preempted by their trade secret misappropriation claims, which leaves their civil conspiracy claim non-viable at the

threshold. Additionally, Plaintiffs cannot satisfy the necessary prerequisite of two conspirators. First, the only non-preempted torts alleged by Plaintiffs (related to alleged breaches of the anti-solicitation clauses in Ridley's contract) occurred *during* Ridley's employment with ChemTreat, at which time the intracorporate conspiracy doctrine applies. Second, each of the non-preempted torts at issue in the conspiracy claim relate to alleged interference with a contract to which Ridley is a party. Because an individual cannot interfere with a contract to which he is a party, Ridley cannot be the necessary second party to an alleged conspiracy to interfere with his contract with Plaintiffs.

Finally, Plaintiffs' trade secret misappropriation claims against ChemTreat have no basis in law or fact. First, Plaintiffs had a full opportunity to conduct discovery and have not identified any evidence of misappropriation by ChemTreat. Similarly, the Special Master and his designated forensic expert did not identify any evidence of misappropriation by ChemTreat. Plaintiffs have acknowledged that the sole document ChemTreat's forensic expert located on ChemTreat's system, a draft 2015 bid, is not a trade secret. Second, Plaintiffs have failed to produce 99% of the documents they contend are trade secrets that were misappropriated, meaning they cannot prove the existence of a protectable trade secret as to those documents. Third, only nine of the 16,000 documents Plaintiffs claim were misappropriated were accessed by Ridley from his ChemTreat computer. Even if that access sufficed to show ChemTreat's acquisition of those documents within the meaning of the misappropriation statutes, Plaintiffs have produced only five of those nine documents. And as to those five, there is no evidence that they contain protectable trade secret information. Fourth, there is no evidence that ChemTreat used any allegedly misappropriated trade secret or that Plaintiffs have suffered any damages as a result of any alleged misappropriation. ChemTreat is also not vicariously liable for Mr. Ridley's alleged trade secret

misappropriation—there is no evidence that ChemTreat was contemporaneously aware of any such misappropriation, or that ChemTreat encouraged or induced it. To the contrary, the evidence shows that ChemTreat expressly prohibits the retention or use of information belonging to a former employer and that Ridley understood, acknowledged, and agreed to that restriction on the instrumentalities he was permitted to use in the scope of his employment by ChemTreat.

### f. Ridley's Theory:

After legitimate market competition attempts failed to stem Nalco/Ecolab's loss of market share and employees to ChemTreat, Nalco/Ecolab shifted focus from legitimate market competition to illegitimate courtroom tactics. The shift in tactics was designed to stifle ChemTreat's growth and to intimidate and harass employees who left Nalco/Ecolab for the greener pastures of ChemTreat and to discourage other Nalco/Ecolab employees from following suit.

Ridley, among many other former Nalco/Ecolab employees, has been caught in the crossfire. Not only are Ridley and the other former Nalco/Ecolab employees collateral damage in the struggle between water treatment titans but Nalco/Ecolab deploy scorched earth litigation tactics. They relentlessly and ruthlessly prosecute these lawsuits to hurt, punish, and ruin their former employees and stifle competition and the hemorrhaging of employees to a competitor. Their aim has nothing to do with the merits of the case, which are immaterial to them, and everything to do with causing as widespread of wreckage as can be caused by whatever means can be deployed.

Here, Nalco/Ecolab accepted Ridley's resignation the same day he gave it on July 1, 2021. They immediately involved legal counsel and IT professionals to guide them to review Ridley's computer activity and to set a course for litigation with Ridley and "the competition" – ChemTreat

9

– as that was Nalco/Ecolab's game all along. But they did not put a litigation hold in place until January 2022.

While Ridley sought direction from Nalco/Ecolab on how to comply with the requirements of Nalco/Ecolab upon his exit from HR, he was largely ignored and was provided few instructions all while Nalco/Ecolab plotted this lawsuit. For instance, he was never instructed to make a search for any Nalco/Ecolab documents in his possession or stored on electronic devices and to return them. He instead followed the few instructions he was provided, which led to him returning his Nalco/Ecolab issued laptop and LaCie hard drive exactly how he was instructed to return these devices in the summer of 2021.

