UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, | |
| *Plaintiffs*, | Case No. 1:22-cv-00050 |
| v. | District Judge Travis R. McDonough |
| ANTHONY RIDLEY and CHEMTREAT, INC., | Magistrate Judge Christopher H. Steger |
| *Defendants*. | |

**CHEMTREAT, INC.'S PROPOSED JURY INSTRUCTION ON SPOLIATION**

Pursuant to the Court's December 19, 2023 order, Defendant ChemTreat, Inc. provides the following proposed statements of fact and law regarding the parties' spoliation, to be incorporated in a preliminary jury instruction and a separate jury instruction at the close of trial, along with a prefatory discussion of the law governing the content of those statements.

**I.  INTRODUCTORY STATEMENT ON THE PROPOSED JURY INSTRUCTION ON THE PARTIES' SPOLIATION**

    **A.  Rule 37(e)(1) Prohibits an Adverse Inference Instruction as to ChemTreat.**

Plaintiffs have argued the Court should give a permissive adverse inference instruction regarding ChemTreat's **negligent** spoliation. *See* Doc. 374 at 8–9, Doc. 420 at 6–11.[1] Such an instruction is not permitted. Doc. 397 at 5–8; Doc. 423 at 26.[2] Both precedent and the plain language of Rule 37(e) limit adverse inference instructions—whether mandatory or permissive—

---

[1] Unless noted, all emphasis is added and quotations are cleaned up with internal citations omitted.

[2] Citations to previously filed documents use the ECF branded page numbers where those numbers vary from internal page numbering due to, *e.g.*, tables of contents or exhibit cover sheets.

1

to the ***intentional*** spoliation of ESI. *See Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) ("It bears adding that, to the extent Applebaum sought an adverse inference instruction for spoliation of electronic information, a 2015 amendment to Civil Rule 37(e)(2) required her to show that Target had 'intent' to deprive her of the information's use. A showing of negligence or even gross negligence will not do the trick."); Doc. 349 at 20 (quoting Rule 37(e)). Under the regime established by the 2015 amendment:

> Rule 37(e) now reserves the harshest sanctions, such as adverse inference instructions, summary judgments or dismissals, only for cases in which the court can "fin[d] that the [spoliating] party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2)

*Yoe v. Crescent Sock Co.*, 2017 WL 5479932, at *14 (E.D. Tenn. Nov. 14, 2017); *Blasi v. United Debt Servs., LLC*, 2020 WL 9597842, at *3 (S.D. Ohio June 24, 2020) ("[T]o obtain the more severe sanctions available under Rule 37(e)(2), such as adverse inferences or default judgment, the party seeking sanctions must establish that the opposing party acted with the intent to deprive another party of the information's use in the litigation.").

The Court already held that "sanctions under Rule 37(e)(2) are not appropriate" as to ChemTreat because "[a]t worst, the record reflects that ChemTreat was negligent in failing to preserve the ESI on Ridley's laptop." Doc. 349 at 30. Accordingly, an adverse inference instruction, whether permissive or mandatory, is barred as to ChemTreat.[3]

---

[3] The Court left open the question of whether Ridley's spoliation of ESI on the WD drive satisfied the high bar required for a finding of intentional spoliation under Rule 37(e)(2). Doc. 349 at 33. Even if the Court were to determine that Plaintiffs have met their burden of proving Ridley's intentional spoliation by clear and convincing evidence (*see, e.g.*, *Franklin v. Shelby Cnty. Bd. of Educ.*, 2021 WL 6066673, at *3 (W.D. Tenn. Sept. 28, 2021)), that finding would not permit an adverse inference instruction as to ChemTreat, which did not have control over Ridley's personally owned WD drive. *Adkins v. Wolever*, 692 F.3d 499, 505 (6th Cir. 2012) (affirming denial of adverse inference instruction against defendant because there was no evidence that he had "control" over the spoliated evidence); *see also Gurvey v. Fixzit Nat. Install Servs., Inc.*, 2011 WL 550628, at *5 (D.N.J. Feb. 8, 2011) (reciting rule that "spoliation inferences are only appropriately entered against the party that actually destroyed the evidence"). Instead, ChemTreat would be

