UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY RIDLEY, and CHEMTREAT, INC., <br><br> Defendants. | Case No. 1:22-cv-00050-TRM-CHS <br><br> Hon. Travis McDonough <br><br> Magistrate Judge Christopher H. Steger |

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS REGARDING SPOLIATION**

As directed in the Court's Order dated December 19, 2023 [Doc. 424], plaintiffs Ecolab Inc. and Nalco Company, LLC (together, "Ecolab") submit the following proposed jury instructions regarding spoliation, consisting of proposed statements of fact and law, to be incorporated as the Court deems appropriate in preliminary jury instructions and in final jury instructions at the close of trial. Ecolab also submits a brief discussion supporting each proposed instruction.

**I.     REGARDING ANTHONY RIDLEY**

**Proposed Statement Of Facts – Ridley**

1. Between 2015 and 2018, Ridley downloaded full and partial backups of his Ecolab-issued laptop onto his personal hard drive (the "WD Drive"). (Court Order Regarding Spoliation dated Aug. 1, 2023, [Doc. No. 349] at 2.)

2. Ridley resigned from Ecolab, and began working for ChemTreat on July 2, 2021. (*Id.* at 5.) Ridley did not return the WD Drive to Ecolab, testifying during his deposition that he "forgot" there was information on the WD Drive. (*Id.* at 5-6.)

1

3. Ridley connected the WD drive to his ChemTreat-issued laptop on multiple occasions while employed at ChemTreat, including in August 2021, September 2021, and January 2022. (*Id.* at 7.) Ridley admits that he accessed Ecolab files on the WD Drive using the ChemTreat-issued computer. (Id. at 33.)

4. On February 9, 2022, Plaintiffs sent Ridley a letter accusing Ridley of downloading and copying proprietary, confidential, and trade-secret information prior to his resignation from Ecolab and asking Ridley to preserve any potentially relevant information (the "Preservation Letter"). Ridley testified during his deposition that he thought the Preservation Letter was a "joke." (*Id.*)

5. On February 14, 2022, Ridley ran CCleaner on the WD Drive. *(Id.* at 8.) CCleaner is a software specifically designed to delete information from computer hard drives beyond recovery. (*Id.* at 32.)

6. Ridley does not dispute that he was under an obligation to preserve the information that was on the WD Drive. (*Id.*)

7. The information that Ridley deleted from the WD Drive is permanently lost because Ridley used the CCleaner program on the WD Drive. (*Id.* at 32-33.)

8. The computer Ridley used to run CCleaner on the WD Drive would have contained relevant information. (*Id.* at 38.)

9. Inspection of the computer Ridley used to run CCleaner on the WD Drive would have "likely reveal[ed] whether Ridley transferred any documents from the WD Drive to the computer prior to running CCleaner on the WD Drive or otherwise stored [Ecolab] documents in a previously undisclosed location." (*Id.*)

2

10. "Ridley has consistently obscured his conduct throughout this litigation." (*Id.* at 36-37.) After disclosing the existence of a "personal hard drive," Ridley asserted that he last downloaded Ecolab files to the hard drive sometime in 2015 or 2016. (*Id.* at 37.) When he was under oath at his deposition, however, he testified that he downloaded Ecolab files to the WD Drive as late as 2020. (*Id.*) When Ecolab obtained the WD Drive, it was discovered that Ridley used an undisclosed computer to run the CCleaner software and delete information from the WD Drive five days after receiving Ecolab's Preservation Letter. (*Id.*)

11. Given "Ridley's evolving factual positions," Ecolab's inspection of the computer that Ridley used to run CCleaner on the WD Drive "could yield evidence that fundamentally alters the parties' arguments" in this case. (*Id.* at 38.)

12. The computer that Ridley used to run CCleaner on the WD Drive may contain "evidence of (1) Ridley's efforts to conceal evidence; (2) Ridley's dishonesty during the discovery phase; (3) Ridley's non-compliance with Plaintiffs' preservation notice; and (4) whether he improperly took and used Plaintiffs' documents when he left the company, and if so, to what extent." (*Id.* at 38-39.)

