UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ECOLAB INC. and NALCO COMPANY, LLC d/b/a NALCO WATER, AN ECOLAB COMPANY and/or NALCO WATER, | ) ) ) ) ) | Case No. 1:22-cv-50 Judge Travis R. McDonough |
| *Plaintiffs*, | ) ) | Magistrate Judge Christopher H. Steger |
| v. | ) ) | |
| ANTHONY RIDLEY and CHEMTREAT, INC., | ) ) ) | |
| *Defendants*. | ) | |

**ORDER**

Before the Court is ChemTreat, Inc.'s ("ChemTreat") motion to strike portions of Laurence D. Lieb's June 14, 2023 declaration and certain attached exhibits. (Doc. 315.) For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** the motion.

The Court's scheduling order required the parties to disclose experts and serve expert reports on or before February 24, 2023. (Doc. 144, at 4.) The scheduling order further required the parties to serve rebuttal expert reports on or before March 20, 2023. (*Id*.) For all practical purposes, discovery closed on April 27, 2023.[1] (Doc. 99, at 2.) Consistent with these deadlines, Ecolab/Nalco disclosed Laurence D. Lieb, an expert in digital forensics, and served his expert

---

[1] After the Court resolved the parties' cross-motions for spoliation sanctions, the Court appointed a special master and reopened discovery on a limited basis to cure some of the prejudice caused by the parties' spoliation. (*See* Docs. 349, 361.)

report on ChemTreat and Ridley on February 24, 2023.[2] (Doc. 298-1.) As stated in his initial report, Ecolab/Nalco retained him to "provide expert opinions regarding [his] forensic analysis of a data loss system report and documents" in this litigation. (*Id*. at 3.) In that fourteen-page report, Lieb opines, among other things, that: (1) based on his review of Ecolab/Nalco's Digital Guardian report, Ridley "exfiltrated thousands of Ecolab files"; (2) "Ridley exfiltrated the many Ecolab files documented in [his] report specifically to utilize them while employed at ChemTreat"; (3) Ridley downloaded and copied a "significant number of documents and Ecolab data to two separate USB drives in the two months prior to [his] resignation from Ecolab"; (4) "[f]orensic analysis of Ridley's Ecolab One Drive account uncovered the fact that Ridley exfiltrated and then destroyed a significant number of Ecolab files in an attempt to deprive his former employer access to these same files"; (5) forensic analysis of the CrowdStrike log indicates that Ridley accessed "the exfiltrated Ecolab files from his personal Microsoft OneDrive account in order to use the content of those exfiltrated files"; and (6) "[f]orensic analysis of the now wiped ChemTreat laptop would have provided the detail as to which specific exfiltrated Ecolab files Ridley was accessing from his personal Microsoft OneDrive account."[3] (*See*

---

[2] The need for forensic experts in this case is a byproduct of Ecolab/Nalco's misappropriation-of-trade-secrets claims against Ridley and ChemTreat combined with the parties' collective failure to preserve evidence at a time they were under an obligation to do so. The Court has previously summarized the opinions offered by the parties' forensic experts and the parties' evidence-preservation failures. (Docs. 349, 353.) Although the Court will not repeat that factual background here, it is hereby incorporated by reference.

[3] In his initial report, Lieb stated that he:

> reserve[s] the right to render additional opinions, to supplement or amend the opinions in this report, and to provide additional grounds for those opinions based on my ongoing analysis of the materials provided to me or as may be required by events that occur during the course of this Litigation, including but not limited to responding or analyzing positions taken by Ridley or his experts.

(Doc. 315-2, at 3–4.)

*generally* Doc. 315-2.) With regard to ChemTreat's CrowdStrike log, Lieb represents that he performed a "forensic analysis" and discovered that Ridley "disconnected an AmazonBasics external USB drive" from his ChemTreat laptop on July 9, 2021," and that Ridley accessed his "personal Microsoft account" from his ChemTreat laptop. (*Id*. at 12–13.) Finally, Lieb opined that the CrowdStrike tool "is not a data loss prevention tool." (*Id*. at 13.)