Despite the involvement of legal and IT professionals for Nalco/Ecolab in July 2021, no one put a hold on Nalco/Ecolab's computer data to preserve it for this lawsuit. So, despite Nalco/Ecolab's ability to preserve all the information, it was deleted and lost beyond retrieval. This was pivotal evidence, and Nalco/Ecolab knew it was deleted before they filed suit, but they filed suit just the same.

Despite the involvement of legal and IT professionals for Nalco/Ecolab in July 2021, no one put a hold on the Nalco/Ecolab laptop and LaCie hard drive Ridley returned as instructed to preserve it for this lawsuit. So, despite the ability to preserve all information, the devices were either wiped and redeployed or lost beyond retrieval. This was pivotal evidence, and Nalco/Ecolab knew the devices were wiped or lost before filing suit, but they filed suit just the same.

Nalco/Ecolab also knew they had not suffered any harm as the result of any actions or inactions by Ridley and/or ChemTreat before they filed suit. But they filed suit just the same.

Not only did they file suit after they destroyed and/or lost the pivotal evidence and despite their knowledge they were not harmed, but they alleged they had actually been directly damaged

by the loss of customers to ChemTreat by reason of alleged misconduct by Ridley and by ChemTreat in four (4) separate complaints. They went so far as to swear under oath that this was true in discovery, but that too was false.

Because of their misconduct and the lack of merits to their claims, Nalco/Ecolab have been forced to make more and more outrageous accusations against Ridley and ChemTreat as they try to make unrelated threads weave into something coherent to salvage their lawsuit. The loudly screeched allegations often have no truth to them, and those that have some truth to them are exaggerated and stretched so far that there is no resemblance to the truth when they are done with what was once partially true. And all of this is done to distract from Nalco/Ecolab's misconduct and the lack of merits to their claims in the cynical hope that if they say it enough times and if they say it loud enough over and over and over and again that maybe, just maybe, the Court or the jury will take their eye off the ball and start to believe the elaborate fiction and ignore the actual evidence.

But after all of the accusations fall by the wayside and the cacophony of the stream of consciousness allegations soften, or at least fade into the background, what is left is this: Nalco/Ecolab have no evidence to support any of their claims. *First*, they cannot prove that any of the information or documents Ridley allegedly took are trade secrets under the Defend Trade Secrets Act ("DTSA") and/or Tennessee Uniform Trade Secrets Act ("TUTSA"). *Second*, they cannot prove disclosure, use, or acquisition by improper means of any alleged trade secrets by Ridley or ChemTreat as required under the DTSA or TUTSA. *Third*, Nalco/Ecolab lack a viable damages theory to support any claim for relief, including those under the DTSA and TUTSA. *Fourth*, they failed to properly plead a claim for attorney's fees or litigation expenses under any legal theory, and the documentary evidence they have provided to support such claims is

inadmissible. *Fifth*, their breach of duty of loyalty claim is preempted by the DTSA and TUTSA. *Sixth*, even if not preempted, there is no proof of a breach of duty of loyalty. *Seventh*, Nalco/Ecolab cannot establish a breach of contract claim against Ridley.

After Nalco/Ecolab's paucity of proof is examined under the crucible of trial, it will be revealed that all they have are conspiracy theories to support their claims. Given the allegations' hollowness, there is a reasonable question as to whether Nalco/Ecolab intentionally discarded Ridley's electronic information and devices prior to filing suit to give them free license to argue about the content of the missing documents, or if they merely took advantage of their negligence by arguing the content of the missing documents. In any event, the missing evidence being missing allowed them to spin up this litigation with allegations about what the documents might contain but without being troubled by the documents' actual content.

But Nalco/Ecolab, sophisticated companies both, received high level advice before filing suit and they *knew* before they filed suit that they had no valid claims and they had already disposed of the key evidence. Yet they filed suit just the same. They then made misrepresentation after misrepresentation about actual losses of customers, damages, alleged misconduct, and so on that led to any number of rabbit trails, and each new rabbit trail has been examined and dispelled time and again. Yet they prosecuted suit just the same and continued to invent new rabbit trails as each prior fantastical allegation was brought to a close with evidence.

Through it all Nalco/Ecolab, both in its instigation of suit and in its willful and belligerent prosecution of suit, demonstrated beyond doubt their bad faith in bringing their DTSA and TUTSA claims – the drivers of this entire lawsuit. So, Ridley must be awarded his attorneys' fees and litigation expenses incurred through defending himself against these bad faith claims pursuant to 18 United States Code § 1836(b)(3)(D) and Tennessee Code Annotated § 47-25-1705(1).