2

This bar applies equally to express and implied adverse inferences. As the Advisory Committee Notes for Rule 37(e) explain, while a court enjoys broad discretion in crafting a remedy for negligent spoliation, "care must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." Fed. R. Civ. P. 37(e)(1), adv. comm. notes (2015). To avoid suggesting an adverse inference by implication, other courts in the Sixth Circuit that have chosen to instruct juries about the loss of evidence have simply informed jurors that they may give the facts surrounding a party's spoliation "whatever weight you deem appropriate as you consider all of the evidence presented at trial." *Hargis v. Overton Cnty., Tennessee*, 2023 WL 8604139, at *15 (M.D. Tenn. Dec. 12, 2023); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 2018 WL 3322305, at *3 (M.D. Tenn. May 14, 2018).

**B.     Any Statement of Facts Regarding ChemTreat's Spoliation Must Not Violate Rule 403.**

Rule 403 authorizes the exclusion of relevant evidence if its probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Rule 403 applies to all evidence presented at trial, including evidence of spoliation. *See, e.g.*, *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, 2022 WL 4547022, at *4 (D. Minn. Sept. 29, 2022) ("Any such evidence [of spoliation] is subject to the limitations imposed by the Federal Rules of Evidence, including the Court's authority to 'exclude relevant evidence if its probative value is substantially outweighed by a

---

entitled to at least a limiting instruction, and potentially severance, were an adverse inference instruction to be granted as to Ridley's spoliation. *See, e.g.*, *Est. of Hill by & through Grube v. NaphCare, Inc.*, 2022 WL 1464830, at *16 (E.D. Wash. May 9, 2022) (noting it is "unreasonable to expect that jurors can comply with instructions" permitting them to apply an adverse inference against one defendant while prohibiting them from applying that same inference against a related defendant).

3

danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" (quoting Fed. R. Evid. 403)). Given the limited scope of the ESI spoliated by ChemTreat, and the Special Master's findings regarding the additional discovery the Court authorized as a sanction to mitigate the prejudice of that spoliation (Doc. 361 at 2), the Court must carefully balance the relevance of information about ChemTreat's spoliation with the risks identified in Rule 403 to ensure that any statement of facts provided to the jury does not confuse the issues, mislead the jury, or unfairly prejudice ChemTreat—including by inviting speculation as to issues addressed by the Court's spoliation order (Doc. 349) and the Special Master's report (Doc. 413).

### 1. The probative value of the ESI lost when Ridley's ChemTreat laptop was wiped is limited.

The Court previously held that ChemTreat's spoliation resulted in the loss of relevant information regarding "the specific documents Ridley accessed using his ChemTreat-issued computer" and prejudiced Plaintiffs' ability to determine "to what extent ChemTreat appreciated Ridley's actions." Doc. 349 at 29. The probative value of that information to Plaintiffs' two misappropriation theories is limited, however, given the other relevant facts here. *See* Doc. 256 at 14–22; Doc. 423 at 8–13.

#### a. Knowing acquisition of trade secrets through improper means

Information regarding the documents that Ridley accessed using his ChemTreat laptop (or saved to its hard drive) could be probative as to Plaintiffs' claim that Ridley knowingly acquired Plaintiffs' trade secrets using improper means. But any independent probative value of that evidence is minimal, given Ridley's testimony that the WD drive (which he admittedly retained and accessed after resigning from Ecolab) contained multiple back-up copies of the documents on his Nalco/Ecolab OneDrive. Doc. 349 at 2 & n.2.

4

As to ChemTreat, even that limited probative value disappears: Because there is no evidence that ChemTreat monitored or otherwise had contemporaneous knowledge of the contents of Ridley's ChemTreat laptop or the documents that Ridley accessed using that laptop, information about the documents Ridley accessed using his ChemTreat laptop (or saved to its hard drive) is not probative as to a theory of knowing acquisition by ChemTreat.[4]  Doc. 256 at 21–26; Doc. 423 at 13–15.