13. Prior to trial, the Court found that Ridley's "overall actions in this case cast significant doubt on his credibility." (*Id.* at 33.) The Court reopened discovery "so that [Ecolab] can obtain evidence from the computer Ridley used to run CCleaner on the WD Drive," and because "[Ecolab] may be able to obtain more information about what Ridley deleted and the circumstances under which he deleted that information." (*Id.* at 33.)

14. "Ridley's identification of the specific computer used to deploy CCleaner on the WD Drive has changed." (Report of Court-Appointed Special Master dated Nov. 17, 2023 [Doc. 413] at 10.)

15. On July 7, 2023, Ridley asserted that he thought he ran CCleaner on the WD Drive from his ChemTreat-provided laptop. (*Id.*)

16. On August 10, 2023, "Ridley's counsel explained that a different computer (Ridley's Wife's Computer) was used to run the CCleaner program" on the WD Drive. (*Id.*)

17. On September 14, 2023, counsel for Ridley stated that Ridley's Wife's Computer was not used to wipe the WD Drive. Instead, Ridley submitted a declaration that he actually ran the CCleaner program from a laptop his father provided to him. (*Id*. at 12; Doc. 413-13)

18. Ridley states that he believes that his father discarded the laptop he used to run CCleaner on the WD Drive "the last week of February or the First week of March 2022." (*Id.* at 12.) This was several weeks after Ridley received the February 9, 2022 Preservation Letter. (*Id.*)

**Discussion Supporting Proposed Instruction as to Ridley**

Federal Rule of Civil Procedure 37(e)(2) concerns the intentional failure to preserve electronically stored information. "If the court finds that the party acted with the intent to deprive another party of the information's use in the litigation, it may: (1) presume that the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 465 (M.D. Tenn. 2018) (citing Fed. R. Civ. P. 37(e)(2)). A party seeking a spoliation instruction requires a three-part showing:

> (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was

4

> destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* at 466. "The more severe sanctions available under Rule 37(e)(2), including an adverse inference jury instruction, may be imposed only on a finding of specific intent 'to deprive another party of the information's use in the litigation.'" *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2019 WL 109371, at *15 (M.D. Tenn. Jan. 4, 2019).

The Court has held that Ridley's actions after receiving the February 9, 2022 Preservation Letter—i.e., permanently deleting Ecolab information from the WD Drive using CCleaner—"justify sanctions against him." (Doc. 349 at 32.) The Court also held that "no reasonable person would immediately delete ESI after receiving a letter expressly explaining preservation obligations," and that "Ridley's failure to preserve this information necessarily prejudices Ecolab." (*Id.* at 33.)

The Court also noted why it was so important for Ecolab to be able to examine the computer that Ridley used to run CCleaner on the WD Drive: because inspection of that computer "could yield evidence that fundamentally alters the parties' arguments." (*Id.* at 38.) The Court noted several other reasons, in the factual passages quoted above, why inspection of the computer that Ridley used to run CCleaner on the WD drive was not only important—but that doing so "would be an appropriate sanction that will mitigate the prejudice caused by Ridley's deletion" of ESI after receiving an evidence-preservation notice from Ecolab. (*Id.* at 36-38 & n. 26.)

When the Court issued the spoliation order on August 1, 2023, the Court and Ecolab understood that Ridley had used the Wife's Computer to run CCleaner on the WD Drive—because that is what Ridley represented. Thus, the Wife's Computer was expected to be a key component

5

of the Special Master search. (*See* Doc. 413 at 12-13.) But shortly after the Special Master began his work, Ridley revealed that he did **not** use the Wife's Computer to wipe the WD Drive, but instead used the Discarded Father's Computer. (*Id.* at 12, 14.) Ridley also revealed that he had discarded **that** computer long ago—and, crucially, that he'd discarded it after receiving the Preservation Letter from Ecolab. (*Id.* at 12-13.)