In his rebuttal report, which Ecolab/Nalco served on ChemTreat and Ridley on March 20, 2023, Lieb took issue with the opinions offered by ChemTreat's forensic expert, James Vaughn—namely, that Vaughn's review of Ridley's ChemTreat OneDrive account, Ridley's ChemTreat-issued e-mail account, and the CrowdStrike log is insufficient for him to determine what, if anything, Ridley distributed within ChemTreat's systems or to others he interacted with at ChemTreat using ChemTreat's systems. (Doc. 315-3, at 4.) According to Lieb, Vaughn's review should have also included Ridley's colleagues' workstations, network-stored backups of Ridley's wiped workstation, and Ridley's personal devices and accounts. (*Id*. at 10–11.) Lieb further opines that "CrowdStrike does in fact record files being copied from an external USB drive to a ChemTreat computer" but maintains that CrowdStrike does not "include all the makes, models and serial numbers of all USB drives connected to the laptop" and "does not record individual files being opened, accessed, saved as PDF files, or printed from external USB drives plugged into ChemTreat computers." (*Id*. at 6.)

On April 19, 2023, approximately one week before discovery closed and two days after Ridley was deposed, ChemTreat deposed Lieb.[4] During his deposition, Lieb testified at length regarding his forensic analysis of ChemTreat's CrowdStrike log, the searches he ran in his

---

[4] The parties deposed Ridley on April 17, 2023, only two days prior to Lieb's deposition, meaning that Lieb provided the opinions in his initial report and his rebuttal report prior to Ridley's deposition.

forensic analysis of the CrowdStrike log, and the results of his searches, some of which he acknowledged were not included in his initial expert report. (Doc. 315-4, at 15–18, 28–37.) Lieb also testified that he recovered certain deleted files from USB drives returned to Ecolab/Nalco and that he considered these documents in forming his opinions. (*Id*. at 7–11.) Finally, Lieb testified that he did not image Ridley's Ecolab Outlook account, which would have stored Ridley's contacts information, and that he was relying on his analysis of Ecolab/Nalco's Digital Guardian Report in forming his opinions. (*Id*. at 3.)

After discovery closed, the parties filed cross-motions for summary judgment and cross-motions for spoliation sanctions. (Docs. 255, 259, 261, 262, 276, 292.) On June 17, 2023, Ecolab/Nalco filed their motion for spoliation sanctions and attached a supporting declaration from Lieb, dated June 14, 2023.[5] (Docs. 292, 293-14.) Although Lieb's initial report identified only one USB drive attached to Ridley's ChemTreat computer based on his analysis of ChemTreat's CrowdStrike log, his June 14, 2023 declaration identifies seven additional devices that he asserts were connected to Ridley's ChemTreat-issued laptop. (Doc. 293-14, at 6–18.) Lieb also avers that ChemTreat's CrowdStrike log was not reasonably accessible to him. (*Id*. at 4–6.) Finally, Lieb's declaration includes opinions based on his review of Ridley's April 17, 2023 deposition testimony (*id*., at 19–24) and additional criticisms of James Vaughn's expert opinions (*id*. at 24–27). In support of these assertions, Lieb refers to evidence, which ChemTreat asserts was not disclosed during discovery. (*Id*.) ChemTreat has moved to strike Lieb's

---

[5] The Court has already resolved the parties' cross-motions for summary judgment (Doc. 429), their cross-motions for spoliation sanctions (Doc. 349), and their motions to exclude expert testimony (Doc. 353). In resolving the parties' motions to exclude expert testimony, the Court granted in part ChemTreat's motion to exclude certain opinions offered by Lieb—namely that Lieb will not be permitted to testify regarding Ridley's state of mind or that Ridley "misappropriated" Ecolab/Nalco's information or trade secrets. (Doc. 353, at 15–25.)

4

Case 1:22-cv-00050-TRM-CHS   Document 430   Filed 03/26/24   Page 4 of 9   PageID #: 18244

declaration and the attached previously undisclosed evidence pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure (Doc. 315), and ChemTreat's motion is ripe for the Court's review.

Rule 26(a)(2) requires parties to disclose the identity of any witness it may use at trial to present evidence under Rules 702, 703, or 705. Additionally, any witness disclosed must provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts and data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). As the Sixth Circuit has explained, under Rule 26(a), "an expert opinion must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 657 (6th Cir. 2005)). Further, a "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Id*. (quoting *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n.6 (7th Cir.1998)). This means that a report "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id*.

Nonetheless, Rule 26 contemplates that an expert may need to supplement or correct information contained in his or her initial report. "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e). As another district judge in this Court explained,

"[a]fter parties make their mandatory expert disclosure, the experts are not turned to stone pending trial"; rather, "the rules anticipate experts will hone their opinions in light of new information . . . ." *Williams v. City of Chattanooga*, No. 1:16-cv-477, 2018 WL 11463529, at *2 (E.D. Tenn. Feb. 1, 2018).