## IV. Contested Issues of Law

The contested issues of law are set forth in various motions pending before the Court, including each party's motions *in limine*. Docs. 371-376.

ChemTreat has filed the following motions that are pending:

- Motion for Summary Judgment (Doc. 255);

- Motion for Sanctions for Plaintiffs' Spoliation (Doc. 276) (the Court previously held that Plaintiffs spoliated Ridley's second Ecolab-issued laptop and the mobile drive Ridley returned to Ecolab, Doc. 349 at 27, but has not yet addressed the sanctions that should be levied for that spoliation);

- Motion to Strike Portions of Lieb Declaration (Doc. 315);

- Motions *in Limine* (Doc. 375).

- Trial Brief, to be filed today.

The contested issues are set forth in full in the above-referenced motions and the oppositions and replies thereto.

Ridley has filed the following motions that are pending:

- Anthony Ridley's Motion for Summary Judgment [Doc. 259] and Brief in Support of Anthony Ridley's Motion for Summary Judgment [Doc. 260];

- Anthony Ridley's Motion for Spoliation Sanctions [Doc. 261] and Anthony Ridley's Brief in Support of his Motion for Spoliation Sanctions [Doc. 263] (partially resolved by Doc. 349, "Accordingly, the Court will GRANT ChemTreat and Ridley's motion for spoliation sanctions to the extent Ecolab/Nalco destroyed ESI located on Ridley's replacement laptop and the mobile drive he returned after his resignation" (PageID #: 14444), but reserving sanctions for subsequent order (PageID #: 14461); and

- Anthony Ridley's Motion *in Limine* (Doc. 371) and Brief in Support of Anthony Ridley's Motion *in Limine* (Doc. 372).

- Anthony Ridley's Trial Brief, to be filed today.

The contested issues of law between Ridley and Nalco/Ecolab are more fully set forth in Documents 259-60, 262-64, 287, 302, 305, 371-74, and 396.

Plaintiffs have filed the following motions that are pending:

- Motion for Partial Summary Judgement as to Mr. Ridley (Doc. 262)

- Motions *in Limine* (Doc. 373)

- Motion for Sanctions for Rule 37(e) Spoliation as to Defendants (Doc. 292)

- Trial Brief, to be filed today.

The contested issues of law are set forth in full in the above-referenced motions and the oppositions and replies thereto.

**V.**     **Exhibits**

The parties have disclosed exhibits in accordance with Federal Rule of Civil Procedure 26(a)(3)(C).  The parties' joint exhibit list allows the Court to determine which party is offering a given exhibit into evidence.  The parties have endeavored to stipulate to the admissibility of all exhibits to the extent possible.  The parties have stipulated to the admissibility and authenticity of Exhibits JTX001-JTX006, 8, 12-13, 15, 22, 28-29, 35, 37-38, 41-44, 51-53, 56, 62, 64, 67-68, 70-71, 74-75, 79, 92-93, 95-97, 101-102, 104, 118, 142, 144-146, 152, 169, 173, and 182.  The parties cannot stipulate to the admissibility of Exhibits 7, 9, 10-11, 14, 16-21, 23-27, 30-34, 36, 39, 40, 45-50, 54-55, 57-61, 63, 65-66, 69, 72-73, 76-78, 80-91, 94, 98-100, 103, 105-117, 119-128, 130-141, 143, 147-151, 153-168, 170-172, 174-181, and 183-246.  The parties' joint list of exhibits is attached hereto as **Appendix A**, and (1) states whether the parties have stipulated to the authenticity of each exhibit; (2) to the extent the parties have not stipulated to the authenticity of an exhibit, identifies the witness who will authenticate the exhibit or identifies the rule of evidence that makes the exhibit self-authenticating, as required by the Court's Scheduling Order (Doc. 362 at 1); and (3) to the extent the parties have not stipulated to the admissibility of an exhibit, identifies any objections interposed to that exhibit by a party.  Ridley and ChemTreat have summarized the basis for their objections in Appendix A; Plaintiffs have indicated the basis

for their objections using a code, the key to which appears in the margin.[1] In accordance with the Court's Scheduling Order (Doc. 362 at 2), and to avoid an unnecessary and complex sealing motion, the parties will jointly submit directly to the Court a USB drive containing electronic copies of all proposed exhibits objected to by any party on the grounds of authenticity or admissibility. The parties will also jointly submit directly to the Court a binder containing hardcopies of any proposed exhibits objected to by any party on the grounds of authenticity or admissibility that are printable.[2]

## VI. **Witnesses**

The parties have disclosed witnesses in accordance with Federal Rule of Civil Procedure 26(a)(3)(A), and a list of witnesses (to be called live and/or by deposition) is set forth below.