### b. Knowing use of improperly acquired trade secrets

The relevance of the ESI on Ridley's ChemTreat laptop to Plaintiffs' other theory of misappropriation—the knowing use of Plaintiffs' alleged trade secrets—is likewise limited at best. Use, by definition, requires commercial exploitation, such that any effort by Ridley (a sales representative) to use Plaintiffs' documents to unfairly compete with Plaintiffs would necessarily leave some trace outside the ESI on his ChemTreat laptop, such as communications with other ChemTreat employees or potential customers.  Doc. 256 at 20–21; Doc. 423 at 15–17.  The wiping of Ridley's ChemTreat laptop did not impact such communications, nor did it impact Plaintiffs' ability to obtain evidence of improper solicitation (from their customers) or of lost profits (from their own records).  Plaintiffs admit they have no such evidence.  Doc. 256 at 27–29; Doc. 423 at 17–19.  And they have never explained how, in the admitted absence of such evidence of

---

[4] Plaintiffs have speculated that Ridley could have used his ChemTreat laptop to transfer their alleged trade secrets to other ChemTreat employees.  While such a transfer could be probative of ChemTreat's alleged knowing acquisition of such documents, the various methods through which Plaintiffs imagined such a transfer could have occurred all involve the use of systems or devices not affected by ChemTreat's spoliation of the ESI on Ridley's ChemTreat laptop, such as transfer via Ridley's ChemTreat or personal email accounts, ChemTreat's network folders, third-party cloud accounts (such as Dropbox), or USB drives.  Plaintiffs identified no evidence of any such transfer during discovery.  The Court granted Plaintiffs' request to reopen discovery specifically to examine whether there was evidence supporting Plaintiffs' speculation regarding such transfers (*see* Doc. 361 at 3) and the Special Master's report, which the Court adopted without change, identified none.  Doc. 419 (rejecting objections to Doc. 413).

5

commercial exploitation of their alleged trade secrets by Ridley or ChemTreat, information about documents simply stored on or accessed using Ridley's ChemTreat laptop would be probative on the question of statutory misappropriation under a "use" theory.

### 2. Without adequate context, information regarding ChemTreat's spoliation creates a significant risk of confusing the issues, misleading the jury, and unfairly prejudicing ChemTreat.

Because any statement of facts the Court provides to the jury regarding ChemTreat's spoliation will constitute evidence to be assessed by the jury, the Court must ensure any such statement provides sufficient context to avoid the risks enumerated in Rule 403. For example, to prevent ChemTreat being unfairly prejudiced by speculation that there was something nefarious about the negligent wiping of Ridley's ChemTreat-issued laptop, any statement of facts provided to the jury should include information regarding the circumstances that led to that wiping.[5] Likewise, to avoid confusing the issues, any statement of facts provided to the jury should clearly distinguish between the information that was lost due to ChemTreat's spoliation (ESI on the laptop's hard drive) and information that was not affected by that spoliation (ESI on ChemTreat's network systems). Finally, to avoid misleading the jury (including through speculation as to issues addressed in the Special Master proceeding), any statement of facts provided to the jury should include the results of the additional discovery the Court authorized to mitigate the prejudice caused by ChemTreat's spoliation.

## II. PROPOSED STATEMENT OF FACTS REGARDING SPOLIATION

Consistent with the foregoing discussion, ChemTreat proposes that, should the Court exercise its discretion under Rule 37(e)(1) by providing a statement of facts to the jury regarding the parties' spoliation, the following statement of facts should be used:

---

[5] Providing such information would ensure that the jury does not improperly infer intentional spoliation, contrary to the Court's findings and the strictures of Rule 37(e).

6

Some of the evidence related to the issues in this lawsuit is not available because it was not preserved by the party that had control of it at a time when that party had a duty to preserve the evidence. I will now explain to you the circumstances in which evidence that should have been preserved by each of the parties was not preserved and how you may consider the fact that such evidence is not available in reaching your verdict.