What does all this mean? In short: the main purpose of the Special Master process as to Ridley—examination of the computer used to run CCleaner on the WD Drive—never happened.[1] It never happened because Ridley discarded the computer he used to run CCleaner on the WD Drive after receiving Ecolab's Preservation Letter, long before the Special Master was ever engaged. Therefore, the Court's goal—to reopen discovery so that Ecolab "can inspect the computer Ridley used to run the CCleaner program on the WD Drive"—was frustrated because that computer was never obtained or inspected. (*See* Doc. 349 at 39 n. 26.) Accordingly, the Special Master's reopened discovery work as to Ridley **did not** "mitigate the prejudice caused by Ridley's deletion of electronically stored information after receiving an evidence preservation notice from Ecolab/Nalco." (*Id.*) Instead, the prejudice to Ecolab remains uncured. In light of Ridley's conduct and lack of credibility as the Court has already found, curing the prejudice to Ecolab requires imposing an adverse inference instruction under Rule 37(e)(2). Ecolab requests that the jurors receive the following jury instruction at trial.

### Proposed Statement of Law Jury Instruction – Ridley

The Court has found that Ridley intentionally deleted evidence from his WD Drive. You must infer that the evidence deleted from the WD Drive was unfavorable to Ridley.

---

[1] The Special Master confirmed that CCleaner was not run on the Wife's Computer. (Doc. 413 at 14.)

## II. REGARDING CHEMTREAT

### Proposed Statement Of Facts – ChemTreat

1. On February 9, 2022, Plaintiffs sent ChemTreat a letter accusing Ridley of downloading and copying proprietary, confidential, and trade-secret information before his resignation, and instructing ChemTreat to preserve any potentially relevant information related thereto. (Doc No. 349 at 7.)

2. On March 2, 2022, ChemTreat instructed Ridley to send his ChemTreat-issued laptop to ChemTreat's headquarters to be preserved. (*Id.* at 9.)

3. Once Ridley's ChemTreat-issued laptop arrived at ChemTreat's headquarters, ChemTreat re-routed Ridley's laptop to its IT department, where its IT department subsequently wiped and reformatted the laptop. (*Id.*)

4. ChemTreat's efforts "[fell] unreasonably short in guarding against the loss of data," because ChemTreat "failed to take reasonable steps to preserve the information on Ridley's laptop." (*Id.* at 28, 30.)

### Discussion Supporting Instruction as to ChemTreat

Federal Rule of Civil Procedure 37(e)(1) provides that "[i]f electronically stored information that should have been preserved in the anticipation . . . of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . may order measures no greater than necessary to cure the prejudice." "[A] federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009). "Because failures to produce relevant evidence fall along a continuum of fault—ranging from innocence through the

7

degrees of negligence to intentionality, the severity of such a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652–53 (quotation omitted).

Among the measures that Courts may adopt to cure prejudice is "permitting the parties to present evidence and argument to the jury regarding the loss of information" or "giving the jury instructions to assist in its evaluation of such evidence or argument." Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284.2 (3d ed.); Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (explaining that courts may "allow[] the parties to present evidence to the jury concerning the loss and likely relevance of information and instruct[] the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision."); *see also Adamczyk v. Sch. Dist. of City of Hamtramck Public Schs.*, No. 2:20-cv-12450, 2023 WL 2733385, at \*15 (E.D. Mich. Mar. 31, 2023) (entering sanctions pursuant to Rule 37(e)(1) and ordering that plaintiff may present evidence to jury about missing electronically stored information and upon such presentation, "the Court will instruct the jury that it may draw whatever inferences it considers appropriate from those facts . . . .").