Conversely, however, district courts have interpreted Rule 26's supplementation requirement as "limited to correcting inaccuracies or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-cv-01509, 2020 WL 1154809, at *4 (S.D. Ohio Mar. 10, 2020). As one district court explained, Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of a supplement label," because "it is not mere supplementation when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains actual reasoning." *Eiben v. Gorilla Ladder Co.*, No. 11-cv-10298, 2013 WL 1721677, at *5 (E.D. Mich. Apr. 22, 2013).

In the event "a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed R. Civ. P. 37(c)(1). Harmlessness generally involves an innocent mistake coupled with sufficient knowledge by the other party. *See Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999)). In determining whether a party's omitted or late disclosure is substantially justified or harmless, courts consider the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 396–97 (4th Cir. 2014)). The burden is on the potentially sanctioned party to prove harmlessness. *Id*.

In this case, Lieb's declaration, which was provided to ChemTreat and Ridley almost two months after Lieb was deposed and after discovery closed, contains at least some new opinions and information that constitute more than mere supplementation of his previous reports, especially as it relates to opinions regarding ChemTreat's CrowdStrike log. ChemTreat produced the CrowdStrike log in December 2022 (Doc. 334, at 15), and, as the Court has detailed in prior orders, the parties mismanaged discovery at almost every step (*see, e.g.*, Doc. 243). That mismanagement, though, did not preclude Lieb from offering opinions regarding the CrowdStrike log in his initial and rebuttal reports or from providing testimony about the CrowdStrike log during his deposition. Nonetheless, Lieb asserts in his June 14, 2023 declaration that the CrowdStrike log is "not reasonably accessible" and only after publication of his original and rebuttal reports and the close of discovery did he learn that seven additional devices that were connected to Ridley's ChemTreat-issued laptop. (Doc. 293-14, at 4–18.) Effectively, Lieb's declaration seeks to provide new opinions regarding the CrowdStrike log that could have been offered in his initial or rebuttal reports. Any difficulties Lieb had with the format of the CrowdStrike log should have been raised prior to the close of discovery, and Ecolab/Nalco's failure to timely raise those issues does not transform Lieb's completely new and previously undisclosed opinions into "supplementation" of his prior reports.

Additionally, Lieb's failure to provide these opinions regarding the CrowdStrike log in connection with his initial and rebuttal reports and before the close of discovery is not

substantially justified or harmless. ChemTreat and Ridley did not learn about these opinions until Ecolab/Nalco disclosed Lieb's declaration as an exhibit to their motion for spoliation sanctions. Further, Lieb was deposed prior to disclosure of these new opinions, effectively limiting ChemTreat's ability to take any curative measures. And, assuming evidence regarding ChemTreat's CrowdStrike log is admissible at trial, forcing ChemTreat to cross-examine Lieb regarding his methodology and conclusions for the first time at trial will likely disrupt the trial and shift the jury's focus away from the substantive claims at issue. Striking Lieb's new opinions regarding the CrowdStrike log is also appropriate given Lieb and Ecolab/Nalco's underwhelming explanation for failing to provide these opinions within the time permitted by the Court's scheduling order. Accordingly, the Court will **GRANT** ChemTreat's motion to strike Lieb's declaration to the extent he seeks to offer opinions about ChemTreat's CrowdStrike log that were not contained in his initial or rebuttal reports and to the extent he offers new criticisms of Vaughn's opinions not contained in his rebuttal report. Additionally, the Court will **GRANT** ChemTreat's motion to the extent Ecolab/Nalco have attached exhibits to Lieb's declaration that were not produced prior to the close of discovery.

      Some of Lieb's opinions regarding Ridley's deposition testimony, however, are based on new information that was not previously available. Ridley was deposed two days before Lieb's deposition and approximately one week before the close of discovery. While the timing of those depositions is largely due to the parties' mismanagement of discovery, Lieb was not afforded the benefit of Ridley's deposition testimony at the time his initial and rebuttal reports were disclosed. As a result, supplementation of his report based on Ridley's deposition testimony is substantially justified because it constitutes "filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *In re Davol*, 2020 WL

8

1154809, at *4. As a result, the Court will **DENY** ChemTreat's motion to the extent Lieb's declaration offers opinions based on Ridley's deposition testimony.[6]

Accordingly, for the reasons stated herein, ChemTreat's motion to strike Lieb's June 14, 2023 declaration (Doc. 315) is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[6] The Court notes, however, that Lieb's opinions based on Ridley's deposition testimony likely should have been served on ChemTreat much earlier than two months after his deposition and that they should not have been disclosed for the first time as an exhibit to Ecolab/Nalco's motion for spoliation sanctions.