### a. For Plaintiffs:

| No. | Name | Address | Telephone Number |
|-----|------|---------|------------------|
| 1 | Corey DeMarco | C/O Plaintiffs' Counsel Martin S. Chester Faegre Drinker Biddle & Reath LLP 90 S 7th Street, Unit 2200, Minneapolis, MN 55402 | (612) 766-7000 |
| 2 | Jacqueline Herrera | C/O Plaintiffs' Counsel Martin S. Chester | (612) 766-7000 |

---

[1]

| Objection Codes | Objection |
|-----------------|-----------|
| A | Authentication—Exhibit has not been properly authenticated and is not self-authenticating (Fed. R. Evid. 901). |
| F | Insufficient foundation |
| R | Relevance (Fed. R. Evid. 402) |
| P | Probative value outweighed: Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| H | Hearsay—Out-of-court statement to prove truth of matter asserted; not excepted from the rule against hearsay (Fed. R. Evid. 801, 802) |
| S | Improper summary of evidence (Fed. R. Evid. 1006) |

[2] Documents that cannot be printed legibly due to size or formatting (e.g., Excel documents) will be submitted in electronic form only.

| | | Faegre Drinker Biddle & Reath LLP 90 S 7th Street, Unit 2200, Minneapolis, MN 55402 | |
|---|---|---|---|
| 3 | Jennifer Semmler | C/O Plaintiffs' Counsel Martin S. Chester Faegre Drinker Biddle & Reath LLP 90 S 7th Street, Unit 2200, Minneapolis, MN 55402 | (612) 766-7000 |
| 4 | David Garza | C/O Plaintiffs' Counsel Martin S. Chester Faegre Drinker Biddle & Reath LLP 90 S 7th Street, Unit 2200, Minneapolis, MN 55402 | (612) 766-7000 |
| 5 | Benjamin Irwin | C/O Plaintiffs' Counsel Martin S. Chester Faegre Drinker Biddle & Reath LLP 90 S 7th Street, Unit 2200, Minneapolis, MN 55402 | (612) 766-7000 |
| 6 | Tyler Bates | C/O Kyle Eiselstein Miller & Martin PLLC 1200 Volunteer Building 832 Georgia Avenue Chattanooga, TN 37402 | (423) 756-6600 |
| 7 | Laurence Lieb | Tyger Forensics, LLC 53 W Jackson Blvd, Suite 609 Chicago, IL 60604 | (312) 613-4240 |
| 8 | Records custodians necessary to authenticate exhibits. | | |
| 9 | Any witness on ChemTreat's witness list. | | |
| 10 | Any witness on Mr. Ridley's witness list. | | |
| 11 | Any witness necessary for rebuttal testimony. | | |
| 12 | Any witness necessary for impeachment. | | |
| 13 | Any witness identified in the parties' responses to interrogatories, responses to requests for production, or at depositions. | | |
| 14 | Any individual who is deposed in connection with this matter after the date this pretrial order is submitted. | | |