Plaintiffs had a duty to preserve evidence relevant to this litigation beginning on or shortly after July 1, 2021, the date that Mr. Ridley resigned his employment with Ecolab.[6] However, Plaintiffs did not issue a litigation hold—an internal notice instructing employees to preserve information—at that time.[7] Plaintiffs did not issue a litigation hold with respect to Mr. Ridley until January 25, 2022.[8]

After Mr. Ridley's resignation, Plaintiffs arranged for Mr. Ridley to return electronic devices that Plaintiffs had provided to him.[9] On July 12, 2021, a vendor used by Plaintiffs confirmed that it had received two electronic devices from Mr. Ridley: the laptop he was using when he left Ecolab and a mobile storage drive.[10] When Plaintiffs' vendor received Mr. Ridley's Ecolab laptop and the mobile drive he returned, Plaintiffs had a duty to preserve the information on those devices, but Plaintiffs did not instruct their vendor to preserve them.[11] As a result, in August 2021, the vendor moved Mr. Ridley's laptop and the mobile drive he had returned to "available inventory."[12] Mr. Ridley's Ecolab laptop was then wiped and redeployed to another employee. At no time did Plaintiffs attempt to recall that laptop or otherwise attempt to recover any information from it.[13] In July 2022, Mr. Ridley's Ecolab laptop was destroyed at Plaintiffs' direction.[14] Because of Plaintiffs' failure to preserve Mr. Ridley's Ecolab laptop, the information on it is not available to the parties. That information includes information about what websites Mr. Ridley visited using the laptop, what documents Mr. Ridley stored on the laptop, and the documents themselves.

---

[6] Doc. 349 at 4–5, 25.

[7] Doc. 349 at 5.

[8] Doc. 349 at 7.

[9] Doc. 349 at 5.

[10] Doc. 349 at 5–6.

[11] Doc. 349 at 25, 26.

[12] Doc. 349 at 6.

[13] Doc. 349 at 6–7 (citing Plaintiffs' interrogatory response).

[14] Doc. 349 at 6–7 (citing Plaintiffs' interrogatory response).

Plaintiffs made no effort to locate the mobile drive that Mr. Ridley returned in July 2021 until January 2022.[15] At that time, Plaintiffs asked their vendor about the mobile drive returned by Mr. Ridley and were informed that the mobile drive had been destroyed. Because of Plaintiffs' failure to preserve the mobile drive returned by Mr. Ridley, the parties are not able to examine the physical device and the information on it is not available to the parties. That information includes information about what documents Mr. Ridley stored on the mobile drive and the documents themselves.

On February 9, 2022, Plaintiffs sent a letter to Mr. Ridley and ChemTreat accusing them of wrongdoing and instructing them to preserve potentially relevant evidence.[16] At that time, Mr. Ridley had certain electronic devices in his possession that contained potentially relevant information, including three USB drives that had been provided by Plaintiffs during Mr. Ridley's employment and a personally owned hard drive, manufactured by Western Digital, on which Mr. Ridley had backed up work documents during his employment with Plaintiffs.[17]

On February 9, 2022, Mr. Ridley deleted various files from two of the three USB drives he had received while working for Plaintiffs. The deleted files included documents belonging to Plaintiffs as well as Mr. Ridley's personal files.[18] Mr. Ridley had a duty to preserve the documents belonging to Plaintiffs at the time that he deleted them. In March 2022, Mr. Ridley returned the three USB drives to Plaintiffs, who were able to recover their deleted files.[19] Although Plaintiffs were able to recover their deleted files from the USB drives provided by Mr. Ridley, because of Mr. Ridley's deletion, the parties do not have all of the information that would otherwise have been available. Specifically, the parties no longer have what is known as "metadata" for the recovered documents. Metadata is information about a document, such as who the original author was, when the document was created, and whether and when the document was modified.

---

[15] Doc. 349 at 7; *see also* Doc. 276-4 at 6 (stating "no effort" made to recover the mobile drive returned by Mr. Ridley).

[16] Doc. 349 at 7.

[17] Doc. 349 at 6.

[18] *See* Doc. 293-6 at 9–10, Table 2 (identifying personal and Nalco/Ecolab documents deleted); Doc. 293-14 at 11, ¶ 29 (same).

[19] Doc. 349 at 7–8; *see also* Doc. 293-6 at 9, ¶ 35 & Table 2 (identifying "complete list" of "Deleted Folders and Files Recovered from Drive USB001"); Doc. 293-14 at 10, ¶ 22 (referencing deleted files recovered from USB001, per Lieb's original report); *id.* at 15, ¶ 37 (referencing recovery of "a file named 'Ridley Contacts.CSV' from [USB002]," previously discussed in Doc. 293-6, ¶ 39).