As in *Adamczyk*, the Court has found that ChemTreat negligently destroyed ESI: Ridley's ChemTreat-issued laptop. The Court also found that ChemTreat's negligence "prejudices Ecolab's ability to determine whether Ridley misappropriated its trade secrets, and if so, to what extent ChemTreat appreciated Ridley's actions." (Doc. 349 at 29.) The Special Master could not completely cure the prejudice because his examination was (naturally) limited only to the information that ChemTreat **did not** delete—certain communications and information on other repositories. Because of ChemTreat's negligence, the most probative evidence was gone, and none of the other information examined was an adequate proxy for what was deleted from the ChemTreat laptop—which Ridley admittedly used to access Ecolab documents. (Doc. 329 at 33.)

Accordingly, the appropriate way to mitigate the prejudice caused by ChemTreat's negligent spoliation of Ridley's ChemTreat laptop is that the jury be permitted be to hear at least limited evidence related to that spoliation.[2] Under Rule 37(e)(1), Plaintiffs should be allowed to present evidence to the jury concerning the loss and likely relevance of this spoliated data and let the jury "draw whatever inference it considers appropriate from these facts." *Adamczyk*, 2023 WL 2733385, at 15. Ecolab therefore respectfully requests that the Court allow limited presentation of evidence to the jury regarding ChemTreat's spoliation of the Ridley ChemTreat laptop.

In the alternative, Ecolab requests, at a minimum, the Court present the abovementioned statement of facts to the jury and provide the following instruction at trial.

### Proposed Statement of Law Jury Instruction – ChemTreat

When considering the evidence presented about ChemTreat's spoliation of Ridley's ChemTreat-issued laptop, remember that there are two kinds of evidence: direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. For example, if a witness testified that the witness saw it raining outside, that would be direct evidence that it was raining. If a witness testified that the witness saw someone enter a room wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. When considering the direct and circumstantial evidence, the law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence. When thinking about ChemTreat's spoliation of Mr. Ridley's ChemTreat-issued laptop, you must consider all the

---

[2] Ecolab shares the Court's desire to keep the trial focused on the substantive claims in the case, and believes it is appropriate for any testimony and evidence on spoliation to be limited so that it does not waste the jury's or the Court's time, or improperly divert focus from Ecolab's substantive claims.

9

evidence in light of reason, experience, and common sense. You may come to your own conclusions about ChemTreat's spoliation of the evidence.[3]

---

[3] In its Spoliation Order, the Court found that Plaintiffs negligently spoliated evidence regarding Ridley's Ecolab-issued replacement laptop and mobile device. However, Defendants have never argued that Plaintiffs destroyed ESI with the intent to deprive Defendants of relevant information. Moreover, any jury instruction about Plaintiffs' spoliation is unnecessary because forensic evidence conclusively shows that on June 1, 2021, Ridley used CCleaner software to permanently delete thousands of Plaintiffs' files off of his Ecolab cloud-based OneDrive account, making spoliation claims against Plaintiffs for not preserving information on Ridley's Ecolab devices *after* June 1, 2021 a moot point. If anything, Ridley's actions severely prejudiced Plaintiffs. To the extent there is any prejudice against Defendants, Ridley imposed them against Defendants by deleting so much relevant evidence from his Ecolab laptop on June 1, 2021.

Respectfully submitted,

 /s/ *Martin S. Chester*
Randall E. Kahnke (*pro hac vice*)
Martin S. Chester (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
90 South 7th Street, Unit 2200
Minneapolis, Minnesota 55402
randall.kahnke@faegredrinker.com
martin.chester@faegredrinker.com

Emmanuel L. Brown (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
emmanuel.brown@faegredrinker.com

David Yoshimura (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., Suite 3100
Des Moines, Iowa 50309
david.yoshimura@faegredrinker.com

Edward N. Boehm, Jr. (TN BPR#025275)
FISHER & PHILLIPS LLP
1230 Peachtree Street NE
Suite 3300
Atlanta, Georgia 30309
Telephone: 404.240.4286
Fax: 404.240.4249
*tboehm@fisherphillips.com*

David J. Walton
(*pro hac vice*)
FISHER & PHILLIPS LLP
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: 610.230.6015
Fax: 610.230.2151
*dwalton@fisherphillips.com*

*Attorneys for Plaintiffs*

11