**b. For Defendant ChemTreat:**

| No. | Name | Address | Telephone Number |
|-----|------|---------|------------------|
| **Witnesses ChemTreat Expects to Call at Trial** | | | |
| 1 | John Alcorn | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira<br>Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | 202-434-5000 |
| 2 | Richard "Clay" Cissell | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira<br>Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | 202-434-5000 |
| 3 | Anthony Ridley | C/O Ridley's Counsel<br>Lance W. Pope<br>Patrick, Beard, Schulman & Jacoway PC<br>Market Street, Suite 300<br>Chattanooga, TN 37402 | 423-756-7117 |
| **Witnesses ChemTreat May Call if the Need Arises** | | | |
| 4 | Tyler Bates | C/O Bates's Counsel<br>Kyle W. Eiselstein<br>Miller & Martin PLLC<br>1200 Volunteer Building<br>832 Georgia Avenue<br>Chattanooga, TN 37402 | 423-756-6600 |
| 5 | Robert Cunningham | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira<br>Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | 202-434-5000 |
| 6 | Corey DeMarco | C/O Plaintiffs' Counsel<br>David J. Walton<br>Fisher & Phillips LLP<br>Two Logan Square, 12th Floor<br>100 N. 18th Street<br>Philadelphia, PA 19103 | 610-230-6105 |
| 7 | David Ellis | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira | 202-434-5000 |

| | | Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | |
|---|---|---|---|
| 8 | Douglas N. Ellis | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira<br>Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | 202-434-5000 |
| 9 | David Garza | C/O Plaintiffs' Counsel<br>David J. Walton<br>Fisher & Phillips LLP<br>Two Logan Square, 12th Floor<br>100 N. 18th Street<br>Philadelphia, PA 19103 | 610-230-6105 |
| 10 | Jacqueline Herrera | C/O Plaintiffs' Counsel<br>David J. Walton<br>Fisher & Phillips LLP<br>Two Logan Square, 12th Floor<br>100 N. 18th Street<br>Philadelphia, PA 19103 | 610-230-6105 |
| 11 | Benjamin Irwin | C/O Plaintiffs' Counsel<br>David J. Walton<br>Fisher & Phillips LLP<br>Two Logan Square, 12th Floor<br>100 N. 18th Street<br>Philadelphia, PA 19103 | 610-230-6105 |
| 12 | Steve Leavell | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira<br>Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | 202-434-5000 |
| 13 | Karry Mackie | Address Unknown | Phone Number Unknown |
| 14 | James D. Vaughn | C/O ChemTreat's Counsel<br>Vidya Atre Mirmira<br>Williams & Connolly LLP<br>680 Maine Ave. SW<br>Washington, DC 20004 | 202-434-5000 |

| 15 | Records custodians necessary to authenticate exhibits. |
| 16 | Any witness on Plaintiffs' witness list. |
| 17 | Any witness on Ridley's witness list. |
| 18 | Any witness necessary for rebuttal testimony. |
| 19 | Any witness necessary for impeachment. |
| 20 | Any witness identified in the parties' responses to interrogatories, responses to requests for production, or at depositions. |
| 21 | Any individual who is deposed in connection with this matter after the date this pretrial order is submitted. |

### a. For Defendant Ridley:

| No. | Name | Address | Telephone Number |
|---|---|---|---|
| 1. | Anthony Ridley | c/o Lance Pope 133 Gholdston Drive, Dayton, TN 37321 | 423-756-7117 |
| 2. | Andrew Rapolevich | 7003 Chadwick Dr., Suite 153 Brentwood, TN 37027 | 615-933-4322 |
| 3. | Records custodians necessary to authenticate exhibits. | | |
| 4. | Any witness on Plaintiffs' witness list. | | |
| 5. | Any witness on ChemTreat's witness list. | | |
| 6. | Any witness necessary for rebuttal testimony. | | |
| 7. | Any witness necessary for impeachment. | | |
| 8. | Any witness identified in the parties' responses to interrogatories, responses to requests for production, or at depositions. | | |
| 9. | Any individual who is deposed in connection with this matter after the date this pretrial order is submitted. | | |

## VII. Other Matters

a. **Trial:** This case is set for trial before the undersigned and a jury at 9:00 a.m. on January 29, 2024. Counsel shall be present on the first day before commencement of trial to take up any preliminary matters. The probable length of trial is 5 days. The parties should be prepared for trial on the scheduled date. If this case is not heard immediately, it will be held in line until the Court's schedule allows the trial to begin. **ALL PARTIES DEMAND A TRIAL BY JURY AND DO NOT WAIVE THEIR RIGHT TO A JURY TRIAL ON ISSUES THAT ARE TRIABLE TO THE JURY**.

b. **Possibility of Settlement:** The parties have engaged in settlement discussions, including a formal mediation process as well as further informal discussions, but have been unable to resolve the dispute. The parties do not currently anticipate a possibility of settlement of this matter before trial.

c. **Miscellaneous Matters:**

<u>Procedure for Advance Disclosure of Live Witnesses</u>

The parties have agreed that they will disclose the identity of witnesses they will call live at trial by 8:00 a.m. one calendar day preceding the day the witness will testify (for example, if the witness will testify live on a Wednesday, the party putting on the witness will disclose the identity of the witness on Tuesday by 8:00 a.m.).