8

On February 14, 2022, Mr. Ridley ran a program called "CCleaner" on his Western Digital drive (or WD drive, for short) using a computer in his personal possession.[20] CCleaner makes any previously deleted documents unrecoverable.[21] When he ran CCleaner, Mr. Ridley had a duty to preserve the information on the WD drive, including any information the WD drive might have contained relating to documents he had previously deleted. Because Mr. Ridley ran CCleaner, the parties do not have all of the information that would otherwise have been available on the WD drive, including information about what documents Mr. Ridley stored on the WD drive and the documents themselves, as well as information about what documents Mr. Ridley had deleted from the WD drive and when those documents were deleted by Mr. Ridley.[22]

After ChemTreat received Plaintiffs' February 9, 2022 letter, it issued a litigation hold notice to various employees, including Mr. Ridley.[23] ChemTreat also instructed Mr. Ridley to send his ChemTreat-issued laptop to ChemTreat's legal department so that the information on it could be preserved.[24] Mr. Ridley followed ChemTreat's instruction and sent his ChemTreat laptop to ChemTreat's legal department around March 2, 2022, but when the laptop arrived at ChemTreat's headquarters, a receptionist mistakenly delivered it to ChemTreat's IT department instead of the legal department.[25] Because ChemTreat's IT department does not normally receive laptops that are subject to litigation holds, the IT employee who received Mr. Ridley's laptop treated Mr. Ridley's laptop like any other returned laptop and wiped and redeployed it to another employee.[26] When the laptop was wiped, ChemTreat had a duty to preserve the information on it.

When ChemTreat discovered the error, it recalled Mr. Ridley's laptop from the employee who was using it and attempted to recover the information that had been on it, but that information was not recoverable.[27] ChemTreat also ran a report using software from a third-party company called CrowdStrike after it discovered its error.[28] The CrowdStrike log created by ChemTreat provides some information about Mr. Ridley's use of his ChemTreat laptop, such as a log of all USBs plugged into that laptop and a log of all files that were accessed with the laptop from an

---

[20] Doc. 349 at 8, 17; Doc. 293-14 at 32, ¶ 90 (CCleaner used "on February 14, 2022 on 5:08:58 PM CST").

[21] Doc. 349 at 8.

[22] Doc. 349 at 8–9.

[23] Doc. 314 at 6–8 & n.5 (citing testimony); Doc. 413-1 at 119:15–19.

[24] Doc. 349 at 9; *see also* Doc. 314-1 at 2.

[25] Doc. 349 at 9–10; Doc. 314-1 at 2.

[26] Doc. 349 at 9, 28; Doc. 314-1 at 3; Doc. 293-13 at 27:16–28:25.

[27] Doc. 314-1 at 3.

[28] Doc. 314-1 at 3.

9

externally connected USB device.[29] Mr. Ridley's laptop would have had some information that is not available from the CrowdStrike log, including what documents Mr. Ridley stored on the laptop and copies of the documents themselves. As a result of ChemTreat's error, that information is not available to the parties.

ChemTreat's wiping of Mr. Ridley's laptop did not affect information stored on ChemTreat's network systems, including Mr. Ridley's email account, the documents Mr. Ridley stored on the cloud-based OneDrive provided by ChemTreat, and the network folders where Mr. Ridley was able to share information with other ChemTreat employees.[30]