<u>Procedure for Advance Disclosure of Witnesses Appearing by Deposition Designations</u>

The parties agree that there should be a process for advance disclosure of witnesses appearing by deposition designations during trial to allow the parties time to prepare the video and audio files that will accompany the designated testimony. However, the parties have not yet reached agreement on what that process will be. The parties have agreed to continue meeting and conferring in good faith to reach an agreement regarding a proposal for advance disclosure of witnesses appearing by deposition designations.

* * *

This Final Pretrial Order is agreed upon by the parties as of December 18, 2023.

**SO ORDERED.**

**/s/**_____

**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

**APPROVED AS TO FORM AND SUBSTANCE:**

*/s/ Troy C. Homesley*
Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: vmirmira@wc.com
E-mail: jlund@wc.com
E-mail: thomesley@wc.com

Kyle W. Eiselstein, Tenn. BPR No. 020727
Zachary H. Greene, Tenn. BPR No. 024451
Erin E. Steelman, Tenn. BPR No. 038463
MILLER & MARTIN PLLC
1200 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-6600
kyle.eiselstein@millermartin.com
zac.greene@millermartin.com
erin.steelman@millermartin.com

*Attorneys for Defendant ChemTreat, Inc.*

*/s/ Lance W. Pope*
Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C. 537
Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

/s/ Emmanuel L. Brown
J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

Edward N. Boehm, Jr.
FISHER & PHILLIPS LLP
1230 Peachtree St., NE, Suite 330
Atlanta, GA 30309
tboehm@fisherphillips.com

Randall E. Kahnke (*pro hac vice*)
Martin S. Chester (*pro hav vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
90 South 7th Street, Unit 2200
Minneapolis, Minnesota 55402
randall.kahnke@faegredrinker.com

martin.chester@faegredrinker.com

Emmanuel L. Brown (*pro hac vice*)
FARGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
emmanuel.brown@faegredrinker.com

David Yoshimura (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., Suite 3100
Des Moines, Iowa 50309
david.yoshimura@faegredrinker.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served via the Court's

CM/ECF system on December 18, 2023, upon the following:

J. Gregory Grisham, BPR No. 013810
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive, Suite 312
Memphis, Tennessee 38120
ggrisham@fisherphillips.com

David J. Walton (*pro hac vice*)
Edward G. Winsman (*pro hac vice*)
Kathleen Laubenstein (*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
dwalton@fisherphillips.com
ewinsman@fisherphillips.com
klaubenstein@fisherphillips.com

Pavneet Uppal (*pro hac vice*)
FISHER & PHILLIPS LLP
3200 North Central Avenue, Suite 1550
Phoenix, AZ 85012
puppal@fisherphillips.com

James Michael Honeycutt (*pro hac vice*)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
jhoneycutt@fisherphillips.com

Edward N. Boehm, Jr.
FISHER & PHILLIPS LLP
1230 Peachtree St., NE, Suite 330
Atlanta, GA 30309
tboehm@fisherphillips.com

Randall E. Kahnke (*pro hac vice*)
Martin S. Chester (*pro hav vice*)
FAEGRE DRINKER BIDDLE & REATH
LLP
90 South 7th Street, Unit 2200
Minneapolis, Minnesota 55402

Lance W. Pope, BPR No. 025054
Jeremy M. Cothern, BPR No. 027166
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 300
Chattanooga, TN 37402
(423) 756-7117 – phone
(423) 267-5032 – fax
lpope@pbsjlaw.com
jcothern@pbsjlaw.com

*Attorneys for Anthony Ridley*

24

randall.kahnke@faegredrinker.com
martin.chester@faegredrinker.com

Emmanuel L. Brown (*pro hac vice*)
FARGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
emmanuel.brown@faegredrinker.com

David Yoshimura (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., Suite 3100
Des Moines, Iowa 50309
david.yoshimura@faegredrinker.com

*Attorneys for Plaintiffs*

/s/ *Troy C. Homesley*
Troy C. Homesley