Because of the loss of information from Mr. Ridley's ChemTreat laptop, the Court appointed an independent expert to review relevant evidence available on ChemTreat's network systems and the laptops of certain other ChemTreat employees.[31] Because of the loss of information from Mr. Ridley's WD drive, the Court also instructed the independent expert to review relevant evidence available on Mr. Ridley's iPad and his wife's computer.[32] The independent expert determined that (1) Mr. Ridley's wife's computer was used in August 2021 and September 2021 to access certain of Plaintiffs' documents that Mr. Ridley had saved to his WD drive while employed by Plaintiffs; (2) Plaintiffs' documents were not on Mr. Ridley's iPad; (3) the laptops of ChemTreat employees Clay Cissell, Tyler Bates, and Steve Leavell did not contain any of Plaintiffs' documents; (4) there was no evidence that those employees deleted any documents belonging to Plaintiffs from their laptops; (5) a search of those employees' e-mails containing the terms "Ecolab" or "Nalco" did not reveal any of Plaintiffs' documents; (6) text messages sent from Mr. Ridley's iPad do not indicate that he transferred Plaintiffs' information to ChemTreat; (7) a review of user data from devices owned by Mr. Ridley and from devices owned by ChemTreat using a variety of searching, sampling and other review strategies did not reveal any documents belonging to Plaintiffs; (8) no evidence was found showing that Mr. Ridley transferred Plaintiffs' files to ChemTreat on any of the ChemTreat computers that were reviewed; and (9) a review of the network folders where ChemTreat employees can share information did not reveal any of Plaintiffs' documents.[33]

---

[29] Doc. 349 at 7, 34 n.22.

[30] Doc. 349 at 9–10; Doc. 274-1 at 14.

[31] Doc. 361 at 3.

[32] Doc. 361 at 3.

[33] Doc. 419 at 2–3; Doc. 413 at 15–16, 22, 24–28.

### III. PROPOSED STATEMENT OF LAW REGARDING SPOLIATION

ChemTreat proposes that, should the Court exercise its discretion under Rule 37(e)(1) by providing an instruction regarding the parties' spoliation, the following statement of law should be included to guide the jury's consideration of the Court's factual summary:

> I have now finished my explanation of the evidence that each of the parties lost and the circumstances surrounding that loss. You may give the facts regarding the evidence each party lost and the determinations of the independent expert appointed by the Court as a result whatever weight you deem appropriate as you consider all of the evidence presented at trial.[34]

### IV. PROPOSED TIMING AND MODIFICATION OF SPOLIATION INSTRUCTION

ChemTreat proposes that any preliminary instruction to the jury containing the above-proposed statements of facts and of law should be provided immediately after the current Proposed Jury Instruction No. 12, "Brief Summary of the Claims." *See* Doc. 384-1 at 15–19.[35]

ChemTreat proposes that the same instruction can be given at the close of trial, with two relevant modifications: (1) change the first paragraph of the statement of facts to read, "I previously explained to you the circumstances in which certain evidence that should have been preserved by each of the parties was not preserved. I will remind you of those circumstances now."; and (2) change the statement of law to read, "You are reminded that you may give the facts regarding the evidence each party lost and the determinations of the independent expert appointed by the Court as a result whatever weight you deem appropriate as you consider all of the evidence presented at trial, applying the same instructions I have given you regarding how to evaluate the evidence presented at trial."

---

[34] *Hargis v. Overton Cnty., Tennessee*, 2023 WL 8604139, at *15 (M.D. Tenn. Dec. 12, 2023); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 2018 WL 3322305, at *3 (M.D. Tenn. May 14, 2018)

[35] The parties previously submitted competing proposals for Proposed Instruction No. 12. Defendants' proposal is identified as Proposed Instruction No. 12A (Doc. 384-1 at 15–17); Plaintiffs' proposal is identified as Proposed Instruction No. 12B (Doc. 384-1 at 18–19).

DATED: January 19, 2024                     Respectfully submitted,

/s/ Kyle W. Eiselstein
Kyle W. Eiselstein, Tenn. BPR No. 020727
Zachary H. Greene, Tenn. BPR No. 024451
Erin E. Steelman, Tenn. BPR No. 038463
MILLER & MARTIN PLLC
1200 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-6600
E-mail: kyle.eiselstein@millermartin.com
E-mail: zac.greene@millermartin.com
E-mail: erin.steelman@millermartin.com

Vidya Atre Mirmira (admitted *pro hac vice*)
William T. Burke (admitted *pro hac vice*)
Juli Ann Lund (admitted *pro hac vice*)
Troy C. Homesley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: vmirmira@wc.com
E-mail: wburke@wc.com
E-mail: jlund@wc.com
E-mail: thomesley@wc.com

*Attorneys for Defendant ChemTreat, Inc.*